# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| ROBERT KOLINEK, individually and on behalf of all others similarly situated,<br><br>    *Plaintiff*,<br><br>    vs.<br><br>WALGREEN CO., an Illinois corporation,<br><br>    *Defendant*. | Case No. 13-cv-4806<br><br>Honorable Matthew F. Kennelly |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE CLASS ACTION COMPLAINT PURSUANT TO RULE 12(b)(6)

Bradley J. Andreozzi
Chancé L. Cooper
**DRINKER BIDDLE & REATH LLP**
191 North Wacker Drive, Suite 3700
Chicago, IL 60606-1698
Tel:    (312) 569-1000
Fax:    (312) 569-3000

*Counsel for Defendant Walgreen Co.*

August 30, 2013

**TABLE OF CONTENTS**

Page

SUMMARY OF THE ARGUMENT ................................................................................ 1

SUMMARY OF THE COMPLAINT................................................................................ 4

ARGUMENT ..................................................................................................................... 5

I.     WALGREENS DID NOT VIOLATE THE TCPA BECAUSE PLAINTIFF CONSENTED TO BEING CALLED ON HIS CELLPHONE BY VOLUNTARILY PROVIDING HIS CELLPHONE NUMBER TO WALGREENS ................................................................. 5

II.    WALGREENS DID NOT VIOLATE THE TCPA BECAUSE THE "EMERGENCY PURPOSE" EXEMPTION APPLIES TO PRESCRIPTION REFILL REMINDER CALLS ................................. 9

      A.    History and Purpose of the TCPA ........................................................... 10

      B.    Federal Regulators Have Repeatedly Endorsed Prescription Refill Reminder Calls As Serving The Public Interest By Communicating Important Health Information ....................................... 11

           i.    HHS Endorses Prescription Refill Reminder Calls .................... 11

           ii.   The FTC Endorses Prescription Refill Reminder Calls ............. 12

           iii.  The FCC Endorses Prescription Refill Reminder Calls............. 13

CONCLUSION................................................................................................................ 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Emanuel v. Los Angeles Lakers, Inc.*,
   No. CV 12-9936, 2013 U.S. Dist. LEXIS 58842 (C.D. Cal. April 18, 2013) ..........................10

*Greene v. DirecTV, Inc.*,
   No. 10 C 117, 2010 U.S. Dist. LEXIS 118270 (N.D. Ill. Nov. 8, 2010)...................................6

*Pinkard v. Wal-Mart Stores, Inc.*,
   No. 3:12-cv-02902-CLS, 2012 U.S. Dist. LEXIS 160938 (N.D. Ala. Nov. 9, 2012) ..... *passim*

*Practice Mgmt. Support Servs., Inc. v. Appeal Solutions, Inc.*,
   No. 09 C 1937, 2010 U.S. Dist. LEXIS 17714 (N.D. Ill. Mar. 1, 2010) ...................................6

*Roberts v. Paypal, Inc.*,
   No. C 12-0622, 2013 U.S. Dist. LEXIS 76319 (N.D. Cal. May 30, 2013) ...............................6

*Ryabyshchuck v. Citibank (S.D.) N.A.*,
   11-CV-1236, 2012 U.S. Dist. LEXIS (S.D. Cal. Oct. 30, 2012) .........................................6, 10

*Saunders v. NCO Fin. Sys.*,
   No. 12-cv-1750, 2012 U.S. Dist. LEXIS 181174 (E.D.N.Y. Dec. 21, 2012)...........................6

**STATUTES, RULES & REGULATIONS**

45 C.F.R. § 160.103 .......................................................................................................................11

45 C.F.R. § 164.501 .......................................................................................................................11

45 C.F.R. § 164.508 .......................................................................................................................11

47 C.F.R. § 64.1200 ...................................................................................................................9, 14

15 U.S.C. § 6102............................................................................................................................12

42 U.S.C. § 1320d..........................................................................................................................11

47 U.S.C. § 227(b) ...................................................................................................................1, 5, 9

**OTHER AUTHORITIES**

H. R. Rep. No. 102-317 (1991)......................................................................................................10

S. Rep. No. 102-178 (1991) ...........................................................................................................10

137 Cong. Rec. H. 11307 (Nov. 26, 1991) ......................................................................................9

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In the Matter of the Telephone Consumer Protection Act of 1991*,
   FCC 92-176, 7 FCC Rcd. 2736 (Apr. 10, 1992) ................................................................. 2, 9

*In Re Rules and Regulations Implementing the Telephone Consumer Protection
   Act of 1991*, FCC 92-443, 7 FCC Rcd. 8752 (Oct. 16, 1992) ......................................... *passim*

*In Re Rules and Regulations Implementing the Telephone Consumer Protection
   Act of 1991*, FCC 12-21, 27 FCC Rcd. 1830 (Feb. 15, 2012) ................................................ 14

Telemarketing Sales Rule ("TSR") Final Rule Amendments,
   73 Fed. Reg. 51,164 (Aug. 29, 2008) (codified at 16 C.F.R. § 310.1 et seq.) ................... 12, 13

Defendant Walgreen Co. ("Walgreens") submits this memorandum in support of its Motion to Dismiss the Complaint of Plaintiff Robert Kolinek ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## SUMMARY OF THE ARGUMENT

Plaintiff accuses Walgreens of violating the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. (the "TCPA"), by making automated telephone calls to cell phones to remind customers that their medical prescriptions are due for refill. It is important to state clearly at the outset the precise nature of the conduct that Plaintiff challenges. Plaintiff does *not* allege that Walgreens is making automated telemarketing calls indiscriminately in order to advertise its products or services to *potential* customers. Plaintiff challenges only the prescription refill reminder call program, by which calls are made only to *current customers* who have an *active prescription* at Walgreens that is due under the doctor's orders to be refilled and *who have voluntarily provided their phone numbers to Walgreens*. *See* Complaint ("Cmplt.") ¶¶ 4, 14, 22.

First, Plaintiff's claim is barred by the simple fact that he consented as a matter of law to receiving these calls. The TCPA expressly exempts from liability automated calls to cell phones "made with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). Plaintiff admits that before receiving any prescription refill reminder calls, he voluntarily provided his cell phone number to his Walgreens pharmacist. *See* Cmplt. ¶ 18 (while filling a prescription, "Plaintiff provided his cellular telephone number to a Walgreens pharmacist . . ."). As a matter of settled law, this, in and of itself, establishes Plaintiff's express consent to receive calls from Walgreens at that number. *See In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, FCC 92-443, 7 FCC Rcd. 8752, 8769 (Oct. 16, 1992) ("1992 Report and Order") (for purposes of the TCPA, "persons who knowingly release

-1-

their phone numbers have in effect given their invitation or permission to be called at the number which they have given").

Notably, one court already has held that "prior express consent" is obtained when a customer provides a pharmacy with her cellular telephone number when dropping off a prescription. *See Pinkard v. Wal-Mart Stores, Inc.*, No. 3:12-cv-02902-CLS, 2012 U.S. Dist. LEXIS 160938 (N.D. Ala. Nov. 9, 2012) (granting Wal-Mart's motion to dismiss). "To hold otherwise would contradict the overwhelming weight of social practice: that is, distributing one's telephone number is an invitation to be called, especially when the number is given at another's request." *Id*. at *14. Because Plaintiff alleges in his Complaint that he voluntarily provided the Walgreens pharmacy with his cellular telephone number, his TCPA claim fails.

Second, Plaintiff's claim is also barred by the so-called "emergency purpose" exemption to liability under the TCPA (codified at 47 U.S.C. § 227(b)(1)(A)), which Congress intended and the FCC recognized applies broadly to situations where it is in the public interest to communicate health or safety information by automated means. In keeping with Congressional intent, the FCC has interpreted the "emergency purpose" exemption to include "situations in which it is in the public interest to convey information to consumers concerning health or safety, whether or not the event was anticipated or could have been anticipated." *In the Matter of the Telephone Consumer Protection Act of 1991*, FCC 92-176, 7 FCC Rcd. 2736, 2738 (Apr. 10, 1992). The calls at issue here, which provide important reminders to many patients that their prescriptions are due for refill under the doctor's orders, serve the public interest by conveying information to consumers concerning their healthcare, and easily qualify for the statutory exemption.

Indeed, the prescription refill reminder call service provided by Walgreens (and other major pharmacies) has been endorsed and encouraged by every federal agency to consider it, as a valuable program promoting patient adherence to medical treatment, thereby improving healthcare outcomes and lowering healthcare costs:

- The Health and Human Services Agency ("HHS") exempted prescription refill reminder calls from the restrictions on the use of protected healthcare information under the Health Insurance Portability and Accountability Act ("HIPAA") because HHS recognized that these calls are *not* telemarketing but rather provide important medical information to patients, promoting treatment adherence and better healthcare outcomes.

- The Federal Trade Commission ("FTC") exempted health information calls such as prescription refill reminders from the restrictions of the Telemarketing Consumer Fraud and Abuse Prevention Act and the Telemarketing Sales Rule because the FTC recognized that these calls lead to demonstrable improvements in patient outcomes; lower the cost of medical services; come only from a limited number of sources (the patient's own medical providers) and are limited in frequency by the patient's own medical needs; and thus do not present a threat of unfair or deceptive practices that harm consumer privacy.

- The Federal Communications Commission ("FCC") recently exempted these calls from the TCPA's consent requirements in order to harmonize its regulations with those of the FTC and because it agreed with the FTC that these calls improve healthcare; do not constitute advertising; and do not threaten consumer privacy interests because the calls are placed only by the consumer's healthcare providers and concern the consumer's health; and, moreover, any privacy concerns are adequately safeguarded by HIPAA.

These are the calls that Plaintiff seeks to penalize and enjoin: calls that have improved health outcomes by reminding many patients to refill their prescriptions in accordance with their doctor's treatment plan, while lowering the cost of medical services. Fortunately for the many patients helped by these reminder calls and for the healthcare system, Plaintiff's claim is barred because Congress and the FCC recognize that communications in the public interest conveying health or safety information are not subject to the TCPA.

## SUMMARY OF THE COMPLAINT

Plaintiff alleges that he first filled a prescription at Walgreens on an undisclosed date prior to early 2012. Cmplt. ¶ 18. Although he contends that "he did not consent to receive automated robocalls or any calls prompting him to refill his prescriptions at Walgreens," Plaintiff admits to "provid[ing] his cellular telephone number to a Walgreens pharmacist . . . ." *Id.* Plaintiff does *not* allege that he *told* Walgreens that he did not wish to receive calls at that number, either when he provided his cell phone number or at any time thereafter. Plaintiff alleges that, in early 2012, Walgreens implemented an automated telephone dialing system using artificial or prerecorded voices to deliver prescription refill reminders to its customers who had filled their prescriptions at Walgreens. *Id.* ¶¶ 14, 21. He claims that in "early 2012" he "began receiving robocalls from Defendant . . . prompting him to refill his prescriptions at Walgreens." *Id.* ¶ 18. He does not state the number of telephone calls he received from Walgreens, or when he received those telephone calls. He does not allege that he ever utilized the automated option to opt out of receiving these calls, or that he ever informed Walgreens that he did not want to receive the calls.

Plaintiff accuses Walgreens of violating 47 U.S.C. § 227(b)(1)(A)(iii) of the TCPA by making prescription refill reminder calls using an automated or prerecorded voice to customers' cell phones without having their prior express consent. Although the TCPA provides for statutory damages of $500 per violation, Plaintiff contends that Walgreens violated the statute "knowingly" and hence seeks statutory damages trebled to $1,500 per telephone call on behalf of a class of all persons in the United States who (i) first filled prescriptions through Walgreens prior to January 1, 2012, (ii) have not created online accounts through Walgreens.com, (iii) received calls on their cellular telephones, (iv) featuring a prerecorded or artificial voice,

(v) from Walgreens, (vi) reminding them to refill their prescriptions. *Id.* ¶¶ 21, 22, 32, 35. Plaintiff seeks an injunction as well as attorney's fees. *Id.* ¶ 33.

## ARGUMENT

I. **WALGREENS DID NOT VIOLATE THE TCPA BECAUSE PLAINTIFF CONSENTED TO BEING CALLED ON HIS CELL PHONE BY VOLUNTARILY PROVIDING HIS CELL PHONE NUMBER TO WALGREENS.**

Although the TCPA generally prohibits automated calls to cellular telephones, consumers may consent to receive such calls. Specifically, the TCPA prohibits:

> Any call (other than a call made for emergency purposes or made with the ***prior express consent*** of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . .
>
> (iii) to any telephone number assigned to a . . . cellular telephone service . . . , or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). Thus, "[t]he TCPA allows autodialed and prerecorded message calls if the called party expressly consents to their use." *Pinkard*, 2012 U.S. Dist. LEXIS 160938, at *8 (citing 1992 Report and Order, 7 FCC Rcd. at 8769).

In its initial rulemaking after Congress passed the TCPA, the FCC determined that express consent includes situations where an individual voluntarily divulges his telephone number. *See* 1992 Report and Order, 7 FCC Rcd. at 8769. The FCC explained that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *Id*. In reaching this conclusion, the FCC relied on the House Committee Report "which supports this interpretation, noting that in such instances 'the called party has in essence requested the contact by providing the caller with their telephone number for use in normal business communications.'" *Id.* at 8769, n. 57 (quoting H. R. Rep. No. 102-317 at p. 13 (1991)).

Federal courts have deferred to the FCC's interpretation that when a consumer provides a company with his phone number, he consents to receiving calls at that number. *See, e.g., Saunders v. NCO Fin. Sys.*, No. 12-cv-1750, 2012 U.S. Dist. LEXIS 181174, at *8 (E.D.N.Y. Dec. 21, 2012) ("[T]he authorities are almost unanimous that voluntarily furnishing a cellphone number to a vendor or other contractual counterparty constitutes express consent."). *See also Greene v. DirecTV, Inc.*, No. 10 C 117, 2010 U.S. Dist. LEXIS 118270, at *9 (N.D. Ill. Nov. 8, 2010) (plaintiff expressly consented to receive calls on her cellular telephone by providing her cell phone number to the credit reporting agency); *Roberts v. Paypal, Inc.*, No. C 12-0622, 2013 U.S. Dist. LEXIS 76319, at *13-14 (N.D. Cal. May 30, 2013) ("prior express consent" established when plaintiff voluntarily provided defendant with his cell phone number). *See also Practice Mgmt. Support Servs., Inc. v. Appeal Solutions, Inc.*, No. 09 C 1937, 2010 U.S. Dist. LEXIS 17714, at *10 (N.D. Ill. Mar. 1, 2010) ("[W]e find that plaintiff's voluntar[]y communication of its fax number precludes Practice Management from asserting that the faxes were unsolicited under the TCPA."). As one court noted, the act of voluntarily providing one's telephone number to a business, "dispel[s] any allusion to 'the proliferation of intrusive, nuisance calls' targeted by the TCPA." *Ryabyshchuck v. Citibank (S.D.) N.A.*, 11-CV-1236, 2012 U.S. Dist. LEXIS, at *7 (S.D. Cal. Oct. 30, 2012), appeal voluntarily dismissed (Feb. 4, 2013).

Plaintiff pleads himself out of court by alleging facts in his Complaint that show, as a matter of law, that he gave Walgreens express consent to be contacted at his cellular number. He alleges that when he first filled a prescription with Walgreens, "[he] provided his cellular telephone number to a Walgreens pharmacist who informed him that the number was needed for verification purposes." Cmplt. ¶ 18. Based on this allegation, Plaintiff "knowingly released his

phone number," and thus, invited Walgreens to contact him at that number regarding his Walgreens account. *See* 1992 Report and Order, 7 FCC Rcd. at 8769.

Although Plaintiff contends that he was asked for his cell phone number for verification purposes and was not asked whether he wished to receive prescription refill reminders, express consent under the TCPA does not require asking permission for specific types of contact. *See Pinkard*, 2012 U.S. Dist. LEXIS 160938, at *5, 16 (holding that plaintiff gave express consent to receive "Wal-Mart related texts" when she gave the Wal-Mart pharmacist her cellular number "in case there were any questions that came up" regarding her prescription). Here, Plaintiff admits that he provided a Walgreens pharmacist with his cellular number while filling a prescription at Walgreens and that he subsequently received prescription refill reminders. The prescription refill reminders Plaintiff allegedly received are undeniably related to the purpose for which he provided his cellular number—the filling of prescriptions.

Moreover, "once [Plaintiff] voluntarily provided defendant with [his] telephone number . . . it was [*his*] responsibility to *explicitly* state the limited scope of [his] consent. *Id*. at *19 (emphasis in original). The FCC has ruled that a person's act of knowingly giving his phone number constitutes express consent to be called at that number, "*absent instructions to the contrary*." 1992 Report and Order, 7 FCC Rcd. at 8769 (emphasis added). Plaintiff admits that he voluntarily provided Walgreens with his cellular number, but does not allege that he ever informed Walgreens that he did not wish to be contacted at that number. In fact, Plaintiff alleges that Walgreens "repeatedly" called Plaintiff's cellular number. Cmplt. ¶ 7. Despite the supposed aggravation and nuisance that Plaintiff alleges these calls caused him, he does *not* allege that he ever requested *not* to be contacted on his cell phone, that he ever opted out of receiving such calls (which could have been done at the push of a button on his phone), or that he ever told

Walgreens that he wished not to receive prescription refill reminders. Plaintiff's act of voluntarily providing his cell phone number to Walgreens without providing any instructions restricting use of that number to contact him constitutes "express consent" as a matter of law.

In a recent and nearly identical case, *Pinkard v. Wal-Mart Stores, Inc.*, a federal district court held that providing a pharmacy with one's cellular telephone number is "clear and unmistakable" consent to be called at that number. *See Pinkard*, 2012 U.S. Dist. LEXIS 160938. In *Pinkard*, when the plaintiff dropped off a prescription at a Wal-Mart pharmacy, Wal-Mart employees asked her for several pieces of personal information, including her cellular telephone number. *Id.* at *5. Plaintiff alleged that Wal-Mart employees informed her that they needed this information "in case there were any questions that came up." *Id*. Plaintiff further alleged that the Wal-Mart employees did not ask for permission to send her text messages, but that within a few hours of providing her cellular number she received several "Wal-Mart related" text messages. *Id.*

The *Pinkard* court noted that "the TCPA does not define 'express consent,'" but cited the 1992 Report and Order as interpreting "express consent" to "encompass a situation where an individual voluntarily divulges her telephone number." *Id.* at *14. The court further explained that providing her cellular number to Wal-Mart was "clear and unmistakable" consent to be contacted at that number. *Id*. "To hold otherwise would contradict the overwhelming weight of social practice: that is, distributing one's telephone number is an invitation to be called, especially when the number is given at another's request." *Id*. Accordingly, the court granted Wal-Mart's motion to dismiss, because "[b]y her complaint's own admission, plaintiff provided her telephone number to defendant at defendant's request" which constituted express consent. *Id.* at *16.

The present matter is nearly identical to *Pinkard*; in both cases, the plaintiffs admit on the face of their complaints that they voluntarily provided their cellular numbers to a pharmacy, never placed any restrictions on the pharmacy's use of their cellular numbers, and subsequently received messages from those pharmacies. As in *Pinkard*, this Court should find that Plaintiff gave his express consent to receive calls on his cell phone when he voluntarily provided Walgreens with his cell phone number. "To hold otherwise would contradict the overwhelming weight of social practice." *Id*. at *14.

Accordingly, Plaintiff's Complaint fails as a matter of law, as Plaintiff consented to receive calls from Walgreens on his cell phone.

## II. WALGREENS DID NOT VIOLATE THE TCPA BECAUSE THE "EMERGENCY PURPOSE" EXEMPTION APPLIES TO PRESCRIPTION REFILL REMINDER CALLS.

The TCPA specifically allows automated calls "made for emergency purposes." 47 U.S.C. § 227(b)(1)(A). While a prescription refill reminder call may not sound like an "emergency" in everyday parlance, Congress intended the "emergency purpose" exemption to be applied broadly, not narrowly.[1] "In keeping with the legislative history and the intent of the TCPA," the FCC interpreted "emergency" "to include situations in which it is in the public interest to convey information to consumers concerning health or safety, whether or not the event was anticipated or could have been anticipated." *In the Matter of the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. at 2738. *See* 47 C.F.R. § 64.1200(f)(4) ("The term emergency purposes means calls made necessary in any situation affecting the health and safety of consumers."). As we discuss below, federal agencies have already found that automated

---

[1] Indeed, during the House floor debate, Congressman Markey, Chair of the House Telecommunications and Finance Subcommittee and a sponsor of the legislation, explained that "the term 'emergency purposes' is also intended to include any automated telephone call that notifies consumers of impending or current power outages, whether these outages are for scheduled maintenance, unscheduled outages caused by storms, or power interruptions for load management programs." 137 Cong. Rec. H. 11307 (Nov. 26, 1991).

-9-

prescription refill reminder calls serve the public interest by conveying, quickly and cheaply, important healthcare information. Accordingly, these calls qualify for the "emergency purpose" exemption and are not actionable under the TCPA.

### A. History and Purpose of the TCPA.

In 1991, Congress passed the TCPA to address growing concerns regarding the number of unrestricted telemarketing calls. Finding that these calls "can be an intrusive invasion of privacy," H. R. Rep. No. 102-317 (1991), Congress intended to "protect the privacy interests of . . . telephone subscribers by placing restrictions on unsolicited, automated telephone calls . . . and to facilitate interstate commerce by restricting certain uses of facsimile machines and automated dialers." S. Rep. No. 102-178 (1991).

"In construing the extent and contour of [the TCPA], courts consistently and properly look to the purpose and history of the statute." *Emanuel v. Los Angeles Lakers, Inc.*, No. CV 12-9936, 2013 U.S. Dist. LEXIS 58842, at *7 (C.D. Cal. Apr. 18, 2013) (citations omitted). Courts "broadly recognize that not every text message or call constitutes an actionable offense; rather, the TCPA targets and seeks to prevent 'the proliferation of intrusive, nuisance calls.'" *Ryabyshchuck,* 2012 U.S. Dist. LEXIS 156176, at *6 (citing *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012)). "[C]ontext is indisputably relevant to determining whether a particular call is actionable under the TCPA." *Id.* at *8-9. Although the TCPA contains restrictions on telephone calls using automated dialers or prerecorded or artificial voices, Congress recognized that not all such calls should be prohibited. Accordingly, Congress created a broad "emergency purpose" exemption to allow automated calls when the public interest favors such a rapid, low-cost means of widely communicating information regarding health or safety.

**B.  Federal Regulators Have Repeatedly Endorsed Prescription Refill Reminder Calls As Serving The Public Interest By Communicating Important Health Information.**

**i.  HHS Endorses Prescription Refill Reminder Calls**

Congress enacted HIPAA in 1996 to "improve . . . the efficiency and effectiveness of the healthcare system by encouraging . . . the electronic transmission of certain health information." HIPAA, Pub. L. No. 104-191, § 261, 110 Stat. 1936 (1996), *codified as amended at* 42 U.S.C. § 1320d et seq. Recognizing that the use of automated communications systems could jeopardize patients' privacy interests, Congress directed HHS to enact rules that would balance patients' interest in protecting the privacy of their healthcare information with the Congressional "objective of reducing the administrative costs of providing and paying for healthcare."  42 U.S.C. § 1320d-1(b).

As authorized by Congress, HHS issued the HIPAA Privacy Rule. That Rule prohibits a "covered entity"[2] from using or disclosing "protected health information"—information related to a patient's medical condition or treatment—for purposes of marketing, without specific, written authorization from the patient. *See* 45 C.F.R. § 164.508(a)(3)(i) ("a covered entity must obtain an authorization [from the patient] for any use or disclosure of protected health information for marketing."). The requirements of the Privacy Rule are enforced by the Office of Civil Rights in HHS.  Violations of HIPAA are subject to civil and criminal penalties, including possible imprisonment.  42 U.S.C. § 1320d-5 & 6.

Importantly, the definition of "marketing" in the HIPAA Final Rule specifically *excludes* communications made "[t]o *provide refill reminders* or otherwise communicate about a drug or biologic that is currently being prescribed for the individual . . ." 45 C.F.R. § 164.501 (emphasis

---

[2] A "covered entity" is defined to include a healthcare provider that transmits any health information in electronic form.  45 C.F.R. § 160.103.  As a pharmacy, Walgreens is a healthcare provider and a "covered entity" under HIPAA.

added). HHS recognized that communications such as prescription refill reminder calls "protect the public health and well-being" by promoting high quality and affordable healthcare and that the benefits of such communications would be lost by requiring specific authorization from each patient. Telemarketing Sales Rule ("TSR") Final Rule Amendments, 73 Fed. Reg. 51,164, 51,190 (Aug. 29, 2008) (codified at 16 C.F.R. § 310.1 et seq.) ("2008 Final Rules").

### ii. The FTC Endorses Prescription Refill Reminder Calls

The FTC addressed the importance of prescription refill reminder calls in its 2008 final rules and amendments to the TSR.[3] In its report, the FTC found that prerecorded healthcare-related messages, such as prescription refill reminders, show no history of conduct that is "coercive or abusive." 2008 Final Rules, 73 Fed. Reg. 51,190-92. Comments to the report advocating an exemption to the TSR's consent requirements for healthcare-related prerecorded messages (such as prescription refill reminders) explained that such calls not only improve patient outcomes, especially for the most vulnerable patients,[4] but also help control healthcare costs.[5] In fact, the FTC cited with approval one commentator's report noting that "up to 70% of patients with long-term prescriptions fall off therapy in the absence of prescription refill reminders, with resulting costly adverse impacts, including increased hospitalization, morbidity and mortality rates." 2008 Final Rules, 73 Fed. Reg. at 51191 (quotations omitted). The FTC recognized that:

---

[3] Both the FTC and FCC have jurisdiction over telemarketing. The FTC, like the FCC, has the authority to adopt rules prohibiting deceptive and abusive telemarketing acts or practices, including "unsolicited telephone calls which the reasonable consumer would consider coercive or abusive of such consumer's right to privacy." *Telemarketing Consumer Fraud and Abuse Prevention Act, codified at* 15 U.S.C. § 6102.

[4] "While proactive patients who are attentive to their healthcare may be likely to provide a written agreement to authorize prerecorded messages from their healthcare providers, such reminder and other communications are most needed by the patients who are least attentive to their healthcare—those who 'frequently procrastinate or make ill-informed decisions'—and therefore are least likely to get around to responding to requests for authorization to receive such calls." 2008 Final Rules, 73 Fed. Reg. at 51191.

[5] "[A]vailable alternatives to the use of interactive prerecorded messages are more expensive, less efficient or less successful in communicating with patients; and would strain the ability of the healthcare system to comply without passing on significant cost increases." 2008 Final Rules, 73 Fed. Reg. at 51190, n. 327 (internal citations omitted).

> [I]n addition to generating demonstrable improvements in patient outcomes, the use of inexpensive prerecorded calls plays an important cost-containment role in the provision of medical services, many of them publicly funded, and in facilitating the record-keeping that governmental healthcare reimbursement regulations require. Requiring the prior written agreement of patients to receive prerecorded calls subject to HIPAA quite obviously could burden or jeopardize the improved medical outcomes that such calls have made possible by enabling healthcare providers to achieve higher rates of patient compliance with treatment regimens at low cost.

*Id.* The FTC ultimately concluded that a complete exemption of such calls from the TSR's consent requirements was necessary and appropriate for six reasons: (i) delivery of healthcare-related prerecorded calls subject to HIPAA was already extensively regulated at the federal level; (ii) regulating such calls in the TSR "could frustrate the Congressional intent embodied in HIPAA, as well as other federal statutes governing healthcare-related programs;" (iii) the number of healthcare providers who might call a patient was inherently limited, "in sharp contrast to the virtually limitless number of businesses conducting commercial telemarketing campaigns," so allowing such calls did not pose a great risk of privacy infringement; (iv) "there is no incentive, and no likely medical basis, for providers who place healthcare-related prerecorded calls to attempt to boost sales through an ever-increasing frequency or volume of calls;" (v) the record did not show that consumers consider these calls "coercive or abusive;" and (vi) the FTC's "law enforcement experience" did not show that these calls have been "the focus" of "privacy abuses." *Id.* at 51191-92.

### iii. The FCC Endorses Prescription Refill Reminder Calls

As early as 2010, the FCC expressed its intent to exclude healthcare information calls, such as prescription refill reminders, from the FCC's regulations under the TCPA. In a 2010 TCPA Notice of Proposed Rulemaking ("NPRM"), the FCC proposed to conform its rules to the FTC's rules. One way in which it proposed to do this was to exempt healthcare-related calls

from the TCPA, like the FTC did in the TSR. *See In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, FCC 12-21, 27 FCC Rcd. 1830, 1836-37 (Feb. 15, 2012) ("2012 Report and Order"). In the 2012 Report and Order, the FCC concluded that "[i]n view of the privacy protections afforded under HIPAA, we exempt from our consent, identification, time-of-day, opt-out and abandoned call requirements all prerecorded health care-related calls to residential lines that are subject to HIPAA," including prescription refill reminders.[6] *Id.* at 1852. The FCC noted that "HIPAA's existing protections . . . already safeguard consumer privacy;" that such calls "serve a public interest purpose: to ensure continued consumer access to health care-related information;" "do not tread heavily upon the consumer privacy interests because these calls are placed by the consumer's health care provider to the consumer and concern the consumers' health;" and that the exemption "advances the statutory goal of maximizing consistency with the FTC's rules, and our record affirmatively supports adopting the FTC's approach." *Id.* at 1853-55. Although in the 2012 Report and Order the FCC initially considered an exemption from the TCPA for healthcare-information calls to residential lines, the FCC's Final Rules extended the healthcare-related exemption to calls to cell phones. *See* 47 C.F.R. § 64.1200(a)(2) (providing exemption for calls to cellular services that "deliver[] a 'health care' message made by, or on behalf of, a 'covered entity' or its 'business associate,' as those terms are defined in the HIPAA Privacy Rule."[7]

The Plaintiff's claim here attacks a beneficial program that improves healthcare and lowers healthcare costs by providing healthcare information widely and cheaply by automated

---

[6] The FCC's 2012 Report and Order makes specific reference to one commentator's support for the exemption of health care-related calls—including prescription refill reminder calls—noting that such calls are necessary as they allow "the continuation of important communications by health care providers and health insurance plans . . . ." 2012 Report and Order, 27 FCC Rcd. at 1854.

[7] The FCC's new regulations also created a new written consent requirement for certain telemarketing calls. The FCC delayed implementation of the new regulations for a year, until October 16, 2013, in order to allow businesses sufficient time to conform to the new written consent requirement.

telephone calls. Prescription refill reminder calls have been repeatedly recognized by federal regulators as an important healthcare tool that serves the public interest. Congress did not intend to prohibit such calls in the TCPA. The statutory exemption for communication of health and safety information applies to these calls, exempting them from the prohibitions of the TCPA.

## CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed with prejudice.


Dated: August 30, 2013

Respectfully submitted,

/s/ Bradley J. Andreozzi
Bradley J. Andreozzi
bradley.andreozzi@dbr.com
Chancé L. Cooper
chance.cooper@dbr.com
**DRINKER BIDDLE & REATH LLP**
191 North Wacker Drive, Suite 3700
Chicago, IL 60606-1698
Tel: (312) 569-1000
Fax: (312) 569-3000

*Counsel for Defendant Walgreen Co.*