**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

ROBERT KOLINEK, individually and on behalf of all others similarly situated,

*Plaintiff*,

*v*.

WALGREEN CO., an Illinois corporation,

*Defendant*.

Case. No. 13-cv-04806

Honorable Mathew F. Kennelly

**PLAINTIFF KOLINEK'S RESPONSE IN OPPOSITION TO DEFENDANT WALGREENS' MOTION TO DISMISS**

## TABLE OF CONTENTS

**INTRODUCTION** .......... 1

**FACTUAL BACKGROUND** .......... 2

**ARGUMENT** .......... 3

**I. Kolinek's Provision of His Cell Phone Number to Walgreens Nearly Ten Years Ago Does Not Constitute the "Prior Express Consent" Required to Make the Robocalls at Issue** .......... 3

**II. Walgreens' Robocall Refill Reminders do not Fall into the TCPA's "Emergency Purpose" Exemption** .......... 7

A. Contrary to Walgreens' Assertions, the FCC has not Ruled that Prescription Refill Reminders Constitute Calls Made for an "Emergency Purpose" .......... 7

B. The Other Regulatory Commentary on Healthcare-Related Calls Relied Upon by Walgreens does not Bring its Robocall Refill Reminders Within the Emergency Purpose Exemption .......... 8

**CONCLUSION** .......... 10

## TABLE OF AUTHORITIES

**United States Circuit Court of Appeals Cases:**

*Edeh v. Midland Credit Mgmt., Inc.*, 413 F. App'x 925 (8th Cir. 2011) ....................................... 3

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) ............................................ 3

**United States District Court Cases:**

*Edeh v. Midland Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030 (D. Minn. 2010)............................... 4

*In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253 (S.D. Cal. 2012)................... 5

*Mais v. Gulf Coast Collection Bureau, Inc.*, No. 11-cv-61936,
2013 WL 1899616 (S.D. Fla. May 8, 2013) ....................................................................... 5

*Thrasher-Lyon v. CCS Commercial, LLC*, No. 11-cv-04473,
2012 WL 3835089 (N.D. Ill. Sept. 4, 2012) .................................................................. 3, 5

**State Court Cases:**

*Travel, Kirkwood v. Jen N.Y., Inc.*, 206 S.W.3d 387 (Mo. Ct. App. 2006) .................................... 3

**Statutory and Regulatory Authorities:**

47 C.F.R. § 64.1200 ........................................................................................... 5 n.2, 7, 9 n.5

47 U.S.C. § 227 ........................................................................................................... *passim*

*In the Matter of Dialing Servs., LLC*, 28 F.C.C.R. 1840 (2013) ............................................ 6 n.4

*In the Matter of Implementation of the Middle Class Tax Relief & Job Creation Act of 2012*,
27 F.C.C.R. 13615 (2012)............................................................................................. 7

*In the Matter of Richard Gilmore d/b/a Democratic Dialing*, 28 F.C.C.R. 1831 (2013)......... 6 n.4

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
7 F.C.C.R. 8752 (1992)........................................................................................... 4, 8-9

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
23 F.C.C.R. 559 (2008)........................................................................................ 6, 6 n.3

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
27 F.C.C.R. 1830 (2012)...................................................................... 7, 9, 9 n.5, 10

Pub. L. No. 102-243, 105 Stat. 2394 ......................................................................... 5 n.1

Pub. L. No. 109-347, 120 Stat. 1884 .......... 7

**<u>Miscellaneous Authorities</u>:**

Black's Law Dictionary 323 (8th ed.) .......... 3

FCC, Wireless Emergency Alerts (WEA), http://www.fcc.gov/guides/wireless-emergency-alerts-wea .......... 8

## INTRODUCTION

Plaintiff Robert Kolinek brings this putative class action on behalf of himself and a class of similarly situated individuals challenging Defendant Walgreen Co.'s ("Walgreens") making of repeated robocalls to the cell phones of Plaintiff and the putative Class purporting to remind them of their need to refill prescriptions at its pharmacies, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. 227, *et seq*. ("TCPA"). Walgreens now seeks dismissal of Kolinek's claims in their entirety under Fed. R. Civ. P. 12(b)(6) (the "Motion").

Walgreens contends that the complaint should be dismissed for two reasons: (1) Plaintiff consented to receiving its robocalls by providing Walgreens with his cell phone number at some point in the past, and (2) the robocalls are not actionable under the TCPA because they fall within the TCPA's "emergency purpose" exemption. As explained further below, neither argument requires dismissal and thus, Walgreens' Motion must ultimately be denied.

First, merely providing a cell phone number to a business does not constitute the prior express consent the TCPA requires. Instead, the call recipient must have provided a clear and unmistakable statement that he or she consented to being robocalled and for what purpose. Neither of those things occurred here. Kolinek provided his cell phone number to a Walgreens' pharmacist nearly ten years ago and only for the stated purpose of verifying his identity when he attempted to pick-up or fill prescriptions later. Kolinek did not agree to be robocalled and did not agree to receive prescription refill reminders, nor could he, given that he provided his cell phone number to Walgreens nearly a decade before the robocall program even existed.

Setting aside that Kolinek didn't consent to receive the calls, it's clear that they don't fall within the TCPA's emergency purpose exemption, as Walgreens suggests. 47 U.S.C. § 227(b)(1). The exemption is reserved for serious, widespread, and imminent situations

impacting the health and safety of the public at large—for example, hazardous utility outages and terrorist attacks. Calls to individual consumers about Walgreens' belief that they need to refill prescriptions and should do so at its pharmacies simply don't rise to that level of public impact.

For all of these reasons Plaintiff Kolinek respectfully requests that the Court enter an Order denying Walgreens' Motion in its entirety.

## FACTUAL BACKROUND

In early 2012 and in an effort to bolster its share of the consumer pharmacy market, Walgreens began a campaign of placing automated telephone calls (or "robocalls") to its past and present pharmacy customers, all of which featured a prerecorded message "reminding" them that their prescriptions were due for a refill and encouraging them to visit a Walgreens' pharmacy to do so. (Complaint [cited as "Compl."], Dkt. 1 ¶¶ 3, 14.) The calls weren't made only to individuals who had actually requested the reminders. (*Id.* ¶¶ 4-5, 15.) Instead, Walgreens simply extracted telephone numbers from its database of pharmacy customers and indiscriminately called each of them in hopes that they would bring their prescription needs to a Walgreens pharmacy. (*Id*. ¶ 15) As a result, each and every Walgreens pharmacy customer—several thousand of them—who had ever provided a telephone number to Walgreens—at any time in the past and for any reason—was automatically opted-in to the refill reminder program without notice. (*Id.* ¶¶ 15-16.)

The unexpected nature of the calls led many consumers to believe that their telephone numbers had been compromised and were being used in a scam to gather personal information, which triggered a wave of online complaints. (*Id.* ¶ 17.) Plaintiff Kolinek's experience makes clear why. Nearly a decade ago, Kolinek visited a Walgreens drugstore to fill a prescription. (*Id*.

¶ 18.) At that time and at the pharmacist's direction, he provided his cell phone number for the sole purpose of verifying his identity when picking up or filling prescriptions in the future. (*Id.*) Then ten years later and without notice, Kolinek began receiving numerous calls from Walgreens on his cell phone featuring a prerecorded message reminding him that his prescriptions were available for a refill and suggesting that he come to Walgreens to fill them. (*Id*.) Kolinek, like each member of the Class, never consented to receiving such calls—nor could he have, given that the reminder program didn't exist at the time he provided his phone number—and did not wish to receive such calls. (*Id.* ¶¶ 18-19.)

## ARGUMENT

### I. Kolinek's Provision of His Cell Phone Number to Walgreens Nearly Ten Years Ago Does Not Constitute the "Prior Express Consent" Required to Make the Robocalls at Issue.

As a threshold matter, Kolinek's provision of his cell phone number to Walgreens ten years ago—before the refill reminder program at issue even existed—and for the purpose of verifying his identity does not amount to the "prior express consent" the TCPA requires before making such calls. *See* 47 U.S.C. § 227(b)(1)(iii). Instead, it is well-settled that "prior express consent" must be "'clearly and unmistakably stated[,]'" *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009) (citing Black's Law Dictionary 323 (8th ed.)), which means that a caller is "not permitted to make an automated call to [an individual's] cell phone unless [that individual] had previously said to [the caller]…something like…: 'I give you permission to use an automatic telephone dialing system to call my cellular phone." *Edeh v. Midland Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030, 1038 (D. Minn. 2010) *aff'd*, 413 F. App'x 925 (8th Cir. 2011); *Thrasher-Lyon v. CCS Commercial, LLC*, No. 11-cv-04473, 2012 WL 3835089, at *3 (N.D. Ill. Sept. 4, 2012); *see also Travel, Kirkwood v. Jen N.Y., Inc.*, 206 S.W.3d 387, 392 (Mo.

Ct. App. 2006) (holding that "[i]f the consent is not manifested by explicit and direct words, but rather is gathered only by implication or necessary deduction from the circumstances, the general language, or the conduct of the parties, it is not express consent").

To avoid this well-settled proposition, Walgreens relies heavily on the Federal Communications Commission's ("FCC") 1992 Report and Order for the proposition that the provision of a telephone number to a business—regardless of the circumstances—amounts to an "invitation" to be called. (*See* Walgreens' Memorandum in Support of Motion to Dismiss [cited as "Def. Mot."], Dkt. 20 at 5-8 (citing *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C.R. 8752, 8769 [the "1992 Report and Order"])). But that argument mischaracterizes the FCC's "invitation" discussion, which addressed only the idea that a business might face liability under the TCPA where it simply responded to inbound customer calls, but had not yet had an opportunity to obtain consent to return those calls. 7 F.C.C.R. at 8769. In that context alone, the FCC reached the logical conclusion (but did not formally order) that a consumer who contacts a business and provides a phone number where they can be reached does so "with the expectation that the party to whom the number was given will return the call" and therefore, "have in effect given their invitation or permission to be called at the number which they have given." *Id*. In any event, that's not at all what happened here. Instead, Kolinek alleges that he provided his cell phone number to a Walgreens' pharmacist (ten years ago) for the sole purpose of verifying his identity when filling prescriptions. (Compl. ¶¶ 18-19.) He never contacted Walgreens and asked for a return call—as the 1992 Report and Order scenario contemplates—and he never requested that Walgreens robocall him when it believed he was in need of a prescription refill. (*Id*.)

Walgreens' theory is also inconsistent with the plain language of the TCPA inasmuch as it would substitute a lesser standard of "implied" consent—"consent inferred from one's conduct rather than from one's direct expression", *Mais v. Gulf Coast Collection Bureau, Inc.*, No. 11-cv-61936, 2013 WL 1899616, at *9 (S.D. Fla. May 8, 2013)—where the statute unmistakably requires "express" consent. 47 U.S.C. § 227(b)(1)(A)(iii).[1] Indeed, as one court in this District recently held,

> [b]izarre would be to read "express consent" as "implied consent." In ordinary parlance, there is no such thing as "implied express consent"—that is an oxymoron. Giving out one's phone number, at least outside of the special relationship sanctioned by the FCC, is not "express" consent to besiegement by automated dialing machines. One "expresses" consent by, well, expressing it: stating that the other party can call, or checking a box on form or agreeing to terms of service that explicitly permit automated telephone contact…. "Express" connotes a requirement of specificity, not "general unrestricted permission" inferred from the act of giving out a number.

*Thrasher-Lyon*, 2012 WL 3835089, *5 (Tharp, J.); *see also In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1259 n.7 (S.D. Cal. 2012) (expressing doubt that provision of a telephone number on one invoice constituted prior express consent to receive ads concerning future oil changes).[2]

---

[1] Taken to its logical conclusion, Walgreens' interpretation of "express consent" would allow any business with a database of consumer telephone numbers to place robocalls to those consumers with impunity, regardless of when and why the numbers called were provided. In this case then, Walgreens could robocall Kolinek for more than just refill reminders, but also to promote a sale on bottled water or advertise a newly available cold medicine, all because he provided his contact information to its pharmacy ten years earlier for verification purposes. Obviously, this overbroad interpretation undermines Congress's intent in enacting the TCPA—to protect consumers from the "invasion of privacy" and "nuisance" of prerecorded calls—and can't be taken seriously. *See Telephone Consumer Protection Act of 1991*, Pub. L. No. 102-243, 105 Stat. 2394 (codified as amended at 47 U.S.C. § 227, *et seq*.).

[2] Notably, the FCC's new guidelines (effective October 16, 2013) will replace the "prior express consent" requirement with the requirement that "prior express *written* consent" be obtained before making most telemarketing calls, thus signaling an unequivocal move away from the relaxed interpretation of consent Walgreens urges here. 47 C.F.R. § 64.1200(a)(2) (revised text).

Finally, Walgreens' reliance on several opinions holding that implied consent was sufficient for debt collectors to avoid liability under the TCPA is misplaced. (*See* Def. Mot. at 5-6). First, this case doesn't involve any alleged debt—Kolinek owes no debt to Walgreens and the robocalls were not made for the purpose of collecting any debt. And second, even in the debt collection context, the FCC has made clear that the calling party is responsible for demonstrating that it, in fact, obtained "prior express consent" to make the collection calls by including "language on the credit application or other documents informing the consumer that, by providing a wireless telephone number, the consumer consents to receiving autodialed . . . calls from the creditor . . . at that number." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C.R. 559, 568 (2008).[3] Setting aside (again) that this case isn't about debt collection calls, Walgreens has not identified any such disclosures that it made to Kolinek, nor could it, given that the robocall reminder program didn't even exist until ten years after he provided his phone number.[4] Consent is simply not a viable defense for Walgreens here, and certainly doesn't mandate that the complaint be dismissed

[3] In the debt collection context, the FCC has also taken care to "emphasize that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that [it] was provided during the transaction that resulted in the debt owed[,]" 23 F.C.C.R. at 564-55, and further, that the scope of the consent is limited to "be[ing] called at that number regarding the debt." *Id*. at 564. Thus, even if the same rules applied to debt collectors also applied to Walgreens (they don't), Walgreens still would have fallen far short of its obligation to obtain appropriate consent to robocall Kolinek and the putative Class.

[4] The fact that so many consumers believed that Walgreens' robocalls were the result of their phone numbers having been compromised as part of a larger identity theft scheme (Compl. ¶ 17), is also strong indication that Walgreens did not have the requisite consent to make the calls. *See e.g., In the Matter of Richard Gilmore d/b/a Democratic Dialing*, 28 F.C.C.R. 1831, 1835 (2013) (finding that consumers' expression of "significant frustration and anger" at receiving prerecorded message calls further demonstrated that defendant "did not have the prior express consent of these called parties to make an autodialed, prerecorded call to their mobile phones"); *In the Matter of Dialing Servs., LLC*, 28 F.C.C.R. 1840, 1844 (2013) (same).

## II. Walgreens' Robocall Refill Reminders do not Fall into the TCPA's "Emergency Purpose" Exemption.

In the alternative, Walgreens argues that even if Kolinek didn't consent to receive the robocall reminders, it's nevertheless free from liability because the calls fall within the TCPA's "emergency purpose" exemption. *See* 47 U.S.C. § 227(b)(1)(A)–(B). That argument doesn't withstand scrutiny either.

### A. Contrary to Walgreens' Assertions, the FCC has not Ruled that Prescription Refill Reminders Constitute Calls Made for an "Emergency Purpose."

The TCPA's emergency purpose exemption is limited. *See, e.g., In the Matter of Implementation of the Middle Class Tax Relief & Job Creation Act of 2012*, 27 F.C.C.R. 13615, 13628–29 (2012) ("We emphasize the limited nature of this exception and will be vigilant in monitoring and taking enforcement action against [operators of automatic dialing equipment] who attempt to use it for calls that are not for emergency purposes."). It does not, as Walgreens suggests, apply to any and all healthcare-related calls, nor does it apply under circumstances where less than a group of individuals would be affected by the "situation" being called about. *See* 47 C.F.R. § 64.1200(f)(4). Instead, the exemption requires a much greater scale of effect—*i.e.*, conditions that affect the public at large—and seriousness—*e.g.*, conditions that pose risks of serious bodily injury or death.

By way of example, calls made pursuant to the Warning Alert and Response Network (WARN) Act are made for an "emergency purpose" and meet the exemption. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 (2012) (the "2012 Report and Order"). Congress established WARN as a unified national hazard system to "alert the public to any *imminent threat* that presents a *significant risk of injury or death to the public*." *See generally* Warning, Alert and Response Network ("WARN") Act, Title VI of the Security and Accountability for Every Port Act of 2006, Pub. L. No. 109-347 § 2(b)(1),

120 Stat. 1884 (2006). Similarly, Wireless Emergency Alerts (made pursuant to WARN) meet the exemption because they are used to "send emergency alerts regarding public safety emergencies, such as *evacuation orders* or *shelter in place orders* due to *severe weather, a terrorist threat or chemical spill*." FCC, *Wireless Emergency Alerts (WEA)*, http://www.fcc.gov/guides/wireless-emergency-alerts-wea (last accessed Sept. 16, 2013). These "[a]lerts from WEA cover only critical emergency situations," and include messages from the President, alerts involving imminent threats to safety or life, and Amber Alerts. *Id*.

In the public utility context, the FCC has also recognized that calls warning of "[s]ervice outages and interruptions in the supply of water, gas or electricity" that pose potentially hazardous conditions to the public health and safety are made for an emergency purpose. 1992 Report and Order, 7 F.C.C.R. at 8778. That's because they quickly disseminate information concerning dangerous circumstances to large numbers of people. *Id*.

By contrast, the FCC has never suggested that situations affecting only individual members of the public—like the need to refill prescriptions—rise to the level of an "emergency", and certainly hasn't specifically held that prescription refill reminders fall within the scope of the exemption. Of course, that makes sense given that there are any number of reasons why a consumer might choose not to refill a prescription—for example, their doctor has ordered them to discontinue use of the drug to be refilled, they have switched medications, they've filled the prescription at another pharmacy, etc.—all of which fall well short of posing a risk of serious bodily injury or death to the general public like the other scenarios described above.

B. The Other Regulatory Commentary on Healthcare-Related Calls Relied Upon by Walgreens does not Bring its Robocall Refill Reminders Within the Emergency Purpose Exemption.

Walgreens' reliance on commentary from the Department of Health and Human Services ("HHS") and the Federal Trade Commission ("FTC"), as well as the FCC's newly promulgated

rules from its 2012 Report and Order, to support the idea that prescription refill reminders fall within the TCPA's emergency purpose exemption is also misplaced for several reasons.

First, that HHS and the FTC have found prescription refill reminders to be in the "public interest" because they promote "high quality and affordable healthcare" bears nothing on whether such calls are made for an "emergency purpose"—*i.e.*, to inform the public at large of the potential risk of serious bodily injury or death. Moreover, the FCC—the agency actually tasked with promulgating the TCPA's implementing regulations—has never held that prescription refill reminder calls are made for an "emergency purpose", despite specifically identifying many other types of calls that do—*e.g.*, calls about disruption in public utilities, terrorist attacks, etc. *See, e.g.*, 1992 Report and Order, 7 F.C.C.R. at 8778; 2012 Report and Order 27 F.C.C.R. at 1837.

The FCC's new rules from the 2012 Report and Order don't provide any guidance on the issue either. Indeed, rather than speak to the application of the emergency purpose exemption in this context, they simply exempt certain healthcare-related "prerecorded calls to *residential lines*" from the TCPA's express consent requirements. 2012 Report and Order, 27 F.C.C.R. at 1831.[5] But even if the new rules were substantively relevant (they aren't), they wouldn't change

[5] Though it doesn't argue that the new rules apply here, it bears noting that Walgreens is mistaken that the rules apply equally to landline and cellular phones. (*See* Def. Mot. at 14.) The 2012 Report and Order could not be clearer that "[n]one of [the FCC's] actions change requirements for prerecorded messages that are non-telemarketing, informational calls . . . Such calls continue to require some form of prior express consent under the TCPA and the Commission's rules, if placed to wireless numbers and other specified recipients." 27 F.C.C.R. at 1831. The language of the new rules themselves reflects this distinction as well. 47 C.F.R. § 64.1200(a)(2) (prohibiting calls to cellular telephones that use an artificial or prerecorded voice or automatic dialing equipment, "other than a call made with the prior express written consent of the called party *or the prior express consent of the called party when the call . . . delivers a 'health care' message made by, or on behalf of, a 'covered entity'* . . .") (emphasis added); *see also* 47 C.F.R. § 64.1200(a)(3) (revised text) (prohibiting prerecorded calls to residential lines made "without the prior express written consent of the called party" unless the call "delivers a

the outcome of the Motion because they don't take effect until October 16, 2013 and therefore, don't apply to the robocalls Kolinek received. *See* 27 F.C.C.R. at 1860.

In the end, Walgreens can point to no exemption that will insulate it from liability for its robocalling campaign. Its motion to dismiss should be denied in its entirety.

## CONCLUSION

For the foregoing reasons, Plaintiff Kolinek respectfully requests that this Court deny Walgreens' Motion in its entirety and Order Walgreens to answer his complaint.

Respectfully submitted,

Dated: October 11, 2013

By: /s/ Benjamin H. Richman
One of Plaintiff's attorneys

Jay Edelson
Rafey S. Balabanian
Benjamin H. Richman
Christopher L. Dore
EDELSON LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
jedelson@edelson.com
rbalabanian@edelson.com
brichman@edelson.com
cdore@edelson.com

Stefan L. Coleman, Esq.
LAW OFFICES OF STEFAN L. COLEMAN, LLC
201 South Biscayne Boulevard, 28th Floor
Miami, Florida 33131
Tel: (877) 333-9427
law@stefancoleman.com

'health care' message made by, or on behalf of, a 'covered entity' . . . [as defined under HIPAA]").

## CERTIFICATE OF SERVICE

I, Benjamin H. Richman, an attorney, hereby certify that on October 11, 2013, I served the above and foregoing ***Plaintiff Kolinek's Response in Opposition to Defendant Walgreens' Motion to Dismiss***, by causing a true and accurate copy of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this the 11th day of October 2013.

/s/ Benjamin H. Richman