# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

ROBERT KOLINEK, individually and on behalf of all others similarly situated,

       *Plaintiff*,

   vs.

WALGREEN CO., an Illinois corporation,

       *Defendant*.

Case No. 13-cv-4806

Honorable Matthew F. Kennelly

---

## DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE CLASS ACTION COMPLAINT PURSUANT TO RULE 12(b)(6)

---

Bradley J. Andreozzi
Justin O. Kay
**DRINKER BIDDLE & REATH LLP**
191 North Wacker Drive, Suite 3700
Chicago, IL 60606-1698
Tel:    (312) 569-1000
Fax:   (312) 569-3000

*Counsel for Defendant Walgreen Co.*

November 11, 2013

# TABLE OF CONTENTS

**Page**

SUMMARY OF THE ARGUMENT ........................................................................... 1

ARGUMENT ............................................................................................................. 2

I.     PLAINTIFF CANNOT AMEND HIS COMPLAINT VIA HIS OPPOSITION............... 2

II.    THE ALLEGATIONS IN THE COMPLAINT SHOW THAT PLAINTIFF
      CONSENTED AS A MATTER OF LAW TO THE CALLS FROM
      WALGREENS ..................................................................................................... 4

        A.     The FCC's Ruling Regarding "Express Consent" Is Binding On This
              Court ..................................................................................................... 6

        B.     The FCC's Definition Of Express Consent Is Not Limited To Return
              Phone Calls Or Debtor/Creditor Transactions ..................................... 10

III.   THE PRESCRIPTION REFILL REMINDER SERVICE FALLS SQUARELY
      WITHIN THE BROAD EMERGENCY PURPOSE EXEMPTION ............................. 12

CONCLUSION......................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re: CCS Commercial LLC*,
  No. 12-8041 (7th Cir. Dec. 17, 2012) ECF No. 6.....................................................9

*CE Design, Ltd. v. Prism Bus. Media, Inc.*,
  606 F.3d 443 (7th Cir. 2010) .......................................................................... *passim*

*CE Design, Ltd. v. Prism Bus. Media, Inc.,*
  No. 07 c 5838, 2009 U.S. Dist. LEXIS 70712 (N.D. Ill. Aug. 12, 2009)............................6, 7

*Chavez v. Advantage Grp.*,
  12cv2819, 2013 U.S. Dist. LEXIS 110522 (D. Col. Aug. 5, 2013) ..........................................9

*Edeh v. Midland Credit Mgmt, Inc.*,
  748 F. Supp. 2d 1030 (D. Minn. 2010)....................................................................10

*Edeh v. Midland Credit Mgmt., Inc.*,
  413 Fed. App'x 925 (8th Cir. 2011) .......................................................................10

*Gulf-Coast Collection Bureau, Inc. v Mais*,
  No. 13-90017 (11th Cir. Sept. 4, 2013) ..................................................................9

*In re: Jiffy Lube International, Inc. Text Spam Litigation*,
  847 F. Supp. 2d 1253 (S.D. Cal. 2012)..............................................................9, 10

*Kinney v. City of Waukegan*,
  No. 12 c 6810, 2013 U.S. Dist. LEXIS 114569 (N.D. Ill. Aug. 14, 2013)...............................2

*Mais v. Gulf-Coast Collection Bureau, Inc.*,
  No. 11-61936-civ, 2013 U.S. Dist. LEXIS 65603 (S.D. Fla. May 8, 2013)............................9

*Mais v. Gulf-Coast Collection Bureau, Inc.*,
  No. 11-61936-civ, 2013 U.S. Dist. LEXIS 81129 (S.D. Fla. June 10, 2013)..........................9

*Peoria v. Gen. Elec. Cablevision Corp.*,
  690 F.2d 116 (7th Cir. 1982) ...............................................................................6

*Pinkard v. Wal-Mart Stores, Inc.*,
  No. 3:12cv2902, 2012 U.S. Dist. LEXIS 160938 (N.D. Ala. Nov. 9, 2012)................... *passim*

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*,
  631 F.3d 436 (7th Cir. 2011) ...............................................................................2

*Satterfield v. Simon & Schuster, Inc.*,
  569 F.3d 946 (9th Cir. 2009) ............................................................................8

*Thrasher-Lyon v. CCS Commercial, LLC*,
  No. 11 c 4473, 2012 U.S. Dist. LEXIS 125203 (N.D. Ill. Sept. 4, 2012)..........7, 8, 9

*Thrasher-Lyon v. CCS Commercial, LLC*,
  No. 11 c 4473, 2012 U.S. Dist. LEXIS 157230 (N.D. Ill. Nov. 2, 2012)...........8, 9

*Thrasher-Lyon v. CCS Commercial LLC*,
  No. 12-3891 (7th Cir. June 18, 2013) ECF No. 27 ...................................9

*Travel Travel Kirkwood Inc. v. Jen N.Y. Inc.*,
  206 S.W. 3d 387 (Mo. Ct. App. 2006) ...........................................8, 10

**STATUTES, RULES & REGULATIONS**

47 C.F.R. § 64.1200 (2013) ...............................................................12, 13

225 Ill. Comp. Stat. 85/19 (2013) ...........................................................3

47 U.S.C. § 227(b) ...........................................................................4, 13

**OTHER AUTHORITIES**

137 Cong. Rec H. 11307 (Nov. 26, 1991). .................................................13, 15

137 Cong. Rec. S. 16204 (Nov. 7, 1991) ...................................................15

137 Cong. Rec. S. 18781 (Nov. 27, 1991) .................................................13

H.R. 102-317, 1st Sess., 102nd Cong. (Nov. 15, 1991)...............................11

*In re Implementation of the Middle Class Tax Relief & Job Creation Act of 2012*,
  27 F.C.C.R. 13,615 (Oct. 17, 2012) ...................................................15

*In re Rules & Regs. Implementing Tel. Consumer Prot. Act of 1991*,
  FCC 92-443, 7 FCC Rcd. 8752 (Oct. 16, 1992) ..........................*passim*

*In re Rules & Regs. Implementing Tel. Consumer Prot. Act of 1991*,
  27 FCC Rcd. 1830 (Feb. 15, 2012) ...................................................12, 15

*In re Tel. Consumer Prot. Act of 1991*,
  FCC 92-176, 7 FCC Rcd. 2736 (Apr. 17, 1992)...................................13

## SUMMARY OF THE ARGUMENT

Plaintiff's Complaint is hardly the typical TCPA telemarketing suit. Plaintiff sues Walgreens for calling him—at the telephone number he voluntarily provided to Walgreens—to verify whether he wanted Walgreens to refill the prescription that he had brought to Walgreens to be filled in the first place. This suit challenges health information calls that are made only to *current customers* who have an *active prescription* at Walgreens that is due under the doctor's orders to be refilled and *who have voluntarily provided their phone numbers to Walgreens*. *See* Def. Br. at 1 (citing Cmplt. ¶¶ 4, 14, 22). Plaintiff's Opposition fails to show that Walgreens' service of notifying patients that their medicine is due for refill violates the TCPA.

In its Motion to Dismiss, Walgreens showed that its prescription refill reminder service does *not* violate the TCPA, and provided two independent bases for dismissing Plaintiff's Complaint. First, Plaintiff expressly consented as a matter of law to receiving the calls by voluntarily providing his cell phone number to his Walgreens pharmacist. Def. Br. at 1-2, 5-9. And second, because the calls serve the public interest by conveying information to consumers concerning their medical treatment (*i.e.*, that a current prescription is due for refill under the doctor's orders), the program qualifies under the TCPA's broad "emergency purpose" exemption for informational calls regarding health or safety. *Id.* at 2-3, 9-15. In responding to these arguments, Plaintiff relies on a series of baits-and-switches.

First, Plaintiff attempts to re-write the allegations of the Complaint to suggest (i) that Walgreens makes calls "indiscriminately" to past customers, and (ii) that he placed an affirmative limitation on the use of his phone number when he provided it to the Walgreens pharmacist. The actual allegations of the Complaint, however, are much different—Plaintiff's own allegations show that the calls are made only to **current** Walgreens' customers with a

*current* prescription due for refill—these are health information calls, not telemarketing—and

that Plaintiff provided his telephone number with no restrictions whatsoever.

Second, having no good response to the authority cited in Defendant's Brief that Plaintiff

consented as a matter of law to receive these calls, Plaintiff asks this Court to reject or ignore the

FCC's ruling that "persons who knowingly release their phone numbers have in effect given their

invitation or permission to be called at the number which they have given." *In re Rules & Regs.*

*Implementing Tel. Consumer Prot. Act of 1991*, FCC 92-443, 7 FCC Rcd. 8752, 8769 (Oct. 16,

1992) ("1992 Report and Order").  In place of the FCC's ruling regarding "express consent"

under the TCPA, Plaintiff urges this Court to adopt Plaintiff's own interpretation of the term.  Pl.

Br. at 3-6.  But Plaintiff fails to inform this Court that under the Administrative Orders Review

Act (commonly referred to as the "Hobbs Act"), the FCC's ruling is binding on this Court.  *See*

*CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010) (citing 28 U.S.C. §

2342(1), 47 U.S.C. § 402(a), and 47 U.S.C.§ 405(a)).

Third, unable to contest that the FCC's definition of the "broad" "emergency purpose"

exception to the TCPA (1992 Report and Order at 8778) applies on its face, Plaintiff simply

quotes language from *other* statutes, passing that more narrow language off as part of the TCPA.

*See* Pl. Br. at 7-10.  This is simply another "bait and switch" that cannot withstand scrutiny.

## ARGUMENT

## I.    PLAINTIFF CANNOT AMEND HIS COMPLAINT VIA HIS OPPOSITION.

"[A] plaintiff may not amend his complaint in his response brief."  *Pirelli Armstrong Tire*

*Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011).  Yet, that

is precisely what Plaintiff here attempts by "subtly reorienting" the facts (*id.*) and including "new

allegations, legal theories, and factual assertions."  *Kinney v. City of Waukegan*, No. 12 c 6810,

2013 U.S. Dist. LEXIS 114569, at *10 n.1 (N.D. Ill. Aug. 14, 2013).

-2-

First, Plaintiff attempts to re-write his allegations to paint the prescription refill reminder service as a scattershot, nationwide telemarketing scheme, asserting that the calls are made "indiscriminately" to "past and present pharmacy customers" "in hopes that they would bring their prescription needs to a Walgreens pharmacy." Pl. Br. at 2. But Plaintiff makes no such allegations in the Complaint. Rather, he alleges that the calls are "'reminders' encouraging customers to **re**fill an eligible [*i.e.*, current] prescription at a Walgreens pharmacy." Cmplt. ¶ 14 (emphasis added). Indeed, Plaintiff's assertions in his Opposition are nonsensical—customers cannot receive a reminder to refill their prescription at Walgreens unless they have *already* "br[ought] their prescription needs to a Walgreens pharmacy" to be filled in the first instance. Pl. Br. at 2. And once the customer has brought the prescription to Walgreens, only Walgreens can refill it unless the customer transfers the prescription to another pharmacy, in which case the prescription will not be "eligible" for "refill" at Walgreens, and the customer will not receive a refill reminder call. *See, e.g.*, 225 Ill. Comp. Stat. 85/19 (2013) (when a pharmacist receives a request to transfer a prescription, he shall "Cancel the prescription on file by writing the word 'void' on its face or the electronic equivalent, if not in written format. No further prescription information shall be given or medication dispensed pursuant to such original prescription.").

Second, Plaintiff attempts to rewrite his allegations to suggest that he placed a limitation on the consent he provided, asserting that he "provided his cell phone number to a Walgreens' pharmacist nearly ten years ago and only for the stated purpose of verifying his identity when he attempted to pick-up or fill prescriptions later." Pl. Br. at 1. But the allegations in the Complaint are much different—although Kolinek alleges that the Walgreens' *pharmacist* "informed him that the number was needed for verification purposes" (Cmplt. ¶ 18), Kolinek does ***not*** allege (as he implies in his Opposition) that he, *Plaintiff*, said anything to limit the use of his telephone

number. Moreover, while Plaintiff *argues* now, some ten years later, that "verification" meant that the telephone number would only be used to confirm Plaintiff's identity if two customers named Robert Kolinek attempted to fill prescriptions at the same Walgreens simultaneously, Plaintiff does not *allege* that the pharmacist said that the phone number would be used solely in that highly unlikely scenario (as opposed to verifying questions about the prescription by *calling* Plaintiff). *See id.* The bottom line is that Plaintiff does not allege that he ever instructed Walgreens that he would not receive calls at the phone number he voluntarily provided. And, as shown below, that failure to limit his consent is fatal to his claim.

## II.     THE ALLEGATIONS IN THE COMPLAINT SHOW THAT PLAINTIFF CONSENTED AS A MATTER OF LAW TO THE CALLS FROM WALGREENS.

The FCC has determined that the "prior express consent" exemption to the TCPA (47 U.S.C. § 227(b)(1)(A)) applies when a customer voluntarily provides his phone number to a business because "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." 1992 Report and Order at 8769. Because Plaintiff admits that he did so, he has pled himself out of court. *Pinkard v. Wal-Mart Stores, Inc.*, No. 3:12cv2902, 2012 U.S. Dist. LEXIS 160938, at *14, 16 (N.D. Ala. Nov. 9, 2012) (dismissing claim because, "[b]y her complaint's own admission, plaintiff provided her telephone number to defendant at defendant's request," thereby providing "'clear and unmistakable' consent to be contacted at that number").

In *Pinkard*, the plaintiff alleged that when she dropped off a prescription at a Wal-Mart pharmacy, she was asked for her cellular number "in case there were any questions that came up." *Id.* at *5. After receiving text messages with *solicitations* from Wal-Mart, she filed suit. *Id.* at *18. Wal-Mart moved to dismiss, arguing that under the FCC's ruling Plaintiff had expressly consented to receive text messages when she provided her number. *Id.* at *9. Plaintiff

responded that her consent was "limited" because "no one at Wal-Mart mentioned anything about using plaintiff's private information that they were able to get *from her* and then enrolling her into an automated service or program . . . ." *Id.* at *18 (emphasis in original). In rejecting plaintiff's argument, the court in *Pinkard* cited the FCC's 1992 Report and Order and noted that the plaintiff "invert[ed] the burden of proof on the issue. Once she voluntarily provided defendant with her telephone number (*i.e.*, generally consented), it was *her* responsibility to *explicitly* state the limited scope of her consent.") *Id.* at *19 (emphasis in original).

The facts here are strikingly similar: Plaintiff alleges in his Complaint that he provided his cellphone number to a Walgreens pharmacist when requested "for verification purposes," but now argues that he did not consent to receive refill reminder calls because no one mentioned enrolling him in the automated prescription refill reminder service (which did not exist at the time). *Compare* Cmplt. ¶ 18 *with* Pl. Br. at 1. But Plaintiff fails to allege that he expressly limited his consent or stated that he did not wish to receive calls. Thus, here, as in *Pinkard*, Plaintiff's general consent precludes his TCPA claim. That the consent was provided before the refill reminder service existed is of no consequence—Plaintiff failed to provide **any** limitation on the scope of his consent. Nor did he ever revoke his consent although he could have done so at the push of a button on his phone whenever he received a reminder call. And the case for dismissal is even stronger here than in *Pinkard* because Plaintiff here received calls seeking to verify whether he wished to refill his prescription, whereas in *Pinkard*, the plaintiff received text solicitations that apparently were not limited to questions about her prescription.

Finding his claim foreclosed on the facts he pled, Plaintiff pivots his attack to the law, arguing that the FCC's interpretation of "express consent" is contrary to the plain language of the statute or somehow limited to making return phone calls or to debt collection. Pl. Br. at 3-6. But

what Plaintiff fails to tell this Court is that binding Seventh Circuit precedent requires this Court to apply the TCPA *as interpreted by the FCC* (which imposed no such limits)—Plaintiff's argument that "the FCC's rule [is] invalid [is] brought in the wrong court at the wrong time against the wrong party." *Peoria v. Gen. Elec. Cablevision Corp.*, 690 F.2d 116, 119 (7th Cir. 1982) (requiring party challenging FCC regulation to first petition the FCC to change its ruling).

## A. The FCC's Ruling Regarding "Express Consent" Is Binding On This Court.

"[T]he Administrative Orders Review Act, better known as the Hobbs Act, reserves to the courts of appeals the power 'to enjoin, set aside, suspend (in whole or in part), or to determine the validity of' all final FCC orders . . . ." *CE Design*, 606 F.3d at 446. The Hobbs Act "prevents the district court from considering the validity of final FCC orders," and its "jurisdictional limitations are 'equally applicable whether a party wants to challenge the rule directly or indirectly, by suing someone who can be expected to set up the rule as a defense in the suit.'" *Id.* at 448 & 446 n.3 (alterations omitted). It is the latter that is at issue here—Plaintiff is challenging the rule indirectly by urging this Court to disregard the FCC's ruling.[1]

The reasoning and holding of Judge Pallmeyer in *CE Design* is directly on point. 2009 U.S. Dist. LEXIS 70712, *aff'd CE Design*, 606 F.3d 443. In *CE Design*, the plaintiff alleged that the defendant had violated the TCPA by sending an unauthorized fax, and the defendant moved for summary judgment, arguing that the EBR exemption created by the FCC in the 1992 Report

---

[1] While Plaintiff nowhere mentions the Hobbs Act in his Opposition, he betrays his familiarity with that jurisdictional bar by suggesting that the FCC's ruling regarding express consent is a "logical conclusion," "not a formal[] order . . . ." Pl. Br. at 4. But if Plaintiff is seeking to set up an argument that the Hobbs Act does not apply, such an argument was refuted by the Supreme Court over seventy years ago: "Contrary to [p]laintiff's unsupported reasoning, it is not '[t]he particular label' assigned by the FCC that determines whether a decision is an order, but the 'substance of what the Commission has purported to do and has done which is decisive.'" *CE Design, Ltd. v. Prism Bus. Media, Inc.*, No. 07 c 5838, 2009 U.S. Dist. LEXIS 70712, at *30 (N.D. Ill. Aug. 12, 2009) (quoting *Columbia Broadcasting Sys. v. United States*, 316 U.S. 407, 416 (1942)) (rejecting argument that Existing Business Relationship ("EBR") exemption, which was included in 1992 Report and Order but not codified in the Code of Federal Regulations, was not a "final order" for purposes of the Hobbs Act).

and Order precluded liability. 2009 U.S. Dist. LEXIS 70712, at *2-3. In response, the plaintiff argued there (as Plaintiff argues here (*see* Pl. Br. at 4-5)) that "the FCC exceeded its rule-making authority and contradicted the plain language of the TCPA in promulgating the . . . exemption." *Id.* at *11. In rejecting the plaintiff's argument, Judge Pallmeyer held that the "[p]laintiff's approach is contrary to Seventh Circuit and other federal precedent regarding challenges to FCC Orders." *Id.* at *26. She noted that the plaintiff was required to first petition the FCC "for a rulemaking to modify the 1992 [Report and Order]," which the plaintiff there (like Plaintiff here) failed to do. *Id.* at *27 (citations and quotations omitted). And even if he had done so, the plaintiff was barred from contesting the FCC's exemption in the district court because the Hobbs Act assigned "exclusive jurisdiction to the courts of appeals." *Id.* at *28. Consequently, Judge Pallmeyer held that the FCC's ruling barred the plaintiff's claims. *Id.* at *44. On appeal, the Seventh Circuit affirmed, characterizing Judge Pallmeyer's opinion as "thorough and thoughtful." *CE Design*, 606 F.3d at 446.

What Plaintiff urges the Court to do here is precisely what the Seventh Circuit has determined the Court *cannot* do—ignore the FCC's ruling. *Compare* Pl. Br. at 4-5 (arguing that the 1992 Report and Order, on which "Walgreens relies heavily," "substitute[s] a lesser standard of 'implied' consent . . . where the statute unmistakably requires 'express' consent.") *with CE Design*, 606 F.3d at 447-48 ("[The plaintiff] argues that the FCC-created EBR defense conflicts with the TCPA's plain language . . . . [But the plaintiff's] request that the court 'ignore' the rule is just another way of asking it *not* to enforce the rule.").

The authorities cited by Plaintiff suggesting that this Court can ignore the FCC's ruling are of dubious precedential value. For example, Plaintiff relies on *Thrasher-Lyon v. CCS Commercial, LLC*, No. 11 c 4473, 2012 U.S. Dist. LEXIS 125203 (N.D. Ill. Sept. 4, 2012). But

that case is factually distinguishable—after the plaintiff was involved in a car accident, she provided her phone number to the victim and to the Chicago police, who in turn provided it to the victim's insurer, who then provided it to a collection agency that contacted the plaintiff via an automated call. *Thrasher-Lyon*, 2012 U.S. Dist. LEXIS 125203, at *2-3. Judge Tharp found those facts dispositive. *See Thrasher-Lyon v. CCS Commercial, LLC*, No. 11 c 4473, 2012 U.S. Dist. LEXIS 157230, at *4 (N.D. Ill. Nov. 2, 2012) ("*Thrasher-Lyon II*") (denying motion to reconsider, in part, because the plaintiff "never gave her telephone number, (and thus, her consent) *to Farmer's* [the victim's insurer], in whose shoes [the defendant] now stands"). Here, on the other hand, Plaintiff admits in his complaint that he provided his number to Walgreens— the entity by whom he was called. *See* Cmplt. ¶ 18.[2]

Moreover, none of the reasoning in *Thrasher-Lyon* can be reconciled with the Seventh Circuit's holding in *CE Design*. In *Thrasher-Lyon*, Judge Tharp held that his interpretation of express consent under the TCPA began and ended with the statute itself, "that the statutory language is not ambiguous and that [the plaintiff's] interpretation adheres to the plain language of [the statute] . . . ." 2012 U.S. Dist. LEXIS 125203, at *7. But the Seventh Circuit's holding in *CE Design* makes clear that the Hobbs Act bars the district court from offering its own interpretation of the TCPA when the FCC has already ruled.

Judge Tharp further held that prior express consent means "consent to robocalls, not just consent to receiving telephone calls," (*id.* at *8) and that the FCC's ruling regarding the TCPA was limited to a "debtor-creditor or other relationship where providing a phone number

---

[2] Plaintiff's other authority is distinguishable on this same basis. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 949 (9th Cir. 2009) (quoted at Pl. Br. at 3) (holding that plaintiff consented to receive text messages from "Nextones," but entity that sent texts was "not an affiliate or brand of Nextones, and therefore [plaintiff] did not expressly consent to receive this text from [the defendant]"); *Travel Travel Kirkwood Inc. v. Jen N.Y. Inc.*, 206 S.W. 3d 387, 392 (Mo. Ct. App. 2006) (cited at Pl. Br. at 3-4) (rejecting argument that "consent need not be personal or exchanged directly between the facsimile recipient and the sender").

'reasonably evidences' express consent to be called, even with automated equipment, about a debt." *Id.* at *11 (emphasis omitted). But those engrafted limitations appear nowhere in the 1992 Report and Order, which is controlling. See Part II.B, *infra*, at pp. 10-12.

Indeed, Plaintiff fails to note that in *Thrasher-Lyon II*, Judge Tharp recognized that his application of the law to the FCC's ruling regarding prior express consent "present[ed] 'substantial ground for difference of opinion'" arising out of "genuine doubt as to whether the district court applied the correct legal standard in its order." 2012 U.S. Dist. LEXIS 157230, at *8. On that basis, he permitted the defendant to seek interlocutory appeal. *Id.* at *13. The Seventh Circuit granted the defendant's petition for leave to appeal but the parties settled after the appellant filed its merits brief, and the appeal was dismissed. *In re: CCS Commercial LLC*, No. 12-8041 (7th Cir. Dec. 17, 2012) ECF No. 6 (order granting leave to appeal); *Thrasher-Lyon v. CCS Commercial LLC*, No. 12-3891 (7th Cir. June 18, 2013) ECF No. 27 (order dismissing appeal).[3]

Plaintiff also relies on dicta in *In re: Jiffy Lube International, Inc. Text Spam Litigation*, 847 F. Supp. 2d 1253 (S.D. Cal. 2012) for the proposition that it is "doubt[ful]" that providing one's telephone number on an invoice constitutes express consent. Pl. Br. at 5. In that case, a

---

[3] Plaintiff also cites *Mais v. Gulf-Coast Collection Bureau, Inc.*, No. 11-61936-civ, 2013 U.S. Dist. LEXIS 65603 (S.D. Fla. May 8, 2013) (Scola, J.) for the proposition that the FCC's interpretation of "express consent" should be ignored. Pl. Br. at 5. But Plaintiff fails to note that the case is now on interlocutory appeal to the Eleventh Circuit. *See Mais v. Gulf-Coast Collection Bureau, Inc.*, No. 11-61936-civ, 2013 U.S. Dist. LEXIS 81129 (S.D. Fla. June 10, 2013) (granting leave to petition for leave to appeal); *Gulf-Coast Collection Bureau, Inc. v Mais*, No. 13-90017 (11th Cir. Sept. 4, 2013) (order granting leave to file appeal).

Judge Scola's reasoning in the *Mais* decisions has drawn withering criticism. *See Chavez v. Advantage Grp.*, 12cv2819, 2013 U.S. Dist. LEXIS 110522, at *6-8 (D. Col. Aug. 5, 2013) (noting that the *Mais* court is "the only federal district court to conclude that the district courts have jurisdiction to review FCC rulings," finding the *Mais* court's analysis "legally insupportable," stating that "the *Mais* court went to great – indeed, one might say extreme – lengths to narrowly define [the Hobbs Act]," and declining to "engage in the semantical machinations which allowed the *Mais* court to bypass the jurisdictional boundary established by Congress.").

defendant argued that the claims should be dismissed because the plaintiffs expressly consented to receiving text messages by providing their numbers on invoices, and asked the court to take judicial notice of those invoices. *Jiffy Lube*, 847 F. Supp. 2d at 1258. The court refused to take judicial notice of the invoices because "the invoices are by no means alleged in the complaint," and denied the motion. *Id.* Here, in contrast, the Plaintiff alleges in his Complaint that he provided his phone number to Walgreens. *See* Cmplt. at ¶ 18.

And Plaintiff relies on authority expressly rejected by the Seventh Circuit in *CE Design* (which Plaintiff nowhere cites). Plaintiff quotes *Satterfield*, 569 F.3d 946, for the proposition that his act of providing his telephone number to Walgreens cannot constitute "prior express consent" under the TCPA. *See* Pl. Br. at 3. But in *CE Design*, the Seventh Circuit expressly rejected the reasoning in *Satterfield*, faulting the Ninth Circuit for "embark[ing] on a *Chevron* analysis of the FCC's order without considering the implications of the Hobbs Act." 606 F.3d at 450. Therefore neither *Satterfield* nor the cases which rely on it are good law. *See Jiffy Lube*, 847 F. Supp. 2d at 1259 n.7 (cited in Pl. Br. at 5) (quoting *Satterfield* to support reasoning).[4]

### B. The FCC's Definition Of Express Consent Is Not Limited To Return Phone Calls Or Debtor/Creditor Transactions.

Plaintiff contends that the FCC analyzed express consent only in the narrow contexts of (i) a business responding to a an inbound customer call before it had the opportunity to obtain consent to return such calls, and (ii) a debtor/creditor relationship. Pl. Br. at 4, 6. Plaintiff is

---

[4] The ruling in *Edeh v. Midland Credit Management, Inc.*, 748 F. Supp. 2d 1030 (D. Minn. 2010) (quoted in Pl. Br. at 3) is similarly flawed. In that case, the court held that "prior express consent" requires one to have said "something like this: 'I give you permission to use an automatic telephone dialing system to call my cellular phone.'" *Edeh*, 748 F. Supp. 2d at 1039. But neither the district court, nor the Eighth Circuit, which affirmed, mentioned the Hobbs Act. *See Edeh*, 748 F. Supp. 2d 1030; *Edeh v. Midland Credit Mgmt., Inc.*, 413 Fed. App'x 925 (8th Cir. 2011). And the ruling in *Travel Travel* is the same. *Compare* 206 S.W. 3d at 392 (failing to mention the Hobbs Act, and instead premising its construction of "prior express consent" on a superficial analysis comparing the definitions of "express" and "implied" in Black's Law Dictionary) *with* Pl. Br. at 3 (quoting *Satterfield*'s citations to Black's Law Dictionary).

mistaken.

First, the 1992 Report and Order itself makes clear that the FCC's ruling regarding express consent was not so limited. The FCC's discussion of "Prior Express Consent" received its own section, while "Debt Collection Calls" were limited to another section. 1992 Report and Order, 7 FCC Rcd. at 8768-69, 8771-73. And the FCC based its interpretation of prior express consent on the legislative history of the TCPA, in which the House Report stated, without qualification or limitation, that the TCPA does not apply to calls or messages where "the called party has in essence requested the contact by providing the caller with their telephone number for use in normal business communications." *Id.* at 8769 n.57 (quoting House Report, 102-317, 1st Sess., 102nd Cong., at 14 (Nov. 15, 1991).[5] *Cf. CE Design*, 606 F.3d at 450-51 (analyzing the 1992 Report and Order and rejecting plaintiff's proposed definition as "far too narrow"). Indeed, the text of the 1992 Report and Order makes clear that the FCC was explaining the general rule regarding express consent, and then applying it to the request for clarification, not limiting the rule's application as the Plaintiff argues: "[P]ersons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary. *Hence*, telemarketers will not violate our rules by calling a number which was provided as one at which the called party wishes to be reached." 1992 Report and Order, 7 FCC Rcd. at 8769 (emphasis added).

Second, Plaintiff's argument requires this Court to completely ignore (as has Plaintiff in his Opposition) the holding of the court in *Pinkard*, 2012 U.S. Dist. LEXIS 160938, which involved neither the defendant returning the plaintiff's call nor a debtor/creditor relationship.

---

[5] The Report goes on to say that "[t]he Committee does not intend" for the TCPA to prohibit "a retailer . . . from using an automatic dialer recorded message player to advise a customer (at the telephone number provided by the customer) that an ordered product had arrived, a service was scheduled or performed, or a bill had not been paid." House Report, 102-317, 1st Sess., 102nd Cong., at 14 (Nov. 15, 1991). The prescription refill reminder service falls squarely within this definition of exempted calls.

Rather, there, as here, the plaintiff dropped off a prescription, and in response to the pharmacist's request, provided her cellular telephone number. *Id.* at *5. And by doing so, Plaintiff expressly consented to being contacted: "[t]o hold otherwise would contradict the overwhelming weight of social practice: that is, distributing one's telephone number is an invitation to be called, especially when the number is given at another's request." *Id.* at *14.

Third, Plaintiff misunderstands the new rules that became effective on October 16, 2013. Plaintiff argues that the new requirement of "prior express written consent" "signal[s] an unequivocal move away from the relaxed interpretation of consent Walgreens urges here" for the prescription refill reminder service. Pl. Br. at 5 n.2. But the new rules signal quite the opposite. The FCC *exempted* health care-related calls (such as prescription refill reminder calls) from the new written consent requirements and from a host of other FCC restrictions. Plaintiff incorrectly asserts that this exemption applies only to calls to residential lines. While the 2012 Report and Order suggested extending the new exemption solely to residential lines, the final rule included no such limitation and explicitly exempted such calls to cellular telephones. *Compare In re Rules & Regs. Implementing Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1853 (Feb. 15, 2012) ("2012 Report and Order") *with* 47 C.F.R. § 64.1200(a)(1)-(2) (2013) (listing exemptions for cellular phones, including "health care" messages) *and* § 64.1200(a)(3) (residential lines).

## III. THE PRESCRIPTION REFILL REMINDER SERVICE FALLS SQUARELY WITHIN THE BROAD EMERGENCY PURPOSE EXEMPTION.

Plaintiff's claim is barred by the broad "emergency purpose" exemption under the TCPA because prescription refill reminder calls (which provide important reminders to many patients that their prescriptions are due for refill under the doctor's orders), serve the public interest by conveying information to consumers concerning their health or safety. Def. Br. at 9-15. Unable

to contest that the exemption applies on its face, Plaintiff engages in another bait-and-switch, arguing that "[t]he exemption is reserved for serious, widespread, and imminent situations impacting the health and safety of the public at large—for example, hazardous utility outages and terrorist attacks" (Pl. Br. at 1-2), and that the exemption applies only to calls that "inform the public at large of the potential risk of serious bodily injury or death." Pl. Br. at 9. But tellingly, the interpretation Plaintiff urges is not quoted from any legislation, FCC orders, or Court opinions. Rather, Plaintiff concocts this definition from whole cloth by ignoring FCC rulings directly on point and citing to *other* laws that better suit Plaintiff's purpose.

When Congress exempted calls "made for emergency purposes" (47 U.S.C. § 227(b)(1)(A)), it did so with the expectation that the FCC would apply the exemption broadly. For example, Congressman Markey, Chair of the House Telecommunications and Finance Subcommittee and a sponsor of the TCPA, explained that "the term 'emergency purposes' [was] intended to include" utility outages for "scheduled maintenance" as well "unscheduled outages caused by storms, or power interruptions for load management programs." 137 Cong. Rec. H. 11307 (Nov. 26, 1991). And Senator Hollings, Chair of the Senate Committee on Commerce, Science, and Transportation and a sponsor of the TCPA, explained that "The FCC must determine what constitutes an emergency purpose." 137 Cong. Rec. S. 18781 (Nov. 27, 1991).

"In keeping with the legislative history and the intent of the TCPA," the FCC ruled that the exemption is broad and "include[s] situations in which it is in the public interest to convey information to consumers concerning health or safety, whether or not the event was anticipated or could have been anticipated." *In re Tel. Consumer Prot. Act of 1991*, FCC 92-176, 7 FCC Rcd. 2736, 2738 (Apr. 17, 1992); 47 C.F.R. § 64.1200(f)(4) ("The term emergency purposes means calls made necessary in any situation affecting the health and safety of consumers.").

Indeed, in the 1992 Report and Order, the FCC explicitly found that pre-recorded calls used to alert utility customers to "service outages, to warn customers of discontinuance of service, [] to read meters for billing purposes . . . .[, and] to contact a party designated by the customer in the event that a delinquent bill or a service outage threatens interruption of that customer's service" were "within either the broad exemption for emergency calls, or the exemption for calls to which the called party has given prior express consent." 1992 Report and Order, 7 FCC Rcd. at 8777-78. In so holding, the FCC credited the utilities' statement that the billing reminder call program was "designed to assist persons who have difficulty maintaining their accounts or who otherwise desire assistance in ensuring that service is not interrupted." *Id.* at 8777. The prescription refill reminder call program is no different—it is designed to assist persons to remember to refill their active prescriptions. And as the Department of Health and Human Services and the Federal Trade Commission have found, ensuring that persons remember to refill their active prescriptions promotes treatment adherence and improves patient outcomes, especially for the most vulnerable patients—those "who are least attentive to their healthcare— those who 'frequently procrastinate or make ill-informed decisions.'" *See* Def. Br. at 3, 11-13 & 12 n.4 (quoting Telemarketing Sales Rule Final Rule Amendments, 73 Fed. Reg. 51,164, 51,191 (Aug. 29, 2008) (codified at 16 C.F.R. § 310.1 *et seq.*)).

Thus, to support his gloss on the exemption (that it is "reserved for *serious*, *widespread*, and *imminent* situations impacting the health and safety of *the public at large*" (Pl. Br. at 1-2) (emphasis added) when no such qualifications appear), Plaintiff quotes language from ***a different statute entirely***, the Warning, Alert and Response Network ("WARN") Act, Title VI of the Security and Accountability for Every Port Act of 2006, Pub. L. No. 109-347 § 2(b)(1) 120 Stat. 1884 (2006). Pl. Br. at 7-8. But nothing in the WARN Act purports to limit the scope of the

-14-

exemption in the TCPA. Indeed, the FCC's point was that "the TCPA's restrictions on prerecorded messages do not apply to calls initiated for emergency purposes," and therefore, *a fortiori*, the TCPA permits calls "*including*, *for example*, emergency messages permitted by the WARN Act . . . ." 2012 Report and Order, 27 FCC Rcd. at 1837 (emphasis added).

Plaintiff also quotes an FCC statement implementing the Do-Not-Call registry for Public Safety Answering Points ("PSAPs"), mandated by the Middle Class Tax Relief and Job Creation Act of 2012, for the proposition that the exemption is "'limited [in] nature'" and that the FCC would be "'vigilant in monitoring and taking enforcement action against [operators of automatic dialing equipment] who attempt to use it for calls that are not for emergency purposes.'" Pl. Br. at 7. But the "exception" the FCC was discussing was limited to autodialed calls to PSAPs—facilities that have been "designated to receive emergency calls and route them to emergency service personnel." *In re Implementation of the Middle Class Tax Relief & Job Creation Act of 2012*, 27 F.C.C.R. 13,615, 13,615 n.2 (Oct. 17, 2012). When Congress passed the TCPA, it expressed particular concern about protecting emergency service providers' phone lines from being tied up by autodialed telemarketing messages.[6] It was calls to these emergency personnel that the FCC vowed to be "vigilant in monitoring and taking enforcement action against," when it found that "the Tax Relief Act should be interpreted as giving PSAP telephone numbers protection against the use of autodialed equipment beyond that already provided by the TCPA." *Id.* at 13,621, 13,629.

## CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed with prejudice.

---

[6] *See* 137 Cong. Rec. S. 16204 (Nov. 7, 1991) (remarks from Senator Hollings noting that "Computerized calls tie up the emergency line of police, fire, and medical services and prevent real emergency calls from getting through."); 137 Cong. Rec. H. 11307 (remarks from Congressman Markey noting "the provision being built into this legislation which will protect . . . tens of thousands of physicians and emergency personnel across the country, from having their lines stopped up by these junk calls . . . . ").

Dated: November 11, 2013

Respectfully submitted,

/s/ Bradley J. Andreozzi
Bradley J. Andreozzi (ARDC No. 6257334)
bradley.andreozzi@dbr.com
Justin O. Kay (ARDC No. 6286557)
justin.kay@dbr.com
**DRINKER BIDDLE & REATH LLP**
191 North Wacker Drive, Suite 3700
Chicago, IL 60606-1698
Tel:    (312) 569-1000
Fax:    (312) 569-3000

*Counsel for Defendant Walgreen Co.*