# Exhibit No. 2

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

JOSEPH B. MURPHY,

        **Plaintiff,**

v.                                **Case No:  6:12-cv-1459-Orl-36KRS**

DCI BIOLOGICALS ORLANDO, LLC,
DCI BIOLOGICALS, INC. and
MEDSERV BIOLOGICALS, LLC,

        **Defendants.**

_____

## ORDER

This cause is before the Court on Defendants DCI Biologicals Orlando, LLC, DCI Biologicals, Inc. and Medserve Biologicals, LLC's Motion to Dismiss ("Motion to Dismiss") (Dkt. 62), to which Plaintiff Joseph B. Murphy filed a response ("Response") (Dkt. 69).  Additionally, a hearing was held on the Motion to Dismiss on October 22, 2013.  Upon consideration, Defendants' Motion to Dismiss will be granted, in part.

**I.      BACKGROUND**

    **A.    Facts[1]**

        *1.    General Allegations*

Plaintiff Joseph B. Murphy ("Murphy" or "Plaintiff") is an individual residing in Lake County, Florida.  Dkt. 59, Amended Complaint ("Am. Compl.") ¶ 22.  There are three defendants in this matter.  Defendant DCI Biologicals, Inc. ("DCI Biologicals"), is a company that was

_____

[1] The following statement of facts is derived from Murphy's Amended Complaint (Dkt. 59), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F. 2d 989, 994 (11th Cir. 1983).

incorporated in Delaware and has its principal place of business in Queens, New York. *Id.* ¶ 24. DCI Biologicals is in the business of buying and reselling blood products. *Id.* It obtains its blood products through plasma collection centers located across the United States ("Plasma Centers") that it controls through 32 wholly-owned subsidiary limited liability corporations that pay donors to donate blood. *Id.* ¶ 25. Defendant DCI Biologicals Orlando, LLC ("DCI Biologicals Orlando"), is a limited liability company registered in Delaware with offices in Florida. *Id.* ¶ 23. DCI Biologicals Orlando is one of the subsidiaries that obtains blood products for DCI Biologicals. *Id.* ¶ 25. Defendant Medserve Biologicals, LLC ("Medserve") is a limited liability company registered in Delaware with its principal office located in Northport, New York. *Id.* ¶ 27. Medserve Biologicals is another wholly-owned subsidiary of DCI Biologicals and is the vehicle through which DCI Biologicals operates its blood product purchase and resale business. *Id.* ¶ 26. Medserve Biologicals provides business services to DCI Biologicals such as marketing and advertising services as well as computer information systems for the Plasma Centers, including DCI Biologicals Orlando. *Id.* ¶¶ 28-30.

Murphy alleges that blood donors provide the Plasma Centers where they donate blood with information about their health, medical and biographical history, including that particular donor's prior status as a paid blood donor, as well as their name, address and phone number, in order to enable the Plasma Centers to maintain blood donor records. *Id.* ¶¶ 32-33, 55-56, 58, 66. Murphy maintains that Defendants and the Plasma Centers made representations through public advertisements and through their privacy policies promising that the information blood donors submitted for donor record maintenance would be kept confidential using the standards under the Health Insurance Portability and Accountability Act ("HIPAA"), as well as other state and federal donor privacy laws prohibiting disclosure to third parties. *Id.* ¶¶ 31, 33, 36-37. Murphy further

maintains that Defendants made express and implied representations through donor agreements that were entered into with blood donors which assured these donors that their information would be protected from unauthorized disclosure.  *Id.* ¶ 62.  This promise of privacy protection, Murphy alleges, constituted part of the consideration Defendants offered the donors, along with payment, in exchange for the donors' blood plasma donations that formed the basis of the donor agreement. *Id.* ¶¶ 31, 36.

Certain information from the donor records was digitally stored on a commercial database called PDSIII on servers that were operated by Defendants Medserve and DCI Biologicals jointly with the Plasma Centers, including DCI Biologicals Orlando.  *Id.* ¶ 33.  Murphy accuses Defendants of accessing these donors' private information stored on the PDSIII database and providing it to text message marketing and advertising platforms operated by third party entities ("Text Messagers"), specifically, DoCircle, Inc., a/k/a Trumpia; Skyy Consulting, Inc., a/k/a CallFire; and SMSOfficer, Ltd., a/k/a SMS Officer.  *Id.* ¶¶ 35, 39.  According to Murphy, Defendants then used the Text Messagers' automatic dialing equipment to send out mass automated text advertising messages to the donors' mobile phones using the donors' private information from the PDSII database in order to solicit business for Defendants and the Plasma Centers.  *Id.* ¶¶ 35, 38, 44-45.  Murphy contends that the donors did not consent to have their private information disseminated or otherwise accessible in this manner and were not even informed that their information that was stored on the PDSIII database would be disseminated or otherwise accessible to third parties outside of the Plasma Centers.  *Id.* ¶¶ 34-35.

### 2.    *Allegations Specific to Murphy*

Murphy was paid for donating his blood through a blood plasma center in Orlando, DCI Biologicals Orlando, on several occasions between March 1, 2010 and June 14, 2010.  *Id.* ¶ 65.  In doing so, Murphy provided certain blood donor information, including his telephone number,

which Murphy maintains he was required to provide.  *Id.* ¶ 66.  Murphy argues that he never gave his express consent or otherwise gave any authority to Defendants to upload his health and biological information, such as his name, telephone number, the fact that he was a paid donor, or his HIV testing status, to databases accessible by third parties such as the Text Messagers or to have text advertisement messages delivered to his cellular phone.  *Id.* ¶¶ 69-70, 73-76.  Additionally, Murphy states that he was not put on notice that his information would be accessible to third parties or used in such manner.  *Id.* ¶¶ 77-78, 86.

Though Murphy had not donated blood to Defendants since about June 14, 2010, on or about August 1, 2012, at 8:33 p.m., and then again at 9:11 p.m., Defendants sent a commercial text message to Murphy.  Am. Compl. ¶¶ 87, 89.  The first text message contained the following:

> You will receive MMS messages from DCI Biologicals on short code 76000. Reply STOP to 99000 to cancel.

*Id.* ¶ 89.  Murphy allegedly did not reply STOP to cancel and, accordingly, he received a second text message thirty-eight minutes later, which stated:

> We NEED U Back $20 Special!!!
>
> DONATE TODAY! GET PAID TODAY! SAVE A LIFE TODAY! '$20 COME BACK SPECIAL' – Come back in and See Us & Get an Extra $55 on your NEXT 4 Donations!
>
> DONATE UP TO 20 MIN FASTER WITH OUR NEWLY UPGRADED MACHINES.

*Id.*  The second message included the hours of operation, address and phone number of the plasma center located in Gainsville, Florida, and indicated that the offer would expire on August 31, 2012.  *Id.*  This second text message had an electronic digital image file attached.  *Id.* ¶ 90.  This image included the words:

> DCI Biologicals

Plasma, The Fluid of Life

Earn Up to $235 A Month

*Id.*, Ex. A.

Murphy contends that identical text messages were also sent out *en masse* to other donors using automatic telephone dialing systems, known as "auto-dialers."  *Id.* ¶ 91.

### B.  Procedural History

Plaintiff filed a putative class action complaint before this Court on September 26, 2012 (Dkt. 1) and then filed an amended putative class action complaint on June 24, 2013 (Dkt. 59). The Amended Complaint contains twenty-two counts.[2]  Essentially, Murphy alleges that

---

[2] <u>Count I</u> – Violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by DCI Biologicals Orlando; <u>Count II</u> – Vicarious Liability of DCI Biologicals Orlando for Violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Agents, Apparent Agents and by Ratification, Joint Venture and Partnership; <u>Count III</u> – Willful Violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by DCI Biologicals Orlando; <u>Count IV</u> – Violation of the Anti-Solicitation Call Provisions of the TCPA, 47 U.S.C. § 227(c)(5), by DCI Biologicals Orlando; <u>Count V</u> – Vicarious Liability of DCI Biologicals Orlando for Violation of the Anti-Solicitation Call Provisions of the TCPA, 47 U.S.C. § 227(c)(5), by Agents, Apparent Agents and by Ratification, Joint Venture and Partnership; <u>Count VI</u> – Injunctive Relief for Violation of the TCPA, 47 U.S.C. § 227(c)(5), by DCI Biologicals Orlando; <u>Count VII</u> – Violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by DCI Biologicals; <u>Count VIII</u> – Vicarious Liability of DCI Biologicals for Violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Agents, Apparent Agents and by Ratification, Joint Venture and Partnership; <u>Count IX</u> – Willful Violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by DCI Biologicals; <u>Count X</u> – Violation of the Anti-Solicitation Call Provisions of the TCPA, 47 U.S.C. § 227(c)(5), by DCI Biologicals; <u>Count XI</u> – Vicarious Liability of DCI Biologicals of the Anti-Solicitation Call Provisions of the TCPA, 47 U.S.C. § 227(c)(5), by Agents, Apparent Agents and by Ratification, Joint Venture and Partnership; <u>Count XII</u> – Injunctive Relief for Violation of the TCPA, 47 U.S.C. § 227(c)(5), by DCI Biologicals; <u>Count XIII</u> – Violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Medserv; <u>Count XIV</u> – Vicarious Liability of Medserv for Violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Agents, Apparent Agents and by Ratification, Joint Venture and Partnership; <u>Count XV</u> – Willful Violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Medserv; <u>Count XVI</u> – Violation of the Anti-Solicitation Call Provisions of the TCPA, 47 U.S.C. § 227(c)(5), by Medserv; <u>Count XVII</u> – Vicarious Liability of Medserv of the Anti-Solicitation Call Provisions of the TCPA, 47 U.S.C. § 227(c)(5), by Agents, Apparent Agents and by Ratification, Joint Venture and Partnership; <u>Count XVIII</u> – Injunctive Relief for Violation of the TCPA, 47 U.S.C. § 227(c)(5), by Medserv; <u>Count XIX</u> – Breach of Contract; <u>Count XX</u> – Breach of Implied Contract; <u>Count XXI</u> – Restitution/Unjust Enrichment; and <u>Count XXII</u> – Breach of Fiduciary Duty.

Defendants violated two provisions of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227 *et seq.*, when they sent him the two text messages referenced above and also breached express and implied promises of confidentiality under federal and state laws as well as the donor confidentiality provisions in the donor agreements when they disseminated his private blood donor information without his authorization.  *See* Am. Compl. ¶¶ 48-49, 62-64.

Specifically, Murphy asserts that sending the text messages violated (1) the TCPA's prohibition on dialing with a device capable of generating random or sequential telephone numbers without the prior express consent of the called party, 47 U.S.C. § 227(b)(1)(A) (Counts I-III, VII-IX, and XIII-XV), which the Court will refer to as the "TCPA Auto Dialer Counts"; and (2) the time-of-day and other restrictions on "telephone solicitations" contained in the TCPA's regulations promulgated by the Federal Communications Commission ("FCC") pursuant to 47 U.S.C. § 227(c), (Counts IV-VI, X-XII, and XVI-XVIII), which the Court will refer to as the "TCPA Solicitation Counts."  *Id.* at 25-66.  Additionally, Murphy asserts that (3) the alleged use of non-party internet services (the Text Messagers) to send the text messages violated his privacy and thereby breached express or implied contracts as well as fiduciary duties and also resulted in unjust enrichment (Count XIX – breach of contract; Count XX – breach of implied contract; Count XXI – breach of unjust enrichment; and Count XXII – breach of fiduciary duty), which the Court will refer to as the "Blood Donor Privacy Counts".  *Id.* at 79-85.  For these violations, Murphy seeks statutory damages of $500.00 or $1,500.00 per text message, injunctive relief, and other damages on behalf of a putative class.  *Id.* at 25-86.

Subsequently, Defendants filed the instant Motion to Dismiss for failure to state a claim. In the Motion to Dismiss, Defendants contend that: 1) the TCPA Auto Dialer Counts fail to state a

---

claim because Murphy admits he gave Defendants his telephone number, an act the FCC defines

as "express consent" and an admission that several courts have found to be fatal to 47 U.S.C. §

227(b)(1)(A) claims; 2) the TCPA Solicitation Counts fail to state a claim for the same reason as

the TCPA Auto Dialer Counts, Murphy has failed to allege adequate factual support for his claims,

and that the alleged text messages do not constitute "telephone solicitations" under the TCPA's

definition; and 3) the Blood Donor Privacy Counts fail to state a claim primarily because the use

of websites to send text messages does not constitute a disclosure to those websites and, even if it

did, Murphy does not allege a legally cognizable injury resulting from such disclosures. *See* Mot.

to Dismiss at 2.

## II.        STANDARD OF REVIEW

To survive a motion to dismiss, a pleading must include a "short and plain statement of the

claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)

(quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of

a cause of action are not sufficient. *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(2007)). Furthermore, mere naked assertions are not sufficient. *Id*. A complaint must contain

sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible

on its face." *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id*. (citation omitted). The court, however, is not

bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id*.

Therefore, "only a complaint that states a plausible claim for relief survives a motion to dismiss."

*Id*. (citation omitted).

III.    **ANALYSIS**

A.    **The TCPA Auto Dialer Counts**

Murphy's TCPA Auto Dialer claims are that the text messages Defendants sent to his mobile telephone violated the provisions of the TCPA that restrict the use of automated telephone equipment[3], devices capable of generating random or sequential numbers, to initiate telephone calls[4] without the express consent of the called party.  Specifically, this provision of the TCPA provides, in pertinent part:

It shall be unlawful for any person within the United States . . .

(A)to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . .

(iii) to any telephone number assigned to a . . . cellular telephone service . . . .

47 U.S.C. § 227(b)(1)(A)(iii).

Congress authorized a private right of action to enforce the TCPA.  *See* 47 U.S.C. § 227(b)(3).  There are two elements to an auto-dialer TCPA claim that a plaintiff must allege: (1) a call to a cellular telephone; (2) via an automatic telephone dialing system.  *See Robbins v. Coca-*

---

[3] "Automatic telephone dialing system" is defined under 47 U.S.C. § 227(a)(1) to mean "equipment which has the capacity— (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."

[4] The TCPA was enacted in 1991 before the advent of text message technology.  Therefore, on its face, it refers only to telephone calls.  However, it has been interpreted to apply to text messages as well.  *See, e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009); *Buslepp v. Improv Miami, Inc.*, Case No. 12-60171-CIV, 2012 WL 4932692, *2 (S.D. Fla. Oct. 16, 2012); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 F.C.C.R. 14014, 14115 ¶ 165, 2003 WL 21517853 (July 3, 2003) ("2003 FCC Order") (noting that "calls" "encompass[] both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls," *i.e.*, text messages).

*Cola Co.*, Case No. 13-CV-132-IEG NLS, 2013 WL 2252646, *2 (S.D. Cal. May 22, 2013). Here, Murphy has done so. *See* Am. Compl. ¶¶ 35, 45-46, 89, 91, 93-94, 109, 118-22, 124-27, 140-43, 167, 176-77, 180-82, 184, 186-87, 189-90, 204-07, 232, 241-45, 247-49, 266-69.

Nevertheless, Defendants contend that Murphy's claims fail because he admits to giving his cellular telephone number to DCI Biologicals Orlando via a "New Donor Information Sheet," *see* Am. Compl. ¶ 66, Ex. A, which they argue is an act of "express consent" under the TCPA. Mot. to Dismiss at 6; *see* 47 U.S.C. § 227(b)(1)(A); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Report and Order, 7 F.C.C.R. 8752, 8768 ¶ 29, 1992 WL 690928 (Oct. 16, 1992) ("1992 FCC Order") ("The TCPA allows autodialed and prerecorded message calls if the called party expressly consents to their use."). "Prior express consent" is an affirmative defense to a claim under the TCPA. *Buslepp v. B & B Entertainment, LLC,* Case No. 12–60089–CIV, 2012 WL 4761509, *4 (S.D. Fla. Oct. 5, 2012) ("Whether the[] text messages were sent to [the] [p]laintiff with his prior express consent is an affirmative defense") (citations omitted).

Typically, a defendant does not have an opportunity to prove affirmative defenses in a motion to dismiss, as affirmative defenses do not constitute elements of a plaintiff's claim. *See Connelly v. Hilton Grand Vacations Co., LLC*, 2012 WL 2129364, *3 (S.D. Cal. June 11, 2012). ("Whether Plaintiffs gave the required prior express consent is an affirmative defense to be raised and proved by a TCPA defendant, however, and is not an element of Plaintiffs' TCPA claim."). However, "dismissal under rule 12(b)(6) may be appropriate based on a successful affirmative defense[] [if] that defense . . . appear[s] on the face of the complaint." *EPCO Carbon Dioxide Products, Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006); *see also Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) ("where

the allegations of the complaint give rise to an affirmative defense, the defense may be raised under

Rule 12(b)(6), but only if it clearly appears on the face of the complaint."); *Pani v. Empire Blue*

*Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) ("[a]n affirmative defense may be raised by a

pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure,

if the defense appears on the face of the complaint.").

Here, Defendants point out that the face of Murphy's Amended Complaint clearly contains

the allegation that he voluntarily provided DCI Biologicals Orlando with his cellular telephone

number when filling out the New Donor Information Sheet.  Am. Compl. ¶ 66; Mot. to Dismiss at

6.  Defendants contend that this action constitutes his "express consent" to receive calls from an

automatic telephone dialing system under the TCPA.  *Id.*  Murphy denies that providing his number

on the New Donor Information Sheet in this manner constituted his "express consent" to receive

autodialed calls.

The TCPA does not define "express consent."  Congress delegated to the FCC the authority

to make rules and regulations to implement the TCPA.  *See* 47 U.S.C. § 227(b)(2).  Pursuant to

that authority, the FCC stated:

> any telephone subscriber who releases his or her telephone number has, in effect,
> given prior express consent to be called by the entity to which the number was
> released.
>
> . . .
>
> persons who knowingly release their phone numbers have in effect given their
> invitation or permission to be called at the number which they have given, absent
> instructions to the contrary.

1992 FCC Order ¶¶ 30-31.  Under this definition of "express consent" in the context of the TCPA,

the Court agrees with Defendants' argument.  Murphy voluntarily provided his cellular phone

number to the Defendants on the New Donor Information Sheet.   Contrary to Murphy's

allegations, "Federal laws including 21 C.F.R. § 606.160" do not require donors to provide their telephone number in order to donate blood. *See* Am. Compl ¶ 66. In fact, 21 C.F.R. § 606.160 imposes record-keeping requirements on blood banks, but does not mention telephone numbers and imposes no obligations on blood donors. Mot. to Dismiss at 6. Moreover, the New Donor Information Sheet did not specifically request a cellular telephone number, nor was there any indication on the sheet that providing a cellular telephone number was a condition of donating blood. Am. Compl., Ex. A. Pursuant to the FCC's definition in the 1992 FCC Order, Murphy's provision to the Defendants of his cellular phone number constituted his express consent to the Defendants to call him at that number.

Murphy's argument that he provided the Defendants with "instructions to the contrary" has no merit. Resp. at 17. Murphy inaccurately states in his Response that his number "was provided in a document with instructions that explicitly stated the information was obtained for 'being processed as a new donor.'" *Id.*; Am. Compl., Ex. A. On the contrary, the New Donor Information Sheet merely stated: "There are a few questions we would like for you to answer *prior to* you being processed as a new donor." New Donor Information Sheet (emphasis added). Therefore, since Murphy did not give Defendants any "instructions to the contrary," his argument here fails.

Murphy also argues that the FCC's definition of "express consent" really constitutes implied consent, and therefore should not be applied here, citing numerous cases which he avers "reject[] . . . attempts to imply express consent from a contact number." Resp. at 10. However, as Defendants pointed out and the Court noted at the motion hearing, some of Murphy's cases do not stand for his stated proposition and, while others stand for the proposition, they provide no helpful analysis and are not binding precedent.[5] Other cases cited by Murphy are inapplicable to

---

[5] *See, e.g., McClintic v. Lithia Motors, Inc.*, Case No. C11-859RAJ, 2012 WL 112211 (W.D. Wash. Jan. 12, 2012) (court did not address whether providing a number constituted implied or

this matter because they are in the context of a creditor-debtor relationship, a relationship which has been specifically addressed by a subsequent FCC ruling.[6]  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Declaratory Ruling, 23 F.C.C.R. 559, 2008 WL 65485 (Jan. 4, 2008) ("2008 FCC Declaratory Ruling").  Additionally, Murphy's argument that this 2008 FCC Declaratory Ruling as well as other FCC orders that were promulgated after the 1992 FCC Order somehow curtailed the general definition of "express consent" from that 1992 Order is without merit.[7]

---

express consent); *Mitchem v. Illinois Collection Serv., Inc.,* Case No. 09 C 7274, 2012 WL 170968 (N.D. Ill. Jan. 20, 2012) (same); *Carlson v. Nevada Eye Care Professionals*, Case No. 2:13-CV-00364-RCJ, 2013 WL 2319143, *5 (D. Nev. May 28, 2013) (holding, without analysis, that "[a] patient providing a telephone number to a health care provider only impliedly consents to be contacted for reasons related to [the] particular care the patient has received or solicited, not for general marketing purposes").

[6] For example, Murphy cited *Edeh v. Midland Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030, 1038 (D. Minn. 2010) *aff'd*, 413 F. App'x 925 (8th Cir. 2011), in which the court held, albeit without analysis, that there was no evidence that the plaintiff provided express consent to the defendant to autodial his number *regarding a debt* where the defendant obtained that number when it bought the plaintiff's debt from another party.

[7] *See* 2008 FCC Declaratory Ruling ("We also reiterate that the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party."); *see also Kenny v. Mercantile Adjustment Bureau*, No. 10-cv-1010, 2013 WL 1855782, *6 (W.D.N.Y. May 1, 2013) ("There is no basis . . . for drawing an inference that the FCC intended [in the 2008 FCC Declaratory Ruling] to limit the application of the prior express consent exemption to parties with a consumer-creditor relationship.  Such a conclusion would run afoul of the plain language of the TCPA which exempts any call to a cellular telephone service 'made with the prior express consent of the called party.'"); 2003 FCC Order at 14115 ¶ 165 (stating, "[w]e affirm that under the TCPA, it is unlawful to make *any call* using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number," citing to the FCC's 1992 Order and its "prior express consent" and "emergency" exceptions.).

The FCC did revise its regulations regarding the TCPA in its 2012 Order, changing "express consent" to "express written consent."  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 27 F.C.C.R. 1830, 1831 ¶ 2, 2012 WL 507959 (Feb. 15, 2012) ("2012 FCC Order") ("Specifically, in this Order, we . . . revise our rules to require prior express written consent for all autodialed or prerecorded telemarketing calls to wireless numbers . . . .").  However, this new "express written consent" rule did not take effect

The remaining cases Murphy cites reference the Hobbs Act in some way.  *See* 28 U.S.C. §

2342.  An analysis of the applicability of the Hobbs Act to this matter is essential to determining

whether the Court is even permitted to consider Murphy's argument that the FCC inaccurately

interpreted "express consent" under the TCPA in its 1992 FCC Order and whether the 1992 FCC

Order should be given deference.  Under the Hobbs Act, the federal courts of appeals are vested

with "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the

validity of . . . all final orders of the Federal Communications Commission made reviewable by

section 402(a) of title 47."  28 U.S.C. § 2342(1).  This means that, if the Court determines the

Hobbs Act to be applicable to this case, the Court is bound to apply the definition of "express

consent" from the 1992 FCC Order to this matter.  *Id.*

After a careful review of the Hobbs Act and the applicable caselaw, the Court finds that it

has no jurisdiction to review final FCC orders, and, thus, is bound to give deference to the 1992

FCC Order and its interpretation of "express consent" under the TCPA.  Accordingly, the Court

cannot consider Murphy's argument that the FCC's definition of "express consent" is, in essence,

"implied consent" and, as such, unfaithful to the plain language of the TCPA and should not be

afforded deference.

The Court's holding that it is bound by the Hobbs Act to give deference to FCC final rulings

enjoys substantial support.  *See, e.g. CE Design, Ltd. v. Prism Bus. Media, Inc.,* 606 F.3d 443, 449-

50 (7th Cir. 2010) (noting that "the Hobbs Act prevents the district court from reviewing the

validity of FCC regulations"); *Kenny,* 2013 WL 1855782 at *5 (the plaintiff "acknowledge[d] that

the Court [wa]s bound to follow FCC rules and regulations relating to the TCPA" pursuant to the

---

until October 16, 2013, and therefore cannot be applied in this case.  *Id*. at 1857 ¶ 66 ("[W]e
establish a twelve-month period for implementation of the requirement that prior express consent
be in writing for telemarketers employing autodialed or prerecorded calls or messages.").

Hobbs Act); *Moore v. Firstsource Advantage, LLC,* Case No. 07-CV-770, 2011 WL 4345703, *10

n. 10 (W.D.N.Y. Sept. 15, 2011) (holding that "[t]he FCC's declaratory ruling is a 'final order'

entitled to precedential effect" and that "the federal courts of appeal have exclusive jurisdiction

over appeals of final orders by the FCC" under the Hobbs Act); *Frausto v. IC System, Inc.,* Case

No. 10 CV 1363, 2011 WL 3704249, *2 (N.D. Ill. Aug. 22, 2011) (acknowledging that the FCC's

rulings bind the court pursuant to the Hobbs Act); *Greene v. DirecTv, Inc.,* Case No. 10 C 117,

2010 WL 4628734, *3 (N.D. Ill. Nov. 8, 2010) (in rejecting the plaintiff's request for the court to

adopt a different interpretation of "express consent" under the TCPA because of his belief that the

FCC's construction was too narrow, the court stated that it "must accept the FCC's interpretation

of the TCPA . . . . [b]ecause [it] ha[d] no jurisdiction to determine the validity of FCC orders.");

*Hicks v. Client Servs., Inc.,* Case No. 07-61822-CIV, 2009 WL 2365637, *4 (S.D. Fla. June 9,

2009) (noting that "Congress has charged the FCC with rule-making authority under the TCPA"

and that the "[c]ourt d[id] not have the jurisdiction to review FCC rulings under the TCPA."); *but

see Mais v. Gulf Coast Collection Bureau, Inc.,* Case No. 11-61936-CIV, 2013 WL 1899616 (S.D.

Fla. May 8, 2013) (interpreting the Hobbs Act, but finding jurisdiction to review FCC rulings).

     *Mais* interpreted the Hobbs Act's jurisdictional provision starting with its statutory

language. *Id.* Section 402(a) of the Hobbs Act provides that "[a]ny proceeding to enjoin, set aside,

annul, or suspend any order of the Commission . . . shall be brought as provided by and in the

manner prescribed in chapter 158 of title 28." *See* 47 U.S.C. § 402(a). The *Mais* court interpreted

this section to mean that any action that is not a proceeding "to enjoin, set aside, annul, or suspend"

an FCC order necessarily falls outside of the jurisdictional provision's reach. *Mais*, 2013 WL

1899616 at *6. Accordingly, the court found that the plaintiff had not filed any proceeding "to

enjoin, set aside, annul, or suspend any order of the Commission," but rather, sought damages for

debt collection calls that violated the TCPA, and thus concluded that the central purpose of the plaintiff's lawsuit was not "to enjoin, set aside, annul, or suspend" an FCC order. *Id.* Rather, the purpose of the lawsuit, from the court's perspective, was to obtain damages for violations of the TCPA. *Mais*, 2013 WL 1899616 at *8. Therefore, the court held that the Hobbs Act's jurisdictional provision did not apply.[8] *Id.* Noting conflict with other opinions, the court granted the defendant's motion to certify an interlocutory appeal to the Eleventh Circuit on this issue under 28 U.S.C. § 1292(b).[910] *Id.* at *17, *23-24.

*Mais* has been severely criticized by *Chavez v. Advantage Grp.*, Case No. 12-CV-02819-REB-MEH, 2013 WL 4011006 (D. Colo. Aug. 5, 2013), which viewed *Mais* as an outlier case. The *Chavez* court noted that *Mais* was the only federal district court to conclude that district courts have jurisdiction to review FCC rulings.[11] *Id.* This Court agrees with the *Chavez* court and joins

---

[8] The court determined that the 2008 FCC Declaratory Ruling's interpretation of "express consent" under the TCPA was inconsistent with the TCPA's plain language because it impermissibly amended the TCPA to provide an exception for "prior express **or implied** consent."

[9] 28 U.S.C. § 1292(b) provides, in relevant part, the following with respect to interlocutory decisions:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

[10] The Eleventh Circuit has not yet ruled on this interlocutory appeal.

[11] The same judge who decided *Mais* ruled in *Lusskin v. Seminole Comedy, Inc.*, 12-62173-CIV, 2013 WL 3147339 (S.D. Fla. June 19, 2013), another case cited by the plaintiff for his proposition that express consent under the FCC Order really constitutes implied consent. In *Lusskin*, the plaintiff bought a ticket to a comedy show from the defendant, and provided his cellular telephone number to the defendant as part of an online transaction. 2013 WL 3147339, at *1. Sometime after the ticket purchase, the plaintiff began receiving text messages on his cell phone from the defendant promoting future events. *Id.* In accordance with its decision in *Mais*, the *Lusskin* court

those courts that have found that the 2008 FCC Ruling is binding on the district courts and not subject to review except by the federal courts of appeals. *See, i.e., Sacco v. Bank of Am., N.A.,* Case No. 5:12-CV-00006-RLV-DCK, 2012 WL 6566681, *9 (W.D.N.C. Dec. 17, 2012) (noting that, "[r]egardless of whether this [2008 FCC Declaratory Ruling's] interpretation of the TCPA is entitled to *Chevron[12]* deference,… this Court lacks jurisdiction to review its validity [under the Hobbs Act], or to determine the validity of … all final orders of the Federal Communications Commission…." "[This FCC ruling … is a 'final order' for the purposes of [the Hobbs Act] because it was the agency's final decision interpreting the 'prior express consent' provision of the TCPA and determines legal rights and obligations.").

As noted above, this Court is bound to apply the FCC's definition of "express consent" under the 1992 FCC Order pursuant to the Hobbs Act. The Court interprets the rule to mean that this consent is to receive auto-dialed calls. The whole purpose of the provision of the TCPA at issue is to prohibit calls *using an automatic telephone dialing system* unless such calls are made for emergency purposes or with the prior express consent of the called party. The statute does not prohibit ordinary calls. It only restricts *autodialed* calls. The FCC's 1992 Order did not define "express consent" in a vacuum; on the contrary, the Order defined "express consent" in the context of the TCPA and the TCPA speaks specifically to autodialed calls.

_____

first held that the Hobbs Act did not deprive the court of jurisdiction to consider whether the plaintiff's actions constituted "express consent" pursuant to the 1992 FCC Order because the plaintiff's lawsuit did not seek to enjoin, set aside, annul, or suspend an FCC order; it was simply an action for damages under the TCPA. *Id.* at *2 n. 3 (citing *Mais,* 2013 WL 1899616 at *5–8). Additionally, following its reasoning in *Mais*, the court refused to give deference to the 1992 FCC Order under the *Chevron* test. *Luskin*, 2013 WL 3147339 at *2-3.

[12] In *Chevron v. Natural Resources Defense Council, Inc.,* the Supreme Court set forth a two-step test for judicial review of administrative agency interpretations of federal law. 467 U.S. 837, 842-43(1984)

Here, Murphy asks this Court to find that providing his number to the Defendants on the New Donor Information Sheet did not constitute "express consent" to be autodialed under the TCPA. The effect of this would be to "set aside, annul, or suspend" the FCC's 1992 Order defining "express consent." The Hobbs Act expressly reserved to the federal courts of appeals jurisdiction to effectuate any of those outcomes. Accordingly, this Court finds that the FCC's 1992 Order is binding here and, under the Hobbs Act, is not subject to review except by the federal courts of appeals. The 1992 FCC Order is clear that providing a number constitutes express consent to be auto-dialed under the TCPA.[13]

### B.    The TCPA Solicitation Counts

Murphy's TCPA Solicitation Counts allege violations of Section 227(c)(5) of the TCPA, which contain restrictions on "telephone solicitation[s]." 47 U.S.C. § 227(c)(5). Section 227 (c)(5) provides a private right of action to those who have received "more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection . . . ." 47 U.S.C. § 227(c)(5). This section further provides, in relevant part, that:

---

[13] For instance, in *Pinkard v. Wal-Mart Stores, Inc*., Case No. 12-cv-2902, 2012 WL 5511039, *2 (N.D. Ala. Nov. 9, 2012), the court held that the plaintiff's provision of her number to a Walmart pharmacy in connection with dropping off a prescription constituted "express consent" to be called under the TCPA, noting that the 1992 FCC Order interpreted that term "to encompass a situation where an individual voluntarily divulges her telephone number." The court considered this to be consistent with the overwhelming weight of social practice that distributing one's telephone number is an invitation to be called, especially when the number is given at another's request. *Id.* at *5. Similarly, in *Roberts v. PayPal, Inc.*, the court adopted the reasoning in *Pinkard* and found that the plaintiff "consented to receive text messages from PayPal simply by providing his cell phone number . . . ," consistent with the 1992 FCC Order. No. C 12-0622 PJH, 2013 WL 2384242, *4-*5 (N.D. Cal. May 30, 2013). The *Emanuel v. Los Angeles Lakers, Inc.* court also followed the reasoning in *Pinkard*, and held that "distributing one's telephone number is an invitation to be called" when determining that the plaintiff's text message sent during a Lakers basketball game for display on the scoreboard constituted express consent to receiving a text message from the defendant. CV 12-9936-GW SHX, 2013 WL 1719035, *3-*4 (C.D. Cal. Apr. 18, 2013).

It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. . . .

*Id.*

Section 227(c)(1) authorizes the FCC to promulgate regulations regarding these "telephone solicitations." 47 U.S.C. § 227(c)(1) ("the Commission shall initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object."). The Amended Complaint asserts that Defendants failed to comply with such regulations, citing 47 C.F.R. § 64.1200(c) and (d). Am. Compl. ¶¶ 151, 163.

Section 64.1200(c) prohibits "telephone solicitation(s)" "before the hour of 8 a.m. or after 9 p.m.," *see* 47 C.F.R. § 64.1200(c) ("[n]o person or entity shall initiate any telephone solicitation to . . . [a]ny residential telephone subscriber before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location)), and Section 64.1200(d) requires those who engage in "telemarketing" to have a written policy, train personnel, maintain a do-not-call list, and identify themselves when calling, *see* 47 C.F.R. § 64.1200(d) (providing that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity.").

Defendants argue that Murphy's claims here fail for the same reason as his Group 1 claims fail, that they are unsupported by factual allegations, and that the text messages Murphy received do not constitute "telephone solicitations" under the TCPA's definition, as they sought to buy something from him, not sell something to him. Mot. to Dismiss at 2, 19-21. The Court agrees that Murphy's claims fail for each of these reasons.

First, Defendants argue that these anti-solicitation regulations do not apply to calls made with the "express invitation or permission" of the called party under 47 U.S.C. § 227(a)(4) and 47 C.F.R. § 64.1200(f)(14).[14]  As noted in Section A, *supra*, the FCC has determined that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary."  Since Murphy admits in his Amended Complaint that he provided his number to Defendants, his "solicitation call" claims fail on this ground.

Defendants' second argument is that Murphy failed to allege that he received at least two calls before 8 a.m. or after 9 p.m.  Here, Murphy alleges that he received two text messages from Defendants on August 1, 2012.  Am. Compl. ¶¶ 87, 89.  One was at 8:33 p.m., and the other was at 9:11 p.m.  *Id.*  As only one of these calls was received after 9:00 p.m., Murphy has failed to allege that he received "more than one telephone call within any 12-month period by or on behalf of the same entity [that] violat[ed] . . . the regulations . . ."  Thus, his "solicitation call" claims fail on this ground as well.

Defendants also argue that Murphy's claims fail here because the text messages he received do not constitute "telephone solicitations."  This term is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property,

---

[14] 47 U.S.C. § 227(a)(4) provides, in pertinent part, that:

> The term "telephone solicitation" means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization.

47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(14) (same).

goods, or services."  47 C.F.R. § 64.1200(f)(14).  Because neither of the messages in this case encouraged Murphy to purchase, rent, or invest in anything, they do not constitute "telephone solicitations" under the TCPA.  On the contrary, one message asked Murphy to sell his blood to DCI Biologicals Orlando.  Am. Comp. ¶ 89; *see, e.g.*, *Friedman v. Torchmark Corp.*, No. 12-cv-2837, 2013 WL 1629084, *4 (S.D. Cal. Apr. 13, 2013) (court dismissed 47 U.S.C. § 227(c) complaint when the alleged messages consisted of an invitation to "attend a recruiting webinar wherein Plaintiff could learn about Defendant's products to potentially sell them."  Because the message was not an effort to sell something to the plaintiff, but rather an opportunity for the plaintiff to earn money, the court found that 47 U.S.C. § 227(c) did not apply.).

Likewise, here, the message sent to Murphy offered to pay him for making another blood donation.  For these reasons, Murphy's TCPA Solicitation Counts fail as well.  *See Meadows v. Franklin Collection Serv., Inc.*, 414 Fed. App'x. 230, 236 (11th Cir. 2011) (noting that a TCPA defendant "did not try to sell anything to [the plaintiff], and did not offer to provide her any services," rejecting the plaintiff's "invitation to stretch and distort the meaning of 'telephone solicitation.'").

C.       **The Blood Donor Privacy Counts**

Having dismissed the only grounds for federal subject matter jurisdiction, the Court declines to continue to exercise supplemental jurisdiction over Murphy's state law claims against Defendants.  The Eleventh Circuit has made clear that "once a court decides that it has power to exercise supplemental jurisdiction under [28 U.S.C.] § 1367(a), then the court should exercise that jurisdiction, unless § 1367(b) or (c) applies to limit the exercise."  *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997).  Here, Section 1367(c) applies because the Court "has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c)(3), and when the federal law claims have been dismissed prior to trial, it is preferable for Florida's

state courts to make determinations of Florida law, *see Rowe v. City of Fort Lauderdale*, 279 F.3d

1271, 1288 (11th Cir. 2002) ("Both comity and economy are served when issues of state law are

resolved by state courts.  The argument for dismissing the state law claims in order to allow state

courts to resolve issues of state law is even stronger when the federal law claims have been

dismissed prior to trial."); *Baggett*, 117 F.3d at 1353.

Therefore, the Court will decline to continue to exercise supplemental jurisdiction over the

state law claims matter.  Accordingly, Murphy's state law claims will be dismissed, without

prejudice.

## IV.    CONCLUSION

For the aforementioned reasons, Defendants' Motion to Dismiss (Dkt. 62) will be granted,

in part.

Accordingly, it is hereby **ORDERED and ADJUDGED**:

1.   Defendants DCI Biologicals Orlando, LLC, DCI Biologicals, Inc. and Medserve

Biologicals, LLC's Motion to Dismiss (Dkt. 62) is **GRANTED**.  Plaintiff's state

law claims, Counts XIX, XX, XXI, and XXII, are dismissed without prejudice.  All

other claims, Counts I through XVIII, are dismissed with prejudice.

2.   The Clerk is hereby directed to terminate any pending motions and close this case.

**DONE** and **ORDERED** in Orlando, Florida on December 31, 2013.

*Charlene Edwards Honeywell*

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties