```
                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF ILLINOIS
                              EASTERN DIVISION


 MICHAEL GRANT, Individually      )
 and on behalf of all others      )
 similarly situated,              )
                                  )
                  Plaintiff,      )
                                  )
 -vs-                             )  Case No. 13 C 8310
                                  )
 COMMONWEALTH EDISON COMPANY,     )  Chicago, Illinois
 an Illinois corporation,         )  June 4, 2014
                                  )  9:15 a.m.
                  Defendant.      )
```

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE GARY FEINERMAN

APPEARANCES:

For the Plaintiff:    EDELSON, P.C.
                      BY:  MR. JAY EDELSON
                           MR. JOHN C. OCHOA
                      350 North LaSalle Street
                      Suite 1300
                      Chicago, Illinois  60654
                      (312) 589-6370


For the Defendant:    DRINKER BIDDLE & REATH, LLP
                      BY:  MS. LESLIE D. DAVIS
                      191 North Wacker Drive
                      Suite 3700
                      Chicago, Illinois  60606-1698
                      (312) 569-1108

Court Reporter:

            CHARLES R. ZANDI, CSR, RPR, FCRR
                   Official Court Reporter
                 United States District Court
          219 South Dearborn Street, Suite 2128
                   Chicago, Illinois  60604
                 Telephone:  (312) 435-5387
           email:  Charles_zandi@ilnd.uscourts.gov

1  (Proceedings heard in open court:)
2          THE CLERK: 13 C 8310, Grant versus Commonwealth
3  Edison.
4          MR. EDELSON: Good morning, your Honor. Jay Edelson
5  for the plaintiff.
6          MR. OCHOA: Good morning, your Honor. John Ochoa for
7  the plaintiff.
8          MS. DAVIS: And Leslie Davis on behalf of the
9  defendant.
10         THE COURT: Good morning. We're here for a status
11 hearing, and we're all scheduled out through February of next
12 year. There's a pending motion to dismiss, and I wanted to
13 give a ruling on the motion. I'll give an oral ruling rather
14 than a written ruling.
15         The motion's going to be denied. That's not to say
16 that the arguments, either or both of the arguments that
17 Com. Ed. made wouldn't succeed in another setting like a
18 motion for summary judgment or at a trial, but on the
19 pleadings, on a Rule 12(b)(6), the motion just can't be
20 granted.
21         The Court can consider just the allegations of the
22 complaint and any attachments to the complaint, and all the --
23 importantly, and this is really the key, all inferences have
24 to be drawn in the plaintiff's favor.
25         So, on the issue of consent, let's assume that all

1  the legal issues break Com. Ed.'s way.  Com. Ed. can prevail
2  only if Grant provided his wireless number as a point of
3  contact in his business relationship with Com. Ed.  And the
4  way the FCC put it is Grant provided his number as one at
5  which he wished to be reached.

6       That factual premise is not established by the
7  pleadings.  We don't know if Grant gave Com. Ed. his cell
8  number and identified it as the number at which he wanted to
9  be reached.  In fact, the pleadings don't even establish how
10 Com. Ed. got the number, got Grant's cell phone number or --
11 and whether Com. Ed. got the cell phone number from Grant.

12       Now, when we step back into reality land as opposed
13 to 12(b)(6) land, it's probably the case that Grant gave the
14 number to Com. Ed.  I'm not quite so sure whether Grant
15 identified that as the number at which he wished to be called.
16 But in order to indulge -- indulge those suspicions, I'd have
17 to draw inferences in favor of the defendant, and I can't do
18 that under 12(b)(6).

19       So, the factual premise for Com. Ed.'s motion as to
20 the consent issue is absent, even assuming that all the legal
21 issues break in Com. Ed.'s favor, which I'm not sure they do.

22       In case I forget to mention it later, I'll mention it
23 now.  The issue of whether the 1992 order or the 2012 order
24 prevails should be addressed by Com. Ed. in something other
25 than a footnote.  It was really the plaintiff's big

1  argument -- or one of their big arguments; and it's -- the
2  2012 order did come after the 1992 order, so there will have
3  to be a little bit more discussion from Com. Ed. as to how
4  those two orders fit together and whether the ground changed
5  in terms of what is required in order to be a valid consent in
6  a situation like this.
7  　　　　　The second issue has to do with the emergency
8  exception, and the statute creates an exception for a call
9  made for emergency purposes.  The regulation says calls made
10 necessary in any situation affecting the health and safety of
11 consumers is excepted from the telephone act.  And the
12 regulation -- or the FCC in the order specifies calls alerting
13 utility customers to service outages, to warn customers of
14 discontinuation of service, and to contact the party
15 designated by the customer in the event that a delinquent bill
16 or service outage threatens interruption of that customer's
17 service.
18 　　　　　The text message itself, as I think we can all agree,
19 even without drawing inferences in the plaintiff's favor, did
20 not involve an actual emergency situation or an actual service
21 outage.  The message was just saying, "In the event that
22 something like this happens, Com. Ed. may send you -- will
23 send you a text," hardly a war crime.
24 　　　　　But I can't conclude from the pleadings that -- well,
25 what the defendant -- I think the defendant implicitly

1 acknowledges that there was no actual emergency, but what the
2 defendant argues is the message saying, "In the event of an
3 actual emergency, we're going to text you," was a necessary
4 and logical first step in the communication chain.  Kind of
5 makes sense.  I could see Com. Ed. possibly prevailing on
6 that.  But again, at the pleading stage, in order to break
7 Com. Ed.'s way on that issue, I'd have to draw inferences in
8 its favor, and I can't do that on a 12(b)(6) motion.
9       In particular, I don't know whether -- I can't
10 conclude on a 12(b)(6) that it would be a necessary first step
11 in the communication chain.  In other words, would consumers
12 be less likely to believe a text that was sent about an actual
13 outage if they didn't first get an introductory text?  I don't
14 know.  Probably, but probably isn't good enough on a 12(b)(6)
15 motion.
16       So, again, the factual predicate -- Com. Ed. may end
17 up winning on this issue, too, but the factual predicate is
18 absent in a 12(b)(6) setting.
19       So, for those reasons, I'm going to deny the motion
20 to dismiss.  Com. Ed. should answer the complaint by
21 June 25th.
22       And, you know, there's a dispositive motion deadline
23 of February 20th, 2015.  There's no rule saying that you have
24 to wait until the deadline to file a summary judgment motion.
25 The rule says you can file one at any time.  So, if you think

1  you have a kill shot, take it, and we'll see -- we'll see what
2  happens.
3        I don't know how it's all -- I don't know what the
4  facts are.  I haven't examined the legal issues in detail so I
5  can't even say that the legal issues are going to break
6  Com. Ed.'s way.  I don't know.  I just didn't have to get
7  there because the factual predicate wasn't there even if the
8  legal issues did break Com. Ed.'s way.
9        So, that's all I have to say on the motion to
10 dismiss.  Have the parties been engaged at all in fact
11 discovery?
12       MR. EDELSON:  Yes, your Honor.  We've exchanged and
13 responded to written discovery.  We just got Com. Ed.'s
14 responses earlier this week and are going through it, and then
15 we'll be serving deposition notices within the next week.
16       MS. DAVIS:  That's right.  We just exchanged --
17 mutually exchanged earlier this week, and so that's the next
18 step.
19       THE COURT:  Okay.  And what kind of depositions -- or
20 how many depositions, who are you planning on deposing?  Do
21 you know that at this point?
22       MR. OCHOA:  Sure.  At least two depositions, your
23 Honor, one of a representative of Com. Ed., probably one of a
24 represent of their marketing agent, 5/11, who actually sent
25 the text messages.

1   THE COURT: And do you plan on deposing the
2   plaintiff?
3   MS. DAVIS: Yes, definitely, we will be deposing the
4   plaintiff for sure; and beyond the plaintiff, we're not sure
5   yet exactly who else we may be seeking to depose.
6   THE COURT: Okay. Do the documents provide any
7   indication as to how Com. Ed. came into possession of
8   Mr. Grant's cell phone number?
9   MS. DAVIS: Yes, your Honor. We have responded to
10  that in the discovery. We've given them a few documents that
11  show exactly when we got his number; and once they start
12  taking depositions, they can get further explanation of what
13  those documents actually say, and they will come to find out
14  that he actually gave his number when he established service.
15  So, that's all information that I expect them to get
16  readily when we get further in discovery and when they start
17  taking depositions and looking through the documents, because
18  it's there as well.
19  THE COURT: Okay. All right. Do you have any
20  thoughts on that from the plaintiff's side?
21  MR. EDELSON: We have a different story at this
22  point, but we want to study what they've given us and, you
23  know, whatever it says, we're going to take obviously very
24  seriously.
25  THE COURT: Okay. Very good. Does either side

1  anticipate disclosing experts?
2         MS. DAVIS:  At the point that we get past discovery
3  and are looking more towards trial in this matter, we will be
4  looking at experts for sure, I'm sure.
5         THE COURT:  Because the -- the reason I ask is that
6  the expert disclosure schedule starts on August 8th, I think,
7  so --
8         MS. DAVIS:  Your Honor, if we could get past the --
9  the depositions, I think we'll be in a better position to know
10 exactly where we're at, because at that point, all of the
11 information will be available to both plaintiff and for us to
12 use in whatever way we need to for dispositive motions.
13        And so if your Honor will entertain if we need to
14 come back because we're not on schedule to be able to disclose
15 experts by August, we come back before the Court and ask for
16 additional time at that point.
17        MR. OCHOA:  As for the plaintiff, the only expert we
18 believe we may use is one to establish that an automatic
19 telephone dialing system was used in this case, although given
20 the volume of the text messages sent, we think it's pretty
21 clear it already meets the statutory definition.
22        THE COURT:  All right.  Why don't we come in,
23 assuming both sides are going to be in town, the week of
24 July 28th.
25        THE CLERK:  How about we set you for July 29th,

```
                                                              9
 1  9:00 a.m.
 2            THE COURT:  Is that good for both sides?
 3            MR. EDELSON:  Yes, your Honor, for us.
 4            MR. OCHOA:  That should be good, yes.
 5            MS. DAVIS:  That works.
 6            THE COURT:  Okay.  Very good.  I'll see you then.
 7  I'll ask further about experts -- I'll ask for confirmation on
 8  the parties' plans regarding experts, and I'll also ask if the
 9  parties are interested in a settlement conference at that
10  point.  All right?
11            MR. EDELSON:  Thank you very much, your Honor.
12            MS. DAVIS:  Thank you, your Honor.
13            MR. OCHOA:  Thank you, your Honor.
14     (Which were all the proceedings heard.)
15                          CERTIFICATE
16    I certify that the foregoing is a correct transcript from
17  the record of proceedings in the above-entitled matter.
18
19  /s/Charles R. Zandi                June 5, 2014
20  Charles R. Zandi                   Date
    Official Court Reporter
21
22
23
24
25
```