**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| ROBERT KOLINEK, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>vs.<br><br>WALGREEN CO., an Illinois corporation,<br><br>*Defendant*. | Case No. 13-cv-4806<br><br>Honorable Matthew F. Kennelly |

**RESPONSE OF DEFENDANT WALGREEN CO.
TO THE COURT'S REQUEST FOR AUTHORITY**

Pursuant to this Court's instructions at the July 22, 2014, hearing on its Motion to Dismiss (ECF No. 20), Defendant Walgreen Co. ("Walgreens") submits this response to the Court's request for authority regarding certain issues.

**I.   WALGREENS IS A "COVERED ENTITY" UNDER THE HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT ("HIPAA").**

As discussed in Walgreens' Motion to Dismiss (at pp. 3, 11-14), the Department of Health and Human Services ("HHS") has exempted prescription refill reminder calls from the prohibition in the HIPAA Privacy Rule on using protected health information for marketing. *See* 45 C.F.R. § 164.501 (definition of "marketing" excludes communications made "[t]o provide refill reminders or otherwise communicate about a drug or biologic that is currently being prescribed for the individual . . ."). Thereafter, both the Federal Trade Commission ("FTC") and the Federal Communications Commission ("FCC") exempted calls that deliver "a 'health care message' made by, or on behalf of, a 'covered entity' or its 'business associate,' as those terms are defined in the HIPAA Privacy Rule" from the restrictions on prerecorded or autodialed calls administered by those agencies. *See* 16 C.F.R. § 310.4(b)(1)(v)(D) (FTC exemption of health

- 1 -

care message calls from the Telemarketing Sales Rule); 47 C.F.R. § 64.1200(a)(2) (FCC exemption of health care message calls from the TCPA). At the hearing, the Court asked for authority that Walgreens is a "covered entity" as defined under HIPAA.

A "covered entity" under HIPAA includes "[a] *health care provider* who transmits any *health information* in *electronic form* in connection with a *transaction* covered by this subchapter." 45 C.F.R. § 160.103 (emphasis added). As explained below, because a pharmacy such as Walgreens in the ordinary course of its business furnishes, bills, submits insurance claims and is reimbursed for the sale of drugs in accordance with medical prescriptions, and transmits information in electronic form related to the provision of or payment for that service, Walgreens (like other pharmacies) is subject to HIPAA as a "covered entity."

First, Walgreens is a <u>health care provider</u> because it is a "person or organization who furnishes, bills, or is paid for *health care* in the normal course of business." *Id.* (emphasis added). "Health care" is defined to include the "[s]ale or dispensing of *a drug*, device, equipment, or other item *in accordance with a prescription*." *Id.* (emphasis added).

Second, Walgreens transmits <u>health information</u>, which is defined in relevant part as: "any information . . . whether oral or recorded in any form or medium, that: (1) [i]s created or received by a health care provider . . . ; and (2) [r]elates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual." *Id.*

Third, Walgreens routinely transmits health information in <u>electronic form</u>,[1]

---

[1] "Electronic media" is defined to include "hard drives," "magnetic tape or disk" or any "material on which data is or may be recorded electronically" and "[t]ransmission media," including "the Internet, extranet or intranet, leased lines, dial-up lines, private networks, and the physical movement of removable/transportable electronic storage media." *Id.*

communicating with doctors and hospitals electronically regarding prescriptions, filing insurance claims electronically and the like. Indeed, most insurance claims and billings are submitted electronically—Medicare, for example, requires that virtually all claims be submitted electronically (with an exception for very small healthcare providers, which Walgreens, as "the largest operator of retail drugstores in the United States" (Cmplt. ¶ 1), certainly would not come within).

Fourth, Walgreens transmits this health information in connection with a "transaction" as defined by HIPAA, meaning "the transmission of information between two parties to carry out financial or administrative activities related to health care." 45 C.F.R. § 160.103.[2]

In sum, it is beyond dispute that Walgreens, the largest pharmacy chain in the United States, is a "covered entity" under HIPAA. *See, e.g.*, *Parker v. Quinn*, No. 04-cv-313, 2006 U.S. Dist. LEXIS 24239, at *13 (N.D. Miss. Apr. 10, 2006) ("A pharmacy is a health care provider under HIPAA."); *In re Remeron End-Payor Antitrust Litig.*, No. 02-cv-2007, 2005 U.S. Dist. LEXIS 27011, at *42 n.4 (D.N.J. Sept. 13, 2005) ("Pharmacists are health care providers covered by [HIPAA]."); *cf. Liska v. United States*, No. 09-cv-8190, 2010 U.S. Dist. LEXIS 26032, at *24-27 (D. Ariz. Mar. 19, 2010) (Walgreens pharmacy did not violate HIPAA by disclosing

---

[2] The list of "transactions" under HIPAA "includes the following types of information transmissions":

> (1) Health care claims or equivalent encounter information. (2) Health care payment and remittance advice. (3) Coordination of benefits. (4) Health care claim status. (5) Enrollment and disenrollment in a health plan. (6) Eligibility for a health plan. (7) Health plan premium payments. (8) Referral certification and authorization. (9) First report of injury. (10) Health claims attachments. (11) Health care electronic funds transfers (EFT) and remittance advice. (12) Other transactions that the Secretary may prescribe by regulation.

*Id.*

prescription information to a law enforcement official because HIPAA exempts disclosures for a law enforcement purpose).

## II. THE FTC EXEMPTED PRESCRIPTION REFILL REMINDER CALLS FROM THE TELEMARKETING SALES RULE ("TSR").

The FTC's TSR makes it unlawful to initiate a telephone call delivering any pre-recorded message unless the caller complies with detailed regulations governing pre-recorded calls. *See* 16 C.F.R. §§ 310.4(b)(1)(v)(A)-(B) (2014). Effective October 1, 2008, however, the FTC specifically exempted the prescription refill reminder calls at issue here from its regulations governing pre-recorded calls: "This paragraph (v) shall not apply to any outbound telephone call that delivers a prerecorded healthcare message made by, or on behalf of, a covered entity or its business associate, as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103." 16 C.F.R. § 310.4(b)(1)(v)(D) (2014). When adopting the exemption for prerecorded healthcare messages, the FTC noted the public interest benefits of prescription refill reminder calls specifically, citing with approval one commentator's report that "up to 70% of patients with long-term prescriptions fall off therapy in the absence of prescription refill reminders, with resulting costly adverse impacts, including increased hospitalization, morbidity and mortality rates." *See* TSR Final Rule Amendments, 73 Fed. Reg. 51164, 51191 (Aug. 29, 2008) (codified at 16 C.F.R. §§ 310.1 *et seq.*) (quotations omitted); *see also* Memorandum In Support Of Walgreens' Motion To Dismiss, at pp. 12-13 (ECF No. 20) (noting FTC's six reasons that prescription refill reminder calls are in the public interest).

## III. THE FCC EXEMPTED PRESCRIPTION REFILL REMINDER CALLS FROM THE TCPA.

Effective October 16, 2013, the FCC adopted the same language as the FTC, exempting from its regulations every autodialed or prerecorded "call that delivers a 'health care' message made by, or on behalf of, a 'covered entity' or its 'business associate,' as those terms are defined

- 4 -

in the HIPAA Privacy Rule, 45 CFR 160.103." 47 C.F.R. § 64.1200(a)(2) (2014). When adopting this exemption, the FCC noted that its goal in so doing was to "maximize consistency" with the TSR, and held that "[a]s has the FTC, we find that HIPAA's existing protections . . . already safeguard consumer privacy, and we therefore do not need to subject these calls to our consent, identification, opt-out, and abandoned call rules." *In Re Rules & Regs. Implementing the TCPA of 1991*, FCC 12-21, 27 FCC Rcd. 1830, 1852, 1854 (Feb. 15, 2012). And as did the FTC, the FCC noted the public interest benefits of prescription refill reminder calls specifically, citing with approval comments "supporting an exemption because the exemption would allow the continuation of important communications by health care providers and health insurance plans *such as prescription refills* . . . ." *Id.* at 1854 n.176 (emphasis added); *see also id. at* 1877 ("We are also clarifying that informational robocalls, such as school closings and *prescription refill reminders*, are not classified as telemarketing calls for purposes of these rules.") (Statement of Commissioner Clyburn) (emphasis added).

**IV.   PRESCRIPTION REFILL REMINDER CALLS COME WITHIN THE TCPA's EMERGENCY PURPOSE EXEMPTION.**

When the FCC set out to define the so-called "emergency purpose" exemption to the TCPA, it explained that "[t]he legislative history of the TCPA indicates a congressional intent to interpret the term 'emergency' broadly rather than narrowly" and stated that "[i]n keeping with the legislative history and the intent of the TCPA, the Commission proposes to interpret 'emergency' to include situations in which it is in the *public interest* to convey information to consumers concerning health or safety, whether or not the event was anticipated or could have been anticipated." *In the Matter of the TCPA of 1991*, FCC 92-176, 7 FCC Rcd. 2736, 2738 (Apr. 10, 1992) (emphasis added). The definition it proposed at that time is the same definition it adopted. *Compare id.* Appendix B (proposing definition of emergency purposes as "calls

made necessary in any situation affecting the health and safety of consumers") *with* 47 C.F.R. § 64.1200(f)(4) (defining emergency purposes as "calls made necessary in any situation affecting the health and safety of consumers").

Both the FTC and the FCC have codified an express exemption for the prescription refill reminder calls at issue in this litigation based on their findings that such calls are necessary to serve the public interest and that HIPAA provides sufficient protections to consumers to prevent abuse. As such, because prescription refill reminder calls are communications "affecting the health and safety of consumers," these calls are *also* made for "emergency purposes," as defined by the FCC, and therefore exempt from the TCPA under the "emergency purposes" exemption as well.

Dated: July 29, 2014

Respectfully submitted,

/s/ Bradley J. Andreozzi
Bradley J. Andreozzi (ARDC No. 6257334)
bradley.andreozzi@dbr.com
Justin O. Kay (ARDC No. 6286557)
justin.kay@dbr.com
**DRINKER BIDDLE & REATH LLP**
191 North Wacker Drive, Suite 3700
Chicago, IL 60606-1698
Tel: (312) 569-1000
Fax: (312) 569-3000
*Counsel for Defendant Walgreen Co.*