# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

ROBERT KOLINEK, individually and
on behalf of all others similarly situated,

      *Plaintiff*,

      *v.*

WALGREEN CO., an Illinois corporation,

      *Defendant*.

Case. No. 13-cv-04806

Hon. Matthew F. Kennelly

---

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF
## PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

I.      **INTRODUCTION**.................................................................................................. 1

II.     **BACKGROUND** ................................................................................................ 3

      A.     **Plaintiff's Allegations, Walgreens' Systems for Gathering Telephone Numbers and Making the Calls at Issue, and the TCPA** ................................. 3

      B.     **The Litigation History** ................................................................... 5

      C.     **Settlement Discussions, Mediations and Confirmatory Discovery**.................. 7

III.    **TERMS OF THE SETTLEMENT** ...................................................................... 9

      A.     **Class Definition** .......................................................................... 9

      B.     **Monetary Relief** .......................................................................... 9

      C.     **Prospective Relief** ...................................................................... 10

      D.     **Payment of Settlement Administration Expenses, Including Notice**............. 10

      E.     **Compensation for Class Representative and Payment of Attorneys' Fees** ... 10

      F.     **Release of Liability**...................................................................... 10

IV.    **THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES** ........................................................................... 10

      A.     **The Settlement Class is Sufficiently Numerous**.................................... 11

      B.     **Settlement Class Members Share Common Questions of Law and Fact** ...... 12

      C.     **Kolinek's Claims are Typical of the Settlement Class Members' Claims** ..... 13

      D.     **Plaintiff and Class Counsel Will Adequately Represent the Settlement Class** ....................................................................................... 14

      E.     **The Proposed Class Satisfies the Requirements of Rule 23(b)(3)**.................. 16

            1.     **Common questions of law and fact predominate**................................ 17

             2.     **A class action is the superior method of adjudicating this controversy** ....................................................................... 18

V.     **PLAINTIFF'S COUNSEL SHOULD BE APPOINTED CLASS COUNSEL** .......... 19

VI.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ........ 20

    A.   The Strength of Plaintiff's Case, Balanced Against the Benefits of Settlement, Favors Preliminary Approval ........................................................ 22

    B.   The Expected Duration, Complexity, and Expense of Further Litigation Weigh in Favor of Preliminary Approval ........................................ 26

    C.   The Opinion of Competent Counsel Supports Preliminary Approval .......... 27

    D.   The Stage of Proceedings and Significant Amount of Discovery Completed Support Preliminary Approval ........................................................ 27

VII.  THE PROPOSED NOTICE PLAN SHOULD BE APPROVED .............................. 28

VIII. CONCLUSION ................................................................................................. 30

# TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT CASES:**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .................................................... 11, 16, 17

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ...................................................... 28

*Erica P. John Fund, Inc. v. Halliburton Co.,* 131 S. Ct. 2179 (2011) ......................................... 17

*Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740 (2012) ....................................................... 4

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ....................................................... 12, 13

**UNITED STATES CIRCUIT COURT OF APPEALS CASES:**

*Armstrong v. Board of Sch. Dirs. of City of Milwaukee,*
    616 F.2d 305 (7th Cir. 1980) ............................................................. 20, 21, 27

*Donovan v. Estate of Fitzsimmons,* 778 F.2d 298 (7th Cir. 1985) .............................................. 22

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) .................................................. 21

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ......................................................... 20

*Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583 (7th Cir. 2011) ................................................. 15

*Isby v. Bayh,* 75 F.3d 1191 (7th Cir. 1996) ......................................................... 21, 22, 27

*Jamie S. v. Milwaukee Pub Sch.*, 668 F.3d 481 (7th Cir. 2012) .................................................. 12

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) ......................................................... 14

*Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997) ....................................................... 18

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012) ............................... 17

*Muro v. Target Corp.*, 580 F.3d 485 (7th Cir. 2009) .................................................. 14

*Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489 (7th Cir. 2013). ................... 19

*Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584 (7th Cir. 1993). .......................... 15

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) ........................................... 20

*Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014)................................................. 12, 13

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
 463 F.3d 646 (7th Cir. 2006) ...................................................................... 20, 21, 22, 27

**UNITED STATES DISTRICT COURT CASES:**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
 No. 07-cv-2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) ........................................ 27

*Baird v. Sabre Inc.*, No. 13-cv-999, 2014 WL 320205 (C.D. Cal. Jan. 8, 2014)........................ 24

*Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014) ...................... *passim*

*Chandler v. Sw. Jeep-Eagle, Inc.*, 162 F.R.D. 302 (N.D. Ill. 1995) ............................................. 12

*DeHoyos v. Allstate Corp.*, 240 F.R.D. 26924 (W.D. Tex. 2007) ................................................ 25

*Ellison v. Steven Madden Ltd.*, No. 11-cv-5935 (C.D. Cal. 2013) ........................................ 20, 27

*G.M. Sign, Inc. v. Grp. C Commc'ns, Inc.*,
 No. 08-cv-4521, 2010 WL 744262 (N.D. Ill. Feb. 25, 2010) ......................................... 12

*Harris v. Circuit City Stores, Inc.*,
 No. 07-cv-2512, 2008 WL 400862 (N.D. Ill. Feb. 7, 2008) ........................................... 19

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
 270 F.R.D. 330 (N.D. Ill. 2010)................................................................................ *passim*

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
 789 F. Supp. 2d 935 (N.D. Ill. 2011) ...................................................................... 26, 27

*In re Capital One TCPA Litig.*, No. 12-cv-10064,
 2015 WL 605203, --- F. Supp. 3d ---- (N.D. Ill. Feb. 12, 2015)............................ 2, 23, 25

*In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 11-md-2261 (S.D. Cal. 2013)...................... 2, 23

*In re Northfield Labs., Inc. Sec. Litig.*,
 No. 06-cv-1493, 2012 WL 366852 (N.D. Ill. Jan. 31, 2012).................................... 20, 29

*Kazemi v. Payless Shoesource, Inc.*, No. 09-cv-5142 (N.D. Cal. 2012).................................... 2, 23

*Kessler v. Am. Resorts Int'l*,
 No. 05-cv-5944, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007) ....................................... 21

*Kramer v. Autobytel, Inc., et al.*, No. 10-cv-2722 (N.D. Cal. 2012)........................................ 2, 22

*Lozano v. Twentieth Century Fox Film Corp.*, No. 09-cv-6344 (N.D. Ill. 2011) ......... 2, 16, 20, 22

*Miller v. Red Bull N. Am., Inc.*, No. 12-cv-4961 (N.D. Ill.) .................................................. 16, 20

*Otero v. Dart*, No. 12-cv-3148, 2014 WL 4344029 (N.D. Ill. Sept. 2, 2014) ...................... 14, 18

*Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438 (N.D. Ill. 2008)...................................... 18

*Roberts v. Paypal, Inc.*,
    No. 12-cv-0622, 2013 WL 2384242 (N.D. Cal. May 30, 2013)...................................... 24

*Rojas v. Career Educ. Corp.*, No. 10-cv-5260 (N.D. Ill.)................................................. 15–16, 20

*Rose v. Bank of Am. Corp.*, No. 11-cv-02390 (N.D. Cal.)......................................................... 2, 23

*Ryabyshchuck v. Citibank (S.D.) N.A.*,
    No. 11-cv-1236, 2012 WL 5379143 (S.D. Cal. Oct. 30, 2012)...................................... 24

*Satterfield v. Simon & Schuster, Inc., et al.*, No. 06-cv-2893 (N.D. Cal. 2010)...................... 2, 22

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560 (N.D. Ill. 2011)........................................ 26, 28

*Subedi v. Merchant*, No. 09-cv-4525 2010 WL 1978693 (N.D. Ill. May 17, 2010) ................... 18

*Weinstein v. The Timberland Co., et al.*, No. 06-cv-00484 (N.D. Ill. 2008) ........................... 2, 22

**STATUTES:**

47 U.S.C. § 227.................................................................................................................. *passim*

Fed. R. Civ. P. 23 ............................................................................................................. *passim*

**MISCELLANEOUS:**

Manual for Complex Litigation (4th ed. 2004).......................................................................... 11

# I.  INTRODUCTION

Plaintiff Robert Kolinek ("Kolinek" or "Plaintiff") seeks preliminary approval of a class action settlement that, if approved, would resolve claims against Defendant Walgreen Co. ("Walgreens" or "Defendant") that it allegedly violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), by placing prerecorded prescription refill reminder calls to its customers' cellular phones. The proposed settlement agreement ("Agreement")—reached after significant motion practice, formal and informal discovery, two mediations with the Honorable Wayne R. Andersen (ret.) of JAMS Chicago, and numerous rounds of arm's-length negotiations—represents a strong result for the Settlement Class.[1]

Pursuant to the Agreement, Walgreens has agreed to create an $11 million non-reversionary Settlement Fund from which all claims will be paid. The fund will also be used to pay for Notice and Settlement Administration Expenses, a modest incentive award for Kolinek, and attorneys' fees awarded by the Court. Each Settlement Class Member who submits a valid claim will receive a *pro rata* share of the Settlement Fund, with no monies set to revert to Defendant. The Agreement also provides for wide-ranging prospective relief—including by implementing systems throughout Walgreens designed to improve the procedures for confirming that customers have consented to receive Prerecorded Prescription Calls to their cellular phones and to allow individuals to easily opt-in and out of the refill reminder program through various means. The prospective relief alone is estimated to cost Walgreens millions of dollars.

The strength of the settlement is perhaps best demonstrated when compared to other TCPA settlements. This is not a prototypical TCPA case. As confirmatory discovery has shown, the Prerecorded Prescription Calls went to pharmacy patients with a current prescription at

---

[1]      Except as otherwise indicated, all defined terms used herein shall have the same meanings ascribed to them in the Parties' proposed Class Action Settlement Agreement.

Walgreens that was due for refill. Walgreens views the calls as medical alerts that help patients stay on their treatment plans. And the Prerecorded Prescription Calls are made to telephone numbers that were voluntarily provided by the customers to Walgreens. In the prototypical TCPA case—where individuals allege they received unsolicited telemarketing calls from entities with which they have no connection or relationship—class members generally receive as much as $200. *See, e.g., Kramer v. Autobytel, Inc., et al.*, No. 10-cv-2722, Dkt. 148 (N.D. Cal. 2012) (providing for a cash payment of $100 to each class member); *Weinstein v. The Timberland Co., et al.*, No. 06-cv-00484, Dkt. 93 (N.D. Ill. 2008) (providing for a cash payment of $150 to each class member); *Satterfield v. Simon & Schuster, Inc., et al.*, No. 06-cv-2893, Dkt. 132 (N.D. Cal. 2010) (providing for a cash payment of $175 to each class member); *Lozano v. Twentieth Century Fox Film Corp.*, No. 09-cv-6344, Dkt. 65 (N.D. Ill. 2011) (providing for a cash payment of $200 to each class member). In "mass calling" cases—where tens of millions of individuals and hundreds or even billions of calls are at issue—class members generally receive between $20 to $40. *See In re Capital One TCPA Litig.*, No. 12-cv-10064, 2015 WL 605203, --- F. Supp. 3d ---- (N.D. Ill. Feb. 12, 2015) (finally approving settlement that provided for cash payment of $34.60 to each class member); *Rose v. Bank of Am. Corp.*, No. 11-cv-02390 (N.D. Cal.) (estimating cash payment of $20-$40 to each class member). And "direct relationship" TCPA cases, like the instant one, where the person called voluntarily provided their cellular telephone number to the caller at some point in time, generally result in coupon settlements or relatively small cash awards. *See Kazemi v. Payless Shoesource, Inc.*, No. 09-cv-5142, Dkt. 94 (N.D. Cal. 2012) (providing for a $25 voucher to each class member); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 11-md-2261, Dkt. 97 (S.D. Cal. 2013) (providing for a $20 voucher, which could be redeemed for $15 cash after expiration of nine month waiting period). There are no other cases

of which counsel are aware involving calling programs that arguably benefited the called parties by providing time-sensitive medical notifications.

Nevertheless, the instant settlement—which projects to net Settlement Class Members approximately $20 after taking into account anticipated claim rates—is in line with the "mass calling" cases and outperforms the standard "direct relationship" settlement. That alone is good support for the Court granting preliminary approval. But, the Settlement Class had an additional hurdle in this case which makes the settlement even stronger: unlike in the categories of cases described above where consent was the only real defense, Walgreens was also asserting the defense of the "emergency purpose" exception under the TCPA—that the calls were made to alert people to refill prescriptions that, if left unfilled, could have adverse health consequences. Though Plaintiff believes he would have overcome that defense at summary judgment or trial, he is also mindful that it is an untested area of the law that ultimately will be decided by the FCC and/or the appellate courts.

In the end, as explained further below, the $11 million Settlement Fund and likely $20 to claimants is in line with other settlements, furthers the deterrent goals of the TCPA and should be approved by the Court. Accordingly, Plaintiff Kolinek respectfully requests that the Court (1) certify the proposed Settlement Class, (2) appoint him as Class Representative and his counsel as Class Counsel, (3) approve the proposed Notice plan, (4) preliminarily approve the Agreement, and (5) set a Final Approval Hearing.

## II.    BACKGROUND

### A.    Plaintiff's Allegations, Walgreens' Systems for Gathering Telephone Numbers and Making the Calls at Issue, and the TCPA.

Defendant is a national retailer and pharmacy chain with thousands of locations

throughout the United States.[2] Plaintiff is a Walgreens customer who filled his first prescription at a Walgreens pharmacy as many as ten years ago. (Dkt. 1 ¶ 18.) At the time, Plaintiff alleges that he provided his cellular telephone number to a Walgreens pharmacist for purposes of "verification," or in other words, to confirm his identity if another customer with the same name attempted to fill a prescription at the same store. (*Id.*)

Plaintiff alleges that in or around early 2012 he began receiving prerecorded calls on his cellular telephone reminding him to fill his prescriptions at a Walgreens pharmacy. (*Id.*) According to Plaintiff, the Calls were part of a telemarketing campaign in which Walgreens called thousands of consumers' cellular phones in an attempt to bring consumers to Walgreens pharmacies. (*Id.* ¶¶ 3, 14.) Plaintiff alleges that he and the other consumers to whom the Calls were placed never consented to receive them, but rather, that Defendant harvested their cellular phone numbers from its database of customer contact information. (*Id.* ¶¶ 5, 15, 16, 18.)

According to Plaintiff, Walgreens violated the TCPA when it placed the Prerecorded Prescription Calls to customers' cellular phones without their consent. The TCPA specifically prohibits the use of prerecorded voices in making calls to cellular phones, providing that:

> It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using . . . an artificial or prerecorded voice . . . to any telephone number assigned to . . . a cellular telephone service . . . .

47 U.S.C. § 227(b)(1)(A)(iii). The TCPA was enacted more than two decades ago in response to "[v]oluminous consumer complaints about abuses of telephone technology." *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 744 (2012). In passing the statute, Congress specifically sought to prevent "intrusive nuisance calls" to consumers that it deemed "invasive of privacy," *see id.*, and set statutory damages in the amount of $500 per violation (which may be trebled if the conduct is

---

[2]     Frequently Asked Questions, Walgreens, http://news.walgreens.com/fact-sheets/frequently-asked-questions.htm (last visited Mar. 26, 2015).

found willful) as well as provided for injunctive relief. *See* 47 U.S.C. § 227(b)(3)(A)–(C).

Ultimately, through discovery (*see* Section II.C, *infra*), Plaintiff determined that Walgreens had collected the telephone numbers called directly from customers over a period of years, most often when gathering contact information for prescription-drug purchases and refills. (Declaration of Rafey S. Balabanian ["Balabanian Decl."] ¶ 11, a true and accurate copy of which is attached as Exhibit 2.) As a part of that process, Walgreens' policy was to request that customers identify whether the telephone numbers provided were assigned to cellular or landline accounts, as Walgreens' internal databases specifically delineate between such identifications. (*Id.*) Accordingly, when Walgreens initiated its refill reminder call program in 2012, it specifically did not place reminder phone calls to any number that had been identified as assigned to a cellular account. (*Id.*) Discovery also confirmed that Walgreens provided various options for call recipients to opt out of receiving future refill reminder calls—e.g., during any call a customer could simply press "8" on their touch-tone telephone to avoid future calls. (*Id.*) Nevertheless, just a very small fraction of the customers called opted out of receiving refill reminder calls going forward; for the year just completed, the opt-out rate was 0.70% and for the entire period of the program, the opt-out rate was less than 1.5%. (*Id.*) The percentage of customers who used the Prerecorded Prescription Calls to refill their prescriptions is vastly larger—by tens of multiples—than the opt-out rate, which Walgreens would argue shows that the Prerecorded Prescription Calls are viewed by its customers as a welcome reminder service rather than nuisance telemarketing calls. (*Id.*)

## B. The Litigation History.

On July 3, 2013, Plaintiff filed the instant action alleging a single claim—that Walgreens violated the TCPA when it allegedly placed the Prerecorded Prescription Calls to customers'

cellular phones. (*See* Dkt. 1.) The following month, Walgreens moved to dismiss Plaintiff's complaint, arguing that (i) Plaintiff consented to receive the Calls by providing his cellular telephone number to Walgreens for verification purposes, and (ii) the Calls fell within the TCPA's "emergency purpose" exception, 47 U.S.C. § 227(b)(1)(A). (Dkt. 20 at 5–15.) On February 10, 2014, the Court dismissed Plaintiff's complaint after full briefing, holding that under the FCC's interpretation of "consent," Kolinek consented to receive the calls by providing his cellular telephone number to Walgreens at some point in the past. (Dkt. 38.)

Plaintiff thereafter filed a motion to reconsider, arguing that the mere provision of a telephone number at a specific time, for a specific purpose, did not constitute "consent" to receive calls for any purpose, at any time in the future. (Dkt. 40 at 3–7.) Plaintiff also argued that his complaint did not contain all facts necessary for Walgreens to assert a consent defense, since there was no evidence that Kolinek provided his telephone number to Walgreens "knowing" he would receive calls from Walgreens at that number in the future. (*Id.* at 7–9.) On July 7, 2014, over Walgreens' vigorous opposition (Dkt. 44), and after the filing of supplemental authority by Plaintiff (Dkts. 46, 48), the Court granted Plaintiff's motion to reconsider, holding that Walgreens was unable to assert a consent defense on a motion to dismiss based on the allegations regarding Kolinek in the complaint but that the consent defense raised factual issues for discovery. (Dkt. 51.)

On July 22, 2014, the Court heard oral argument on the remaining issue in Defendant's motion to dismiss—whether the Prerecorded Prescription Calls fell under the TCPA's "emergency purpose" exception. (Dkt. 57.) After full briefing on the issue—including multiple supplemental briefs by the Parties (*see* Dkts. 53, 54, 58, 61, 63)—the Court held that, based on the allegations in the complaint, it did not have sufficient information regarding the Prerecorded

Prescription Calls to dismiss under the emergency purpose exception. (Dkt. 66.) Nevertheless, the Court cautioned that further factual development would be necessary as to the content and nature of the Calls to determine if the emergency purpose exception applied. (*Id.* at 2.)

Soon after, Walgreens answered Plaintiff's complaint, raising more than twenty affirmative defenses. (Dkt. 68.) The Parties then began to exchange information through informal discovery related to how the Prerecorded Prescription Call program was initiated, how Walgreens obtained and stored individuals' telephone numbers, and how the calls were placed. (Balabanian Decl. ¶ 6.)

### C. Settlement Discussions, Mediations and Confirmatory Discovery.

At the same time, the Parties began to discuss the possibility of resolving the case before additional protracted litigation. Over numerous teleconferences, they talked at length about the substantive issues of the case and their perspectives on how it might be resolved. (*Id.* ¶ 7.) Eventually, these conversations led to an agreement to formally mediate the case and, on October 15, 2014, the Parties convened their first mediation with the Honorable Wayne R. Anderson (ret.) of JAMS (Chicago). (*Id.*) Over the course of the day and with Judge Andersen's guidance, the Parties were able to reach an agreement on some of the material terms of a class-wide settlement, but did not reach a complete agreement. (*Id.* ¶ 8.) Instead, the session ended with a proposed settlement offer, which Defendant countered one week later. (*Id.*) After additional discussions over the following days, on October 24, 2014, the Parties finalized the material terms of an agreement in principle to resolve the case, subject to additional (confirmatory) discovery. (*Id.* ¶ 9.)

To that end, Plaintiff served formal written discovery requests on Walgreens regarding, *inter alia*, how it had obtained customers' telephone numbers, how any alleged consent to be

called had been obtained, how the calls were placed, and how Walgreens maintained records of both the phone numbers and any consent to be called. (*Id.* ¶ 10.) After receiving and reviewing Walgreens' written responses and document production, Plaintiff deposed Walgreens' Rule 30(b)(6) designee and Director of Outbound Programs, Christopher Helzerman, on January 16, 2015, to further explore and understand those issues. (*Id.*)

In addition to formal written and oral discovery, the Parties agreed that Walgreens would—subject to a Protective Order (dkt. 79) and other confidentiality measures—provide records identifying the telephone numbers to which the alleged calls were made to a third party to determine which of those numbers were, in fact, assigned to cellular phones (although not identified as such in Walgreens' database) and thus fell within the proposed Settlement Class definition. (Balabanian Decl. ¶ 12.) In that way, the Parties intended to further confirm the scope of the proposed Settlement Class, ensure an appropriate plan for notifying Settlement Class Members of the settlement, and also confirm the fairness and reasonableness of the settlement. (*Id.*) In February 2015, Walgreens provided that data to third-party administrator, Kurtzman Carson Consultants ("KCC"). (*Id.* ¶ 13.) KCC organized and analyzed the data and ultimately identified the phone numbers called by Walgreens that were assigned to cellular accounts. (*Id.*) However, due to a discrepancy in the manner in which the data was originally extracted from Walgreens' databases, the Parties determined to re-run the analysis for a second time. (*Id.*) Upon the conclusion of the second analysis, KCC determined that there were approximately 9.2 million cellular telephone numbers to which Walgreens placed Calls during the relevant period of time. (*Id.* ¶ 14.)

Notwithstanding their agreement in principal regarding the key terms of the settlement (i.e., fund size, prospective relief, etc.), the Parties were at odds about other aspects of the

settlement, namely the plan for providing notice to the Settlement Class. As they could not reach a consensus on that issue, the Parties determined to proceed with a second mediation before Judge Andersen, during which they were able to resolve the remaining issues. (*Id*. ¶ 15.)

With that, the Parties were satisfied that the terms of the proposed settlement were fair, reasonable, and adequate, and proceeded with finalizing their written Agreement. (*Id*.¶ 16.) And, on March 26, 2015, the Parties executed the Agreement now before the Court. (*Id*.)

## III.    TERMS OF THE SETTLEMENT

A copy of the Settlement Agreement is attached as Exhibit 1. The key terms of the Agreement are summarized as follows:

**A.    Class Definition.** The settlement class ("Settlement Class") is defined as "all individuals in the United States to whom Walgreens placed a Prerecorded Prescription Call to their cellular telephone." (Agreement ¶ 1.30.) A "Prerecorded Prescription Call" is any prerecorded voice prescription refill reminder call placed to a cellular telephone by Walgreens and/or any third parties acting on its behalf. (*Id*. ¶ 1.24.) As set forth in the proposed preliminary approval order, the ending date for membership in the Settlement Class will be the date the Court grants Preliminary Approval.

**B.    Monetary Relief.** Defendant has agreed to create an $11 million non-reversionary Settlement Fund, from which all Settlement Class Member claims will be paid. (*Id*. ¶ 1.32.) After settlement administration and notice expenses, an incentive award, and attorneys' fees have been paid, each Settlement Class Member who submits an approved claim will receive a *pro rata* share of the Settlement Fund. (*Id*. ¶ 2.1(b).) Any unclaimed funds will be distributed to approved claimants if practical or otherwise as directed by the Court upon application made by counsel. (*Id*. ¶ 2.1(e).)

    **C.**     **Prospective Relief.** Defendant has agreed to implement procedures to ensure that only persons who provide prior express consent receive Prerecorded Prescription Calls to their cellular phones, including (i) updating its electronic database to identify customer telephone numbers are assigned to either a landline or wireless phone, (ii) implementing procedures to confirm the accuracy of customers' communication preferences, and (iii) providing customers the option to elect to receive, and unsubscribe from, the Prerecorded Prescription Calls online, during the in-store checkout process, over the phone, and by otherwise contacting Walgreens. (*Id.* ¶ 2.2(a)–(c).)

    **D.**     **Payment of Settlement Administration Expenses, Including Notice.** Defendant has agreed to pay from the Settlement Fund all reasonable Settlement Administration Expenses, including those related to providing Notice. (*Id.* ¶ 1.28.)

    **E.**     **Compensation for Class Representative and Payment of Attorneys' Fees.** Defendant has agreed to pay from the Settlement Fund, subject to Court approval, an incentive award of $5,000 to Kolinek in recognition of his service as Class Representative (*id.* ¶ 8.3) and an award of reasonable attorneys' fees and expenses to Class Counsel, as may be awarded by the Court. With no consideration from Defendant, Class Counsel has determined to seek no more than thirty-five percent (35%) of the Settlement Fund in fees. (*Id.* ¶ 8.1.)

    **F.**     **Release of Liability.** In exchange for the monetary and prospective relief described above, Defendant will be released, acquitted, and forever discharged from any and all claims relating to the alleged making of Prerecorded Prescription Calls to members of the Settlement Class. (*See id.* ¶¶ 1.25–1.27, 3.)

## IV. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES.

    Plaintiff respectfully requests that the following Settlement Class be certified for

settlement purposes: "all individuals in the United States to whom Walgreens placed a Prerecorded Prescription Call to their cellular telephone," through the date the Court grants Preliminary Approval of the settlement. (*Id.* ¶ 1.30.)

Before granting Preliminary Approval, the Court must determine that the proposed Settlement Class is appropriate for certification by ensuring that it meets the requirements of Rule 23(a) and fits into one of the three subjections of Rule 23(b). *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 621 (1997); *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 340–345 (N.D. Ill. 2010) (citations omitted); *see also* Manual for Complex Litigation § 21.632 (4th ed. 2004). Rule 23(a) requires that (1) the proposed settlement is so numerous that joinder of all individual class members is impracticable (numerosity); (2) there are questions of law or fact common to the proposed settlement class (commonality); (3) plaintiff's claims are typical of those of the class (typicality), and (4) the plaintiff and class counsel will adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a)(1)–(4); *In re AT & T*, 270 F.R.D. at 340–44. In addition, where—as here—certification is sought under Rule 23(b)(3), the proponent of class certification must show (1) that common questions of law or fact predominate over questions affecting only individual class members (predominance), and (2) that a class action is superior to other available methods of resolving the controversy (superiority). Fed. R. Civ. P. 23(b)(3); *In re AT&T*, 270 F.R.D. at 344–45.

As described in detail below, the proposed Settlement Class satisfies all of these prerequisites and should therefore be certified.

### A.  The Settlement Class is Sufficiently Numerous.

Rule 23(a)'s first requirement—numerosity—is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *In re AT & T*, 270 F.R.D.

at 341; *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 250 (N.D. Ill. 2014) (citation omitted). Although there is no "magic number" at which joinder becomes impracticable, the requirement of numerosity is usually met when the class is comprised of forty or more persons. *See Birchmeier*, 302 F.R.D. at 250; *Chandler v. Sw. Jeep-Eagle, Inc.*, 162 F.R.D. 302, 307 (N.D. Ill. 1995) (citations omitted) (finding proposed classes of 50 and 150 persons numerous). Here, there is no question that the Settlement Class is sufficiently numerous, because Defendant's records indicate that it placed the Calls to approximately 9.2 million individuals.[3] (Balabanian Decl. ¶ 18.) Accordingly, Rule 23(a)'s numerosity requirement is satisfied.

### B.  Settlement Class Members Share Common Questions of Law and Fact.

Rule 23(a)'s second requirement—commonality—is satisfied when there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 755–56 (7th Cir. 2014). For certification, class members must share "a common contention . . . capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Birchmeier* 302 F.R.D. at 250. "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek*, 764 F.3d at 756 (finding commonality satisfied where all class members' claims were derived from the same conduct—the deceptive marketing and packaging of coffee pods). In the TCPA context, a pattern of conduct that may give rise to common questions is the placement of calls using an artificial or prerecorded voice. *See, e.g.*, *Birchmeier*, 302 F.R.D. at

---

[3]     Although not explicitly required under Rule 23, a party seeking class certification must also show that the class is "sufficiently definite or ascertainable." *Birchmeier*, 302 F.R.D. at 245 (citing *Jamie S. v. Milwaukee Pub Sch.*, 668 F.3d 481, 493 (7th Cir. 2012)). Ascertainability is met when class members can be identified based on "precise, objective criteria." *G.M. Sign, Inc. v. Grp. C Commc'ns, Inc.*, No. 08-cv-4521, 2010 WL 744262, at *4 (N.D. Ill. Feb. 25, 2010) (citation omitted). Because Settlement Class membership here is based on straightforward criteria—receipt of a Prerecorded Prescription Call from Walgreens on one's cellular telephone number (Agreement ¶ 1.31)—and Defendant has provided a list of all individuals who satisfy such criteria, the ascertainability requirement is satisfied as well.

251 (finding common questions where all class members "received the same calls . . . using the same artificial or prerecorded voice technology"). And as the Supreme Court has noted, "even a single common question will do." *Dukes*, 131 S. Ct. at 2556 (internal quotations and alterations omitted).

Here, the proposed Settlement Class satisfies the commonality requirement of Rule 23(a). Kolinek alleges that Walgreens engaged in a uniform practice of placing the Prerecorded Prescription Calls to individuals without first ensuring that it had prior express consent to do so. In Plaintiff's view, this standardized conduct raises several issues of fact and law common to the Settlement Class, including: (1) whether Walgreens placed calls to cellular telephones using an artificial or prerecorded voice, (2) whether Walgreens obtained consent to place the Prerecorded Prescription Calls, and (3) whether the Calls fall into the TCPA's emergency purpose exception. Because the answers to those questions depend solely on Defendant's identical conduct towards every member of the Settlement Class, the Settlement Class's claims will rise and fall on the resolution of the same common questions. *See Suchanek*, 764 F.3d at 757 (finding the commonality requirement satisfied when "[plaintiff's] claims and those of the class [he] would like to represent all derive from a single course of conduct by [Defendant]"); *see also Birchmeier*, 302 F.R.D. at 251 (finding commonality satisfied when "there [was] a common injury, resulting from receipt of the allegedly offending calls, not to mention common questions regarding the liability of the defendants who did not themselves place the calls."). Accordingly, the commonality requirement is satisfied.

### C. Kolinek's Claims are Typical of the Settlement Class Members' Claims.

The third requirement of Rule 23(a)—typicality—is satisfied when the named plaintiff's claims or defenses "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3);

*Birchmeier*, 302 F.R.D. at 251; *In re AT & T*, 270 F.R.D. at 342 (citation omitted). The typicality requirement is closely related to commonality, *see Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998) (citation omitted), and is satisfied when the plaintiff's claims arise from the defendant's same practice or course of conduct and are premised on the same legal theory as the class members' claims. *Id.*; *see also In re AT & T*, 270 F.R.D. at 342. The typicality requirement is viewed permissively, and is satisfied as long as the plaintiff's claims have the "same essential characteristics" as the class's. *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009).

Here, although Plaintiff's claims need only have the "same essential characteristics," *see id.*, to those of the other Settlement Class Members, Kolinek's claims are substantially identical. He alleges that he received Prerecorded Prescription Calls from Walgreens in violation of the TCPA. In the end, Kolinek received the same Calls, made by the same Defendant, that were placed in the same manner, and "[t]hat is enough for Rule 23(a)(3) purposes." *In re AT & T*, 270 F.R.D. at 342 (citation omitted); *see also Birchmeier*, 302 F.R.D. at 251 (finding that "because the named plaintiffs received the same type of call as the other class members, their claims are typical of those of the class."). Accordingly, Kolinek's claims are unquestionably typical of those of the Settlement Class and his pursuit of his individual claims will necessarily advance the interests of the absent Settlement Class Members.

### D. Plaintiff and Class Counsel Will Adequately Represent the Settlement Class.

The fourth and final requirement of Rule 23(a)—adequacy—is satisfied where "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Birchmeier*, 302 F.R.D. at 252; *Otero v. Dart*, No. 12-cv-3148, 2014 WL 4344029, at *7 (N.D. Ill. Sept. 2, 2014). There are two components to the adequacy inquiry: "(1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members,

14

with their differing and separate interests, and (2) the adequacy of the proposed class counsel."

*Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011), *as modified* (Sept. 22, 2011) (citing *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 598 (7th Cir. 1993)). As it relates to the class representative, courts must determine whether his interests in the outcome are in harmony with the interests of the class members he seeks to represent. *See In re AT & T*, 270 F.R.D. at 343. And as it relates to class counsel, courts consider their experience litigating similar actions and dedication of time and resources to the case. *See id.* at 344.

Here, both Kolinek, as proposed Class Representative, and Edelson PC, as proposed Class Counsel, will fairly and adequately represent the interests of the proposed Settlement Class. First, Kolinek's interest in redressing Defendant's alleged violation of the TCPA is identical to the interests of all other Settlement Class Members: they all suffered the same alleged injury when they received the Prerecorded Prescription Calls and thus, have the exact same claims. Moreover, Kolinek has worked alongside proposed Class Counsel throughout the pendency of this Action—reviewing the complaint and other documents, equipping his attorneys with the information needed to pursue his claims, and responding to requests for additional information throughout the settlement process—further confirming his dedication to vigorously representing the interests of the Settlement Class. (*Id.* ¶ 20.)

In addition, and as explained more fully in Section V below, proposed Class Counsel are experienced members of the plaintiffs' bar who have built their practice litigating similarly complex consumer class actions, including many under the TCPA. (*See* § V, *infra*; Balabanian Decl. ¶ 21.) Indeed, Plaintiff's counsel have regularly been found to be adequate representatives in TCPA actions in this District, including by this Court. *See Birchmeier*, 302 F.R.D. at 252 (finding that attorneys at Edelson PC will adequately represent the class); *Rojas v. Career Educ.*

15

*Corp.*, No. 10-cv-5260, Dkt. 55 at 3 (N.D. Ill.) (finding that "attorneys [at Edelson PC] are competent and capable of exercising the responsibilities of Class Counsel."); *Miller v. Red Bull N. Am., Inc.*, No. 12-cv-4961, Dkt. 47 at 4 (N.D. Ill.) (appointing attorneys at Edelson PC as class counsel); *Lozano,* No. 09-cv-06344, Dkt. 64 (N.D. Ill.) (same).

Moreover, proposed Class Counsel have devoted substantial resources to the prosecution of this Action—by, for example, investigating the claims of Kolinek and the Settlement Class, aggressively pursuing Plaintiff's claims through a motion to reconsider, maintaining an ongoing dialogue with Defendant, conducting a formal mediation, ultimately reaching a resolution of this Action, performing extensive discovery and engaging in additional settlement discussions and a second mediation to ensure that the settlement is fair and reasonable in light of that discovery— and they will continue to do so throughout the Action's pendency. (Balabanian Decl. ¶ 22.)

Accordingly, Kolinek and his counsel have demonstrated their commitment to vigorously representing the Settlement Class and neither have interests antagonistic to the Settlement Class. The adequacy requirement is undoubtedly met.

## E.    The Proposed Settlement Class Satisfies the Requirements of Rule 23(b)(3).

In addition to meeting the four requirements for certification under Rule 23(a), the proposed Settlement Class also satisfies the two additional requirements imposed under Rule 23(b)(3)—predominance and superiority. *See* Fed. R. Civ. P. 23(b)(3); *In re AT & T*, 270 F.R.D. at 345. The purpose of these additional requirements is to "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (citing Fed. R. Civ. P. 23 advisory committee's notes (1966)); *Birchmeier*, 302 F.R.D. at 255. As explained below, the requirements of predominance and superiority are readily met.

16

### 1.    Common questions of law and fact predominate.

While commonality under Rule 23(a)(2) confirms the presence of common questions of law or fact, the predominance requirement of Rule 23(b)(3) requires that those common questions qualitatively "represent a significant aspect of [the] case." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012), *reh'g denied* (Feb. 28, 2012) (citation omitted). Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623; *In re AT & T*, 270 F.R.D. at 345. A class is often considered "cohesive" when a defendant has engaged in standardized conduct that is identical toward each class member. *See In re AT & T*, 270 F.R.D. at 345. And when common evidence can be used to prove a class's claims, the predominance requirement is generally satisfied. *See Messner*, 669 F.3d at 818–19. The predominance analysis begins with the elements of the underlying cause of action, *see id.* at 815 (citing *Erica P. John Fund, Inc. v. Halliburton Co.,* 131 S. Ct. 2179, 2184 (2011)), which in this case prohibits the placement of prerecorded calls to cellular telephones absent prior express consent or an emergency purpose. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

Here, the common factual and legal questions detailed in Section IV.B *supra*—e.g. whether Walgreens placed Prerecorded Prescription Calls to cellular telephones using a prerecorded voice, whether Walgreens obtained consent, and whether the Calls fall within the TCPA's emergency purpose exception—are the pillars of Plaintiff's and the Settlement Class Members' TCPA claims. Thus, because the Settlement Class Members all received the same calls, made by the same entity, and in the same manner, common questions predominate in satisfaction of Rule 23(b)(3). *See, e.g., Birchmeier*, 302 F.R.D. at 253 ("defendants' contention about calculation of individual damages is a non-issue in terms of predominance. Plaintiffs are

asking only for statutory damages, which eliminates individual variations.") (citations omitted).

**2.    A class action is the superior method of adjudicating this controversy.**

Finally, Rule 23(b)(3) requires that a class action is the superior method of "fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3)(B); *Birchmeier*, 320 F.R.D. at 255; *Subedi v. Merchant*, No. 09-cv-4525 2010 WL 1978693, at *6 (N.D. Ill. May 17, 2010). Class treatment is particularly well suited for claims resulting from a pattern of standardized conduct because it enables the court to "determine the legality of [an] alleged practice and procedure in one proceeding." *Otero*, 2014 WL 4344029, at *9; *see also Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 444 (N.D. Ill. 2008) (citations omitted). A class action is also superior in cases where individual damages are relatively low, because it allows individuals to aggregate their claims, overcoming the "problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *See Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir. 1997).

Here, a class action is the superior method of resolving the controversy because it allows the Court to swiftly determine the legality of the Prerecorded Prescription Call program in a single proceeding, generating a uniform result that will apply to all similarly situated persons. Moreover, a class action is superior because it allows the Settlement Class Members to aggregate relatively modest individual claims worth just $500 in statutory damages (or, at most, $1,500 in the case of willful conduct, which there is no evidence of in this case). *See* 47 U.S.C. § 227(b)(3)(C). By comparison to the modest relief available, the cost of litigating TCPA claims on an individual basis—including the cost of discovery, motion practice, and trial—would be prohibitively expensive. In addition, individual claims would clog the courts with an influx of separate actions, further delaying the possibility of relief and undermining Rule 23's policy of

judicial efficiency. *See Birchmeier*, 302 F.R.D. at 255 ("In this case, plaintiffs have alleged that defendants chose to violate the TCPA on a very large scale by targeting a million or more people with inappropriate calls. Individual litigation of the claims of each individual would not be a superior or efficient way to resolve the claims.").

By providing swift resolution of common claims in a way that would not be possible individually, the superiority requirement is satisfied. Because the requirements of Rule 23(a) and 23(b)(3) are satisfied, the proposed Settlement Class should be certified for settlement purposes.

## V.     PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL.

When certifying a class, Rule 23 requires that a court appoint counsel who will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B), (2), (4); *Harris v. Circuit City Stores, Inc.*, No. 07-cv-2512, 2008 WL 400862, at *11 (N.D. Ill. Feb. 7, 2008) (citation omitted). In appointing class counsel, the court must consider (1) the work counsel has done in identifying or investigating potential claims; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the case; (3) counsel's knowledge of the applicable law, and (4) the resources class counsel has committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv); *Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489, 498 n.7 (7th Cir. 2013).

Here, proposed Class Counsel readily satisfy the criteria of Rule 23(g). First, Class Counsel have devoted—and will continue to devote—a significant amount of time, effort and resources to this litigation, beginning with their initial investigation of Plaintiff's allegations and ending with significant confirmatory discovery, mediations and settlement discussions. (*See, e.g.,* Balabanian Decl. ¶ 22.) Second, proposed Class Counsel have extensive experience in similar complex litigation and have been appointed class counsel in numerous TCPA class actions, many

of them in this District and one before this Court. (*See* Firm Resume, a true and accurate copy of which is attached as Exhibit A to the Balabanian Decl.); *see also Birchmeier*, 302 F.R.D. at 256 ("appoint[ing] Jay Edelson of Edelson PC . . . as class counsel"); *Red Bull*, No. 12-cv-04961 (N.D. Ill.) (serving as lead counsel in $6 million text spam settlement); *Rojas*, No. 10-cv-05260 (N.D. Ill.) (serving as lead counsel in $20 million text spam settlement); *Lozano,* No. 09-cv-06344 (N.D. Ill.) (serving as lead counsel in $16 million text spam settlement). They have developed an in-depth understanding of the TCPA and have successfully litigated emerging issues that continue to redefine its boundaries. *See, e.g.*, *Satterfield*, 569 F.3d 946 (9th Cir. 2009) (securing landmark ruling applying the TCPA to text messages); *Ellison*, No. 11-cv-5935, Dkt. 73 at 9 ("[Attorneys at Edelson PC] specialize in litigating consumer class actions and have pioneered the application of the TCPA to text-messaging technology, litigating some of the largest consumer class actions in the country on this issue.").

For these reasons, the Court should appoint Jay Edelson, Rafey S. Balabanian, Ryan D. Andrews and Benjamin H. Richman of Edelson PC as Class Counsel.

## VI. THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL.

Rule 23(e) requires judicial approval of a proposed class action settlement based on a finding that the agreement is "fair, reasonable, and adequate," *see* Fed. R. Civ. P. 23(e)(2); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006), which involves a well established two-step process. *Armstrong v. Bd. of Sch. Directors of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *In re Northfield Labs., Inc. Sec. Litig.*, No. 06-cv-1493, 2012 WL 366852, at *5 (N.D. Ill. Jan. 31, 2012). The first step—preliminary approval—assesses whether the proposed settlement falls "within the range of possible approval," *see Armstrong*, 616 F.2d at

314, "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Id.* And once preliminary approval is granted, class members are notified of the settlement and the court and parties proceed to the second step—the final fairness determination. *Id.*

While "[f]ederal courts naturally favor the settlement of class action litigation," *In re AT & T*, 270 F.R.D. at 345 (quoting *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)), a multi-factor test is used to determine whether a proposed settlement is fair, reasonable, and adequate. *Synfuel*, 463 F.3d at 653 (citing *Isby*, 75 F.3d at 1199). Specifically, courts consider the following five factors: (1) the strength of the plaintiff's case compared to the amount of the settlement offer, (2) the length, complexity, and expense of further litigation, (3) the amount of opposition to the settlement (4) the opinion of competent counsel, and (5) the stage of the proceedings and amount of discovery completed. *Id.* (citing *Isby*, 75 F.3d at 1199).[4] Although these factors are ultimately assessed at the final fairness hearing, a summary version of the analysis takes place at the preliminary approval stage. *Kessler v. Am. Resorts Int'l*, No. 05-cv-5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314).[5]

Here, each factor supports the Settlement Agreement, which this Court should find "well within the range of possible approval."

---

[4] The third factor—the amount of opposition to the settlement—is not typically assessed at the preliminary approval stage as notice of the proposed settlement has not yet been administered. *See In re AT & T*, 270 F.R.D. at 349. Accordingly, it is not considered here.

[5] In addition to these factors, the Seventh Circuit recently identified several "red flags" that may alert courts to a problematic settlement, including: (1) the failure to establish the total class recovery, (2) the reversion of un-awarded attorneys' fees to the defendant, (3) overly complicated claim forms, and (4) coupon-based relief. *Eubank v. Pella Corp.*, 753 F.3d 718, 723–26 (7th Cir. 2014). None of these warning signs are present here, as the Agreement (1) creates an $11 million settlement fund, (2) with no funds reverting to Walgreens, (3) and that with the completion of a short and simple claim form (which requires only basic contact information and the cellular telephone number at which claimants affirm they received the Calls), (4) Settlement Class Members will receive real and immediate cash relief. (*See* Agreement ¶ 1.32, 2.1, Exs. B–D; § III.B, *supra*.)

A.     **The Strength of Plaintiff's Case, Balanced Against the Benefits of Settlement, Favors Preliminary Approval.**

The first and most important factor in assessing a settlement's fairness is the strength of the plaintiff's case compared to the settlement offer. *Synfuel*, 483 F.3d at 653. The analysis begins by making a "ball park valuation" of the value of continued litigation to the class, which is considered in light of associated risks of continued protracted litigation. *See In re AT & T*, 270 F.R.D. at 347 (citing *Donovan v. Estate of Fitzsimmons,* 778 F.2d 298, 309 (7th Cir. 1985)). In addition, because a settlement is a compromise, "courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T*, 270 F.R.D. at 347 (quoting *Isby,* 75 F.3d at 1200) (internal quotations omitted).

First, the settlement—in terms of tangible monetary relief and improved customer telephone contact practices going forward—is strong, both compared to other similar TCPA actions and when viewed in light of the risks of protracted litigation. In terms of comparables, here the monetary relief of approximately $20[6] per Settlement Class Member is consistent with other settlements in this area of the law. As noted above, in the prototypical TCPA case—where individuals alleged they received unsolicited telemarketing calls from entities with which they have no connection or relationship—class members generally receive as much as $200. *See, e.g., Kramer*, No. 10-cv-2722, Dkt. 148 (providing for a cash payment of $100 to each class member); *Weinstein*, No. 06-cv-00484, Dkt. 93 (providing for a cash payment of $150 to each class member); *Satterfield,* No. 06-cv-2893, Dkt. 132 (providing for a cash payment of $175 to each class member); *Lozano*, No. 09-cv-6344, Dkt. 65 (providing for a cash payment of $200 to

---

[6]     As added protection, the Parties have accounted for the unlikely event that, based on the rate of claims, the per class member distribution would be less than $15, by allowing Settlement Class Members a second opportunity to opt-out after a determination as to the amount of individual recoveries is made. (*See* Agreement ¶ 2.1(f).)

each class member). In "mass calling" cases—where tens of millions of individuals and hundreds or even billions of calls are at issue—class members generally receive between $20 to $40. *See In re Capital One TCPA Litig.*, 2015 WL 605203, at *6 (providing for a cash payment of $34.60 to each class member)[7]; *Bank of Am. Corp.*, No. 11-cv-02390 (N.D. Cal.) (same). And finally, "direct relationship" TCPA cases, like the instant one, where the person called voluntarily provided their cellular telephone number to the caller, generally result in coupon settlements or small cash awards. *See Kazemi*, No. 09-cv-5142, Dkt. 94 (providing for a $25 voucher to each class member); *In re Jiffy Lube*, No. 11-md-2261, Dkt. 97 (providing for a $20 voucher, which could be redeemed for $15 cash after nine month waiting period).

As it relates to Walgreens' defenses and the relationship of the Parties, the strength of the settlement becomes ever more apparent. On the issue of consent, the Court has not only once dismissed Plaintiff's claims based on his voluntarily provision of his telephone number to Walgreens (Dkt. 51), but upon reconsideration, held that Plaintiff's claim survives because it "is required to take his allegation as true," but that the veracity of such allegations "must await factual development." (Dkt. 51 at 8; *see also* Dkt. 66 at 2 ("By this comment the Court intended to convey that although the complaint's relatively spare allegations regarding the pertinent facts were insufficient to establish the defense, further factual development might require a different conclusion.").) Having conducted discovery, there is no question that Walgreens collected the phone numbers for this calling program directly from its customers at the time they sought to fill (or refill) prescriptions from a Walgreens pharmacist. (*See* Balabanian Decl. ¶ 11.) Thus, there

---

[7]     It bears noting that in *In re Capital One*, where there were several (arguably harassing) calls to each of the class members seeking to collect on debts owed to the defendant, Judge Holderman found that "the $34.60 per claimant recovery…[did] not seem so miniscule in light of the fact that class members did not suffer any actual damages beyond a few unpleasant phone calls, which they received ostensibly because they did not pay their credit card bills on time." *See* 2015 WL 605203, at *6.

exists a "direct relationship" between Walgreens and the individuals who received the Calls (i.e.,

their customers), and some courts have held that where such a relationship exists and the called

party voluntarily provided their cellular phone number to the caller, then that constitutes express

consent to be called. *See Roberts v. Paypal, Inc.*, No. 12-cv-0622, 2013 WL 2384242, at *5

(N.D. Cal. May 30, 2013) (holding that the prior provision of a cell phone number to the caller

for any reason constitutes prior express consent to be called); *Ryabyshchuck v. Citibank (S.D.)*

*N.A.,* No. 11-cv-1236, 2012 WL 5379143, at *3 (S.D. Cal. Oct. 30, 2012); *Baird v. Sabre Inc.*,

No. 13-cv-999, 2014 WL 320205, at *2 (C.D. Cal. Jan. 28, 2014).

With respect to Walgreens' defense that the Calls fall under the emergency purpose

exception to the TCPA, evidence demonstrates that Walgreens may actually be able to claim that

defense given that the Calls were placed to individuals who had prescriptions for maintenance

medications (such as cholesterol lowering medications, blood pressure medications, diabetes

medications, and medications for chronic pulmonary issues), the continuation of which are vital

to the continued health of the patient. (Balabanian Decl. ¶ 25). And this is all against the

backdrop of Walgreens' policy of not calling numbers assigned to cellular accounts without

consent, and the fact that less than 1.5 % of all Settlement Class Members called opted out of

receiving future calls during the entire three year life of the program (and less than 0.7% opted

out in the past year). Thus, it is at least arguable that Walgreens could ultimately prevail on its

defenses.

Finally, the monetary benefit to the Settlement Class is especially approvable when

viewed in light of some individuals' positive response to the Calls. Indeed, during his Rule

30(b)(6) deposition, Christopher Helzerman noted that many individuals have reacted positively

to Walgreens' calling campaign and even called to opt *in* to the program after accidentally opting

24

out. (Balabanian Decl. ¶ 24.) That's likely because, unlike most telemarketing calls, the Prerecorded Prescription Calls had the additional purpose of helping individuals maintain their health. (*Id.*) And in cases like this, where many class members benefit from the alleged unlawful conduct, obtaining class certification and prevailing on the merits may be "extraordinarily difficult," making approval of a classwide settlement all the more appropriate. *See DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 290 (W.D. Tex. 2007) (collecting cases and finding a settlement weighs in favor of preliminary approval when some class members benefit from the alleged unlawful conduct since litigation on the merits may preclude certification).[8]

Even if Plaintiff cleared those initial hurdles, Walgreens would undoubtedly challenge a motion for class certification, arguing *inter alia* that the consent defense raises individual factual issues, further delaying the possibility of relief to the Settlement Class. (Balabanian Decl. ¶ 26.) Further still, if the case proceeded to trial, other roadblocks—such as additional discovery and procurement of expert testimony—would stand between the Settlement Class and ultimate recovery. (*Id.*) And in light of the amount at stake and its reputational interests, Walgreens is nearly certain to appeal any judgment in favor of the class, thus further delaying recovery. (*Id.*) Despite these substantial uncertainties, the settlement provides real and immediate cash relief— entitling each Settlement Class Member to a *pro rata* share of the $11 million Settlement Fund. (Agreement ¶ 2.1(b).) Just as importantly, the settlement provides meaningful prospective relief, including new procedures to ensure that only those persons who provide prior express consent receive Prerecorded Prescription Calls in the future. (*Id.* ¶ 2.2(a)–(d).) Thus, in light of the numerous risks of further litigation, the relief afforded by the settlement should be viewed as

---

[8] This view is also consistent with recent orders approving TCPA settlements offering similar individual recoveries despite the fact that, unlike here, the calls provided no benefit to class members, were far more prevalent in number, and were (arguably) intended to harass their recipients. *See, e.g., In re Capital One*, 2015 WL 605203 (finally approving TCPA settlement providing claiming class members approximately $34 each as a result of receiving dozens of debt collection calls each).

significant, and weighs in favor of preliminary approval.

**B.      The Expected Duration, Complexity, and Expense of Further Litigation Weigh in Favor of Preliminary Approval.**

Preliminary approval is also favored in cases such as this one, where "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). As noted above, should litigation proceed, further discovery will undoubtedly be needed to develop the case, which will significantly drive up the cost of the litigation. *See In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 964 (N.D. Ill. 2011) (noting that "costs associated with discovery in complex class actions can be significant"). As this Court recognized in its Order denying the remaining portion of Defendant's motion to dismiss, while the "relatively spare" allegations of the complaint precluded dismissal under Walgreens' consent and emergency purpose defenses, further factual development—concerning the content of the Calls and the circumstances under which consumers provided their telephone numbers—would be needed to test Plaintiff's allegations. (Dkt 66 at 2.) Beyond that—and as discussed above— Walgreens would undoubtedly oppose Plaintiff's motion for class certification and appeal any decision in Plaintiff's favor. (*See* Balabanian Decl. ¶ 26.) If anything, "this drawn-out, complex, and costly litigation process . . . would provide [Settlement] Class Members with either no in-court recovery or some recovery many years from now…." *In re AT & T Sales Tax Litig.*, 789 F. Supp. 2d at 964. The proposed settlement, in contrast, avoids this long and winding path, putting an immediate end to Walgreens' alleged conduct and placing cash in the hands of Walgreens' customers.

Because the settlement avoids protracted, costly, and complex litigation, the second factor also weighs in favor of preliminary approval.

**C.      The Opinion of Competent Counsel Supports Preliminary Approval.**

The third factor examines the opinion of competent counsel as to whether a proposed settlement is fair, reasonable, and adequate. *Isby*, 75 F.3d at 1200. In assessing the qualifications of class counsel under this factor, a court may rely upon affidavits submitted by class counsel as well as its own observations of class counsel during the litigation. *Id.*

Here, and as described in the declaration of Rafey S. Balabanian, proposed Class Counsel—who have been recognized as "specialize[d] in litigating consumer class actions and hav[ing] pioneered the application of the TCPA to text-messaging technology," *see Ellison*, No. 11-cv-5935, Dkt. 73 at 9—believe that the instant Agreement is fair, reasonable, and adequate for the reasons explained in Section V, *supra*. As Class Counsel believes that the settlement provides significant relief for individuals who may otherwise be left without a remedy, this factor weighs in favor of preliminary approval as well.

**D.      The Stage of the Proceedings and Significant Amount of Discovery Completed Support Preliminary Approval.**

Finally, the last factor concerns the stage of the proceedings and amount of discovery completed at the time the settlement is reached. *Synfuel*, 463 F.3d at 653. This factor is significant because "it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07-cv-2898, 2011 WL 3290302, at *8 (N.D. Ill. July 26, 2011) (citing *Armstrong,* 616 F.2d at 325). It is well recognized that the court and parties may be equipped with sufficient information even when no formal discovery has taken place if the parties have engaged in considerable informal discovery. *In re AT & T Sales Tax Litig.*, 789 F. Supp. 2d at 966; *Am. Int'l*, 2011 WL 3290302, at *8.

The procedural posture of this Action further supports preliminary approval. Indeed, this case has now been underway for more than a year and a half. Through contentious litigation—

resulting in this Court's reversal of its initial dismissal— and heated settlement talks, the Parties have assembled the information necessary to fully assess the strength of Plaintiff's claims. (Balabanian Decl. ¶ 27.) And after the Court denied the remaining portion of Walgreens' motion to dismiss (Dkt. 66), the Parties began to actively engage in informal discovery, exchanging information regarding the inner-workings of Walgreens' Prerecorded Prescription Call program, including how telephone numbers were collected, how they were maintained, and how the Prerecorded Prescription Calls were placed. (*See id*. ¶ 6.) Even after reaching the settlement, the Parties agreed to participate in additional formal written discovery as an added safeguard to ensure the settlement's fairness and Plaintiff deposed Walgreens' Director of Outbound Programs, Christopher Helzerman. (*See id.* ¶¶ 9–11.) As a result of that discovery, the Parties determined to participate in a second mediation with Judge Andersen to further enhance the settlement and ensure its fairness and reasonableness. (*See id.* ¶ 15.)

Given these added measures the Parties undertook to ensure the settlement's fairness— and the formal and informal discovery that has occurred throughout this Action—the stage of the proceedings and amount of discovery completed also support preliminary approval.

## VII.   THE PROPOSED NOTICE PLAN SHOULD BE APPROVED.

Once a class has been certified, due process and Rule 23 require that the court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (explaining that "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort"); *Schulte*, 805 F. Supp. 2d at 595. Similarly, Rule 23(e)(1) calls for notice to be provided in a "reasonable manner to all class members who would be bound

by the proposal." Fed. R. Civ. P. 23(e)(1); *In re Northfield*, 2012 WL 366852, at *7. The notice must contain specific information in plain, easily understood language, including the nature of the action and the rights of class members. Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii); *see In re AT & T*, 270 F.R.D. at 352. This is the case here, where the format and language of each form of Notice have been carefully drafted in straightforward, easy-to-read language, and all information required under Rule 23 is present. All forms of Notice are attached to the Agreement as Exhibits 1-B, 1-C, and 1-D.

To ensure that the Notice satisfies the requirements of due process and Rule 23 in both form and content, the Parties have agreed to a comprehensive notice plan developed by professional Settlement Administrator Kurtzman Carson Consultants, LLC ("KCC"). (Agreement ¶ 1.29.) First, relying on the Settlement Class list provided by Walgreens—which includes the telephone numbers, e-mail addresses (in some instances), and mailing addresses of all individuals to whom Walgreens has placed Prerecorded Prescription Calls—KCC will send direct notice to the Settlement Class by e-mail (where e-mails are available) or postcard. (*Id.* ¶ 4.2(a)–(b).) The Notice will direct Settlement Class Members to the Settlement Website, www.prescriptioncallsettlement.com, which contains electronic versions of the claim form that can be submitted online, important court documents, and answers to frequently asked questions. (*Id.* ¶ 4.2(d), Exhibits B-D.)

Finally, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and no later than ten days after filing the Agreement with the Court, Defendant will cause to be served notice of the Agreement upon the Attorney General of the United States, the Attorneys General of each state, and any other required government officials. (*Id.* ¶ 4.4(e).)

Because the proposed notice plan effectuates direct notice to all Settlement Class

Members identified by Defendant's records, reaches other potential Settlement Class Members through the Settlement Website, and fully apprises Settlement Class Members of their rights, it comports with the requirements of due process and Rule 23. Consequently, the Court should approve the Parties' proposed notice plan.

## VIII.   CONCLUSION

For the reasons discussed above, Plaintiff Robert Kolinek respectfully requests that this Court enter an order (1) certifying the proposed Settlement Class for settlement purposes, (2) naming Plaintiff as Class Representative, (3) appointing Jay Edelson, Rafey S. Balabanian, Ryan D. Andrews and Benjamin H. Richman of Edelson PC as Class Counsel, (4) granting preliminary approval to the settlement, (5) approving the proposed notice plan, (6) scheduling a final fairness hearing, and (7) providing such other and further relief as the Court deems reasonable and just.

Respectfully submitted,

**ROBERT KOLINEK**, individually and on behalf of all others similarly situated,

Dated: March 26, 2015

By: /s/ Rafey S. Balabanian
    One of Plaintiff's attorneys

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Ryan D. Andrews
randrews@edelson.com
Benjamin H. Richman
brichman@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Stefan L. Coleman, Esq.
law@stefancoleman.com
LAW OFFICES OF STEFAN L. COLEMAN, LLC
201 South Biscayne Boulevard, 28th Floor
Miami, Florida 33131
Tel: 877.333.9427

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| ROBERT KOLINEK, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>WALGREEN CO., an Illinois corporation,<br><br>*Defendant*. | Case. No. 13-cv-04806<br><br>Hon. Matthew F. Kennelly |

## CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement ("Agreement" or "Settlement Agreement") is entered into by and among Plaintiff Robert Kolinek ("Kolinek" or "Plaintiff"), the Settlement Class (as defined herein), and Defendant Walgreen Co. ("Walgreens" or "Defendant") (together, the "Parties"). This Settlement Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined below), upon and subject to the terms and conditions of this Settlement Agreement, and subject to the final approval of the Court.

## RECITALS

A.      On July 3, 2013, Plaintiff Kolinek filed a putative class action in the United States District Court for the Northern District of Illinois, captioned *Kolinek v. Walgreen Co.*, Case No. 1:13-cv-04806 (the "Action"). Plaintiff's complaint alleged a single claim—that Walgreens violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii), when it placed allegedly unsolicited prerecorded prescription refill reminder calls to consumers' cellular telephones. (Dkt. 1.)

B.      On August 30, 2013, Walgreens moved to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Walgreens did not violate the TCPA

because: (1) Plaintiff had consented to being called on his cellular telephone by voluntarily providing his telephone number to Walgreens when refilling a prescription previously, and (2) the calls fell within the TCPA's "emergency purpose" exemption, 47 U.S.C. § 227(b)(1)(A), as communications concerning health or safety, as the calls are only made to active pharmacy patients with a current prescription at Walgreens for a maintenance medication that is due under the prescribing physician's orders to be refilled. (*See* Dkt. 20 at 6–15.)

      C.      After full briefing on the motion to dismiss (*see* Dkts. 20, 26, 30), Walgreens submitted a notice of supplemental authority (Dkt. 34), calling the Court's attention to a Federal Communications Commission ("FCC") amicus brief in another matter and an order dismissing a TCPA claim in another matter, both of which had been filed subsequent to Defendant's reply.

      D.      On February 10, 2014, the Court granted Walgreens' motion and dismissed Plaintiff's complaint, finding that by providing his telephone number to Walgreens, he had, in fact, provided consent to receive Walgreens' telephone calls on his cellular telephone. (Dkt. 38.)

      E.      On March 10, 2014, Plaintiff moved the Court to reconsider its Order granting Walgreens' motion to dismiss, arguing that the provision of a telephone number at a particular time, for a particular purpose, does not constitute prior express consent to receive calls at any other time, for any other purpose. (Dkt. 40 at 3–7.) Even if it could, Plaintiff argued, his complaint did not, on its face, contain all of the facts necessary to establish the prior express consent defense as Walgreens had raised it. (*Id.* at 7–9.) Walgreens opposed Plaintiff's motion to reconsider. (Dkt. 44.)

      F.      On July 7, 2014, the Court granted Plaintiff's motion to reconsider, vacating its prior order on Defendant's motion to dismiss, and ruling that the consent defense raised issues of fact and could not be resolved based on the pleadings. (Dkt. 51.) Oral argument on Defendant's

"emergency purpose exception" motion to dismiss was then set for July 22, 2014. (*Id.* at 9.)

G.     On August 11, 2014, the Court denied the remainder of Defendant's motion to dismiss, holding that the allegations in the Complaint did not say enough about the nature and content of the calls to make it appropriate to dismiss the case on the pleadings based on the emergency purpose defense. (Dkt. 66 at 2.) On August 25, 2014, Walgreens answered the complaint and raised twenty-two affirmative defenses. (Dkt. 68.)

H.     After the Court's ruling, the Parties began to informally exchange information related to Walgreens' prerecorded prescription call program—such as when the program was initiated, how Walgreens collected and stored telephone numbers, how many calls Walgreens placed, and how many individuals received them. In addition, the Parties exchanged information regarding Plaintiff Kolinek's provision of his cellular telephone number and other issues related to any alleged "consent."

I.     While informal discovery was underway, the Parties began to discuss the possibility of settlement. The Parties participated in numerous teleconferences, in which they discussed both the substantive issues of the case as well as their perspectives on a potential resolution of the claims at issue.

J.     On October 15, 2014, the Parties participated in a formal mediation session with the Honorable Wayne R. Andersen (Ret.) of JAMS Chicago. With Judge Andersen's guidance, the Parties engaged in numerous rounds of arm's-length negotiations throughout the course of the day. With Judge Andersen's assistance, by the end of the mediation session the Parties had agreed to some, but not all, of the material terms of an agreement in principle to resolve the Action on a classwide basis. The day closed with Plaintiff's making a proposed settlement offer, which Defendant countered one week later. Finally, on October 24, 2014, the Parties finalized

the material terms of the class relief.

K.      As a material term of their agreement in principle to settle the Action, the Parties agreed to engage in further formal discovery to confirm the fairness, adequacy and reasonableness of the proposed settlement. Accordingly, on December 2, 2014, Plaintiff served written interrogatories and document requests regarding, *inter alia*, Walgreens' practices and procedures for obtaining telephone numbers from consumers and consent to call them, how those numbers are stored, how many numbers have been called, and a host of other information relevant to the claims and defenses in and ultimate settlement of the Action. In addition, the Parties scheduled a Rule 30(b)(6) deposition of Walgreens regarding these same topics.

L.      On January 16, 2015, Plaintiff took the deposition of Chris Helzerman, Walgreens' Director of Outbound Programs, Customer Care Operations, whom Walgreens had designated as its Rule 30(b)(6) designee for the specified topics.

M.      Plaintiff Kolinek believes that the alleged violations of the TCPA asserted in the Action have merit, and that he would have ultimately succeeded in obtaining adversarial certification of the proposed Settlement Class under Federal Rule of Civil Procedure 23, and in prevailing on the merits at summary judgment or at trial. Nonetheless, Plaintiff and Class Counsel recognize that Walgreens has raised factual and legal defenses in the Action that present a risk that Plaintiff may not prevail and/or that a class might not be certified for trial. Plaintiff and Class Counsel also have taken into account the uncertain outcome and risks of any litigation, especially in complex actions, as well as the difficulty and delay inherent in such litigation. Therefore, Plaintiff believes that it is desirable that the Released Claims be fully and finally compromised, settled, and resolved with prejudice, and barred pursuant to the terms and conditions set forth in this Agreement.

N.      Based on their comprehensive examination and evaluation of the law and facts relating to the matters at issue in the Action, Class Counsel have concluded that the terms and conditions of this Agreement are fair, reasonable, and adequate to resolve the alleged claims of the Settlement Class, and that it is in the best interests of the Settlement Class members to settle the claims raised in the Action pursuant to the terms and conditions set forth in this Agreement.

O.      At all times, Walgreens has denied, and continues to deny, any wrongdoing whatsoever.  Specifically, Walgreens has denied that the calls at issue—which Walgreens views as important healthcare notifications to remind patients on maintenance medications to follow their treatment plans, and which it contends are made with the consent of patients and to promote their health and well-being—violate the TCPA or any other statute or law. In addition, Walgreens maintains that it has meritorious defenses to class certification and to the claim alleged in the Action and is prepared to vigorously defend this suit. Nevertheless, taking into account the uncertainty and risks inherent in any litigation, Walgreens has concluded that further defense of the Action would be protracted, burdensome, and expensive, and that it is desirable and beneficial to fully and finally settle and terminate the Action in the manner and upon the terms and conditions set forth in this Agreement.

P.      The Parties agree that all Persons shall have an individual right to exclude themselves from the Settlement Class, such that participation in the Monetary and Prospective Relief provided by this Agreement (as defined below) shall be voluntary.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiff Kolinek, the Settlement Class, and Defendant Walgreens, by and through their respective counsel, that, subject to final approval of the Court after a hearing or hearings as provided for in this Settlement Agreement, and in consideration of the benefits flowing to the

Parties from the Settlement Agreement set forth herein, the Action and the Released Claims shall be fully and finally compromised, settled, and released, and the Action shall be dismissed with prejudice, upon and subject to the terms and conditions set forth in this Agreement.

**AGREEMENT**

**1.     DEFINITIONS.**

As used in this Settlement Agreement, the following terms have the meanings specified below:

1.1.     **"Action"** means the case captioned *Kolinek v. Walgreen Co.*, Case No. 1:13-cv-04806, pending in the United States District Court for the Northern District of Illinois.

1.2.     **"Approved Claim"** means a Claim Form submitted by a Settlement Class Member that is (a) submitted timely and in accordance with the directions on the Claim Form and the provisions of the Settlement Agreement, (b) fully and truthfully completed and executed, with all of the information requested in the Claim Form, and (c) signed by the Settlement Class Member, physically or electronically, affirming that the Settlement Class Member received the Prerecorded Prescription Calls on his or her cell phone without his or her prior express consent.

1.3.     **"Claim Form"** means the document substantially in the form attached hereto as Exhibit A, as approved by the Court. The Claim Form, to be completed by Settlement Class Members who wish to file a Claim for a payment pursuant to this Agreement, shall be available in paper and electronic format. The Claim Form will require each Settlement Class Member to include the Settlement Class Member's (1) name, (2) current address, (3) cellular telephone number that received the Prerecorded Prescription Calls, and (4) affirmation that the Settlement Class Member received such Prerecorded Prescription Call(s) without his or her prior express consent.

1.4. **"Claims Deadline"** means the date by which all Claim Forms must be postmarked or submitted on the settlement website established pursuant to Paragraph 4.2(d) to be considered timely and shall be set as a date no later than fourteen (14) days before the Final Approval Hearing. The Claims Deadline shall be clearly set forth in the Preliminary Approval Order and in the Final Judgment as well as in the Notice and the Claim Form.

1.5. **"Class Counsel"** means Jay Edelson, Rafey S. Balabanian, Ryan D. Andrews, and Benjamin H. Richman of Edelson PC.

1.6. **"Class Representative"** means the named Plaintiff in this Action, Robert Kolinek.

1.7. **"Court"** means the United States District Court for the Northern District of Illinois, the Honorable Matthew F. Kennelly presiding, or any judge who shall succeed him as judge in this Action.

1.8. **"Defendant"** means Walgreen Co., an Illinois corporation.

1.9. **"Defendant's Counsel"** means Bradley J. Andreozzi and Justin O. Kay of Drinker Biddle & Reath LLP.

1.10. **"Effective Date"** means the first business day after which all of the events and conditions specified in Paragraph 9.1 have been met and have occurred.

1.11. **"Escrow Account"** means a separate interest-bearing escrow account to be established by the Settlement Administrator, from which all payments out of the Settlement Fund, including for Approved Claims made by Settlement Class Members, Settlement Administration Expenses, any incentive award to the Class Representative, and any Fee Award to Class Counsel, will be made. The Escrow Account shall be established under terms acceptable to Plaintiff and Defendant at a depository institution insured by the Federal Deposit Insurance

7

Corporation and that has total assets of at least five hundred million dollars ($500,000,000) and a short-term deposit rating of at least P-1 (Moody's) or A-1 (Standard & Poor's). The money in the Escrow Account shall be invested in the following types of accounts and/or instruments and no other: (i) demand deposit accounts and/or (ii) time deposit accounts and certificates of deposit, in either case with maturities of forty-five (45) days or less. The costs of establishing the Escrow Account shall be deducted from the Settlement Fund. Any interest earned on the Escrow Account shall be considered part of the Settlement Fund.

1.12. **"Fee Award"** means the amount of attorneys' fees and reimbursement of costs and expenses awarded by the Court to Class Counsel from the Settlement Fund.

1.13. **"Final"** means one business day following the latest of the following events: (i) the date upon which the time expires for filing or noticing any appeal of the Court's Final Judgment approving this Settlement Agreement; (ii) if there is an appeal or appeals, other than an appeal or appeals solely with respect to the Fee Award and/or incentive award, the date of completion, in a manner that finally affirms and leaves in place the Final Judgment without any material modification, of all proceedings arising out of the appeal or appeals (including, but not limited to, the expiration of all deadlines for motions for reconsideration or petitions for review and/or *certiorari*, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand); or (iii) the date of final dismissal of any appeal or the final dismissal of any proceeding on *certiorari*.

1.14. **"Final Approval Hearing"** means the hearing before the Court where the Parties will request the Final Judgment to be entered by the Court approving the Settlement Agreement, and the Court will determine the Fee Award and the incentive award to the Class Representative.

1.15. **"Final Judgment"** means the Final Judgment and order(s) to be entered by the

Court approving the Settlement Agreement and determining the Fee Award and the incentive award to the Class Representative.

1.16.    **"Notice"** means the notice of this proposed Class Action Settlement Agreement and Final Approval Hearing, which is to be sent to the Settlement Class substantially in the manner set forth in this Agreement, fulfills the requirements of Due Process and Federal Rule of Civil Procedure 23, and is substantially in the form of Exhibits B, C, and D attached hereto.

1.17.    **"Notice Date"** means the date by which notice is complete, which shall be a date no later than sixty (60) days after entry of Preliminary Approval.

1.18.    **"Objection/Exclusion Deadline"** means the date by which a written objection to this Settlement Agreement or a request for exclusion submitted by a Person within the Settlement Class must be postmarked and/or filed with the Court, which shall be designated as a date no later than forty-five (45) days after the Notice Date, or such other date as ordered by the Court.

1.19.    **"Parties"** means Plaintiff Robert Kolinek and the Settlement Class, on the one hand, and Defendant Walgreen Co., on the other.

1.20.    **"Person"** shall mean, without limitation, any individual and their spouses, heirs, predecessors, successors, representatives, and assigns.

1.21.    **"Plaintiffs"** means Robert Kolinek and the Settlement Class Members, for purposes of this settlement only.

1.22.    **"Preliminary Approval"** means the order preliminarily approving the Settlement Agreement, certifying the Settlement Class for settlement purposes, and approving the form of the Notice.

1.23.    **"Preliminary Approval Order"** means the proposed order preliminarily approving the Agreement and directing Notice to the Settlement Class, to be submitted to the

9

Court in conjunction with Plaintiff's motion for preliminary approval of the Agreement.

1.24. **"Prerecorded Prescription Calls"** means any prerecorded voice prescription refill reminder call to a cellular telephone placed by Walgreens and/or any third parties acting on its behalf.

1.25. **"Released Claims"** means any and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, contracts or agreements, extracontractual claims, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and/or obligations (including "Unknown Claims" as defined below), whether in law or in equity, accrued or unaccrued, direct, individual or representative, of every nature and description whatsoever, whether based on the TCPA or other federal, state, local, statutory or common law or any other law, rule or regulation, including the law of any jurisdiction outside the United States, against the Released Parties, or any of them, arising out of the facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act regarding the alleged making of Prerecorded Prescription Calls including all claims that were brought or could have been brought in the Action relating to such calls, belonging to any and all Releasing Parties.

1.26. **"Released Parties"** means Defendant Walgreen Co, as well as any and all of its respective present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parent companies, subsidiaries, agents, associates, affiliates, divisions, holding companies, employers, employees, consultants, independent contractors, insurers, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, investment bankers, underwriters, shareholders, lenders, auditors, investment

advisors, legal representatives, successors in interest, companies, firms, trusts, and corporations.

1.27. **"Releasing Parties"** means Plaintiffs and their respective present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parents, subsidiaries, associates, affiliates, employers, employees, agents, consultants, independent contractors, insurers, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, investment bankers, underwriters, lenders, and any other representatives of any of these Persons and entities.

1.28. **"Settlement Administration Expenses"** means the expenses reasonably incurred by or on behalf of the Settlement Administrator in administering the Settlement, including expenses relating to identifying the members of the Settlement Class, providing Notice, processing Claim Forms, and mailing checks for Approved Claims, as well as any expenses reasonably incurred in the sending of notice to the relevant governmental agencies pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"), with all such expenses to be paid from the Settlement Fund.

1.29. **"Settlement Administrator"** means Kurtzman Carson Consultants d/b/a KCC, selected by the Parties and approved by the Court, that shall provide Notice to the Settlement Class, and process and pay Approved Claims submitted by Settlement Class Members as set forth in this Agreement.

1.30. **"Settlement Class"** means all individuals in the United States to whom Walgreens placed a Prerecorded Prescription Call to their cellular telephone.

1.31. **"Settlement Class Member"** means a Person who falls within the definition of the Settlement Class as set forth above and who has not submitted a valid request for exclusion.

1.32. **"Settlement Fund"** means the non-reversionary cash fund that shall be

11

established by Defendant in the total amount of eleven million dollars ($11,000,000.00) to be deposited into the Escrow Account, plus all interest earned thereon. From the Settlement Fund, the Settlement Administrator shall pay all Approved Claims made by Settlement Class Members, Settlement Administration Expenses, any incentive award to the Class Representative, and any Fee Award to Class Counsel. The Settlement Fund shall be kept in the Escrow Account with permissions granted to the Settlement Administrator to access said funds until such time as the above-listed payments are made. The Settlement Fund includes all interest that shall accrue on the sums deposited in the Escrow Account. The Settlement Administrator shall be responsible for all tax filings with respect to any earnings on the Settlement Fund and the payment of all taxes that may be due on such earnings. The Settlement Fund represents the total extent of Defendant's monetary obligations under this Agreement. In no event shall Defendant's total monetary obligation with respect to this Agreement exceed or be less than eleven million dollars ($11,000,000.00) plus the interest earned on such sum.

1.33. **"Unknown Claims"** means claims that could have been raised in the Action and that any or all of the Releasing Parties do not know or suspect to exist, which, if known by him or her, might affect his or her agreement to release the Released Parties or the Released Claims or might affect his or her decision to agree, object or not to object to the Settlement. Upon the Effective Date, the Releasing Parties shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of § 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Upon the Effective Date, the Releasing Parties also shall be deemed to have, and shall have,

waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to § 1542 of the California Civil Code. The Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention to finally and forever settle and release the Released Claims, notwithstanding any Unknown Claims they may have, as that term is defined in this Paragraph.

**2.      SETTLEMENT RELIEF.**

    2.1.   **Payments to Settlement Class Members.**

      (a)      Defendant shall establish the Settlement Fund within twenty-eight (28) days after Preliminary Approval.

      (b)      Settlement Class Members shall have until the Claims Deadline to submit Claim Forms. Each Settlement Class Member who submits an Approved Claim shall be entitled to a payment of a *pro rata* share of the amount remaining in the Settlement Fund after payment of all Settlement Administration Expenses, any incentive award to the Class Representative, and any Fee Award to Class Counsel. The payment for each Approved Claim will be increased or decreased depending on the total number of Approved Claims.

      (c)      Within ninety (90) days after the Effective Date, or such other date as the Court may set, the Settlement Administrator shall pay from the Settlement Fund all Approved Claims by check and send said checks via first-class U.S. mail to the Settlement Class Members who submitted all such Approved Claims.

      (d)      All cash payments issued to Settlement Class Members via check will

13

state on the face of the check that the check will expire and become null and void unless cashed within ninety (90) days after the date of issuance.

(e) Any un-cashed checks issued to Settlement Class Members in accordance with this Agreement, as well as any unclaimed funds remaining in the Settlement Fund after payment of all Approved Claims, all Settlement Administration Expenses, the Fee Award to Class Counsel, and the incentive award to the Class Representative shall be distributed to Settlement Class Members with Approved Claims if practicable, or in a manner as otherwise directed by the Court upon application made by Class Counsel.

(f) If, after determining the total number of Approved Claims submitted, the amounts paid to each Settlement Class Member who submitted an Approved Claim would be less than fifteen dollars ($15), each claiming Settlement Class Member will have a second opportunity to exclude himself or herself from the Settlement (the "downstream opt-out"), provided that he or she exercises such option within forty-five (45) days after the Settlement Administrator has posted notice of the amount of the payment per Approved Claim on the settlement website. In such instance, Walgreens may choose in its discretion to pay such Settlement Class Members who have submitted Approved Claims the difference between the amount they received under the Settlement and fifteen dollars ($15), thereby mooting the downstream opt-out.

2.2. **Prospective Relief:** Notwithstanding its position that by voluntarily providing their telephone numbers to Walgreens, the members of the Settlement Class have already consented to receive Prerecorded Prescription Calls, Walgreens agrees to implement the following procedures to ensure and/or confirm that Persons in the Settlement Class, and its other customers, have provided prior express consent to receive Prerecorded Prescription Calls to cell

14

phones:

      (a)      Pursuant to this Agreement, Walgreens has or shall utilize expert analysis and independent, third-party data to identify customer telephone numbers that have received Prerecorded Prescription Calls during the class period as assigned to wireless or landline telephone service.

      (b)      Walgreens shall implement procedures to engage its customers to confirm the accuracy of their communications preferences on file, including their consent to receive automated calls on the telephone numbers included in their customer/patient profiles.  Such confirmation procedures may include a combination of engaging customers on Walgreens.com, prompts when customers call and interact with Walgreens' automated voice systems, interactions at point of sale and other means of interacting with customers.

      (c)      Walgreens shall additionally provide or continue to provide to customers the option to elect to receive, and unsubscribe from, Prerecorded Prescription Calls through channels such as Walgreens.com and Walgreens' telephonic customer service systems and by contacting Walgreens by other available means such as, for example, calling a store or visiting a retail location in person.

      (d)      These policies shall be implemented no later than one (1) year after the Effective Date (except as otherwise permitted by the Court upon application of Walgreens for an extension to implement the prospective relief contemplated herein) and remain in effect until further order of the Court or until there are changes in the law related to the above practices that occur after the Effective Date. In the event of any such changes in the law, Defendant shall adjust its policies and procedures to remain in

compliance with such laws then in effect.

**3.     RELEASE**

3.1     The obligations incurred pursuant to this Settlement Agreement shall be a full and final disposition of the Action and any and all Released Claims, as against all Released Parties.

3.2     Upon the Effective Date, the Releasing Parties, and each of them, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished and discharged all Released Claims against each and every one of the Released Parties.

**4.     NOTICE TO THE CLASS.**

4.1.     Upon entry of the Preliminary Approval Order, the Settlement Administrator shall cause the Notice describing the Final Approval Hearing, the terms of the compromise embodied in this Settlement Agreement, and the Claim Form to be disseminated to the Settlement Class as provided herein. Such notice shall comport with due process and Rule 23, the costs of which shall be Settlement Administration Expenses.

4.2.     The Notice shall include:

(a)     *Class List*.  To the extent Defendant has not done so already, upon execution of this Settlement Agreement, Defendant shall provide to the Settlement Administrator the list of all telephone numbers that have received Prerecorded Prescription Calls in order to allow the Settlement Administrator to determine which of those numbers (which were not previously identified to Walgreens as assigned to cellular service) are in fact cell phone numbers.  The Settlement Administrator shall use this information in consultation with Walgreens to prepare a list of the members of the Settlement Class (the "Class List").

(b)      *Direct Email Notice.*  No later than sixty (60) days after the entry of Preliminary Approval, the Settlement Administrator shall send Notice via email substantially in the form attached as Exhibit B, along with an electronic link to the Claim Form, to all Settlement Class Members for whom a valid email address is obtainable with reasonable effort from the Walgreens customer records. If no valid email address exists or is obtainable with reasonable effort for a person in the Settlement Class, or in the event that the transmission of any email notice results in a "bounce-back," the Settlement Administrator shall send Notice via First Class U.S. Mail through a postcard notice and accompanying Claim Form with return postage pre-paid in the form attached as Exhibit C, to each physical address reasonably obtainable from the Walgreens customer records.

(c)      *Direct Mail Notice.*  No later than sixty (60) days after the entry of Preliminary Approval, the Settlement Administrator shall send Notice and accompanying Claim Form (with return postage pre-paid via postcard), substantially in the form attached as Exhibit C, via First Class Mail through a postcard to the last known physical address of those Settlement Class Members for whom Walgreens does not have a valid email address.

(d)      *Internet Notice.*  Within forty-five (45) days after the entry of Preliminary Approval, the Settlement Administrator will develop, host, administer and maintain a dedicated settlement website located at URL www.prescriptioncallsettlement.com, which shall include the ability to electronically file Claim Forms online. The Notice on the settlement website shall be substantially in the form of Exhibit D attached hereto.

(e)      *CAFA Notice.*  Pursuant to 28 U.S.C. § 1715, not later than ten (10) days after the Agreement is filed with the Court, Defendant shall cause to be served upon the

17

Attorneys General of each U.S. State in which Settlement Class Members reside, the

Attorney General of the United States, and other required government officials, notice of

the proposed settlement as required by law.

4.3.    The Notice shall advise the Settlement Class of their rights under the Settlement,

including the right to be excluded from, comment upon, and/or object to the Settlement

Agreement or its terms. The Notice shall specify that any objection to this Settlement

Agreement, and any papers submitted in support of said objection, shall be received by the Court

at the Final Approval Hearing, only if the Person making an objection shall, on or before the

Objection/Exclusion Deadline approved by the Court and specified in the Notice, file notice of

his or her intention to do so and at the same time (a) file copies of such papers he or she proposes

to submit at the Final Approval Hearing with the Clerk of the Court, (b) file copies of such

papers through the Court's CM/ECF system if the objection is from a Settlement Class Member

represented by counsel, and (c) send copies of such papers via mail, hand, or overnight delivery

service to both Class Counsel and Defendant's Counsel.

4.4.    Any member of the Settlement Class who intends to object to this Settlement

Agreement must include his or her name and address, include all arguments, citations, and

evidence supporting the objection (including copies of any documents relied on), state that he or

she is a Settlement Class Member, provide the cellular phone number on which he or she

allegedly received a Prerecorded Prescription Call, and provide a statement whether the objector

intends to appear at the Final Approval Hearing, with or without counsel, accompanied by the

signature of the objecting Settlement Class Member.  Any Settlement Class Member who fails to

timely file a written objection with the Court and notice of his or her intent to appear at the Final

Approval Hearing in accordance with the terms of this Paragraph and as detailed in the Notice,

18

and at the same time provide copies to designated counsel for the Parties, shall not be permitted to object to this Settlement Agreement at the Final Approval Hearing, and shall be foreclosed from seeking any review of this Settlement Agreement by appeal or other means and shall be deemed to have waived his or her objections and be forever barred from making any such objections in the Action or any other action or proceeding.

4.5.    A member of the Settlement Class may request to be excluded from the Settlement Class by sending a written request for exclusion to the Settlement Administrator postmarked on or before the Objection/Exclusion deadline, which must be personally signed by the Settlement Class Member seeking to be excluded from the Settlement Class, and include his or her name and address, the cellular telephone number on which he or she allegedly received a Prerecorded Prescription Call, the caption for the Action (i.e., *Kolinek v. Walgreen Co.*, No. 13-cv-04806 (N.D. Ill.)), and a statement that he or she wishes to be excluded from the Settlement Class. A request to be excluded that does not include all of the foregoing information, that is sent to an address other than that designated in the Notice, or that is not postmarked within the time specified, shall be invalid, and the Persons serving such a request shall be deemed to remain members of the Settlement Class and shall be bound as Settlement Class Members by this Settlement Agreement, if approved. Any member of the Settlement Class who elects to be excluded shall not: (1) be bound by any orders or the Final Judgment; (2) be entitled to relief under this Settlement Agreement; (3) gain any rights by virtue of this Settlement Agreement; nor (4) be entitled to object to any aspect of this Settlement Agreement. "Mass" or "class" requests for exclusion shall not be allowed.

## 5.    SETTLEMENT ADMINISTRATION.

5.1.    The Settlement Administrator shall, under the supervision of the Court, administer

the relief provided by this Settlement Agreement by processing Claim Forms in a rational, responsive, cost effective and timely manner. The Settlement Administrator shall maintain reasonably detailed records of its activities under this Settlement Agreement. The Settlement Administrator shall maintain all such records as are required by applicable law in accordance with its normal business practices and such records will be made available to Class Counsel and Defendant's Counsel upon request. The Settlement Administrator shall also provide reports and other information to the Court as the Court may require. The Settlement Administrator shall provide Class Counsel and Defendant's Counsel with information concerning Notice, administration and implementation of the Settlement Agreement. Should the Court request, the Parties, in conjunction with the Settlement Administrator, shall submit a timely report to the Court summarizing the work performed by the Settlement Administrator, including a report of all amounts paid to Settlement Class Members on account of Approved Claims. Without limiting the foregoing, the Settlement Administrator shall:

(a)     Forward to Defendant's Counsel, with copies to Class Counsel, all documents and other materials received in connection with the administration of the Settlement Agreement within thirty (30) days after the date on which all Claim Forms have been finally approved or disallowed per the terms of the Settlement Agreement;

(b)     Receive exclusion forms and other requests from the Settlement Class and promptly provide a copy of such requests to Class Counsel and Defendant's Counsel upon receipt ("the Opt-Out List"). If the Settlement Administrator receives any exclusion forms or other requests from the Settlement Class after the Objection/Exclusion Deadline, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and Defendant's Counsel;

20

(c)     Provide weekly reports to Class Counsel and Defendant's Counsel, including without limitation, reports regarding the number of Claim Forms received, the current number of Approved Claims, the estimated payment per Settlement Class Member with an Approved Claim, and the number of opt-outs and objections received; and

(d)     Make available for inspection by Class Counsel or Defendant's Counsel the Claim Forms, any documentation submitted in support thereof, and any correspondence received by the Settlement Administrator at any time upon reasonable notice.

5.2.    The Settlement Administrator shall employ reasonable procedures to screen claims for abuse or fraud, including without limitation, by cross-referencing the information provided on the Claim Form against the Class List.  The Settlement Administrator shall reject a Claim Form, or any part of a claim for a payment reflected therein, where there is evidence of abuse or fraud.  The Settlement Administrator shall also reject a Claim Form that does not contain all requested information necessary to screen the claim for fraud or abuse, after giving the claimant a reasonable opportunity of no greater than twenty-one (21) days to provide any requested missing information.

5.3.    Both Defendant's Counsel and Class Counsel shall have the right to challenge the acceptance or rejection of a Claim Form submitted by Settlement Class Members. The Settlement Administrator shall follow any agreed-to decisions of Defendant's Counsel and Class Counsel. To the extent Defendant's Counsel and Class Counsel are not able to agree on the disposition of a challenge, the Honorable Wayne R. Andersen (ret.), or if Judge Andersen is unavailable, a mutually agreed-upon neutral from JAMS, shall timely decide such challenge.

5.4.     In the exercise of their duties outlined in this Agreement, both the Settlement Administrator and Judge Andersen shall have the right to reasonably request additional information from the Parties or any Settlement Class Member.

5.5.     The Final Approval Hearing shall be set for a date no less than ninety (90) days after the Notice described in Paragraph 4.2(e) is disseminated.

5.6.     The Settlement Administrator and Class Counsel shall keep the Class List and all personal information obtained therefrom, including the identity, telephone numbers, email addresses, and U.S. mailing addresses of the Settlement Class strictly confidential in accordance with applicable law and confidentiality agreements that they shall execute or have already executed.  The Parties agree that the Class List may not be used for any purpose other than effectuating the terms of this Agreement or the duties or obligations arising hereunder.  The Class List and other information provided to the Settlement Administrator and Class Counsel shall not include medical or health information, such as the prescriptions filled, for any member of the Settlement Class.

## 6.     TERMINATION OF SETTLEMENT.

6.1.     **Termination By Any Party.**  Subject to Paragraph 9 below, the Class Representative, on behalf of the Settlement Class, or Defendant, shall have the right to terminate this Settlement Agreement by providing written notice of the election to do so to all other Parties hereto within ten (10) days of any of the following events: (i) the Court's refusal to grant Preliminary Approval of this Agreement in any material respect; (ii) the Court's refusal to grant final approval of this Agreement in any material respect; (iii) the Court's refusal to enter the Final Judgment in this Action in any material respect; (iv) the date upon which the Final Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme

Court; or (v) the date upon which an Alternative Judgment, as defined in Paragraph 9.1(d) of this Agreement, is modified or reversed in any material respect by the Court of Appeals or the Supreme Court.

6.2. **Termination at the Discretion of Walgreens.** Walgreens shall have the right, at its sole discretion, to terminate this Settlement Agreement by providing written notice of its election to do so to all other Parties hereto within ten (10) days after the final Opt-Out List has been served on the Parties by the Settlement Administrator if the number of requests for exclusion received from Settlement Class Members exceeds five thousand (5,000). In the event that Walgreens exercises such a right, Class Counsel shall have fourteen (14) days thereafter, or such longer period as agreed to by the Parties, to address the concerns of the Persons who have elected to be excluded from the Settlement. If through such efforts the total number on the Opt-Out List subsequently becomes and remains fewer than five thousand (5,000), Walgreens shall withdraw its election to terminate the Settlement Agreement. In no event, however, shall Walgreens have any further obligation under this Settlement Agreement to any Person who has elected to be excluded from the settlement unless he or she withdraws his or her request for exclusion.

## 7. PRELIMINARY APPROVAL ORDER AND FINAL APPROVAL ORDER.

7.1. Promptly after the execution of this Settlement Agreement, Class Counsel shall submit this Agreement together with its Exhibits to the Court and shall move the Court for entry of an Order of Preliminary Approval of the settlement set forth in this Agreement, which shall include, among other provisions, a request that the Court:

        (a)      appoint Plaintiff Robert Kolinek as representative of the Settlement Class;

        (b)      appoint Class Counsel to represent the Settlement Class;

23

(c)     certify the Settlement Class under Fed. R. Civ. P. 23 for settlement purposes only and without prejudice to Defendant's right to contest class certification if this Agreement is not approved;

(d)     preliminarily approve this Agreement for purposes of disseminating notice to the Settlement Class;

(e)     approve the form and contents of the Settlement Class Notice and Claim Form for dissemination to the Settlement Class, as well as the method of its dissemination to members of the Settlement Class;

(f)     schedule a Final Approval Hearing to review comments and/or objections regarding this Agreement, to consider its fairness, reasonableness and adequacy, and the application for an award of attorneys' fees and reimbursement of expenses and to consider whether the Court shall issue a Judgment approving this Agreement, granting Class Counsel's application for the Fee Award and an incentive award to the Class Representative, and dismissing the Action with prejudice.

7.2.    After Notice to the Settlement Class is given, Class Counsel shall move the Court for entry of a Final Judgment, which shall include, among other provisions, a request that the Court:

(a)     find that it has personal jurisdiction over all Settlement Class Members and subject matter jurisdiction to approve this Settlement Agreement, including all attached Exhibits;

(b)     approve the Settlement Agreement and the proposed settlement as fair, reasonable and adequate as to, and in the best interests of, the Settlement Class Members; direct the Parties and their counsel to implement and consummate the Settlement

Agreement according to its terms and conditions; and declare the Settlement Agreement to be binding on, and have *res judicata* and preclusive effect in, all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiff and all other Settlement Class Members and Releasing Parties;

(c)     find that the Notice implemented pursuant to the Settlement Agreement (1) constitutes the best practicable notice under the circumstances, (2) constitutes notice that is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action and their rights to object to or exclude themselves from this Settlement Agreement and to appear at the Final Approval Hearing, (3) is reasonable and constitutes due, adequate and sufficient notice to all persons entitled to receive notice, and (4) meets all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution and the rules of the Court;

(d)     find that the Class Representative and Class Counsel adequately represented the Settlement Class for purposes of entering into and implementing the Agreement;

(e)     dismiss the Action on the merits and with prejudice, without fees or costs to any party except as provided in this Settlement Agreement;

(f)     incorporate the Release set forth above, make the Release effective as of the date of the Final Judgment, and forever discharge the Released Parties as set forth herein;

(g)     permanently bar and enjoin all Settlement Class Members who have not been properly excluded from the Settlement Class from filing, commencing, prosecuting,

intervening in, or participating (as class members or otherwise) in, any lawsuit or other action in any jurisdiction based on the Released Claims;

(h)     authorize the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications and expansions of the Settlement Agreement and its implementing documents (including all Exhibits to this Agreement) that (1) shall be consistent in all material respects with the Final Judgment, and (2) do not limit the rights of Settlement Class Members;

(i)     without affecting the finality of the Final Judgment for purposes of appeal, retain jurisdiction as to all matters relating to administration, consummation, enforcement and interpretation of the Settlement Agreement and the Final Judgment, and for any other necessary purpose; and

(j)     incorporate any other provisions, consistent with the material terms of this Agreement, as the Court deems necessary and just.

## 8.    CLASS COUNSEL'S ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND INCENTIVE AWARD.

8.1.    Class Counsel will apply to the Court for an award of reasonable attorneys' fees and unreimbursed expenses incurred in the Action as the Fee Award. The amount of the Fee Award shall be determined by the Court based on petition from Class Counsel. Class Counsel has agreed, with no consideration from Defendant, to limit their request to thirty-five percent (35%) of the Settlement Fund. Payment of the Fee Award shall be made from the Settlement Fund and should the Court award less than the amount sought by Class Counsel, the difference in the amount sought and the amount ultimately awarded pursuant to this Paragraph shall remain in the Settlement Fund to be distributed to Settlement Class Members with Approved Claims.

8.2.    Class Counsel shall be paid the Fee Award, in an amount determined by the Court, from the Settlement Fund within seven (7) days after the Effective Date.  Payment of the Fee Award shall be made via wire transfer to an account designated by Class Counsel after providing necessary information for electronic transfer.

8.3.    In addition to any payment to which he may be entitled under this Agreement on account of an Approved Claim, and in recognition of the time and effort he expended on behalf of the Settlement Class, subject to the Court's approval, the Class Representative shall be paid from the Settlement Fund an incentive award in the total amount of five thousand dollars ($5,000). Should the Court award less than this amount, the difference in the amount sought and the amount ultimately awarded pursuant to this Paragraph shall remain in the Settlement Fund to be distributed to Settlement Class Members with Approved Claims.

8.4.    The Class Representative shall be paid the incentive award, as determined by the Court, from the Settlement Fund within seven (7) days after the Effective Date.  Payment of the incentive award to the Class Representative shall be made via check to the Class Representative, such check to be sent care of Class Counsel.

## 9.    CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION.

9.1.    The Effective Date of this Settlement Agreement shall not occur unless and until each and every one of the following events occurs, and shall be the date upon which the last (in time) of the following events occurs:

(a)    This Agreement has been signed by the Parties, Class Counsel and Defendant's Counsel;

(b)    The Court has entered an order granting Preliminary Approval of the Agreement;

27

(c)     The Court has entered an order finally approving the Settlement Agreement, following notice to the Settlement Class and a Final Approval Hearing, as provided in the Federal Rules of Civil Procedure, and has entered the Final Judgment, or a judgment substantially consistent with this Agreement; and

(d)     The Final Judgment has become Final, as defined above, or, in the event that the Court enters an order and final judgment in a form other than that provided above ("Alternative Judgment") to which the Parties have consented, that Alternative Judgment has become Final.

9.2.     If some or all of the conditions specified in Paragraph 9.1 are not met, or in the event that this Settlement Agreement is not approved by the Court, or the settlement set forth in this Agreement is terminated or fails to become effective in accordance with its terms, then this Settlement Agreement shall be canceled and terminated subject to Paragraph 9.3, unless Class Counsel and Defendant's Counsel mutually agree in writing to proceed with this Agreement. If any Party is in material breach of the terms hereof, any other Party, provided that it is in substantial compliance with the terms of this Agreement, may terminate this Agreement on notice to all other Parties. Notwithstanding anything herein, the Parties agree that the Court's decision as to the amount of the Fee Award to Class Counsel set forth above or the incentive award to the Class Representative, regardless of the amounts awarded, shall not prevent the Agreement from becoming effective, nor shall it be grounds for termination of the Agreement.

9.3.     If this Agreement is terminated or fails to become effective for the reasons set forth in Paragraphs 6.1, 6.2, 9.1, or 9.2 above, the Parties shall be restored to their respective positions in the Action as of the date of the signing of this Agreement. In such event, any Final Judgment or other order entered by the Court in accordance with the terms of this Agreement

28

shall be treated as vacated, *nunc pro tunc*, and the Parties shall be returned to the *status quo ante* with respect to the Action as if this Agreement had never been entered into and, pursuant to Paragraph 10.4 below, this Agreement shall not be used for any purpose whatsoever against any of the Parties.

## 10.    MISCELLANEOUS PROVISIONS.

10.1    The Parties: (1) acknowledge that it is their intent to consummate this Settlement Agreement; and (2) agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement and to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this Agreement. Class Counsel and Defendant's Counsel agree to cooperate with one another in seeking entry of an order granting Preliminary Approval of this Agreement and the Final Judgment, and promptly to agree upon and execute all such other documentation as may be reasonably required to obtain final approval of the Agreement.

10.2    The Parties intend this Settlement Agreement to be a final and complete resolution of all disputes between them with respect to the Released Claims by Plaintiff and the Settlement Class, and each or any of them, on the one hand, against the Released Parties, and each or any of the Released Parties, on the other hand. Accordingly, the Parties agree not to assert in any forum that the Action was brought by Plaintiff or defended by Defendant, or each or any of them, in bad faith or without a reasonable basis.

10.3    The Parties have relied upon the advice and representation of counsel, selected by them, concerning the claims hereby released. The Parties have read and understand fully this Agreement and have been fully advised as to the legal effect hereof by counsel of their own selection and intend to be legally bound by the same.

10.4    Whether the Effective Date occurs or this Settlement Agreement is terminated, neither this Agreement nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the settlement:

(a)    is, may be deemed, or shall be used, offered or received against the Released Parties, or each or any of them as an admission, concession or evidence of, the validity of any Released Claims, the truth of any fact alleged by Plaintiff, the deficiency of any defense that has been or could have been asserted in the Action, the violation of any law or statute, the reasonableness of the settlement amount or the Fee Award, or of any alleged wrongdoing, liability, negligence, or fault of the Released Parties, or any of them;

(b)    is, may be deemed, or shall be used, offered or received against Defendant as, an admission, concession or evidence of any fault, misrepresentation or omission with respect to any statement or written document approved or made by the Released Parties, or any of them;

(c)    is, may be deemed, or shall be used, offered or received against Plaintiff or the Settlement Class, or each or any of them as an admission, concession or evidence of, the infirmity or strength of any claims asserted in the Action, the truth or falsity of any fact alleged by Defendant, or the availability or lack of availability of meritorious defenses to the claims raised in the Action;

(d)    is, may be deemed, or shall be used, offered or received against the Released Parties, or each or any of them as an admission or concession with respect to any liability, negligence, fault or wrongdoing as against any Released Parties, in any civil, criminal or administrative proceeding in any court, administrative agency or other

30

tribunal. However, the settlement, this Agreement, and any acts performed and/or documents executed in furtherance of or pursuant to this Agreement and/or settlement may be used in any proceedings as may be necessary to effectuate the provisions of this Agreement. Moreover, if this Settlement Agreement is approved by the Court, any party or any of the Released Parties may file this Settlement Agreement and/or the Final Judgment in any action that may be brought against such party or Parties in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion, or similar defense or counterclaim;

(e) is, may be deemed, or shall be construed against Plaintiff and the Settlement Class, or each or any of them, or against the Released Parties, or each or any of them, as an admission or concession that the consideration to be given hereunder represents an amount equal to, less than or greater than that amount that could have or would have been recovered after trial; and

(f) is, may be deemed, or shall be construed as or received in evidence as an admission or concession against Plaintiff and the Settlement Class, or each and any of them, or against the Released Parties, or each or any of them, that any of Plaintiff's claims are with or without merit or that damages recoverable in the Action would have exceeded or would have been less than any particular amount.

10.5    The headings used herein are used for the purpose of convenience only and are not meant to have legal effect.

10.6    The waiver by one Party of any breach of this Agreement by any other Party shall not be deemed as a waiver of any other prior or subsequent breaches of this Agreement.

31

10.7    All of the Exhibits to this Settlement Agreement are material and integral parts hereof and are fully incorporated herein by reference.

10.8    This Agreement and its Exhibits set forth the entire agreement and understanding of the Parties with respect to the matters set forth herein, and supersede all prior negotiations, agreements, arrangements and undertakings with respect to the matters set forth herein. No representations, warranties or inducements have been made to any party concerning this Settlement Agreement or its Exhibits other than the representations, warranties and covenants contained and memorialized in such documents. This Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

10.9    Except as otherwise provided herein, each Party shall bear its own attorneys' fees and costs incurred in any way related to the Action.

10.10   Plaintiff represents and warrants that he has not assigned any claim or right or interest relating to any of the Released Claims against the Released Parties to any other Person or party and that he is fully entitled to release the same.

10.11   Each counsel or other Person executing this Settlement Agreement, any of its Exhibits, or any related settlement documents on behalf of any party hereto, hereby warrants and represents that such Person has the full authority to do so and has the authority to take appropriate action required or permitted to be taken pursuant to the Agreement to effectuate its terms.

10.12   This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Signature by digital, facsimile, or in PDF format will constitute sufficient execution of this Agreement. A

32

complete set of original executed counterparts shall be filed with the Court if the Court so requests.

10.13   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Agreement.

10.14   This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of Illinois without reference to the conflicts of laws provisions thereof.

10.15   This Settlement Agreement is deemed to have been prepared by counsel for all Parties, as a result of arm's-length negotiations among the Parties. Whereas all Parties have contributed substantially and materially to the preparation of this Agreement, it shall not be construed more strictly against one party than another.

10.16   Where this Settlement Agreement requires notice to the Parties, such notice shall be sent to the undersigned counsel:

| **If to Plaintiff's Counsel:** | **If to Defendant's Counsel:** |
|---|---|
| Rafey S. Balabanian | Bradley J. Andreozzi |
| Benjamin H. Richman | Justin O. Kay |
| Edelson PC | Drinker Biddle & Reath LLP |
| 350 North LaSalle Street, Suite 1300 | 191 North Wacker Drive, Suite 3700 |
| Chicago, Illinois 60654 | Chicago, Illinois 60654 |

[SIGNATURES APPEAR ON FOLLOWING PAGE.]

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed, by their duly authorized attorneys.

Dated: 3/26/15

**ROBERT KOLINEK**, individually and on behalf of the Settlement Class,

By: _____

**EDELSON PC**
Attorneys for Plaintiff Robert Kolinek

Dated: _____

By: _____
        Rafey S. Balabanian, Esq.

Dated: _____

**WALGREEN CO.**

By: _____

Its: _____

**DRINKER BIDDLE & REATH LLP**
Attorneys for Defendant Walgreen Co.

Dated: _____

By: _____
        Bradley J. Andreozzi, Esq.

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed, by their duly authorized attorneys.

**ROBERT KOLINEK**, individually and on behalf of the Settlement Class,

Dated: _____          By: _____

**EDELSON PC**
Attorneys for Plaintiff Robert Kolinek

Dated: _3/26/15_          By: _____
                                    Rafey S. Balabanian, Esq.

Dated: _____

**WALGREEN CO.**

By: _____

Its: _____

**DRINKER BIDDLE & REATH LLP**
Attorneys for Defendant Walgreen Co.

Dated: _____          By: _____
                                    Bradley J. Andreozzi, Esq.

34

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed, by their duly authorized attorneys.

**ROBERT KOLINEK,** individually and on behalf of the Settlement Class,

Dated: _____

By: _____

**EDELSON PC**
Attorneys for Plaintiff Robert Kolinek

Dated: _____

By: _____
      Rafey S. Balabanian, Esq.

Dated: _March 26, 2015_

**WALGREEN CO.**

By: _____

Its: _____

**DRINKER BIDDLE & REATH LLP**
Attorneys for Defendant Walgreen Co.

Dated: _____

By: _____
      Bradley J. Andreozzi, Esq.

34

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed, by their duly authorized attorneys.

**ROBERT KOLINEK**, individually and on behalf of the Settlement Class,

Dated: _____      By: _____

**EDELSON PC**
Attorneys for Plaintiff Robert Kolinek

Dated: _____      By: _____
                                        Rafey S. Balabanian, Esq.

Dated: _____      **WALGREEN CO.**

By: _____

Its: _____

**DRINKER BIDDLE & REATH LLP**
Attorneys for Defendant Walgreen Co.

Dated: March 26, 2015      By: _____
                                        Bradley J. Andreozzi, Esq.

# Exhibit A

*Kolinek v. Walgreen, Co.*, No. 13-cv-4806

### CLAIM FORM

***Instructions.*** *Fill out each section of this form and sign where indicated.*

| First Name | Last Name |
|---|---|
|  |  |

| Street Address |
|---|
|  |

| City | State | ZIP Code |
|---|---|---|
|  |  |  |

| Cellular Telephone Number at which you received Prerecorded Prescription Call(s) |
|---|
|  |

**Class Member Affirmation**: By submitting this Claim Form and checking the box below, I declare that I am a member of the Settlement Class and that the following statement is true (box must be checked to receive payment):

☐    I received one or more prerecorded telephone calls from Walgreens at the cellular telephone number written above reminding me that my prescription was due for refill ("Prerecorded Prescription Calls") and I did not consent to receive these calls. *I recognize that by affirming here that such calls were made without my consent, I will be removed from the list of persons eligible to receive* Prerecorded Prescription Calls *from Walgreens and that I will not receive such calls in the future unless I separately provide my consent, which I may do below.*

☐    I now wish to receive Prerecorded Prescription Calls from Walgreens and I consent to receive such calls. *I understand that providing this consent is not required for me to submit a claim in the settlement, nor is it required for me to purchase any goods or services from Walgreens.*

I state under penalty of perjury under the laws of the State in which this Affirmation is executed and the United States of America that the information provided above is true and correct.

Signature: _____     Date: ____ - ____ - ____
                                                                                            (MM-DD-YY)

Printed Name: _____

# Exhibit B

**NOTICE OF CLASS ACTION SETTLEMENT**

*Kolinek v. Walgreen, Co.*, Case No. 13-cv-4806

**IF YOU RECEIVED A PRERECORDED CALL FROM WALGREENS ON YOUR CELL PHONE
REMINDING YOU TO REFILL YOUR PRESCRIPTION,
A CLASS ACTION SETTLEMENT MAY AFFECT YOUR RIGHTS.**

*For complete information, visit www.prescriptioncallsettlement.com or call [toll-free number].*

*A Federal Court authorized this notice. You are not being sued. This is not a solicitation from a lawyer.*

A settlement has been reached in a class action lawsuit against **Walgreen Co.** ("Walgreens"). The lawsuit alleges that Walgreens made prerecorded calls to the cellular telephones of certain pharmacy customers to remind them when their prescriptions were due for refill ("Prerecorded Prescription Calls"). The suit alleges that Walgreens made these calls without customer consent. Walgreens denies any wrongdoing and maintains that Prerecorded Prescription Calls are medical alerts that its customers want, and are made with their consent. The settlement does not establish who is correct, but rather is a compromise to end the lawsuit. The lawsuit is called *Kolinek v. Walgreen Co.*, Case No. 13-cv-04806, and is in the U.S. District Court for the Northern District of Illinois.

•        **Why am I Being Contacted?** Our records show you may be a "Settlement Class Member."  Settlement Class Members are all individuals in the United States who received Prerecorded Prescription Calls from Walgreens on their cellular phones. You may be entitled to payment under the Settlement if you affirm that you did not consent to receive the Prerecorded Prescription Calls, but in that case you will not be eligible to receive these reminder calls on your cell phone in the future unless you provide consent for future calls (which you may do on the Claim Form).

•        **What Can I Get Out of the Settlement?** If you're eligible and the Court approves the Settlement, you could receive a cash payment. Settlement Class Members will receive equal shares of an $11 million Settlement Fund that Walgreens has agreed to create, after the payment of expenses and fees. If the individual payments per Settlement Class Member would be less than $15, you will have a second chance to exclude yourself from the Settlement or Walgreens may pay you the difference up to $15. The Settlement Administrator will post additional information about the payment amount on www.prescriptioncallsettlement.com if necessary.

•        **How Do I Get My Payment?** Just complete and verify the short and simple Claim Form available at www.prescriptioncallsettlement.com. You can also call [toll-free number] to request a paper copy of the Claim Form. **All Claim Forms must be received by [claims deadline].**

•        **What are My Options?** You can do nothing, submit a Claim Form, comment on or object to any of the Settlement terms, or exclude yourself from the Settlement. If you do nothing or submit a Claim Form, you won't be able to sue Walgreens in a future lawsuit about the claims addressed in the Settlement. If you exclude yourself, you won't get a payment but you'll keep your right to sue Walgreens on the issues the settlement concerns. You must contact the settlement administrator by mail to exclude yourself. You can also object to the settlement if you disagree with any of its terms. **All Requests for Exclusion and Objections must be received by [exclusion/objection deadline].**

•        **Do I Have a Lawyer?** Yes. The Court has appointed lawyers from the law firm Edelson PC as "Class Counsel." They represent you and other Settlement Class Members. The lawyers will request to be paid from the Settlement Fund. You can hire your own lawyer, but you'll need to pay your own legal fees. The Court has also chosen Robert Kolinek—a Class Member like you—to represent the Class.

•        **When Will the Court Approve the Settlement?** The Court will hold a final approval hearing on [date] at [time] at the Everett McKinley Dirksen United States Courthouse, 219 S. Dearborn St., Chicago, IL 60604, Courtroom 2103. The Court will hear objections, determine if the Settlement is fair, and consider Class Counsel's request for fees and expenses (up to 35% of the Settlement Fund) and an incentive award to the class representative. These requests will be posted on the settlement website on [date].

***Visit www.prescriptioncallsettlement.com for complete information.***

# Exhibit C

[4.25 x 6 postcard notice –]

LEGAL NOTICE

*Kolinek v. Walgreen, Co.*, Case No. 13-cv-4806

## If you received a prerecorded call from Walgreens on your cell phone reminding you to refill your prescription, a class action settlement may affect your rights.

A Federal Court authorized this notice.
You are <u>not</u> being sued.
This is <u>not</u> a solicitation from a lawyer.

*See reverse for details.*
*For complete information, visit*
*www.prescriptioncallsettlement.com*
*or call [toll-free number].*

Walgreens Prescription Call Settlement
[admin address]

First-Class
Mail
US Postage
Paid
Permit #___

<<BARCODE>>
Postal Service: Please do not mark barcode.

<<FIRST>><<LAST>>
<<CO>>
<<ADDR1>><<ADDR2>>
<<CITY>><<ST>><<ZIP>>
<<COUNTRY>>

---

A settlement has been reached in a class action lawsuit against **Walgreen Co.** ("Walgreens"). The lawsuit alleges that Walgreens made prerecorded calls to the cellular telephones of certain pharmacy customers to remind them when their prescriptions were due for refill ("Prerecorded Prescription Calls"), without their consent. Walgreens denies any wrongdoing and maintains that Prerecorded Prescription Calls are medical alerts that its customers want, and are made with their consent. The settlement does not establish who is correct, but rather is a compromise to end the lawsuit. The lawsuit is called *Kolinek v. Walgreen Co.*, Case No. 13-cv-04806, and is in the U.S. District Court for the Northern District of Illinois.

**Why am I being contacted?** Our records show you may be a "Settlement Class Member." Settlement Class Members are all individuals in the United States who received Prerecorded Prescription Calls from Walgreens called on their cellular phones. You may be entitled to payment under the settlement if you affirm that you did not consent to receive the Prerecorded Prescription Calls, but in that case you will not be eligible to receive these reminder calls on your cell phone in the future unless you provide consent for future calls (which you may do on the Claim Form).

**What can I get out of the settlement?** If you're eligible and the Court approves the settlement, you could receive a cash payment. Settlement Class Members will receive equal shares of an $11 million Settlement Fund that Walgreens has agreed to create, after the payment of expenses and fees. If the individual payments would be less than $15, you will have a second chance to exclude yourself from the settlement or Walgreens may pay you the difference up to $15.

**How do I get my payment?** Just complete and verify a short and simple Claim Form available at www.prescriptioncallsettlement.com. You can also call [toll-free number] for a paper copy of the Claim Form. *All Claim Forms must be received by [claims deadline].*

**What are my options?** You can do nothing, submit a Claim Form, comment on or object to any of the settlement terms, or exclude yourself from the settlement. If you do nothing or submit a Claim Form, you won't be able to sue Walgreens in a future lawsuit about the claims addressed in the settlement. If you exclude yourself, you won't get a payment but you'll keep your right to sue Walgreens on the issues the settlement concerns. You must contact the settlement administrator by mail to exclude yourself. You can also object to the settlement if you disagree with any of its terms. *All Requests for Exclusion and Objections must be received by [exclusion/objection deadline].*

**Do I have a lawyer?** Yes. The Court has appointed lawyers from the law firm Edelson PC as "Class Counsel." They represent you and other Settlement Class Members. The lawyers will request to be paid from the Settlement Fund. You can hire your own lawyer, but you'll need to pay your own legal fees. The Court has also chosen Robert Kolinek—a Class Member like you—to represent the Class.

**When will the Court approve the settlement?** The Court will hold a final approval hearing on [date] at [time] at the Everett McKinley Dirksen United States Courthouse, 219 S. Dearborn St., Chicago, IL 60604, Courtroom 2103. The Court will hear objections, determine if the settlement is fair, and consider Class Counsel's request for fees and expenses (up to 35% of the Settlement Fund) and an incentive award, which will be posted on the settlement website.

*Visit [www.prescriptioncallsettlement.com] for complete information.*

# Exhibit D

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

*Kolinek v. Walgreen, Co.*, No. 13-cv-4806

# If you received a prerecorded call from Walgreens on your cell phone reminding you to refill your prescription, a class action settlement may affect your rights.

*A Federal Court authorized this notice. You are not being sued. This is not a solicitation from a lawyer.*

- A Settlement has been reached in a class action lawsuit against Walgreen Co. ("Defendant" or "Walgreens"). The suit concerns whether Walgreens violated a federal law called the Telephone Consumer Protection Act by making prerecorded calls to the cellular telephones of certain pharmacy customers to remind them when their prescriptions at Walgreens were due for refill ("Prerecorded Prescription Calls"). Walgreens denies any wrongdoing and maintains that Prerecorded Prescription Calls are necessary medical alerts that its customers want, and are made with their consent and authorized by law. The Settlement does not establish who is correct, but rather is compromise to end the lawsuit.

- You are included in the Settlement if you received a Prerecorded Prescription Call on your cell phone from Walgreens. You may be entitled to a cash payment if you affirm that you received such call or calls without your consent, but in that case you will not be eligible to receive these reminder calls on your cell phone in the future unless you provide consent for future calls (which you may do on the Claim Form).

- Those who submit valid claims will be eligible to receive an equal, or *pro rata*, share of an $11 million settlement fund that Walgreens has agreed to establish. Each individual who submits a valid claim will receive a portion of this fund, after all notice and administration costs, the incentive award, and attorneys' fees have been paid. Walgreens has also agreed to implement procedures to verify the accuracy of customers' contact preferences on file and confirm that it has consent to call customers' cellular telephones.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| SUBMIT A CLAIM FORM | This is the only way to receive a payment. |
| EXCLUDE YOURSELF | You will receive no payment, but you will retain any rights you currently have to sue Defendant about the issues in this case. |
| OBJECT | Write to the Court explaining why you don't like the Settlement. |
| ATTEND A HEARING | Ask to speak in Court about the fairness of the Settlement. |

QUESTIONS? CALL 1-[###-###-###] TOLL FREE OR VISIT WWW.PRESCRIPTIONCALLSETTLEMENT.COM

| **DO NOTHING** | You will receive no payment under the Settlement and give up your rights to sue the Defendant about the issues in this case |
|---|---|

These rights and options—**and the deadlines to exercise them**—are explained in this notice.

The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be provided only after any issues with the Settlement are resolved. Please be patient.

## BASIC INFORMATION

### 1. What is this notice and why should I read it?

A Court authorized this notice to let you know about a proposed Settlement with the Defendant. You have legal rights and options that you may act on before the Court decides whether to approve the proposed Settlement. You may be eligible to receive a cash payment as part of the Settlement. This notice explains the lawsuit, the Settlement, and your legal rights.

Judge Matthew F. Kennelly of the U.S. District Court for the Northern District of Illinois is overseeing this class action. The case is called *Kolinek v. Walgreen Co.*, Case No. 13-cv-04806. The person who filed the lawsuit, Robert Kolinek, is the Plaintiff. The company he sued, Walgreens, is the Defendant. You need not live in Illinois to get a payment under the Settlement.

### 2. What is a class action lawsuit?

A class action is a lawsuit in which one or more plaintiffs—in this case, Robert Kolinek—sue on behalf of a group of people who have similar claims. Together, this group is called a "Class" and consists of "Class Members." In a class action, the court resolves the issues for all class members, except those who exclude themselves from the class. After the Parties reached an agreement to settle this case, the Court granted preliminary approval of the Settlement and recognized it as a case that should be treated as a class action for settlement purposes.

## THE CLAIMS IN THE LAWSUIT AND THE SETTLEMENT

### 3. What is this lawsuit about?

The lawsuit alleges that Walgreens placed Prerecorded Prescription Calls to certain pharmacy customers' cellular telephones without their consent. The lawsuit alleges Walgreens violated a federal law called the Telephone Consumer Protection Act because consumers did not agree to receive these calls.

Walgreens denies these allegations and contends that it acted with customers' consent and that Prerecorded Prescription Calls are necessary medical alerts authorized by law. No court has decided who is right. The parties are entering into the Settlement to avoid time-consuming and expensive litigation. The Settlement is not an admission of wrongdoing by Walgreens. More information about the complaint in the lawsuit and the Defendant's answer can be found in the "Court Documents" section of the settlement website at www.prescriptioncallsettlement.com.

### 4. Why is there a Settlement?

The Court has not decided whether the Plaintiff or the Defendant should win this case. Instead, both sides agreed to a Settlement. That way, they can avoid the uncertainty and expense of ongoing

litigation, and Class Members will get compensation now rather than years later—if ever. The Class Representative and his attorneys ("Class Counsel") believe that the Settlement is in the best interests of the Class Members.

## WHO'S INCLUDED IN THE SETTLEMENT?

**5. How do I know if I am in the Settlement Class?**

The Court decided that this Settlement includes a Class of "all individuals in the United States to whom Walgreens placed a Prerecorded Prescription Call to their cellular telephone." A "Prerecorded Prescription Call" is any prescription refill reminder call that Walgreens made to a cellular telephone using a prerecorded voice.

If you meet the above definition, you are a Class Member. Most Class Members will receive a postcard summary of this notice in the mail.

**6. What were the allegedly unconsented calls about?**

The calls covered by this Settlement were prerecorded messages reminding customers when their prescriptions at a Walgreens pharmacy were due for refill.

## THE SETTLEMENT BENEFITS

**7. What does the Settlement provide?**

**Cash Payments to Class Members:** Defendant has agreed to create an $11 million Settlement Fund, from which Class Members who submit valid claims will receive cash payments. To get a payment, Class Members must submit a valid claim before the deadline of [claims deadline]. The amount Class Members will receive will depend on the total number of valid claims received. If the number of valid claims is low, then the amount of individual payments will go up. But if the number of valid claims is high, then the amount of individual payments will go down.

If the individual payments per Settlement Class Member would be less than $15, you will have a second chance to exclude yourself from the Settlement or Walgreens may pay you the difference up to $15. The Settlement Administrator will post additional information about the payment amount on this website if necessary.

All un-cashed checks issued to Class Members and any unclaimed money in the Settlement Fund will be equally redistributed to the other claiming Class Members if practical, or otherwise as directed by the Court.

**Change In Walgreens Practices:** As part of the Settlement, Walgreens has also agreed to implement procedures to ensure that customers have consented to receive Prerecorded Prescription Calls to their cell phones. Walgreens has agreed to use expert analysis and independent third-party data to identify which customer telephone numbers that have received Prerecorded Prescription Calls during the class period were assigned to cell phone rather than landline service. Walgreens has also agreed to implement procedures to engage with customers to confirm the accuracy of their communications preferences on file, including their consent to receive prerecorded calls on the telephone numbers included in their customer/patient profiles. Walgreens has also agreed to provide or continue to provide customers with the option to elect to receive, and unsubscribe from, Prerecorded Prescription Calls through various channels such as Walgreens.com, Walgreens' telephonic

customer service systems and by contacting Walgreens through other means.

## HOW TO GET BENEFITS

### 8. How do I make a claim?

If you want to get settlement benefits, you must fill out and submit a valid claim form. An online claim form is available on this website and can be filled out and submitted online. If you received a postcard in the mail about the Settlement, the postcard will tell you how to receive a claim form. You can also get a paper claim form by calling [toll-free number]. We encourage you to submit a claim online. It's faster and it's free.

The Claim Form requires you to provide the following information: (1) your name and address, (2) the cellular telephone number at which you received Prerecorded Prescription Call(s), and (3) a sworn statement that you received the call or calls without your consent. If you affirm that you received the calls without your consent, you will not be eligible to receive these reminder calls on your cell phone in the future unless you provide consent for future calls, which you can also do on the Claim Form.

### 9. When will I get my payment?

The hearing to consider the fairness of the Settlement is scheduled for [Final Approval Hearing Date]. If the Court approves the Settlement, eligible Class Members whose claims were approved by the Settlement Administrator will be sent a check. Please be patient. All checks will expire and become void 90 days after they are issued.

## THE LAWYERS REPRESENTING YOU

### 10. Do I have a lawyer in this case?

Yes, the Court has appointed lawyers Jay Edelson, Rafey S. Balabanian, Ryan D. Andrews, and Benjamin H. Richman of Edelson PC as the attorneys to represent you and other Class Members. These attorneys are called "Class Counsel." In addition, the Court appointed Plaintiff Robert Kolinek to serve as the Class Representative. He's a class member like you. Class Counsel can be reached by calling 1-866-354-3015.

### 11. Should I get my own lawyer?

You don't need to hire your own lawyer because Class Counsel is working on your behalf. But if you want your own lawyer, you will have to pay that lawyer. For example, you can ask your lawyer to appear in Court for you if you want someone other than Class Counsel to represent you.

### 12. How will the lawyers be paid?

Class Counsel will ask the Court for attorneys' fees and expenses of up to 35% of the Settlement Fund and will also request an award of $5,000 for the Class Representative. The Court will determine the proper amount of any attorneys' fees and expenses to award Class Counsel and the proper amount of any award to the Class Representative. The Court may award less than the amounts requested. Any money not awarded will stay in the Settlement Fund to pay Class Members.

## YOUR RIGHTS AND OPTIONS

### 13. What happens if I do nothing at all?

If you do nothing, you will receive no payment under the Settlement, you will be in the Class, and if the Court approves the Settlement, you will also be bound by all orders and judgments of the Court. Unless you exclude yourself, you won't be able to start a lawsuit or be part of any other lawsuit against the Defendant for the claims or legal issues being resolved by this Settlement.

### 14. What happens if I ask to be excluded?

If you exclude yourself from the Settlement, you will receive no payment under the Settlement. However, you will not be in the Class. You will keep your right to start your own lawsuit against Defendant for the same legal claims made in this lawsuit. You will not be legally bound by the Court's judgments related to the Class and the Defendant in this class action.

### 15. How do I ask to be excluded?

You can ask to be excluded from the Settlement. To do so, you must send a letter stating that you want to be excluded from the Settlement in *Kolinek v. Walgreen Co.*, Case No. 13-cv-04806. Your letter must also include your (1) name and address, (2) the cellular telephone number at which you received the Prerecorded Prescription Call(s), (3) a statement that you wish to be excluded from the Class, and (4) your signature. You must mail your exclusion request no later than **[objection / exclusion deadline]** to:

*Kolinek v. Walgreen Co.* Settlement Administrator
P.O. Box 0000
City, ST 00000-0000

You can't exclude yourself on the phone or by email.

### 16. If I don't exclude myself, can I sue the Defendant for the same thing later?

No. Unless you exclude yourself, you give up any right to sue the Defendant for the claims being resolved by this Settlement.

### 17. If I exclude myself, can I get anything from this Settlement?

No. If you exclude yourself, do not submit a Claim Form to ask for a payment.

### 18. How do I object to the Settlement?

If you do not exclude yourself from the Class, you can object to the Settlement if you don't like any part of it. You can give reasons why you think the Court should deny approval by filing an objection. To object, you must file a letter or brief with the Court stating that you object to the Settlement in *Kolinek v. Walgreen Co.*, Case No. 13-cv-0480 no later than **[objection / exclusion deadline]**. Your objection should be sent to the United States District Court for the Northern District of Illinois at the following address:

Clerk of Court
Everett McKinley Dirksen United States Courthouse
219 South Dearborn Street
Chicago, IL 60604

If you are represented by a lawyer, the lawyer must file your objection through the Court's CM/ECF system. Include your lawyer's contact information in the objection.

The objection must be in writing and include the case name *Kolinek v. Walgreen Co.*, Case No. 13-cv-04806. Your objection must be personally signed and include the following information: (1) your name and address, (2) all arguments, citations, and evidence supporting your objection, including copies of any documents you rely on, (3) a statement that you are a Class Member, and (4) the cellular telephone number at which you received the Prerecorded Prescription Call(s). If you wish to appear and be heard at the hearing on the fairness of the Settlement, you or your attorney must say so in your written objection.

In addition to filing your objection with the Court, you must send copies of your objection and any supporting documents to both Class Counsel and the Defendant's lawyers at the addresses listed below:

| Class Counsel | Defense Counsel |
|---|---|
| Benjamin H. Richman | Bradley J. Andreozzi |
| EDELSON PC | DRINKER BIDDLE & REATH LLP |
| 350 North LaSalle Street | 191 North Wacker Drive |
| Suite 1300 | Suite 3700 |
| Chicago, IL 60654 | Chicago, IL 60606 |

Class Counsel will file with the Court and post on the settlement website its request for attorneys' fees and incentive award on [date 2 weeks before objection deadline].

### 19. What's the difference between objecting and excluding myself from the Settlement?

Objecting simply means telling the Court that you don't like something about the Settlement. You can object only if you stay in the Class. Excluding yourself from the Class is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

### 20. When and where will the Court hold a hearing on the fairness of the Settlement?

The Court will hold the final fairness hearing at [time] on [date], before the Honorable Matthew F. Kennelly at the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, IL 60604 in Courtroom 2103. The purpose of the hearing is for the Court to determine whether the Settlement is fair, reasonable, and adequate, and in the best interests of the Class. At the hearing, the Court will hear any objections and arguments concerning the fairness of the proposed Settlement, including those related to the amount requested by Class Counsel for attorneys' fees and expenses and the incentive award to the Class Representative.

**Note:** The date and time of the fairness hearing are subject to change by Court Order. Any changes will be posted at the settlement website, www.prescriptioncallsettlement.com or through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.ilnd.uscourts.gov.

### 21. Do I have to come to the hearing?

No. Class Counsel will answer any questions the Court may have. But you are welcome to come to the hearing at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as your written objection was filed or mailed on time and meets the other criteria described in the Settlement, the Court will consider it. You may also pay a lawyer to attend, but you don't have to.

### 22. May I speak at the hearing?

Yes. If you do not exclude yourself from the Settlement Class, you may ask the Court for permission to speak at the hearing concerning any part of the proposed Settlement. If you filed an objection (*see* Question 18 above) and intend to appear at the hearing, you must state your intention to do so in your objection.

## GETTING MORE INFORMATION

### 23. Where can I get additional information?

This notice summarizes the proposed Settlement. For the precise terms and conditions of the settlement, please see the Settlement Agreement available at www.prescriptioncallsettlement.com, contact Class Counsel at 1-866-354-3015, access the Court docket in this case through the Court's PACER system at https://ecf.ilnd.uscourts.gov, or visit the office of the Clerk of the Court for the United States District Court for the Northern District of Illinois, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, IL 60604 between 8:30 a.m. and 4:30 p.m., Monday through Friday, excluding Court holidays.

**PLEASE DO <u>NOT</u> CONTACT THE COURT, THE JUDGE, OR THE DEFENDANT WITH QUESTIONS ABOUT THE SETTLEMENT OR CLAIMS PROCESS.**

# Exhibit 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

ROBERT KOLINEK, individually and
on behalf of all others similarly situated,

        *Plaintiff*,

        *v.*

WALGREEN CO., an Illinois corporation,

        *Defendant*.

Case. No. 13-cv-04806

Hon. Matthew F. Kennelly

## DECLARATION OF RAFEY S. BALABANIAN

Pursuant to 28 U.S.C. § 1746, I hereby declare and state as follows:

1.      I am an attorney admitted to practice in the United States District Court for the Northern District of Illinois. I am entering this declaration in support of Plaintiff Robert Kolinek's Motion for Preliminary Approval of Class Action Settlement Agreement. This declaration is based upon my personal knowledge, except where expressly noted otherwise. If called upon to testify to the matters stated herein, I could and would competently do so.

2.      I am a Partner in and the General Counsel of Edelson PC, which has been retained to represent the named Plaintiff in this matter, Robert Kolinek ("Kolinek" or "Plaintiff"), and act as proposed Class Counsel on behalf of the Settlement Class.

***Litigation and Settlement Negotiations***

3.      On July 3, 2013, Plaintiff filed the instant Action alleging that Defendant Walgreen Co. ("Walgreens" or "Defendant") violated the Telephone Consumer Protection Act,

47 U.S.C. § 227 ("TCPA"), when it placed the Prerecorded Prescription Calls[1] to customers' cellular telephones. (*See* Dkt. 1.)

4.      Walgreens moved to dismiss Plaintiff's complaint, arguing that (i) Plaintiff consented to receive the Calls by providing his cellular telephone number to Walgreens for verification purposes and (ii) the Calls fell within the TCPA's "emergency purpose" exception. After full briefing, the Court dismissed Plaintiff's complaint, holding that Kolinek consented to receive calls by providing his cellular telephone number to Walgreens at some point in the past.

5.      Plaintiff thereafter filed a motion to reconsider, which the Court granted, holding that Walgreens was unable to assert a consent defense on the facts alleged. (*See* Dkts. 40, 44, 46, 48, 51.) Then, on July 22, 2014, the Court held oral argument on the remaining issue in Defendant's motion to dismiss—whether the Prerecorded Prescription Calls fell under the TCPA's "emergency purpose" exception—and after additional briefing and oral argument, denied Walgreens' motion to dismiss on that basis as well. (*See* Dkts. 53, 54, 57, 58, 61, 63.)

6.      Shortly after the Court denied the remainder of Walgreens' motion to dismiss and Walgreens answered Plaintiff's complaint, the Parties began to exchange information through informal discovery related to the inner-workings of Walgreens' Prerecorded Prescription Call program, including how the program was initiated, how Walgreens obtained, stored, and maintained individuals' telephone numbers, and how the calls were placed.

7.      At the same time, the Parties began to discuss the possibility of resolving the case before additional protracted litigation. Over numerous teleconferences, the Parties talked at length about the substantive issues of the case and their perspectives on how it might be resolved. Eventually, these conversations led to an agreement to formally mediate the case and,

---

[1]      Except as otherwise indicated, all defined terms used in this declaration shall have the same meanings ascribed to them in the Parties' proposed Class Action Settlement Agreement.

on October 15, 2014, the Parties convened their first mediation with the Honorable Wayne R. Anderson (ret.) of JAMS (Chicago).

8.     Over the course of the day and with Judge Andersen's guidance, the Parties were able to reach an agreement on some of the material terms of a class-wide settlement, but did not reach a complete agreement. Instead, the session ended with a proposed settlement offer, which Defendant countered one week later.

9.     After additional discussions over the following days, on October 24, 2014, the Parties finalized the material terms of an agreement in principle to resolve the case, subject to additional (confirmatory) discovery.

10.     To that end, Plaintiff served formal written discovery requests on Walgreens regarding, *inter alia*, how it had obtained customers' telephone numbers, how any alleged consent to be called had been obtained, how the calls were placed, and how Walgreens maintained records of both the phone numbers and any consent to be called. After receiving and reviewing Walgreens' written responses and document production, Plaintiff deposed Walgreens' Rule 30(b)(6) designee and Director of Outbound Programs, Christopher Helzerman, on January 16, 2015, to further explore and understand those issues.

11.     Ultimately, through discovery, Plaintiff determined that Walgreens had collected the telephone numbers called directly from customers over a period of years, most often when gathering contact information for prescription-drug purchases and refills. As a part of that process, Walgreens' policy was to request that customers identify whether the telephone numbers provided were assigned to cellular or landline accounts, as Walgreens' internal databases specifically delineate between such identifications. Accordingly, when Walgreens initiated its refill reminder call program in 2012, it specifically did not place reminder phone

calls to any number that had been identified as assigned to a cellular account. Discovery also confirmed that Walgreens provided various options for call recipients to opt out of receiving future refill reminder calls—e.g., during any call a customer could simply press "8" on their touch-tone telephone to avoid future calls. Nevertheless, just a very small fraction of the customers called opted out of receiving refill reminder calls going forward; for the year just completed, the opt-out rate was 0.70% and for the entire period of the program, the opt-out rate was less than 1.5%. I have been advised by Walgreens that the percentage of customers who used the Prerecorded Prescription Calls to refill their prescriptions is vastly larger—by tens of multiples—than the opt-out rate, which Walgreens would argue shows that the Prerecorded Prescription Calls are viewed by its customers as a welcome reminder service rather than nuisance telemarketing calls.

12.     In addition to formal written and oral discovery, the Parties agreed that Walgreens would—subject to a Protective Order (dkt. 79) and other confidentiality measures—provide records identifying the telephone numbers to which the alleged calls were made to a third party to determine which of those numbers were, in fact, assigned to cellular phones and thus fell within the proposed Settlement Class definition. In that way, the Parties intended to further confirm the scope of the proposed Settlement Class, ensure an appropriate plan for notifying Settlement Class Members of the settlement, and also confirm the fairness and reasonableness of the settlement.

13.     In February 2015, Walgreens provided that data to third-party administrator, Kurtzman Carson Consultants ("KCC"). KCC organized and analyzed the data and ultimately identified the phone numbers called by Walgreens that were assigned to cellular accounts.

However, due to a discrepancy in the manner in which the data was originally extracted from Walgreens' databases, the Parties determined to re-run the analysis for a second time.

14.     Upon the conclusion of the second analysis, KCC determined that there were approximately 9.2 million cellular telephone numbers to which Walgreens placed Calls during the relevant period of time.

15.     Notwithstanding their agreement in principal regarding the key terms of the settlement (i.e., fund size, prospective relief, etc.), the Parties were at odds about other aspects of the settlement, namely the plan for providing notice to the Settlement Class given the information gleaned from discovery. As they could not reach a consensus on that issue, the Parties determined to proceed with a second mediation before Judge Andersen on March 16, 2015, during which they were able to resolve the remaining issues.

16.     After the conclusion of the second mediation before Judge Andersen, the Parties were satisfied that the terms of the proposed settlement were fair, reasonable, and adequate, and proceeded with finalizing their written Agreement. On March 26, 2015, the Parties executed the Agreement now before the Court.

### *Certification of the Settlement Class is Appropriate.*

17.     It is proposed Class Counsel's position that Rule 23's requisites to certifying the proposed Settlement Class for settlement purposes are satisfied here.

18.     With respect to Rule 23(a)'s numerosity requirement, Defendant's records indicate that it placed the Prerecorded Prescription Calls to approximately 9.2 million individuals.

19.     As to the adequacy requirement, Plaintiff Kolinek and proposed Class Counsel have vigorously pursued this Action on behalf of the Settlement Class, and they will continue to do so.

20.     As it relates to the adequacy of Kolinek as class representative, his interest in redressing Defendant's alleged violation of the TCPA is identical to the interests of all other Settlement Class Members. Moreover, Kolinek has worked alongside proposed Class Counsel throughout the pendency of this Action—reviewing the complaint and other documents, equipping his attorneys with the information needed to pursue his claims, and responding to requests for additional information throughout the settlement process—further confirming his dedication to vigorously representing the interests of the Settlement Class.

21.     Further, proposed Class Counsel are experienced members of the plaintiffs' bar who have built their practice litigating similarly complex consumer class actions, including many under the TCPA.

22.     Additionally, proposed Class Counsel have devoted substantial resources to the prosecution of this Action—for example, investigating the claims of Kolinek and the Settlement Class, aggressively pursuing Plaintiff's claims through a motion to reconsider, maintaining an ongoing dialogue with Walgreens, conducting a formal mediation, ultimately reaching a resolution of this Action, performing extensive discovery and engaging in additional settlement discussions and a second mediation to ensure that the settlement is fair and reasonable in light of that discovery—and we will continue to do so throughout the Action's pendency.

### The Proposed Settlement is Well Within the Range of Possible Approval.

23.     We are also of the opinion that the proposed Settlement is fair, reasonable and adequate and well within the range of possible approval.

24.     First, we believe that the monetary benefit to the Settlement Class is especially approvable when viewed in light of some individuals' positive response to the Prerecorded Prescription Calls. Indeed, during his Rule 30(b)(6) deposition, Christopher Helzerman noted that many individuals have reacted positively to Walgreens' calling campaign and even called to opt in to the program after accidentally opting out. That's likely because, unlike most telemarketing calls, the Calls had the additional purpose of helping individuals maintain their health.

25.     We also believe that the result for the Settlement Class is especially beneficial in light of the risks associated with continued litigation of the Action. Even though we are confident that Plaintiff would ultimately prevail at trial should the case proceed, the risks of further litigation are significant. For example, with respect to Walgreens' defense that the Calls fall under the emergency purpose exception, evidence demonstrates that Walgreens may actually be able to claim that defense given that the Calls were placed to individuals who had prescriptions for maintenance medications (such as cholesterol lowering medications, blood pressure medications, diabetes medications, and medications for chronic pulmonary issues), the continuation of which are vital to the health of the patient.

26.     Additionally, Walgreens would undoubtedly challenge a motion for class certification, arguing *inter alia* that the consent defense raises individual factual issues, further delaying the possibility of relief to the Settlement Class, and if the case proceeded to trial, other roadblocks—such as additional discovery and procurement of expert testimony—would stand between the Settlement Class and ultimate recovery. And in light of the amount at stake and its reputational interests, Walgreens is nearly certain to appeal any judgment in favor of the class, thus further delaying recovery.

27.     Finally, we also believe that the procedural posture of this Action further supports preliminary approval. Indeed, this case has now been underway for more than a year and a half, and through contentious litigation—resulting in this Court's reversal of its initial dismissal—and heated settlement talks, the Parties have assembled the information necessary to fully assess the strength of Plaintiff's claims.

28.     For all of these reasons, we and Kolinek firmly believe that both the relief obtained for the Settlement Class through the settlement, as well as the manner in which it was obtained, weigh heavily in favor of a finding that the settlement is fair, reasonable and adequate, and well within the range of approval.

***Attachments.***

29.     Attached to Plaintiff's Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement Agreement as Exhibit 1 is a true and accurate copy of the Parties' proposed Class Action Settlement Agreement.

30.     Attached hereto as Exhibit 2-A is a true and accurate copy of the Firm Resume of Edelson PC.

*                    *                    *

I declare under penalty of perjury that the foregoing is true and correct.


Executed this 26th day of March 2015 at Chicago, Illinois.

_____
Rafey S. Balabanian

8

# Exhibit A

# EDELSON PC FIRM RESUME

EDELSON PC is a plaintiffs' class action and commercial litigation firm with attorneys in Illinois and California.

Our attorneys have been recognized as leaders in these fields by state and federal legislatures, national and international media groups, the courts, and our peers. Our reputation for leadership in class action litigation has led state and federal courts to appoint us lead counsel in many high-profile class actions, including privacy suits against comScore, Netflix, Time, Microsoft, and Facebook; numerous Telephone Consumer Protection Act ("TCPA") cases against companies such as Google, Twentieth Century Fox, and Simon & Schuster; class actions against Citibank, Wells Fargo, and JP Morgan Chase related to reductions in home equity lines of credit; fraudulent marketing cases against software companies such as Symantec; mobile content class actions against all major cellular telephone carriers; the Thomas the Tank Engine lead paint class actions; and the tainted pet food litigation. We have testified before the United States Senate on class action issues and have repeatedly been asked to work on federal and state legislation involving cellular telephony, privacy, and other issues. Our attorneys have appeared on dozens of national and international television and radio programs to discuss our cases and class action and consumer protection issues more generally. Our attorneys speak regularly at seminars on consumer protection and class action issues, lecture on class actions at law schools, and are asked to serve as testifying experts in cases involving class action and consumer issues.

## PLAINTIFFS' CLASS AND MASS ACTION PRACTICE GROUP

EDELSON PC is a leader in plaintiffs' class and mass action litigation, with a particular emphasis on consumer technology class actions, and has been called a "class action 'super firm.'" (Decalogue Society of Lawyers, Spring 2010.) As recognized by federal courts nationwide, our firm has an "extensive histor[y] of experience in complex class action litigation, and [is a] well-respected law firm[] in the plaintiffs' class action bar." *In re Pet Food Prod. Liab. Litig.*, MDL Dkt. No. 1850, No. 07-2867 (NLH) (D.N.J. Nov. 18, 2008). A leading arbitrator concurred, finding that Edelson was "extraordinarily experienced" in "consumer protection class actions generally," including "technology consumer protection class action[s]."

In appointing our firm interim co-lead in one of the most high profile cases in the country, a federal court pointed to our ability to be "vigorous advocates, constructive problem-solvers, and civil with their adversaries." *In Re JPMorgan Chase Home Equity Line of Credit Litig.*, No. 10 C 3647 (N.D. Ill. July 16, 2010). After hard fought litigation, that case settled, resulting in the reinstatement of between $3.2 billion and $4.7 billion in home credit lines.

We have been specifically recognized as "pioneers in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue." *In re Facebook Privacy Litig.*, No. C 10-02389, Dkt. 69 at 5 (N.D. Cal. Dec. 10, 2010) (order appointing the firm interim co-lead of privacy class action); *see also In re Netflix Privacy Litig.*, No. 11-cv-00379, Dkt. 59 at 5 (N.D. Cal. Aug. 12, 2011) (appointing us the sole lead counsel due, in part, to our "significant and particularly specialized expertise in electronic privacy litigation and class actions[.]").

Similarly, as recognized by a recent federal court, our firm has "pioneered the application of the TCPA to text-messaging technology, litigating some of the largest consumer class actions in the country on this issue." *Ellison v Steve Madden, Ltd.*, No. 11-cv-5935 PSG, Dkt. 73 at 9 (C.D. Cal. May 7, 2013).

We have several sub-specialties within our plaintiffs' class action practice:

## PRIVACY/DATA LOSS

### *Data Loss/Unauthorized Disclosure of Data*

We have litigated numerous class actions involving issues of first impression against Facebook, Apple, Netflix, Sony, Redbox, Pandora, Sears, Storm 8, Google, T-Mobile, Microsoft, and others involving failures to protect customers' private information, security breaches, and unauthorized sharing of personal information with third parties. Representative settlements and ongoing cases include:

- *Dunstan v. comScore, Inc.*, No. 11-cv-5807 (N.D. Ill.): Lead counsel in certified class action accusing Internet analytics company of improper data collection practices. The court has finally approved a $14 million settlement.

- *Resnick v. Avmed*, No. 10-cv-24513 (S.D. Fla.): Lead counsel in data breach case filed against health insurance company. Obtained landmark appellate decision endorsing common law unjust enrichment theory, irrespective of whether identity theft occurred. Case also resulted in the first class action settlement in the country to provide data breach victims with monetary payments irrespective of identity theft.

- *In re Netflix Privacy Litigation*, No. 11-cv-00379 (N.D. Cal.): Sole lead counsel in suit alleging that defendant violated the Video Privacy Protection Act by illegally retaining customer viewing information. Case resulted in a $9 million dollar *cy pres* settlement that has been finally approved (pending appeal).

- *Halaburda v. Bauer Publishing Co.*, No. 12-cv-12831 (E.D. Mich.); *Grenke v. Hearst Communications, Inc.*, No. 12-cv-14221 (E.D. Mich.); *Fox v. Time, Inc.*, No. 12-cv-14390 (E.D. Mich.): Consolidated actions brought under Michigan's Video Rental Privacy Act, alleging unlawful disclosure of subscribers' personal information. In a ground-breaking decision, the court denied three motions to dismiss finding that the magazine publishers were covered by the act and that the illegal sale of personal information triggers an automatic $5,000 award to each aggrieved consumer.

- *Standiford v. Palm*, No. 09-cv-05719-LHK (N.D. Cal.): Sole lead counsel in data loss class action, resulting in $640,000 settlement.

- *In re Zynga Privacy Litig.*, No. 10-cv-04680 (N.D. Cal.): Appointed co-lead counsel in suit against gaming application designer for the alleged unlawful disclosure of its users' personally identifiable information to advertisers and other third parties.

- *In re Facebook Privacy Litigation*, No. 10-cv-02389 (N.D. Cal.): Appointed co-lead counsel in suit alleging that Facebook unlawfully shared its users' sensitive personally identifiable information with Facebook's advertising partners.

- *In re Sidekick Litigation*, No. C 09-04854-JW (N.D. Cal.): Co-lead counsel in cloud computing data loss case against T-Mobile and Microsoft. Settlement provided the class with potential settlement benefits valued at over $12 million.

- *Desantis v. Sears*, No. 08 CH 00448 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in injunctive settlement alleging national retailer allowed purchase information to be publicly available through the Internet.

### *Telephone Consumer Protection Act*

Edelson has been at the forefront of TCPA litigation for over six years, having secured the groundbreaking *Satterfield* ruling in the Ninth Circuit applying the TCPA to text messages. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009). In addition to numerous settlements totaling over $100 million in relief to consumers, we have over two dozen putative TCPA class actions pending against companies including Santander Consumer USA, Inc., Walgreen Co., Path, Inc., Nuance Communications, Inc., Stonebridge Life Insurance, Inc., GEICO, DirectBuy, Inc., and RCI, Inc. Representative settlements and ongoing cases include:

- *Rojas v CEC*, No. 10-cv-05260 (N.D. Ill.): Lead counsel in text spam class action that settled for $19,999,400.

- *In re Jiffy Lube Int'l Text Spam Litigation*, No. 11-md-2261, 2012 WL 762888 (S.D. Cal.): Co-lead counsel in $35 million text spam settlement.

- *Ellison v Steve Madden, Ltd.*, No. cv 11-5935 PSG (C.D. Cal.): Lead counsel in $10 million text spam settlement.

- *Kramer v. B2Mobile*, No. 0-cv-02722-CW (N.D. Cal.): Lead counsel in $12.2 million text spam settlement.

- *Pimental v. Google, Inc.*, No. 11-cv-02585 (N.D. Cal.): Lead counsel in class action alleging that defendant co-opted group text messaging lists to send unsolicited text messages. $6 million settlement provides class members with an unprecedented $500 recovery.

- *Robles v. Lucky Brand Dungarees, Inc.*, No. 10-cv-04846 (N.D. Cal.): Lead counsel in $10 million text spam settlement.

- *Miller v. Red Bull*, No. 12-CV-04961 (N.D. Ill.): Lead counsel in $6 million text spam settlement.

- *Woodman v. ADP Dealer Services*, No. 2013 CH 10169 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in $7.5 million text spam settlement.

- *Lockett v. Mogreet, Inc.*, No 2013 CH 21352 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in $16 million text spam settlement.

- *Lozano v. 20th Century Fox*, No. 09-cv-05344 (N.D. Ill.): Lead counsel in class action alleging that defendants violated federal law by sending unsolicited text messages to cellular telephones of consumers. Case settled for $16 million.

- *Satterfield v. Simon & Schuster*, No. C 06 2893 CW (N.D. Cal.): Co-lead counsel in in $10 million text spam settlement.

- *Weinstein v. Airit2me, Inc.*, No. 06 C 0484 (N.D. Ill): Co-lead counsel in $7 million text spam settlement.

## CONSUMER TECHNOLOGY

### *Fraudulent Software*

In addition to the settlements listed below, EDELSON PC has consumer fraud cases pending in courts nationwide against companies such as McAfee, Inc., Avanquest North America Inc., PC Cleaner, AVG, iolo Technologies, LLC, among others. Representative settlements include:

- *Drymon v. Cyberdefender*, No. 11 CH 16779 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $9.75 million.

- *Gross v. Symantec Corp.*, No. 12-cv-00154-CRB (N.D. Cal.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $11 million.

- *LaGarde v. Support.com, Inc.*, No. 12-cv-00609-JSC (N.D. Cal.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $8.59 million.

- *Ledet v. Ascentive LLC*, No. 11-CV-294-PBT (E.D. Pa.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $9.6 million.

- *Webb v. Cleverbridge, Inc.*, No. 1:11-cv-04141 (N.D. Ill.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $5.5 million.

### *Video Games*

EDELSON PC has litigated cases video-game related cases against Activision Blizzard Inc., Electronic Arts, Inc., Google, and Zenimax Media, Inc., and has active litigation pending, including:

- *Locke v. Sega of America*, No. 13-cv-01962-MEJ (N.D. Cal.): Pending putative class action alleging that Sega of America and Gearbox Software released video game trailer that falsely represented the actual content of the game.

## MORTGAGE & BANKING

EDELSON PC has been at the forefront of class action litigation arising in the aftermath of the federal bailouts of the banks. Our suits include claims that certain banks unlawfully suspended home credit lines based on pre-textual reasons, and that certain banks have failed to honor loan modification programs. We achieved the first federal appellate decision in the country recognizing the right of borrowers to enforce HAMP trial plans under state law. The court noted that "[p]rompt resolution of this matter is necessary not only for the good of the litigants but for the good of the Country." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 586 (7th Cir. 2012) (Ripple, J., concurring). Our settlements have restored billions of dollars in home credit lines to people throughout the country. Representative cases and settlements include:

- *In re JP Morgan Chase Bank Home Equity Line of Credit Litig.*, No. 10-cv-3647 (N.D. Ill.): Court appointed interim co-lead counsel in nationwide putative class action alleging illegal suspensions of home credit lines. Settlement restored between $3.2 billion and $4.7 billion in credit to the class.

- *Hamilton v. Wells Fargo Bank, N.A.*, No. 09-cv-04152-CW (N.D. Cal.): Lead counsel in class actions challenging Wells Fargo's suspensions of home equity lines of credit. Nationwide settlement restores access to over

$1 billion in credit and provides industry leading service enhancements and injunctive relief.

- *In re Citibank HELOC Reduction Litig.*, No. 09-cv-0350-MMC (N.D. Cal.): Lead counsel in class actions challenging Citibank's suspensions of home equity lines of credit. The settlement restored up to $653,920,000 worth of credit to affected borrowers.

- *Wigod v. Wells Fargo*, No. 10-cv-2348 (N.D. Ill.): In ongoing putative class action, obtained first appellate decision in the country recognizing the right of private litigants to sue to enforce HAMP trial plans.

## GENERAL CONSUMER PROTECTION CLASS ACTIONS

We have successfully prosecuted countless class actions against computer software companies, technology companies, health clubs, dating agencies, phone companies, debt collectors, and other businesses on behalf of consumers. In addition to the settlements listed below, EDELSON PC have litigated consumer fraud cases in courts nationwide against companies such as Motorola Mobility, Stonebridge Benefit Services, J.C. Penney, Sempris LLC, and Plimus, LLC. Representative settlements include:

### Mobile Content

We have prosecuted over 100 cases involving mobile content, settling numerous nationwide class actions, including against industry leader AT&T Mobility, collectively worth over a hundred million dollars.

- *McFerren v. AT&T Mobility, LLC*, No. 08-CV-151322 (Fulton Cnty. Super. Ct., Ga.): Lead counsel class action settlement involving 16 related cases against largest wireless service provider in the nation. "No cap" settlement provided virtually full refunds to a nationwide class of consumers who alleged that unauthorized charges for mobile content were placed on their cell phone bills.

- *Paluzzi v. Cellco Partnership*, No. 07 CH 37213 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in class action settlement involving 27 related cases alleging unauthorized mobile content charges. Case settled for $36 million.

- *Gray v. Mobile Messenger Americas, Inc.*, No. 08-CV-61089 (S.D. Fla.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills. Case settled for $12 million.

- *Parone v. m-Qube, Inc.*, No. 08 CH 15834 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in class action settlement involving over 2 dozen cases alleging

the imposition of unauthorized mobile content charges. Case settled for $12.254 million.

- *Williams v. Motricity, Inc.*, No. 09 CH 19089 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in class action settlement involving 24 cases alleging the imposition of unauthorized mobile content charges. Case settled for $9 million.

- *VanDyke v. Media Breakaway, LLC*, No. 08 CV 22131 (S.D. Fla.): Lead counsel in class action settlement alleging unauthorized mobile content charges. Case settled for $7.6 million.

- *Gresham v. Cellco Partnership*, No. BC 387729 (L.A. Super. Ct., Cal.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills. Settlement provided class members with full refunds.

- *Abrams v. Facebook, Inc.*, No. 07-05378 (N.D. Cal.): Lead counsel in injunctive settlement concerning the transmission of allegedly unauthorized mobile content.

### Deceptive Marketing

- *Van Tassell v. UMG*, No. 1:10-cv-2675 (N.D. Ill.): Lead counsel in negative option marketing class action. Case settled for $2.85 million.

- *McK Sales Inc. v. Discover Bank*, No. 10-cv-02964 (N.D. Ill.): Lead counsel in class action alleging deceptive marketing aimed at small businesses. Case settled for $6 million.

- *Farrell v. OpenTable*, No. 11-cv-01785 (N.D. Cal.): Lead counsel in gift certificate expiration case. Settlement netted class over $3 million in benefits.

- *Ducharme v. Lexington Law*, No. 10-cv-2763 (N.D. Cal): Lead counsel in CROA class action. Settlement resulted in over $6 million of benefits to the class.

- *Pulcini v. Bally Total Fitness Corp.*, No. 05 CH 10649 (Cir. Ct. Cook Cnty., Ill.): Co-lead counsel in four class action lawsuits brought against two health clubs and three debt collection companies. A global settlement provided the class with over $40 million in benefits, including cash payments, debt relief, and free health club services.

- *Kozubik v. Capital Fitness, Inc.*, 04 CH 627 (Cir. Ct. Cook Cnty., Ill.): Co-lead counsel in state-wide suit against a leading health club chain, which settled in 2004, providing the over 150,000 class members with between

$11 million and $14 million in benefits, consisting of cash refunds, full debt relief, and months of free health club membership.

- *Kim v. Riscuity*, No. 06 C 01585 (N.D. Ill.): Co-lead counsel in suit against a debt collection company accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with full debt relief and return of all money collected.

- *Jones v. TrueLogic Financial Corp.*, No. 05 C 5937 (N.D. Ill.): Co-lead counsel in suit against two debt collectors accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with approximately $2 million in debt relief.

- *Fertelmeyster v. Match.com*, No. 02 CH 11534 (Cir. Ct. Cook Cnty., Ill.): Co-lead counsel in a state-wide class action suit brought under Illinois consumer protection statutes. The settlement provided the class with a collective award with a face value in excess of $3 million.

- *Cioe v. Yahoo!, Inc.*, No. 02 CH 21458 (Cir. Ct. Cook Cnty., Ill.): Co-lead counsel in a state-wide class action suit brought under state consumer protection statutes. The settlement provided the class with a collective award with a face value between $1.6 million and $4.8 million.

- *Zurakov v. Register.com*, No. 01-600703 (N.Y. Sup. Ct., N.Y. Cnty.): Co-lead counsel in a class action brought on behalf of an international class of over one million members against Register.com for its allegedly deceptive practices in advertising on "coming soon" pages of newly registered Internet domain names. Settlement required Register.com to fully disclose its practices and provided the class with relief valued in excess of $17 million.

## PRODUCTS LIABILITY CLASS ACTIONS

We have been appointed lead counsel in state and federal products liability class settlements, including a $30 million settlement resolving the "Thomas the Tank Engine" lead paint recall cases and a $32 million settlement involving the largest pet food recall in the history of the United States and Canada. Representative settlements include:

- *Barrett v. RC2 Corp.*, No. 07 CH 20924 (Cir. Ct. Cook Cnty., Ill.): Co-lead counsel in lead paint recall case involving Thomas the Tank toy trains. Settlement is valued at over $30 million and provided class with full cash refunds and reimbursement of certain costs related to blood testing.

- *In re Pet Food Products Liability Litig.*, No. 07-2867 (D.N.J.): Part of mediation team in class action involving largest pet food recall in United

States history. Settlement provided $24 million common fund and $8 million in charge backs.

## INSURANCE CLASS ACTIONS

We have prosecuted and settled multi-million dollar suits against J.C. Penney Life Insurance for allegedly illegally denying life insurance benefits under an unenforceable policy exclusion and against a Wisconsin insurance company for terminating the health insurance policies of groups of self-insureds. Representative settlements include:

- *Holloway v. J.C. Penney*, No. 97 C 4555 (N.D. Ill.): One of the primary attorneys in a multi-state class action suit alleging that the defendant illegally denied life insurance benefits to the class. The case settled in or around December 2000, resulting in a multi-million dollar cash award to the class.

- *Ramlow v. Family Health Plan* (Wisc. Cir. Ct., WI): Co-lead counsel in a class action suit challenging defendant's termination of health insurance to groups of self-insureds. The plaintiff won a temporary injunction, which was sustained on appeal, prohibiting such termination and eventually settled the case ensuring that each class member would remain insured.

## MASS/CLASS TORT CASES

Our attorneys were part of a team of lawyers representing a group of public housing residents in a suit based upon contamination related injuries, a group of employees exposed to second-hand smoke on a riverboat casino, and a class of individuals suing a hospital and national association of blood banks for failure to warn of risks related to blood transfusions. Representative settlements include:

- *Aaron v. Chicago Housing Authority*, No. 99 L 11738 (Cir. Ct. Cook Cnty., Ill.): Part of team representing a group of public housing residents bringing suit over contamination-related injuries. Case settled on a mass basis for over $10 million.

- *Januszewski v. Horseshoe Hammond*, No. 2:00CV352JM (N.D. Ind.): Part of team of attorneys in mass suit alleging that defendant riverboat casino caused injuries to its employees arising from exposure to second-hand smoke.

The firm's cases regularly receive attention from local, national, and international media. Our cases and attorneys have been reported in the Chicago Tribune, USA Today, the Wall Street Journal, the New York Times, the LA Times, by the Reuters and UPI news services, and BBC International. Our attorneys have appeared on numerous national television and radio programs, including ABC World News, CNN, Fox News, NPR, and CBS Radio, as well as television and

radio programs outside of the United States. We have also been called upon to give congressional testimony and other assistance in hearings involving our cases.

## GENERAL COMMERCIAL LITIGATION

Our attorneys have handled a wide range of general commercial litigation matters, from partnership and business-to-business disputes, to litigation involving corporate takeovers. We have handled cases involving tens of thousands of dollars to "bet the company" cases involving up to hundreds of millions of dollars. Our attorneys have collectively tried hundreds of cases, as well as scores of arbitrations and mediations.

## OUR ATTORNEYS

**JAY EDELSON** is the founder and Managing Partner of EDELSON PC. He has been recognized as a leader in class actions, technology law, corporate compliance issues, and consumer advocacy by his peers, the media, state and federal legislators, academia, and courts throughout the country.

Jay has been appointed lead counsel in numerous state, federal, and international class actions, resulting in hundreds of millions of dollars for his clients. He is regularly asked to weigh in on federal and state legislation involving his cases. He testified to the U.S. Senate about the largest pet food recall in the country's history and is advising state and federal politicians on consumer issues relating to the recent federal bailouts, as well as technology issues, such as those involving mobile marketing. Jay also counsels companies on legal compliance and legislative issues in addition to handling all types of complex commercial litigation.

Jay has litigated class actions that have established precedent concerning the ownership rights of domain name registrants, the applicability of consumer protection statutes to Internet businesses, and the interpretation of numerous other state and federal statutes including the Telephone Consumer Protection Act and the Video Privacy Protection Act. As lead counsel, he has also secured settlement in cases of first impression involving Facebook, Microsoft, AT&T, and countless others, collectively worth hundreds of millions of dollars.

In addition to technology based litigation, Jay has been involved in a number of high-profile "mass tort" class actions and product recall cases, including cases against Menu Foods for selling contaminated pet food, a $30 million class action settlement involving the Thomas the Tank Engine toy train recall, and suits involving damages arising from second-hand smoke.

In 2009, Jay was named one of the top 40 Illinois attorneys under 40 by the Chicago Daily Law Bulletin. In giving Jay that award, he was heralded for his history of bringing and winning landmark cases and for his "reputation for integrity" in the "rough and tumble class action arena." In the same award, he was called "one of the best in the country" when it "comes to legal strategy and execution." Also in 2009, Jay was included in the American Bar Association's "24 hours of Legal Rebels" program, where he was dubbed one of "the most creative minds in the legal profession" for his views of associate training and firm management. In 2010, he was presented with the Annual Humanitarian Award in recognition of his "personal integrity,

professional achievements, and charitable contributions" by the Hope Presbyterian Church. Starting in 2011, he has been selected as an Illinois Super Lawyer and, separately, as a top Illinois class action lawyer by Benchmark Plaintiff.

Jay is frequently asked to participate in legal seminars and discussions regarding the cases he is prosecuting, including serving as panelist on national symposium on tort reform and, separately, serving as a panelist on litigating high-profile cases. He has also appeared on dozens of television and radio programs to discuss his cases. He has taught classes on class action law at Northwestern Law School and The John Marshall Law School, and has co-chaired a 2-day national symposium on class action issues. He has been an adjunct professor, teaching a seminar on class action litigation at the Chicago-Kent College of Law since 2010.

Jay is a graduate of Brandeis University and the University of Michigan Law School.

**RYAN D. ANDREWS** is a Partner at Edelson PC. He presently leads the firm's complex case resolution and appellate practice group, which oversees the firm's class settlements, class notice programs, and briefing on issues of first impression.

Ryan has been appointed class counsel in numerous federal and state class actions nationwide that have resulted in over $100 million dollars in refunds to consumers, including: *Satterfield v. Simon & Schuster*, No. C 06 2893 CW (N.D. Cal.): *Ellison v Steve Madden, Ltd.*, No. cv 11-5935 PSG (C.D. Cal.); *Robles v. Lucky Brand Dungarees, Inc.*, No. 10-cv-04846 (N.D. Cal.); *Lozano v. 20th Century Fox*, No. 09-cv-05344 (N.D. Ill.): *Paluzzi v. Cellco Partnership*, No. 07 CH 37213 (Cir. Ct. Cook Cnty., Ill.); and *Lofton v. Bank of America Corp.*, No. 07-5892 (N.D. Cal.).

Representative reported decisions include: *Lozano v. Twentieth Century Fox*, 702 F. Supp. 2d 999 (N.D. Ill. 2010), *Satterfield v. Simon & Schuster, Inc.* 569 F.3d 946 (9th Cir. 2009), *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010); *In re Jiffy Lube Int'l Text Spam Litig.*, 847 F. Supp. 2d 1253 (S.D. Cal. 2012); *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292 (N.D. Cal. 2013); and *Kristensen v. Credit Payment Servs.*, No. 2:12-CV-00528-APG, --- F. Supp. 2d ----, 2014 WL 1256035 (D. Nev. Mar. 26, 2014).

Ryan graduated from the University of Michigan, earning his B.A., with distinction, in Political Science and Communications. Ryan received his J.D. with High Honors from the Chicago-Kent College of Law and was named Order of the Coif. Ryan has served as an Adjunct Professor of Law at Chicago-Kent, teaching a third-year seminar on class actions. While in law school, Ryan was a Notes & Comments Editor for The Chicago-Kent Law Review, earned CALI awards for the highest grade in five classes, and was a teaching assistant for both Property Law and Legal Writing courses. Ryan externed for the Honorable Joan B. Gottschall in the United State District Court for the Northern District of Illinois.

Ryan is licensed to practice in Illinois state courts, the United States District Court for the Northern District of Illinois, the U.S. Court of Appeals for the Seventh Circuit, and the U.S. Court of Appeals for the Ninth Circuit.

**RAFEY S. BALABANIAN** is a Partner and the Chair of the Corporate Governance and Business Litigation Practice Group. Rafey's practice focuses upon a wide range of complex consumer class action litigation, as well as general business litigation.

On the plaintiff's side, Rafey has been appointed lead counsel in numerous class actions, including landmark settlements involving the telecom industry worth hundreds of millions of dollars. Rafey has been appointed Class Counsel in nationwide class action settlements against the major wireless carriers, aggregators, and providers of "mobile content," including *Van Dyke v. Media Breakaway, LLC*, No. 08-cv-22131 (S.D. Fla.); *Parone v. m-Qube, Inc.*, No. 08 CH 15834 (Cir. Ct. Cook County, Ill.); *Williams v. Motricity, Inc., et al.*, No. 09 CH 19089 (Cir. Ct. Cook Cnty., Ill.); and *Walker v. OpenMarket, Inc., et al.*, No. 08 CH 40592 (Cir. Ct. Cook Cnty., Ill.).

On the business side, Rafey has counseled clients ranging from "emerging technology" companies, real estate developers, hotels, insurance companies, lenders, shareholders and attorneys. He has successful litigated numerous multi-million dollar cases, including several "bet the company" cases.

Rafey has first chaired jury and bench trials, mediations, and national and international arbitrations.

Rafey received his J.D. from the DePaul University College of Law in 2005. While in law school, he received a certificate in international and comparative law. Rafey received his B.A. in History, with distinction, from the University of Colorado – Boulder in 2002.

**CHRISTOPHER L. DORE** is a Partner at Edelson and a member of the Technology and Fraudulent Marketing Group. Chris focuses his practice on emerging consumer technology issues, with his cases relating to online fraud, deceptive marketing, consumer privacy, negative option membership enrollment, and unsolicited text messaging. Chris is also a member of the firm's Incubation and Startup Development Group wherein he consults with emergent businesses.

Chris has been appointed class counsel in multiple class actions, including one of the largest text-spam settlements under the Telephone Consumer Protection Act, ground breaking issues in the mobile phone industry and fraudulent marketing, as well as consumer privacy. *See Pimental v. Google, Inc.*, No. 11-cv-02585 (N.D. Cal.); *Turner v. Storm8, LLC*, No. 09-cv-05234 (N.D. Cal.); *Standiford v Palm, Inc.*, No. 09-cv-05719-LHK (N.D. Cal.); and *Espinal v. Burger King Corp.*, No. 09-cv-20982 (S.D. Fla.). In addition, Chris has achieved groundbreaking court decisions protecting consumer rights. Representative reported decisions include: *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855 (N.D. Cal. 2011); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010); and *Van Tassell v. United Marketing Group, LLC*, 795 F. Supp. 2d 770 (N.D. Ill. 2011). In total, his suits have resulted in hundreds of millions of dollars to consumers.

Prior to joining Edelson, Chris worked for two large defense firms in the areas of employment and products liability. Chris graduated *magna cum laude* from The John Marshall Law School, where he served as the Executive Lead Articles for the Law Review, as well as a team member

for the D.M. Harish International Moot Court Competition in Mumbai, India. Chris has since returned to his alma mater to lecture on current issues in class action litigation and negations.

Before entering law school, Chris received his Masters degree in Legal Sociology, graduating *magna cum laude* from the International Institute for the Sociology of Law, located in Oñati, Spain. Chris received his B.A. in Legal Sociology from the University of California, Santa Barbara.

**BENJAMIN H. RICHMAN** is a Partner at EDELSON PC and is a member of the firm's Corporate Governance and Business Litigation Practice Group. He handles plaintiffs'-side consumer class actions, focusing mainly on technology-related cases, represents corporate defendants in class actions, and handles general commercial litigation matters.

On the plaintiff's side, Ben has brought industry-changing lawsuits involving the marketing practices of the mobile industry, print and online direct advertisers, and Internet companies. He has successfully prosecuted cases involving privacy claims and the negligent storage of consumer data. His suits have also uncovered complex fraudulent methodologies of Web 2.0 companies, including the use of automated bots to distort the value of consumer goods and services. In total, his suits have resulted in hundreds of millions of dollars to consumers.

On the defense side, Ben has represented large institutional lenders in the defense of employment class actions. He also routinely represents technology companies in a wide variety of both class action defense and general commercial litigation matters.

Ben received his J.D. from The John Marshall Law School, where he was an Executive Editor of the Law Review and earned a Certificate in Trial Advocacy. While in law school, Ben served as a judicial extern to the Honorable John W. Darrah of the United States District Court for the Northern District of Illinois, in addition to acting as a teaching assistant for Prof. Rogelio Lasso in several torts courses. Ben has since returned to the classroom as a guest-lecturer on issues related to class actions, complex litigation and negotiation. He also lectures incoming law students on the core first year curriculums. Before entering law school, Ben graduated from Colorado State University with a B.S. in Psychology.

Ben is also the director of EDELSON PC'S Summer Associate Program.

**ARI J. SCHARG** is a Partner at EDELSON PC. He handles technology-related class actions, focusing mainly on cases involving the unlawful geo-locational tracking of consumers through their mobile devices, the illegal collection, storage, and disclosure of personal information, fraudulent software products, data breaches, and text message spam. His settlements have resulted in tens of millions of dollars to consumers, as well as industry-changing injunctive relief. Ari has been appointed class counsel by state and federal courts in several nationwide class action settlements, including *Webb v. Cleverbridge*, No. 11-cv-4141 (N.D. Ill.); *Ledet v. Ascentive*, No. 11-cv-294 (E.D. Penn.); and *Drymon v. CyberDefender*, No. 11 CH 16779 (Cir. Ct. Cook Cnty., Ill.); and was appointed sole-lead class counsel in *Loewy v. Live Nation*, No. 11-cv-4872 (N.D. Ill.), where the court praised his work as "impressive" and noted that he

"understand[s] what it means to be on a team that's working toward justice." Ari was selected as an Illinois Rising Star (2013) by Super Lawyers.

Prior to joining the firm, Ari worked as a litigation associate at a large Chicago firm, where he represented a wide range of clients including Fortune 500 companies and local municipalities. His work included representing the Cook County Sheriff's Office in several civil rights cases and he was part of the litigation team that forced Craigslist to remove its "Adult Services" section from its website.

Ari is very active in community groups and legal industry associations. He is a member of the Board of Directors of the Chicago Legal Clinic, an organization that provides legal services to low-income families in the Chicago area. Ari acts as Outreach Chair of the Young Adult Division of American Committee for the Shaare Zedek Medical Center in Jerusalem, and is actively involved with the Anti-Defamation League. He is also a member of the Standard Club Associates Committee.

Ari received his B.A. in Sociology from the University of Michigan – Ann Arbor and graduated magna cum laude from The John Marshall Law School where he served as a Staff Editor for The John Marshall Law Review and competed nationally in trial competitions. During law school, he also served as a judicial extern to The Honorable Bruce W. Black of the U.S. Bankruptcy Court for the Northern District of Illinois.

**COURTNEY BOOTH** is an Associate at EDELSON PC. Courtney focuses her practice on consumer class actions.

Courtney received her J.D., *magna cum laude*, from The John Marshall Law School. While in law school, she was a staff editor of The John Marshall Law Review, a teaching assistant for Legal Writing and Civil Procedure, and a member of the Moot Court Honor Society. Courtney represented John Marshall at the Mercer Legal Ethics and Professionalism Competition where she was a semi-finalist and won Best Respondent's Brief and at the Cardozo/BMI Entertainment and Communications Law Competition where she placed in the top three oralists. Courtney was recently nominated as a 2013 Member of the National Order of Scribes.

Prior to law school, Courtney attended Saint Louis University where she earned a B.A. in Communication. While there, she was a community relations intern for the St. Louis Blues.

**ALICIA HWANG** is an Associate at EDELSON PC. Alicia practices in the area of consumer class action and general litigation.

Alicia received her J.D. from the Northwestern University School of Law in May 2012, where she was an articles editor for the Journal of Law and Social Policy. During law school, Alicia was a legal intern for the Chinese American Service League, served as president of the Asian Pacific American Law Student Association and the Student Animal Legal Defense Fund, and was Chair of the Student Services Committee. She also worked as a student in the Northwestern Entrepreneurship Law Clinic and Complex Civil Litigation and Investor Protection Clinic.

Prior to joining EDELSON PC, Alicia worked as an Executive Team Leader for the Target Corporation, as well as a public relations intern for a tourism-marketing agency in London.

Alicia graduated *magna cum laude* from the University of Southern California, earning her B.A. in Communication in 2007. She is a member of the Phi Beta Kappa honor society.

**NICK LARRY** is an Associate at EDELSON PC. Nick practices in the area of consumer class action and general litigation.

Nick received his J.D., *cum laude*, from Northwestern University School of Law, where he was a senior editor of the Northwestern University Journal of International Law and Business.

Nick attended Michigan State University, where he graduated with a B.A. in General Business Administration/Pre-law in 2008 and played on the school's rugby team.

**DAVID I. MINDELL** is an Associate at EDELSON PC. David practices in the area of technology and privacy class actions.

David helps direct a team of attorneys and engineers in investigating and litigating cases involving complex tech fraud and privacy violations. His team's research has led to lawsuits involving the fraudulent development, marketing and sale of computer software, unlawful tracking of consumers through mobile-devices and computers, unlawful collection, storage, and dissemination of consumer data, mobile-device privacy violations, large-scale data breaches, and the Bitcoin industry. On the other side, David also serves as a consultant to a variety of emerging technology companies.

Prior to joining EDELSON PC, David co-founded several technology companies that reached multi-million dollar valuations within 12 months of launch. David has advised or created strategic development and exit plans for a variety of other technology companies.

While in law school, David was a research assistant for University of Chicago Law School Kauffman and Bigelow Fellow, Matthew Tokson, and for the preeminent cyber-security professor, Hank Perritt at the Chicago-Kent College of Law. David's research included cyberattack and denial of service vulnerabilities of the Internet, intellectual property rights, and privacy issues.

David has given speeches related to his research to a wide-range of audiences.

**AMIR MISSAGHI** is an Associate at Edelson, where he focuses on technology and privacy class actions.

Amir received his J.D. from the Chicago-Kent College of Law, where he was a member of the Moot Court Honor Society and a teaching assistant in Property. Before law school, he attended the University of Minnesota, where he received his B.S. and M.S. in Applied Economics. He then began working at a Fortune 50 company as a programmer and data analyst. During that time

Amir started working on his graduate studies in Applied Economics where he focused on analyzing consumer choice in healthcare markets.

**JOHN OCHOA** is an associate at EDELSON PC, focusing his practice on protecting consumers with a special emphasis on plaintiffs' privacy class action litigation, including cases brought under the Telephone Consumer Protection Act. John prosecutes cases in both state and federal courts at the trial and appellate levels.

John has secured important court decisions protecting the rights of consumers, including *Elder v. Pacific Bell Telephone Co*, 205 Cal. App. 4th 841 (2012), where the California Court of Appeal held that consumers may pursue claims against telecommunications companies for placing unauthorized charges on consumers' telephone bills, a practice known as "cramming." John was also appointed class counsel in *Lee v. Stonebridge Life Insurance Co*, 289 F.R.D. 292 (N.D. Cal. 2013), a case where the defendants are alleged to have caused the transmission of unauthorized text messages to the cellular telephones of thousands of consumers.

He graduated *magna cum laude* from The John Marshall Law School in May 2010 and served as Managing Editor for The John Marshall Law Review. His student Comment, which examines bicycling and government tort immunity in Illinois, appears in Vol. 43, No. 1 of The John Marshall Law Review. While in law school, John externed with Judge Thomas Hoffman at the Illinois Appellate Court, and competed in the ABA National Appellate Advocacy Competition.

John is active in the Illinois legal community, and serves as Co-Chair of the Membership Committee on the Young Professionals Board of Illinois Legal Aid Online (ILAO). ILAO is a non-profit organization committed to using technology to increase access to free and pro bono legal services for underserved communities throughout Illinois.

He received his B.A. with Honors in Political Science from the University of Iowa in 2004.

**ROGER PERLSTADT** is an Associate at EDELSON PC, where he concentrates on appellate and complex litigation advocacy. Roger graduated from the University of Chicago Law School, where he was a member of the University of Chicago Law Review. After law school, he served as a clerk to the Honorable Elaine E. Bucklo of the United States District Court for the Northern District of Illinois.

Prior to joining the firm, Roger spent several years at a litigation boutique in Chicago where his practice included employment and housing discrimination claims, constitutional litigation, and general commercial matters. In 2011, he was named a Rising Star by Illinois Super Lawyers Magazine.

Roger also spent time as a Visiting Assistant Professor at the University of Florida Law School where he taught Arbitration, Conflict of Laws, and Employment Discrimination, and has published articles on the Federal Arbitration Act in various law reviews.

**EVE-LYNN J. RAPP** is an Associate at EDELSON PC. Eve-Lynn focuses her practice in the areas of consumer and technology class action litigation.

Prior to joining EDELSON PC, Eve-Lynn was involved in numerous class action cases in the areas of consumer and securities fraud, debt collection abuses and public interest litigation. Eve-Lynn has substantial experience in both state and federal courts, including successfully briefing issues in both the United States and Illinois Supreme Courts.

Eve-Lynn received her J.D. from Loyola University of Chicago-School of Law, graduating cum laude, with a Certificate in Trial Advocacy. During law school, Eve-Lynn was an Associate Editor of Loyola's International Law Review and externed as a "711" at both the Cook County State's Attorney's Office and for Cook County Commissioner Larry Suffredin. Eve-Lynn also clerked for both civil and criminal judges (Honorable Yvonne Lewis and Plummer Lott) in the Supreme Court of New York.

Eve-Lynn graduated from the University of Colorado, Boulder, with distinction and Phi Beta Kappa honors, receiving a B.A. in Political Science.

**BEN THOMASSEN** is an Associate at EDELSON PC. At the firm, Ben's practice centers on the prosecution of class actions cases that address federally protected privacy rights and issues of consumer fraud—several of which have established industry-changing precedent. Among other high profile cases, Ben recently played key roles in delivering the winning oral argument before the United States Court of Appeals for the Eleventh Circuit in *Curry v. AvMed*, 693 F.3d 1317 (11th Cir. 2012) (a data breach case that has, following the Eleventh Circuit's decision, garnered national attention both within and without the legal profession) and securing certification of a massive consumer class in *Dunstan v. comScore*, No. 11 C 5807, 2013 WL 1339262 (N.D. Ill. Apr. 2, 2013) (estimated by several sources as the largest privacy case ever certified on an adversarial basis).

Ben received his J.D., *magna cum laude*, from the Chicago-Kent College of Law, where he also earned his certificate in Litigation and Alternative Dispute Resolution and was named Order of the Coif. At Chicago-Kent, Ben was Vice President of the Moot Court Honor Society and earned (a currently unbroken firm record of) seven CALI awards for receiving the highest grade in Appellate Advocacy, Business Organizations, Conflict of Laws, Family Law, Personal Income Tax, Property, and Torts.

Before settling into his legal career, Ben worked in and around the Chicago and Washington, D.C. areas in a number of capacities, including stints as a website designer/developer, a regular contributor to a monthly Capitol Hill newspaper, and a film projectionist and media technician (with many years experience) for commercial theatres, museums, and educational institutions. Ben received his Bachelor of Arts, *summa cum laude*, from St. Mary's College of Maryland and his Master of Arts from the University of Chicago.