**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| ROBERT KOLINEK, individually and on behalf of all others similarly situated, | Case. No. 13-cv-04806 |
| *Plaintiff*, | Hon. Matthew F. Kennelly |
| *v.* | |
| WALGREEN CO., an Illinois corporation, | |
| *Defendant*. | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................ 1

II. BACKGROUND ....................................................................................................... 3

    A. Plaintiff's Allegations, Walgreens' Systems for Gathering Telephone Numbers and Making the Calls at Issue, and the TCPA ................................. 3

    B. The Litigation History ..................................................................................... 5

    C. Settlement Discussions, Mediations and Confirmatory Discovery ................. 7

III. TERMS OF THE SETTLEMENT ......................................................................... 9

    A. Class Definition .............................................................................................. 9

    B. Monetary Relief .............................................................................................. 9

    C. Prospective Relief ......................................................................................... 10

    D. Payment of Settlement Administration Expenses, Including Notice ............. 10

    E. Compensation for Class Representative and Payment of Attorneys' Fees ... 10

    F. Release of Liability ....................................................................................... 10

IV. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ................................................................................. 10

    A. The Settlement Class is Sufficiently Numerous ............................................ 11

    B. Settlement Class Members Share Common Questions of Law and Fact ...... 12

    C. Kolinek's Claims are Typical of the Settlement Class Members' Claims ..... 13

    D. Plaintiff and Class Counsel Will Adequately Represent the Settlement Class ............................................................................................................... 14

    E. The Proposed Class Satisfies the Requirements of Rule 23(b)(3) ................. 16

        1. Common questions of law and fact predominate ................................. 17

        2. A class action is the superior method of adjudicating this controversy ......................................................................................... 18

V. PLAINTIFF'S COUNSEL SHOULD BE APPOINTED CLASS COUNSEL ......... 19

**VI. THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL** ........ 20

    **A.** **The Strength of Plaintiff's Case, Balanced Against the Benefits of Settlement, Favors Preliminary Approval** ......................................................... 22

    **B.** **The Expected Duration, Complexity, and Expense of Further Litigation Weigh in Favor of Preliminary Approval** ....................................... 26

    **C.** **The Opinion of Competent Counsel Supports Preliminary Approval** ......... 27

    **D.** **The Stage of Proceedings and Significant Amount of Discovery Completed Support Preliminary Approval** ....................................................... 27

**VII. THE PROPOSED NOTICE PLAN SHOULD BE APPROVED** ............................. 28

**VIII. CONCLUSION** ............................................................................................. 30

## TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT CASES:**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ..................................................... 11, 16, 17

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ...................................................... 28

*Erica P. John Fund, Inc. v. Halliburton Co.,* 131 S. Ct. 2179 (2011) ......................................... 17

*Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740 (2012) ...................................................... 4

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ....................................................... 12, 13

**UNITED STATES CIRCUIT COURT OF APPEALS CASES:**

*Armstrong v. Board of Sch. Dirs. of City of Milwaukee,*
    616 F.2d 305 (7th Cir. 1980) ................................................................. 20, 21, 27

*Donovan v. Estate of Fitzsimmons,* 778 F.2d 298 (7th Cir. 1985) ................................................ 22

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) ..................................................... 21

*Felzen v. Andreas,* 134 F.3d 873 (7th Cir. 1998) .......................................................... 20

*Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583 (7th Cir. 2011) ................................................. 15

*Isby v. Bayh,* 75 F.3d 1191 (7th Cir. 1996) ......................................................... 21, 22, 27

*Jamie S. v. Milwaukee Pub Sch.*, 668 F.3d 481 (7th Cir. 2012) ...................................................... 12

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) ........................................................ 14

*Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997) ....................................................... 18

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012) ................................ 17

*Muro v. Target Corp.*, 580 F.3d 485 (7th Cir. 2009) .................................................... 14

*Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489 (7th Cir. 2013). .................... 19

*Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584 (7th Cir. 1993). ........................... 15

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) ........................................... 20

*Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014)..............................................12, 13

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ........................................................................ 20, 21, 22, 27

**UNITED STATES DISTRICT COURT CASES:**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
    No. 07-cv-2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) ........................................ 27

*Baird v. Sabre Inc.*, No. 13-cv-999, 2014 WL 320205 (C.D. Cal. Jan. 8, 2014)........................ 24

*Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014) ...................... *passim*

*Chandler v. Sw. Jeep-Eagle, Inc.*, 162 F.R.D. 302 (N.D. Ill. 1995) ............................................ 12

*DeHoyos v. Allstate Corp.*, 240 F.R.D. 26924 (W.D. Tex. 2007) ................................................ 25

*Ellison v. Steven Madden Ltd.*, No. 11-cv-5935 (C.D. Cal. 2013) ........................................ 20, 27

*G.M. Sign, Inc. v. Grp. C Commc'ns, Inc.*,
    No. 08-cv-4521, 2010 WL 744262 (N.D. Ill. Feb. 25, 2010) ......................................... 12

*Harris v. Circuit City Stores, Inc.*,
    No. 07-cv-2512, 2008 WL 400862 (N.D. Ill. Feb. 7, 2008) ........................................... 19

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
    270 F.R.D. 330 (N.D. Ill. 2010)................................................................................ *passim*

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
    789 F. Supp. 2d 935 (N.D. Ill. 2011) ......................................................................... 26, 27

*In re Capital One TCPA Litig.*, No. 12-cv-10064,
    2015 WL 605203, --- F. Supp. 3d ---- (N.D. Ill. Feb. 12, 2015)............................ 2, 23, 25

*In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 11-md-2261 (S.D. Cal. 2013)...................... 2, 23

*In re Northfield Labs., Inc. Sec. Litig.*,
    No. 06-cv-1493, 2012 WL 366852 (N.D. Ill. Jan. 31, 2012).................................... 20, 29

*Kazemi v. Payless Shoesource, Inc.*, No. 09-cv-5142 (N.D. Cal. 2012)................................. 2, 23

*Kessler v. Am. Resorts Int'l*,
    No. 05-cv-5944, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007) ........................................ 21

*Kramer v. Autobytel, Inc., et al.*, No. 10-cv-2722 (N.D. Cal. 2012).......................................... 2, 22

*Lozano v. Twentieth Century Fox Film Corp.*, No. 09-cv-6344 (N.D. Ill. 2011) ......... 2, 16, 20, 22

*Miller v. Red Bull N. Am., Inc.*, No. 12-cv-4961 (N.D. Ill.) .................................................... 16, 20

*Otero v. Dart*, No. 12-cv-3148, 2014 WL 4344029 (N.D. Ill. Sept. 2, 2014) ...................... 14, 18

*Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438 (N.D. Ill. 2008)...................................... 18

*Roberts v. Paypal, Inc.*,
    No. 12-cv-0622, 2013 WL 2384242 (N.D. Cal. May 30, 2013)...................................... 24

*Rojas v. Career Educ. Corp.*, No. 10-cv-5260 (N.D. Ill.)................................................. 15–16, 20

*Rose v. Bank of Am. Corp.*, No. 11-cv-02390 (N.D. Cal.)......................................................... 2, 23

*Ryabyshchuck v. Citibank (S.D.) N.A.*,
    No. 11-cv-1236, 2012 WL 5379143 (S.D. Cal. Oct. 30, 2012)...................................... 24

*Satterfield v. Simon & Schuster, Inc., et al.*, No. 06-cv-2893 (N.D. Cal. 2010)...................... 2, 22

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560 (N.D. Ill. 2011)........................................ 26, 28

*Subedi v. Merchant*, No. 09-cv-4525 2010 WL 1978693 (N.D. Ill. May 17, 2010) ................... 18

*Weinstein v. The Timberland Co., et al.*, No. 06-cv-00484 (N.D. Ill. 2008) ........................... 2, 22

**STATUTES:**

47 U.S.C. § 227....................................................................................................... *passim*

Fed. R. Civ. P. 23 ................................................................................................... *passim*

**MISCELLANEOUS:**

Manual for Complex Litigation (4th ed. 2004)........................................................... 11

## I.      INTRODUCTION

Plaintiff Robert Kolinek ("Kolinek" or "Plaintiff") seeks preliminary approval of a class action settlement that, if approved, would resolve claims against Defendant Walgreen Co. ("Walgreens" or "Defendant") that it allegedly violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), by placing prerecorded prescription refill reminder calls to its customers' cellular phones. The proposed settlement agreement ("Agreement")—reached after significant motion practice, formal and informal discovery, two mediations with the Honorable Wayne R. Andersen (ret.) of JAMS Chicago, and numerous rounds of arm's-length negotiations—represents a strong result for the Settlement Class.[1]

Pursuant to the Agreement, Walgreens has agreed to create an $11 million non-reversionary Settlement Fund from which all claims will be paid. The fund will also be used to pay for Notice and Settlement Administration Expenses, a modest incentive award for Kolinek, and attorneys' fees awarded by the Court. Each Settlement Class Member who submits a valid claim will receive a *pro rata* share of the Settlement Fund, with no monies set to revert to Defendant. The Agreement also provides for wide-ranging prospective relief—including by implementing systems throughout Walgreens designed to improve the procedures for confirming that customers have consented to receive Prerecorded Prescription Calls to their cellular phones and to allow individuals to easily opt-in and out of the refill reminder program through various means. The prospective relief alone is estimated to cost Walgreens millions of dollars.

The strength of the settlement is perhaps best demonstrated when compared to other TCPA settlements. This is not a prototypical TCPA case. As confirmatory discovery has shown, the Prerecorded Prescription Calls went to pharmacy patients with a current prescription at

---

[1]      Except as otherwise indicated, all defined terms used herein shall have the same meanings ascribed to them in the Parties' proposed Class Action Settlement Agreement.

Walgreens that was due for refill. Walgreens views the calls as medical alerts that help patients stay on their treatment plans. And the Prerecorded Prescription Calls are made to telephone numbers that were voluntarily provided by the customers to Walgreens. In the prototypical TCPA case—where individuals allege they received unsolicited telemarketing calls from entities with which they have no connection or relationship—class members generally receive as much as $200. *See, e.g., Kramer v. Autobytel, Inc., et al.*, No. 10-cv-2722, Dkt. 148 (N.D. Cal. 2012) (providing for a cash payment of $100 to each class member); *Weinstein v. The Timberland Co., et al.*, No. 06-cv-00484, Dkt. 93 (N.D. Ill. 2008) (providing for a cash payment of $150 to each class member); *Satterfield v. Simon & Schuster, Inc., et al.*, No. 06-cv-2893, Dkt. 132 (N.D. Cal. 2010) (providing for a cash payment of $175 to each class member); *Lozano v. Twentieth Century Fox Film Corp.*, No. 09-cv-6344, Dkt. 65 (N.D. Ill. 2011) (providing for a cash payment of $200 to each class member). In "mass calling" cases—where tens of millions of individuals and hundreds or even billions of calls are at issue—class members generally receive between $20 to $40. *See In re Capital One TCPA Litig.*, No. 12-cv-10064, 2015 WL 605203, --- F. Supp. 3d ---- (N.D. Ill. Feb. 12, 2015) (finally approving settlement that provided for cash payment of $34.60 to each class member); *Rose v. Bank of Am. Corp.*, No. 11-cv-02390 (N.D. Cal.) (estimating cash payment of $20-$40 to each class member). And "direct relationship" TCPA cases, like the instant one, where the person called voluntarily provided their cellular telephone number to the caller at some point in time, generally result in coupon settlements or relatively small cash awards. *See Kazemi v. Payless Shoesource, Inc.*, No. 09-cv-5142, Dkt. 94 (N.D. Cal. 2012) (providing for a $25 voucher to each class member); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 11-md-2261, Dkt. 97 (S.D. Cal. 2013) (providing for a $20 voucher, which could be redeemed for $15 cash after expiration of nine month waiting period). There are no other cases

of which counsel are aware involving calling programs that arguably benefited the called parties by providing time-sensitive medical notifications.

Nevertheless, the instant settlement—which projects to net Settlement Class Members approximately $20 after taking into account anticipated claim rates—is in line with the "mass calling" cases and outperforms the standard "direct relationship" settlement. That alone is good support for the Court granting preliminary approval. But, the Settlement Class had an additional hurdle in this case which makes the settlement even stronger: unlike in the categories of cases described above where consent was the only real defense, Walgreens was also asserting the defense of the "emergency purpose" exception under the TCPA—that the calls were made to alert people to refill prescriptions that, if left unfilled, could have adverse health consequences. Though Plaintiff believes he would have overcome that defense at summary judgment or trial, he is also mindful that it is an untested area of the law that ultimately will be decided by the FCC and/or the appellate courts.

In the end, as explained further below, the $11 million Settlement Fund and likely $20 to claimants is in line with other settlements, furthers the deterrent goals of the TCPA and should be approved by the Court. Accordingly, Plaintiff Kolinek respectfully requests that the Court (1) certify the proposed Settlement Class, (2) appoint him as Class Representative and his counsel as Class Counsel, (3) approve the proposed Notice plan, (4) preliminarily approve the Agreement, and (5) set a Final Approval Hearing.

## II.    BACKGROUND

### A.    Plaintiff's Allegations, Walgreens' Systems for Gathering Telephone Numbers and Making the Calls at Issue, and the TCPA.

Defendant is a national retailer and pharmacy chain with thousands of locations

3

throughout the United States.[2] Plaintiff is a Walgreens customer who filled his first prescription at a Walgreens pharmacy as many as ten years ago. (Dkt. 1 ¶ 18.) At the time, Plaintiff alleges that he provided his cellular telephone number to a Walgreens pharmacist for purposes of "verification," or in other words, to confirm his identity if another customer with the same name attempted to fill a prescription at the same store. (*Id.*)

Plaintiff alleges that in or around early 2012 he began receiving prerecorded calls on his cellular telephone reminding him to fill his prescriptions at a Walgreens pharmacy. (*Id.*) According to Plaintiff, the Calls were part of a telemarketing campaign in which Walgreens called thousands of consumers' cellular phones in an attempt to bring consumers to Walgreens pharmacies. (*Id.* ¶¶ 3, 14.) Plaintiff alleges that he and the other consumers to whom the Calls were placed never consented to receive them, but rather, that Defendant harvested their cellular phone numbers from its database of customer contact information. (*Id.* ¶¶ 5, 15, 16, 18.)

According to Plaintiff, Walgreens violated the TCPA when it placed the Prerecorded Prescription Calls to customers' cellular phones without their consent. The TCPA specifically prohibits the use of prerecorded voices in making calls to cellular phones, providing that:

> It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using . . . an artificial or prerecorded voice . . . to any telephone number assigned to . . . a cellular telephone service . . . .

47 U.S.C. § 227(b)(1)(A)(iii). The TCPA was enacted more than two decades ago in response to "[v]oluminous consumer complaints about abuses of telephone technology." *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 744 (2012). In passing the statute, Congress specifically sought to prevent "intrusive nuisance calls" to consumers that it deemed "invasive of privacy," *see id.*, and set statutory damages in the amount of $500 per violation (which may be trebled if the conduct is

---

[2]    Frequently Asked Questions, Walgreens, http://news.walgreens.com/fact-sheets/frequently-asked-questions.htm (last visited Mar. 26, 2015).

found willful) as well as provided for injunctive relief. *See* 47 U.S.C. § 227(b)(3)(A)–(C).

Ultimately, through discovery (*see* Section II.C, *infra*), Plaintiff determined that Walgreens had collected the telephone numbers called directly from customers over a period of years, most often when gathering contact information for prescription-drug purchases and refills. (Declaration of Rafey S. Balabanian ["Balabanian Decl."] ¶ 11, a true and accurate copy of which is attached as Exhibit 2.) As a part of that process, Walgreens' policy was to request that customers identify whether the telephone numbers provided were assigned to cellular or landline accounts, as Walgreens' internal databases specifically delineate between such identifications. (*Id*.) Accordingly, when Walgreens initiated its refill reminder call program in 2012, it specifically did not place reminder phone calls to any number that had been identified as assigned to a cellular account. (*Id*.) Discovery also confirmed that Walgreens provided various options for call recipients to opt out of receiving future refill reminder calls—e.g., during any call a customer could simply press "8" on their touch-tone telephone to avoid future calls. (*Id*.) Nevertheless, just a very small fraction of the customers called opted out of receiving refill reminder calls going forward; for the year just completed, the opt-out rate was 0.70% and for the entire period of the program, the opt-out rate was less than 1.5%. (*Id*.) The percentage of customers who used the Prerecorded Prescription Calls to refill their prescriptions is vastly larger—by tens of multiples—than the opt-out rate, which Walgreens would argue shows that the Prerecorded Prescription Calls are viewed by its customers as a welcome reminder service rather than nuisance telemarketing calls. (*Id*.)

**B.      The Litigation History.**

On July 3, 2013, Plaintiff filed the instant action alleging a single claim—that Walgreens violated the TCPA when it allegedly placed the Prerecorded Prescription Calls to customers'

cellular phones. (*See* Dkt. 1.) The following month, Walgreens moved to dismiss Plaintiff's complaint, arguing that (i) Plaintiff consented to receive the Calls by providing his cellular telephone number to Walgreens for verification purposes, and (ii) the Calls fell within the TCPA's "emergency purpose" exception, 47 U.S.C. § 227(b)(1)(A). (Dkt. 20 at 5–15.) On February 10, 2014, the Court dismissed Plaintiff's complaint after full briefing, holding that under the FCC's interpretation of "consent," Kolinek consented to receive the calls by providing his cellular telephone number to Walgreens at some point in the past. (Dkt. 38.)

Plaintiff thereafter filed a motion to reconsider, arguing that the mere provision of a telephone number at a specific time, for a specific purpose, did not constitute "consent" to receive calls for any purpose, at any time in the future. (Dkt. 40 at 3–7.) Plaintiff also argued that his complaint did not contain all facts necessary for Walgreens to assert a consent defense, since there was no evidence that Kolinek provided his telephone number to Walgreens "knowing" he would receive calls from Walgreens at that number in the future. (*Id.* at 7–9.) On July 7, 2014, over Walgreens' vigorous opposition (Dkt. 44), and after the filing of supplemental authority by Plaintiff (Dkts. 46, 48), the Court granted Plaintiff's motion to reconsider, holding that Walgreens was unable to assert a consent defense on a motion to dismiss based on the allegations regarding Kolinek in the complaint but that the consent defense raised factual issues for discovery. (Dkt. 51.)

On July 22, 2014, the Court heard oral argument on the remaining issue in Defendant's motion to dismiss—whether the Prerecorded Prescription Calls fell under the TCPA's "emergency purpose" exception. (Dkt. 57.) After full briefing on the issue—including multiple supplemental briefs by the Parties (*see* Dkts. 53, 54, 58, 61, 63)—the Court held that, based on the allegations in the complaint, it did not have sufficient information regarding the Prerecorded

Prescription Calls to dismiss under the emergency purpose exception. (Dkt. 66.) Nevertheless, the Court cautioned that further factual development would be necessary as to the content and nature of the Calls to determine if the emergency purpose exception applied. (*Id.* at 2.)

Soon after, Walgreens answered Plaintiff's complaint, raising more than twenty affirmative defenses. (Dkt. 68.) The Parties then began to exchange information through informal discovery related to how the Prerecorded Prescription Call program was initiated, how Walgreens obtained and stored individuals' telephone numbers, and how the calls were placed. (Balabanian Decl. ¶ 6.)

### C. Settlement Discussions, Mediations and Confirmatory Discovery.

At the same time, the Parties began to discuss the possibility of resolving the case before additional protracted litigation. Over numerous teleconferences, they talked at length about the substantive issues of the case and their perspectives on how it might be resolved. (*Id.* ¶ 7.) Eventually, these conversations led to an agreement to formally mediate the case and, on October 15, 2014, the Parties convened their first mediation with the Honorable Wayne R. Anderson (ret.) of JAMS (Chicago). (*Id.*) Over the course of the day and with Judge Andersen's guidance, the Parties were able to reach an agreement on some of the material terms of a class-wide settlement, but did not reach a complete agreement. (*Id.* ¶ 8.) Instead, the session ended with a proposed settlement offer, which Defendant countered one week later. (*Id.*) After additional discussions over the following days, on October 24, 2014, the Parties finalized the material terms of an agreement in principle to resolve the case, subject to additional (confirmatory) discovery. (*Id.* ¶ 9.)

To that end, Plaintiff served formal written discovery requests on Walgreens regarding, *inter alia*, how it had obtained customers' telephone numbers, how any alleged consent to be

7

called had been obtained, how the calls were placed, and how Walgreens maintained records of both the phone numbers and any consent to be called. (*Id.* ¶ 10.) After receiving and reviewing Walgreens' written responses and document production, Plaintiff deposed Walgreens' Rule 30(b)(6) designee and Director of Outbound Programs, Christopher Helzerman, on January 16, 2015, to further explore and understand those issues. (*Id.*)

In addition to formal written and oral discovery, the Parties agreed that Walgreens would—subject to a Protective Order (dkt. 79) and other confidentiality measures—provide records identifying the telephone numbers to which the alleged calls were made to a third party to determine which of those numbers were, in fact, assigned to cellular phones (although not identified as such in Walgreens' database) and thus fell within the proposed Settlement Class definition. (Balabanian Decl. ¶ 12.) In that way, the Parties intended to further confirm the scope of the proposed Settlement Class, ensure an appropriate plan for notifying Settlement Class Members of the settlement, and also confirm the fairness and reasonableness of the settlement. (*Id.*) In February 2015, Walgreens provided that data to third-party administrator, Kurtzman Carson Consultants ("KCC"). (*Id.* ¶ 13.) KCC organized and analyzed the data and ultimately identified the phone numbers called by Walgreens that were assigned to cellular accounts. (*Id.*) However, due to a discrepancy in the manner in which the data was originally extracted from Walgreens' databases, the Parties determined to re-run the analysis for a second time. (*Id.*) Upon the conclusion of the second analysis, KCC determined that there were approximately 9.2 million cellular telephone numbers to which Walgreens placed Calls during the relevant period of time. (*Id.* ¶ 14.)

Notwithstanding their agreement in principal regarding the key terms of the settlement (i.e., fund size, prospective relief, etc.), the Parties were at odds about other aspects of the

8

settlement, namely the plan for providing notice to the Settlement Class. As they could not reach a consensus on that issue, the Parties determined to proceed with a second mediation before Judge Andersen, during which they were able to resolve the remaining issues. (*Id*. ¶ 15.)

With that, the Parties were satisfied that the terms of the proposed settlement were fair, reasonable, and adequate, and proceeded with finalizing their written Agreement. (*Id*.¶ 16.) And, on March 26, 2015, the Parties executed the Agreement now before the Court. (*Id*.)

## III.    TERMS OF THE SETTLEMENT

A copy of the Settlement Agreement is attached as Exhibit 1. The key terms of the Agreement are summarized as follows:

**A.    Class Definition.** The settlement class ("Settlement Class") is defined as "all individuals in the United States to whom Walgreens placed a Prerecorded Prescription Call to their cellular telephone." (Agreement ¶ 1.30.) A "Prerecorded Prescription Call" is any prerecorded voice prescription refill reminder call placed to a cellular telephone by Walgreens and/or any third parties acting on its behalf. (*Id.* ¶ 1.24.) As set forth in the proposed preliminary approval order, the ending date for membership in the Settlement Class will be the date the Court grants Preliminary Approval.

**B.    Monetary Relief.** Defendant has agreed to create an $11 million non-reversionary Settlement Fund, from which all Settlement Class Member claims will be paid. (*Id.* ¶ 1.32.) After settlement administration and notice expenses, an incentive award, and attorneys' fees have been paid, each Settlement Class Member who submits an approved claim will receive a *pro rata* share of the Settlement Fund. (*Id.* ¶ 2.1(b).) Any unclaimed funds will be distributed to approved claimants if practical or otherwise as directed by the Court upon application made by counsel. (*Id.* ¶ 2.1(e).)

**C.**    **Prospective Relief.** Defendant has agreed to implement procedures to ensure that only persons who provide prior express consent receive Prerecorded Prescription Calls to their cellular phones, including (i) updating its electronic database to identify customer telephone numbers are assigned to either a landline or wireless phone, (ii) implementing procedures to confirm the accuracy of customers' communication preferences, and (iii) providing customers the option to elect to receive, and unsubscribe from, the Prerecorded Prescription Calls online, during the in-store checkout process, over the phone, and by otherwise contacting Walgreens. (*Id.* ¶ 2.2(a)–(c).)

**D.**    **Payment of Settlement Administration Expenses, Including Notice.** Defendant has agreed to pay from the Settlement Fund all reasonable Settlement Administration Expenses, including those related to providing Notice. (*Id.* ¶ 1.28.)

**E.**    **Compensation for Class Representative and Payment of Attorneys' Fees.** Defendant has agreed to pay from the Settlement Fund, subject to Court approval, an incentive award of $5,000 to Kolinek in recognition of his service as Class Representative (*id.* ¶ 8.3) and an award of reasonable attorneys' fees and expenses to Class Counsel, as may be awarded by the Court. With no consideration from Defendant, Class Counsel has determined to seek no more than thirty-five percent (35%) of the Settlement Fund in fees. (*Id.* ¶ 8.1.)

**F.**    **Release of Liability.** In exchange for the monetary and prospective relief described above, Defendant will be released, acquitted, and forever discharged from any and all claims relating to the alleged making of Prerecorded Prescription Calls to members of the Settlement Class. (*See id.* ¶¶ 1.25–1.27, 3.)

## IV.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES.

Plaintiff respectfully requests that the following Settlement Class be certified for

settlement purposes: "all individuals in the United States to whom Walgreens placed a Prerecorded Prescription Call to their cellular telephone," through the date the Court grants Preliminary Approval of the settlement. (*Id.* ¶ 1.30.)

Before granting Preliminary Approval, the Court must determine that the proposed Settlement Class is appropriate for certification by ensuring that it meets the requirements of Rule 23(a) and fits into one of the three subjections of Rule 23(b). *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 621 (1997); *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 340–345 (N.D. Ill. 2010) (citations omitted); *see also* Manual for Complex Litigation § 21.632 (4th ed. 2004). Rule 23(a) requires that (1) the proposed settlement is so numerous that joinder of all individual class members is impracticable (numerosity); (2) there are questions of law or fact common to the proposed settlement class (commonality); (3) plaintiff's claims are typical of those of the class (typicality), and (4) the plaintiff and class counsel will adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a)(1)–(4); *In re AT & T*, 270 F.R.D. at 340–44. In addition, where—as here—certification is sought under Rule 23(b)(3), the proponent of class certification must show (1) that common questions of law or fact predominate over questions affecting only individual class members (predominance), and (2) that a class action is superior to other available methods of resolving the controversy (superiority). Fed. R. Civ. P. 23(b)(3); *In re AT&T*, 270 F.R.D. at 344–45.

As described in detail below, the proposed Settlement Class satisfies all of these prerequisites and should therefore be certified.

### A.    The Settlement Class is Sufficiently Numerous.

Rule 23(a)'s first requirement—numerosity—is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *In re AT & T*, 270 F.R.D.

at 341; *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 250 (N.D. Ill. 2014) (citation

omitted). Although there is no "magic number" at which joinder becomes impracticable, the

requirement of numerosity is usually met when the class is comprised of forty or more persons.

*See Birchmeier*, 302 F.R.D. at 250; *Chandler v. Sw. Jeep-Eagle, Inc.*, 162 F.R.D. 302, 307 (N.D.

Ill. 1995) (citations omitted) (finding proposed classes of 50 and 150 persons numerous). Here,

there is no question that the Settlement Class is sufficiently numerous, because Defendant's

records indicate that it placed the Calls to approximately 9.2 million individuals.[3] (Balabanian

Decl. ¶ 18.) Accordingly, Rule 23(a)'s numerosity requirement is satisfied.

### B. Settlement Class Members Share Common Questions of Law and Fact.

Rule 23(a)'s second requirement—commonality—is satisfied when there are "questions

of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *Suchanek v. Sturm Foods, Inc.*, 764

F.3d 750, 755–56 (7th Cir. 2014). For certification, class members must share "a common

contention . . . capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541,

2551 (2011); *Birchmeier* 302 F.R.D. at 250. "Where the same conduct or practice by the same

defendant gives rise to the same kind of claims from all class members, there is a common

question." *Suchanek*, 764 F.3d at 756 (finding commonality satisfied where all class members'

claims were derived from the same conduct—the deceptive marketing and packaging of coffee

pods). In the TCPA context, a pattern of conduct that may give rise to common questions is the

placement of calls using an artificial or prerecorded voice. *See, e.g.*, *Birchmeier*, 302 F.R.D. at

---

[3]     Although not explicitly required under Rule 23, a party seeking class certification must also show
that the class is "sufficiently definite or ascertainable." *Birchmeier*, 302 F.R.D. at 245 (citing *Jamie S. v.
Milwaukee Pub Sch.*, 668 F.3d 481, 493 (7th Cir. 2012)). Ascertainability is met when class members can
be identified based on "precise, objective criteria." *G.M. Sign, Inc. v. Grp. C Commc'ns, Inc.*, No. 08-cv-
4521, 2010 WL 744262, at *4 (N.D. Ill. Feb. 25, 2010) (citation omitted). Because Settlement Class
membership here is based on straightforward criteria—receipt of a Prerecorded Prescription Call from
Walgreens on one's cellular telephone number (Agreement ¶ 1.31)—and Defendant has provided a list of
all individuals who satisfy such criteria, the ascertainability requirement is satisfied as well.

251 (finding common questions where all class members "received the same calls . . . using the same artificial or prerecorded voice technology"). And as the Supreme Court has noted, "even a single common question will do." *Dukes*, 131 S. Ct. at 2556 (internal quotations and alterations omitted).

Here, the proposed Settlement Class satisfies the commonality requirement of Rule 23(a). Kolinek alleges that Walgreens engaged in a uniform practice of placing the Prerecorded Prescription Calls to individuals without first ensuring that it had prior express consent to do so. In Plaintiff's view, this standardized conduct raises several issues of fact and law common to the Settlement Class, including: (1) whether Walgreens placed calls to cellular telephones using an artificial or prerecorded voice, (2) whether Walgreens obtained consent to place the Prerecorded Prescription Calls, and (3) whether the Calls fall into the TCPA's emergency purpose exception. Because the answers to those questions depend solely on Defendant's identical conduct towards every member of the Settlement Class, the Settlement Class's claims will rise and fall on the resolution of the same common questions. *See Suchanek*, 764 F.3d at 757 (finding the commonality requirement satisfied when "[plaintiff's] claims and those of the class [he] would like to represent all derive from a single course of conduct by [Defendant]"); *see also Birchmeier*, 302 F.R.D. at 251 (finding commonality satisfied when "there [was] a common injury, resulting from receipt of the allegedly offending calls, not to mention common questions regarding the liability of the defendants who did not themselves place the calls."). Accordingly, the commonality requirement is satisfied.

### C.   Kolinek's Claims are Typical of the Settlement Class Members' Claims.

The third requirement of Rule 23(a)—typicality—is satisfied when the named plaintiff's claims or defenses "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3);

*Birchmeier*, 302 F.R.D. at 251; *In re AT & T*, 270 F.R.D. at 342 (citation omitted). The typicality requirement is closely related to commonality, *see Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998) (citation omitted), and is satisfied when the plaintiff's claims arise from the defendant's same practice or course of conduct and are premised on the same legal theory as the class members' claims. *Id.*; *see also In re AT & T*, 270 F.R.D. at 342. The typicality requirement is viewed permissively, and is satisfied as long as the plaintiff's claims have the "same essential characteristics" as the class's. *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009).

Here, although Plaintiff's claims need only have the "same essential characteristics," *see id.*, to those of the other Settlement Class Members, Kolinek's claims are substantially identical. He alleges that he received Prerecorded Prescription Calls from Walgreens in violation of the TCPA. In the end, Kolinek received the same Calls, made by the same Defendant, that were placed in the same manner, and "[t]hat is enough for Rule 23(a)(3) purposes." *In re AT & T*, 270 F.R.D. at 342 (citation omitted); *see also Birchmeier*, 302 F.R.D. at 251 (finding that "because the named plaintiffs received the same type of call as the other class members, their claims are typical of those of the class."). Accordingly, Kolinek's claims are unquestionably typical of those of the Settlement Class and his pursuit of his individual claims will necessarily advance the interests of the absent Settlement Class Members.

> **D.  Plaintiff and Class Counsel Will Adequately Represent the Settlement Class.**

The fourth and final requirement of Rule 23(a)—adequacy—is satisfied where "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Birchmeier*, 302 F.R.D. at 252; *Otero v. Dart*, No. 12-cv-3148, 2014 WL 4344029, at *7 (N.D. Ill. Sept. 2, 2014). There are two components to the adequacy inquiry: "(1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members,

with their differing and separate interests, and (2) the adequacy of the proposed class counsel."

*Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011), *as modified* (Sept. 22, 2011) (citing *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 598 (7th Cir. 1993)).

As it relates to the class representative, courts must determine whether his interests in the outcome are in harmony with the interests of the class members he seeks to represent. *See In re AT & T*, 270 F.R.D. at 343. And as it relates to class counsel, courts consider their experience litigating similar actions and dedication of time and resources to the case. *See id.* at 344.

Here, both Kolinek, as proposed Class Representative, and Edelson PC, as proposed Class Counsel, will fairly and adequately represent the interests of the proposed Settlement Class. First, Kolinek's interest in redressing Defendant's alleged violation of the TCPA is identical to the interests of all other Settlement Class Members: they all suffered the same alleged injury when they received the Prerecorded Prescription Calls and thus, have the exact same claims. Moreover, Kolinek has worked alongside proposed Class Counsel throughout the pendency of this Action—reviewing the complaint and other documents, equipping his attorneys with the information needed to pursue his claims, and responding to requests for additional information throughout the settlement process—further confirming his dedication to vigorously representing the interests of the Settlement Class. (*Id.* ¶ 20.)

In addition, and as explained more fully in Section V below, proposed Class Counsel are experienced members of the plaintiffs' bar who have built their practice litigating similarly complex consumer class actions, including many under the TCPA. (*See* § V, *infra*; Balabanian Decl. ¶ 21.) Indeed, Plaintiff's counsel have regularly been found to be adequate representatives in TCPA actions in this District, including by this Court. *See Birchmeier*, 302 F.R.D. at 252 (finding that attorneys at Edelson PC will adequately represent the class); *Rojas v. Career Educ.*

*Corp.*, No. 10-cv-5260, Dkt. 55 at 3 (N.D. Ill.) (finding that "attorneys [at Edelson PC] are competent and capable of exercising the responsibilities of Class Counsel."); *Miller v. Red Bull N. Am., Inc.*, No. 12-cv-4961, Dkt. 47 at 4 (N.D. Ill.) (appointing attorneys at Edelson PC as class counsel); *Lozano,* No. 09-cv-06344, Dkt. 64 (N.D. Ill.) (same).

Moreover, proposed Class Counsel have devoted substantial resources to the prosecution of this Action—by, for example, investigating the claims of Kolinek and the Settlement Class, aggressively pursuing Plaintiff's claims through a motion to reconsider, maintaining an ongoing dialogue with Defendant, conducting a formal mediation, ultimately reaching a resolution of this Action, performing extensive discovery and engaging in additional settlement discussions and a second mediation to ensure that the settlement is fair and reasonable in light of that discovery— and they will continue to do so throughout the Action's pendency. (Balabanian Decl. ¶ 22.)

Accordingly, Kolinek and his counsel have demonstrated their commitment to vigorously representing the Settlement Class and neither have interests antagonistic to the Settlement Class. The adequacy requirement is undoubtedly met.

### E. The Proposed Settlement Class Satisfies the Requirements of Rule 23(b)(3).

In addition to meeting the four requirements for certification under Rule 23(a), the proposed Settlement Class also satisfies the two additional requirements imposed under Rule 23(b)(3)—predominance and superiority. *See* Fed. R. Civ. P. 23(b)(3); *In re AT & T*, 270 F.R.D. at 345. The purpose of these additional requirements is to "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (citing Fed. R. Civ. P. 23 advisory committee's notes (1966)); *Birchmeier*, 302 F.R.D. at 255. As explained below, the requirements of predominance and superiority are readily met.

### 1.    Common questions of law and fact predominate.

While commonality under Rule 23(a)(2) confirms the presence of common questions of law or fact, the predominance requirement of Rule 23(b)(3) requires that those common questions qualitatively "represent a significant aspect of [the] case." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012), *reh'g denied* (Feb. 28, 2012) (citation omitted). Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623; *In re AT & T*, 270 F.R.D. at 345. A class is often considered "cohesive" when a defendant has engaged in standardized conduct that is identical toward each class member. *See In re AT & T*, 270 F.R.D. at 345. And when common evidence can be used to prove a class's claims, the predominance requirement is generally satisfied. *See Messner*, 669 F.3d at 818–19. The predominance analysis begins with the elements of the underlying cause of action, *see id.* at 815 (citing *Erica P. John Fund, Inc. v. Halliburton Co.,* 131 S. Ct. 2179, 2184 (2011)), which in this case prohibits the placement of prerecorded calls to cellular telephones absent prior express consent or an emergency purpose. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

Here, the common factual and legal questions detailed in Section IV.B *supra*—e.g. whether Walgreens placed Prerecorded Prescription Calls to cellular telephones using a prerecorded voice, whether Walgreens obtained consent, and whether the Calls fall within the TCPA's emergency purpose exception—are the pillars of Plaintiff's and the Settlement Class Members' TCPA claims. Thus, because the Settlement Class Members all received the same calls, made by the same entity, and in the same manner, common questions predominate in satisfaction of Rule 23(b)(3). *See, e.g., Birchmeier*, 302 F.R.D. at 253 ("defendants' contention about calculation of individual damages is a non-issue in terms of predominance. Plaintiffs are

asking only for statutory damages, which eliminates individual variations.") (citations omitted).

## 2. A class action is the superior method of adjudicating this controversy.

Finally, Rule 23(b)(3) requires that a class action is the superior method of "fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3)(B); *Birchmeier*, 320 F.R.D. at 255; *Subedi v. Merchant*, No. 09-cv-4525 2010 WL 1978693, at *6 (N.D. Ill. May 17, 2010). Class treatment is particularly well suited for claims resulting from a pattern of standardized conduct because it enables the court to "determine the legality of [an] alleged practice and procedure in one proceeding." *Otero*, 2014 WL 4344029, at *9; *see also Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 444 (N.D. Ill. 2008) (citations omitted). A class action is also superior in cases where individual damages are relatively low, because it allows individuals to aggregate their claims, overcoming the "problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *See Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir. 1997).

Here, a class action is the superior method of resolving the controversy because it allows the Court to swiftly determine the legality of the Prerecorded Prescription Call program in a single proceeding, generating a uniform result that will apply to all similarly situated persons. Moreover, a class action is superior because it allows the Settlement Class Members to aggregate relatively modest individual claims worth just $500 in statutory damages (or, at most, $1,500 in the case of willful conduct, which there is no evidence of in this case). *See* 47 U.S.C. § 227(b)(3)(C). By comparison to the modest relief available, the cost of litigating TCPA claims on an individual basis—including the cost of discovery, motion practice, and trial—would be prohibitively expensive. In addition, individual claims would clog the courts with an influx of separate actions, further delaying the possibility of relief and undermining Rule 23's policy of

judicial efficiency. *See Birchmeier*, 302 F.R.D. at 255 ("In this case, plaintiffs have alleged that defendants chose to violate the TCPA on a very large scale by targeting a million or more people with inappropriate calls. Individual litigation of the claims of each individual would not be a superior or efficient way to resolve the claims.").

By providing swift resolution of common claims in a way that would not be possible individually, the superiority requirement is satisfied. Because the requirements of Rule 23(a) and 23(b)(3) are satisfied, the proposed Settlement Class should be certified for settlement purposes.

## V.     PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL.

When certifying a class, Rule 23 requires that a court appoint counsel who will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B), (2), (4); *Harris v. Circuit City Stores, Inc.*, No. 07-cv-2512, 2008 WL 400862, at *11 (N.D. Ill. Feb. 7, 2008) (citation omitted). In appointing class counsel, the court must consider (1) the work counsel has done in identifying or investigating potential claims; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the case; (3) counsel's knowledge of the applicable law, and (4) the resources class counsel has committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv); *Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489, 498 n.7 (7th Cir. 2013).

Here, proposed Class Counsel readily satisfy the criteria of Rule 23(g). First, Class Counsel have devoted—and will continue to devote—a significant amount of time, effort and resources to this litigation, beginning with their initial investigation of Plaintiff's allegations and ending with significant confirmatory discovery, mediations and settlement discussions. (*See, e.g.,* Balabanian Decl. ¶ 22.) Second, proposed Class Counsel have extensive experience in similar complex litigation and have been appointed class counsel in numerous TCPA class actions, many

of them in this District and one before this Court. (*See* Firm Resume, a true and accurate copy of

which is attached as Exhibit A to the Balabanian Decl.); *see also Birchmeier*, 302 F.R.D. at 256

("appoint[ing] Jay Edelson of Edelson PC . . . as class counsel"); *Red Bull*, No. 12-cv-04961

(N.D. Ill.) (serving as lead counsel in $6 million text spam settlement); *Rojas*, No. 10-cv-05260

(N.D. Ill.) (serving as lead counsel in $20 million text spam settlement); *Lozano,* No. 09-cv-

06344 (N.D. Ill.) (serving as lead counsel in $16 million text spam settlement). They have

developed an in-depth understanding of the TCPA and have successfully litigated emerging

issues that continue to redefine its boundaries. *See, e.g.*, *Satterfield*, 569 F.3d 946 (9th Cir. 2009)

(securing landmark ruling applying the TCPA to text messages); *Ellison*, No. 11-cv-5935, Dkt.

73 at 9 ("[Attorneys at Edelson PC] specialize in litigating consumer class actions and have

pioneered the application of the TCPA to text-messaging technology, litigating some of the

largest consumer class actions in the country on this issue.").

For these reasons, the Court should appoint Jay Edelson, Rafey S. Balabanian, Ryan D.

Andrews and Benjamin H. Richman of Edelson PC as Class Counsel.

## VI.      THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL.

Rule 23(e) requires judicial approval of a proposed class action settlement based on a

finding that the agreement is "fair, reasonable, and adequate," *see* Fed. R. Civ. P. 23(e)(2);

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006), which

involves a well established two-step process. *Armstrong v. Bd. of Sch. Directors of City of*

*Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) *overruled on other grounds by Felzen v. Andreas*,

134 F.3d 873 (7th Cir. 1998); *In re Northfield Labs., Inc. Sec. Litig.*, No. 06-cv-1493, 2012 WL

366852, at *5 (N.D. Ill. Jan. 31, 2012). The first step—preliminary approval—assesses whether

the proposed settlement falls "within the range of possible approval," *see Armstrong*, 616 F.2d at

314, "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Id.* And once preliminary approval is granted, class members are notified of the settlement and the court and parties proceed to the second step—the final fairness determination. *Id.*

While "[f]ederal courts naturally favor the settlement of class action litigation," *In re AT & T*, 270 F.R.D. at 345 (quoting *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)), a multi-factor test is used to determine whether a proposed settlement is fair, reasonable, and adequate. *Synfuel*, 463 F.3d at 653 (citing *Isby*, 75 F.3d at 1199). Specifically, courts consider the following five factors: (1) the strength of the plaintiff's case compared to the amount of the settlement offer, (2) the length, complexity, and expense of further litigation, (3) the amount of opposition to the settlement (4) the opinion of competent counsel, and (5) the stage of the proceedings and amount of discovery completed. *Id.* (citing *Isby*, 75 F.3d at 1199).[4] Although these factors are ultimately assessed at the final fairness hearing, a summary version of the analysis takes place at the preliminary approval stage. *Kessler v. Am. Resorts Int'l*, No. 05-cv-5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314).[5]

Here, each factor supports the Settlement Agreement, which this Court should find "well within the range of possible approval."

---

[4]      The third factor—the amount of opposition to the settlement—is not typically assessed at the preliminary approval stage as notice of the proposed settlement has not yet been administered. *See In re AT & T*, 270 F.R.D. at 349. Accordingly, it is not considered here.

[5]      In addition to these factors, the Seventh Circuit recently identified several "red flags" that may alert courts to a problematic settlement, including: (1) the failure to establish the total class recovery, (2) the reversion of un-awarded attorneys' fees to the defendant, (3) overly complicated claim forms, and (4) coupon-based relief. *Eubank v. Pella Corp.*, 753 F.3d 718, 723–26 (7th Cir. 2014). None of these warning signs are present here, as the Agreement (1) creates an $11 million settlement fund, (2) with no funds reverting to Walgreens, (3) and that with the completion of a short and simple claim form (which requires only basic contact information and the cellular telephone number at which claimants affirm they received the Calls), (4) Settlement Class Members will receive real and immediate cash relief. (*See* Agreement ¶ 1.32, 2.1, Exs. B–D; § III.B, *supra*.)

A. **The Strength of Plaintiff's Case, Balanced Against the Benefits of Settlement, Favors Preliminary Approval.**

The first and most important factor in assessing a settlement's fairness is the strength of the plaintiff's case compared to the settlement offer. *Synfuel*, 483 F.3d at 653. The analysis begins by making a "ball park valuation" of the value of continued litigation to the class, which is considered in light of associated risks of continued protracted litigation. *See In re AT & T*, 270 F.R.D. at 347 (citing *Donovan v. Estate of Fitzsimmons,* 778 F.2d 298, 309 (7th Cir. 1985)). In addition, because a settlement is a compromise, "courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T*, 270 F.R.D. at 347 (quoting *Isby,* 75 F.3d at 1200) (internal quotations omitted).

First, the settlement—in terms of tangible monetary relief and improved customer telephone contact practices going forward—is strong, both compared to other similar TCPA actions and when viewed in light of the risks of protracted litigation. In terms of comparables, here the monetary relief of approximately $20[6] per Settlement Class Member is consistent with other settlements in this area of the law. As noted above, in the prototypical TCPA case—where individuals alleged they received unsolicited telemarketing calls from entities with which they have no connection or relationship—class members generally receive as much as $200. *See, e.g., Kramer*, No. 10-cv-2722, Dkt. 148 (providing for a cash payment of $100 to each class member); *Weinstein*, No. 06-cv-00484, Dkt. 93 (providing for a cash payment of $150 to each class member); *Satterfield,* No. 06-cv-2893, Dkt. 132 (providing for a cash payment of $175 to each class member); *Lozano*, No. 09-cv-6344, Dkt. 65 (providing for a cash payment of $200 to

---

[6]     As added protection, the Parties have accounted for the unlikely event that, based on the rate of claims, the per class member distribution would be less than $15, by allowing Settlement Class Members a second opportunity to opt-out after a determination as to the amount of individual recoveries is made. (*See* Agreement ¶ 2.1(f).)

each class member). In "mass calling" cases—where tens of millions of individuals and hundreds or even billions of calls are at issue—class members generally receive between $20 to $40. *See In re Capital One TCPA Litig.*, 2015 WL 605203, at *6 (providing for a cash payment of $34.60 to each class member)[7]; *Bank of Am. Corp.*, No. 11-cv-02390 (N.D. Cal.) (same). And finally, "direct relationship" TCPA cases, like the instant one, where the person called voluntarily provided their cellular telephone number to the caller, generally result in coupon settlements or small cash awards. *See Kazemi*, No. 09-cv-5142, Dkt. 94 (providing for a $25 voucher to each class member); *In re Jiffy Lube*, No. 11-md-2261, Dkt. 97 (providing for a $20 voucher, which could be redeemed for $15 cash after nine month waiting period).

As it relates to Walgreens' defenses and the relationship of the Parties, the strength of the settlement becomes ever more apparent. On the issue of consent, the Court has not only once dismissed Plaintiff's claims based on his voluntarily provision of his telephone number to Walgreens (Dkt. 51), but upon reconsideration, held that Plaintiff's claim survives because it "is required to take his allegation as true," but that the veracity of such allegations "must await factual development." (Dkt. 51 at 8; *see also* Dkt. 66 at 2 ("By this comment the Court intended to convey that although the complaint's relatively spare allegations regarding the pertinent facts were insufficient to establish the defense, further factual development might require a different conclusion.").) Having conducted discovery, there is no question that Walgreens collected the phone numbers for this calling program directly from its customers at the time they sought to fill (or refill) prescriptions from a Walgreens pharmacist. (*See* Balabanian Decl. ¶ 11.) Thus, there

---

[7]    It bears noting that in *In re Capital One*, where there were several (arguably harassing) calls to each of the class members seeking to collect on debts owed to the defendant, Judge Holderman found that "the $34.60 per claimant recovery…[did] not seem so miniscule in light of the fact that class members did not suffer any actual damages beyond a few unpleasant phone calls, which they received ostensibly because they did not pay their credit card bills on time." *See* 2015 WL 605203, at *6.

exists a "direct relationship" between Walgreens and the individuals who received the Calls (i.e.,

their customers), and some courts have held that where such a relationship exists and the called

party voluntarily provided their cellular phone number to the caller, then that constitutes express

consent to be called. *See Roberts v. Paypal, Inc.*, No. 12-cv-0622, 2013 WL 2384242, at *5

(N.D. Cal. May 30, 2013) (holding that the prior provision of a cell phone number to the caller

for any reason constitutes prior express consent to be called); *Ryabyshchuck v. Citibank (S.D.)*

*N.A.,* No. 11-cv-1236, 2012 WL 5379143, at *3 (S.D. Cal. Oct. 30, 2012); *Baird v. Sabre Inc.*,

No. 13-cv-999, 2014 WL 320205, at *2 (C.D. Cal. Jan. 28, 2014).

With respect to Walgreens' defense that the Calls fall under the emergency purpose

exception to the TCPA, evidence demonstrates that Walgreens may actually be able to claim that

defense given that the Calls were placed to individuals who had prescriptions for maintenance

medications (such as cholesterol lowering medications, blood pressure medications, diabetes

medications, and medications for chronic pulmonary issues), the continuation of which are vital

to the continued health of the patient. (Balabanian Decl. ¶ 25). And this is all against the

backdrop of Walgreens' policy of not calling numbers assigned to cellular accounts without

consent, and the fact that less than 1.5 % of all Settlement Class Members called opted out of

receiving future calls during the entire three year life of the program (and less than 0.7% opted

out in the past year). Thus, it is at least arguable that Walgreens could ultimately prevail on its

defenses.

Finally, the monetary benefit to the Settlement Class is especially approvable when

viewed in light of some individuals' positive response to the Calls. Indeed, during his Rule

30(b)(6) deposition, Christopher Helzerman noted that many individuals have reacted positively

to Walgreens' calling campaign and even called to opt *in* to the program after accidentally opting

out. (Balabanian Decl. ¶ 24.) That's likely because, unlike most telemarketing calls, the

Prerecorded Prescription Calls had the additional purpose of helping individuals maintain their

health. (*Id.*) And in cases like this, where many class members benefit from the alleged unlawful

conduct, obtaining class certification and prevailing on the merits may be "extraordinarily

difficult," making approval of a classwide settlement all the more appropriate. *See DeHoyos v.*

*Allstate Corp.*, 240 F.R.D. 269, 290 (W.D. Tex. 2007) (collecting cases and finding a settlement

weighs in favor of preliminary approval when some class members benefit from the alleged

unlawful conduct since litigation on the merits may preclude certification).[8]

Even if Plaintiff cleared those initial hurdles, Walgreens would undoubtedly challenge a

motion for class certification, arguing *inter alia* that the consent defense raises individual factual

issues, further delaying the possibility of relief to the Settlement Class. (Balabanian Decl. ¶ 26.)

Further still, if the case proceeded to trial, other roadblocks—such as additional discovery and

procurement of expert testimony—would stand between the Settlement Class and ultimate

recovery. (*Id.*) And in light of the amount at stake and its reputational interests, Walgreens is

nearly certain to appeal any judgment in favor of the class, thus further delaying recovery. (*Id.*)

Despite these substantial uncertainties, the settlement provides real and immediate cash relief—

entitling each Settlement Class Member to a *pro rata* share of the $11 million Settlement Fund.

(Agreement ¶ 2.1(b).) Just as importantly, the settlement provides meaningful prospective relief,

including new procedures to ensure that only those persons who provide prior express consent

receive Prerecorded Prescription Calls in the future. (*Id.* ¶ 2.2(a)–(d).) Thus, in light of the

numerous risks of further litigation, the relief afforded by the settlement should be viewed as

---

[8]     This view is also consistent with recent orders approving TCPA settlements offering similar individual recoveries despite the fact that, unlike here, the calls provided no benefit to class members, were far more prevalent in number, and were (arguably) intended to harass their recipients. *See, e.g., In re Capital One*, 2015 WL 605203 (finally approving TCPA settlement providing claiming class members approximately $34 each as a result of receiving dozens of debt collection calls each).

significant, and weighs in favor of preliminary approval.

**B.     The Expected Duration, Complexity, and Expense of Further Litigation Weigh in Favor of Preliminary Approval.**

Preliminary approval is also favored in cases such as this one, where "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). As noted above, should litigation proceed, further discovery will undoubtedly be needed to develop the case, which will significantly drive up the cost of the litigation. *See In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 964 (N.D. Ill. 2011) (noting that "costs associated with discovery in complex class actions can be significant"). As this Court recognized in its Order denying the remaining portion of Defendant's motion to dismiss, while the "relatively spare" allegations of the complaint precluded dismissal under Walgreens' consent and emergency purpose defenses, further factual development—concerning the content of the Calls and the circumstances under which consumers provided their telephone numbers—would be needed to test Plaintiff's allegations. (Dkt 66 at 2.) Beyond that—and as discussed above— Walgreens would undoubtedly oppose Plaintiff's motion for class certification and appeal any decision in Plaintiff's favor. (*See* Balabanian Decl. ¶ 26.) If anything, "this drawn-out, complex, and costly litigation process . . . would provide [Settlement] Class Members with either no in-court recovery or some recovery many years from now…." *In re AT & T Sales Tax Litig.*, 789 F. Supp. 2d at 964. The proposed settlement, in contrast, avoids this long and winding path, putting an immediate end to Walgreens' alleged conduct and placing cash in the hands of Walgreens' customers.

Because the settlement avoids protracted, costly, and complex litigation, the second factor also weighs in favor of preliminary approval.

26

### C. The Opinion of Competent Counsel Supports Preliminary Approval.

The third factor examines the opinion of competent counsel as to whether a proposed settlement is fair, reasonable, and adequate. *Isby*, 75 F.3d at 1200. In assessing the qualifications of class counsel under this factor, a court may rely upon affidavits submitted by class counsel as well as its own observations of class counsel during the litigation. *Id.*

Here, and as described in the declaration of Rafey S. Balabanian, proposed Class Counsel—who have been recognized as "specialize[d] in litigating consumer class actions and hav[ing] pioneered the application of the TCPA to text-messaging technology," *see Ellison*, No. 11-cv-5935, Dkt. 73 at 9—believe that the instant Agreement is fair, reasonable, and adequate for the reasons explained in Section V, *supra*. As Class Counsel believes that the settlement provides significant relief for individuals who may otherwise be left without a remedy, this factor weighs in favor of preliminary approval as well.

### D. The Stage of the Proceedings and Significant Amount of Discovery Completed Support Preliminary Approval.

Finally, the last factor concerns the stage of the proceedings and amount of discovery completed at the time the settlement is reached. *Synfuel*, 463 F.3d at 653. This factor is significant because "it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07-cv-2898, 2011 WL 3290302, at *8 (N.D. Ill. July 26, 2011) (citing *Armstrong,* 616 F.2d at 325). It is well recognized that the court and parties may be equipped with sufficient information even when no formal discovery has taken place if the parties have engaged in considerable informal discovery. *In re AT & T Sales Tax Litig.*, 789 F. Supp. 2d at 966; *Am. Int'l*, 2011 WL 3290302, at *8.

The procedural posture of this Action further supports preliminary approval. Indeed, this case has now been underway for more than a year and a half. Through contentious litigation—

resulting in this Court's reversal of its initial dismissal— and heated settlement talks, the Parties have assembled the information necessary to fully assess the strength of Plaintiff's claims. (Balabanian Decl. ¶ 27.) And after the Court denied the remaining portion of Walgreens' motion to dismiss (Dkt. 66), the Parties began to actively engage in informal discovery, exchanging information regarding the inner-workings of Walgreens' Prerecorded Prescription Call program, including how telephone numbers were collected, how they were maintained, and how the Prerecorded Prescription Calls were placed. (*See id.* ¶ 6.) Even after reaching the settlement, the Parties agreed to participate in additional formal written discovery as an added safeguard to ensure the settlement's fairness and Plaintiff deposed Walgreens' Director of Outbound Programs, Christopher Helzerman. (*See id.* ¶¶ 9–11.) As a result of that discovery, the Parties determined to participate in a second mediation with Judge Andersen to further enhance the settlement and ensure its fairness and reasonableness. (*See id.* ¶ 15.)

Given these added measures the Parties undertook to ensure the settlement's fairness— and the formal and informal discovery that has occurred throughout this Action—the stage of the proceedings and amount of discovery completed also support preliminary approval.

## VII.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED.

Once a class has been certified, due process and Rule 23 require that the court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (explaining that "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort"); *Schulte*, 805 F. Supp. 2d at 595. Similarly, Rule 23(e)(1) calls for notice to be provided in a "reasonable manner to all class members who would be bound

28

by the proposal." Fed. R. Civ. P. 23(e)(1); *In re Northfield*, 2012 WL 366852, at *7. The notice must contain specific information in plain, easily understood language, including the nature of the action and the rights of class members. Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii); *see In re AT & T*, 270 F.R.D. at 352. This is the case here, where the format and language of each form of Notice have been carefully drafted in straightforward, easy-to-read language, and all information required under Rule 23 is present. All forms of Notice are attached to the Agreement as Exhibits 1-B, 1-C, and 1-D.

To ensure that the Notice satisfies the requirements of due process and Rule 23 in both form and content, the Parties have agreed to a comprehensive notice plan developed by professional Settlement Administrator Kurtzman Carson Consultants, LLC ("KCC"). (Agreement ¶ 1.29.) First, relying on the Settlement Class list provided by Walgreens—which includes the telephone numbers, e-mail addresses (in some instances), and mailing addresses of all individuals to whom Walgreens has placed Prerecorded Prescription Calls—KCC will send direct notice to the Settlement Class by e-mail (where e-mails are available) or postcard. (*Id.* ¶ 4.2(a)–(b).) The Notice will direct Settlement Class Members to the Settlement Website, www.prescriptioncallsettlement.com, which contains electronic versions of the claim form that can be submitted online, important court documents, and answers to frequently asked questions. (*Id.* ¶ 4.2(d), Exhibits B-D.)

Finally, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and no later than ten days after filing the Agreement with the Court, Defendant will cause to be served notice of the Agreement upon the Attorney General of the United States, the Attorneys General of each state, and any other required government officials. (*Id.* ¶ 4.4(e).)

Because the proposed notice plan effectuates direct notice to all Settlement Class

Members identified by Defendant's records, reaches other potential Settlement Class Members through the Settlement Website, and fully apprises Settlement Class Members of their rights, it comports with the requirements of due process and Rule 23. Consequently, the Court should approve the Parties' proposed notice plan.

## VIII.  CONCLUSION

For the reasons discussed above, Plaintiff Robert Kolinek respectfully requests that this Court enter an order (1) certifying the proposed Settlement Class for settlement purposes, (2) naming Plaintiff as Class Representative, (3) appointing Jay Edelson, Rafey S. Balabanian, Ryan D. Andrews and Benjamin H. Richman of Edelson PC as Class Counsel, (4) granting preliminary approval to the settlement, (5) approving the proposed notice plan, (6) scheduling a final fairness hearing, and (7) providing such other and further relief as the Court deems reasonable and just.

Respectfully submitted,

**ROBERT KOLINEK**, individually and on behalf of all others similarly situated,

Dated: April 7, 2015

By: /s/ Rafey S. Balabanian
    One of Plaintiff's attorneys

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Ryan D. Andrews
randrews@edelson.com
Benjamin H. Richman
brichman@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Stefan L. Coleman, Esq.
law@stefancoleman.com
LAW OFFICES OF STEFAN L. COLEMAN, LLC
201 South Biscayne Boulevard, 28th Floor
Miami, Florida 33131
Tel: 877.333.9427

## CERTIFICATE OF SERVICE

I, Rafey S. Balabanian, an attorney, hereby certify that I served the above and foregoing ***Plaintiff's Memorandum in Support of Preliminary Approval of Class Action Settlement,*** by causing a true and accurate copy of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this the 7th day of April, 2015.

/s/ Rafey S. Balabanian