## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

ROBERT KOLINEK, individually and
on behalf of all others similarly situated,

    *Plaintiff,*

    *v.*

WALGREEN CO., an Illinois corporation,

    *Defendant.*

Case. No. 13-cv-04806

Hon. Matthew F. Kennelly

### DECLARATION OF RAFEY S. BALABANIAN

Pursuant to 28 U.S.C. § 1746, I hereby declare and state as follows:

1.  I am an attorney admitted to practice in the United States District Court for the Northern District of Illinois. I am entering this declaration in support of Plaintiff Robert Kolinek's Motion for Preliminary Approval of Class Action Settlement Agreement. This declaration is based upon my personal knowledge, except where expressly noted otherwise. If called upon to testify to the matters stated herein, I could and would competently do so.

2.  I am a Partner in and the General Counsel of Edelson PC, which has been retained to represent the named Plaintiff in this matter, Robert Kolinek ("Kolinek" or "Plaintiff"), and act as proposed Class Counsel on behalf of the Settlement Class.

### *Litigation and Settlement Negotiations*

3.  On July 3, 2013, Plaintiff filed the instant Action alleging that Defendant Walgreen Co. ("Walgreens" or "Defendant") violated the Telephone Consumer Protection Act,

47 U.S.C. § 227 ("TCPA"), when it placed the Prerecorded Prescription Calls[1] to customers' cellular telephones. (*See* Dkt. 1.)

4.      Walgreens moved to dismiss Plaintiff's complaint, arguing that (i) Plaintiff consented to receive the Calls by providing his cellular telephone number to Walgreens for verification purposes and (ii) the Calls fell within the TCPA's "emergency purpose" exception. After full briefing, the Court dismissed Plaintiff's complaint, holding that Kolinek consented to receive calls by providing his cellular telephone number to Walgreens at some point in the past.

5.      Plaintiff thereafter filed a motion to reconsider, which the Court granted, holding that Walgreens was unable to assert a consent defense on the facts alleged. (*See* Dkts. 40, 44, 46, 48, 51.) Then, on July 22, 2014, the Court held oral argument on the remaining issue in Defendant's motion to dismiss—whether the Prerecorded Prescription Calls fell under the TCPA's "emergency purpose" exception—and after additional briefing and oral argument, denied Walgreens' motion to dismiss on that basis as well. (*See* Dkts. 53, 54, 57, 58, 61, 63.)

6.      Shortly after the Court denied the remainder of Walgreens' motion to dismiss and Walgreens answered Plaintiff's complaint, the Parties began to exchange information through informal discovery related to the inner-workings of Walgreens' Prerecorded Prescription Call program, including how the program was initiated, how Walgreens obtained, stored, and maintained individuals' telephone numbers, and how the calls were placed.

7.      At the same time, the Parties began to discuss the possibility of resolving the case before additional protracted litigation. Over numerous teleconferences, the Parties talked at length about the substantive issues of the case and their perspectives on how it might be resolved. Eventually, these conversations led to an agreement to formally mediate the case and,

---

[1]      Except as otherwise indicated, all defined terms used in this declaration shall have the same meanings ascribed to them in the Parties' proposed Class Action Settlement Agreement.

on October 15, 2014, the Parties convened their first mediation with the Honorable Wayne R. Anderson (ret.) of JAMS (Chicago).

8.      Over the course of the day and with Judge Andersen's guidance, the Parties were able to reach an agreement on some of the material terms of a class-wide settlement, but did not reach a complete agreement. Instead, the session ended with a proposed settlement offer, which Defendant countered one week later.

9.      After additional discussions over the following days, on October 24, 2014, the Parties finalized the material terms of an agreement in principle to resolve the case, subject to additional (confirmatory) discovery.

10.     To that end, Plaintiff served formal written discovery requests on Walgreens regarding, *inter alia*, how it had obtained customers' telephone numbers, how any alleged consent to be called had been obtained, how the calls were placed, and how Walgreens maintained records of both the phone numbers and any consent to be called. After receiving and reviewing Walgreens' written responses and document production, Plaintiff deposed Walgreens' Rule 30(b)(6) designee and Director of Outbound Programs, Christopher Helzerman, on January 16, 2015, to further explore and understand those issues.

11.     Ultimately, through discovery, Plaintiff determined that Walgreens had collected the telephone numbers called directly from customers over a period of years, most often when gathering contact information for prescription-drug purchases and refills. As a part of that process, Walgreens' policy was to request that customers identify whether the telephone numbers provided were assigned to cellular or landline accounts, as Walgreens' internal databases specifically delineate between such identifications. Accordingly, when Walgreens initiated its refill reminder call program in 2012, it specifically did not place reminder phone

calls to any number that had been identified as assigned to a cellular account. Discovery also confirmed that Walgreens provided various options for call recipients to opt out of receiving future refill reminder calls—e.g., during any call a customer could simply press "8" on their touch-tone telephone to avoid future calls. Nevertheless, just a very small fraction of the customers called opted out of receiving refill reminder calls going forward; for the year just completed, the opt-out rate was 0.70% and for the entire period of the program, the opt-out rate was less than 1.5%. I have been advised by Walgreens that the percentage of customers who used the Prerecorded Prescription Calls to refill their prescriptions is vastly larger—by tens of multiples—than the opt-out rate, which Walgreens would argue shows that the Prerecorded Prescription Calls are viewed by its customers as a welcome reminder service rather than nuisance telemarketing calls.

12.     In addition to formal written and oral discovery, the Parties agreed that Walgreens would—subject to a Protective Order (dkt. 79) and other confidentiality measures—provide records identifying the telephone numbers to which the alleged calls were made to a third party to determine which of those numbers were, in fact, assigned to cellular phones and thus fell within the proposed Settlement Class definition. In that way, the Parties intended to further confirm the scope of the proposed Settlement Class, ensure an appropriate plan for notifying Settlement Class Members of the settlement, and also confirm the fairness and reasonableness of the settlement.

13.     In February 2015, Walgreens provided that data to third-party administrator, Kurtzman Carson Consultants ("KCC"). KCC organized and analyzed the data and ultimately identified the phone numbers called by Walgreens that were assigned to cellular accounts.

However, due to a discrepancy in the manner in which the data was originally extracted from Walgreens' databases, the Parties determined to re-run the analysis for a second time.

14.     Upon the conclusion of the second analysis, KCC determined that there were approximately 9.2 million cellular telephone numbers to which Walgreens placed Calls during the relevant period of time.

15.     Notwithstanding their agreement in principal regarding the key terms of the settlement (i.e., fund size, prospective relief, etc.), the Parties were at odds about other aspects of the settlement, namely the plan for providing notice to the Settlement Class given the information gleaned from discovery. As they could not reach a consensus on that issue, the Parties determined to proceed with a second mediation before Judge Andersen on March 16, 2015, during which they were able to resolve the remaining issues.

16.     After the conclusion of the second mediation before Judge Andersen, the Parties were satisfied that the terms of the proposed settlement were fair, reasonable, and adequate, and proceeded with finalizing their written Agreement. On March 26, 2015, the Parties executed the Agreement now before the Court.

### *Certification of the Settlement Class is Appropriate.*

17.     It is proposed Class Counsel's position that Rule 23's requisites to certifying the proposed Settlement Class for settlement purposes are satisfied here.

18.     With respect to Rule 23(a)'s numerosity requirement, Defendant's records indicate that it placed the Prerecorded Prescription Calls to approximately 9.2 million individuals.

19.     As to the adequacy requirement, Plaintiff Kolinek and proposed Class Counsel have vigorously pursued this Action on behalf of the Settlement Class, and they will continue to do so.

20.     As it relates to the adequacy of Kolinek as class representative, his interest in redressing Defendant's alleged violation of the TCPA is identical to the interests of all other Settlement Class Members. Moreover, Kolinek has worked alongside proposed Class Counsel throughout the pendency of this Action—reviewing the complaint and other documents, equipping his attorneys with the information needed to pursue his claims, and responding to requests for additional information throughout the settlement process—further confirming his dedication to vigorously representing the interests of the Settlement Class.

21.     Further, proposed Class Counsel are experienced members of the plaintiffs' bar who have built their practice litigating similarly complex consumer class actions, including many under the TCPA.

22.     Additionally, proposed Class Counsel have devoted substantial resources to the prosecution of this Action—for example, investigating the claims of Kolinek and the Settlement Class, aggressively pursuing Plaintiff's claims through a motion to reconsider, maintaining an ongoing dialogue with Walgreens, conducting a formal mediation, ultimately reaching a resolution of this Action, performing extensive discovery and engaging in additional settlement discussions and a second mediation to ensure that the settlement is fair and reasonable in light of that discovery—and we will continue to do so throughout the Action's pendency.

### The Proposed Settlement is Well Within the Range of Possible Approval.

23.     We are also of the opinion that the proposed Settlement is fair, reasonable and adequate and well within the range of possible approval.

24.     First, we believe that the monetary benefit to the Settlement Class is especially approvable when viewed in light of some individuals' positive response to the Prerecorded Prescription Calls. Indeed, during his Rule 30(b)(6) deposition, Christopher Helzerman noted that many individuals have reacted positively to Walgreens' calling campaign and even called to opt in to the program after accidentally opting out. That's likely because, unlike most telemarketing calls, the Calls had the additional purpose of helping individuals maintain their health.

25.     We also believe that the result for the Settlement Class is especially beneficial in light of the risks associated with continued litigation of the Action. Even though we are confident that Plaintiff would ultimately prevail at trial should the case proceed, the risks of further litigation are significant. For example, with respect to Walgreens' defense that the Calls fall under the emergency purpose exception, evidence demonstrates that Walgreens may actually be able to claim that defense given that the Calls were placed to individuals who had prescriptions for maintenance medications (such as cholesterol lowering medications, blood pressure medications, diabetes medications, and medications for chronic pulmonary issues), the continuation of which are vital to the health of the patient.

26.     Additionally, Walgreens would undoubtedly challenge a motion for class certification, arguing *inter alia* that the consent defense raises individual factual issues, further delaying the possibility of relief to the Settlement Class, and if the case proceeded to trial, other roadblocks—such as additional discovery and procurement of expert testimony—would stand between the Settlement Class and ultimate recovery. And in light of the amount at stake and its reputational interests, Walgreens is nearly certain to appeal any judgment in favor of the class, thus further delaying recovery.

27.     Finally, we also believe that the procedural posture of this Action further supports preliminary approval. Indeed, this case has now been underway for more than a year and a half, and through contentious litigation—resulting in this Court's reversal of its initial dismissal—and heated settlement talks, the Parties have assembled the information necessary to fully assess the strength of Plaintiff's claims.

28.     For all of these reasons, we and Kolinek firmly believe that both the relief obtained for the Settlement Class through the settlement, as well as the manner in which it was obtained, weigh heavily in favor of a finding that the settlement is fair, reasonable and adequate, and well within the range of approval.

### *Attachments.*

29.     Attached to Plaintiff's Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement Agreement as Exhibit 1 is a true and accurate copy of the Parties' proposed Class Action Settlement Agreement.

30.     Attached hereto as Exhibit 2-A is a true and accurate copy of the Firm Resume of Edelson PC.

*                    *                    *

I declare under penalty of perjury that the foregoing is true and correct.


Executed this 7th day of April 2015 at Chicago, Illinois.


_____
Rafey S. Balabanian

# Exhibit A

# Edelson PC Firm Resume

Edelson PC is a plaintiffs' class action and commercial litigation firm with attorneys in Illinois and California.

Our attorneys have been recognized as leaders in these fields by state and federal legislatures, national and international media groups, the courts, and our peers. Our reputation for leadership in class action litigation has led state and federal courts to appoint us lead counsel in many high-profile class actions, including privacy suits against comScore, Netflix, Time, Microsoft, and Facebook; numerous Telephone Consumer Protection Act ("TCPA") cases against companies such as Google, Twentieth Century Fox, and Simon & Schuster; class actions against Citibank, Wells Fargo, and JP Morgan Chase related to reductions in home equity lines of credit; fraudulent marketing cases against software companies such as Symantec; mobile content class actions against all major cellular telephone carriers; the Thomas the Tank Engine lead paint class actions; and the tainted pet food litigation. We have testified before the United States Senate on class action issues and have repeatedly been asked to work on federal and state legislation involving cellular telephony, privacy, and other issues. Our attorneys have appeared on dozens of national and international television and radio programs to discuss our cases and class action and consumer protection issues more generally. Our attorneys speak regularly at seminars on consumer protection and class action issues, lecture on class actions at law schools, and are asked to serve as testifying experts in cases involving class action and consumer issues.

## Plaintiffs' Class and Mass Action Practice Group

Edelson PC is a leader in plaintiffs' class and mass action litigation, with a particular emphasis on consumer technology class actions, and has been called a "class action 'super firm.'" (Decalogue Society of Lawyers, Spring 2010.) As recognized by federal courts nationwide, our firm has an "extensive histor[y] of experience in complex class action litigation, and [is a] well-respected law firm[] in the plaintiffs' class action bar." *In re Pet Food Prod. Liab. Litig.*, MDL Dkt. No. 1850, No. 07-2867 (NLH) (D.N.J. Nov. 18, 2008). A leading arbitrator concurred, finding that Edelson was "extraordinarily experienced" in "consumer protection class actions generally," including "technology consumer protection class action[s]."

In appointing our firm interim co-lead in one of the most high profile cases in the country, a federal court pointed to our ability to be "vigorous advocates, constructive problem-solvers, and civil with their adversaries." *In Re JPMorgan Chase Home Equity Line of Credit Litig.*, No. 10 C 3647 (N.D. Ill. July 16, 2010). After hard fought litigation, that case settled, resulting in the reinstatement of between $3.2 billion and $4.7 billion in home credit lines.

We have been specifically recognized as "pioneers in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue." *In re Facebook Privacy Litig.*, No. C 10-02389, Dkt. 69 at 5 (N.D. Cal. Dec. 10, 2010) (order appointing the firm interim co-lead of privacy class action); *see also In re Netflix Privacy Litig.*, No. 11-cv-00379, Dkt. 59 at 5 (N.D. Cal. Aug. 12, 2011) (appointing us the sole lead counsel due, in part, to our "significant and particularly specialized expertise in electronic privacy litigation and class actions[.]").

Similarly, as recognized by a recent federal court, our firm has "pioneered the application of the TCPA to text-messaging technology, litigating some of the largest consumer class actions in the country on this issue." *Ellison v Steve Madden, Ltd.*, No. 11-cv-5935 PSG, Dkt. 73 at 9 (C.D. Cal. May 7, 2013).

We have several sub-specialties within our plaintiffs' class action practice:

# PRIVACY/DATA LOSS

### *Data Loss/Unauthorized Disclosure of Data*

We have litigated numerous class actions involving issues of first impression against Facebook, Apple, Netflix, Sony, Redbox, Pandora, Sears, Storm 8, Google, T-Mobile, Microsoft, and others involving failures to protect customers' private information, security breaches, and unauthorized sharing of personal information with third parties. Representative settlements and ongoing cases include:

- *Dunstan v. comScore, Inc.*, No. 11-cv-5807 (N.D. Ill.): Lead counsel in certified class action accusing Internet analytics company of improper data collection practices. The court has finally approved a $14 million settlement.

- *Resnick v. Avmed*, No. 10-cv-24513 (S.D. Fla.): Lead counsel in data breach case filed against health insurance company. Obtained landmark appellate decision endorsing common law unjust enrichment theory, irrespective of whether identity theft occurred. Case also resulted in the first class action settlement in the country to provide data breach victims with monetary payments irrespective of identity theft.

- *In re Netflix Privacy Litigation*, No. 11-cv-00379 (N.D. Cal.): Sole lead counsel in suit alleging that defendant violated the Video Privacy Protection Act by illegally retaining customer viewing information. Case resulted in a $9 million dollar *cy pres* settlement that has been finally approved (pending appeal).

- *Halaburda v. Bauer Publishing Co.*, No. 12-cv-12831 (E.D. Mich.); *Grenke v. Hearst Communications, Inc.*, No. 12-cv-14221 (E.D. Mich.); *Fox v. Time, Inc.*, No. 12-cv-14390 (E.D. Mich.): Consolidated actions brought under Michigan's Video Rental Privacy Act, alleging unlawful disclosure of subscribers' personal information. In a ground-breaking decision, the court denied three motions to dismiss finding that the magazine publishers were covered by the act and that the illegal sale of personal information triggers an automatic $5,000 award to each aggrieved consumer.

- *Standiford v. Palm*, No. 09-cv-05719-LHK (N.D. Cal.): Sole lead counsel in data loss class action, resulting in $640,000 settlement.

- *In re Zynga Privacy Litig.*, No. 10-cv-04680 (N.D. Cal.): Appointed co-lead counsel in suit against gaming application designer for the alleged unlawful disclosure of its users' personally identifiable information to advertisers and other third parties.

- *In re Facebook Privacy Litigation*, No. 10-cv-02389 (N.D. Cal.): Appointed co-lead counsel in suit alleging that Facebook unlawfully shared its users' sensitive personally identifiable information with Facebook's advertising partners.

- *In re Sidekick Litigation*, No. C 09-04854-JW (N.D. Cal.): Co-lead counsel in cloud computing data loss case against T-Mobile and Microsoft. Settlement provided the class with potential settlement benefits valued at over $12 million.

- *Desantis v. Sears*, No. 08 CH 00448 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in injunctive settlement alleging national retailer allowed purchase information to be publicly available through the Internet.

### *Telephone Consumer Protection Act*

Edelson has been at the forefront of TCPA litigation for over six years, having secured the groundbreaking *Satterfield* ruling in the Ninth Circuit applying the TCPA to text messages. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009). In addition to numerous settlements totaling over $100 million in relief to consumers, we have over two dozen putative TCPA class actions pending against companies including Santander Consumer USA, Inc., Walgreen Co., Path, Inc., Nuance Communications, Inc., Stonebridge Life Insurance, Inc., GEICO, DirectBuy, Inc., and RCI, Inc. Representative settlements and ongoing cases include:

- *Rojas v CEC*, No. 10-cv-05260 (N.D. Ill.): Lead counsel in text spam class action that settled for $19,999,400.

- *In re Jiffy Lube Int'l Text Spam Litigation*, No. 11-md-2261, 2012 WL 762888 (S.D. Cal.): Co-lead counsel in $35 million text spam settlement.

- *Ellison v Steve Madden, Ltd.*, No. cv 11-5935 PSG (C.D. Cal.): Lead counsel in $10 million text spam settlement.

- *Kramer v. B2Mobile*, No. 0-cv-02722-CW (N.D. Cal.): Lead counsel in $12.2 million text spam settlement.

- *Pimental v. Google, Inc.*, No. 11-cv-02585 (N.D. Cal.): Lead counsel in class action alleging that defendant co-opted group text messaging lists to send unsolicited text messages. $6 million settlement provides class members with an unprecedented $500 recovery.

- *Robles v. Lucky Brand Dungarees, Inc.*, No. 10-cv-04846 (N.D. Cal.): Lead counsel in $10 million text spam settlement.

- *Miller v. Red Bull*, No. 12-CV-04961 (N.D. Ill.): Lead counsel in $6 million text spam settlement.

- *Woodman v. ADP Dealer Services*, No. 2013 CH 10169 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in $7.5 million text spam settlement.

- *Lockett v. Mogreet, Inc.*, No 2013 CH 21352 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in $16 million text spam settlement.

- *Lozano v. 20th Century Fox*, No. 09-cv-05344 (N.D. Ill.): Lead counsel in class action alleging that defendants violated federal law by sending unsolicited text messages to cellular telephones of consumers. Case settled for $16 million.

- *Satterfield v. Simon & Schuster*, No. C 06 2893 CW (N.D. Cal.): Co-lead counsel in in $10 million text spam settlement.

- *Weinstein v. Airit2me, Inc.*, No. 06 C 0484 (N.D. Ill): Co-lead counsel in $7 million text spam settlement.

## CONSUMER TECHNOLOGY

### *Fraudulent Software*

In addition to the settlements listed below, EDELSON PC has consumer fraud cases pending in courts nationwide against companies such as McAfee, Inc., Avanquest North America Inc., PC Cleaner, AVG, iolo Technologies, LLC, among others. Representative settlements include:

- *Drymon v. Cyberdefender*, No. 11 CH 16779 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $9.75 million.

- *Gross v. Symantec Corp.*, No. 12-cv-00154-CRB (N.D. Cal.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $11 million.

- *LaGarde v. Support.com, Inc.*, No. 12-cv-00609-JSC (N.D. Cal.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $8.59 million.

- *Ledet v. Ascentive LLC*, No. 11-CV-294-PBT (E.D. Pa.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $9.6 million.

- *Webb v. Cleverbridge, Inc.*, No. 1:11-cv-04141 (N.D. Ill.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $5.5 million.

### *Video Games*

EDELSON PC has litigated cases video-game related cases against Activision Blizzard Inc., Electronic Arts, Inc., Google, and Zenimax Media, Inc., and has active litigation pending, including:

- *Locke v. Sega of America*, No. 13-cv-01962-MEJ (N.D. Cal.): Pending putative class action alleging that Sega of America and Gearbox Software released video game trailer that falsely represented the actual content of the game.

## MORTGAGE & BANKING

EDELSON PC has been at the forefront of class action litigation arising in the aftermath of the federal bailouts of the banks. Our suits include claims that certain banks unlawfully suspended home credit lines based on pre-textual reasons, and that certain banks have failed to honor loan modification programs. We achieved the first federal appellate decision in the country recognizing the right of borrowers to enforce HAMP trial plans under state law. The court noted that "[p]rompt resolution of this matter is necessary not only for the good of the litigants but for the good of the Country." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 586 (7th Cir. 2012) (Ripple, J., concurring). Our settlements have restored billions of dollars in home credit lines to people throughout the country. Representative cases and settlements include:

- *In re JP Morgan Chase Bank Home Equity Line of Credit Litig.*, No. 10-cv-3647 (N.D. Ill.): Court appointed interim co-lead counsel in nationwide putative class action alleging illegal suspensions of home credit lines. Settlement restored between $3.2 billion and $4.7 billion in credit to the class.

- *Hamilton v. Wells Fargo Bank, N.A.*, No. 09-cv-04152-CW (N.D. Cal.): Lead counsel in class actions challenging Wells Fargo's suspensions of home equity lines of credit. Nationwide settlement restores access to over

$1 billion in credit and provides industry leading service enhancements and injunctive relief.

- *In re Citibank HELOC Reduction Litig.*, No. 09-cv-0350-MMC (N.D. Cal.): Lead counsel in class actions challenging Citibank's suspensions of home equity lines of credit. The settlement restored up to $653,920,000 worth of credit to affected borrowers.

- *Wigod v. Wells Fargo*, No. 10-cv-2348 (N.D. Ill.): In ongoing putative class action, obtained first appellate decision in the country recognizing the right of private litigants to sue to enforce HAMP trial plans.

## GENERAL CONSUMER PROTECTION CLASS ACTIONS

We have successfully prosecuted countless class actions against computer software companies, technology companies, health clubs, dating agencies, phone companies, debt collectors, and other businesses on behalf of consumers. In addition to the settlements listed below, EDELSON PC have litigated consumer fraud cases in courts nationwide against companies such as Motorola Mobility, Stonebridge Benefit Services, J.C. Penney, Sempris LLC, and Plimus, LLC. Representative settlements include:

### *Mobile Content*

We have prosecuted over 100 cases involving mobile content, settling numerous nationwide class actions, including against industry leader AT&T Mobility, collectively worth over a hundred million dollars.

- *McFerren v. AT&T Mobility, LLC*, No. 08-CV-151322 (Fulton Cnty. Super. Ct., Ga.): Lead counsel class action settlement involving 16 related cases against largest wireless service provider in the nation. "No cap" settlement provided virtually full refunds to a nationwide class of consumers who alleged that unauthorized charges for mobile content were placed on their cell phone bills.

- *Paluzzi v. Cellco Partnership*, No. 07 CH 37213 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in class action settlement involving 27 related cases alleging unauthorized mobile content charges. Case settled for $36 million.

- *Gray v. Mobile Messenger Americas, Inc.*, No. 08-CV-61089 (S.D. Fla.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills. Case settled for $12 million.

- *Parone v. m-Qube, Inc.*, No. 08 CH 15834 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in class action settlement involving over 2 dozen cases alleging

the imposition of unauthorized mobile content charges. Case settled for $12.254 million.

- *Williams v. Motricity, Inc.*, No. 09 CH 19089 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in class action settlement involving 24 cases alleging the imposition of unauthorized mobile content charges. Case settled for $9 million.

- *VanDyke v. Media Breakaway, LLC*, No. 08 CV 22131 (S.D. Fla.): Lead counsel in class action settlement alleging unauthorized mobile content charges. Case settled for $7.6 million.

- *Gresham v. Cellco Partnership*, No. BC 387729 (L.A. Super. Ct., Cal.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills. Settlement provided class members with full refunds.

- *Abrams v. Facebook, Inc.*, No. 07-05378 (N.D. Cal.): Lead counsel in injunctive settlement concerning the transmission of allegedly unauthorized mobile content.

### Deceptive Marketing

- *Van Tassell v. UMG*, No. 1:10-cv-2675 (N.D. Ill.): Lead counsel in negative option marketing class action. Case settled for $2.85 million.

- *McK Sales Inc. v. Discover Bank*, No. 10-cv-02964 (N.D. Ill.): Lead counsel in class action alleging deceptive marketing aimed at small businesses. Case settled for $6 million.

- *Farrell v. OpenTable*, No. 11-cv-01785 (N.D. Cal.): Lead counsel in gift certificate expiration case. Settlement netted class over $3 million in benefits.

- *Ducharme v. Lexington Law*, No. 10-cv-2763 (N.D. Cal): Lead counsel in CROA class action. Settlement resulted in over $6 million of benefits to the class.

- *Pulcini v. Bally Total Fitness Corp.*, No. 05 CH 10649 (Cir. Ct. Cook Cnty., Ill.): Co-lead counsel in four class action lawsuits brought against two health clubs and three debt collection companies. A global settlement provided the class with over $40 million in benefits, including cash payments, debt relief, and free health club services.

- *Kozubik v. Capital Fitness, Inc.*, 04 CH 627 (Cir. Ct. Cook Cnty., Ill.): Co-lead counsel in state-wide suit against a leading health club chain, which settled in 2004, providing the over 150,000 class members with between

$11 million and $14 million in benefits, consisting of cash refunds, full debt relief, and months of free health club membership.

- *Kim v. Riscuity*, No. 06 C 01585 (N.D. Ill.): Co-lead counsel in suit against a debt collection company accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with full debt relief and return of all money collected.

- *Jones v. TrueLogic Financial Corp.*, No. 05 C 5937 (N.D. Ill.): Co-lead counsel in suit against two debt collectors accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with approximately $2 million in debt relief.

- *Fertelmeyster v. Match.com*, No. 02 CH 11534 (Cir. Ct. Cook Cnty., Ill.): Co-lead counsel in a state-wide class action suit brought under Illinois consumer protection statutes. The settlement provided the class with a collective award with a face value in excess of $3 million.

- *Cioe v. Yahoo!, Inc.*, No. 02 CH 21458 (Cir. Ct. Cook Cnty., Ill.): Co-lead counsel in a state-wide class action suit brought under state consumer protection statutes. The settlement provided the class with a collective award with a face value between $1.6 million and $4.8 million.

- *Zurakov v. Register.com*, No. 01-600703 (N.Y. Sup. Ct., N.Y. Cnty.): Co-lead counsel in a class action brought on behalf of an international class of over one million members against Register.com for its allegedly deceptive practices in advertising on "coming soon" pages of newly registered Internet domain names. Settlement required Register.com to fully disclose its practices and provided the class with relief valued in excess of $17 million.

## PRODUCTS LIABILITY CLASS ACTIONS

We have been appointed lead counsel in state and federal products liability class settlements, including a $30 million settlement resolving the "Thomas the Tank Engine" lead paint recall cases and a $32 million settlement involving the largest pet food recall in the history of the United States and Canada. Representative settlements include:

- *Barrett v. RC2 Corp.*, No. 07 CH 20924 (Cir. Ct. Cook Cnty., Ill.): Co-lead counsel in lead paint recall case involving Thomas the Tank toy trains. Settlement is valued at over $30 million and provided class with full cash refunds and reimbursement of certain costs related to blood testing.

- *In re Pet Food Products Liability Litig.*, No. 07-2867 (D.N.J.): Part of mediation team in class action involving largest pet food recall in United

States history. Settlement provided $24 million common fund and $8 million in charge backs.

## INSURANCE CLASS ACTIONS

We have prosecuted and settled multi-million dollar suits against J.C. Penney Life Insurance for allegedly illegally denying life insurance benefits under an unenforceable policy exclusion and against a Wisconsin insurance company for terminating the health insurance policies of groups of self-insureds. Representative settlements include:

- *Holloway v. J.C. Penney*, No. 97 C 4555 (N.D. Ill.): One of the primary attorneys in a multi-state class action suit alleging that the defendant illegally denied life insurance benefits to the class. The case settled in or around December 2000, resulting in a multi-million dollar cash award to the class.

- *Ramlow v. Family Health Plan* (Wisc. Cir. Ct., WI): Co-lead counsel in a class action suit challenging defendant's termination of health insurance to groups of self-insureds. The plaintiff won a temporary injunction, which was sustained on appeal, prohibiting such termination and eventually settled the case ensuring that each class member would remain insured.

## MASS/CLASS TORT CASES

Our attorneys were part of a team of lawyers representing a group of public housing residents in a suit based upon contamination related injuries, a group of employees exposed to second-hand smoke on a riverboat casino, and a class of individuals suing a hospital and national association of blood banks for failure to warn of risks related to blood transfusions. Representative settlements include:

- *Aaron v. Chicago Housing Authority*, No. 99 L 11738 (Cir. Ct. Cook Cnty., Ill.): Part of team representing a group of public housing residents bringing suit over contamination-related injuries. Case settled on a mass basis for over $10 million.

- *Januszewski v. Horseshoe Hammond*, No. 2:00CV352JM (N.D. Ind.): Part of team of attorneys in mass suit alleging that defendant riverboat casino caused injuries to its employees arising from exposure to second-hand smoke.

The firm's cases regularly receive attention from local, national, and international media. Our cases and attorneys have been reported in the Chicago Tribune, USA Today, the Wall Street Journal, the New York Times, the LA Times, by the Reuters and UPI news services, and BBC International. Our attorneys have appeared on numerous national television and radio programs, including ABC World News, CNN, Fox News, NPR, and CBS Radio, as well as television and

radio programs outside of the United States. We have also been called upon to give congressional testimony and other assistance in hearings involving our cases.

## GENERAL COMMERCIAL LITIGATION

Our attorneys have handled a wide range of general commercial litigation matters, from partnership and business-to-business disputes, to litigation involving corporate takeovers. We have handled cases involving tens of thousands of dollars to "bet the company" cases involving up to hundreds of millions of dollars. Our attorneys have collectively tried hundreds of cases, as well as scores of arbitrations and mediations.

## OUR ATTORNEYS

**JAY EDELSON** is the founder and Managing Partner of EDELSON PC. He has been recognized as a leader in class actions, technology law, corporate compliance issues, and consumer advocacy by his peers, the media, state and federal legislators, academia, and courts throughout the country.

Jay has been appointed lead counsel in numerous state, federal, and international class actions, resulting in hundreds of millions of dollars for his clients. He is regularly asked to weigh in on federal and state legislation involving his cases. He testified to the U.S. Senate about the largest pet food recall in the country's history and is advising state and federal politicians on consumer issues relating to the recent federal bailouts, as well as technology issues, such as those involving mobile marketing. Jay also counsels companies on legal compliance and legislative issues in addition to handling all types of complex commercial litigation.

Jay has litigated class actions that have established precedent concerning the ownership rights of domain name registrants, the applicability of consumer protection statutes to Internet businesses, and the interpretation of numerous other state and federal statutes including the Telephone Consumer Protection Act and the Video Privacy Protection Act. As lead counsel, he has also secured settlement in cases of first impression involving Facebook, Microsoft, AT&T, and countless others, collectively worth hundreds of millions of dollars.

In addition to technology based litigation, Jay has been involved in a number of high-profile "mass tort" class actions and product recall cases, including cases against Menu Foods for selling contaminated pet food, a $30 million class action settlement involving the Thomas the Tank Engine toy train recall, and suits involving damages arising from second-hand smoke.

In 2009, Jay was named one of the top 40 Illinois attorneys under 40 by the Chicago Daily Law Bulletin. In giving Jay that award, he was heralded for his history of bringing and winning landmark cases and for his "reputation for integrity" in the "rough and tumble class action arena." In the same award, he was called "one of the best in the country" when it "comes to legal strategy and execution." Also in 2009, Jay was included in the American Bar Association's "24 hours of Legal Rebels" program, where he was dubbed one of "the most creative minds in the legal profession" for his views of associate training and firm management. In 2010, he was presented with the Annual Humanitarian Award in recognition of his "personal integrity,

professional achievements, and charitable contributions" by the Hope Presbyterian Church. Starting in 2011, he has been selected as an Illinois Super Lawyer and, separately, as a top Illinois class action lawyer by Benchmark Plaintiff.

Jay is frequently asked to participate in legal seminars and discussions regarding the cases he is prosecuting, including serving as panelist on national symposium on tort reform and, separately, serving as a panelist on litigating high-profile cases. He has also appeared on dozens of television and radio programs to discuss his cases. He has taught classes on class action law at Northwestern Law School and The John Marshall Law School, and has co-chaired a 2-day national symposium on class action issues. He has been an adjunct professor, teaching a seminar on class action litigation at the Chicago-Kent College of Law since 2010.

Jay is a graduate of Brandeis University and the University of Michigan Law School.

**RYAN D. ANDREWS** is a Partner at Edelson PC. He presently leads the firm's complex case resolution and appellate practice group, which oversees the firm's class settlements, class notice programs, and briefing on issues of first impression.

Ryan has been appointed class counsel in numerous federal and state class actions nationwide that have resulted in over $100 million dollars in refunds to consumers, including: *Satterfield v. Simon & Schuster*, No. C 06 2893 CW (N.D. Cal.): *Ellison v Steve Madden, Ltd.*, No. cv 11-5935 PSG (C.D. Cal.); *Robles v. Lucky Brand Dungarees, Inc.*, No. 10-cv-04846 (N.D. Cal.); *Lozano v. 20th Century Fox*, No. 09-cv-05344 (N.D. Ill.): *Paluzzi v. Cellco Partnership*, No. 07 CH 37213 (Cir. Ct. Cook Cnty., Ill.); and *Lofton v. Bank of America Corp.*, No. 07-5892 (N.D. Cal.).

Representative reported decisions include: *Lozano v. Twentieth Century Fox*, 702 F. Supp. 2d 999 (N.D. Ill. 2010), *Satterfield v. Simon & Schuster, Inc.* 569 F.3d 946 (9th Cir. 2009), *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010); *In re Jiffy Lube Int'l Text Spam Litig.*, 847 F. Supp. 2d 1253 (S.D. Cal. 2012); *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292 (N.D. Cal. 2013); and *Kristensen v. Credit Payment Servs.*, No. 2:12-CV-00528-APG, --- F. Supp. 2d ---, 2014 WL 1256035 (D. Nev. Mar. 26, 2014).

Ryan graduated from the University of Michigan, earning his B.A., with distinction, in Political Science and Communications. Ryan received his J.D. with High Honors from the Chicago-Kent College of Law and was named Order of the Coif. Ryan has served as an Adjunct Professor of Law at Chicago-Kent, teaching a third-year seminar on class actions. While in law school, Ryan was a Notes & Comments Editor for The Chicago-Kent Law Review, earned CALI awards for the highest grade in five classes, and was a teaching assistant for both Property Law and Legal Writing courses. Ryan externed for the Honorable Joan B. Gottschall in the United State District Court for the Northern District of Illinois.

Ryan is licensed to practice in Illinois state courts, the United States District Court for the Northern District of Illinois, the U.S. Court of Appeals for the Seventh Circuit, and the U.S. Court of Appeals for the Ninth Circuit.

**RAFEY S. BALABANIAN** is a Partner and the Chair of the Corporate Governance and Business Litigation Practice Group. Rafey's practice focuses upon a wide range of complex consumer class action litigation, as well as general business litigation.

On the plaintiff's side, Rafey has been appointed lead counsel in numerous class actions, including landmark settlements involving the telecom industry worth hundreds of millions of dollars. Rafey has been appointed Class Counsel in nationwide class action settlements against the major wireless carriers, aggregators, and providers of "mobile content," including *Van Dyke v. Media Breakaway, LLC*, No. 08-cv-22131 (S.D. Fla.); *Parone v. m-Qube, Inc.*, No. 08 CH 15834 (Cir. Ct. Cook County, Ill.); *Williams v. Motricity, Inc., et al.*, No. 09 CH 19089 (Cir. Ct. Cook Cnty., Ill.); and *Walker v. OpenMarket, Inc., et al.*, No. 08 CH 40592 (Cir. Ct. Cook Cnty., Ill.).

On the business side, Rafey has counseled clients ranging from "emerging technology" companies, real estate developers, hotels, insurance companies, lenders, shareholders and attorneys. He has successful litigated numerous multi-million dollar cases, including several "bet the company" cases.

Rafey has first chaired jury and bench trials, mediations, and national and international arbitrations.

Rafey received his J.D. from the DePaul University College of Law in 2005. While in law school, he received a certificate in international and comparative law. Rafey received his B.A. in History, with distinction, from the University of Colorado – Boulder in 2002.

**CHRISTOPHER L. DORE** is a Partner at Edelson and a member of the Technology and Fraudulent Marketing Group. Chris focuses his practice on emerging consumer technology issues, with his cases relating to online fraud, deceptive marketing, consumer privacy, negative option membership enrollment, and unsolicited text messaging. Chris is also a member of the firm's Incubation and Startup Development Group wherein he consults with emergent businesses.

Chris has been appointed class counsel in multiple class actions, including one of the largest text-spam settlements under the Telephone Consumer Protection Act, ground breaking issues in the mobile phone industry and fraudulent marketing, as well as consumer privacy. *See Pimental v. Google, Inc.*, No. 11-cv-02585 (N.D. Cal.); *Turner v. Storm8, LLC*, No. 09-cv-05234 (N.D. Cal.); *Standiford v Palm, Inc.*, No. 09-cv-05719-LHK (N.D. Cal.); and *Espinal v. Burger King Corp.*, No. 09-cv-20982 (S.D. Fla.). In addition, Chris has achieved groundbreaking court decisions protecting consumer rights. Representative reported decisions include: *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855 (N.D. Cal. 2011); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010); and *Van Tassell v. United Marketing Group, LLC*, 795 F. Supp. 2d 770 (N.D. Ill. 2011). In total, his suits have resulted in hundreds of millions of dollars to consumers.

Prior to joining Edelson, Chris worked for two large defense firms in the areas of employment and products liability. Chris graduated *magna cum laude* from The John Marshall Law School, where he served as the Executive Lead Articles for the Law Review, as well as a team member

for the D.M. Harish International Moot Court Competition in Mumbai, India. Chris has since returned to his alma mater to lecture on current issues in class action litigation and negations.

Before entering law school, Chris received his Masters degree in Legal Sociology, graduating *magna cum laude* from the International Institute for the Sociology of Law, located in Onati, Spain. Chris received his B.A. in Legal Sociology from the University of California, Santa Barbara.

**BENJAMIN H. RICHMAN** is a Partner at Edelson PC and is a member of the firm's Corporate Governance and Business Litigation Practice Group. He handles plaintiffs'-side consumer class actions, focusing mainly on technology-related cases, represents corporate defendants in class actions, and handles general commercial litigation matters.

On the plaintiff's side, Ben has brought industry-changing lawsuits involving the marketing practices of the mobile industry, print and online direct advertisers, and Internet companies. He has successfully prosecuted cases involving privacy claims and the negligent storage of consumer data. His suits have also uncovered complex fraudulent methodologies of Web 2.0 companies, including the use of automated bots to distort the value of consumer goods and services. In total, his suits have resulted in hundreds of millions of dollars to consumers.

On the defense side, Ben has represented large institutional lenders in the defense of employment class actions. He also routinely represents technology companies in a wide variety of both class action defense and general commercial litigation matters.

Ben received his J.D. from The John Marshall Law School, where he was an Executive Editor of the Law Review and earned a Certificate in Trial Advocacy. While in law school, Ben served as a judicial extern to the Honorable John W. Darrah of the United States District Court for the Northern District of Illinois, in addition to acting as a teaching assistant for Prof. Rogelio Lasso in several torts courses. Ben has since returned to the classroom as a guest-lecturer on issues related to class actions, complex litigation and negotiation. He also lectures incoming law students on the core first year curriculums. Before entering law school, Ben graduated from Colorado State University with a B.S. in Psychology.

Ben is also the director of Edelson PC's Summer Associate Program.

**ARI J. SCHARG** is a Partner at Edelson PC. He handles technology-related class actions, focusing mainly on cases involving the unlawful geo-locational tracking of consumers through their mobile devices, the illegal collection, storage, and disclosure of personal information, fraudulent software products, data breaches, and text message spam. His settlements have resulted in tens of millions of dollars to consumers, as well as industry-changing injunctive relief. Ari has been appointed class counsel by state and federal courts in several nationwide class action settlements, including *Webb v. Cleverbridge*, No. 11-cv-4141 (N.D. Ill.); *Ledet v. Ascentive*, No. 11-cv-294 (E.D. Penn.); and *Drymon v. CyberDefender*, No. 11 CH 16779 (Cir. Ct. Cook Cnty., Ill.); and was appointed sole-lead class counsel in *Loewy v. Live Nation*, No. 11-cv-4872 (N.D. Ill.), where the court praised his work as "impressive" and noted that he

"understand[s] what it means to be on a team that's working toward justice." Ari was selected as an Illinois Rising Star (2013) by Super Lawyers.

Prior to joining the firm, Ari worked as a litigation associate at a large Chicago firm, where he represented a wide range of clients including Fortune 500 companies and local municipalities. His work included representing the Cook County Sheriff's Office in several civil rights cases and he was part of the litigation team that forced Craigslist to remove its "Adult Services" section from its website.

Ari is very active in community groups and legal industry associations. He is a member of the Board of Directors of the Chicago Legal Clinic, an organization that provides legal services to low-income families in the Chicago area. Ari acts as Outreach Chair of the Young Adult Division of American Committee for the Shaare Zedek Medical Center in Jerusalem, and is actively involved with the Anti-Defamation League. He is also a member of the Standard Club Associates Committee.

Ari received his B.A. in Sociology from the University of Michigan – Ann Arbor and graduated magna cum laude from The John Marshall Law School where he served as a Staff Editor for The John Marshall Law Review and competed nationally in trial competitions. During law school, he also served as a judicial extern to The Honorable Bruce W. Black of the U.S. Bankruptcy Court for the Northern District of Illinois.

**COURTNEY BOOTH** is an Associate at EDELSON PC. Courtney focuses her practice on consumer class actions.

Courtney received her J.D., *magna cum laude*, from The John Marshall Law School. While in law school, she was a staff editor of The John Marshall Law Review, a teaching assistant for Legal Writing and Civil Procedure, and a member of the Moot Court Honor Society. Courtney represented John Marshall at the Mercer Legal Ethics and Professionalism Competition where she was a semi-finalist and won Best Respondent's Brief and at the Cardozo/BMI Entertainment and Communications Law Competition where she placed in the top three oralists. Courtney was recently nominated as a 2013 Member of the National Order of Scribes.

Prior to law school, Courtney attended Saint Louis University where she earned a B.A. in Communication. While there, she was a community relations intern for the St. Louis Blues.

**ALICIA HWANG** is an Associate at EDELSON PC. Alicia practices in the area of consumer class action and general litigation.

Alicia received her J.D. from the Northwestern University School of Law in May 2012, where she was an articles editor for the Journal of Law and Social Policy. During law school, Alicia was a legal intern for the Chinese American Service League, served as president of the Asian Pacific American Law Student Association and the Student Animal Legal Defense Fund, and was Chair of the Student Services Committee. She also worked as a student in the Northwestern Entrepreneurship Law Clinic and Complex Civil Litigation and Investor Protection Clinic.

Prior to joining EDELSON PC, Alicia worked as an Executive Team Leader for the Target Corporation, as well as a public relations intern for a tourism-marketing agency in London.

Alicia graduated *magna cum laude* from the University of Southern California, earning her B.A. in Communication in 2007. She is a member of the Phi Beta Kappa honor society.

**NICK LARRY** is an Associate at EDELSON PC. Nick practices in the area of consumer class action and general litigation.

Nick received his J.D., *cum laude*, from Northwestern University School of Law, where he was a senior editor of the Northwestern University Journal of International Law and Business.

Nick attended Michigan State University, where he graduated with a B.A. in General Business Administration/Pre-law in 2008 and played on the school's rugby team.

**DAVID I. MINDELL** is an Associate at EDELSON PC. David practices in the area of technology and privacy class actions.

David helps direct a team of attorneys and engineers in investigating and litigating cases involving complex tech fraud and privacy violations. His team's research has led to lawsuits involving the fraudulent development, marketing and sale of computer software, unlawful tracking of consumers through mobile-devices and computers, unlawful collection, storage, and dissemination of consumer data, mobile-device privacy violations, large-scale data breaches, and the Bitcoin industry. On the other side, David also serves as a consultant to a variety of emerging technology companies.

Prior to joining EDELSON PC, David co-founded several technology companies that reached multi-million dollar valuations within 12 months of launch. David has advised or created strategic development and exit plans for a variety of other technology companies.

While in law school, David was a research assistant for University of Chicago Law School Kauffman and Bigelow Fellow, Matthew Tokson, and for the preeminent cyber-security professor, Hank Perritt at the Chicago-Kent College of Law. David's research included cyberattack and denial of service vulnerabilities of the Internet, intellectual property rights, and privacy issues.

David has given speeches related to his research to a wide-range of audiences.

**AMIR MISSAGHI** is an Associate at Edelson, where he focuses on technology and privacy class actions.

Amir received his J.D. from the Chicago-Kent College of Law, where he was a member of the Moot Court Honor Society and a teaching assistant in Property. Before law school, he attended the University of Minnesota, where he received his B.S. and M.S. in Applied Economics. He then began working at a Fortune 50 company as a programmer and data analyst. During that time

Amir started working on his graduate studies in Applied Economics where he focused on analyzing consumer choice in healthcare markets.

**JOHN OCHOA** is an associate at EDELSON PC, focusing his practice on protecting consumers with a special emphasis on plaintiffs' privacy class action litigation, including cases brought under the Telephone Consumer Protection Act. John prosecutes cases in both state and federal courts at the trial and appellate levels.

John has secured important court decisions protecting the rights of consumers, including *Elder v. Pacific Bell Telephone Co*, 205 Cal. App. 4th 841 (2012), where the California Court of Appeal held that consumers may pursue claims against telecommunications companies for placing unauthorized charges on consumers' telephone bills, a practice known as "cramming." John was also appointed class counsel in *Lee v. Stonebridge Life Insurance Co*, 289 F.R.D. 292 (N.D. Cal. 2013), a case where the defendants are alleged to have caused the transmission of unauthorized text messages to the cellular telephones of thousands of consumers.

He graduated *magna cum laude* from The John Marshall Law School in May 2010 and served as Managing Editor for The John Marshall Law Review. His student Comment, which examines bicycling and government tort immunity in Illinois, appears in Vol. 43, No. 1 of The John Marshall Law Review. While in law school, John externed with Judge Thomas Hoffman at the Illinois Appellate Court, and competed in the ABA National Appellate Advocacy Competition.

John is active in the Illinois legal community, and serves as Co-Chair of the Membership Committee on the Young Professionals Board of Illinois Legal Aid Online (ILAO). ILAO is a non-profit organization committed to using technology to increase access to free and pro bono legal services for underserved communities throughout Illinois.

He received his B.A. with Honors in Political Science from the University of Iowa in 2004.

**ROGER PERLSTADT** is an Associate at EDELSON PC, where he concentrates on appellate and complex litigation advocacy. Roger graduated from the University of Chicago Law School, where he was a member of the University of Chicago Law Review. After law school, he served as a clerk to the Honorable Elaine E. Bucklo of the United States District Court for the Northern District of Illinois.

Prior to joining the firm, Roger spent several years at a litigation boutique in Chicago where his practice included employment and housing discrimination claims, constitutional litigation, and general commercial matters. In 2011, he was named a Rising Star by Illinois Super Lawyers Magazine.

Roger also spent time as a Visiting Assistant Professor at the University of Florida Law School where he taught Arbitration, Conflict of Laws, and Employment Discrimination, and has published articles on the Federal Arbitration Act in various law reviews.

**EVE-LYNN J. RAPP** is an Associate at EDELSON PC. Eve-Lynn focuses her practice in the areas of consumer and technology class action litigation.

Prior to joining EDELSON PC, Eve-Lynn was involved in numerous class action cases in the areas of consumer and securities fraud, debt collection abuses and public interest litigation. Eve-Lynn has substantial experience in both state and federal courts, including successfully briefing issues in both the United States and Illinois Supreme Courts.

Eve-Lynn received her J.D. from Loyola University of Chicago-School of Law, graduating cum laude, with a Certificate in Trial Advocacy. During law school, Eve-Lynn was an Associate Editor of Loyola's International Law Review and externed as a "711" at both the Cook County State's Attorney's Office and for Cook County Commissioner Larry Suffredin. Eve-Lynn also clerked for both civil and criminal judges (Honorable Yvonne Lewis and Plummer Lott) in the Supreme Court of New York.

Eve-Lynn graduated from the University of Colorado, Boulder, with distinction and Phi Beta Kappa honors, receiving a B.A. in Political Science.

**BEN THOMASSEN** is an Associate at EDELSON PC. At the firm, Ben's practice centers on the prosecution of class actions cases that address federally protected privacy rights and issues of consumer fraud—several of which have established industry-changing precedent. Among other high profile cases, Ben recently played key roles in delivering the winning oral argument before the United States Court of Appeals for the Eleventh Circuit in *Curry v. AvMed*, 693 F.3d 1317 (11th Cir. 2012) (a data breach case that has, following the Eleventh Circuit's decision, garnered national attention both within and without the legal profession) and securing certification of a massive consumer class in *Dunstan v. comScore*, No. 11 C 5807, 2013 WL 1339262 (N.D. Ill. Apr. 2, 2013) (estimated by several sources as the largest privacy case ever certified on an adversarial basis).

Ben received his J.D., *magna cum laude*, from the Chicago-Kent College of Law, where he also earned his certificate in Litigation and Alternative Dispute Resolution and was named Order of the Coif. At Chicago-Kent, Ben was Vice President of the Moot Court Honor Society and earned (a currently unbroken firm record of) seven CALI awards for receiving the highest grade in Appellate Advocacy, Business Organizations, Conflict of Laws, Family Law, Personal Income Tax, Property, and Torts.

Before settling into his legal career, Ben worked in and around the Chicago and Washington, D.C. areas in a number of capacities, including stints as a website designer/developer, a regular contributor to a monthly Capitol Hill newspaper, and a film projectionist and media technician (with many years experience) for commercial theatres, museums, and educational institutions. Ben received his Bachelor of Arts, *summa cum laude*, from St. Mary's College of Maryland and his Master of Arts from the University of Chicago.