UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Kolinek § | |
| § | |
| Vs. § | No. 13-cv-04806 |
| § | |
| § | |
| Walgreen Co., § | |

**GLEITH COZBY, RENDEE BULLARD, SHARON HUGHES AND
CHRISTINNA OLDHAM'S OBJECTIONS TO THE
CLASS ACTION SETTLEMENT**

Gleith Cozby's address is 7402 Marquette, Dallas, Texas 75225. The cellular phone number upon which Cozby received a pre-recorded prescription call is 214-577-5436. Rendee Bullard's address is 3070 Bellaire Ranch Drive, #637, Fort Worth, Texas 76109. The cellular phone number upon which Bullard received a pre-recorded prescription call is 214-846-7147. Sharon Hughes' address is 615 Church Street, Sulphur Springs, Texas 75482. The cellular phone number upon which Hughes received a pre-recorded prescription call is 214-683-3334. Christinna Oldham's address is 5836 River Meadows Place, Fort Worth, Texas 76112. The cellular phone number upon which Oldham received a pre-recorded prescription call is 214-850-4158. Cozby, Bullard, Hughes and Oldham are members of the settlement class and are collectively referred to herein as "Objectors". The reasons they object to the settlement are set forth below. They do not intend to travel to Chicago to appear at the fairness hearing.

**I.**     **Class Certification Issues**

**Background**

The Settlement Class is defined as "all individuals in the United States to whom Walgreen placed a Prerecorded Prescription Call to their cellular telephone." (Settlement

Agreement ¶ 1.30.) However, a class member is not entitled to any cash payment unless he or she affirms that the Class Member received such call or calls without their consent.

Defendant's records indicate that it placed pre-recorded prescription calls to approximately 9.2 million individuals. (P. 12, Mot. for Prelimin. Appr.) The total settlement fund is $11 million dollars. Fees, settlement notice and administrative costs are deducted before the class receives money. Class Counsel seeks a fee of $2,824,200; the class representative's proposed fee is $5,000. The costs of notice and administering the settlement are $3,150,000. That leaves $5,002,800 for the class. The Settling Parties anticipate that the monetary relief will be approximately $34 per settlement class member. That equals 147,141 settlement class members (out of a 9.2 million member class) who are expected to affirm that they did not consent to Walgreen's calls in order to obtain monetary relief.

The class contains individuals who did consent to Walgreen's calls and those who did not. The class also includes some calls that were made for purposes of an emergency and some that were not. The Settlement class, as currently proposed, is overbroad.

### Excerpts From Plaintiff's Memorandum In Support Of Preliminary Approval Of Class Action Settlement

The Plaintiff's Memorandum In Support of Preliminary Approval of Class Action Settlement ("Memo") includes several excerpts that demonstrate and reflect the specific evidence that shows that many of the persons who received pre-recorded Prescription calls from Walgreens gave prior, express consent for these calls. The relevant excerpts are as follows:

> This is not a prototypical TCPA case. As confirmatory discovery has shown, the Prerecorded Prescription Calls went to pharmacy patients with a current prescription at Walgreens that was due for refill. Walgreens views the calls as medical alerts that help patients stay on their treatment plans. And the Prerecorded Prescription Calls are made to telephone numbers that were

voluntarily provided by the customers to Walgreens. (Memo. at p. 1-2)

Ultimately, through discovery, Plaintiff determined that Walgreens had collected the telephone numbers called directly from customers over a period of years, most often when gathering contact information for prescription-drug purchases and refills. (Memo. at p. 5), citing Declaration of Rafey S. Balabanian ["Balabanian Decl."] ¶ 11); As a part of that process, Walgreens' policy was to request that customers identify whether the telephone numbers provided were assigned to cellular or landline accounts, as Walgreens' internal databases specifically delineate between such identifications. (*Id.*) Accordingly, when Walgreens initiated its refill reminder call program in 2012, it specifically did not place reminder phone calls to any number that had been identified as assigned to a cellular account. Discovery also confirmed that Walgreens provided various options for call recipients to opt out of receiving future refill reminder calls—e.g., during any call a customer could simply press "8" on their touch-tone telephone to avoid future calls. (Memo. at p. 5)

Nevertheless, just a very small fraction of the customers called opted out of receiving refill reminder calls going forward; for the year just completed, the opt-out rate was 0.70% and for the entire period of the program, the opt-out rate was less than 1.5%. (*Id.*) The percentage of customers who used the Prerecorded Prescription Calls to refill their prescriptions is vastly larger—by tens of multiples—than the opt-out rate, which Walgreens would argue shows that the Prerecorded Prescription Calls are viewed by its customers as a welcome reminder service rather than nuisance telemarketing calls. (Memo. at p. 5)

There exists a "direct relationship" between Walgreens and the individuals who received the Calls (i.e., their customers), and some courts have held that where such a relationship exists and the called party voluntarily provided their cellular phone number to the caller, then that constitutes express consent to be called. (Memo. at 23-24, citing *Roberts v. Paypal, Inc.*, No. 12-cv-0622, 2013 WL 2384242, at *5 (N.D. Cal. May 30, 2013) (holding that the prior provision of a cell phone number to the caller for any reason constitutes prior express consent to be called); *Ryabyshchuck v. Citibank (S.D) NA.*, No. 1 1-cv-1236, 2012 WL 5379143, at *3 (S.D. Cal. Oct. 30, 2012); *Baird v. Sabre Inc.*, No. 13-cv-999, 2014 WL 320205, at *2 (C.D. Cal. Jan. 28, 2014).)

During his Rule 30(b)(6) deposition, Christopher Helzerman (Walgreen's corporate representative) noted that many individuals have reacted positively to Walgreen's calling campaign and even called to opt in to the program after accidentally opting out. (Memo. at p. 24-25).

>And this is all against the backdrop of Walgreens' policy of not calling numbers assigned to cellular accounts without consent, and the fact that less than 1.5 % of all Settlement Class Members called opted out of receiving future calls during the entire three year life of the program (and less than 0.7% opted out in the past year). (Memo at P.24).

Based on the above excerpts, there is clear evidence that many class members consented to Walgreen's calls.

### This TCPA Settlement Class Does Not Have A Predominance of Common Issues

In TCPA actions, the predominance inquiry is satisfied only when Plaintiffs advance a viable theory employing generalized proof to establish liability with respect to the class involved. *Id*. The elements of a TCPA claim are "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). Class certification is warranted only when the facts of a particular case indicate that individual adjudication of the pivotal element of prior express consent is unnecessary. See *Gene & Gene LLC V. BioPay LLC*, 541 F.3d 318, 328 (5th Cir. 2008) (reversing district court's certification of a TCPA class where the defendant presented evidence that some of the faxes it had sent had been solicited, but the determination of which faxes were solicited required a case-by-case determination); *G M. Sign, Inc. v. Brink's Mfg. Co*., 2011 U.S. Dist. LEXIS 7084, 2011 WL 248511, at *8 (N.D. III., 2011) (declining to certify proposed TCPA class based on issues of individualized consent); *Jamison v. First Credit Servs.,* 290 F.R.D. 92, 107-09 (N.D.Ill. 2013) (finding individual issues predominated and that class was unascertainable where defendant introduced evidence that it elicited consent from a large percentage of potential class members); *Chapman v. First Index, Inc*., 2014 U.S. Dist. LEXIS 27556 at *12 (N.D. Ill. 2014)(class failed predominance requirements because there was specific evidence suggesting that the defendant

obtained consent prior to sending faxes); *Brink's Mfg. Co.*, 2011 U.S. Dist. LEXIS 7084, 2011 WL 248511, at *78 (individualized issues predominated where the defendant submitted evidence that it obtained consent from all fax recipients and the court would have been required to engage in a class-member-specific inquiry to determine whether each recipient did indeed give permission or have an established business relationship with Defendant at the pertinent time); *Gannon v. Network Tel. Servs., Inc.*, 2013 U.S. Dist. LEXIS 81250, 2013 WL 2450199, at *3 (C.D. Cal. Jun. 5, 2013) (holding predominance requirement not satisfied where issue of consent required individual inquiry regarding class members' interactions with defendant); *Gannon v. Network Tele. Servs., Inc.*, 2013 U.S. Dist. LEXIS 81250 at *9, (C.D. Cal., 2013) (finding that the proposed TCPA class was "neither ascertainable nor identifiable where the [d]efendants provide[d] evidence that some of the [text message] recipients may have consented, because callers were explicitly informed that they may be contacted by the company at the number from which they had called and provided an opportunity to opt-out of receiving such contacts"). This Class is overbroad and does not meet the predominance requirement.

      Notwithstanding the parties' willingness to stipulate to the certification of the class for settlement purposes, the Court has an independent responsibility to make a determination that every certification requirement is met before certifying a class. *Karvaly v. eBay, Inc*., 245 F.R.D. 71, 78 (E.D.N.Y.2007).

      Apart from manageability, all class certification requirements must be satisfied to certify a settlement class. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In particular, inquiry into the predominance element trains on the legal or factual questions that qualify each class member's case as a genuine controversy, questions that pre-exist any settlement. *Id*. at 622. *Amchem* rejects the idea that the benefits of settlement are relevant to the predominance inquiry.

*In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*, 148 F.3d 283, 314 (3d Cir. 1998).

The United States Supreme Court has explained that the class certification standard established by Rule 23(b)(3) "was 'the most adventuresome' innovation" of the 1966 amendments to the Federal Rules of Civil Procedure creating the class action procedure. *Amchem*, 521 U.S. at 614 (citation omitted). The Court therefore endorsed the view that the Rule "invites a close look at [such a] case before it is accepted as a class action," with "[s]ensitiv[ity] to the competing tugs of individual autonomy for those who might prefer to go it alone or in a smaller unit, on the one hand, and systemic efficiency on the other." *Id.* at 615 (citation omitted). Under Rule 23(b)(3)'s predominance standard the requirement "that the questions of law or fact common to class members predominate over any questions affecting only individual members" serves the function of "test[ing] whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623; see also *Id.* at 620 (Rule 23(b)(3) "designed to protect absentees by blocking unwarranted or overbroad class definitions").

This important role "demand[s] undiluted, even heightened, attention in the settlement context. Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Amchem*, 521 U.S. at 620 (footnote omitted).

The class certification rule must be interpreted in keeping with the Rules Enabling Act which instructs that rules of procedure shall not abridge, enlarge or modify any substantive right. Amchem, 521 U.S. at 613. Certification of a class cannot relieve the individual class members from establishing each element of their claims. *In re Merrill Lynch al. Securities Litigation*, 191

F.R.D. 391, 395 (D.N.J. 1999) citing *Kyriazi v. Western Elec. Co.*, 647 F.2d 388, 394-95 (3d Cir. 1981). Thus, the test for predominance remains critical in the settlement class context.

The Seventh Circuit has held that class certification must be denied when the class definition is "so amorphous and diverse" that it is not "reasonably clear that the proposed class members have all suffered constitutional or statutory violation warranting some relief." *Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980). Here, those millions of members of the class who consented to Walgreen's calls are not entitled to any relief under the TCPA. Those facts preclude certification under the standard applied by the Seventh Circuit.

Certification of this class also conflicts with the standard applied by the Eighth Circuit. In *Blades v. Monsanto Co*, 400 F.3d 562 (8th Cir. 2005), the court of appeals addressed a claim of price-fixing of genetically modified (GM) corn and soybean seeds in violation of the Sherman Act. Although the court recognized that the unlawful acts could be proven through evidence common to the proposed class, it found that the predominance test was not satisfied because the plaintiffs could not "prove classwide injury with proof common to the class." 400 F.3d at 572.

The injury requirement obliged the plaintiffs "to present evidence from which a jury could reasonably infer that the competitive price was less than the price the plaintiff paid." *Id.* at 573. "[E]ach plaintiff would need to present evidence that the list prices of the seeds he purchased, not just some or even most of the hundreds of list prices on appellees' price lists, were inflated." *Id.* But the plaintiffs' common evidence showed that the conspirators' agreed-upon price premiums "extended to some list prices and not to others." *Id.* Therefore, "some potential class members would require particularized evidence showing that the specific list prices pertinent to them were included in any performance of appellees' agreement to inflate prices." *Id.* at 574.

In the present case, not only are millions of class members unable to prove injury with common evidence, they are unable to prove any legally cognizable violation at all, because the TCPA does not provide them with a cause of action. In contrast with *Blades*, where all of the putative class members were legally eligible for relief, and the question was how that eligibility would be proven, those millions of members of the Settlement Class who consented to Walgreen's calls are not even legally eligible to assert a claim. See also *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010) (denying certification on the ground that "a single injured plaintiff may [not] bring a class action on behalf of a group of individuals who may not have had a cause of action themselves").

This Settlement Class, that has millions of members who consented to Walgreen's calls, is overbroad and cannot be properly certified.

## II. The Requested Attorney Fees Are Excessive

The settlement in this case provides $11 million to pay all claims of settlement class members, as well as pay Plaintiff's attorneys' fees, class notice, and administrative costs of the settlement. Class Counsel asks this Court to approve payment of 36% of the settlement fund less notice and administration costs and the payment to the class representative to compensate them for expenses and attorneys' fees. The attorneys' fees and expenses, as well as the costs of administering the settlement, are paid out of the settlement fund.

"District courts should exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions." *Synfuel Techs. v. DHL Express (USA)*, 463 F.3d 646, 652 (7th Cir. 2006) (internal quotation and citations omitted). The structure of class actions under Rule 23 of the federal rules gives class action lawyers an incentive to negotiate settlements that enrich themselves but give scant reward to class members, while at the same time the burden of

responding to class plaintiffs' discovery demands gives defendants an incentive to agree to early settlement that may treat the class action lawyers better than the class." *Thorogood v. Sears, Roebuck, & Co.*, 627 F.3d 289, 293-94 (7th Cir. 2010) (citing authorities) (denying rehearing en banc), underlying opinion rev'd on other grounds, 131 S. Ct. 3060 (2011); accord *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004)("Mirfasihi I"). Because class actions are rife with potential conflicts of interest between class counsel and class members ... district courts presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that the class counsel are behaving as honest fiduciaries for the class as a whole. *Mirfasihi,* 356 F.3d at 785. These concerns are yet heightened "when the class members are consumers, who ordinarily lack both the monetary stake and the sophistication in legal and commercial matters that would motivate and enable then) to monitor the efforts of class counsel on their behalf." *Creative Montessori Learning Ctrs. v. Ashford Gear LLC,* 662 F.3d 913, 917 (7th Cir. 2011). Unfortunately, American Judges are accustomed to presiding over adversary proceedings. They expect the clash of the adversaries to generate the information that the judge needs to decide the case. And so when a judge is being urged by both adversaries to approve the class-action settlement that they have negotiated, he is at a disadvantage in evaluating the fairness of the settlement to the class. *Eubank v. Pella Corporation*, 753 F.3d 718, 720 (7th Cir. 2014).

## On Attorneys' Fees, This Court Should Follow The Analysis Of The District Court In The "Rose" Case

On page 2 of Plaintiff's Memorandum In Support of Preliminary Approval of Class Action Settlement, Class Counsel cite eight cases to show how this settlement compares to other TCPA settlements. These settlements are set forth below, along with the percentage attorney fee that was awarded in each case.

|   |   | *Attorney's Fee % Awarded* |
|---|---|---|
| a. | *Kramer v. Autobytel, Inc., et al.*, No. 10-cv-2722, Dkt. 148 (N.D. Cal. 2012) ($100 per class member) | 25% |
| b. | *Weinstein v. The Timberland Co., et al.*, No. 06-cv-00484, Dkt. 93 (N.D. Ill. 2011) ($150 per class member) | 25% |
| c. | *Satterfield v. Simon & Schuster, Inc., et al.*, No 06-cv-2893, Dkt. 132 (N.D. Cal. 2010) ($175 per class member) | 25% |
| d. | *Lozano v. Twentieth Century Fox Film Corp.*, No 09-cv-6344, Dkt. 65 (N.D. Ill. 2011) ($200 per class member) | 23% |
| e. | *In re Capital One TCPA Litig.*, No. 12-cv-10064, 2015 WL 605203, F. Supp.3d (N.D. Ill. Feb 12, 2015) ($34.60 per class member) | 20.77% |
| f. | *Rose v. Bank of Am. Corp.*, No. 11-cv-02390 (N.D. Cal.) ($20-$40 per class member) | 7.48% |
| g. | *Kazemi v. Payless Shoesource, Inc.*, No. 09-cv-5142, Dkt. 94 (N.D. Cal. 2012) ($25 voucher to each class member) | 25% |
| h. | *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 11-md-2261, Dkt. 97 (S.D. Cal 2013) ($20 voucher, redeemable for $15 cash after a nine month period) | 13.51% |

This Court should follow the analysis of a recent opinion concerning one of the above TCPA actions, *Rose v. Bank of America Corp.*, 2014 U.S. Dist. LEXIS 121641 (N.D. Cal. 2014). In the *Rose* case, the Settlement Agreement required the defendants to pay $32,083,095 into a non-reversionary Settlement Fund. Class Counsel sought 25% of the Settlement Fund as a fee, which amounted to $8,020,976 inclusive of costs expended by Class Counsel of $64,365.14. *Id.* at *29.

The district court in *Rose* provided that the results obtained for the class are generally considered to be the most important factor in determining the appropriate fee award in a common fund case. Class Counsel argued that this factor, standing alone, supported their fee request. The Court disagreed. *Id.* at *30.

Class Counsel in *Rose* estimated that the claimants would receive an average recovery of between $20 to $40. The district court found that the $20 to $40 range fell in the lower range of recovery achieved in other TCPA class action settlements. *Id.* The district court noted that in other TCPA settlements, such as *Grannan v. Alliant Law Group, P.C.*, 2012 U.S. Dist. Lexis 8101 *19, 2012 WL 216522, each class member received between $300 to $325. *Id.* In *Malta v. Fed. Home Loan Mortg. Corp*, 10-cv-1290-BEN (S.D. Cal.) after final approval, each of the 120,547 claimants that made a timely and valid claim as well as the 103 claimants that made a late claim received the sum of $84.82. *Id.* at *30-31. In *Kramer v. B2Mobile*, 10-cv-2722-CV (N.D. Cal.), each claimant was to be paid $100, but subject to a pro-rata reduction based on the maximum amount of the fund, and it was unclear from the final approval order how much money each claimant actually received. The monetary relief in *Rose* case, however, did line up with that achieved in *Arthur v. Sallie Mae*, *Inc.*, 2012 U.S. Dist. LEXIS 132413 (W.D. Washington, 2012) where each claimant was estimated to receive between $20 and $40. *Id.* at *31. The *Rose* court found that the results in *Rose* were not "exceptional" in the context of other TCPA class actions and in fact were on the lower end of the scale. *Id.* at *34. The district court concluded that the appropriate fee award in the case was $2,402,243.91, inclusive of costs, which was 7.48% of the gross recovery. *Id.* at *37.

In this case, the plaintiffs drafted a complaint, responded to a motion to dismiss, filed a motion to reconsider the Court's Order of Dismissal, engaged in written discovery and engaged in settlement talks. There was one deposition taken and motion for class certification hearing occurred. The services provided by class counsel have provided some value to the class. However, that value is not even close to the fee that class counsel seek in this case. The attorneys' fee in this case should be far less than 36% of the gross recovery.

The prospective relief does not change this analysis. The prospective relief touted by the settling parties is that Walgreen's has agreed to implement procedures to ensure that only persons who provide prior express consent receive Prerecorded Prescription Calls to their cellular phones, including (i) updating its electronic database to identify customer telephone numbers that are assigned to either a landline or wireless phone, (ii) implementing procedures to confirm the accuracy of customers' communication preferences, and (iii) providing customers the option to elect to receive, and unsubscribe from, the Prerecorded Prescription Calls online, during the in-store checkout process, over the phone, and by otherwise contacting Walgreens. (Memo. at p. 10)

Walgreen's internal databases already specifically delineate between cellular and landline accounts. (Memo. at p. 5) Also, Walgreen's already has various options to opt out of receiving future calls. (Memo. at p. 5).

In *Rose v. Bank of America Corp.*, 2014 U.S. Dist. LEXIS 121641 (N.D. Cal.), the court questioned the "prospective relief" provided by the Settlement Agreement, which was described as such: "The Settlement focuses on prospective practice changes designed to protect Settlement Class Members from receiving automated calls in the future. Specifically, in consideration for the Settlement and in response to the Complaints filed in the Actions, Defendants developed and implemented significant enhancements to its servicing systems that are designed to prevent the calling of a cell phone unless a loan servicing record is systematically coded to reflect the borrowers prior express consent to call his or her cell phone." *Id*. at *31-*32.

 The *Rose* court found that the non-monetary relief achieved in that case was particularly nominal in comparison to nonmonetary relief achieved in other TCPA class action settlements. For example, in *Grannan*, the defendant agreed to a one-year injunction whereby the defendant

would "scrub' their automated dialing lists of cell phone numbers, and agreed not to call those numbers using an automated dialing system. *Id*. at *33. In *Arthur v. Sallie Mae*, the defendants agreed not to make calls to the cell phones of class members who submitted forms revoking their consent in conjunction with their claim forms. *Id.* In *Kramer v. B2Mobile*, defendants agreed to a four-year injunction whereby they agreed to keep documented proof of prior express consent received from cell phone owners. As part of the injunction, defendants agreed that, prospectively, prior express consent would require an affirmative action on the part of the customer such as clicking a box saying "I Accept." In addition, the claim forms in this settlement contained an option that class members could select in order to remove their cell phone number from defendants calling lists. *Id* at *33-34.

The court found that results achieved in *Rose* were not "exceptional' in the context of other TCPA class action settlements, and in fact were on the lower end of the scale. *Id*. at *34.

The prospective relief provisions of the settlement before this Court do not add meaningful value to the settlement and do not justify the requested fees.

## CONCLUSION

Objectors respectfully request that this Settlement Class not be certified and the award of attorneys' fees not exceed twenty percent (20%) of the gross recovery.

/s/ Justin A. Allen
Christopher J. Braun
IN Bar ID No. 19930-49
Justin A. Allen
IN Bar ID No. 31204-49
**Plews Shadley Racher & Braun LLP**
1346 N. Delaware St.
Indianapolis, IN 46202-2415
Tel: 317.637.0700
Fax: 317.637.0711
cbraun@psrb.com
jallen@psrb.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing has been served via transmission of Notices of Electronic Filing generated by CM/ECF on July 16, 2015 and was filed with the Clerk of Court using CM/ECF, and that as a result a copy of this filing has been served upon every counsel of record. The below individuals are also being mailed a copy on this, the 16th day of July, 2015.

                                                  /s/ Justin A. Allen
                                                  Justin A. Allen
                                                  **Plews Shadley Racher & Braun LLP**
                                                  Bar ID No. 31204-49
                                                  1346 N. Delaware St.
                                                  Indianapolis, IN 46202-2415
                                                  Tel: 317.637.0700
                                                  Fax: 317.637.0711
                                                  jallen@psrb.com

Clerk of Court
U.S. District Court, Northern District of Illinois
Everett McKinley Dirksen United States Courthouse
219 South Dearborn Street
Chicago, Illinois  60604

Benjamin H. Richman
EDELSON PC
350 North LaSalle Street
Suite 1300
Chicago, Illinois 60654

Bradley J. Andreozzi
DRINKER BIDDLE & REATH LLP
191 North Wacker Drive
Suite 3700
Chicago, Illinois 60606