# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ROBERT KOLINEK, individually   )
and on behalf of all others similarly   )
situated,   )
                             )
      Plaintiff,   )    Case No. 13-cv-04806
                             )
-vs-   )    Hon. Matthew Kennelly
                             )
WALGREEN CO.,   )
                             )
      Defendant.   )

---

## NOTICE OF OBJECTION TO CLASS ACTION BY CLASS MEMBER TODD SPANN AND NOTICE OF INTENT TO APPEAR AT FAIRNESS HEARIING

---

JONATHAN E. FORTMAN
Law Office of Jonathan E. Fortman, LLC
250 St. Catherine Street
Florissant, Missouri 63031
Ph# (314) 522-2312
Fax: (314) 524-1519
Email: jef@fortmanlaw.com

STEVE A. MILLER
Steve A. Miller, PC
1625 Larimer Street, No. 2905
Denver, CO 80202
Ph# 303-892-9933
Fax: 303-892-8925
Email: sampc01@gmail.com

JOHN C. KRESS
The Kress Law Firm, LLC
4247 S. Grand Blvd
St. Louis, MO 63111
Ph.#: (314) 631-3883
Fax: (314) 332-1534
Email: jckress@thekresslawfirm.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………….    ii

I.   The settlement is unfair in that no settlement with this Defendant is necessary as the service provided by Defendant to which Plaintiff complains is a valuable public service that outweighs the negligible benefit to the class………………………………………………………….    1

II.  The named plaintiff, Robert Kolinek cannot fairly and adequately protect the interests of the class……………………………………………    7

III. The proposed settlement is unfair to the class members as it contains a hidden cy pres provision that is not revealed to the class members in the Notice or the settlement website…………………………………    9

IV.  Class counsel should not be rewarded as this settlement brings no benefit to the class………………………………………………………….    11

V.   Conclusion…………………………………………………………….    12

# TABLE OF AUTHORITIES

**Cases**

*Kirchoff v. Flynn*,
    786 F.2d 320, 329 (7th Cir. 1986)………………………………………… 11

*Mace v. Van Ru Credit Corp.*,
    109 F.3d 338, 345 (7th Cir 1997)………………………………………… 10

*Mirfasihi v. Fleet Mortg. Corp.*,
    356 F.3d 781, 784 (7th Cir., 2004)………………………………………… 10

*Montgomery v. Aetna Plywood, Inc.*,
    231 F. 3d 399, 408 (7th Cir. 2000)………………………………………… 11

*National Association of Regional Medical Programs v. Mathews*,
    551 F.2d 340 (D.C. Cir 1976)………………………………………… 8

*Reynolds v. Beneficial Nat'l Bank*
    288 F.3d 277, 279 (7th Cir. 2002)………………………………………… 1, 6

*Simer v. Rios*,
    661 F.2d 655, 675 (7th Cir. 1981)………………………………………… 10

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301, 1305 (9th Cir., 1990)………………………………………… 10, 11

*Susman v. Lincoln American Corp.*,
    561 F.2d 86, 89 (7th Cir. 1977)………………………………………… 7, 8

*Synfuel Technologies v. Dhl Express (USA)*,
    463 F.3d 646, 652 (7th Cir. 2006)………………………………………… 1

*Ustrak v. Fairman*,
    851 F.2d 983, 987 (7th Cir. 1988)………………………………………… 11

*Williams v. Rohm*,
    658 F.3d 629, 634 (7th Cir., 2011)………………………………………… 1, 2

**Rules**

*Fed R. Civ. P. 23(e)(1)(C)*............................................................... 1

**Other Publications**

*American Journal of Managed Care*, *"Improving Adherence to Cardiovascular Disease Medications with Information Technology", -Discussion, Vollmer, PhD, William M, et al., published online November 16, 2014*.................. 2, 3

*"Automated drug-refill reminders increase adherence rates" O'Reilly, Jennifer S., December 10, 2014*............................................... 4

*Consumer Health Information Corporation, "Why is It Important to Refill My Prescription Medicines?", by Felicia E. Glenn, PharmD Candidate 2008*.......................................... 2

*Health Partners on Track Rx*................................................................ 2

Comes Now Class Member Todd Spann, by and through counsel, and hereby objects to the proposed class action settlement. Mr. Spann states that he is a member of the class and received a postcard notice of the settlement which is attached hereto.[1] Mr. Spann intends to appear at the Fairness Hearing through counsel. Mr. Spann objects to the proposed settlement for the following reasons:

**I.    The settlement is unfair in that no settlement with this Defendant is necessary as the service provided by Defendant to which Plaintiff complains is a valuable public service that outweighs the negligible benefit to the class.**

A district court may approve a settlement only if it is "fair, reasonable and adequate" *Synfuel Technologies v. Dhl Express* (USA). *463 F.3d 646, 652 (7th Cir. 2006); Fed R. Civ. P. 23(e)(1)(C); Williams v. Rohm, 658 F.3d 629, 634 (7th Cir., 2011)*. Although the standard applied by the appellate court is whether the trial court abused its discretion in approving a proposed settlement, "we insist that district courts exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions." *Synfuel Technologies, 463 F.3d at 652 citing Reynolds v. Beneficial Nat'l Bank 288 F.3d 277, 279 (7th Cir. 2002)*. Historically, the court of appeals has "gone so far as to characterize the [trial] court's role as akin to the high duty of care that the law requires of fiduciaries." *Id.; Williams, 658 F.3d at 634.*

A district court "cannot make an informed judgment about the fairness of a proposed class settlement without assessing the likelihood and value to the class of the case's possible outcomes. *Williams, 658 F.3d at 634, citing Synfuel Technologies, 463 F.3d at 653.* A district court "must take special care in performing this assessment when

---

[1] Mr. Spann is a citizen and resident of Florissant, Missouri. Mr. Spann does not wish for his address to be included in a publicly available document and such information has been redacted. Mr. Spann's address and the cellular phone number are available through Mr. Spann's counsel.

the proposed settlement evinces certain warning signs" *Id.*

The claim in this case was filed against a pharmacy that reminds its customers to refill their medications. Such subject matter is the nadir of class action subject matter. Not only is it unnecessary, it sets a dangerous precedent. It is unfair, unreasonable and has no value to the class members. This settlement should be rejected under the standards set forth above because it actually harms the class members. This Court should discourage attorneys from entertaining suits of this sort, for the reasons set forth below by rejecting this proposed settlement.

Recent "studies have shown that of all the medication-related hospital admissions in the U.S, 33% to 69% are due to not taking medications. This results in a significant burden to overall healthcare costs with estimated yearly cost in the U.S of $396 to $792 million." (*Consumer Health Information Corporation, "Why is It Important to Refill My Prescription Medicines?", by Felicia E. Glenn, PharmD Candidate 2008*, attached hereto, EXHIBIT A). An important conclusion reached, that is not surprising is that "refilling your medications can directly decrease your risk of developing heart disease complications or related deaths." *Id.* Fifty Percent (50%) of consumers do not take their scheduled dosage of medication correctly, because they "forget". (*Health Partners on Track Rx*, attached hereto as Exhibit B). A recent study in the *American Journal of Managed Care* involving 25,323 persons found that those persons who received reminder calls to refill their medications showed a reduction in bad cholesterol levels when they were taking statin medications, showing a reduction in the mortality rates of the population by 1% and a "2% reduction in major vascular events." (*American Journal of Managed Care, "Improving Adherence to Cardiovascular Disease Medications with*

*Information Technology", -Discussion, Vollmer, PhD, William M, et al., published online November 16, 2014* attached hereto and incorporated by reference herein as EXHIBIT C, referred to herein as "AJMC Study").   Follow up data with a smaller sample of the same population revealed that 70% of the persons "indicated they appreciated the calls" whereas only 8% of the sample "said they were annoyed by them." *Id.*   Seventy Percent (70%) of the persons sampled reported they listened to the recorded message they received for at least one call in its entirety. *Id.*   Notable for this Court, "only 6% described the calls as "not useful". *Id.*   Not surprisingly, "close to 60% reported that the calls prompted them to check the status of their medication and take follow-up action." *AJMC Study*, see "Discussion").   "94% of the sample reported that the service should continue for all health plan members." *Id.*   Extrapolating these findings to the over 9.2 million persons or phone numbers that were contacted by the Walgreens, indicates that at least 94% of those class members actually want to receive follow-up calls or "robo calls" from Defendant that remind class members to fill their prescriptions!

The AJMC Study also reported that in a clinical trial to improve adherence to inhaled corticosteroids in 8,517 persons with asthma, that adherence to the medications, or renewed prescriptions increased 6% over 18 months in those persons who took, or accepted the automated telephone reminder calls, resulting in decreased asthma symptoms. *Id. at "Discussion".*   A similar study involving 5,216 adults who received automated reminder calls, followed up by a mailed letter resulted in "increase(ed) adherence" among such adults who received a new statin prescription (high cholesterol medication). *Id.*   Providing people with automated calls reminding them to refill their prescriptions "improved fill rates over the next 25 days by 16 percentage points." *Id.*

3

According to these researchers, "HIT/EMR (Health information technologies/electronic medical record)-based reminder interventions offer a promising population –based approach to promoting adherence." *AJMC Study*, at "Discussion."

The recent research and literature clearly supports the determination that this settlement is unnecessary and, in fact, endangers public health. If the named Plaintiff has been subjected to refill reminder calls to which he did not consent, he can move forward with an individual claim without the need for harming a large portion of the class. Bill Vollmer, the lead researcher in the AJMC Study phrased it perfectly when discussing the small changes to adherence rates to medication that occurred by receiving reminder calls concerning medication:

> The small jump might not mean a lot to an individual patient, but on a population level it could translate into fewer heart attacks, fewer deaths and fewer hospitalizations, which will ultimately have an important impact on public health."

(Article: *"Automated drug-refill reminders increase adherence rates" O'Reilly, Jennifer S., December 10, 2014*, attached hereto and incorporated by reference herein, EXHIBIT D). Senior Citizen class members are particularly impacted by this settlement since automated pharmacy refill systems are "valuable, especially for our senior patients" according to Dianne E. Tilton, CphT, a facilitator/instructor of the Pharmacy Technician Program at the Academy of Medical Professions. *Id.* Instructor Tilton also stated that automated refill calls, or "robo calls", "can give them (senior citizens) a timeline for taking and managing meds." *Id.* Indeed, the letters received by this Court echo the opinion of Ms. Tilton.

First-year medical students are taught the principle of *primum non nocere,* first do no harm. In other words, given an existing problem, it may be better not to do something, or even do nothing, than to risk causing more harm than good. The Settlement proposed by the parties in this case will, without a doubt, cause harm to absent members of the class which far exceeds any benefit and should be rejected. It is readily apparent from several letters filed with this Court by class members that many people have come to rely upon Defendant's automated prescription refill reminder calls. Class member Phyllis Mehl of Staten Island, New York states that "[a]s a senior citizen, I rely on these prescription reminder calls and consider them a most helpful service by Walgreen. When I brought my prescriptions to Walgreen I gave them my personal phone information I had their assurance that they will be responsible for my medical welfare." [Doc. #99]. Ms. Mehl considers Walgreens to be, in effect, part of her healthcare team. Ms. Mehl also points to a disturbing reality in this case: the members of the class who rely the most upon the service provided by Walgreens are elderly and may not be able to object to this lawsuit and will not benefit from this settlement.

Class Member Betty Morgan of Manson, North Carolina objects to this Settlement as being frivolous and detrimental to the public good. [Doc. #100]. In her opinion, Walgreens was providing a valuable service to her by sending her telephone reminders. Class Member Robert Haberman states "I do not want a nickel of this money. I was not harmed by a reminder call about a prescription. It was handy." [Doc. # 102]. The most disturbing letter comes from Class Member Rebecca Thomas. Ms. Thomas suffers from Stage 3 liver cancer and "would be unable to keep track of my prescriptions without these cell phone calls." [Doc. #109]. Ms. Thomas simply asks the Court to

5

"keep in mind this ruling of this case." Ms. Thomas ends her brief communication with a simple three word question: "Health over money?" All of these individuals took the time to communicate with this Court in order to bring its attention to the reality of this case which is that a large portion of the absent class members consider the prescription refill reminders as a valuable service provided by the Defendant. However, this Settlement will now impose additional burden on these class members to continue to receive these reminders.

Plaintiff will, undoubtedly, argue to this Court that the low number of objections should weigh in favor of approval of the Settlement. However, as discussed above, there is recent research into the area of automated prescription reminder calls available which would support the position that the majority of the absent class members agree with those who took the time to formally object to this settlement.

While research into the efficacy of prescription reminder calls is just starting to be published, the recent research should give this Court pause to determine whether this Settlement is in the best interest of the absent class members. As this Court is aware, a district court must act as a "fiduciary of the class" for the rights and interests of absent class members. _Reynolds v. Beneficial National Bank_, 288 F.3d 277, 280 (7th Cir. 2002).

Pursuant to the terms of the settlement, Walgreens will put systems in place to ensure that customers consent to the automated prescription refill reminders. Walgreens will engage customers through its website, at the time a customer visits the store, or when the customer calls in to Walgreens customer service. However, there is no concern for class members who have come to rely on the public service provided by Walgreens. Apparently, those class members will no longer receive any reminder calls unless they

take some affirmative step to elect to receive such calls. In the meantime, there is a very real concern that many class members will only discover the need to take such an affirmative step after they have run out of their medication. The risk that even one member of the class could suffer serious, adverse health consequences as a result of this settlement far outweighs any benefit brought to the class. Under this settlement, Walgreens will be required to spend millions of dollars implementing new systems and modifying its existing systems because of a settlement in which the majority of class members don't see as beneficial. This settlement will do more harm than good.

Plaintiff is also aware that the claims rate in this action will be very low. Class Counsel anticipates that each class member making a claim will receive $34. The settlement fund to be distributed to the class, after deduction of attorneys' fees and administrative costs, will be $7,845,000. If the fund available for distribution is divided by $34, it reveals that Class Counsel is anticipating that just over 230,000 class members will file claims. That rate is just 2.5% of the number of the 9.2 million cell phone numbers to which automated calls were placed. Is providing monetary relief to, at most, 2.5% of the class worth the risk of jeopardizing the health of potentially thousands of class members? Based upon the research cited in the AJMC Study, this Court should conclude that the settlement is not fair, nor in the best interest of the class members that the named plaintiff purports to represent.

## II.     The named plaintiff, Robert Kolinek cannot fairly and adequately protect the interests of the class.

A court must find that the named representative of the class will fairly and adequately protect the interests of the class. *Susman v. Lincoln American Corp., 561*

*F.2d 86, 89 (7th Cir. 1977)*. "Basic consideration of fairness require that a court undertake a stringent and continuing examination of the adequacy of representation by the named class representatives at all stages of the litigation where absent class members will be bound by the court's judgment." *Id.* at 89-90; *citing National Association of Regional Medical Programs v. Mathews, 551 F.2d 340 (D.C. Cir 1976)*. The question of adequacy of representation is a matter of discretion with this Court. *Susman, 561 F.2d at 90*. Whether a party would adequately protect the interests of the class is a question of fact depending on the circumstances of each case. *Id.* In this case, the Plaintiff cannot adequately represent a large segment of the class who do not want this settlement approved and who rely upon the prescription refill reminders. If this settlement is approved with this Plaintiff as the class representative, thousands, if not millions, of class members will be bound by a settlement they find unnecessary and contrary to the public good.

An additional problem with determining whether Plaintiff can adequately represent the interests of the absent class members is the lack of specificity in the Complaint. Plaintiff simply alleges that he had prescriptions filled at Walgreens and then received prescription refill reminder calls to which he did not consent. Were those calls placed to him within 30, 60 or 90 days of having a prescription filled or did they occur months or years later? Plaintiff has not presented any evidence to answer what should be a crucial question when determining the harm, if any, to the class. Absent such information, Plaintiff should not be able to bind millions of consumers by entering into a settlement which addresses an illusory legal issue and could end up harming class members.

**III.    The proposed settlement is unfair to the class members, as it contains a hidden cy pres provision that is not revealed to the class members in the Notice or the website.**

Class Counsel intends to dispose of the unused, or unclaimed settlement funds with one or more cy pres recipients. However, Class Counsel has elected to not use such wording as "cy pres" or phrasing in either the Notice or the Settlement Agreement. Class Members are not informed that a portion of the settlement fund will be directed to one or more alleged charitable organizations, instead of paying the funds to the class.

In the Notice, the following language indicates a cy pres distribution is imminent:

> All un-cashed checks issued to Class Members and any unclaimed money in the Settlement Fund will be equally redistributed to the other claiming Class Members if practical, <u>or otherwise as directed by the Court</u>.

("What Does the Settlement Provide?", par 7. Notice, emphasis added). This ambiguous provision on its face does not appear to indicate the existence of cy pres, but the cryptic language of "or otherwise as directed by the Court" leaves open the possibility that funds will be funneled to entities or persons who are not Class Members.

The Settlement Agreement makes it apparent that this scenario is precisely what is planned:

> (e) Any un-cashed checks issued to Settlement Class Members in accordance with this Agreement, as well as any unclaimed funds remaining in the Settlement Fund after payment of all Approved Claims, all Settlement Administration Expenses, the Fee Award to Class Counsel, and the incentive award to the Class Representative shall be distributed to Settlement Class Members with Approved Claims if practicable, <u>or in a manner as otherwise directed by the Court upon application made by Class Counsel.</u>

(Stlmt Agrmt, p. 14, 2. Settlement Relief, 2.1 Payments to Settlement Class Members, emphasis added). It appears that "application made by Class Counsel" would be interpreted as diverting settlement proceeds to cy pres recipients. This is impermissible under current 7th Circuit precedent.

Cy pres recovery "should be reserved for unusual circumstances", and should only be utilized or considered "in which it is difficult or impossible to identify the persons to whom damages should be assigned or distributed." *Mace v. Van Ru Credit Corp., 109 F.3d 338, 345 (7th Cir. 1997).* It could be argued that cy pres is appropriate since it does not appear that it is possible to identify class members who can be assigned damages, given that research shows that at least 70% of such class members embrace the concept of automated calls informing class members to refill their prescriptions. However, this is more indicative of the need to reject this settlement. Cy pres is "a procedural device that distributes money damages either through a market system (e.g., by reducing charges that were previously excessive), or through project funding (the project being designed to benefit the members of the class)." *Mace, 109 F.3d at 345; Simer v. Rios, 661 F.2d 655, 675 (7th Cir. 1981).*

The goals and objectives of the cy pres recipient must directly benefit the class members who are not getting the funds. This is a requirement and not merely a formality that can be waived by this Court. *Mirfasihi v. Fleet Mortg. Corp., 356 F.3d 781, 784 (7th Cir., 2004), citing Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1305 (9th Cir., 1990).* A cy pres award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members," and must not benefit a group "too remote from the plaintiff class," *Six (6) Mexican Workers, 904 F.2d*

*at 1308.* Since this Court cannot rationally apply this analysis in this case due to the complete lack of any information in the Settlement Agreement, the settlement should be rejected or, at minimum, the cy pres provision stricken.

**IV.     Class Counsel should not be rewarded as this settlement brings no real benefit to the class.**

The district court has considerable discretion to determine the reasonableness of the fees. *Ustrak v. Fairman*, 851 F.2d 983, 987 (7th Cir. 1988). An appropriate attorneys' fee award is one that "re-creates" the market for the provided legal services. *Montgomery v. Aetna Plywood, Inc.*, 231 F. 3d 399, 408 (7th Cir. 2000). In the Seventh Circuit, the method of calculating a fee award…rests squarely within the discretion of the district court. *Kirchoff v. Flynn*, 786 F.2d 320, 329 (7th Cir. 1986).

Here, the irrefutable evidence is that this is at best, a class action settlement that is not supported by the class members. As discussed above, the settlement offers negligible benefits to the class and, instead, imposes additional burden on Class Members who consider the prescription reminder calls as a valuable public service. This settlement creates enormous problems where none existed. The result is that many unfortunate class members risk serious, detrimental effects to their health.

If this Court wishes to entertain any fee application, it should be exclusively based upon the actual number of claims paid in this case, and the attorneys' fees are a percentage of that number (no matter how low it will be). Because based on the recent trends and studies in today's healthcare environment, 94% of people want to receive reminders about refilling their prescription.

## V. Conclusion

WHEREFORE, for the foregoing reasons Class Member Todd Spann prays this Court enter its Order denying the Motion to Approve Settlement and the Motion for Attorneys' Fees.

Respectfully submitted,

*Jonathan E. Fortman*

JONATHAN E. FORTMAN
Law Office of Jonathan E. Fortman, LLC
250 St. Catherine Street
Florissant, Missouri 63031
Ph# (314) 522-2312
Fax: (314) 524-1519
Email: jef@fortmanlaw.com

STEVE A. MILLER
Steve A. Miller, PC
1625 Larimer Street, No. 2905
Denver, CO 80202
Ph# 303-892-9933
Fax: 303-892-8925
Email: sampc01@gmail.com

JOHN C. KRESS
The Kress Law Firm, LLC
4247 S. Grand Blvd
St. Louis, MO 63111
Ph.#: (314) 631-3883
Fax: (314) 332-1534
Email: jckress@thekresslawfirm.com

## CERTIFICATE OF SERVICE

A true and accurate copy of the foregoing has been served upon all parties via the Court's ECF system this 17th day of July, 2015.

Jonathan E. Fortman

## SIGNATURE

My name is Todd Spann and I am a member of the class in the case of *Kolinek v. Walgreen Co.*, Case No. 13-cv-4806 pending in the United States District Court for the Northern District of Illinois.  I received notice of the proposed settlement by mail and have attached a copy of the notice.  I have retained counsel and hereby object to the proposed settlement in this case for the reasons set forth in the foregoing objection.

Todd Spann

<u>LEGAL NOTICE</u>

*Kolinek v. Walgreen Co.,* Case No. 13-cv-04806

## If you received a prerecorded call from Walgreens on your cell phone reminding you to refill your prescription, a class action settlement may affect your rights.

A Federal Court authorized this notice.

You are <u>not</u> being sued.

This is <u>not</u> a solicitation from a lawyer.

*See reverse for details.*

*For complete information, visit*
*www.PrescriptionCallSettlement.com*
*or call 1-877-392-3209.*

# WTT

Kolinek v. Walgreen Co.
Settlement Administrator
P.O. Box 43358
Providence, RI 02940-3358

PRESORTED
FIRST-CLASS
U.S. POSTAGE
PAID
YORK, PA
PERMIT NO. 1203



Postal Service: Please do not mark barcode

Claim #: WTT-108647368501 - 4197261

*******AUTO**SCH 5-DIGIT 63033
01900421 r950211 T2791 4424 000054
Todd Spann
████████████
Florissant, MO 63033-3447

---

*Kolinek v. Walgreen Co.,* No. 13-cv-04806
<u>CLAIM FORM</u>
*Instructions. Fill out each section of this form and sign where indicated.*

First Name: _____     Last Name: _____

Street Address: _____

City: _____     State: _____     ZIP Code: _____

Cellular Telephone Number at which you received Prerecorded Prescription Call(s): 

**Class Member Affirmation:** By submitting this Claim Form and checking the box below, I declare that I am a member of the Settlement Class and that the following statement is true (box must be checked to receive payment):

☐   I received one or more prerecorded telephone calls from Walgreens at the cellular telephone number written above reminding me that my prescription was due for refill ("Prerecorded Prescription Calls") and I did not consent to receive these calls. *I recognize by affirming here that such calls were made without my consent, that I will be removed from the list of persons eligible to receive Prerecorded Prescription Calls from Walgreens and that I will not receive such calls in the future unless I separately provide my consent, which I may (but need not) do below.*

I state under penalty of perjury under the laws of the State in which this Affirmation is executed and the United States of America that the information provided above is true and correct.

Signature: _____     Date: _____
                                                                              (MM-DD-YY)

Printed Name: _____

<u>Voluntary Request to Receive Future Prerecorded Prescription Calls:</u>

☐   I now wish to receive Prerecorded Prescription Calls from Walgreens, and I consent to receive such calls. *I understand that providing this consent is not required for me to submit a claim in the settlement, nor is it required for me to purchase any goods or services from Walgreens.*

**Questions, visit www.PrescriptionCallSettlement.com or call 1-877-392-3209**

108647368501
WTTCRD1

A settlement has been reached in a class action lawsuit against *Walgreen Co.* ("Walgreens"). The lawsuit alleges that Walgreens made prerecorded calls to the cellular telephones of certain pharmacy customers to remind them when their prescriptions were due for refill ("Prerecorded Prescription Calls"), without their consent. Walgreens denies any wrongdoing and maintains that Prerecorded Prescription Calls are medical alerts that its customers want and are made with their consent. The settlement does not establish who is correct, but rather is a compromise to end the lawsuit. The lawsuit is called *Kolinek v. Walgreen Co.*, Case No. 13-cv-04806, and is in the U.S. District Court for the Northern District of Illinois.

<u>Why am I being contacted?</u> Our records show you may be a "Settlement Class Member." Settlement Class Members are all individuals in the United States who received Prerecorded Prescription Calls from Walgreens called on their cellular phones. You may be entitled to payment under the settlement if you affirm that you did not consent to receive the Prerecorded Prescription Calls, but in that case you will not be eligible to receive these reminder calls on your cell phone in the future unless you provide consent for future calls (which you may do on the Claim Form).

<u>What can I get out of the settlement?</u> If you're eligible and the Court approves the settlement, you could receive a cash payment. Settlement Class Members will receive equal shares of an $11 million Settlement Fund that Walgreens has agreed to create, after the payment of expenses and fees. If the individual payments would be less than $15, you will have a second chance to exclude yourself from the settlement or Walgreens may pay you the difference up to $15.

<u>How do I get my payment?</u> Just complete and verify the short and simple Claim Form attached to this postcard. You can also get a paper copy of the Claim Form by calling 1-877-392-3209, or by visiting the website www.PrescriptionCallSettlement.com. You also have the option of filing a claim online. All Claim Forms must be postmarked or submitted on the settlement website by July 22, 2015.

<u>What are my options?</u> You can do nothing, submit a Claim Form, comment on or object to any of the settlement terms, or exclude yourself from the settlement. If you do nothing or submit a Claim Form, you won't be able to sue Walgreens in a future lawsuit about the claims addressed in the settlement. If you exclude yourself, you won't get a payment but you'll keep your right to sue Walgreens on the issues the settlement concerns. You must contact the Settlement Administrator by mail to exclude yourself. You can also object to the settlement if you disagree with any of its terms. *All Requests for Exclusion and Objections must be received by July 17, 2015.*

<u>Do I have a lawyer?</u> Yes. The Court has appointed lawyers from the law firm Edelson PC as "Class Counsel." They represent you and other Settlement Class Members. The lawyers will request to be paid from the Settlement Fund. You can hire your own lawyer, but you'll need to pay your own legal fees. The Court has also chosen Robert Kolinek—a Class Member like you—to represent the Class.

<u>When will the Court approve the settlement?</u> The Court will hold a final fairness hearing on August 5, 2015 at 9:30 a.m. at the Everett McKinley Dirksen United States Courthouse, 219 S. Dearborn St., Chicago, IL 60604, Courtroom 2103. The Court will hear objections, determine if the settlement is fair, and consider Class Counsel's request for fees and expenses (of up to 35% of the Settlement Fund) and an incentive award. These requests will be posted on the settlement website.

*Visit www.PrescriptionCallSettlement.com for complete information.*

WTT



NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES

## BUSINESS REPLY MAIL
FIRST-CLASS MAIL    PERMIT NO. 1810    PROVIDENCE, RI

POSTAGE WILL BE PAID BY ADDRESSEE

KOLINEK V. WALGREENS CO. SETTLEMENT ADMINISTRATOR
PO BOX 43358
PROVIDENCE RI 02940-9558



# EXHIBIT A



## CONSUMER HEALTH INFORMATION CORPORATION

Home | Who We Are | Services | Portfolio | Media Center | Career Opportunities

# Why is It Important to Refill My Prescription Medicines?

**Felicia E. Glenn, PharmD Candidate 2008**
**Hampton University School of Pharmacy**
**Prepared during Consumer Health Information Corporation Clerkship**
**McLean, VA**

It is a long day at the office on Monday. When you remember to pick up your high blood pressure medication, all of the pharmacies in your area are closed for the day. You don't feel like traveling across town. The next day, when you realize that you still had to pick up your medicine you then tell yourself, "Well, I feel great. I'll pick it up when I need it. It costs too much anyway." One week later, you develop a throbbing headache that is not relieved by Tylenol®. Within 30 minutes you are rushed to the hospital. The doctor tells you that your blood pressure is too high. At first, she thinks that your blood pressure medicine is not working. You tell the doctor that you have stopped the medicine because you felt good. The doctor says "You can't expect that your blood pressure is going to stay down if you do not take your medicine. You need to get your refills on time no matter what."

**Importance of Refills**

Not refilling prescription medicines is a problem that many people deal with on a daily basis. Some of the most common reasons that people find it difficult to get their refills include: certain medicines are too costly, the bothersome side effects, too many pills to swallow, no transportation to the pharmacy, unaware of how to take or use the medicine, inconvenient to use, feel no more symptoms, feel that the medicine is no longer working, along with many other reasons. The health consequences of not refilling prescription medicines can be severe, particularly for patients with heart disease or heart disease risk factors. This problem contributes to the lack of blood pressure control in patients with high blood pressure and cholesterol reduction in patients with high cholesterol. As a step closer to better health, refilling your medications can directly decrease your risk of developing heart disease complications or related deaths.

CALLOUT: Difficulty with refilling prescription medicines is a serious problem that affects healthcare today. According to the New England Journal of Medicine "Approximately half of patients receiving statins* will stop their therapy within 6 months of starting therapy."

*Statins are medicines used to decrease cholesterol.

The American Heart Association states that "more than half of all Americans with chronic diseases do not follow their doctor's recommendations for taking medications and changing their lifestyles." One study found that 40% of patients did not refill their prescription medicine(s) for heart related conditions. Until people start taking their heart medicines correctly, heart disease will continue to threaten the lives of many Americans and the statistics for heart disease will not change:

- Heart disease accounts for about 1 million deaths every year in the U.S.
- The expected cost of heart disease for 2008 is going to be about $448.5 billion.
- Nearly 2,400 Americans die of heart disease each day. This means 1 person dies every 37 seconds.
- Heart disease claims about as many lives each year as cancer, chronic lung diseases, car accidents and diabetes combined.
- The National Center for Health Statistics states that if all forms of major heart disease were eliminated than life expectancy would rise by seven years.
- The Framingham heart study indicated that high blood pressure is a very common risk factor for heart failure.

- Stroke has been shown to be the leading cause of serious long-term disability in the U.S.

**Consequences of Missing Refills**

What people don't realize is that not refilling their medicine on time or are stopping their medicines could cost them more in the long run. This could cause the development of other heart disease related complications, such as heart attack, stroke or heart failure. These complications require more medications and other related care that leads to more medical costs. Studies have shown that of all the medication-related hospital admissions in the U.S, 33% to 69% are due to not taking medications. This results in a significant burden to overall healthcare costs with estimated yearly cost in the U.S of $396 to $792 million.

**Benefits of Refilling Your Medicine**

Research has shown that when patients take their medications correctly, they have less chance of developing future health complications and their medical costs can go down.

- One study showed that when patients take high blood pressure medications correctly, then their risk of developing
  - A stroke falls by 35% to 40%
  - A heart attack falls by 20%-25%
  - Heart failure falls by greater than 50%.
- Another study showed that when patients take their cholesterol medicines correctly, then their risk of developing
  - Heart disease resulting in death reduces by 42%
  - A heart attack reduces by 37%
  - A need for any heart procedure reduces by 37%.

Just know that refilling your medicines is an easy step that anyone can take.

### QUICK TIPS TO KEEP REFILLS ON TRACK

- Keep a medicine refill chart that includes all of your current medicines.

Name:_____    Date:_____

**REFILL CHART**

| Name of Medicine & Strength | Prescription Number | Pharmacy Phone number | Refill Dates | | | Number of Refills Left |
|---|---|---|---|---|---|---|
| | | | 1st | 2nd | 3rd | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

- A calendar or personal organizer that includes your next refill dates.

- Try a dry erase board. This is a good way to keep track of your current medicines.

- Go Digital. Store medicine reminders in your watch, PDA, cell phones, or electronic organizer.

- Refill your medicines a few days before running out. This reduces any problems that prevent you from getting your medicine on time. (i.e. pharmacy ran out of medicine, the pharmacy is closed, didn't have time to call in refill, etc...)

- o  Enroll in your pharmacies automated refill system.

- Enroll in mail order pharmacy.  Order in advance of one week to get your refills on time. This is a convenient way to receive your refills if you have a very busy lifestyle.

- Other resources
  - o  **Intelecare.**  Online program that supports reminders by e-mail, text messaging and voice messages.  Provides numerous reminders types such as: take your medicine, refill your medicines or keep appointments. You must register online to use this service.  This service is free of charge.  (www.intelecare.com)
  - o  **MediReminder.**  Online program that provides you with automated reminders by email, telephone call or text messages.  You can decide how often you would like to receive your messages.  You can customize MediReminder to fit your own needs. Must register online to use this service.  This service is free of charge. (www.mymedireminder.com)

No matter what condition you are taking prescription medicine for, it is always important to refill your medicine when required.  Medicines that are used to treat any condition can only be effective only when taken correctly and refilled on time to prevent missed doses.  Talking with a doctor or pharmacist can help to prevent any problems about refilling your medicine. Take time out and ask questions if when there is a concern about your medicine. The more you understand about your condition and the effects of taking your medicine(s), the more likely you will return to the pharmacy and refill it. More importantly, getting in the good habit of refilling your medicine(s) on time can help you get the most benefit of your medicines and even save you money in the long run.

© 2008 Consumer Health Information Corporation. All rights reserved.

‹ **Back to Taking Control**

▲ TOP OF PAGE  |  SITE MAP  |  CONTACT US  |  REQUEST A PROPOSAL  |  SEARCH           **GO**

© 1999-2008 Consumer Health Information Corporation. All rights reserved.

# EXHIBIT B



# HealthPartners OnTrackRx



## Helping you stay on track with y
## medicine

### Did you know 50 percent of people d
### take their medicine correctly?

It's true. It's usually because:

- They forget
- It doesn't fit into their schedule
- They don't understand why they need to take it

Medicine can be confusing and that's why we're here to help.

HealthPartners® OnTrackRx gives you a solution to help keep
right path when it comes to taking your medicine. We provide
convenience and support you need—so you can focus on the
important things in your life.

## Why is it important to take your medicine
## correctly?

Taking your medicine correctly helps you in the long run. When you don't take your
medicine the way you should, it can sometimes affect your long-term health and you
can end up with more:

- Health problems
- Trips to the doctor
- Higher health care costs

For example:

- Skipping doses of some asthma medications makes it harder for the lungs to work
  well
- Not taking medicine for diabetes means that blood sugars aren't controlled, which
  can lead to blindness or kidney problems
- Not taking medicines for blood pressure or cholesterol can increase the chances of a
  heart attack or a stroke

# Ready to get started?
# Take this short quiz to find out how you can stay on track

1. It's OK to change my medicine dose if I'm feeling better or having side-effects.



True          False

## Does this s
## like you?
## If so, we're
## to help.

"I don't always reme
my medicine."

2. Most people follow their doctor's instructions when taking their medicine.

   

True          False

"I have too many me
take."

"I'd rather change m
than take my medici

3. Prescriptions for 30 days can usually be refilled about 1 week before running out.

   

True          False

"My doctor gave me
medicine to take and
understand why."

4. Medicine can cost a lot. Sometimes people have to choose between paying for groceries or their medicine.

   

True          False

"My medicines cost

"I'm worried about t
side-effects."

5. Some people can stop taking medicines when they live a healthier lifestyle.

   

True          False

"I sometimes forget
prescription on time.



# Together we can keep you on track!

7/16/15, 9:13 AM

We have ways to help you:  🕐 save time  💰 save money  👤 get support and questions
📅 get reminders

## myMailRx
🕐 💰 📅

Get your medicine delivered right to your doorstep. It's a quick and easy way to fill your routine prescriptions without forgetting. Plus, it can save you time and money too. Visit myMailRx or call Member Services.

## Rx Checkup
💰 👤

Work with a pharmacist from our Medication Therapy Management program for FREE. They check to see if your medicines are safe, working the way they should and fit your lifestyle. Visit Rx Checkup or call Member Services.

## Pharmacy Navigators
💰 👤

Knowledge is power. That's why our Pharmacy Navigators explain simple and straight-forward answers to complex pharmacy benefit questions —giving you peace of mind. Call **866-836-6938** 📞 to talk to a Pharmacy Navigator.

## Drug Cost Calculator
🕐 💰 👤

Find the best price for your medicines. Our drug cost calculator will help you find and compare medications, so you find the best price for your budget.

## Helpful reminders
🕐 📅

Get refill reminders through your Hea web account. You can also use special DidIts! to stay on track.

## Mobile apps
🕐 👤

Managing your medicine just got easi HealthPartners iPhone app and mobile prescriptions and more - all for free, r mobile phone. Get more info on how

Or try one of these great and easy-to-apps*:

**Mango Health** - Take control of yo medicine reminders and drug alerts ( iPhone users)

**MediSafe** - Get fun reminders to he stay on track with taking their medic iPhone and Android users)

**RxMindMe** - Keep track of your m getting helpful reminders and doctor (great for iPhone users)

## Health and well-beir resources
👤

Check out our health and well-being what you can do improve your health.

## Have a question? Get an answer. Call Member Services at on the back of your Member ID card to learn more.

' HealthPartners doesn't own, service or support Mango Health, MediSafe or RxMindMe mobile app downloads. Use of or health care advice from your health care provider. Regular phone rates may apply.

# EXHIBIT C

LOGIN | REGISTER | EMAIL SIGNUP



Managed Markets Network®

**About Us    News    Videos    Conferences    ACO Coalition    Continuing Educa**

# Improving Adherence to Cardiovascular Disease Medications With Information Technology



Improving adherence to long-term medication therapy remains a challenge. Health information technology interventions that leverage electronic medical records are promising, low-cost approaches for increasing adherence.

**Published Online:** November 16, 2014

William M. Vollmer, PhD; Ashli A. Owen-Smith, PhD; Jeffrey O. Tom, MD, MS; Reesa Laws, BS; Diane G. Ditmer, Pharm David H. Smith, PhD; Amy C. Waterbury, MPH; Jennifer L. Schneider, MPH; Cyndee H. Yonehara, BS; Andrew Williams, PhD; Suma Vupputuri, PhD; and Cynthia S. Rand, PhD

### Objectives
Evaluate the utility of 2 electronic medical record (EMR)-linked, automated phone reminder interventions for improving adherence to cardiovascular disease medications.

### Study Design
A 1-year, parallel arm, pragmatic clinical trial in which 21,752 adults were randomized to receive either usual care (UC) or 1 of 2 interventions in the form of interactive voice recognition calls—regular (IVR) or enhanced (IVR+). The interventions used automated phone reminders to increase adherence to cardiovascular disease medications. The primary outcome was medication adherence; blood pressure and lipid levels were secondary outcomes.

### Methods
The study took place in 3 large health maintenance organizations. We enrolled participants who were 40 years or older, had diabetes mellitus or atherosclerotic cardiovascular disease, and were suboptimally adherent. IVR

participants received automated phone calls when they were due or overdue for a refill. IVR+ participants received these phone calls, plus personalized reminder letters, live outreach calls, EMR-based feedback to their primary care providers, and additional mailed materials.

### Results
Both interventions significantly increased adherence to statins and angiotensin-converting enzyme inhibitors/angiotensin receptor blockers (ACEIs/ARBs) compared with UC (1.6 to 3.7 percentage points). Adherence to ACEIs/ARBs was also significantly higher for IVR+ relative to IVR participants. These differences persisted across subgroups. Among statin users, IVR+ participants had significantly lower low-density lipoprotein (LDL) levels at follow-up compared with UC ($\Delta$ = –1.5; 95% CI, –2.7 to –0.2 mg/dL); this effect was seen mainly in those with baseline LDL levels >100 mg/dL ($\Delta$ = –3.6; 95% CI, –5.9 to –1.3 mg/dL).

### Conclusions
Technology-based tools, in conjunction with an EMR, can improve adherence to chronic disease medications and measured cardiovascular disease risk factors.

*Am J Manag Care. 2014;20(11 Spec No. 17):SP502-SP510*

PATIENT (Promoting Adherence to Improve Effectiveness of Cardiovasular Disease Therapies) was a pragmatic clinical trial designed to improve adherence to cardiovascular disease medications using a low-cost, electronic medical record linked telephone reminder intervention. Using broad eligibility criteria, we enrolled 21,752 adult members of a health maintenance organization in a randomized trial to evaluate whether 2 phone reminder interventions, compared with usual care, could improve adherence to statins, angiotensin-converting enzyme inhibitors, and angiotensin receptor blockers.

- We saw small but statistically significant improvements in adherence.
- Among statin users, intervention participants had significantly reduced followup lipid levels and improved lipid control compared with usual care.
- The public health impact of these changes, applied across large populations, is uncertain.

Nonadherence to chronic cardiovascular disease (CVD) therapy is well-documented and contributes to increased CVD risk and morbidity.[1,2] Low adherence is often the broken link between new therapies and improved health outcomes,[3] and is a target for reducing healthcare costs.[4,5]

The most effective adherence interventions include both educational and behavioral strategies[6]; however, these can be costly. Further, most interventions thus far have enrolled select patient populations, limiting generalizability. Recently, research has focused on using health information technologies (HITs) to develop low-cost interventions for large populations.[7,8]

We recently reported on a trial to improve adherence to inhaled corticosteroids in 8517 adult health plan members with asthma.[9] That study used automated telephone reminder calls linked with an electronic medical record (EMR). It found a small (2 percentage point) but statistically significant improvement

over 18 months in the intent-to-treat analysis, and an increase of 6 percentage points in adherence and decreased asthma symptoms among patients who took the calls. Derose and colleagues[10] tested automated reminder calls followed by mailed letters to increase adherence among 5216 adults who received a new statin prescription. The intervention improved fill rates over the next 25 days by 16 percentage points. These and other studies[11-14] suggest that HIT/EMR-based reminder interventions offer a promising population-based approach to promoting adherence.

We present the main outcomes for PATIENT (Promoting Adherence to Improve Effectiveness of Cardiovasular Disease Therapies), a pragmatic trial involving members of a health maintenance organization that evaluated the effectiveness of 2 EMR-linked, automated reminder interventions, compared with usual care (UC), in increasing adherence to cardiovascular medications.

## METHODS

Additional methods, details, and results are included in the **eAppendix**, available at **www.ajmc.com**.

### Study Design

PATIENT was a paralel arm, pragmatic clinical trial in which 21,752 adults were randomized to receive either UC or 1 of 2 interventions designed to increase adherence to statins, angiotensin-converting enzyme inhibitors (ACEIs), and angiotensin receptor blockers (ARBs). The study was funded as a CHOICE (Clinical and Health Outcomes Initiative in Comparative Effectiveness) grant[15] by the Agency for Healthcare Research and Quality, and had a mandate to carry out comparative effectiveness research in large, "real-world" populations and to assess treatment effects overall and in relevant subgroups.

Assuming a standard deviation of 0.28 (ie, 28 percentage points), the study had 95% power to detect deltas of 0.025 (2.5 percentage points) in adherence to statins and 0.029 (2.9 percentage points) to ACEIs/ARBs for each active intervention arm relative to UC for the cohort as a whole. Subgroup power is shown in the eAppendix A.

### Research Setting

Participants were members of one of 3 regions of the Kaiser Permanente (KP) health plan—Northwest (KPNW), Hawaii (KPH), and Georgia (KPG)—which collectively serve about 944,000 individuals. The Institutional Review Boards of each region approved the study and waived informed consent. An external Data and Safety Monitoring Board and local clinician advisory boards at each site approved the study protocol and monitored the study for safety and data quality.

### Participant Selection and Randomization

Using each region's EMR, we identified participants 40 years and older with diabetes mellitus and/or cardiovascular disease (CVD), suboptimally (<90%) adherent to a statin or ACEI/ARB during the

previous 12 months, and due or overdue for a refill. We excluded only individuals with medical conditions that might contraindicate the use of these medications, such as medication allergies, liver failure, cirrhosis, rhabdomyolysis, end-stage renal disease, chronic kidney disease (see eAppendix Table A1 for complete list) and those on KP's "do not contact" list.

Within each region, we randomly assigned a sample of eligible members to the 3 primary study arms (usual care and 2 intervention arms) in a 1:1:1 ratio at the study outset and repeated this process for previously ineligible members who subsequently met eligibility criteria over the following 5 months. Computer-generated randomization assignments were stratified by region and blocked to assure balance across treatment arms. Neither participants nor providers were blinded to treatment assignment. Study enrollment began in December 2011 and continued through May 2012. Interventio and outcome assessment continued through November 2012.

## Study Interventions

UC participants had access to the full range of usual services, including each region's normal educatic and care management outreach efforts to encourage statin and ACEI/ARB use.

*Interactive Voice Recognition (IVR) Calls.* IVR participants received automated phone calls when they were due or overdue for a refill. The calls used speech-recognition technology to educate patient about their medications and help them refill prescriptions (we created separate "refill" and "tardy" calls The flow of each call was determined by participants' responses; each call lasted 2 to 3 minutes. At randomization, IVR participants received a pamphlet explaining these calls.

Both call types offered a transfer to KP's automated pharmacy refill line. The tardy call also offered a transfer to a live pharmacist. With permission, obtained at the first successful call contact, the progran left detailed messages on answering machines or with another household member. Enhanced IVR (IVR+). In addition to IVR calls, participants in the IVR+ arm received a personalized reminder letter if they were 60 to 89 days overdue and a live outreach call if they were ≥90 days overdue, as well as EMR-based feedback to their primary care provider. IVR+ participants received additional materials, including a personalized health report with their latest BP and cholesterol levels, a pill organizer, and bimonthly mailings (Table A2 in eAppendix).

## Study Measurements

*Medication Adherence.* We used a modified version of the Proportion of Days Covered (PDC),[16] defined from pharmacy dispensing records, for our primary measure. Because we were measuring adherence to chronic medications patients were known to be taking at randomization, we modified the PDC (mPDC) to include the whole follow-up period as the denominator time frame rather than time fro first dispensing.[17] We accounted for medication on hand at randomization and ignored any medication remaining at the end of follow-up. We computed mPDCs separately for statins and ACEI/ARBs. To simplify enrollment logistics, we defined eligibility at baseline using the simpler Medication Possession Ratio (MPR), which we computed by dividing total days' dispensed supply by 365 and capping at 1.

***Other EMR-Based Data.*** We used the EMR to capture age, race, gender, healthcare utilization for diabetes and CVD, and BP and lipid levels. Consistent with the Healthcare Effectiveness Data and Information Set reporting guidelines,[18,19] we defined BP control as systolic BP (SBP)/diastolic BP <140/90 mm Hg and lipid control as an lowdensity lipoprotein (LDL) <100 mg/dL. Pre- and post BP measurements were available for 91.6% of ACEI/ARB users, while pre- and post LDL measurements were available for 84.2% of statin users; missing values were ignored.

## Statistical Analysis

We used an intention-to-treat analysis to compare primary and secondary outcomes between intervention and UC participants. All adherence analyses were conducted separately for users of stati and users of ACEIs/ARBs. We compared each intervention against UC using an α-level of 0.025. We then compared the IVR and IVR+ interventions against each other at an α-level of 0.05 only if either o these initial contrasts was statistically significant, thus assuring a trialwide α-level of 0.05. We used a similar adjustment procedure for all secondary analyses of treatment effects.

The primary analytic model compared post intervention adherence between intervention and UC participants using a general linear model that adjusted for site, gender, age (40-60 years, 61-70 years 71+ years), number of baseline medications (1-5, 6-10, 11-15, 16+), comorbid diabetes/CVD status, a baseline adherence (≤.4, .4-.75, >.75 for statins; ≤.5, .5-.75, >.75 for ACEIs/ARBs) as fixed main effec We assessed follow-up from randomization to end-of-study or loss of health plan coverage, whichevei came first; baseline refers to the 12 months prior to randomization.

In prespecified secondary analyses, we added interaction terms to our models to estimate subgroup-specific treatment effects and to test for treatment by subgroup interactions. We used similar analytic models to assess the impact of the interventions on BP and LDL-cholesterol levels as continuous variables. We used logistic regression for analyses of BP control and LDL-cholesterol control. All analyses were conducted using SAS version 9.2[20] or Stata version 11.2.[21]

## RESULTS



PDF is available on the last page.

Continue Reading (Page 2) >>



**ACO COALITION >**

**CE >**

**CONTRIBUTOR >**

**EVENTS >**

**FOCUS ON CML >**

**RESEARCH >**

**ESSENTIALS >**

Accountable Care
Acute Coronary Syndrome
Biosimilars
Care Management
Diabetes
Oncology
Obesity Essentials
Mantle Cell Lymphoma
Pain
Rare Disease
Value-Based Cardiology
Value-Based Insurance Design

**About U**

AJMC
AJAC
AJPB
EBO
EBDM
EBIID

**AJMC R**

Careers
Contact U
Privacy P
Terms & C

# EXHIBIT D

# MULTIBRIEFS : EXCLUSIVE

The leading source for targeted, industry specific news briefs.

powered by MultiView

HOME     INDUSTRIES     ABOUT     CONTACT          Search

# Automated drug-refill reminders increase adherence rates

**Jennifer S. O'Reilly**
Wednesday, December 10, 2014

**0**
COMMENTS

Share this article



Automated drug-refill reminders are everywhere — from a phone call that reminds CVS patients to pick up their medications to texts sent to patients' smartphones from Wal-Mart Pharmacy. These reminders can literally be a life-saver when it comes to busy patients needing to remember to refill their medications.

A recent study on drug-refill reminders published in a special issue of the American Journal of Managed Care included more than 21,000 members from Kaiser Permanente. The researchers found that adherence rates improved by a small 2 percent with reminders. This may sound like nothing, but small changes in

### Related Industries

Pharmaceutical

### Related Articles

Is pharmacy a smart career choice?

CVS's sneaky move to recoup loss of tobacco sales

Is overprescribing really to blame for antibiotic resistance?

Is clinical pharmacy really the future of our profession?

Impressive new smartphone apps in health and medicine

The only 3 things you need to know to be a good pharmacist

Experiment reveals the ugly side of open-source journal industry

3 surefire ways to kill your pharmacy business

### Recent Articles

New study damages old heart attack theory

whether people are taking their meds are a plus, the study's researchers say.

"The small jump might not mean a lot to an individual patient, but on a population level it could translate into fewer heart attacks, fewer deaths and fewer hospitalizations, which will ultimately have an important impact on public health," said Bill Volmer, lead author of the study.

Making sure patients are taking their prescribed drugs is a priority in the healthcare field and a huge concern for pharmacists, technicians, doctors and nurses. As many healthcare providers know, individuals can prevent heart attacks, strokes, diabetes and cancer. And they can have fewer stays in the hospital if they listen to the doctor's orders and take their pharmaceuticals as prescribed.

The study looked at the PROMPT medication reminder program. The PROMPT program included drug reminders such as usual care and phone call intervention. Patients using the program were given short voice calls that reminded them to refill their meds. It also gave them the option of being transferred to an automated line to refill their prescriptions and another option of speaking to a pharmacist if needed.

The study also noted that whether a refill-reminder system is to become "sustainable" really depends on whether patients find the automated reminders useful. Researchers followed up with participants of the study and found 70 percent appreciated receiving a reminder call, and approximately 60 percent said the calls motivated them to do a status check on their prescriptions (and take a proactive approach to taking their medication).

Refill reminders can be a life-saver for elderly patients who might forget to take their prescriptions. Older patients may also be taking more than one prescription, and this is another reason why the

ELL writing skills: Why they matter

Being generous with employee time off pays off

Virtual reality is poised to transform destination marketing

Success shortcut: Reach out to the right realtors

RAISE YOUR
PROFILE

See your work in future editions

YOUR CONTENT, YOUR EXPERTISE, **YOUR NAME**

Your Industry Needs YOUR Expert Voice
**&**
We've got the platform you need

**Find Out**

**How**

reminders are so helpful. Busy moms with children and also those who work full-time or those who have a lot of responsibilities can benefit from these emails, phone calls and/or text notifications.

"I feel that automated pharmacy-refill systems are valuable, especially for our senior patients," said Dianne E. Tilton, CphT, facilitator/instructor of the Pharmacy Technician Program at the Academy of Medical Professions. "These systems can give them a timeline for taking and managing their meds."

However, given all of this information, questions do still remain concerning refill reminders. Will small, independent pharmacies catch up with the big-box pharmacies and offer refill reminders as well? In a small, independent pharmacy, it may be the pharmacist who reminds patients to refill their medication whether in person or on the phone.

Pharmacists who develop a rapport with their customers are more likely to see prescription drug adherence as well. A recent article published in Pharmacy Times clearly reports that Americans who take certain drugs for chronic illnesses only take these important drugs 50 to 60 percent of the time. They also report that the nonadherence results in 125,000 deaths.

Healthcare professionals can increase adherence rates by encouraging others to sign up for regular refill reminders by letting them know the signup process is easy and only takes minutes. Lives depend on it.

Share this article

About the Author
Jennifer S. O'Reilly is a freelance writer, editor and researcher who has written for a wide variety of publications and websites. She is from New Orleans and currently



resides in Cypress, Texas. Jennifer received an associate of arts degree in journalism from Delgado Community College and her bachelor's degree in general studies from the University of New Orleans. She also holds a certificate from Rutgers University in the degree field of pharmacy technician. Writing is Jennifer's ultimate passion, and she has been writing in one capacity or another since 1994. You may reach her via email at Jenn@txfreelancer.com, and you can check out her website at jennifersoreilly.weebly.com/.

Add a comment...

☑ Also post on Facebook　　　　　　Posting as **Kelly Hortiz Kre**

Facebook social plugin

MULTI**BRIEFS**

Copyright © 2014 by MultiView, Inc. All the text, graphics, audio, design, software, and other works are the copyrighted works of MultiView, Inc. All Rights Reserved. Any redistribution or reproduction of any materials herein is strictly prohibited.