Lyndy Streight
2770 NW 19th ST
Oklahoma City, Oklahoma 73107
405-694-6269

FILED
JUL 17 2015 DC
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# OBJECTION TO CLASS ACTION SETTLEMENT; ROBERT KOLINEK, et. al. v. WALGREEN CO.; Case No. 13-cv-04806

I, Lyndy Streight, hereby object to the Settlement in *Kolinek v. Walgreen Co.*, Case No. 13-cv-04086 as follows:

## PRELIMINARY STATEMENT

I, Lyndy Streight, am a class member in *Kolinek v. Walgreen Co.*, Case No. 13-cv-04086. I received the Prerecorded Prescription Call(s) every time my prescriptions were ready, but I cannot recall the exact dates. Walgreens has a record of every prescription and on those dates are when I received the Prerecorded Prescription calls. My contact information is above.

## INADEQUATE CLASS REPRESENTATIVE

Plaintiff Kolinek is not an adequate class representative. Plaintiff has not established standing and the Court does not have jurisdiction over this case and cannot approve this settlement. First, the Supreme Court will address in Spokeo v. Robins whether Plaintiff is required to prove an injury-in-fact in order to establish standing. Second, even if an injury-in-fact is not necessary to establish standing, this case and settlement will not provide any redress for the Class. Redressability is a requirement for standing and jurisdiction. Even assuming Plaintiff did not consent to the calls, the TCPA provides an emergency exception for Defendant's conduct and the recent FCC rule decision providing an exception for free calls and texts regarding medication refills permits Defendant's conduct. As a result, Plaintiff does not have standing to represent the Class, the relief sought does not redress the perceived injury, there is no controversy, and the court has no jurisdiction. The Court should reject the Settlement and either dismiss the case, or force Plaintiff to

establish standing.

Class Counsel requests $5,000 for the Plaintiff Kolinek. Given that the the projected Claimant benefit is between $15 and $34, a $5,000 award is excessive, unreasonable, and unfair to the Class. The requested incentive award is at least 147 times greater than the projected settlement benefit of $34. Such a result is unfair to the average Claimant. If class representatives and their attorneys routinely expect the Court to award thousands of dollars in awards on top of their share of the settlement benefits, class representatives may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to protect. Plaintiff Kolinek should not be permitted to recover class benefits on top of a service award that represents more than a hundred times the average Class Member payout. Such amounts are unreasonable in comparison to the results achieved for Class Members. The Court should reduce the service awards or eliminate the incentive award.

## EXCESSIVE FEE REQUEST

Class Counsel's fee request is excessive, unreasonable, and unfair to the Class. Class Counsel requests 36% of the total Class benefits ($2,824,200). None of Class Counsel's justifications for its fee request support a fee increase. Class Counsel had a fee arrangement with Plaintiff for 33%; Class Counsel confirms that the market rate for TCPA cases involving similar settlement amounts is 30%; and the risk associated with this case is questionable. If the Court does not reject the Settlement, it should significantly reduce Class Counsel's fee request.

First, Class Counsel should abide by its agreement with Plaintiff. Class Counsel's contingency agreement with Plaintiff set a ceiling on any fee request at 33%; however, Class Counsel dismisses its agreement with Plaintiff for no reason and to the detriment of the entire Class. Such an arbitrary decision demonstrates Class Counsel, and not Plaintiff Kolinek, was in the driver's seat of this Class Action and Settlement. Class Counsel's decision to break its agreement with Plaintiff will cost the Class $235,350. Class Counsel's fee arrangement with Plaintiff goes against its fee request.

Second, the market rate in TCPA cases does not support Class Counsel's Fee request. Using the sliding scale method from Capital One, the market rate for fees in TCPA class actions is 30% for the first $10 million in class benefits. The class benefits in this case total $7,845,000. As a result, Class Counsel's fee request of 36% is contrary to the market rate for fees in similar TCPA settlements. Class Counsel's decision to exceed the 30% average will cost the Class $470,700.

Third, the risk associated with this case is questionable because Plaintiff's claims lack merit. Class Counsel should not be rewarded for squeaking out a settlement with a large corporation in exchange for a broad release. Class Counsel concedes that "There are no other cases of which counsel are aware involving calling programs that arguably benefited the called parties by providing time-sensitive medical notifications." In fact, this settlement harms Class Members more than its limited benefits help them. Over the past few years, less than 1.5% of all reminder call program participants opted-out of the program. Such a low opt-out percentage demonstrates that call recipients benefited from and preferred the free service provided by Walgreens. Further, some program participants opted back into the program after opting out. The letters submitted to the Court by Robert Habermann, William Mann, Betty Morgan, and Phyllis Mehl demonstrate the benefits of Defendant's service and the reason why such conduct is permitted under the TCPA and by the FCC. This Settlement threatens Defendant's reminder procedures and timely refill notices to the Class.

Additionally, Class Counsel did not engage in formal discovery until after the settlement agreement was made. Engaging in formal discovery only after an agreement is made runs contrary to Class Counsel's duties to the Class. Post facto discovery should not be confused with an attempt to adequately represent the Class. The limited formal discovery Class Counsel did engage in duplicated its informal discovery completed during settlement negotiations. Class Counsel's discovery did not benefit the Class' claims nor did it support the Class benefits. Given that this case was previously dismissed, and would likely be dismissed again if Defendant wasn't settling for the sole purpose of such an expansive waiver, any perceived "risk" in this case resulted from Plaintiff's lack of standing and meritless claims.

Finally, Class Counsel's fee request does not provide how many hours it invested into this action and what its fee structure is. Regardless of what percentage Class Counsel requests, that percentage must reasonably relate to

the hours Class Counsel expended in the action and what the relative hourly fee equates to. Otherwise, Class Counsel would receive an unreasonable windfall.

Class Counsel's fee award, if the Court decides to award one, should not exceed 25% to 30% of the total benefits available to the Class (excluding notice and administration costs, and the incentive award). This would provide Class Counsel with a range between $1,961,250 to $2,353,500, which is more than sufficient. If the Court reduces Class Counsel's fee award, the remainder should be distributed to the Class, pro rata.

## CY PRES PROVISION INADEQUATE

The settlement agreement also is inadequate because it does not provide for how unclaimed and/or remaining settlement funds will be distributed. The settlement contemplates a cy pres beneficiary and distribution, but cy pres in not mentioned in the Class Notice and a beneficiary was not named, which is unfair to the Class. A specific cy pres recipient should have been identified in the Settlement Agreement and Notice. The Class has the right to know how unclaimed settlement funds will be distributed and ultimately used. Additionally, the parties should have outlined how the cy pres recipient will utilize any remaining funds to benefit absent Class Members. No such stipulations were made here. Instead, Class Counsel abdicated its duties to the Class and simply reserved the decision for the Court. The Class has the right to know—and Class Counsel has an obligation to determine—how unclaimed settlement funds will be distributed and ultimately used before Final Approval, even if the issue is ultimately moot.

## CLAIMS PROCESS BURDENSOME

The Claims process is burdensome, unreasonable, and unfair. First, the Claim Form is not necessary to identify Class Members or valid addresses. Claims-made settlements are not appropriate where class members are readily

identifiable. The Parties and the Settlement Administrator have databases identifying the vast majority of valid Class Members. The Settlement Administrator should automatically distribute settlement benefits to each Class Member with an address, regardless of whether or not the Class Member submitted a Claim Form (unless they request exclusion). For the majority of the Class, the Claim Form is an unnecessary hurdle that only serves to depress the claims rate. Moreover, the claim form requirement is unfair for some Class Members that may have medical conditions that might prevent them from submitting a Claim Form. The Parties have not provided any reason why Class Members are required to submit a Claim Form. The Settlement Administrator should automatically distribute settlement benefits to each Class Member with an address.

## NOTICE PLAN INADEQUATE

The Notice plan is insufficient and inadequate because email notice is not the best practicable notice under the circumstances. Email notice, unlike mail notice, is not individual notice as required by Federal Rule 23.

Rule 23 requires that individual notice must be provided to those class members who are identifiable through reasonable effort. Individual notice unequivocally means direct first-class mail to class members whose names and addresses are ascertainable. Here, the Parties and the Administrator have the names and addresses for the vast majority of Class Members; however, the Parties are providing notice by email to any Class Member with an email address on file, and then by post card for those without an email or without a valid email. Direct individual notice via USPS mail is possible for the majority of Class Members. Such direct mail notice is the best practicable notice under the circumstances: mail notice is forwarded if the post office has a new address on file, the post office provides additional information for returned/failed notice, and notice recipients are more likely to receive and read mail notice than a random email from an unknown sender.

This is not a case where Class Members primarily dealt with Defendant via online communication. This also is not a case where mailed notice would be cost prohibitive. Did the Parties contact the major internet service providers to alert them that there would be a high-volume of batch email notices going out on a particular date and time? How many emails were sent but blocked by servers (as opposed to bounced back to the sender)? Did the Parties send

multiple emails to Class Members? Email clients like Google, Yahoo, or AOL do not forward or provide updated addresses to senders. Email notice, if permissible at all, should only be used as an alternative to direct individual mail notice where names and addresses are unavailable. Here, the Parties agreed to use an ineffective and impermissible notice plan for the sole purpose of saving money, not for the benefit of the Class.

The Court should extend the Notice Period and determine what additional notice may be necessary.

_____
Lyndy Streight