IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

Case No. 13-CV-04806
Hon. Matthew F. Kennelly

**ROBERT KOLINEK**, individually and on behalf of a class of similarly situated individuals,
Plaintiff,

v.

**WALGREEN CO.**, an Illinois corporation,
Defendant.

FILED
JUL 17 2015
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

### CLASS MEMBER'S OBJECTIONS TO FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND TO MOTION FOR APPROVAL OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD

For the reasons set out in this memorandum class member Michael Beskine ("Objector") respectfully urges this Court to disapprove the proposed final settlement, award of attorneys' fees and class representative's award or at least postpone approval until such time as the parties have provided sufficient information to support approvals. For ease of comprehension Objector has used the same defined terms used by Class Counsel, shown with an upper case first letter.

**1. Background to Objector's concerns over settlement**

Objector has received about 50 pre-recorded calls from Walgreens to Objector's cell phone since late 2012, stating a refill prescription was needed and or was ready for collection. On some occasions there were a series of such calls, and some calls were for an unconnected person concerning a Walgreens branch in a different State. On some occasions it transpired upon visiting Walgreens that the prescription was not in fact ready and there was either shop waiting time needed while it was prepared or it was necessary for Objector to leave and return later. Thus, there have been many nuisance calls by Walgreens to Objector over an about three year period. In addition, on some occasions the calls announcing medicine was ready for collection

1

were premature and caused Objector to have to wait in the Walgreens shop for a while during when on occasion Objector purchased items from the Walgreens grocery shelves.

## 2. Walgreens taking advantage of Class Counsel

Objector is concerned in case the Walgreens system design facilitated the premature announcement of medicine such that Objector was invited into Walgreens prior to the medicines' readiness such as to encourage Objector to spend waiting time shopping for purchases that would not have been bought but for the premature Walgreens prerecorded call. In a discussion in June 2015, with two members of Class Counsel it was apparent they were unaware of this situation and presumably it had not arisen in discovery because as pointed out by Objector at part 11 Class Counsel failed to perform adequate discovery and such discovery as was performed was only for Settlement confirmation purposes (see part 11 below).

Objector considers the settlement does not do justice to the unpleasantness inflicted by Walgreen's calls their violations of federal law and that the case has been settled prematurely in advance of necessary discovery and that it has happened because the interests of the Settlement Class have not been fully considered by Class Counsel and or have been ignored by them. "The control of the class over its lawyers usually is attenuated, often to the point of nonexistence." *Eubank v. Pella Corp.*, 753 F.3d 718, 719 (7th Cir. 2014). Class counsel seems to have failed to assess all the needs of the Settlement Class and or has ignored some of their needs.

> "[W] and other courts have often remarked the incentive of class counsel, in complicity with the defendant's counsel, to sell out the class by agreeing with the defendant to recommend that the judge approve a settlement involving a meager recovery for the class but generous compensation for the lawyers—the deal that promotes the self-interest of both class counsel and the defendant and is therefore optimal from the standpoint of their private interests."

*Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014).

"[W]hen a judge is being urged by both adversaries to approve the class-action settlement that they've negotiated, he's at a disadvantage in evaluating the fairness of the settlement

to the class". *Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014). "Enter the objectors. Members of the class who smell a rat can object to approval of the settlement." *Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014). Objector believes Class Counsel has prematurely reached a settlement and Objector sought to address Objector's such concerns with Class Counsel but it was to no avail.

Objector suspects and draws to the attention of the Court that Walgreens appear to be taking advantage of Class Counsel's desire for a hasty settlement to the detriment of the Settlement Class or sections thereof.

## 3 Haste of preparation and delay in filling memorandum of objection

On about June 25, Objector's previous phone calls to Class Counsel were retuned and Objector spoke in a conference call to two of Class Counsel. Objector expressed to Class Counsel Objector's concerns about the settlement but which they dismissed as wrong in law, misguided and inappropriate and they suggested Objector should exclude himself from the settlement. Class Counsel asked Objector to consider their points and to undertake to them not to make an objection until after they had the chance to speak to Objector again. On that basis Objector agreed not to do anything until July 4, by when Class Counsel had promised to call Objector to discuss Objector's objections again. However Class Counsel failed to comply with their undertaking and did not contact Objector again.

Amongst the effects of Class Counsel obtaining Objector's undertaking to defer objecting was to cause haste in and delay to, Objector's preparation and filling of this Memorandum of Objection. For the aforesaid reason Objector asks this Court (i) to admit this Memorandum of Objection in the unlikely event its receipt is delayed until after the filling deadline for objections; and (ii) to overlook drafting shortcomings caused by its haste of preparation.

**4 Attendance at Court hearing**

Objector informs the Court it is Objector's desire to attend the Court hearing of the settlement and reserves Objector's right to do so. However due to family care commitments Objector is unsure at this stage if he will definitely be able to attend.

**5 Failure to include Walgreens name in web address**

Objector disputes the Class Counsel claim at page 10 where it states "…class counsel worked to ensure that the class notice was as effective as possible." In fact, the class web address used www.prescriptioncallsettlement.com was not as effective as it could have been because it failed to include the name "Walgreens." The name Walgreens should have been included in the web site domain name.

Class Counsel should be required by the Court to establish a new web address designed to be an effective means of communication to the 9.2 million Settlement Class members, for example www.Walgreenscallsettlement.com which domain as of July 15, was available. The Court should defer consideration of the settlement until sufficient time has elapsed for Settlement Class members to access and consider the settlement terms.

**6 Failure to post documents on class web site**

The class web site at www.prescriptioncallsettlement.com did not include all the case's court filled documents such as "Declaration of Raffey S. Balabanian" and "Edelson PC Firm Resume." Objector contacted the office of Class Counsel by phone three times in June asking to speak to Class Counsel but who were unavailable and Objector asked for the missing documents but was rebuffed and told to obtain them from the Court or the Federal Pacer system. Eventually Ben Richman called Objector and after a lengthy discussion he agreed to post the missing court documents on the class web site. On or about June 30, Class Counsel posted "declaration of Raffey S. Balabanian" and "Edelson PC Firm Resume" but did not post any of the 13 exhibited

documents referenced as numbers 1, 40, 44, 46, 48, 51, 53, 54, 57, 58, 61, 63 and 79, in "Declaration of Raffey S. Balabanian."

The failure until about June 30, 2015, of Class Counsel to post said two documents on class web site and their continued failure to post 13 exhibits has deprived Settlement Class members of information and understanding of the settlement. Objector did not have sufficient time to prepare this objection because of the long delay to post the said two documents and Class Counsel's failure to post the 13 missing documents.

The Court should defer consideration of the settlement until sufficient time has elapsed for Settlement Class members to access and consider the two late posted documents and the 13 still omitted documents.

**7 Failure to disclose basis of likely payout being $34 per claim and 1.6% class take up**

Plaintiff's Memorandum of Law in Support of Motion for Approval of Attorney's Fees, Expenses, and Incentive Award claims on page 1 states "...Plaintiff and Class Counsel reasonably anticipate that each claiming Class Member will receive at least $34 per approved claim." On page 8 Class Counsel proposes that the Settlement Fund will be shared out and "....based on the current number and projected rate of claims through the end of the settlement period Class Counsel estimates will be approximately $34 per claimant." Class Counsel failed to disclose their estimate of the expected numbers of claimants. Class Counsel also failed to disclose the basis of their estimation method that resulted in the $34 sum and failed to give any indication of the potential margin of error involved.

Therefore, Objector recreated the calculation,[1] which results in the number of claimants being 147,523, representing 1.6%[2] of all 9.2 million Settlement Class members. In effect the number 147,523 has been used by Class Counsel to calculate that $34 will be obtained. The obvious question arises where did the number 147,523 originate, who obtained it and how was it

---

[1] 11,000,000 [fund] -3,155,000[ admin] - 2,824,200 [Class Counsel fees]-5,000 [Incentive]= 5,015,800 / 34=147,523
[2] 147,523/9,200,000=0.0160351

5

obtained? None of these issues are answered in documents provided to Settlement Class members so far as Objector could ascertain, and applying the words of Alex Kozinski and Marcy Tiffany "as best one can tell, he pulls those figures out of his ear."[3]

Objector takes issue with Plaintiff's and Class Counsel's assertion that $34 and by implication 1.6% of class members will make valid claims because no basis whatsoever has been provided for the selection of 1.6% as the take up per cent. In addition the Declaration of Mr. Balabanian is conspicuous by its complete absence of the estimated number of claimants or the estimated sum $34 or any sum that will be received by Settlement Class members.

Objector would have expected that an expert would have been appointed to assess the likely take up of claiming by Settlement Class members and that the material assumptions so used would be disclosed. However, so far as Objector has been able to ascertain from the documents provided by Class Counsel an expert was not appointed.

The Court should defer acceptance of the settlement until such time as the Class Counsel have provided a reliable basis for the selection of 1.6% of Settlement Class members being valid claimants.

In addition, Objector avers that the assertion by Class Representative that he reasonably anticipates claimants will receive at least $34 cannot possibly have any substance because Class Representative is hardly in any position to be able to make estimates of such take up. Class Representative did not disclose the basis or source of his estimation. If the Class Representative has seen the underlying calculations and estimations that were prepared by some party on his and the Settlement Class's behalf he should so state to the Court and to the Settlement Class members.

The estimation of the amount of money to be received by each Settlement Class member is the most critical aspect of the settlement and if it transpires in actuality to be significantly

---

[3] Opposition to Plaintiffs' motion for final approval of class action settlement in case No.2-12-cv-08238-BRO-PJW.

greater than 1.6% take up, it will result in a significantly lower sum than $34 paid to claiming Settlement Class members.

The Court should defer approval of the settlement until the Class Representative has provided a reliable basis to support his assertion that he anticipates $34 per claimant.

**8 Proposed Class Certification**

The "Settlement Class" is defined in the proposed Class Action Settlement Agreement as "All individuals in the US to whom Walgreens placed a "Prerecorded Prescription Call" to their cellular phone." And "Prerecorded Prescription Calls" are defined as "any prerecorded voice prescription refill reminder call to a cellular telephone placed by Walgreens and/ or any third party acting on its behalf." There is no limitation as to time and presumably the Settlement Class is intended to cover recipients of all such calls made until the date of the settlement. There is no start date stated, although in the documents the year 2012 features and presumably is intended in some way to be the defining start date for calls to the class. In the Declaration of Mr. Balabanian at para 26 page 7, he asserts that Walgreens would challenge class certification but does not state on which grounds.

In *Dukes*,[4] the Supreme Court provided class certification guidance, which suggests to Objector that there may well be valid grounds for refusing certification of the 9.2 million Settlement Class members being certified as a single class. In particular Objector notes in the documents provided by Class Counsel, that they show various different ways by which Settlement Class members cell numbers were obtained by Walgreens and under differing stated purposes. Therefore Objector urges the Court to enquire fully into the validity of the precise class definition being used.

**9 The "Very Difficult and Risky Case" Issue**

---

[4] *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

Borrowing some of the words of Alex Kozinski and Marcy Tiffany,[5] Plaintiff's counsel congratulate themselves for having settled a case that is fraught with risk, delay and difficulty, but offer nothing more than genialities to support their self-serving assertion. No facts are cited in support of this assertion, which is hardly a surprise because they did not perform any discovery, other than to confirm their own proposed settlement after the event.[6]

In the Declaration of Mr. Balabanian at para. 25 he claims there are "... risks associated with continued litigation" relevant to the Class. However in fact there are no risks faced by 98.4% of the Settlement Class and only 1.6% of the Class face a minimal risk they might ultimately receive less than $34[7] each, were the case ultimately not to be settled or won in Court at least as advantageously.

Therefore, the Court must strike out from its consideration of the merits of the settlement that there are any discernable risks to the Settlement Class from continued litigation.

On page 1 of the fee memorandum[8] it claims "With respect to risks Plaintiff[9] and Class Counsel faced, they were legion." The Memorandum fails to particularize the nature of risks claimed to have been faced by Plaintiff. It is averred that there were not any discernable risks faced by Plaintiff whatsoever, other than the possibility he would not receive a class award of $5,000 if the settlement were not approved.

Therefore, the Court must strike out any consideration of risks being faced by Plaintiff.

**10 Proffered class benefits from changes to Walgreens' systems are bogus**

Plaintiff implies the Settlement Class gain by changes being made by Walgreens to its systems in order to comply with its statutory obligations. That is bogus because the changes are for the benefit and arise from the obligations of Walgreens not the Settlement Class members.

---

[5] Opposition to Plaintiffs' motion for final approval of class action settlement in case No.2-12-cv-08238-BRO-PJW.
[6] Id.
[7] Or such lower sum as results from actual take up if greater than estimated by Class Counsel
[8] Plaintiff's memorandum of law in support of motion for approval of attorney's fees. Expenses , and incentive awards.
[9] Plaintiff is defined at part 1 on page 1 as Robert Kolnick.

8

At page 9 Plaintiff's attorneys claim "all told the implementation of these changes to its systems will require Walgreens' expenditure of several millions of dollars in hard costs. (Balabanian Decl. #24[10])" but does not explain the meaning of "hard costs". The Cambridge dictionary gives two slightly different meanings to "hard costs" as follows:

- Finance meaning: "money paid for building supplies and the work involved in building"
- Accounting meaning: "the money that a company pays for a hard asset such as a building, equipment, or the products it sells."

It is averred that such "hard costs" incurred by Walgreens are completely irrelevant to the Plaintiffs and do not involve any benefit whatsoever to the Settlement Class. Such hard costs incurred by Walgreens are for the purposes of improving its business and complying with its legal obligations and do not in any way comprise a gain to the Plaintiffs and should not be brought into consideration in the settlement. The Court must completely ignore these hard costs.

**11 Inadequacy of discovery performed for Settlement Class**

In the Declaration of Mr. Balabanian on page 6 para 22 claims "...performing extensive discovery" and at para 28 "through contentious litigation... the Parties[11] have assembled the information necessary to fully assess the strength of Plaintiff's claims." At para N on page 5 in the settlement agreement it is claimed that Class Counsel concluded the settlement terms were fair, adequate and reasonable, based on "their comprehensive examination and evaluation of the law and the facts relating to the matters at issue in the Action." Objector takes issue with Class Counsel's assertion to have performed a comprehensive examination of the facts.

Objector received Prerecorded Prescription Calls for a person unknown to Objector informing Objector the unknown person's prescriptions were ready for collection. It transpired

---

[10] Para 24 on page 7 does not in fact make any reference to "Hard Costs".
[11] The term Parties is defined in the proposed settlement agreement at para 1.19 meaning "Plaintiff Robert Kolinek and the Settlement Class, on the one hand, and Defendant Walgreens on the other. "

9

the prescriptions were waiting to be collected from a Walgreens branch in New Jersey. Objector has never been to New Jersey and had no relation to the erroneous calls. Had Class Counsel performed discovery with due diligence it would have ascertained there were such issues at fault in the Walgreens' systems.

At para K on page 4 of the Class Action Settlement Agreement it states "...the Parties agreed to engage in further formal discovery to **confirm**[12] the fairness, adequacy and reasonableness of the proposed settlement." At para 8 on page 3 of the Declaration of Rafey S Balabanian he stated "...the Parties finalized the material terms of an agreement in principal to resolve the case, subject to additional (**confirmatory**[13]) discovery" and at para 12 on page 4 "...and also confirm the fairness and reasonableness of the settlement". The pertinent word being **confirm** rather than **ascertain**.

Objector finds it highly objectionable that Class Counsel's premeditated purpose of discovery was confirmatory of the fairness, adequacy and reasonableness of the proposed settlement. To perform confirmatory discovery actions preordains the outcome. Objector avers that the objective of the formal discovery should have been to ascertain whether or not the proposed settlement terms were fair, adequate and reasonable.

The Court must defer approval of the proposed settlement until such time as discovery has been performed to ascertain whether or not the terms of the proposed settlement are fair, adequate and reasonable.

### *11.1 Inadequacy of deposition*

The settlement agreement at page 4 para L explains that a one day deposition was taken of one person from Walgreens on January 16, 2015. Objector avers that it is wholly inadequate to perform a one day deposition of one person as a means to enquire into the operations of

---

[12] Objector's emphasis
[13] Objector's emphasis

Walgreens calling systems over a three year period to 9.2 million victims involving hundreds of millions of calls[14].

## 12 Inadequacy of class representative

"The named plaintiffs are the representatives of the class—fiduciaries of its members—and therefore charged with monitoring the lawyers who prosecute the case on behalf of the class (class counsel)." *Eubank v. Pella Corp.*, 753 F.3d 718, 719 (7th Cir. 2014). However, "the lawyers who pick... class representatives ... have no incentive to select persons capable or desirous of monitoring the lawyers' conduct of the litigation." *Eubank v. Pella Corp.*, 753 F.3d 718, 719-20 (7th Cir. 2014)

At para 20 on page 6 of the Declaration of Rafey S Balabanian , he sets out the grounds he believes demonstrate that the Class Representative performed the role adequately. The other documents provided by Class Counsel to Settlement Class members do not set out in any detail the actions performed by Class Representative but based on the actions stated in such documents that have been disclosed shows the Class Representative has been inadequate for the task. The task involves representing 9.2 million victims of the largest US pharmacy chain with over 6,000 branches, which sent perhaps over 400 millions[15] of prerecorded calls to the mobile phones of 9.2 million victims from 2012 to date. The only stated actions by him are per para 20 on page 6 as follows:

1. reviewing the complaint and other [unnamed] documents
2. equipping attorneys with information for his claim
3. responding to requests for additional information during settlement negotiations
4. confirming his dedication to vigorously representing the interests of the Settlement Class

---

[14] Objector received about 50 calls and if that is applied to the class of 9.2 million would result in 9.2m x 50= 460 million calls
[15] See note 14 above.

However, it would appear Class Representative

1. Failed to attend Court hearings in about February 2014
2. Failed to attend the Court hearings in about July 22, 2014
3. Failed to attend mediation on October 15, 2014
4. Failed to attend mediation on March 16, 2015
5. Failed to attend or participate in the formulation of questions for the only deposition that took place on January 16, 2015
6. Failed to attend the settlement Court hearing in April 2015,
7. Failed to participate in the preparation of the proposed settlement offer [page 3, para 8]
8. Failed to participate in the preparation of the agreement in principal [para 9 page 3]
9. Failed to participate in any of the "numerous teleconferences" between the Parties [see para 7 page 2]
10. Failed to participate in the preparation of the agreement to mediate the case [see para 7, page 3]

Objector asks Court to reject Class Representative as being unsuited and unqualified to represent the interest of the Settlement Class .

**13 Class representatives recommendation to approve settlement**

At para 28 it claims "...Mr Kolinet believe[s]... the relief obtained for the Settlement Class through the settlement ... weigh heavily in favor of a finding that the settlement is fair, reasonable and adequate, and well within the range of approval." However, no basis or underlying reasons for his such stated belief are disclosed causing Objector to view it with suspicion.

Objector asks the Court to disregard Class Representative's stated belief or at least treat it with skepticism.

## 14 Delay in providing notice of Class Counsel fees

Shortly before July 4, 2015, Class Counsel posted on the class web site the Plaintiff's Memorandum of Law in Support of Motion for Approval of Attorney's Fees, Expenses, and Incentive Award. The deadline for filling objections is July 17, 2015. Therefore there was at most 14 days available for Objector and other Settlement Class members to consider its contents, look up its citations, and research the issues raised by Class Counsel. That 14 day period included the 4th July celebration period and also some time is needed to physically arrange delivery from across USA to the Court in Illinois. Therefore in reality there was far fewer than 14 days available to prepare objections to the said fee memorandum.

Objector avers it is highly objectionable that in effect Settlement Class members were provided with less than 10 days to assess, research and formulate written objections to Class Counsel's fees memorandum.

Objector respectfully requests the Court to defer any consideration of Class Counsel's fees and Class Representative's award, for 45 days so as to provide a reasonable period of time for due consideration and preparation of well formulated objections.

That having been said Objector sets out below preliminary objections prepared in haste and without sufficient time to research case law and statutes.

## 15 Class Counsel Fees

Class Counsel is defined as being the four named attorneys Messrs Edelson, Balabanian, Andrews and Richman. The memo does not state whether and if so, the extent of time resources devoted to the case by attorneys or support staff other than Class Counsel, for example employees or interns in the firm of Edelson PC. The Fee award is defined as attorneys fees and reimbursement of cost and expenses awarded by the Court to class counsel from the settlement

fund [para 1.12 page 8] Class counsel is defined as 4 attorneys it is unclear if the fees relate to any other attorneys eg associates.

### 15.1 Plaintiff's attorney's failure to disclose time spent on the case

At page 9, Class Counsel claim in order to reach the settlement they were "required to spend substantial time and effort litigating this case." However, Class Counsel have failed to state how much time they spent, nor by which grade of attorney and their employees. In the absence of disclosure of the actual amounts of time by grade of staff it is completely impossible to form any reliable view as to its reasonableness or otherwise.

By contrast the description of the activities performed by Plaintiff's Attorneys suggests in fact substantial time was not spent in the context of fees for that time being claimed of almost $3 million. If the average hourly rate were to be $300, the sum claimed would amount to about 9,400[16] hours. If the total hours were 1,000 the average rate per hour would be $2,824.20.

### 15.2 Failure to reduce fee percent to reflect early stage settlement

The settlement is at an early state in the litigation life of the case but no reduction in the fee percent has been proposed but which objector believes should have been. The case has not had a trial, no experts are disclosed as being appointed, only one day of deposition took place, no admissions are disclosed as having happened, no interrogatories are disclosed, and no discovery occurred except in confirmation of the settlement. Class Counsel did not it appears communicate with members of the class about the facts at issue. The delayed disclosure (see part 14 above) by Class Counsel of its fess request has deprived Objector sufficient time to research the appropriate per cent reduction. However, in the absence of case law and other research Objector suggests one third is an appropriate per cent reduction to form a basis for initial consideration, thereby reducing 30% to 20%.

---

[16] 2,824,200/300=9,414

Objector asks the Court to make a significant reduction in the contingency per cent to be applied to reflect the early stage in the case of its settlement.

*15.3 Excessive 20% fee loading sought for risk*

Class counsel portray its claim for fees of $2,824,200 as that it "…represents a modest 6% increase over the 30% base …" and on page 20 " a 6% risk adjustment increase…" but which is arithmetically incorrect. To compare 36% with 30% is in fact a 20% increase because 6/30 = 20% . It is not a 6% increase and to claim its 6% belittles the quantum considerably.

In the opinion of Objector a contingency fee at the level of 30% includes a risk loading to reflect the possibility that counsel will not prevail and will receive no payment at all. However, due to the delay in Class Counsel proving ts fee memorandum Objector was deprived the opportunity to research case law and published research on the issue.

*15.4 Exaggerated mediation effort*

There were not "multiple mediation sessions" as claimed at part 1 page 1, which it is averred is an exaggeration of the actual effort that was expended by Plaintiff's attorneys. The Cambridge dictionary defines "multiple" as meaning "very many of the same type, or of different types" and consequently two is not multiple. In other documents prepared by Plaintiff's attorneys they state there were two mediations held each of which lasting one day.

The Court should consider the mediation effort as at most 2 days and not multiple sessions.

*15.5 Payment date for Fee Award*

The Settlement agreement provides the fee award shall be paid within seven days of the terms listed in para 9.1 are met which appears to be the date of final Court approval of the settlement. It appears that date is well before the payment date to Settlement Class claimants.

Objector objects to the proposed payment to Class Counsel before the payment to claimants and before any appeal might be heard. In addition, Walgreens has the right to cancel its

agreement to the settlement in the event there are 5000 or more opt outs, which would be after Class Counsel has been paid, which Objector finds objectionable.

Objector urges the Court to delay any payment to Class Counsel until after the conclusion of any appeal and after payment is made to Settlement Class members.

**16 Insufficiency of Incentive award to class representative**

The proposed settlement provides an incentive award of $5,000 to be paid to the Class Representative in recognition of "his service as Class Representative" [page 2]. Objector takes issue with the quantum of proposed award, (notwithstanding the poor service performed explained in part 12 above) being wholly insufficient to recognize the service that would be necessary to perform the role of class representative properly and in full.

The Class Representative lives in Florida and the case is being heard in Illinois giving rise to considerable expense for the Class Representative to physically attend the Court in Illinois, mediation in Illinois, meetings with Class Counsel in Illinois and depositions in Illinois. The documents disclosed to Settlement Class members by Class Counsel do not state any expenses were payable to Class Representative. Therefore it is obvious that for Class Representative to travel from Florida to Illinois about 10 times over a 2 year period for several days at a time is going to entail considerably more travel and subsistence expense than $5,000.

As regards recognition of time and effort expended by Class Representative one would have thought it would have required many days of concentrated effort to understand the issues involved at each stage of the case and fully represent the rights of the Settlement Class. That the Settlement Class comprises 9.2 million persons spread all over USA would add to the obligation to devote considerable time and effort to fairly representing the entire class of 9.2 million. Objector cannot estimate the time needed to be so devoted but would guess it is measured in terms of over 30 working days of effort when including travel time and attendance times. A sum of $5,000 is wholly inadequate and can only indicate that a very modest degree of involvement is

measured by the sum of $5,000 being used, in Class Counsel's words to recognize "his service as class representative."

Objector believes that a sum of the order of $50,000 to $100,000 would be appropriate and respectfully asks the Court to defer approval of the settlement until a significantly larger Class Representatives award is included.

## 17 Potentially unmeritorious claim

In the event the claim were in fact unmeritorious and Walgreens were to be considered likely to prevail in Court, or reduce the class size significantly, it is not in the interests of the Settlement Class for Class Counsel to arm twist Walgreens into settling the action merely as a way to bring the action to an end and avoid bad publicity, legal costs of its defense and the miniscule risk of losing the claim. Objector is a long standing customer of Walgreens and relies on it to provide medicines for Objector's family, as does no doubt many if not most, of the 9.2 million Settlement Class members. It is not in the interest of Settlement Class members to be a party to arm twisting Walgreens into a settlement unless it is fully justified by the relevant law and facts actually provided in the case.

Michael Beskine, July 16, 2015

141 NE 3rd Ave. #8002,
Eighth floor
Miami,
Florida, 33132
Tel 305.450.5929
Class Member

**DISTRIBUTION**

**Clerk of Court**
Everett McKinley Dirksen United States Courthouse
219 South Dearborn Street
Chicago, IL 60604

**DRINKER BIDDLE & REATH LLP**
Bradley J. Andreozzi
191 North Wacker Drive
Suite 3700
Chicago, IL 60606
Attorney for Defendant

**EDELSON PC**
Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Ryan D. Andrews
randrews@edelson.com
Benjamin H. Richman
brichman@edelson.com
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Attorneys' for Plaintiff