**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

ROBERT KOLINEK, individually and
on behalf of all others similarly situated,

        *Plaintiff*,

        *v.*

WALGREEN CO., an Illinois corporation,

        *Defendant*.

Case. No. 13-cv-04806

Hon. Matthew F. Kennelly

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     NATURE OF THE LITIGATION .................................................................... 4

    A.      The Facts, the Law, and the Litigation History .................................. 4

    B.      The Mediations and the Settlement Agreement ................................. 7

III.    TERMS OF THE SETTLEMENT .................................................................... 9

    A.      Class Definition .................................................................................. 9

    B.      Class Member Payments .................................................................... 9

    C.      Prospective Relief ............................................................................. 10

    D.      Additional Relief .............................................................................. 10

        1.      *Payment of Notice and Settlement Administration Expenses* ............... 10

        2.      *Incentive Award for Class Representative* ................................. 10

        3.      *Payment of Attorneys' Fees and Expenses* ........................... 10

    E.      The Release ...................................................................................... 11

IV.     THE IMPLEMENTED NOTICE PLAN COMPORTS WITH DUE PROCESS .... 11

V.      THE SETTLEMENT WARRANTS FINAL APPROVAL ........................... 12

    A.      The Strength of Plaintiff's Case Compared to the Settlement ....................... 13

    B.      The Likelihood of an Increase in the Complexity, Length, and Expense of Continued Litigation Validates Final Approval of the Settlement ........... 18

    C.      The Opinion of Competent Counsel Favors Approval ................................. 19

    D.      The Stage of the Proceedings and Amount of Discovery Completed Weigh in Favor of Final Approval ........................................... 20

    E.      The Settlement is not a Product of Collusion and There are No "Red Flags" Present ................................................................. 21

    F.      The Reaction of the Settlement Class Favors Final Approval ..................... 23

i

1.    *Several Objections Fail to Comply with the Court's Preliminary Approval Order and the Requirements of the Settlement Agreement* ................................................................................ 25

      a. ...................................................................................O bjectors Hughes, Oldham, Streight and Sibley are not members of the Settlement Class ....................................... 25

      b.    The Dipuccio and Fuzzell objections were untimely filed .......... 27

      c.    Objectors Mehl, Habermann, Thomas, and Gonzales failed to provide all of the information required to raise a valid objection .................................................................. 28

2.    *The General and Philosophical Objections to the Settlement are not Obstacles to Final Approval* ................................................. 28

      a.    The general contention that the Settlement should have obtained more monetary relief for the Settlement Class does not change the fact that the actual recovery for the Settlement Class is substantial and consistent with other TCPA settlement ................................................................ 29

      b.    The philosophical objections to class actions miss the point and have no place in the analysis of the Settlement ..................... 30

3.    *Objections to Class Certification and the Adequacy of Kolinek as Class Representative Lack Merit* ................................................ 30

4.    *Objections to the Injunctive Relief Misunderstand the Settlement* ......... 31

5.    *Objections to the Requested Attorneys' Fees and Incentive Award Have No Basis in Law or Fact* .......................................................... 33

      a.    Class Counsel's fee request is consistent with the market-rate approach employed by courts in the Seventh Circuit .................. 33

      b.    The challenges to the reasonable incentive award are likewise without merit ................................................................ 38

6.    *The Objections Related to Cy Pres, Notice and the Discovery Taken are Mistaken and Should be Overruled* ................................................ 39

      a.    Streight and Spann are mistaken about a "hidden cy pres provision" ..................................................................... 39

b.    Any objections challenging adequate notice fail because the Court already found the proposed Notice Plan sufficient ....... 40

c.    The discovery taken in this case was more than adequate for final approval of the Settlement ................................. 41

7.    *The Objections Raised or Prepared by Professional Objectors Were Improperly "Ghost-Written" or Otherwise Call Into Question the Propriety of the Arguments Raised and the Objections' Underlying Motivations* ............................................................. 42

a.    Page Nash's "pro se" objection was ghost-written by serial objector Thomas L. Cox, and she herself has been represented numerous times in the past by fellow objector Gary Sibley ........ 44

b.    Objector Gary Sibley is himself an attorney and serial objector, who has worked frequently with Nash and her professional objector attorney, Thomas L. Cox ................................. 47

c. ..................................................................................L yndy Streight's "pro se" objection was ghost-written by serial objector Matt Kurilich ................................. 48

d.    Objector Melinda Franz's objection was ghost-written by serial objector Chris T. Cain for her other professional objector counsel, attorney W. Allen McDonald ......................... 51

e.    Todd Spann's objection is no different from the dozens of baseless objections his attorneys have filed in other large class actions and is tainted by his attorneys' misconduct ..................... 53

f.    The Cozby, Bullard, Hughes, and Oldham objection was filed by professional objector Chris Braun of Plews, Shadley, Racher & Braun LLP, who was himself ghost-written in this Court in the past ........................................................ 55

**VI.    CONCLUSION** ................................................................. 55

## <u>TABLE OF AUTHORITIES</u>

**UNITED STATES SUPREME COURT CASES:**

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974) .................................................. 11

*Haines v. Kerner,*
    404 U.S. 519 (1972) .................................................. 43

*Mims v. Arrow Fin. Servs., LLC,*
    132 S. Ct. 740 (2012) ................................................. 5

**UNITED STATES CIRCUIT COURT OF APPEALS CASES:**

*Americana Art China, Co., Inc. v. Foxfire Printing and Packaging, Inc.,*
    743 F.3d 243 (7th Cir. 2014) ................................... 36-37

*Armstrong v. Bd. of Sch. Directors of Milwaukee,*
    616 F.2d 305 (7th Cir. 1980) ................................... 20

*Blessing v. Sirius XM Radio, Inc.,*
    No. 11-cv-3696, 2012 WL 6684572 (2d Cir. Dec. 20, 2012) ......... 53

*Burns v. Elrod,*
    757 F.2d 151 (7th Cir. 1985) ................................... 11

*Cook v. Niedert,*
    142 F.3d 1004 (7th Cir. 1998) ................................. 36

*Freeman v. Berge,*
    68 F. App'x 738 (7th Cir. 2003) ............................... 25

*Eubank v. Pella Corp.,*
    753 F.3d 718 (7th Cir. 2014) ................................. 13, 22

*Hughes v. Kore of Ind. Enterprise, Inc.,*
    731 F.3d 672 (7th Cir. 2013) ................................. 39

*In re Mercury Interactive Corp. Sec. Litig.,*
    618 F.3d 988 (9th Cir. 2010) ................................. 37

*In re Synthroid Mktg. Litig.,*
    264 F.3d 712 (7th Cir. 2001) ................................. 33, 34

*In re Synthroid Mktg. Litig.*,
  235 F.3d 974 (7th Cir. 2003) .................................................................. 33

*In re Trans Union Corp. Privacy Litig.*,
  629 F.3d 741 (7th Cir. 2011) .................................................................. 34

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) .................................................................. 13

*Jeannine Miller v. Am. Honda Motor Co.*,
  No. 10-3157 (7th Cir. 2011) .................................................................. 53

*Milliron v. T-Mobile USA Inc.*,
  No. 09-3934 (3d Cir. 2011) .................................................................... 53

*O'Keefe v. Chisholm*,
  Nos. 14-1822, 2014 WL 1815308 (7th Cir. May 7, 2014) .............................. 45

*Paige Nash v. AT&T Mobility LLC*,
  No. 11-02497 (7th Cir. 2011) .................................................................. 44

*Silverman v. Motorola Solutions, Inc.*,
  739 F.3d 956 (7th Cir. 2013) .................................................................. 34

*Sullivan v. DB Investments, Inc.*,
  667 F.3d 273 (3d Cir. 2011) .................................................................... 54

*Sutton v. Bernard*,
  504 F.3d 688 (7th Cir. 2007) .................................................................. 33

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
  463 F.3d 646 (7th Cir. 2006) ...................................................... 13, 14, 20

*Thompson v. Mattel, Inc.*,
  No. 10-55609 (9th Cir. 2010) .................................................................. 53

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*,
  309 F.3d 978 (7th Cir. 2002) .................................................................. 13

**UNITED STATES DISTRICT COURT CASES:**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
  Nos. 07 CV 2829, 09 C 2026, 2011 WL 3290302 (N.D. Ill. July 6, 2011) ...................... 20

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
  No. 07 CV 2898, 2012 WL 651727 (N.D. Ill. Feb. 27, 2012) ...................... 12, 13, 14, 25

*Arthur v. Sallie Mae, Inc.*,
  No. 10-cv-00198, 2012 WL 4075238 (W.D. Wash. Sept. 17, 2012) ................... 44, 45-46

*Bacon v. Subway Sandwiches & Salads LLC*,
  No. 14-cv-00192 (E.D. Tenn. May 13, 2014) .................................................. 51

*Baggett v. Hewlett-Packard Co.*,
  No. 07-cv-00667 (C.D. Cal.) ........................................................................ 52

*Baird v. Sabre, Inc.*,
  995 F. Supp. 2d 1100, 1106 (C.D. Cal. 2014) ................................................ 15

*Balschmitter v. TD Auto Fin. LLC*,
  No. 13-cv-1186, 2014 WL 6611008 (E.D. Wis. Nov. 20, 2014) ...................... 15

*Bayat v. Bank of the West*,
  No. C-13-2376, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ........................ 32

*Bezdek v. Vibram USA*,
  No. 12-cv-10513 (D. Mass.) ......................................................................... 51

*Bickel v. Sheriff of Whitley Cnty.*,
  No. 08-CV-102, 2015 WL 1402018 (N.D. Ind. Mar. 26, 2015) ...................... 12

*Birchmeier v. Caribbean Cruise Line*,
  302 F.R.D. 240 (N.D. Ill. 2014) ............................................................... 19, 31

*Blessing v. Sirius XM Radio, Inc.*,
  No. 09-cv-10035 (S.D.N.Y.) ........................................................................ 52

*Caine v. Burge*,
  897 F. Supp. 2d 714 (N.D. Ill. 2012) ........................................................... 15

*Chriswell v. Big Score Entertainment, LLC*,
  No. 11-cv-00861, 2013 WL 315743 (N.D. Ill. Jan. 28, 2013) .................... 42, 43

*City of Pontiac Police & Fire Retirement Sys. v. Kartsotis*,
  No. 06-cv-01672 (N.D. Tex. Sept. 13, 2006) ................................................ 47

*Cooper v. Aetna Health Inc., PA, Corp.*,
  No. 07-cv-03541 (D.N.J. July 30, 2007) ....................................................... 52

*Craftwood Lumber Co. v. Interline Brands*,

No. 11-cv-4462, 2015 WL 2147697 (N.D. Ill. May 6, 2015).....................................33, 34

*David Shabaz v. Polo Ralph Lauren Corp.*,
No. 07-cv-01349 (C.D. Cal. Nov. 15, 2007)....................................................47

*Dewey v. Volkswagen of Am.*,
728 F. Supp. 2d 546 (D.N.J. 2010) ..............................................................45

*Domonoske v. Bank of Am., N.A.*,
790 F. Supp. 2d 466 (W.D. Va. 2011) ............................................................2

*Esslinger v. HSBC Bank USA, Inc.*,
10-cv-03213 (E.D. Pa. July 2, 2010) ............................................................52

*Fraley v. Facebook, Inc.*,
No. 11-cv-01726 (N.D. Cal.) ......................................................................44

*Gajewski v. Ocwen Loan Servicing, LLC*,
No. 14-cv-9230, 2015 WL 3961611 (N.D. Ill. June 25, 2015)..................................42, 43

*Gillespie v. Blitt & Gaines, P.C.*,
No. 14 C 916, 2015 WL 4498743 (N.D. Ill. July 23, 2015) ....................................49

*Golloher v. Todd Christopher Int'l, Inc.*,
No. 12-cv-06002 (N.D. Cal. Nov. 27, 2012) ....................................................47

*Heekin v. Anthem*,
No. 05-cv-01908, 2013 WL 752637 (S.D. Ind. Feb. 27, 2013)........................................41

*Hill v. State Street Corp.*,
No. 09-cv-12146 (D. Mass. Dec. 18, 2009)......................................................51

*Hispanics United v. Vill. of Addison*,
988 F. Supp. 1130 (N.D. Ill. 1997) ..........................................................18-19

*Hyundai v. Kia Fuel Econ. Litig.*,
No. 13-ml-02424 (C.D. Cal. Feb. 6, 2013) ..................................................40, 47

*In re Am. Intern. Grp., Inc. Securities Litig.*,
No. 04-cv-08141 (S.D.N.Y.).......................................................................52

*In re Amino Acid Lysine Antitrust Litig.*,
No. 95 C 7679, 1996 WL 460150 (N.D. Ill. July 22, 1996) ......................................28

*In re Apple Inc. Securities Litig.*,
No. 06-cv-05208 (N.D. Cal. Aug. 24, 2006) ..................................................47

*In re Apple iPhone Prod. Liab. Litig.*,
    No. 10-md-02188 (N.D. Cal.) ................................................................ 43, 45

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
    270 F.R.D. 330 (N.D. Ill. 2010)................................................. 14, 15, 39, 40

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
    789 F. Supp. 2d 935 (N.D. Ill. 2011) ...................................................... *passim*

*In re Bayer Corp. Combination*,
    No. 09-md-2023 (E.D.N.Y.) ..................................................................... 46

*In re Capital One Telephone Protection Act Litig.*,
    No. 12 C 10064, 2015 WL 605203 (N.D. Ill. Feb. 12, 2015).................................. *passim*

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    281 F.R.D. 531 (N.D. Cal. 2012)............................................................ 24, 41

*In re Checking Account Overdraft Litig.*,
    830 F. Supp. 2d 1330 (S.D. Fla. 2011) .................................................... 3, 41

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
    588 F. Supp. 2d 1368 (W.D. Ky. 2010)...................................................... 45

*In re Currency Conversion Fee Antitrust Litig.*,
    MDL No. 1409 (2009) ........................................................................... 53

*In re Dell, Inc. Securities Litig.*,
    No. 06-cv-00726 (W.D. Tex. Sept. 13, 2006)................................................. 46

*In re DRAM Antitrust Litig.*,
    No. 02-md-01486 (N.D. Cal.).................................................................. 43

*In re Educ. Testing Servs. Praxis Principles of Learning*
    *& Teaching Grades 7-12 Litig.*
    555 F. Supp. 2d 661 (E.D. La. 2007)........................................................ 45

*In re Enfamil LIPIL Mktg. & Sales Pracs. Litig.*,
    No. 11-md-02222 (S.D. Fla. Feb. 9, 2011) ................................................. 45

*In re Google Referrer Header Privacy Litig.*,
    No. 10-cv-04809 (N.D. Cal. Oct. 25, 2010) ................................................ 47

*In re Groupon Mktg. & Sales Pracs. Litig.*,
    No. 11-md-2238 (S.D. Cal.).................................................................... 52

*In re Heritage Bond Litig.*,
No. 02-ML-1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005).....................................52

*In re Initial Pub. Offering*,
No. 21-MC-92 (S.D.N.Y.) ...........................................................................................52

*In re Jiffy Lube Int'l, Inc. Text Spam Litig.*,
No. 11-md-2261 (S.D. Cal.)................................................................................14, 29

*In re Lawnmower Engine Horsepower Mktg. & Sales Pracs. Litig.*,
733 F. Supp. 2d 997 (E.D. Wis. 2010)..........................................................................45

*In re Lifelock, Inc. Mktg. & Sales Pracs. Litig.*,
MDL No. 08-1977, 2009 WL 222271 (D. Ariz. July 24, 2009)....................................45

*In re Mexico Money Transfer Litig.*,
164 F. Supp. 2d 1002 (N.D. Ill. 2000) ..........................................................................23

*In re Mut. Funds Inv. Litig.*,
MDL 1586, 2011 WL 1102999 (D. Md. Mar. 23, 2011)................................................45

*In re Netflix Privacy Litig.*,
No. 11-cv-00379 (N.D. Cal.) ........................................................................................45

*In re Online DVD Rental Antitrust Litig.*,
No. 09-md-02029 (N.D. Cal.) .......................................................................................46

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
No. 05-md-1720 (E.D.N.Y.) .........................................................................................52

*In re Pre-Filled Propane Tank Mktg. & Sales Practices Litig.*,
No. 09-md-02086 (W.D. Mo.).......................................................................................52

*In re Southwest Airlines Voucher Litig.*,
No. 11-cv-8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) ....................................14

*In re TD Ameritrade Account Holder Litig.*,
Nos. 07-cv-2852, 07-cv-4903, 2011 WL 4079226 (N.D. Cal. 2011) ........................23-24

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. 07-MD-1827, 2011 WL 7575004 (N.D. Cal. Dec. 27, 2011)..................................28

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
Practices & Prods. Liability Litig.*,
No. 10-ml-02151 (C.D. Cal.).........................................................................................48

*In re Tyson Foods, Inc., Chicken Raised Without Antibiotic Cons. Litig.*,
    MDL No. 08-1982, 2010 WL 1924012 (D. Md. May 11, 2010) .................................... 45

*In re UnitedHealth Grp. PSLRA Litig.*,
    643 F. Supp. 2d 1107 (D. Minn. 2009) ......................................................... 41

*In re UnitedHealth Grp. Inc. Shareholder Derivative Litig.*,
    631 F. Supp. 2d 1151 (D. Minn. 2009) ......................................................... 53

*In re Law Office of Jonathan Fortman, LLC*,
    No. 13-mc-00042 (E.D. Mo.) ...................................................................... 52

*Johnson v. Bd. of County Comm'rs for Cnty. of Fremont*,
    868 F. Supp. 1226 (D. Colo. 1994) .............................................................. 43

*Johnson v. City of Joliet*,
    No. 04-cv-6426, 2007 WL 495258 (N.D. Ill. Feb. 13, 2007) ............................ 42

*Juhline v. Ben Bridge-Jeweler, Inc.*,
    No. 11-cv-02906 (S.D. Cal.) ...................................................................... 47

*Kardonick v. JP Morgan Chase*,
    No. 10-cv-23235 (S.D. Fla.) ...................................................................... 45

*Kazemi v. Payless Shoesource, Inc.*,
    No. 09-cv-5142 (N.D. Cal.) ................................................................. 14, 29

*Lee v. Enterprise Leas. Company-West*,
    No. 10-cv-00326 (D. Nev.) ..................................................................... 43-44

*Lipuma v. Am. Express Co.*,
    406 F. Supp. 2d 1298 (S.D. Fla. 2005) ......................................................... 23

*Lozano v. Twentieth Century Fox Film Corp.*,
    No. 09-cv-06344 (N.D. Ill.) ...................................................................... 19

*Matmanivong v. Nat'l Creditors Connection, Inc.*,
    No. 13 C 5347. 2015 WL 536635 (N.D. Ill. Feb. 9, 2015) ............................. 49

*Miller v. Ghirardelli Chocolate Co.*,
    No. 12-cv-04936 (N.D. Cal.) ...................................................................... 47

*Miller v. Red Bull N. Am.*,
    No. 12-cv-4961 (N.D. Ill.) ........................................................................ 53

*Milliron v. T-Mobile USA Inc.*,
    No. 08-cv-04149 (D.N.J.) ............................................................................... 52

*Mobbs v. Farmers Ins. Co. Inc.*,
    No. 03-cv-00158 (W.D. Ok.) .......................................................................... 51

*Nader v. Capital One Bank USA, N.A.*,
    No. 12-cv-01265 (C.D. Cal.) .................................................................... 40, 47

*O'Brien v. Brain Research Labs, LLC*,
    12-cv-204, 2012 WL 3242365 (D.N.J. Aug. 9, 2012) .................................... 51

*O'Keefe v. Mercedes-Benz USA, LLC*,
    214 F.R.D. 266 (E.D. Pa. 2003) ................................................................. 3, 41

*Pimental et al. v. Google Inc., et al.*,
    No. 11-cv-2585 (N.D. Cal.) ............................................................................ 19

*Poertner v. The Gillette Co.*,
    No. 12-cv-00803 (M.D. Fla.) .......................................................................... 47

*Rojas v. Career Educ. Corp.*,
    No. 10-cv-5260 (N.D. Ill.) .............................................................................. 19

*Rose v. Bank of Am. Corp.*,
    No. 11-cv-02390, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ...................... 29, 35, 36

*Satterfield v. Simon & Schuster, Inc., et al.*,
    No. 06-cv-2893 (N.D. Cal. 2010) ................................................................... 19

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ..................................................... *passim*

*Spears v. Washington Mutual, Inc.*,
    No. 08-cv-00868 (N.D. Cal.) ..................................................................... 40, 48

*Spillman v. RPM Pizza, LLC*,
    No. 10-cv-349, 2013 WL 2286076 (M.D. Fla. May 23, 2013) ........................ 32

*Steinfeld v. Discovery Fin. Servs.*,
    No. 12-cv-01118 (N.D. Cal.) .......................................................................... 46

*Superior Beverage Co., Inc. v. Owens-Illinois, Inc.*,
    827 F. Supp. 477 (N.D. Ill. 1993) .................................................................. 39

*Thigpen v. Banas*,

No. 08-cv-4820, 2010 WL 520189 (N.D. Ill. Feb. 11, 2010) ........................................... 43

*Vandervort v. U.S. Sample Servs., Inc.*,
8 F. Supp. 3d 1200 (C.D. Cal. 2014) ........................................................... 32

*Wilkins v. HSBC Bank Nevada, N.A.*,
No. 14-cv-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ............................ 2, 11, 23, 39

**STATUTES:**

28 U.S.C. § 1715 ....................................................................................................... 12

47 U.S.C. § 227 ....................................................................................................... 1, 4, 5, 6

**MISCELLANEOUS:**

Eisenberg & Miller, *Attorney Fees in Class Action Settlements: 1993-2008*,
7 J. Empirical Legal Studies 265 (2010) ........................................................ 35

Fed. R. Civ. P. 23 ....................................................................................................... 11, 13

Federal Judicial Ctr., *Manual for Complex Litigation*,
§ 21.643 (4th ed. 2004) ........................................................................... 25

Federal Judicial Ctr., *Judges' Class Action Notice & Claims Process
Checklist & Plain Language Guide* (2010) ................................................... 11

*TCPA Omnibus Declaratory Ruling & Order*, FCC 15-72 (June 18, 2015),
https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order .................. 16

William B. Rubenstein, *Newberg on Class Actions*
§ 12:34 (5th ed. 2015)39

## I.     INTRODUCTION

The instant Settlement seeks to resolve claims against Defendant Walgreen Co. ("Walgreens" or "Defendant") that it violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") by placing Prerecorded Prescription Calls to its customers' cellular phones.[1] The Settlement was reached after extensive motion practice on issues of first impression in this District, formal and informal discovery, two mediations with the Honorable Wayne R. Andersen (ret.) of JAMS Chicago, and numerous rounds of arm's-length negotiations. If approved, it will provide significant monetary relief to the Settlement Class in the form of an $11 million non-reversionary Settlement Fund—and requires Walgreens to implement meaningful prospective measures to ensure that the Calls do not continue without its customers' consent, which will also cost Walgreens millions of dollars. As detailed in Plaintiff's Motion for Preliminary Approval, Fee Petition, and further below, the relief obtained under the Settlement is on par with and, in many cases, greater than that secured in other similar TCPA settlements that have been approved in this District, the Seventh Circuit, and throughout the country. In the end, the Settlement represents a substantial recovery for the Class, and under the law is deserving of this Court's final approval.

One way to gauge the strength of the Settlement is by looking at the reaction of the Settlement Class. Here, the Settlement Class' reaction has been overwhelmingly positive: more than 230,000 timely claims have been received and just 151 requests for exclusion have been submitted (0.000016%). Similarly, out of the more than 9 million Settlement Class Members,

---

[1]     All capitalized terms not defined herein shall have the meaning ascribed them in the Parties' Class Action Settlement Agreement, attached hereto as Exhibit 3.

just 20 objections have been raised (on behalf of 23 people total or 0.000002% of the Class).[2] As courts explain, this sort of "infinitesimal" amount of opposition strongly favors approval of the Settlement, especially when compared to other TCPA settlements recently approved in this District. *See Wilkins v. HSBC Bank Nevada, N.A.,* No. 14-cv-190, 2015 WL 890566, at *7 (N.D. Ill. Feb. 27, 2015) (granting final approval where 27 (0.0003%) requests for exclusion and 9 objections (0.000001%) were submitted out of more than 9 million settlement class members); *In re Capital One Telephone Consumer Protection Act Litig.*, No. 12 C 10064, 2015 WL 605203, at *8 (N.D. Ill. Feb. 12, 2015), *appeals dismissed* (7th Cir. 15-1514, 15-1546, 15-1400, 15-1586, 15-1639) (granting final approval where 565 (0.0032%) requests for exclusion and 14 objections (0.0000008%) were submitted out of more than 17.5 million settlement class members).

The substance of the objections also shouldn't prevent final approval. The majority of the objections come from *pro se* objectors, almost all of whom either express general appreciation for the Calls at issue or general disapproval of the relief, the requested Fee Award, the lawsuit, or the class action device in general. These types of "general" or "philosophical" objections are inevitable in large class actions and do nothing to "impugn the adequacy of the settlement itself." *See Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 474 (W.D. Va. 2011) (in class of three-million, "most of the 59 objections show a philosophical disagreement with class action litigation, a general disagreement with this litigation in particular, or dissatisfaction with class counsel's requested attorney's fees"); *accord O'Brien v. Brain Research Labs, LLC*, No. 12-cv-204, 2012 WL 3242365, at *25 (D.N.J. Aug. 9, 2012) (discounting statement which "embodies

---

[2]     Although the 20 objections were raised on behalf of 23 people total, as explained further in Section V.F.1 *infra*, (i) four of those individuals are not Settlement Class Members (Sharon Hughes, Christinna Oldham, Gary Sibley, and Lyndy Streight) and (ii) four of the objections (raised by Phyllis Mehl, Robert Habermann, Rebecca Thomas, and Todd Spann) failed to provide information required by the Court's Preliminary Approval Order and the Settlement Agreement. (*See* dkt. 97 ¶ 11.) That brings the total number of procedurally proper objections—to say nothing of their substance—to just twelve (0.00000124%).

the objector's personal views about class action litigation generally [specifically that the 'only group that makes a large profit are the lawyers representing the plaintiff groups'] and is not addressed to the specifics of this settlement").

Finally, there are six objections raised by so-called "professional" objectors, each having long histories of asserting similar (largely baseless and almost always unsuccessful) objections to class action settlements. "Federal courts are increasingly weary of [these] professional objectors…who seek out class actions to simply extract a fee by lodging generic, unhelpful protests." *O'Keefe v. Mercedes–Benz USA, LLC,* 214 F.R.D. 266, 295 n. 26 (E.D. Pa. 2003). As one District Court aptly put it, professional objectors too often simply "levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose benefit the appeal is purportedly raised, gains nothing." *In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d 1330, 1361, n. 30 (S.D. Fla. 2011). Such is the case here. The professional objectors have nearly all raised arguments that misunderstand the terms of the Parties' Settlement, the circumstances of the litigation, or controlling Seventh Circuit case law (and, in some cases, all three); several have lodged objections on behalf of individuals (including one on behalf of himself) who aren't even Settlement Class Members and have been unable to explain their bases for representing otherwise; and several more have improperly "ghost-written" briefs for individuals who purport to be *pro se* objectors (or the professional objectors' brethren) in hopes of avoiding the reach of this Court.[3]

Ultimately, none of the objections raised have merit and cannot—either standing alone or taken together—detract from the results obtained on behalf of the Settlement Class. Given that

---

[3] Notably, at least one firm—Plews Shadley Racher & Braun LLP—which has appeared on behalf of several objectors in this case, appears to have improperly ghost-written an objection before this Court in the past. *See* Section V.F.7, *infra.*

and the significant relief actually obtained for the Settlement Class, the Court should have no problem granting final approval to the Settlement.

## II.    NATURE OF THE LITIGATION[4]

### A.    The Facts, the Law, and the Litigation History.

Walgreens is a national retailer and pharmacy chain with thousands of locations throughout the United States. (Dkt. 1 ¶ 1.) Plaintiff is a Walgreens customer who filled his first prescription at a Walgreens pharmacy as many as ten years ago. (Dkt. 1 ¶ 18.) At the time, Plaintiff alleges that, like other Walgreens customers, he provided his cellular telephone number to a Walgreens pharmacist for purposes of "verification," or in other words, to confirm his identity if another customer with the same name attempted to fill a prescription. (*Id.*)

Plaintiff alleges that in early 2012 he began receiving prerecorded calls on his cellular telephone reminding him to fill his prescriptions at a Walgreens pharmacy. (*Id.*) According to Plaintiff, Walgreens began making these "refill reminder" calls in an effort to increase its share of the consumer pharmacy market, instituting a calling program that featured artificial or prerecorded voices to contact millions of customers who had all previously filled prescriptions at a Walgreens store. (*Id.* ¶¶ 3-4.) The problem, Plaintiff alleges, was that Walgreens did not first obtain its customers' prior express consent to make the calls, as required by the TCPA. (*Id.* ¶ 5.)

The TCPA specifically prohibits the use of prerecorded voices in making calls to cellular phones, providing that:

> It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using . . . an artificial or prerecorded voice . . . to any telephone number assigned to . . . a cellular telephone service [.]

47 U.S.C. § 227(b)(1)(A)(iii). (Dkt. 1 ¶¶ 7-8.) The TCPA was enacted more than two decades

---

[4]    A more detailed analysis of the factual background and procedural history of this case is available in Plaintiff's Motion for Preliminary Approval. (*See* Dkt. 98 at 3-7.)

ago in response to "[v]oluminous consumer complaints about abuses of telephone technology." *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 744 (2012). In passing the statute, Congress specifically sought to prevent "intrusive nuisance calls" to consumers that it deemed "invasive of privacy," *see id.*, set statutory damages in the amount of $500 per violation and provided for injunctive relief. *See* 47 U.S.C. § 227(b)(3)(A)–(C).

Through discovery, Plaintiff determined that Walgreens had collected the telephone numbers called directly from customers over a period of years, typically when gathering contact information for prescription-drug purchases and refills. (Dkt. 98-2 ¶ 11.) As a part of that process, Walgreens' policy was to request that customers identify whether the telephone numbers provided were assigned to cellular or landline accounts, as Walgreens' internal databases specifically delineate between the two. (*Id.*) Accordingly, when Walgreens initiated its refill reminder call program in 2012, it intentionally chose not to place reminder phone calls to any number that had been identified as assigned to a cellular account. (*Id.*) Notwithstanding, Plaintiff's position is that Walgreens' database did not have adequate safeguards to ensure that cellular phone numbers were not being called as part of Walgreens' prescription refill reminder program.

Discovery also confirmed that Walgreens provided various options for call recipients to opt out of receiving future refill reminder calls—e.g., during any call a customer could simply press "8" on their touch-tone telephone to avoid future calls. (*Id.*) Nevertheless, just a small fraction of the customers called opted out of receiving refill reminder calls going forward; for 2014, the opt-out rate was 0.70%, and for the entire period of the program, the opt-out rate was less than 1.5%. (*Id.*) The percentage of customers who used the Prerecorded Prescription Calls to refill their prescriptions is vastly larger than that, which Walgreens would argue shows that the

Calls are viewed by its customers as a welcome reminder service rather than nuisance telemarketing calls. (*Id*.) Indeed, as explained further below, many of the so-called "objections" to the Settlement that were received—other than those submitted by professional objectors— were based upon that very concept: they didn't take issue with the substantive terms of the Settlement, but rather, expressed appreciation for the reminders about their medications and hoped the service would continue.

On July 3, 2013, Plaintiff filed the instant action asserting a single claim for Walgreens' violation of the TCPA. (*See* Dkt. 1 ¶¶ 28-35.) The following month, Walgreens moved to dismiss, arguing that (i) Plaintiff consented to receive the calls by providing his cellular telephone number to Walgreens and (ii) the Calls fell within the TCPA's "emergency purpose" exception, 47 U.S.C. § 227(b)(1)(A). (Dkt. 20 at 5-15.) On February 10, 2014, the Court dismissed Plaintiff's complaint after full briefing, holding that under the FCC's interpretation of "consent," Kolinek consented to receive the Calls by simply providing his number. (Dkt. 38.)

Plaintiff thereafter took the long-shot of filing a motion to reconsider, arguing that the mere provision of a telephone number at a specific time, for a specific purpose, did not constitute "consent" to receive calls for any purpose, at any time in the future. (Dkt. 40 at 3-7.) Plaintiff also argued that his complaint did not contain all facts necessary for Walgreens to assert a consent defense, since there was no evidence that Kolinek provided his telephone number to Walgreens "knowing" he would receive calls from Walgreens at that number in the future. (*Id.* at 7-9.) On July 7, 2014, over Walgreens' vigorous opposition (dkt. 44), and after the filing of supplemental authority by Plaintiff (dkts. 46, 48), the Court granted Plaintiff's motion to reconsider, holding that Walgreens was unable to assert a consent defense on a motion to dismiss based on the allegations in the complaint, but that the consent defense nonetheless raised factual

issues for discovery. (Dkt. 51.)

On July 22, 2014, the Court heard oral argument on the remaining issue in Defendant's motion to dismiss: whether the Prerecorded Prescription Calls fell under the TCPA's "emergency purpose" exception. (Dkt. 57.) After full briefing on the issue—including multiple supplemental briefs by the Parties (*see* dkts. 53, 54, 58, 61, 63)—the Court held that, based on the allegations in the complaint, it did not have sufficient information regarding the Prerecorded Prescription Calls to dismiss under the emergency purpose exception. (Dkt. 66.) Nevertheless, the Court cautioned that further factual development would likewise be necessary as to the content and nature of the Calls to determine if the emergency purpose exception applied. (*Id.* at 2.)

Walgreens then answered Plaintiff's complaint, raising more than twenty affirmative defenses. (Dkt. 68.) The Parties also began to exchange information through informal discovery related to how the Prerecorded Prescription Call program was initiated, how Walgreens obtained and stored individuals' telephone numbers, and how the Calls were placed. (Dkt. 98-2 ¶ 6.)

### B. The Mediations and the Settlement Agreement.

At the same time, the Parties began to discuss the possibility of resolving the case before additional protracted litigation. (*Id.* ¶ 7.) Over numerous teleconferences, they talked at length about the substantive issues of the case and their perspectives on how it might be resolved. (*Id.*) Eventually, these conversations led to an agreement to formally mediate and, on October 15, 2014, the Parties convened their first mediation with the Honorable Wayne R. Anderson (ret.) of JAMS (Chicago). (*Id.*) Over the course of the day and with Judge Andersen's guidance, the Parties were able to reach an agreement on some of the material terms of a class-wide settlement. (*Id.* ¶ 8.) Notwithstanding, the session ended with a proposed settlement offer, which Defendant countered one week later. (*Id.*) After additional discussions over the following days, on October

24, 2014, the Parties finalized the material terms of an agreement in principle, subject to additional (confirmatory) discovery. (*Id.* ¶ 9.)

To that end, Plaintiff served formal written discovery requests on Walgreens regarding, *inter alia*, how it had obtained customers' telephone numbers, how any alleged consent to be called had been obtained, how the calls were placed, and how Walgreens maintained records of both the phone numbers and any consent to be called. (*Id.* ¶ 10.) After receiving and reviewing Walgreens' written responses and document production, Plaintiff deposed Walgreens' Rule 30(b)(6) designee and Director of Outbound Programs, Christopher Helzerman, on January 16, 2015 to further explore and understand those issues. (*Id.*)

In addition to formal written and oral discovery, the Parties agreed that Walgreens would—subject to a Protective Order (dkt. 79) and other confidentiality measures—provide records identifying the telephone numbers to which the alleged calls were made to a third party to determine which of those numbers were, in fact, assigned to cellular phones (although not identified as such in Walgreens' database) and thus fell within the proposed Settlement Class. (Dkt. 98-2 ¶ 12.) In so doing, the Parties intended to further confirm the scope of the proposed Settlement Class, ensure an appropriate plan for notifying Settlement Class Members of the Settlement, and also confirm the fairness and reasonableness of the Settlement. (*Id.*) In February 2015, Walgreens provided that data to third-party administrator Kurtzman Carson Consultants ("KCC"). (*Id.* ¶ 13.) KCC organized and analyzed the data and ultimately identified the phone numbers called by Walgreens that were assigned to cellular accounts. (*Id.*) KCC determined that there were more than 9 million cellular telephone numbers to which Walgreens placed Calls during the relevant period of time. (*Id.* ¶ 14.)

Notwithstanding their agreement in principle regarding the key terms of the Settlement

(i.e., fund size, prospective relief, etc.), the Parties were at odds about other aspects of the Settlement, namely the plan for providing notice to the Settlement Class. As they could not reach a consensus on that issue, the Parties agreed to proceed with a second mediation before Judge Andersen, during which they were able to resolve the remaining issues. (*Id.* ¶ 15.) With that, the Parties were satisfied that the terms of the proposed Settlement were fair, reasonable, and adequate, and began finalizing their written Agreement. (*Id.* ¶ 16.) On March 26, 2015, the Parties executed the Agreement now before the Court. (*Id.*)

On April 3, 2015, this Court granted preliminary approval to the Settlement, (dkt. 97), holding that the Settlement appeared to be fair, reasonable, and adequate, that it was negotiated in good faith at arm's-length, and that the proposed Notice Plan to the Settlement Class was appropriate and provided due process of law to absent Settlement Class Members. (*Id.* ¶¶ 2, 9.) Pursuant to the Court's Order granting preliminary approval, notice was effectuated shortly thereafter. (*See* Declaration of Lacey Racines ¶¶ 5, 13-14, attached hereto as Exhibit 2.)

## III.    TERMS OF THE SETTLEMENT

The terms of the Settlement preliminarily approved by the Court are set forth in the Settlement Agreement ("Agreement," attached hereto as Exhibit 3), and briefly summarized as follows:

**A.    Class Definition.** On April 3, 2015, this Court certified a class of "all individuals in the United States to whom Walgreens placed a Prerecorded Prescription Call to their cellular telephone." (*See* dkt. 97 ¶ 14; Ex. 3 § 1.30.)

**B.    Class Member Payments.** The Settlement provides for the establishment of a $11,000,000.00 Settlement Fund, from which each Settlement Class Member who submits a valid Claim Form shall be entitled to a *pro rata* share of the money remaining in the Settlement

Fund after payment of all Settlement Administration Expenses, an incentive award to Kolinek, and the Fee Award to Class Counsel. (Ex. 3 §§ 1.32, 2.1.)

      **C.**     **Prospective Relief.** In addition to monetary relief, the Settlement Agreement also provides for comprehensive prospective relief requiring Walgreens to implement procedures to ensure that only persons who provide prior express consent receive the Calls to their cellular phones, including (i) updating its electronic database to identify customer telephone numbers assigned to either a landline or wireless phone, (ii) implementing procedures to confirm the accuracy of customers' communication preferences, and (iii) providing customers the option to elect to receive, and unsubscribe from, the Calls online, during the in-store checkout process, over the phone, and by otherwise contacting Walgreens. (*Id.* §§ 2.2(a)-(c).)

      **D.**     **Additional Relief.** In addition to the individual monetary payments and the prospective relief discussed above, Walgreens has also agreed to provide the following relief:

        **1.**     ***Payment of Notice and Settlement Administration Expenses.*** Walgreens has agreed to pay from the Settlement Fund the costs of effectuating the Court-approved Notice Plan, as well as all expenses incurred by the Settlement Administrator in processing and paying valid claims and otherwise administering the Settlement. (*Id.* § 1.28.)

        **2.**     ***Incentive Award for Class Representative.*** Walgreens has agreed, subject to Court approval, to pay Plaintiff Kolinek an incentive award of $5,000, in addition to any money he will receive as a claiming Settlement Class Member. (*Id.* § 8.3.)

        **3.**     ***Payment of Attorneys' Fees and Expenses.*** Walgreens has agreed, subject to Court approval, to pay Class Counsel reasonable attorneys' fees and to reimburse expenses in this Action. (*Id.* § 8.1.) On July 9, 2015, Plaintiff submitted his Motion for Approval of

Attorneys' Fees, Expenses, and Incentive Award, requesting attorneys' fees in the amount of $2,824,200. (Dkt. 110 at 2.)

      **E.**      **The Release.** Should the Court grant final approval to the Settlement Agreement, Walgreens will be released, acquitted, and forever discharged from any and all claims relating to the alleged making of Prerecorded Prescription Calls to the Settlement Class. (Ex. 3 §§ 1.25-1.27, 3.)

## IV.    THE IMPLEMENTED NOTICE PLAN COMPORTS WITH DUE PROCESS.

      Prior to granting final approval to this Settlement, the Court must first consider whether the notice to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 595 (N.D. Ill. 2011). The "best notice practicable" does not require receipt of actual notice by all class members in order to comport with both Rule 23 and the requirements of due process. It often includes direct notice to individuals who can be identified by either email or regular mail. *See Wilkins*, 2015 WL 890566, at *3 (finding that direct notice was appropriate by email and regular mail); *see also Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985) (noting that "Rule 23 does not require defendants to exhaust every conceivable method of identification"). The Federal Judicial Center has concluded that a notice plan that reaches at least 70% of the class is reasonable. *Federal Judicial Ctr., Judges' Class Action Notice & Claims Process Checklist & Plain Language Guide* (2010), at 3.

      The multipart Notice Plan approved by the Court in this case has been fully carried out by the Settlement Administrator and Walgreens and consisted of e-mail or postcard notice; the establishment of a toll-free telephone line to receive and answer inquiries from Settlement Class

Members; the establishment of a Settlement Website that provided the Notice, important Court documents, and the ability to download and file Claim Forms online; and notice to the U.S. and state Attorneys General as required by the Class Action Fairness Act, 28 U.S.C. § 1715. (*See* Racines Decl. ¶¶ 5-6, 8-14,18-19.) Through the individual notices alone (i.e., e-mail or postcard), notice was disseminated to at least 86% of the Settlement Class. (*Id.* ¶ 17.)

Given that the Settlement Administrator fully implemented the Court-approved Notice Plan and at least 86% of the Settlement Class received direct notice of the Settlement, it is clear that Rule 23's notice requirements and due process have been satisfied. *See, e.g.*, *Bickel v. Sheriff of Whitley Cnty.*, No. 08-cv-102, 2015 WL 1402018, at *3 (N.D. Ind. Mar. 26, 2015) (finding notice sufficient where professional settlement administrator provided direct notice to at least 70% of the settlement class and fully implemented the court-approved notice plan); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 595–96 (N.D. Ill. 2011) (finding notice sufficient where professional settlement administrator provided direct notice to 89.7% of the class, created a settlement website, and maintained a toll-free number that class member could call with questions).

## V.  THE SETTLEMENT WARRANTS FINAL APPROVAL.

Federal Rule of Civil Procedure 23(e) mandates that "claims, issues, or defenses of a certified class may be settled…only with the court's approval…after a hearing and finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e); *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 CV 2898, 2012 WL 651727, at *1 (N.D. Ill. Feb. 28 2012), *appeal dismissed*, *Safeco Ins. Co. of Am. v. Am. Int'l Grp.*, 710 F.3d 754 (7th Cir. 2013). Even so, "[f]ederal courts naturally favor the settlement of class action litigation." *Schulte*, 805 F. Supp. 2d at 578 (citing *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)). Given this predisposition

towards settlement, the Court's approval inquiry "is limited to [the consideration of] whether the proposed settlement is lawful, fair, reasonable and adequate." *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002).

A five-factor analysis must be employed in considering the overall fairness of a settlement: (i) the strength of plaintiff's case compared to the amount of defendant's settlement offer; (ii) an assessment of the likely complexity, length and expense of the litigation; (iii) an evaluation of the amount of opposition to the settlement among affected parties; (iv) the opinion of competent counsel; and (v) the stage of the proceedings and amount of discovery completed at the time of settlement. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (internal citations omitted); *accord In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 958 (N.D. Ill. 2011). Each factor militates in favor of final approval here.

### A.     The Strength of Plaintiff's Case Compared to the Settlement.

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of plaintiff['s] case on the merits balanced against the amount offered in the settlement." *In re AT&T Sales Tax Litig.*, 789 F. Supp. 2d at 958 (quoting *Synfuel*, 463 F.3d at 653). The strength of a plaintiff's case can be quantified by examining "the net expected value of continued litigation to the class" and then estimating "the range of possible outcomes and ascrib[ing] a probability to each point on the range." *Am. Int'l Grp., Inc.*, 2012 WL 651727, at *2 (quoting *Synfuel*, 463 F.3d at 653); *see also Eubank v. Pella Corp.*, 753 F.3d 718, 727 (7th Cir. 2014) (finding that the district court should "estimate the likely outcome of a trial in order to evaluate the adequacy of the settlement"). However, "the Seventh Circuit recognizes that a high degree of precision cannot be expected in these calculations" and "[i]nstead, courts are to

provide a ballpark valuation of the class's claims." *Am. Int'l Grp., Inc.*, 2012 WL 651727, at *2 (internal quotations omitted). "In considering the strength of plaintiff['s] case, legal uncertainties at the time of settlement favor approval." *In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013). Finally, "[b]ecause the essence of settlement is compromise courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (internal quotations omitted). The Parties' proposed Settlement—in terms of tangible monetary relief and improved customer contact practices—warrants approval, both compared to other similar TCPA actions and when viewed in light of the risks of protracted litigation.

First, the monetary relief provided under the settlement—an $11 million non-reversionary settlement fund and nearly $30 per claiming Settlement Class Member—is consistent with (or better than) settlements in similar TCPA cases. As explained in other briefing, in "direct relationship" TCPA cases, such as this, where the person called voluntarily provided their cellular telephone number to the caller, settlements have generally provided low-value coupons or less than $25 in cash to each claiming class member. *See Kazemi v. Payless Shoesource, Inc.*, No. 09-cv-5142, Dkt. 94 (N.D. Cal. 2012) (providing for a $25 voucher to each class member); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 11-md-2261, Dkt. 97 (S.D. Cal. 2013) (providing for a $20 voucher, which could be redeemed for $15 cash after nine month waiting period); *but see In re Capital One*, 2015 WL 605203, at *3 (providing $34.60 per each claiming class member). Courts have consistently viewed that amount of relief appropriate in such cases because "a settlement is a compromise, and courts need not—and indeed should not—'reject a settlement solely because it does not provide a complete victory to plaintiffs.'" *In*

14

*re Capital One*, 2015 WL 605203, at \*6 (citing *In re AT&T Mobility*, 270 F.R.D. at 347). "This is especially true when complete victory would most surely bankrupt the prospective judgment debtor." *Id.* (pointing out that in TCPA cases involving millions of class members and phone calls, potential TCPA liability often reaches into the billions if not trillions of dollars).

With respect to the Parties' relationship here and Walgreens' defenses, this first factor weighs strongly in favor of approval. Indeed, this Court at one time dismissed Plaintiff's entire case *with prejudice* based on his voluntary provision of his telephone number to Walgreens. (Dkt. 38.) As reflected in the briefing, the issue of whether the provision of a phone number for any purpose was enough to establish consent to receive calls was a major point of dispute. (*See* dkts. 18, 26, 30, 34, 38, 40, 44, 46, 48, and 51.) The Court originally sided with Walgreens and dismissed Plaintiff's case in its entirety. It was not until Plaintiff took the long shot of moving to reconsider that the Court agreed that consent for one purpose does not equate to consent for all purposes. (Dkt. 51); *see also Caine v. Burge*, 897 F. Supp. 2d 714, 717 (N.D. Ill. 2012) ("Motions to reconsider should be granted only in rare circumstances") (internal citation omitted). Despite granting reconsideration, however, the Court was clear that it viewed Plaintiff's road ahead to be a difficult one, as further factual development may have warranted application of Walgreens' consent defense. (Dkt. 51 at 8; dkt. 66 at 2.) Thus, although Plaintiff's claim ultimately survived the motion to dismiss on the issue of consent, it was a contentious obstacle to overcome that demonstrates success in this case was anything but certain. *See In re Capital One*, 2015 WL 605203, at \*6 (noting that the FCC's series of TCPA Orders are not the most clear and are often the subject of "split opinion among practitioners and the courts") (citing *Balschmiter v. TD Auto Finance LLC*, No. 13-cv-1186, 2014 WL 6611008, at \*8 (E.D. Wis. Nov. 20, 2014); *Baird v. Sabre, Inc.*, 995 F. Supp. 2d 1100, 1106 (C.D. Cal. 2014)).

15

A second (and perhaps far greater) risk confronting the Settlement Class was that Walgreens may have been able to successfully claim that the calls were exempt under the TCPA. Plaintiff alleged that Walgreens' calls were "made to consumers who ha[d] previously filled prescriptions at [Walgreens'] pharmacies and purportedly 'remind[ed]' consumers that they should refill their prescriptions," (dkt. 1 ¶ 4), and were thus nothing more than "marketing calls." (*Id.* ¶ 3; dkt. 40 at 4-5.) In response, Walgreens argued that the TCPA's emergency purpose exception applied because the calls were placed to individuals who had prescriptions for maintenance medications (such as cholesterol-lowering medications, diabetes medications, and medications for chronic pulmonary issues), which are vital to the continued health of the patient. (Dkt. 20 at 9-15.) The question was an issue of first impression, and its novelty required the Parties to engage in multiple rounds of briefing and oral argument before the Court's ultimate ruling. (Dkts. 53, 54, 55, 61, 63.) In the end, the Court found that the FCC had never interpreted "the [emergency purpose] exception as covering any call to a customer about prescriptions, prescription refills, or anything of the sort, [as] that interpretation would not only bind the Court but would also dictate the conclusion in this case." (Dkt. 66 at 2.)

While the Court was absolutely correct in its ruling, the FCC recently issued an order finding that, in some limited circumstances, prescription medication calls are exempt from the TCPA when "there is exigency" and when the calls have a "healthcare treatment purpose." *TCPA Omnibus Declaratory Ruling & Order*, FCC 15-72 ¶ 146 (June 18, 2015), https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order. While this exemption is not grounded in the emergency purpose exception and does not appear to apply retroactively, it nonetheless demonstrates that it was incredibly risky for Class Counsel to prosecute an issue of first impression that related directly to individuals' health. *See In re Capital One*, 2015 WL

605203, at *7 (noting that "without the prompt and final resolution a settlement provides, [p]laintiffs [in TCPA cases] run the risk that forthcoming FCC orders may extinguish their claims").

Further still, if the case proceeded to trial, other roadblocks—such as additional discovery and procurement of expert testimony—would stand between the Settlement Class and ultimate recovery. (*Id.*) And in light of the amount at stake and its reputational interests, Walgreens is nearly certain to appeal any judgment in favor of the class, which would further delay recovery and place it in further doubt. (*Id.*) Despite these substantial uncertainties, the Settlement provides real and immediate cash relief—entitling each Settlement Class Member to a *pro rata* share of the $11 million Settlement Fund, which again, is consistent with the settlements approved by other courts under similar circumstances. (Ex. 3 § 2.1(b).) As importantly, the Settlement provides meaningful prospective relief, including new (and costly) procedures to ensure that only those persons who provide prior express consent receive the Calls in the future. (*Id.* §§ 2.2(a)–(d); *see also* Declaration of Jay Edelson ("Edelson Decl.") at ¶ 3, attached hereto as Exhibit 1.) Indeed, Walgreens has already undertaken massive efforts to implement and test the new measures, costing millions of dollars. (*Id.*)

Thus, given the substantial risks, expense, and delay that would accompany further litigation, and in comparison to other TCPA class action settlements, the Settlement offers substantial value relative to the strength of Plaintiff's case. The first—and most important— *Synfuel* factor therefore strongly supports final approval.

### B. The Likelihood of an Increase in the Complexity, Length, and Expense of Continued Litigation Validates Final Approval of the Settlement.

Final approval is also favored in cases such as this where "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte*,

17

805 F. Supp. 2d at 586. As noted above, should litigation proceed, further discovery will undoubtedly be needed, which will significantly drive up the cost of the litigation. *See In re AT&T Sales Tax Litig.*, 789 F. Supp. 2d at 964 (noting that "costs associated with discovery in complex class actions can be significant"); *In re Capital One*, 2015 WL 605203, at *8 (same). As this Court recognized in its Order denying the remaining portion of Defendant's motion to dismiss, while the "relatively spare" allegations of the complaint precluded dismissal under Walgreens' consent and emergency purpose defenses, further factual development—concerning the content of the Calls and the circumstances under which consumers provided their telephone numbers—would be needed to test Plaintiff's allegations. (Dkt 66 at 2.) Beyond that—and as discussed above—Walgreens would undoubtedly oppose Plaintiff's motion for class certification and appeal any decision in Plaintiff's favor. (*See* dkt. 110-1 ¶ 26.) If anything, "this drawn-out, complex, and costly litigation process . . . would provide [Settlement] Class Members with either no in-court recovery or some recovery many years from now [.]" *In re AT&T Sales Tax Litig.*, 789 F. Supp. 2d at 964. The proposed Settlement, in contrast, avoids this long and winding path, putting an immediate end to Walgreens' alleged conduct and placing cash in the hands of Settlement Class Members now.

Because the Settlement avoids protracted, costly, and complex litigation, the second *Synfuel* factor also weighs in favor of final approval.

**C. The Opinion of Competent Counsel Favors Approval.**

"The opinion of competent counsel is relevant to the question whether a settlement is fair, reasonable, and adequate under Rule 23." *Schulte*, 805 F. Supp. 2d at 586. This is especially true where class counsel are qualified, where discovery and settlement negotiations are extensive and thorough, and where there is no indication of collusion. *Id.; see also Hispanics United v. Vill. of*

*Addison*, 988 F. Supp. 1130, 1150 n. 6 (N.D. Ill. 1997) (noting that a "strong initial presumption of fairness attaches" where the settlement is "the result of arm's length negotiations," and where plaintiff's counsel are "experienced and have engaged in adequate discovery").

Here, Class Counsel are experienced members of the plaintiffs' bar who have built their practice litigating similarly complex consumer class actions, including many under the TCPA. (*See* dkt. 98-2 ¶ 21.) Indeed, Plaintiff's counsel have regularly been found to be adequate representatives in TCPA actions in this District, including by this Court, and by others across the country. *See Birchmeier v. Caribbean Cruise Line*, 302 F.R.D. 240, 252 (N.D. Ill. 2014) (finding that attorneys at Edelson PC will adequately represent the class); *Rojas v. Career Educ. Corp.*, No. 10-cv-5260, Dkt. 55 at 3 (N.D. Ill. June 26, 2012) (finding that "attorneys [at Edelson PC] are competent and capable of exercising the responsibilities of Class Counsel"); *Lozano v. Twentieth Century Fox Film Corp.*, No. 09-cv-06344, Dkt. 57 at 3 (N.D. Ill. Nov. 17, 2010) (same); *Pimental, et al. v. Google Inc., et al.*, No. 11-cv-2585, Dkt. 97 at 1 (N.D. Cal.) (appointing Class Counsel and "find[ing] that [Jay Edelson and Rafey Balabanian of Edelson PC] are competent and capable of exercising the responsibilities of Class Counsel…."); *Satterfield v. Simon & Schuster, Inc., et al.*, No. 06-cv-2893 (N.D. Cal. 2010) (appointing attorneys at Edelson PC as co-lead counsel). That substantial and particularized experience has allowed Class Counsel to accurately weigh the merits of the Settlement Class's claims along with the risks and potential rewards of further litigation as compared to Settlement. Class Counsel ultimately believe that the Settlement provides significant relief for individuals who may otherwise be left without a remedy and thus, the opinion of Class Counsel favors final approval.

**D.    The Stage of the Proceedings and Amount of Discovery Completed Weigh in Favor of Final Approval.**

The next factor concerns the stage of the proceedings and amount of discovery completed

at the time the settlement is reached. *Synfuel*, 463 F.3d at 653. This factor is significant because "it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Am. Int'l Grp., Inc. v. ACE INA Holdings Inc.*, Nos. 07 CV 2829, 09 C 2026, 2011 WL 3290302, at *8 (N.D. Ill. July 6, 2011) (citing *Armstrong v. Bd. of Sch. Directors of Milwaukee*, 616 F.2d 305, 325 (7th Cir. 1980)). It is well settled that the Court and parties may be equipped with sufficient information even when no formal discovery has taken place if they have engaged in considerable informal discovery. *In re AT&T Sales Tax Litig.*, 789 F. Supp. 2d at 966; *Am. Int'l Grp., Inc.*, 2011 WL 3290302, at *8.

The procedural posture of this Action further supports final approval, as the Parties have litigated this case for more than two years and participated in both formal and informal discovery. Through litigation—resulting in this Court's reversal of its initial dismissal—and lengthy settlement discussions with the assistance of Judge Andersen, the Parties have assembled the information necessary to fully assess the strength of the Settlement Class's claims. (Dkt. 98-2 ¶ 27.) That is, after the Court denied the remaining portion of Walgreens' motion to dismiss (dkt. 66), the Parties began to actively engage in informal discovery, exchanging information regarding the inner-workings of Walgreens' Prerecorded Prescription Call program, including how telephone numbers were collected, how they were maintained, and how the Calls were placed. (*See id*. ¶ 6.) Even after reaching the Settlement, the Parties agreed to participate in additional formal written and oral discovery—including Plaintiff's deposition of Walgreens' Director of Outbound Programs, Christopher Helzerman—to confirm, *inter alia*, the representations made by Walgreens regarding the nature of the calls, how the phone numbers were collected, and how they were maintained. (*See id.* ¶¶ 9-11.) The discovery confirmed Walgreens' representations and, with this information in hand, the Parties thereafter decided to

20

participate in a second mediation with Judge Andersen to address certain aspects of the Settlement and ensure its fairness. (*See id.* ¶ 15.)

Given these added measures the Parties undertook to ensure the Settlement's fairness— and the formal and informal discovery that was completed—the stage of the proceedings and amount of discovery completed also support final approval.

### E. The Settlement is not a Product of Collusion and There are No "Red Flags" Present.

Likewise, the Court should not hesitate to grant final approval to the Settlement because it does not raise any of the "red flags" identified by the Seventh Circuit and other courts in analyzing class settlements, including (i) the failure to properly establish the size of the fund and the total class recovery, (ii) the reversion of unawarded attorneys' fees to the defendant, (iii) substantial alterations to existing class definitions, (iv) the use of coupons, rather than cash payments, for class compensation, and (v) overly complicated claim forms. *See Eubank*, 753 F.3d at 723-29.

In the instant case, the Court knows exactly how much money will be available to the Class under the Settlement: $11,000,000 minus payment for all Settlement Administration Expenses, an incentive award to the Class Representative, and the Fee Award to Class Counsel. (Ex. 3 § 1.32.) And while the exact *pro rata* recovery available to claiming Settlement Class Members has not yet been finally determined, based on the number of claims submitted to date, Class Counsel estimates that each claimant will recover nearly $30. (Edelson Decl. ¶ 2.) Thus, unlike in *Eubank*, the Court knows exactly how much the Settlement Class will recover in the aggregate and approximately how much each individual claimant will receive ($30).

The same is true for the remaining concerns identified in *Eubank*. Should the Court decide not to award the full attorneys' fees sought by Class Counsel, the remainder will not

revert to Walgreens (as it did in *Eubank*), but will remain in the Settlement Fund to be disbursed to claiming Settlement Class Members. (Ex. 3 § 1.32.) Nor does the Settlement Class definition call into question the propriety of certification as it did in *Eubank*. There, the Seventh Circuit recognized adversity among several certified subclasses, thus rendering the settlement's provision of a single, unified class improper. *Eubank*, 753 F.3d at 821. Here, however, the Settlement Class Members' claims are materially indistinguishable from each other—each Settlement Class Member received one or more Prerecorded Prescription Calls as a part of a uniform program instituted by Walgreens, and each individual had the same opportunity to opt out of these calls immediately upon receiving one. (Dkt. 98 at 12-13.) As a result, there are no competing groups within the Settlement Class, and none of the diametrically opposed interests that rendered certification of a single, undivided class inappropriate in *Eubank* are present here. *Contra Eubank*, 753 F.3d at 721 (finding "the adversity among subgroups" precluded class certification of one large class for settlement purposes).

And finally, unlike the *Eubank* settlement, which proposed providing only coupon payments to some class members through exceedingly long and difficult claim forms, *id.* at 725, the instant Settlement will provide each claiming Settlement Class Members with a recovery of approximately $30 through the submission of a simple, one-page Claim Form submitted either by mail or online. To date, more than 230,000 Settlement Class Members have completed the claims process without issue.[5] (Racines Decl. ¶ 22.)

Given the absence of any red flags and the presence of only minimal opposition to the Settlement (as discussed further below), the Court should grant final approval to the Settlement.

---

[5]     To date, KCC has processed 67.6% of the Claim Forms submitted and expects that as many as 173,000 Claim Forms will ultimately be validated. (Racines Decl. ¶ 22.)

**F.    The Reaction of the Settlement Class Favors Final Approval.**

Finally, the Court should consider the fact that there is very little opposition to the

Settlement relative to the total number of Settlement Class Members to be "strong circumstantial

evidence favoring settlement." *See In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002,

1020–21 (N.D. Ill. 2000) (finding that a settlement where "99.9% of class members have neither

opted out nor filed objections . . . is strong circumstantial evidence in favor of the settlements");

*In re AT&T Sales Tax Litig.*, 789 F. Supp. 2d at 965 (an exclusion or objection rate of 0.01% of

class members was "remarkably low" and supported the settlement). Again, out of more than 9

million Settlement Class Members, only 151 have requested to be excluded (0.000016%),

(Racines Decl. ¶ 18), and just 20 objections have been raised (0.000002%)—this "infinitesimal"

amount of opposition strongly favors final approval. *See Wilkins*, 2015 WL 890566, at *7

(granting final approval where 27 (0.0003%) requests for exclusion and 9 objections

(0.000001%) were submitted out of more than 9 million settlement class members); *In re Capital*

*One*, 2015 WL 605203, at *8 (granting final approval where 565 (0.0032%) requests for

exclusion and 14 objections (0.0000008%) were submitted out of more than 17.5 million

settlement class members); *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla.

2005) (explaining that 1,159 opt-outs and 41 objections out of approximately nine-million

notices sent supports approval); *In re TD Ameritrade Account Holder Litig.*, Nos. 07-cv-2852,

07-cv-4903 SBA, 2011 WL 4079226, at *7 (N.D. Cal. 2011) (finding that reaction of the class

was "positive" where there were "only 23 [objections] and less than 200 [opt-outs]" out of six

million class members receiving notice).

The strength of the Settlement relative to its opposition is further highlighted by the

substance of the objections and the persons pursuing them. As to the former, the arguments

raised in the objections can more or less be broken up into three categories: (1) "generalized" or "philosophical" objections (raised mainly by *pro se* objectors) suggesting that the Settlement could have been better or different, asserting an appreciation for the Prerecorded Prescription Calls, or expressing contempt for class actions in general; (2) individualized challenges that are not fully dealt with in the first category; and (3) so-called "professional" objections, which rely on boilerplate language and/or resort to improper and unethical behavior to hold the Settlement hostage in hopes of achieving some sort of personal gain. As demonstrated below, not only do the objections raised lack merit, they are particularly weak given the strength of this Settlement.

With respect to the objectors themselves, six of the objections raised are brought by professional objectors, which are an inevitable (though unfortunate) part of any large class action settlement. *See, e.g., In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012) (acknowledging that professional objectors object to "class action settlements . . . not [to] effectuate changes to settlements, but . . . for [their] own personal financial gain"). These objectors, who have reputations that have been charitably described as "colorful," either "sling mud" or simply rely on boilerplate objections, which add nothing to the discussion. True to form, the professional objectors here have all raised nearly the same arguments, which misunderstand the terms of the Parties' Settlement, the circumstances of the litigation, or controlling Seventh Circuit case law (or all three); several have lodged objections on behalf of individuals (including one on behalf of himself) who are not Settlement Class Members and have been unable to explain their bases for representing otherwise; and several have improperly "ghost written" briefs for individuals who purport to be *pro se* objectors (but are really the professional objectors' colleagues) in hopes of avoiding the reach of this Court.

In any event, to hold any sway on final approval of the Settlement, the objections must "cast doubt upon the settlement's fairness, reasonableness, or adequacy." *Am. Int'l Grp., Inc.*, 2012 WL 651727, at *11 (finding that objections that failed to do so should be overruled by the court); *see also Freeman v. Berge*, 68 F. App'x 738, 743 (7th Cir. 2003) (affirming final approval of settlement and recognizing that objections must have merit to be considered); Federal Judicial Center, Manual for Complex Litigation (Fourth) § 21.643 (2004) ("Even a weak objection may have more influence than its merits justify in light of the inherent difficulties that surround review and approval of a class settlement"). They have all failed to meet that burden here and thus, each of the objections raised should be overruled.

### 1. Several Objections Fail to Comply with the Court's Preliminary Approval Order and the Requirements of the Settlement Agreement.

As an initial matter, several of the objections are improperly before the Court because either (i) the objectors themselves are not actually Settlement Class Members, (ii) the objections were untimely, or (iii) the objections lack all of the information required by this Court's Preliminary Approval Order and the Settlement Agreement.[6]

### a. Objectors Hughes, Oldham, Streight and Sibley are not members of the Settlement Class.

First, objectors Sharon Hughes and Christinna Oldham (dkt. 113), Lyndy Streight (dkt. 119), and Gary Sibley (dkt. 120) are not members of the Settlement Class and thus, do not having standing to object to the Settlement.[7] (*See* Edelson Decl. ¶ 4.) Class Counsel raised this issue with each of the objectors and/or their counsel, and to date, not one of them has offered any

---

[6]     For the sake of completeness, the substance of these improper objections is still addressed below.
[7]     The Class List is a record of all telephone numbers assigned to a cellular service that were contained within Walgreens' internal database and to which Prerecorded Prescription Calls were placed. (Ex. 3 at § 4.2(a).) Under the terms of the Settlement Agreement, the Class List controls as to the persons who fall within the Settlement Class. (*Id.*) Pursuant to this Court's Preliminary Approval Order, only those persons who are, in fact, Settlement Class Members may participate in, comment upon or raise objections to the Settlement. (Dkt. 97 ¶ 11.) Thus, these objections are improper.

explanation as to why Class Counsel is wrong on this point. (Edelson Decl. ¶ 5.) That's because they can't.

With respect to Ms. Hughes and Ms. Oldham, Class Counsel spoke with attorney Christopher J. Braun of Plews Shadley Racher & Braun LLP by telephone, and exchanged additional e-mail correspondence over the days that followed. (*Id.* ¶ 6.) On the phone call, Mr. Braun was unaware that Ms. Hughes and Ms. Oldham were not members of the Settlement Class, but he also couldn't describe the due diligence that was performed to confirm their supposed class membership prior to filing. (*Id.*) Instead, he indicated that the due diligence was handled by his associate who was working on the matter. (*Id.*) Neither Mr. Braun, Ms. Hughes nor Ms. Oldham have since offered any basis to suggest that they are part of the Settlement Class.[8] (*Id.*)

As to objector Lyndy Streight, Class Counsel initially spoke directly with Ms. Streight. (*Id.* ¶ 7.) During that conversation, Class Counsel learned that although her objection had been filed "*pro se*," it was actually prepared by attorney Matt Kurilich.[9] (*Id.*) Thereafter, Class Counsel attempted to contact Mr. Kurilich via e-mail[10] and informed him that, among other deficiencies in the objection, Ms. Streight was not a Settlement Class Member. (*Id.* ¶ 8.) Three days later, Mr. Kurilich responded via e-mail to say that he was having difficulty obtaining *pro hac vice* admission in this case and that therefore, he had referred Streight's objection to another

---

[8]     As detailed in Section V.F.7.f, *infra*, Mr. Braun and his firm have a history of asserting similar objections to class action settlements.

[9]     Mr. Kurilich is also a well-known and active member of the professional objector bar. *See* Section V.F.7.c, *infra*.

[10]     Ms. Streight did not know of a telephone number at which Mr. Kurilich could be reached. (Edelson Decl. ¶ 7.)

attorney, whom he did not identify. (*Id.*)[11] Despite repeated requests, Mr. Kurilich never addressed Ms. Streight's contentions regarding her membership in the Settlement Class. (*Id.*)

Finally, Class Counsel attempted to reach objector Gary Sibley, who is himself an attorney and has a reputation for being a professional objector,[12] but received only his voicemail. Class Counsel explained in a voice message that he was not part of the Settlement Class (*Id.* ¶ 9; *see also* Section IV.F.7.b, *infra*), but Mr. Sibley never returned that phone call and has not otherwise communicated with Class Counsel. (Edelson Decl. ¶ 9.)[13]

> b.  Objectors Mehl, Habermann, Thomas, and Gonzales failed to provide all of the information required to raise a valid objection.

The objections lodged by Phyllis Mehl (dkt. 99), Robert Habermann (dkt. 102), Rebecca Thomas (dkt. 109), and Isela Gonzales[14] also fail to comply with the Court's Preliminary Approval Order, which required objectors to provide, *inter alia*, their addresses and cellular phone numbers on which they allegedly received a Prerecorded Prescription Call. (Dkt. 97 ¶ 11.) Mehl and Gonzales both failed to provide their phone numbers, while Habermann and Thomas failed to provide either their address or their phone number.[15] Not only do these omissions mean that the objections are facially deficient, it also makes it impossible to determine whether the objectors are members of the Settlement Class. Therefore, the Court should not consider these objections either. *See In re Amino Acid Lysine Antitrust Litig.*, No 95 C 7679, 1996 WL 460150,

---

[11]    On July 29, 2015, attorney Brent F. Vullings appeared on behalf of Ms. Streight. (Dkt. 134.)

[12]    As with the other counsel representing objectors here, Mr. Sibley is a prolific objector to class action settlements, and has frequently worked with at least one other objector—Paige Nash (dkt. 116)—and her attorney, Thomas L. Cox. *See* Section V.F.7.a, *infra*.

[13]    Objector Mann is similarly not a Settlement Class Member and thus, he lacks standing to pursue an objection. That is, in his objection Mann asserts, "Walgreens has never ever solicited or made any calls to me without my first calling them and requesting they, Walgreens, call me back." (Dkt. 101.)

[14]    Ms. Gonzales' objection, as well as the objections of Lisa Ray, Ashley McClure, and Kenneth M. Hoffman M.D., have not been placed on the Court's docket, but Kolinek addresses them herein for the sake of completeness. (*See* Exhibits 1-A, 1-B, 1-C and 1-D to the Edelson Declaration, respectively.)

[15]    Objector Todd Spann, (dkt. 117), also failed to identify his relevant cellular phone number, but his attorneys ultimately provided it to Class Counsel via e-mail. (Edelson Decl. ¶ 10.)

at *1 (N.D. Ill. July 22, 1996) (refusing to give any consideration to an untimely objection to proposed class action settlement); *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL 3:07-MD-1827, 2011 WL 7575004, at *3 (N.D. Cal. Dec. 27, 2011) (holding that failing to follow proper procedures for lodging an objection is grounds for the court "refus[ing] to consider the objection").

> **2.    *The General and Philosophical Objections to the Settlement are not Obstacles to Final Approval.***

Of the 20 objections received, all but five contend generally that the Settlement could have been different or better, or raise philosophical concerns with this litigation in particular or class actions in general. (*See* dkts. 99, 100, 102, 109, 113, 116-19, 121-23, Ray, Gonzales, and McClure Objections (not docketed).) For the reasons stated below, these arguments should have no effect on the Court's analysis of the Settlement.

> a.    The general contention that the Settlement should have obtained more monetary relief for the Settlement Class does not change the fact that the actual recovery for the Settlement Class is substantial and consistent with other TCPA settlements.

Four objections contend that the amount of the Settlement Fund should have been different and that the anticipated individual recoveries to claiming Settlement Class Members are too small. (*See* dkt. 118 at 9 ("$20-$40 per claimant is on the low side of compensation"); dkt. 120 at 3 ("[t]he few class members who file a claim are receiving minimal benefits"); dkt. 122 at 1 ("the relief presented in the settlement is inadequate in light of the amounts sought in the Complaint"); dkt. 123 at 1 (objecting to anything "less then [sic] twenty ($20,000) thousands dollars, which is a fair compensation").)[16] Even though Plaintiff has explained in significant detail—in his Preliminary Approval Motion, Fee Petition, and now here (*see* Section V.A,

---

[16]    To the extent Settlement Class Members believed the individual relief available under the Settlement was inadequate, or later determine that to be the case, they were free to request to exclude themselves (and, indeed, have the opportunity to do so twice under the Agreement). (*See* Ex. 3 § 2.1(f).)

*supra*)—how he valued the case and why the Parties ultimately came to the Fund amount they did, these objectors seek to substitute that analysis with blanket assertions about the TCPA's damages provisions and their own subjective beliefs about what an appropriate settlement amount should be. However, the reality is (as described above) that the instant Settlement and the monetary relief available to each claiming Settlement Class Member (to say nothing of the prospective relief) is on par with and in many instances, greater than, the relief provided to individual class members in other similar TCPA settlements. *See In re Capital One*, 2015 WL 605203 (finally approving settlement that provided for cash payment of $34.60 to each claiming class member); *Rose v. Bank of Am. Corp.*, No. 11-cv-02390, Dkt. 108 (N.D. Cal. Aug. 29, 2014) (estimating cash payment of $20-$40 to each claiming class member); *Kazemi*, No. 09-cv-5142, Dkt. 94 (N.D. Cal. Apr. 2, 2012) (providing for a $25 voucher to each claiming class member); *In re Jiffy Lube*, No. 11-md-2261, Dkt. 97 (S.D. Cal. 2013 Feb. 20, 2013) (providing for a $20 voucher, which could be redeemed for $15 cash after expiration of nine month waiting period, to each claiming class member).

> b.   The philosophical objections to class actions miss the point and have no place in the analysis of the Settlement.

Eleven objections raise philosophical concerns with the Settlement. (*See* dkts. 99-102, 109, 117, 121, 127; McClure objection, Gonzales objection and objection of Kenneth M. Hoffman M.D. (not docketed).) These objections suggest that this case should never have been filed in the first place and that the Prerecorded Prescription Calls were beneficial to Walgreens' customers.[17] Despite these objectors' personal beliefs about the merits of this Action and class actions generally, both the law and the Federal Rules of Civil Procedure recognize "class actions as a legitimate part of the U.S. litigation system." *In re AT&T Sales Tax Litig.*, 789 F. Supp. 2d at

---

[17]   One objector states that while he has no complaints about Walgreens, a similar suit should be filed against another national pharmacy. (*See* dkt 101.)

982. That a tiny portion of the Settlement Class have lodged what can only be characterized as philosophical concerns with the case or the class action mechanism takes nothing away from the substantial results achieved for the Settlement Class under the Settlement.

> ### 3.      Objections to Class Certification and the Adequacy of Kolinek as Class Representative Lack Merit.

A number of objections suggest that the Settlement Class is not certifiable (*see* dkts. 113, 116, 118, 121) and that Kolinek cannot fairly and adequately represent it even if it was. (*See* dkts. 117, 119, 121.) While a "[s]ettlement does not relieve the Court of its duty to perform a robust analysis of the plaintiffs' predominance showing," the "Supreme Court has made clear . . . that settlement is a factor in the calculus whether certification is proper." *In re AT&T Sales Tax Litig.*, 789 F. Supp. 2d at 972 (internal quotations omitted). As discussed in Plaintiff's Motion for Preliminary Approval, the Settlement Class meets all of the requirements for certification under Rule 23.

At their most basic, the objections to class certification are based primarily on the (mistaken) understanding that there are individual issues of consent at play. (*See* dkt. 113 at 1-8; dkt. 116; dkt. 120 at 1-3; dkt. 131 at 6-7.)[18] As detailed in Plaintiff's Motion for Preliminary Approval, however, the consent defense (to the extent one exists) is common to the Settlement Class and thus supports class certification. It has always been Walgreens' position that its practices for obtaining Settlement Class Members' phone numbers and placing the Prerecorded Prescription Calls establish that the Settlement Class Members consented to receive the calls. (Dkts. 20, 30, 44.) Although Plaintiff disputed that position, the answer to whether those uniform practices constitute sufficient consent can ultimately be answered for the Settlement Class as a

---

[18]      For its part, the objection filed on behalf of Cozby, Bullard, Hughes and Oldham cherry-picks and mischaracterizes statements from Plaintiff's own briefing on the issue to manufacture support for its arguments. (Dkt. 113 at 2-8.)

whole and thus, justify certification here. *See, e.g., Birchmeier*, 302 F.R.D. at 251 (finding commonality satisfied when "there [was] a common injury, resulting from receipt of the allegedly offending calls, not to mention common questions regarding the liability of the defendants who did not themselves place the calls").

### 4. Objections to the Injunctive Relief Misunderstand the Settlement.

Three objections take issue with the Settlement's prospective relief, but these arguments fundamentally misunderstand the relief provided. (*See* dkts. 116, 118, 120.) The Settlement does not simply require Walgreens to "follow the law," as these objections contend. (*See* dkt. 118 ("these actions are already required by law and should not be considered as constituting settlement relief").) Rather, it specifically requires Walgreens to:

> (i) "utilize expert analysis and independent, third-party data to identify customer telephone numbers that have received Prerecorded Prescription Calls during the class period as assigned to wireless or landline telephone service,"

> (ii) "implement procedures to engage its customers to confirm the accuracy of their communications preferences on file, including their consent to receive automated calls on the telephone numbers included in their customer/patient profiles," and

> (iii) "provide or continue to provide customers the option to elect to receive, and unsubscribe from, Prerecorded Prescription Calls."

(Ex. 3 §§ 2.2(a)-(c).) These measures will not only cost Walgreens millions of dollars to implement and test (*see* Edelson Decl. ¶ 3), but will also ensure that it does not make Prerecorded Prescription Calls to its customers without their consent and is consistent with the relief provided under similar TCPA settlements. *See In re Capital One*, 2015 WL 605203, at *9, 19 (granting final approval of a TCPA class action settlement that included "injunctive relief barring [defendant] from calling an individual's cell phone without prior express consent"); *Bayat v. Bank of the West*, No. 13-cv-2376, 2015 WL 1744342, at *6 (N.D. Cal. Apr. 15, 2015)

31

(granting final approval of a TCPA class action settlement even though the settlement only secured "minimal injunctive relief" requiring class members to affirmatively "opt-in" to stop receiving calls); *Vandervort v. U.S. Sample Servs., Inc.*, 8 F. Supp. 3d 1200, 1204 (C.D. Cal. 2014) (granting final approval of a TCPA class action settlement that included an injunction "prohibiting [defendant] from advertising by fax in violation of TCPA"); *Spillman v. RPM Pizza, LLC*, No. , No. 10-cv-349, 2013 WL 2286076, at *4 (M.D. La. May 23, 2013) (granting final approval of a TCPA class action settlement that required defendant to "comply with the TCPA statutory and regulatory requirements applicable to pre-recorded phone messages").

Accordingly, the prospective relief substantially supports final approval of the Settlement.

### 5. *Objections to the Requested Attorneys' Fees and Incentive Award Have No Basis in Law or Fact.*

In addition to the objections discussed above challenging the relief obtained by the Settlement, some challenge Class Counsel's request for attorneys' fees and an incentive award for the Class Representative. None should give the Court pause in approving the Settlement.

#### a. Class Counsel's fee request is consistent with the market-rate approach employed by courts in the Seventh Circuit.

Ten objections question whether Class Counsel are entitled to fees and, if so, whether the fee request here is appropriate. (Dkts. 102, 113, 115-22.) The objections that substantively address the fee issue primarily ignore the Seventh Circuit's applicable market-rate analysis for determining reasonable attorneys' fees in common fund cases such as this, and suggest instead that a lodestar analysis is required.[19] They are mistaken. In common fund settlements, the

---

[19]     For those objections that suggest (without explanation) that this case does not involve novel and complex legal issues that warrant an upward risk adjustment, Class Counsel has already provided a detailed explanation of the risks facing them in this case. (*See* dkt. 110 at 114-20.) Not only were Plaintiff's claims already dismissed once but the defenses asserted also posed a significant risk, as

Seventh Circuit has "consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007); *see also In re Synthroid Mktg. Litig.*, 264 F.3d 712, 719 (7th Cir. 2001) ("*Synthroid I*") (cautioning that "any method other than looking to prevailing market rates assures random and potentially perverse results"). Most recently, the Honorable James F. Holderman (ret.) performed an extensive analysis using data compiled from seventy-one post-2010 TCPA class action settlements to determine the appropriate market rate for the award of attorneys' fees. *Capital One*, 2015 WL 605203, at *12. This analysis showed that "the market rate in a typical TCPA class action [is] a sliding-scale fee," that is calculated based on a percentage of the common fund recovery achieved for the benefit of the settlement class. *Craftwood Lumber Co. v. Interline Brands*, No. 11-cv-4462, 2015 WL 2147679, at *4 (N.D. Ill. May 6, 2015) (citing *In re Capital One*, 2015 WL 605203, at *16 n.13); s*ee also In re Synthroid Mktg. Litig.*, 235 F.3d 974, 974 (7th Cir. 2003) ("*Synthroid II*") (providing class counsel 30% of the first $10 million of recovery in a common fund case that then decreases because the market rate percentage of recovery "likely falls as the stakes increase").

The market rate (or sliding scale) for the award of fees in TCPA class actions, prior to accounting for the risks associated with a particular case, is as follows:

| **Recovery** | **Fee Percentage** |
| --- | --- |
| First $10 million | 30% |
| $10 – 20 million | 25% |
| $20 - 45 million | 20% |
| Excess above $45 million | 15% |

---

Plaintiff's claims hinged on factual discovery and issues of first impression. Indeed, in light of the recent FCC Order creating an exemption for prescription refill calls, Walgreens' emergency purpose exemption defense made this case even riskier than the typical TCPA class action. (*Id.* at 18-19.)

*In re Capital One*, 2015 WL 605203, at *16 n.13; *see also Wilkins,* 2015 WL 890566, at *1 (applying the 30% market rate fee recovery to the first $10 million of a TCPA class action settlement, which then decreased on a sliding scale); *Craftwood Lumber*, 2015 WL 605203, at *12 (St. Eve, J.) (same).

From there, the analysis turns to the risk of non-payment that class counsel faced when they decided to take on the action.[20] *In re Capital One*, 2015 WL 605203, at *15; *see also Trans Union*, 629 F.3d at 746 (same). A risk premium is warranted because "[t]he greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013). To illustrate this effect of risk on an attorney's willingness to undertake the litigation, "if the market-determined fee for a sure winner were $1 million the market-determined fee for handling a similar suit with only a 50 percent chance of a favorable outcome should be $2 million." *Trans Union*, 629 F.3d at 746. Ultimately, "a higher risk of loss does argue for a higher fee." *Id.* In fact, in his analysis Judge Holderman held that even just small risk merited a 6% increase from the base market fee, meaning that class counsel could recover 36% of the first $10 million—instead of 30%—of the common fund benefit to a class. *In re Capital One*, 2015 WL 605203, at *18 (citing Eisenberg & Miller, *Attorney Fees in Class Action Settlements: 1993-2008*, 7 J. Empirical Legal Studies 265 (Tab.8) (2010)).

Despite this clear precedent, several objectors levy specific (but ultimately unavailing) attacks on Plaintiff's fee analysis. First, objectors Cozby, Bullard, Hughes and Oldham rely

---

[20]     Risk of nonpayment is one of the factors courts evaluate in determining legal fees, along with the quality of the counsel's performance, the amount of work necessary to resolve the litigation, and the stakes of the case. *Synthroid I*, 264 F.3d at 721. As discussed in Section II.A, *supra*, Class Counsel have devoted significant amounts of time, effort, and resources to the quality work-product involved in this high-stakes litigation, including the novel legal issue of whether the alleged calls fell under the TCPA's emergency purpose exception.

heavily on Judge Davila's analysis in *Rose v. Bank of America,* Nos. 11-cv-02390, 12-cv-04009,

2014 WL 4273358 (N.D. Cal. Aug. 29, 2014), to suggest that the results achieved in this case are

unremarkable and therefore, require the Court to award attorneys' fees far less than the market

would otherwise suggest.[21] (Dkt. 113 at 10-13.) Setting aside that these objectors entirely fail to

address controlling Seventh Circuit precedent, there are a number of issues with their approach.

For one, *Rose* was decided in the Northern District of California and thus is not controlling in

this Court. Second, any reliance on the percentage of the fund awarded there is inapposite given

that, unlike in this Circuit, the benchmark attorneys' fee award in consumer class actions in the

Ninth Circuit is 25%. (The same is true for several of the other cases the Cozby objection

references.)[22]

    Beyond that, the objection materially mischaracterizes the primary basis for Judge

Davila's ultimate award of attorneys' fees in the *Rose* matter. It was not, as the objectors suggest,

that the settlement represented less than an exceptional result for the class that led the court to

significantly reduce the requested attorneys' fees. Rather, the reduction was based on the court's

finding "that Class Counsel included an unreasonable number of hours in their lodestar

calculation[;]" that the work performed by counsel was "duplicative" and "redundant[;]" and the

---

[21]    To be clear, the Cozby objection does not address the Seventh Circuit's market-rate approach. Indeed, in speaking with the objectors' counsel, he made clear that he had not read Judge Holderman's *In re Capital One* opinion (despite it being cited throughout Plaintiff's fee briefing) and seemed not to be familiar with the controlling market-rate analysis for fees in common fund cases. (Edelson Decl. ¶ 11.) When he finally reviewed the *In re Capital One* opinion, he still failed to understand it and argued that the fees there amounted to just "20.77%, not 36%" of the settlement. (*Id.*) That, of course, ignores the fact that the fees were awarded relative to a nearly $75 million megafund, for which the fees must decrease (in accordance with the "sliding scale") as the amount of the fund increases. In any event, it could not be more clear that Judge Holderman awarded the base 30% of the first $10 million of class relief for attorneys' fees, with an upward adjustment of 6% for the risk involved. *In re Capital One*, 2015 WL 605203, at *18.

[22]    The Cozby objection also seems to be confused about what Plaintiff's requested fee award was— at one point stating that "Class Counsel asks this Court to approve payment of 36% of the settlement fund less notice and administration costs and the payment to the class representative" (dkt. 113 at 8), and later suggesting that "[t]he attorneys' fee in this case should be far less than 36% of the *gross* recovery." (*Id.* at 11 (emphasis added).)

fact that counsel had apparently "coordinated their efforts from very early on in the proceedings, perhaps deliberately selecting a litigation strategy whereby Defendants would be overwhelmed by attacks on several fronts and consequently forced to negotiate from a weaker position" thus further unnecessarily increasing the work performed and hours billed. *See Rose,* No. 11-cv-2390, Dkt. 108 at 13-16 (N.D. Cal. Aug. 29, 2014).[23]

The Franz objection also mistakenly relies upon the *Rose* opinion, and similarly fails to address the market-rate for attorneys' fees in TCPA class actions in the Seventh Circuit. Further, it demands that Class Counsel publicly disclose their detailed billing records and contends that a lodestar cross-check is required before any attorneys' fees can be awarded. (*See* dkt. 118 at 10-17.) It is mistaken there as well. While the Court has the discretion to award attorneys' fees through a lodestar calculation if it so chooses, the market conclusively establishes that the percentage of the fund method is the near-exclusive means—and certainly the norm—for determining fees in a TCPA common fund case. *See Americana Art China, Co., Inc. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014). Resort to lodestar is typically only appropriate where a settlement has a very low number of claims and any remaining funds revert to the defendant, thus resulting in the court believing the benefit actually conferred to the class is too low to justify use of a percentage. *Id.* Moreover, the Court need only apply one method of determining fees. *Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998) ("[W]e have

---

[23]     The Cozby objectors also argue that the prospective relief provided by the Settlement fails to offer any support for the requested fee award. That argument is misplaced for a couple of reasons as well. First, Plaintiff doesn't base the requested attorneys' fees on the prospective measures obtained under the Settlement (even though they could). (*See* skt. 110.) And second, it ignores the breadth of the relief and the fact that it ultimately cost Walgreens millions of dollars to implement. *See* Section V.F.4., *supra*.

never ordered the district judge to ensure that the lodestar result mimics that of the percentage approach").[24]

The only other objectors to even attempt to specifically address Plaintiff's requested attorneys' fees—Sibley and Spann—similarly miss their mark. For his part, objector Sibley adds only a curious discussion of the Ninth Circuit's opinion in *In Re: Mercury Interactive Corp. Sec. Litig.* regarding the requirement that a fee petition be filed in advance of the deadline for class members to object, which of course, happened here. (*See* dkt. 120 at 5-6 (citing *In Re: Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010)); *see also* dkts. 103-105.) As to Spann, while he recognizes the existence of the Seventh Circuit's market-rate analysis, he cites no case law whatsoever; he misunderstands the contingent fee agreement between Plaintiff and Class Counsel (mistakenly suggesting that it limits the fee request to no more than 33% of the benefit to the class[25]); and, in any event, concludes by saying that a sufficient fee award here would still be between $1.96 million and $2.53 million. (*See* dkt. 117 at 2-3.)

> b.  The challenges to the reasonable incentive award are likewise without merit.

Objector Franz contends that the proposed incentive award is excessive, and should prevent final approval. (*See* dkt. 118.) The objection does not, however, point to any case law that would suggest that's the case. And in light of Plaintiff's substantial role and risk in the

---

[24]   Notably, when Class Counsel spoke with Franz's attorney about the Seventh Circuit's market-rate analysis, he responded simply that he didn't "buy the thirty percent" analysis, especially if there isn't a "lodestar [cross-]check" performed. (Edelson Decl. ¶ 12.) He did not, however, identify a case that supported that position and specifically said that he was not aware whether there was anything on point in the Seventh Circuit. (*Id.*) When Class Counsel made clear that there are, in fact, numerous opinions from the Seventh Circuit that directly address the market-rate analysis for fees in common fund cases, and that Judge Holderman (ret.) recently performed an extensive analysis of the market rate for TCPA cases in his *In re Capital One* opinion, Franz's counsel said that he wasn't aware of the *In re Capital One* opinion either (despite it being cited extensively in Plaintiff's briefing). (*Id.*)

[25]   In fact, the fee agreement between Class Counsel and Plaintiff Kolinek allows for a greater fee award than Class Counsel is requesting, limiting Class Counsels' recovery to "one third of the total recovery," which in this case would amount to $3,666,666—i.e., 1/3 of $11,000,000.

litigation, (*see* dkt. 110 at 21), and the paucity of support for the objector's arguments, the Court should overrule this challenge to the Settlement as well.

> **6.     The Objections Related to Cy Pres, Notice and the Discovery Taken are Mistaken and Should be Overruled.**
>
>> a.     Streight and Spann are mistaken about a "hidden cy pres provision."

Objector Streight (again, not a Settlement Class Member) also contends that the "settlement contemplates a cy pres beneficiary and distribution, but cy pres [is] not mentioned in the Class Notice and a beneficiary was not named, which is unfair to the Class." (Dkt. 119 at 4.) Spann's objection claims "Class Counsel intends to dispose of the unused, or unclaimed settlement funds with one or more cy pres recipients." (Dkt. 117 at 9.) Both objections misunderstand the terms of the Settlement Agreement. Rather than set up some hidden *cy pres* component, the Settlement merely contemplates that all monies remaining in the Settlement Fund "after payment of all Approved Claims, all Settlement Administration Expenses, the Fee Award to Class Counsel, and the incentive award to the Class Representative [] be distributed to Settlement Class Members with Approved Claims if practicable, or in a manner as otherwise directed by the Court upon application made by Class Counsel." (Ex. 3 § 2.1(e).) That is, if redistribution of the uncashed settlement checks to the Settlement Class is practicable, then the Parties will redistribute any remaining funds to all claiming Settlement Class Members. It is only in the unlikely event that such redistribution is not practicable (i.e., the cost of preparing and sending the checks would exceed the amount each Settlement Class Member would receive), that Class Counsel will apply to the Court for how to proceed. Courts regularly implement such provisions. *See Hughes v. Kore of Ind. Enterprise, Inc.*, 731 F.3d 672, 675-76 (7th Cir. 2013) (suggesting that courts should utilize a *cy pres* distribution for unclaimed settlement funds rather

than redistribute a minimal amount ($3.57) to claiming class members); *Superior Beverage Co., Inc. v. Owens-Illinois, Inc.*, 827 F. Supp. 477, 477 (N.D. Ill. 1993) ("invit[ing] applications for cy pres grants and for suggestions as to how such cy pres distributions should be made" when settlement agreement provided the court could distribute any remaining funds at its discretion under the *cy pres* doctrine); William B. Rubenstein*, Newberg on Class Actions*, § 12:34 (5th ed. 2015) ("A court or the parties will sometimes wait to see whether there are even excess funds to decide where to send them, or wait until final approval has been granted. Identifying specific recipients before that time may be a waste of effort and/or a lightning rod for objectors.").

Thus, contrary to these objectors' suggestions, there is not a hidden *cy pres* component to the Settlement that Class Counsel is somehow seeking to exploit.

b.      <u>Any objections challenging adequate notice fail because the Court already found the proposed Notice Plan sufficient.</u>

Three objections find some fault with the form or method of notice provided to Settlement Class Members, but do not ultimately call into question the propriety of the Settlement. (Dkts. 99, 119, Ray Objection (not docketed).) Objector Streight (again, not a Settlement Class Member), contends that the e-mail notice transmitted to the Settlement Class "is not individual notice as required by Federal Rule 23." (Dkt. 119 at 5-6.) That's just wrong. *See In re AT&T Mobility*, 270 F.R.D. at 351 (finding that notice satisfied Rule 23's requirements when it was sent to e-mail addresses of former AT&T customers, and via United States Mail if no valid e-mail address existed); *see also Wilkins*, 2015 WL 890566, at *3 (same).[26] Objector

---

[26]      Streight also contends that the claims process is "burdensome, unreasonable and unfair," and that there should have been direct payments to all Settlement Class Members instead. (Dkt. 119 at 4.) That's not a tenable position. As an initial matter, in order to obtain relief under the Settlement, Settlement Class Members had to submit Claim Forms to affirm that they did not, in fact, consent to receive the Calls. (Ex. 3 § 1.3.) That aside, Streight doesn't explain how her alternative proposal would work practically or economically. Nor does she recognize that the Court approved the claims process and more than 230,000 claiming Settlement Class Members found it easy enough to navigate. Perhaps most telling, Streight's

Mehl simply did not appreciate receiving the notice via e-mail, but does not raise any substantive concerns with the Notice Plan. (*See* dkt. 99.) And objector Ray was similarly displeased with receiving a postcard notice that included a pre-populated Claim Form with her phone number on it—she does not, however, suggest that she has actually been negatively impacted as a result. (*See* Ray Objection, attached as Exhibit 1-B.)

c.    <u>The discovery taken in this case was more than adequate for final approval of the Settlement.</u>

Objectors Beskine and Streight also contend that the amount of formal discovery in this case was insufficient to allow for a meaningful assessment of what would be a fair and reasonable Settlement. (Dkts. 119, 121.) These objections' main gripe seems to be that the reliance on informal discovery didn't allow the Parties a meaningful opportunity to analyze their positions in the case or the strength of the Class's claims. (*See* dkt. 119 at 3; dkt. 121 at 9-10.) Setting aside that formal discovery was taken as well, courts in this District have made clear that, "informal discovery [may be] more than adequate to allow both the Court and the parties to make informed judgments with respect to the Settlement" and "requiring formal discovery [may] entail significant expenditures in resources and time—both at cost to the Settlement Class Members— with limited marginal value…." *In re AT&T Sales Tax Litig.*, 789 F. Supp. 2d at 975; *see also Schulte,* 805 F. Supp. 2d at 586 ("The costs associated with discovery in complex class actions can be significant" and thus "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation") (internal quotation omitted); *In re AT&T Mobility*, 270 F.R.D. at 350 (a "significant amount of informal discovery" weighs in favor of

---

counsel, Matt Kurilich (who claims to no longer represent her because it is too difficult to seek *pro hac vice* admission in this Court), has recycled that same argument in several of his previous objections. *See, e.g., Hyundai v. Kia Fuel Econ. Litig.*, No. 13-ml-02424, Dkt. 314 at 6 (C.D. Cal. 2013); *Nader v. Capital One Bank USA, N.A.*, No. 12-cv-01265, Dkt. 160 at 3 (C.D. Cal. Feb. 13, 2012); *Spears v. Washington Mutual, Inc.*, No. 08-cv-00868, Dkt. 598 at 2-3 (N.D. Cal. Mar. 20, 2015).

approval). Here, Class Counsel relied on informal discovery and then confirmed the facts

provided with formal written and oral discovery to ensure the scope of the Settlement Class and

relief afforded under the Settlement were fair. And, given that the Settlement offers relief that is

on par with (or greater than) that obtained in other similar TCPA cases, it is hard to see that more

discovery (simply for the sake of discovery) would have produced a different or better result.

> ### 7. The Objections Raised or Prepared by Professional Objectors Were Improperly "Ghost-Written" or Otherwise Call Into Question the Propriety of the Arguments Raised and the Objections' Underlying Motivations.

Finally, the Court should also consider the source of the objections at issue—here, six of

the objections were prepared by and on behalf of "professional" or "serial" objectors who (as

alluded to above) each have long histories of raising similar, ultimately unavailing or improper

objections to class action settlements. The conduct and cost of professional objectors is well

documented by the federal courts. *See Heekin v. Anthem*, No. 05-cv-01908, 2013 WL 752637, at

*3 (S.D. Ind. Feb. 27, 2013) (recognizing that "serial objectors" who, *inter alia*, fail to file an

appearance act in "bad faith and also potentially violat[e]…local and ethical rules" and requiring

"serial objectors" to each post a $250,000 appeal bond); *In re Cathode Ray Tube (CRT) Antitrust*

*Litig.*, 281 F.R.D. 531, 533 n.3 (N.D. Cal. 2012) ("[P]rofessional objectors can levy what is

effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the

objectors. Literally nothing is gained from the cost….") (*quoting In re Checking Account*

*Overdraft Litig.*, 830 F. Supp. 2d at 1361, n. 30); *see also In re UnitedHealth Group PSLRA*

*Litig.*, 643 F. Supp. 2d 1107, 1108-09 (D. Minn. 2009) ("The remoras are loose again"); *O'Keefe,*

214 F.R.D. at 295 n.26 (observing that "Federal courts are increasingly weary of professional

objectors").

The modus operandi for professional objectors is also easy to spot: (1) wait until the very

last minute of the objection deadline; (2) file an objection that adds nothing to the court's analysis; (3) on behalf of a client they can control (often a family member, friend, or colleague); (4) threaten appearances, appeals, or other action; and (5) in response to accusations of unethical conduct, suggest it is the accuser who is unethical for suggesting improper conduct and/or motivations. This Settlement is no exception, having drawn the attention of at least 10 attorneys (and 4 individuals) who often purport to act on behalf of concerned class members, but have well-documented histories of resorting to some of the most egregious and improper conduct that, at best, wastes everyone's time and adds nothing to the Settlement, and at worst, is deserving of sanctions and other disciplinary conduct.

Particularly notable here is the number of professional objections—at least half—that have been "ghost written" by attorneys on behalf of purported *pro se* objectors (or their professional objector colleagues), in apparent hopes of avoiding the reach of this Court and the ethical and other obligations attendant with practicing before it. Courts throughout the country, including in this District, agree that, "the practice of 'ghost-writing' briefs for *pro se* litigants is unethical and will not be permitted." *Chriswell v. Big Score Entertainment, LLC*, No. 11-cv-00861, 2013 WL 315743, at *4 (N.D. Ill. Jan. 28, 2013)*. That's because it "raises serious issues of professional misconduct." *Id.*; *see also Johnson v. City of Joliet*, No. 04-cv-6426, 2007 WL 495258, at *2 (N.D. Ill. Feb. 13, 2007) ("If, as we suspect, a licensed attorney has been ghost-writing Johnson's pleadings, this presents a serious matter of unprofessional conduct. Such conduct would circumvent the requirements of Rule 11…."); *Gajewski v. Ocwen Loan Servicing, LLC*, No. 14-cv-9230, 2015 WL 3961611, at *2 (N.D. Ill. June 25, 2015)*.

First, "such conduct circumvents the requirements of Federal Rule of Civil Procedure 11, which obligates members of the bar to sign all documents submitted to the court, and to

personally represent that there are grounds to support the assertions made in each filing."
*Chriswell*, 2013 WL 315743, at *4 (citing *Johnson v. Bd. of County Comm'rs for Cnty. of Fremont,* 868 F. Supp. 1226, 1231-32 (D. Colo. 1994)). Second, "[g]hostwritten briefs also raise issues of fundamental fairness" because "it would be patently unfair for a *pro se* litigant to benefit from the less stringent standard applied to *pro se* litigants if, in fact, she is receiving substantial behind-the-scenes assistance from counsel." *Chriswell*, 2013 WL 315743, at *4. (citing *Haines v. Kerner,* 404 U.S. 519, 520 (1972)). Further, ghost-writing briefs by attorneys who do not appear (and have no intention of appearing) on behalf of their clients in courts where they have not been admitted to practice amounts to the unauthorized practice of law. *See Gajewski*, 2015 WL 3961611, at *2 (citing *Thigpen v. Banas,* No. 08-cv-4820, 2010 WL 520189, at *2 (N.D. Ill. Feb. 11, 2010)).

In response to this sort of conduct, courts have ordered disciplinary proceedings and sanctions, including requiring parties to disclose the identity of an undisclosed attorney. *Gajewski*, 2015 WL 3961611, at *2 (citing *Chriswell,* 2013 WL 315743, at *5 (ordering the plaintiff to file a sworn affidavit disclosing whether she has received legal assistance from an attorney and revealing the identity of the person who has been assisting her with her briefs); *Thigpen,* 2010 WL 520189, at *2 (striking second amended complaint where *pro se* plaintiff admitted someone else had prepared it)). The result should be no different here.

a.  Paige Nash's "pro se" objection was ghost-written by serial objector Thomas L. Cox, and she herself has been represented numerous times in the past by fellow objector Gary Sibley.

For her part, objector Paige Nash (purportedly *pro se* here) has filed objections to several other class actions settlements in the past, most often being represented by attorney Thomas L. Cox. *See, e.g., In re Apple iPhone Prod. Liab. Litig.*, No. 1-md-02188 (N.D. Cal.); *Lee v.*

*Enterprise Leas. Company-West*, No. 10-cv-00326 (D. Nev.). Nash also filed an objection to the

class action settlement in the matter captioned, *In re AT&T Sales Tax Litig.*, No. 10-cv-02278

(N.D. Ill.), where she was (not coincidentally) represented by fellow objector in this case,

attorney Gary Sibley. *See Paige Nash v. AT&T Mobility LLC*, No. 11-02497 (7th Cir. 2011)

(objection voluntarily dismissed).

Just as notable, despite representing to the Court that she was proceeding *pro se* here,

Nash's objection was actually ghost-written by attorney Cox. As outlined above, having

recognized that Nash has been represented by Cox in numerous objections in the past, Class

Counsel (who themselves have opposed objections by Cox in the past) contacted Cox to see

whether he was involved. (Edelson Decl. ¶ 13.) Cox confirmed that he had prepared Nash's

objection and that he understood he was required to appear in the case as a result—referencing

previous appearances he has made in this District. (*Id.*) Nevertheless, he claimed he had not

determined whether he would "do anything with" the objection. (*Id.* ¶ 14.) Indeed, in speaking

with Class Counsel, Cox admitted that "sometimes [he] file[s] objections for people but never

do[es] anything after that." (*Id.*) As he put it, "I'm just telling you that sometimes I file an

objection or write one for someone, but we never do anything about it." (*Id.*)

Cox has frequently attempted to avoid the purview of the various courts in which he

"practices." As he does on behalf of Nash here, Cox has asserted numerous objections in other

matters only to voluntarily dismiss or fail to prosecute them when pressed to appear before the

courts. *See, e.g., Arthur v. SLM Corp.*, No. 10-cv-00198 (W. D. Wash.) (objection filed on behalf

of Sara Sibley and voluntarily dismissed after Cox is ordered to show cause as to why he failed

to apply for *pro hac vice* admission); *Fraley v. Facebook, Inc.*, No. 11-cv-01726 (N.D. Cal.)

(objection asserted on his own behalf and dismissed for failure to prosecute).

Beyond his generally prolific filing, Cox is also notable for working closely with other serial objectors like attorney Gary Sibley[27]—who filed on his own behalf here—often asserting objections on behalf of himself, his family members, Sibley's family members, and Nash. *See, e.g., In re Netflix Privacy Litig.*, No. 11-cv-00379 (N.D. Cal. Nov. 13, 2012) (asserting objection on behalf of his daughter (Tracey Cox Klinge)—but ultimately voluntarily dismissed it after his daughter failed to appear for deposition and motion to quash was denied); *Kardonick v. JP Morgan Chase*, No. 10-cv-23235 (S.D. Fla. Sept. 8, 2010) (asserting objection on behalf of Katie *Sibley* and Daniel *Sibley*); *In re Apple iPhone Prods. Liab. Litig.*, No. 10-md-02188 (N.D. Cal. Nov. 9, 2010) (asserting objection on behalf of his daughter, Katie *Sibley*, Warren *Sibley*, and Paige Nash). Cox's success rate (or, more appropriately, the lack thereof) exposes the frivolousness of his practice. *See In re Mut. Funds Inv. Litig.*, MDL 1586, 2011 WL 1102999 (D. Md. Mar. 23, 2011) (in a case where Cox once again represented Tracey Cox Klinge, the court noted that "[i]t appears that Mr. Cox is a frequent and professional objector, as he has objected or represented objectors in at least six other class actions since 2010.") (citing *In re Tyson Foods, Inc., Chicken Raised Without Antibiotics Consumer Litig.*, MDL No. 08–1982, 2010 WL 1924012 (D. Md. May 11, 2010)); *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546 (D.N.J. 2010); *In re Lawnmower Engine Horsepower Mktg. & Sales Pracs Litig.*, 733 F. Supp. 2d 997 (E.D. Wis. 2010); *In re Lifelock, Inc. Mktg. & Sales Prac. Litig.*, MDL No. 08–1977, 2009 WL 2222711 (D. Ariz. July 24, 2009); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, MDL No. 08–1998, 588 F. Supp. 2d 1368 (W.D. Ky. Dec. 13, 2010)); *see also Arthur v.*

---

[27]     Given that Cox and Sibley have worked closely in the past, and Sibley has frequently represented Nash as well, it appears the two professional objectors may have been working in conjunction here. Of course, failing to inform the Court of that fact and unnecessarily multiplying the litigation by filing separate briefs is improper as well. *See O'Keefe v. Chisholm*, Nos. 14-1822, 14-1888, 14-1899, 14-2006, 14-2012, 2014 WL 1815308, at *1 (7th Cir. May 7, 2014) ("Duplicative briefing will be stricken and may result in disciplinary sanctions against counsel") (internal citations omitted).

*Sallie Mae, Inc.*, 10-cv-00198, 2012 WL 4075238 (W.D. Wash. Sept. 17, 2012) (overruling

Cox's objection as "meritless").

All of that aside, Nash's two-page "speaking" objection does not add to the discussion

nor militate against final approval. As described above, each of the arguments she makes

(without a single citation to case law or any analysis) miss their mark. The Settlement Class (as

this Court previously held) satisfies each of Rule 23's requisites to certification; Plaintiff's

requested attorneys' fee award is reasonable under the Seventh Circuit's market-rate approach to

awarding fees in common fund cases such as this; and, the prospective measures under the

Settlement require Walgreens to do far more than simply "follow the law." As such, Nash's

objections should be overruled.

> b.   Objector Gary Sibley is himself an attorney and serial objector,
>       who has worked frequently with Nash and her professional
>       objector attorney, Thomas L. Cox.

Objector Gary Sibley (again, not a Settlement Class Member) is also a prolific filer in the

objector bar. He has filed more than a dozen objections in his time, almost always voluntarily

dismissing or being dismissed on appeal. He also typically pursues objections on behalf of

himself, his wife, the daughter of serial objector Thomas L. Cox, or Paige Nash. *See In re Bayer*

*Corp. Combination*, No. 09-md-2023 (E.D.N.Y.) (objection filed on behalf of his wife); *Steinfeld*

*v. Discover Fin. Servs.*, No. 12-cv-01118 (N.D. Cal. Mar. 6, 2012) (objection filed on his own

behalf); *In re AT&T Mobility*, No. 10-cv-02289 (N.D. Ill. Apr. 7, 2010) (objection filed on behalf

of Paige Nash); *In re Dell, Inc. Securities Litig.*, No. 06-cv-00726 (W.D. Tex. Sept. 13, 2006)

(objections filed on behalf of relatives of both Sibley and Cox); *In re Online DVD Rental*

*Antitrust Litig.*, No. 09-md-02029 (N.D. Cal. Apr. 13, 2009) (objection filed on behalf of Cox's

daughter); *David Shabaz v. Polo Ralph Lauren Corp.*, No. 07-cv-01349 (C.D. Cal. Nov. 15,

2007) (objection filed on his own behalf); *City of Pontiac Police & Fire Retirement System v. Kartsotis*, No. 06-cv-01672 (N.D. Tex. Sept. 13, 2006) (objection filed on behalf of his wife); *In re Apple Inc. Securities Litig.*, No. 06-cv-05208 (N.D. Cal. Aug. 24, 2006) (objection filed on his own behalf).

Given that Cox and Sibley have worked closely in the past, and Sibley has frequently represented Nash as well, it appears the two professional objectors may have coordinated their efforts here. If that is the case, failing to inform the Court of that fact and needlessly multiplying the litigation would be just the latest misconduct in Sibley's resume. *See id.* Even if that is not the case, given that he raises nearly identical arguments to Nash's regarding class certification, the relief available under the Settlement and Plaintiff's requested attorneys' fee award (albeit with at least some citations to case law), Sibley's objections can go the way of Nash's and be overruled in their entirety.

c.     <u>Lyndy Streight's "*pro se*" objection was ghost-written by serial objector Matt Kurilich.</u>

Next, objector Lyndy Streight has also confirmed that despite filing "*pro se*" her objection was actually written by attorney Matt Kurilich. (*See* Edelson Decl. ¶ 7.) Kurilich is no stranger to objections either: he has participated as counsel in no less than 10 objections, often noticing appeals of final approval orders only to voluntarily dismiss later. *See, e.g., Hyundai & Kia Fuel Econ. Litig.*, No. 13-ml-02424 (C.D. Cal. Feb. 6, 2013); *Juhline v. Ben Bridge-Jeweler, Inc.*, No. 11-cv-02906 (S.D. Cal. Dec. 14, 2011); *Miller v. Ghirardelli Chocolate Co.*, No. 12-cv-04936 (N.D. Cal. Sept. 21, 2012); *Nader v. Capital One Bank USA, N.A.*, No. 12-cv-01265 (C.D. Cal. Feb. 13, 2012); *Golloher v. Todd Christopher International, Inc.*, No. 12-cv-06002 (N.D. Cal. Nov. 27, 2012); *Poertner v. The Gillette Co.*, No. 12-cv-00803 (M.D. Fla. May 25, 2012); *In re Google Referrer Header Privacy Litig.*, No. 10-cv-04809 (N.D. Cal. Oct. 25, 2010); *In re*

*Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liabl. Litig.*, No. 10-ml-02151 (C.D. Cal. Apr. 12, 2010). Perhaps most notable for purposes of this case, Kurilich has in the past filed objections on behalf of individuals who were not actually class members—as he did with Streight here—only to withdraw when asked to substantiate their claims of class membership. *See Spears v. Washington Mutual, Inc.*, No. 08-cv-00868 (N.D. Cal. Feb. 8, 2008) (Kurilich withdrawing objection after court ordered objector to file a declaration setting forth the basis for claim of class membership and any evidence supporting the same).

As outlined above, Class Counsel attempted to contact Kurilich and informed him via e-mail that, among other deficiencies with her objection, Streight was not a member of the Settlement Class. (Edelson Decl. ¶ 8.) Kurilich later responded via e-mail to say that he was having difficulty obtaining *pro hac vice* admission in this case and that therefore, he had referred Speight's objection to another attorney, whom he did not identify. (*Id.*) On July 29, 2015, attorney Brent F. Vullings appeared on her behalf. (Dkt. 134.)

Although Streight's objection could be overruled on the basis of Mr. Kurilich having ghost-written it alone, the substance of the objection (even if considered) does not detract from the Settlement in the least. As addressed above, Ms. Streight's arguments that Kolinek is not an adequate representative, that the proposed incentive and fee awards are excessive, that there is a supposedly "hidden" *cy pres* provision, and that the Notice Plan and claims process are somehow inadequate or burdensome all either misunderstand the facts of this case, the terms of the Settlement or controlling case law.

The only other argument that Streight makes is that Kolinek purportedly lacks Article III standing to pursue this case at all because he has not suffered an injury-in-fact. (*See* dkt. 119 at 1.) The only case law Streight cites to support that position (without any analysis) is the Supreme

Court's recent grant of *certiorari* in the *Robins v. Spokeo* matter. The issue in *Spokeo* is whether a plaintiff who has suffered a pure statutory violation, without more, has Article III standing to sue in federal court. But, courts in the Seventh Circuit have been clear that the answer to that question is a resounding "yes." *See, e.g., Matmanivong v. Nat'l Creditors Connection, Inc.*, No. 13 C 5347, 2015 WL 536635, at *3 (N.D. Ill. Feb. 9, 2015) (rejecting an Article III challenge to a statutory damages lawsuit under the FDCPA and distinguishing between statutes that allow "a plaintiff [to] obtain statutory damages without suffering actual damage" from those that do not); *Gillespie v. Blitt & Gaines, P.C.*, No. 14 C 9176, 2015 WL 4498743, at *4 (N.D. Ill. July 23, 2015) (citing *Keele v. Wexler*, 149 F.3d 589, 593–94 (7th Cir. 1998); *Phillips v. Asset Acceptance, LLC,* 736 F.3d 1076, 1083 (7th Cir. 2013) ("Proof of injury is not required when the only damages sought are statutory."); *Schlueter v. Latek,* 683 F.3d 350, 356 (7th Cir. 2012) ("There are…plenty of statutes that provide bounty-like relief in the form of statutory damages to which a plaintiff is entitled without proof of injury."); *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014) ("Congress may not lower the threshold for standing below the minimum requirements imposed by the Constitution, but Congress *does* have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute.")). Regardless, this case is distinguishable from *Spokeo* inasmuch as Kolinek alleges that he suffered actual economic injury as a result of the alleged TCPA violations here—he was charged for the calls Walgreens' made to his cell phone—and thus, clearly alleges an injury-in-fact sufficient to establish Article III standing in its own right. (*See* dkt. 1 ¶¶ 6, 32); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Accordingly, as with her other objections, Streight's contention that Kolinek lacks standing to sue should be rejected.

       d.      <u>Objector Melinda Franz's objection was ghost-written by serial objector Chris T. Cain for her other professional objector counsel, attorney W. Allen McDonald.</u>

Similarly, Melinda Franz's objection was ghost-written by professional objector Chris T. Cain in conjunction with attorney and professional objector, W. Allen McDonald. (*See* Edelson Decl. ¶¶ 15-16.) McDonald and Cain are perhaps the best examples of the stereotypical professional objector. They separately and as co-counsel have:

- Raised numerous objections to class settlements, almost always voluntarily dismissing them on appeal. *See, e.g., In re DRAM Antitrust Litig.*, 02-md-01486 (N.D. Cal.); *In re Pre-Filled Propane Tank Mktg. & Sales Practices Litig.,* No. 09-md-02086 (W.D. Mo.);

- Attempted to "sell" objections for their own pecuniary gain. *See, e.g., In re Enfamil LIPIL Mktg. & Sales Pracs. Litig.*, No. 11-md-02222 (S.D. Fla. Feb. 9, 2011) ("The Court is also troubled that Pack's attorney, W. Allen McDonald, offered to withdraw her appeal in exchange for a payment of $150,000. This settlement offer suggests that Pack's objections are tied to her ability to garner a windfall for herself rather than ensuring an adequate settlement for the class. . . the Court agrees that there is evidence of bad faith on the part of Pack. Pack is represented by her brother's law firm . . . she did not sign a retainer agreement with the firm . . . she had never read any documents concerning this litigation….");

- Been denied admission to the courts as a result of unethical conduct. *See, e.g., In re Netflix Privacy Litig.,* 11-cv-00379, Dkt. 341 (N.D. Cal. Mar. 5, 2014) ("Having carefully reviewed this matter, the court has determined Plaintiffs' objections to Attorney Cain's pro hac vice admission are meritorious. Indeed, Plaintiffs have shown that Cain filed documents in this action and appeared at two depositions prior to filing this application, all in violation of Civil Local Rules 11-1 and 11-3. These instances coupled with the additional conduct described in Plaintiffs' opposition provide sufficient reason to question Attorney Cain's ability to observe the duties and responsibilities required by an attorney admitted in this district. *See* Civ. L.R. 11-4(a)");[28] and

---

[28]     The *Netflix* case is notable for two other reasons. First, it perhaps explains why Cain has yet to appear in this matter on behalf of Franz—i.e., he is seeking to avoid opening himself up to a repeat of the discovery and court-scrutiny he endured there. Indeed, in *Netflix*, class counsel (the same attorneys appointed Class Counsel in this case) were successful in securing the denial of Cain's *pro hac vice* admission and obtaining a host of discovery that revealed the improprieties of his conduct and his objections. Second, that discovery also revealed that (as was the case with McDonald's objector client in *In re Enfamil*), Cain's and McDonald's clients in *Netflix* had not been shown their objection before it was

- Frequently objected on behalf of relatives and indeed, appear to have objected on behalf of relatives of Ms. Franz and their co-counsel in other matters, attorney Michael R. Franz. *See, e.g., Bacon v. Subway Sandwiches & Salads LLC*, No. 14-cv-00192 (E.D. Tenn. May 13, 2014); *Hill v. State Street Corp.*, No. 09-cv-12146 (D. Mass. Dec. 18, 2009) (Cain representing objectors Nita W. Franz and Charles F. Franz); *Bezdek v. Vibram USA*, No. 12-cv-10513 (D. Mass.) (Cain asserting objection on behalf of his daughter).

Setting aside their colorful pasts, the only thing notable about the substance of Franz's objection not addressed above is the statement in Section V that purports to expressly "adopt[] and incorporate[] by reference...all other proper and timely objections submitted by other objectors in this matter." (Dkt. 118 at 18.)[29] As McDonald explained it, that language was included because they were "under the gun a little bit" in finalizing the objection and in any event, he "typically just put that in at the end so that [he could] focus on the one issue that [he] thought should be there[--the fee issue]." (Edelson Decl. ¶ 17.) He also apparently likes to have that language in all of his objections as a placeholder in the event someone else makes "a really good argument [he] frankly didn't think to focus on." (*Id.*) As those statements make clear, McDonald and Cain were not focused so much on the actual terms of the Settlement, as their own interests in artificially inflating the number of potentially appealable issues they could trade on later. That obviously is not consistent with them or Franz having principled concerns with the

---

filed and they were unaware of anything that had occurred in the court after the filing of the objection (including the court granting final approval, their appealing, the court ordering them to pay an appeal bond or dismiss their appeal, and the plaintiffs seeking to have them held in contempt for their failure to do so). *See In re Neflix*, 5:11-cv-00379-EJD, Dkts. 337, 338-2.

[29]     Notably, Franz's counsel also improperly filed the objection in excess of the Court's fifteen-page limit without first obtaining leave to do so, and without including the required table of contents. *See* L.R. 7.1.

Settlement, and in light of their pasts, makes all the more clear what their intentions really are here.[30]

Given that and the fact that each of Franz's other objections to the Settlement—supposedly inadequate monetary and prospective relief to the Class, and excessive attorneys' fee and incentive awards—have been thoroughly debunked above, her entire objection should be overruled.

e.  <u>Todd Spann's objection is no different from the dozens of baseless objections his attorneys have filed in other large class actions and is tainted by his attorneys' misconduct.</u>

Like the others here, attorneys for objector Todd Spann—Steve A. Miller, John C. Kress and Jonathan Fortman—make a living objecting to class settlements, representing not only Spann in the past, but each other, their relatives and other objectors like Thomas L. Cox, in dozens of objections throughout the country.[31] *See, e.g., In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176 (N.D. Ill.) (Miller and Kress representing Fortman as objector); *In re Pre-Filled Propane Tank Mktg. & Sales Practices Litig.*, No. 09-md-02086 (W.D. Mo.) (Miller and Fortman representing Kress and Thomas L. Cox as objectors); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827 (N.D. Cal.) (Miller, Fortman and Kress representing, among others, Kelly Kress as objector).[32] As with all professional objectors, however, Miller, Kress and

---

[30]     McDonald's withdrawal of that statement after the fact doesn't change anything, especially not given that he did so only after speaking with Class Counsel. (*See* dkt. 128.)

[31]     Objector Spann is himself familiar with the objection process, having filed at least three previous objections to class settlements. *See In re Checking Account Overdraft Litig.*, No. 09-md-02036 (S.D. Fla.) (Spann objecting with Fortman and Kress as counsel); *Esslinger v. HSBC Bank USA, Inc.*, 10-cv-03213 (E.D. Pa. July 2, 2010); *Cooper v. Aetna Health Inc., PA, Corp.*, No. 07-cv-03541 (D.N.J. July 30, 2007).

[32]     *See also Mobbs v. Farmers Ins. Co. Inc.*, No. 03-cv-00158 (W.D. Ok.); *Baggett v. Hewlett-Packard Co. et al.*, No. 07-cv-00667 (C.D. Cal.); *In re Am. Intern. Group, Inc. Sec. Litig.*, No. 04-cv-08141 (S.D.N.Y.); and *In re Initial Pub. Offering*, No. 21-MC-92 (S.D.N.Y.); *In re Groupon Mktg. and Sales Pracs. Litig.*, No. 11-md-2238 (S.D. Cal.); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827 (N.D. Cal.); *In re Lawnmower*, No. 08-md-01999 (E.D. Wis.), *Blessing v. Sirius XM Radio Inc.*, No. 09-cv-10035 (S.D.N.Y.); *Milliron v. T-Mobile USA, Inc.*, No. 08-cv-04149 (D.N.J.).

Fortman do not file objections or appeals with the intent of litigating the merits. Instead, as they have attempted in many cases in the past—including the *In re Netflix* matter prosecuted by Class Counsel here—they typically file bare-bones objections, lose in the district courts, appeal, and then offer to voluntarily dismiss the appeal in hopes of leveraging a payout. *See, e.g., Jeannine Miller v. Am. Honda Motor Co.*, No. 10-3157, Dkts. 39, 42 (7th Cir. 2011) (voluntarily dismissing appeal from final approval); *Thompson v. Mattel, Inc.*, No. 10-55609, Dkts. 20, 21 (9th Cir. 2010) (voluntarily dismissing appeal from final approval); *Milliron v. T-Mobile USA, Inc.*, No. 09-3934, Dkts. 3110476669, 3110476915 (3d. Cir. 2011) (stipulating to dismissal of appeal); *see also Blessing v. Sirius XM Radio, Inc.*, 11-cv-3696, 2012 WL 6684572 (2d Cir. Dec. 20, 2012) (denying appeal bond, but finding it "highly unlikely objectors would succeed on appeal"); *Hale v. Wal-Mart Stores*, No. 01-cv-218710 (Mo. Cir. Ct. June 17, 2009) (sanctioning Kress for improperly objecting to class action settlement and attempting to intervene). By way of example, Kress, Fortman, and Miller objected and filed a notice of appeal to two settlements resolved through the *In re: Pre-Filled Propane Tank Mktg. & Sales Pracs. Litig.*, No. 09-md-02086 (W.D. Mo.) litigation, which ultimately netted them $17,500 through a settlement with plaintiff's counsel. (*See Plaintiff's Reply in Support of Final Approval*, Dkt. 273 at 13.) According to the plaintiffs in that case, objector's counsel "used the threat of a lengthy delay—and the attendant harm to the class that would entail—to extract $17,500 from class counsel and American in exchange for a [sic] dismissing the appeal." (*Id.*; *see also* dkts. 188, 225, 238-1 ¶ 7.)

Such conduct has repeatedly been deemed by courts to be improper. *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1361 n. 30 (S.D. Fla. 2011) (describing Kress, Fortman, and other objectors to the settlement as being "motivated by things other than a concern for the welfare of the Settlement Class . . . whose sole purpose is to obtain a fee by objecting to

whatever aspects of the Settlement they can latch onto."); *see also In re: Law Office of Jonathan Fortman, LLC*, No. 13-mc-00042, Dkt. 8 (E.D. Mo. Feb. 1, 2013) (allowing counsel to subpoena Kress was proper because the attorney was shown to be a professional objector).

Not surprisingly then, the objection they have filed here does not add anything to the discussion, and certainly was not raised in hopes of increasing any benefit to the Settlement Class. The Court need look no further than the first section of the objection—arguing that the Prerecorded Prescription Calls were beneficial and therefore, no settlement is necessary (*see* dkt. 117 at 1-7)—to see that it is not based on any principled concern for the Settlement Class. Indeed, if the argument were sustained, there'd be no Settlement here at all.

> f.   The Cozby, Bullard, Hughes, and Oldham objection was filed by professional objector Chris Braun of Plews, Shadley, Racher & Braun LLP, who has himself ghost-written in this Court in the past.

Finally, counsel for objectors Cozby, Bullard, Hughes, and Oldham has a similar track record of raising objections to class settlements. *See, e.g., In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, No. 05-md-1720 (E.D.N.Y.); *In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409 (2009). Though lead counsel for these objectors, Mr. Braun, appears to have objected to fewer settlements than his counterparts here, his firm hasn't missed a beat in its approach. When speaking with Mr. Braun, he made clear (as explained above) that he misunderstood the factual and legal underpinnings of the case, and even whether his own clients were actually members of the Settlement Class (not to mention what, if anything, his office did to confirm that prior to filing). Beyond that, it appears that Mr. Braun simply recycled here nearly identical (and unsuccessful) objections that he and his firm have raised to other settlements in the past. *See, e.g., Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011)

(en banc) (overruling objections and finding class action settlement was fair), *cert. denied*,
*Murray v. Sullivan*, 132 S. Ct. 1876 (2012).

Notably, Mr. Braun's firm also appears to have improperly ghost-written an objection
filed with this Court in the *In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176 (N.D. Ill.).
There, Gleith Cozby (one of the objectors Braun represents in this case), along with another
client of Braun's, Dennis Gibson, objected to the proposed class settlement on essentially the
same grounds as here—attacking the propriety of class certification and class counsel's requested
attorneys' fees. *See In re Southwest*, Dkt. 129. In addition to raising some of the same arguments
on behalf of one of the same objectors, the *Southwest* objection was also formatted in the same
unique way (e.g., the page numbers in small font in the lower right hand corners). *Compare id.
with* dkt. 113. If that wasn't all too coincidental, Braun and his colleagues at Plews Shadley have
also represented Cozby's prior co-objector, Dennis Gibson, in at least one other objection as
well. *See In re Currency Conversion Fee Antitrust Litig.*, No. 01-md-01409, Dkt. 595 (Mar. 11,
2008 S.D.N.Y.).

As with their counterparts here, the Cozby, Bullard, Hughes, and Oldham objections can
be overruled as well—they misunderstand the facts underlying certification of the Settlement
Class and misapply (or completely ignore) controlling Seventh Circuit case law with respect to
determining an appropriate fee award. Having raised no other meritorious objections (and
suffering from the defects described above) they simply have no leg to stand on.

## VI.    CONCLUSION

For the reasons addressed above, Plaintiff Kolinek respectfully requests that the Court
finally approve the Settlement as fair and reasonable.

Respectfully submitted,

**ROBERT KOLINEK**, individually and on behalf of the Settlement Class,

Dated: July 29, 2015                    By: /s/ Rafey S. Balabanian
                                                  One of Plaintiff's Attorneys

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Ryan D. Andrews
randrews@edelson.com
Benjamin H. Richman
brichman@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| ROBERT KOLINEK, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | Case. No. 13-cv-04806 |
| *v.* | Hon. Matthew F. Kennelly |
| WALGREEN CO., an Illinois corporation, | |
| *Defendant*. | |

**DECLARATION OF JAY EDELSON IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Pursuant to 28 U.S.C. § 1746, I hereby declare and state as follows:

1.      I am an adult over the age of 18 and a citizen of the State of Illinois. I am the

Managing Partner of the law firm Edelson PC, and licensed to practice law in the State of

Illinois. I have been retained to represent Plaintiff Robert Kolinek ("Plaintiff") in this matter and,

along with attorneys Rafey S. Balabanian, Ryan D. Andrews and Benjamin H. Richman of

Edelson PC, have been appointed Class Counsel in this matter. I am fully competent to make this

Declaration, have personal knowledge of all matters set forth herein unless otherwise indicated,

and could and would testify to such matters if called as a witness in this action. I make this

Declaration in support of Plaintiff's Motion for Final Approval of Class Action Settlement.

***Relief Provided by the Proposed Settlement***

2.      While the exact *pro rata* recovery available to claiming Settlement Class

Members has not yet been finally determined, based on the number of claims submitted to date,

Class Counsel estimates that each claimant will recover nearly $30.

1

3.      Additionally, the prospective relief provided by the Settlement Agreement includes new (and costly) procedures to ensure that only those persons who provide prior express consent receive the Calls in the future. I have been advised by Walgreens that it has already undertaken massive efforts to implement and test these new measures, costing millions of dollars.

### The Facial and Substantive Deficiencies of Certain Objections

4.      Based on my Firm's investigation into the cellular phone numbers identified by objectors Sharon Hughes and Christinna Oldham (dkt. 113), Lyndy Streight (dkt. 119), and Gary Sibley (dkt. 120), these individuals are not members of the Settlement Class.  As such, these individuals would not have standing to object to the Settlement.

5.      In an effort to better understand the bases for each of their affirmative statements that they are members of the Settlement Class, I attempted to communicate with each of these individuals or their counsel. To the extent they responded, none of the objectors or their counsel offered any additional basis to suggest that they are, in fact, members of the Settlement Class.

6.      With respect to Ms. Hughes and Ms. Oldham, I, along with my Partner, Rafey Balabanian, spoke with attorney Christopher J. Braun of Plews Shadley Racher & Braun LLP by telephone on July 20, 2015, and exchanged additional e-mail correspondence over the days that followed. On the phone call, Mr. Braun was unaware that Ms. Hughes and Ms. Oldham were not members of the Settlement Class nor could he describe the due diligence that was performed to confirm their supposed class membership prior to filing. Instead, he repeatedly stated that the due diligence was "on [his] associate." Neither Mr. Braun, Ms. Hughes nor Ms. Oldham have since offered any basis to suggest that they are part of the Settlement Class.

7.      As to objector Lyndy Streight, I initially spoke directly with Ms. Streight on July 22, 2015. During that conversation, Ms. Streight confirmed that although her objection had been filed "*pro se*," it was actually prepared by (and she is, in fact, represented by) attorney Matt Kurilich. Ms. Streight did not know of a telephone number at which Mr. Kurilich could be reached and therefore, provided me only his e-mail address.

8.      Thereafter, I attempted to contact Mr. Kurilich via e-mail that same day and informed him that, among other defects in the objection, Ms. Streight was not a member of the Settlement Class. Three days later, on July 25, 2015, Mr. Kurilich responded to my e-mail by saying that he was having difficulty obtaining *pro hac vice* admission in this case and therefore, he had referred Streight's objection to another attorney whom he did not identify. Despite repeated requests, Mr. Kurilich never addressed Ms. Streight's contentions regarding her membership in the Settlement Class.

9.      I also called objector Gary Sibley, who is himself an attorney, on July 23, 2015. Mr. Sibley did not answer, and I received only his voicemail. I explained in the voicemail that he was not part of the Settlement Class, but Mr. Sibley never returned that phone call and has not otherwise communicated with Class Counsel.

10.     Several objections failed to provide information required by the Court's Preliminary Approval Order and the Settlement Agreement. Objectors Mehl (dkt. 99) and Dipuccio (dkt. 122) both failed to provide their phone numbers in their written objections, while Habermann (dkt. 102) and Thomas (dkt. 109) failed to provide either their address or their phone number. Objector Spann (dkt. 117) also failed to identify his relevant cellular phone number in his filings, but his attorneys later provided it to Class Counsel via e-mail.

11.     Turning to several of the substantive arguments raised by certain objectors, the Cozby objection also challenges Plaintiff's request for a reasonable award of attorneys' fees. When I spoke with Mr. Braun about that issue, he made clear that he had not read Judge Holderman's *In re Capital One* opinion and seemed not to be familiar with the controlling market-rate analysis for fees in common fund cases in the Seventh Circuit. When Braun finally reviewed the *In re Capital One* opinion, he still failed to understand it and argued that the fees there amounted to just "20.77%, not 36%" of the settlement.

12.     I likewise spoke with W. Allen McDonald—counsel for objector Franz—on July 22, 2015 about Ms. Franz's objection to the requested attorneys' fee award. Mr. McDonald's response was that he didn't "buy the thirty percent" analysis, especially if there was not a "lodestar [cross-]check" performed. He did not, however, identify a case that supported that position and specifically said that he was not aware whether there was anything on point in the Seventh Circuit. When I made clear that there are, in fact, numerous opinions from the Seventh Circuit that directly address the market-rate analysis for fees in common fund cases, and that Judge Holderman (ret.) recently performed an extensive analysis of the market rate for TCPA cases in his *In re Capital One* opinion, Mr. McDonald said that he was not aware of the *In re Capital One* opinion either.

***Additional Information Regarding the Objections Prepared by So-Called "Professional" Objectors***

13.     It also bears noting that despite representing to the Court that she was proceeding *pro se* here, objector Nash's objection (dkt. 116) was actually ghost-written by attorney Thomas L. Cox. Recognizing that he has represented Nash in numerous past objections, I called Mr. Cox on July 22, 2015 to see whether he was involved. When I spoke with him later that day, Mr. Cox confirmed that he had prepared Nash's objection and also that he understood he was required to

file an appearance on her behalf in this case as a result—referencing previous appearances he has made in this District.

14.     Nevertheless, Mr. Cox claimed that he had not determined whether he would "do anything with" the objection. He said further that "sometimes [he] file[s] objections for people but never do[es] anything after that." As he put it, "I'm just telling you that sometimes I file an objection or write one for someone, but we never do anything about it."

15.     Similarly, when I spoke to Mr. McDonald on July 22nd regarding Ms. Franz's objection, he confirmed that the objection was ghost-written by "professional" objector Chris T. Cain.

16.     Later on the call, Mr. McDonald changed his position to be that Mr. Cain was at a different firm and was not involved with Ms. Franz's objection at all. When I pointed out that he had taken the opposite position earlier in the conversation, he once again confirmed that he had sought Mr. Cain's input and that Mr. Cain had helped draft the objection. He refused to comment any further on Mr. Cain's involvement.

17.     Also notable from my conversation with Mr. McDonald was our discussion about the language in Section V of Ms. Franz's objection purportedly "adopting and incorporating] by reference...all other proper and timely objections submitted by other objectors in this matter." Specifically, Mr. McDonald said that the language was included because "[we] were under the gun a little bit" in finalizing the objection and in any event, "typically just put that in at the end so that [they could] focus on the one issue that [they] thought should be there[—the fee issue]." Mr. McDonald also said that he liked to have that language in all of his objections as a placeholder in the event someone else makes "a really good argument [he] frankly didn't think to focus on."

***Attachments***

18.     Attached hereto as Exhibit 1-A is a true and accurate copy of the letter Class Counsel received from Isela Gonzales dated July 8, 2015.

19.     Attached hereto as Exhibit 1-B is a true and accurate copy of the letter Class Counsel received from Lisa Ray dated July 10, 2015.

20.     Attached hereto as Exhibit 1-C is a true and accurate copy of the letter Class Counsel received from Ashley McClure.

21.     Attached hereto as Exhibit 1-D is a true and accurate copy of the letter Class Counsel received from Kenneth M. Hoffman M.D. dated July 9, 2015.

**\*               \*               \***

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 29th day of July 2015 at Chicago, Illinois.


/s/ Jay Edelson

# Exhibit 1-A

July 8, 2015

Judge Matthew F. Kennelly
Everett McKinley Dirksen United States Courthouse
219 South Dearborn Street
Chicago, IL 60604

Settlement: *Kolinek v. Walgreen Co.*, Case No. 13-cv-04806

Dear Judge Matthey F. Kennelly,

I would like to object to this settlement *Kolinek v. Walgreen Co.*, Case No. 13-cv-04806 as I believe Walgreens Co. did no harm to the Class Members. I was a Class Member that received a call and do not find this of any damage to myself. It is a great reminder to keep up to date on prescription refills or to remind the Class Members to pick up a prescription when ready. I have never received a nuisance of calls nor other Class Members whom I have asked who are not regular customers of Walgreens Co. All honesty, I would rather receive a call like this than from other unsolicited callers about scams on winning a vacation or other such aggravating callers. If Walgreens Co. did violate the Telephone Consumer Protection Act then I am willing to accept and apology and have Walgreens Co. correct the issue.

In closing with my objection to this settlement I can say that with the new era of marketing and the use of technology such as customer relationship management systems companies are reaching new and existing customers via smartphones, tablets, watches and glasses and as a Class Member do not consider this harmful in any anyway, shape or form. Thank you!

Sincerely,

Isela Gonzales
322 E. Calle Guadalupe
Nogales, AZ 85621
520-270-1363

# Exhibit 1-B

1

**Lisa Ray**
2167 Hunters Run NE
Ada, MI 49301

mobile 616 308-9472
home 616 682-9136

July 10, 2015

The Honorable Matthew F. Kennelly
Chambers 2188
United States District Court
Northern District of Illinois
Everett McKinley Dirksen United States Courthouse
219 South Dearborn Street
Chicago, IL 60604

        Re:     Kolinek v. Walgreen Co., No. 13-cv-04806
                Objection to Proposed Settlement

Your Honor,

My daughter, Ellen Ray, received two separate postcards mailed to her at our mutual address above. Both relate to this action; a copy of the exterior portion of one of them is attached to this letter. Although both were addressed to her, one of the cards contains my personal cell phone number (616 308 9472), indicating that the parties believe that I might have received one of the telephone calls which are the subject of this action. Although I do not specifically remember receiving such a call, I could very well have; I have frequently used Walgreens pharmacies and picked up prescriptions there for myself and other family members. Receiving a routine call like those described in this action would not have made an impression on me, and would not have been a memorable event. However, reading the postcards addressed to my daughter -- which notably contained confidential information clearly visible to anyone handling them -- certainly did.

Because I might well have received one of the calls, I consider myself to be a class member. I strongly object to the settlement.

I cannot understand how any of the class members could have been harmed by receiving one of these calls. However, the mere filing of this action, and the manner in which the notice has been handled, have the potential to cause tremendous harm to the class members. The notices mailed were not sent by sealed envelope, and contained private health and other private information (the fact of the recipient having filled prescriptions at Walgreens as well as telephone numbers). Anyone who has handled the postcards could read this content. The manner in which this has been addressed by class counsel clearly violates the

2

privacy of the class, which unquestionably includes persons who have had or even currently have health issues of varying severity, requiring them to use prescription medications. The class is by definition a vulnerable group. Now, in addition to having their privacy violated, class members must be on heightened alert for potential victimization, such as identify theft and health insurance fraud. Private health information is very likely readily sold on the black market. Thanks to this action, class members now have so much more to worry about, and are at risk of being harmed in ways which do not approach any inconvenience (miniscule, at best) of having to answer an automated call from Walgreens. Under the circumstances, I cannot comprehend how the named plaintiff thought this action was a good idea, or why plaintiff's counsel thought splattering private information throughout the U.S. mail was an acceptable method of giving notice. The phrase "more harm than good" was designed for this situation.

If you are inclined, notwithstanding any objections, to approve the proposed settlement, I recommend that you require the named plaintiff, and plaintiff's counsel, to utilize their respective award and fees to fund five years of identity theft protection for all of the class members.

Sincerely yours,

Lisa Ray

cc:     Benjamin H. Richman

        Bradley J. Andreozzi

        Clerk of Court

Attachment (Legal Notice - exterior portion)

<u>LEGAL NOTICE</u>

*Kolinek v. Walgreen Co.*, Case No. 13-cv-04806

## If you received a prerecorded call from Walgreens on your cell phone reminding you to refill your prescription, a class action settlement may affect your rights.

A Federal Court authorized this notice.
You are <u>not</u> being sued.
This is <u>not</u> a solicitation from a lawyer.

*See reverse for details.*

*For complete information, visit*
*www.PrescriptionCallSettlement.com*
*or call 1-877-392-3209.*

**WTT**

***Kolinek v. Walgreen Co.***
**Settlement Administrator**
P.O. Box 43358
Providence, RI 02940-3358

PRESORTED
FIRST-CLASS
U.S. POSTAGE
**PAID**
YORK, PA
PERMIT NO. 12039



Postal Service: Please do not mark barcode

Claim #: WTT-107439061201 - 3606535

*******AUTO**SCH 5-DIGIT 49331
01256665 r628333 T1996  3251  000039
Ellen Ray
2167 Hunters Run NE
Ada, MI 49301-9566

*Kolinek v. Walgreen Co.*, No. 13-cv-04806
<u>CLAIM FORM</u>
*Instructions. Fill out each section of this form and sign where indicated.*

First Name: _____  Last Name: _____

Street Address: _____

City: _____  State: _____  ZIP Code: ___ ___ ___ ___ ___

Cellular Telephone Number at which you received Prerecorded Prescription Call(s):  616-308-9472

**Class Member Affirmation:** By submitting this Claim Form and checking the box below, I declare that I am a member of the Settlement Class and that the following statement is true (box must be checked to receive payment):

☐ I received one or more prerecorded telephone calls from Walgreens at the cellular telephone number written above reminding me that my prescription was due for refill ("Prerecorded Prescription Calls") and I did not consent to receive these calls. *I recognize by affirming here that such calls were made without my consent, that I will be removed from the list of persons eligible to receive Prerecorded Prescription Calls from Walgreens and that I will not receive such calls in the future unless I separately provide my consent, which I may (but need not) do below.*

I state under penalty of perjury under the laws of the State in which this Affirmation is executed and the United States of America that the information provided above is true and correct.

Signature: _____  Date: _____
                                                                 (MM-DD-YY)

Printed Name: _____

**<u>Voluntary Request to Receive Future Prerecorded Prescription Calls</u>:**

☐ I now wish to receive Prerecorded Prescription Calls from Walgreens, and I consent to receive such calls. *I understand that providing this consent is not required for me to submit a claim in the settlement, nor is it required for me to purchase any goods or services from Walgreens.*

**Questions, visit www.PrescriptionCallSettlement.com or call 1-877-392-3209**

**107439061201**
**WTTCRD1**

# Exhibit 1-C

*Kolinek v. Walgreen Co.*, No. 13-cv-04806

**CLAIM FORM**

*Instructions. Fill out each section of this form and sign where indicated.*

First Name: _____ Last Name: _____

Street Address: _____

City: _____ State: _____ ZIP Code: ___ ___ ___ ___ ___

Cellular Telephone Number at which you received Prerecorded Prescription Call(s): 318-447-7110

**Class Member Affirmation**: By submitting this Claim Form and checking the box below, I declare that I am a member of the Settlement Class and that the following statement is true (box must be checked to receive payment):

☐ I received one or more prerecorded telephone calls from Walgreens at the cellular telephone number written above reminding me that my prescription was due for refill ("Prerecorded Prescription Calls") and I did not consent to receive these calls. *I recognize by affirming here that such calls were made without my consent, that I will be removed from the list of persons eligible to receive* Prerecorded Prescription Calls *from Walgreens and that I will not receive such calls in the future unless I separately provide my consent, which I may (but need not) do below.*

I state under penalty of perjury under the laws of the State in which this Affirmation is executed and the United States of America that the information provided above is true and correct.

Signature: _____ Date: ___-___-___ (MM-DD-YY)

Printed Name: _____

**Voluntary Request to Receive Future Prerecorded Prescription Calls**:

☐ I now wish to receive Prerecorded Prescription Calls from Walgreens, and I consent to receive such calls. *I understand that providing this consent is not required for me to submit a claim in the settlement, nor is it required for me to purchase any goods or services from Walgreens.*

**Questions, visit www.PrescriptionCallSettlement.com or call 1-877-392-3209**

105810320001
WTTCRD1

---

*Kolinek v. Walgreen Co.*, No. 13-cv-04806

**CLAIM FORM**

*Instructions. Fill out each section of this form and sign where indicated.*

First Name: _____ Last Name: _____

Street Address: _____

City: _____ State: _____ ZIP Code: ___ ___ ___ ___ ___

Cellular Telephone Number at which you received Prerecorded Prescription Call(s): 318-447-7110

**Class Member Affirmation**: By submitting this Claim Form and checking the box below, I declare that I am a member of the Settlement Class and that the following statement is true (box must be checked to receive payment):

☐ I received one or more prerecorded telephone calls from Walgreens at the cellular telephone number written above reminding me that my prescription was due for refill ("Prerecorded Prescription Calls") and I did not consent to receive these calls. *I recognize by affirming here that such calls were made without my consent, that I will be removed from the list of persons eligible to receive* Prerecorded Prescription Calls *from Walgreens and that I will not receive such calls in the future unless I separately provide my consent, which I may (but need not) do below.*

I state under penalty of perjury under the laws of the State in which this Affirmation is executed and the United States of America that the information provided above is true and correct.

Signature: _____ Date: ___-___-___ (MM-DD-YY)

Printed Name: _____

**Voluntary Request to Receive Future Prerecorded Prescription Calls**:

☐ I now wish to receive Prerecorded Prescription Calls from Walgreens, and I consent to receive such calls. *I understand that providing this consent is not required for me to submit a claim in the settlement, nor is it required for me to purchase any goods or services from Walgreens.*

**Questions, visit www.PrescriptionCallSettlement.com or call 1-877-392-3209**

105811593201
WTTCRD1

P.S. How does this make any sense after this law suit!!!!!
Dumb Case!!!!!

To whom it may concern:

If I didn't want Walgreens to give me a FRIENDLY REMINDER I wouldn't of provided them with MY CELL PHONE NUMBER!!! I am getting in touch with my lawyer concerning this kolinek v. walgreens co. settlement administrator for the simple fact of these claim forms being mailed to me!!! The way I see it is if you can cause a settlement with Walgreens for their FRIENDLY REMINDER then I will/can cause a settlement for the ignorant law suit flyers!!!! People are just out for FREE money especially those DENSE LAWYERS that are filing this obtuse claim!!! YOU WILL BE HEARING FROM MY LAWYER OVER THIS NOTICE!!!

Ashley McClure



Ashley McClure
225 Lexington Drive
Victor, TX 77592

Everett McKinley Dirksen U.S. Court House
concerning the Kolinex v. walgreens Co.
settlement Administrator
Case # 13-CV-04806
219 South Dearborn Street
Chicago, IL 60604

Court Room #2103

# Exhibit 1-D

Kenneth Michael Hoffman M.D.
262 Cypress Creek Road
Severna Park, Md 21146
July 9, 2015


Clerk of the Court
219 South Dearborn Street
Chicago, IL 60604

cc. Benjamin H. Richman
     EDELSON PC
     350 North LaSalle Street
     Suite 1300
     Chicago, IL 60654

     Bradley J Andreozzi
     DRINKER BIDDLE & REATHE LLP
     191 North Wacker Drive
     Suite 3700
     Chicago, IL 60606

Dear Sirs,

I am a Class member in Kolinek v Walgreen Co., case No. 13-cv-04806 whose cell phone is
410-507-2869 and wish to object to this lawsuit. There was no harm done to me by being
informed of a prescription refill need (perhaps some good actually had I forgotten to renew my
prescriptions). Certainly there was no monetary harm. The actual harm is caused by any
settlement of such lawsuit largely to the benefit of the plaintiff's lawyers who will receive a
substantial payout for their services. This will cause me financial harm in the long run when
Walgreens is forced to increase prices to pay for this expense. While I understand the principle
of objecting to the phone calls under the Telephone Consumer Protection Act, I  believe this
legal action was initiated only for the benefit of legal counsel when other simpler  and less costly
actions could have been sought involving the Walgreens and its consumers. Simply stated my
receiving $15 for the harm of being called, while the plaintiffs attorneys are to receive
$3,850,000 seems unfair and self serving by lawyers. I believe I am entitled to consider a class
action suit against Kolinec etc. for actual harm caused to me by this frivolous lawsuit.

Sincerely,

Kenneth M Hoffman M.D.

# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| ROBERT KOLINEK, individually and on behalf of all others similarly situated,<br><br>                  Plaintiffs,<br><br>    v.<br><br>WALGREENS CO., an Illinois corporation,<br><br>                  Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) )   Case No. 13-cv-04806<br><br>**DECLARATION OF LACEY RACINES RE: NOTICE PROCEDURES** |

I, **Lacey Racines**, declare:

1.     I am a Consultant at Kurtzman Carson Consultants LLC ("KCC"). I am over 21 years of age and am not a party to this action. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2.     KCC was retained to, among other tasks, mail the Postcard Notice with attached Claim Form (the "Postcard Notice"); email the Notice of Class Action Settlement (the "Email Notice"); make the Long Form Notice and Claim Form available on the settlement website and the automated phone system; perform other duties as specified in the Stipulation of Settlement (the "Stipulation") preliminarily approved by this Court on April 3, 2015.

3.     **Experience.** KCC is a class action administrator that specializes in providing comprehensive class action services including, but not limited to, pre-settlement consulting, class member data management, email and mailing campaign implementation, legal notification, call center support, website design, claims administration, check and voucher disbursements, tax reporting, settlement fund escrow and reporting, and other related services critical to the effective administration of class actions. KCC has developed efficient, secure and cost-effective methods to properly handle the voluminous data and mailings associated with the noticing,

claims processing and disbursement requirements of settlements to ensure the orderly and fair treatment of class members and all parties of interest.

4.      KCC's business is national in scope. Since 2000, KCC (along with Rosenthal & Company, which was acquired by KCC in 2010) has been retained to administer more than 1,500 class actions. As part of these class actions, KCC has provided noticing solutions in cases with class members that range in numbers from 22 to over 22 million, and has distributed settlement payments totaling well over two billion dollars in the aggregate.

5.      **CAFA Notification**. In compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. Section 1715, KCC compiled a CD-ROM containing the following documents: Class Action Complaint and Jury Demand, Defendant Walgreen Co.'s Answer and Affirmative Defenses to Plaintiff's Complaint, Unopposed Motion for Leave to File Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement with Excess Pages, *Instanter*, Claim Form, Estimate Percentage of Settlement Class Members by State, Notification of Docket Entry (re Unopposed Motion for Leave to File Excess Pages), Preliminary Approval Order, and a cover letter with Attachment A (collectively, the "CAFA Notice Packet"). A copy of the cover letter with attachment is attached hereto as Exhibit A.

6.      On April 3, 2015, I caused fifty-nine (59) CAFA Notice Packets to be mailed via Certified Mail, Return Receipt Requested from the U.S. Post Office in Novato, California to the parties listed on Exhibit B, *i.e.*, the U.S. Attorney General, the Attorneys General of each of the 50 States and the District of Columbia, the 5 recognized U.S. Territories, and parties of interest to this Action.

7.      As of the date of this Affidavit, KCC has received no response to the CAFA Notice Packet from any of the recipients identified in paragraph 4 above.

8. **Emailed and Mailed Notice**. The Defendant provided KCC with lists totaling 18,460,558 phone numbers. KCC caused the phone numbers to be researched to identify the type of line, i.e. landline or cellular/wireless line. Of these 18,460,558 phone number, 9,656,595 were identified as cellular/wireless phone numbers.

9. KCC returned these 9,656,595 cellular/wireless phone numbers to Defendant to obtain name and address information. The Defendant returned to KCC lists totaling 10,290,347 names and addresses relating to these 9,656,595 phone numbers. KCC identified and removed 82,764 duplicative records on the list, resulting in 10,207,583 records remaining on the Class List.

10. Of these 10,207,583 records, 9,367,721 did not have a valid email address. KCC caused a reverse email lookup using the names and addresses from these records to find an email address when available. These reverse email lookups resulted in 4,918,900 valid email addresses.

11. Of the 10,207,583 records on the Class List, 7,818 were missing a complete address, 339,127 contained a duplicative email address as another record on the Class List. Additionally 2,635 Settlement Class Members had more than one email address returned in the search, resulting in 9,863,273 records remaining on the Class List (Total Class Members less missing complete address records and duplicative email records, plus Settlement Class Members with more than one email address). Of these 9,860,638 records, 4,918,900 had an e-mail address and 4,944,373 had only postal mailing addresses.

12. Prior to mailing, KCC caused the addresses in the Class List to be updated using the National Change of Address database ("NCOA") maintained by the U.S. Postal Service. A total of 907,277 addresses were found and updated.

13.     Starting on May 13, 2015, KCC caused the Email Notice to be sent to each of the 4,918,900 email addresses on the Class List.  As of May 18, 2015, KCC's email server registered 880,058 as undeliverable. A sample of the Email Notice is attached hereto as Exhibit C.

14.     On June 2, 2015, KCC mailed the Postcard Notice to the 880,058 Settlement Class Members whose email was returned as undeliverable and the 4,944,373 Settlement Class Members with only a postal address.  A sample of the Postcard Notice is attached hereto as Exhibit D.

15.     As of July 28, 2015, KCC has received a total of 133,356 Notice Packages returned by the U.S. Postal Service with forwarding addresses. KCC caused the Class List to be updated with the new addresses and Notice Packages to be re-mailed to the updated addresses.

16.     As of July 28, 2015, KCC has received a total of 676,199 Notice Packages returned by the U.S. Postal Service without forwarding address information.

17.     Combining the email and physical mail effort, the notice plan reached approximately 90% of Settlement Class Members.

18.     **Toll-Free Telephone Number**. On or before May 13, 2014, KCC established a toll-free telephone number dedicated to answering telephone inquiries from Settlement Class Members. As of July 28, 2015, KCC has received a total of 34,188 calls.

19.     **Website**. On or before May 13, 2015, KCC also established a website (www.PrescriptionCallSettlement.com) dedicated to this settlement to provide additional information to the Settlement Class Members and to answer frequently asked questions.  Visitors of the website can download a Notice, Claim Form, and the following Court Documents, 1) Settlement Agreement; 2) Preliminary Approval Order; 3) Class Action Complaint; 4) Defendant Walgreens Co.'s Answer and Affirmative Defenses to Plaintiff's Complaint; 5) Plaintiff's

Memorandum in Support of Preliminary Approval of Class Action Settlement; 6) Motion in Support of Attorneys' Fees; and 5) Memorandum in Support of Attorneys' Fees. Visitors can also submit claims online. The web address was set forth in the Postcard Notice. As of July 28, 2015, the website has received 79,212 visits.

20.    **Requests for Exclusion**. The deadline for Settlement Class Members to request to be excluded from the class was a postmarked deadline of July 17, 2015. As of the date of this declaration, KCC has processed 151 requests for exclusion. Of those 151 requests for exclusion, three were submitted with a postmark after the July 17, 2015 mailing. A list of the Settlement Class Members requesting to be excluded is attached hereto as Exhibit E.

21.    KCC is continuing to process recently submitted mail and claim forms. Because some individuals circumvent the official request for exclusion process and simply write their exclusion request on the claim form that was mailed to them, additional requests for exclusion may be identified. The volume is anticipated to be minimal.

22.    **Claim Forms**. The deadline for Settlement Class Members to file a claim was a postmarked deadline of July 22, 2015. KCC is continuing to process recently submitted claims and to date has validated 67.6% of those received. Based on the validation of claims to date, we estimate the approximate number of valid claims will be 173,318.


I declare under penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct to the best of my knowledge. Executed on this 29th day of July 2015 at Novato, California.


Lacey Racines

DECLARATION OF LACEY RACINES RE: NOTICE PROCEDURES

# Exhibit A



Bradley J. Andreozzi
Partner
312-569-1173 Direct
312-569-3173 Fax
bradley.andreozzi@dbr.com

April 3, 2015

**VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED**

Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

State Attorneys General
(*see* attached distribution list)

**Re:    Notice Pursuant to CAFA of Proposed Settlement**

Dear Ladies and Gentlemen:

Defendant Walgreen Co. ("Walgreens") hereby provides notice pursuant to the Class
Action Fairness Act of 2005 (28 U.S.C. § 1711 *et seq.*) that Walgreens and Plaintiff
Robert Kolinek ("Plaintiff) have reached and filed with the Court a proposed class action
settlement.

| | |
|---|---|
| **Case Name**: | *Kolinek v. Walgreen Co.* |
| **Case Number:** | 1:13-cv-04806 |
| **Jurisdiction:** | United States District Court, Northern District of Illinois |
| **Date Settlement Filed with Court:** | March 26, 2015 |

At issue in the case are Walgreens' prescription refill reminder telephone calls—calls (i)
to current patients of Walgreens pharmacies with an active prescription on file for certain
maintenance medications, (ii) made several days before a prescription would be
exhausted if used as directed, (iii) in order to remind patients that their prescription is
eligible to be refilled under the prescribing doctor's orders ("Prerecorded Prescription
Calls"). Plaintiff alleges that Prerecorded Prescription Calls made to cell phones violate
the Telephone Consumer Protection Act of 1991 (47 U.S.C. § 227). Walgreens denies
any wrongdoing or liability, and contends that these healthcare notification calls are
lawful and made with the patients' consent, but has decided to settle this action in order
to eliminate the burden, expense, and uncertainties of further litigation.

*Law Offices*

191 N. Wacker Drive
Suite 3700
Chicago, IL
60606-1698

(312) 569-1000
(312) 569-3000 fax
www.drinkerbiddle.com

CALIFORNIA
DELAWARE
ILLINOIS
NEW JERSEY
NEW YORK
PENNSYLVANIA
WASHINGTON D.C.
WISCONSIN

*Established* 1849



April 3, 2015
Page 2

The following documents more fully describing the matter and proposed settlement are contained on the enclosed CD:

1.   The Class Action Complaint in this matter (filed July 3, 2013).

2.   Walgreens' Answer and Affirmative Defenses (filed August 25, 2014).

3.   Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and Plaintiff's Memorandum of Law in Support thereof (filed as an attachment to Plaintiff's Unopposed Motion for Leave to File Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement With Excess Pages, *Instanter*), including: the Class Action Settlement Agreement (Exhibit 1) with the proposed Claim Form (Exhibit A), proposed Email Notice of Class Action Settlement (Exhibit B), proposed Postcard Notice of Class Action Settlement (Exhibit C); and proposed Settlement Website Notice of Class Action Settlement (Exhibit D); and the Declaration of Rafey S. Balabanian (Exhibit 2) with the Edelson PC Firm Resume (Exhibit A).  Final copies of the Notices and Claim Form will be available on the settlement website at www.prescriptioncallsettlement.com.

4.   A revised Claim Form (submitted to the Court on April 2, 2015).

5.   A chart estimating the number of class members residing in each state and estimating the proportionate share of the claims of such members to the entire settlement.[1]

6.   A minute entry from the Court following the hearing on the Motion for Preliminary Approval on April 2, 2015, scheduling the Final Approval Hearing for August 5, 2015 at 9:30 a.m. before the Honorable Matthew F. Kennelly, in Courtroom 2103 of the Everett McKinley Dirksen Building, United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604.

---

[1] Because Walgreens does not place Prerecorded Prescription Calls to telephone numbers identified in its records as assigned to cell phones, Walgreens engaged a third party to conduct a "scrub" of the telephone numbers that had received Prerecorded Prescription Calls to identify any such numbers that were in fact cell phone numbers (but not identified as such when provided by the patient to Walgreens as the point of contact).  That scrub identified roughly 9.2 million unique phone numbers associated with roughly 9.8 million patients, a difference attributable to some instances of having more than one patient's name associated with a telephone number (such as where a parent receives prescription refill reminders for herself and her minor children or adult children receive refill reminders for themselves and elderly parents for whom they are caregivers).

DrinkerBiddle&Reath
LLP

April 3, 2015
Page 3

> 7. A Preliminary Approval Order entered April 3, 2015 that, *inter alia*, preliminarily approves the settlement, conditionally approves the settlement class, and approves the form and content of the notice program.

There are no other agreements contemporaneously made between class counsel and counsel for the defendants, and, as of the sending of this letter, there are no other written judicial opinions related to the materials described under 28 U.S.C. §§ 1715(b)(3)-(6).

If you have any questions about this notice, the lawsuit, or the enclosed material, please contact the counsel listed below.

> **DRINKER BIDDLE & REATH LLP**
> Bradley J. Andreozzi
> Justin O. Kay
> 191 North Wacker Drive, Suite 3700
> Chicago, Illinois 60606-1698
> Tel: (312) 569-1000
> Fax: (312) 569-3000
> bradley.andreozzi@dbr.com
> justin.kay@dbr.com
>
> *Attorneys for Defendant*

Very truly yours,

Bradley J. Andreozzi

Enclosures

# Exhibit B

# Service List

| Last | First | Company | Address 1 | Address 2 | City | State | Zip |
|---|---|---|---|---|---|---|---|
| Geraghty | Michael | Office of the Alaska Attorney General | P.O. Box 110300 | | Juneau | AK | 99811-0300 |
| Strange | Luther | Office of the Alabama Attorney General | 501 Washington Avenue | | Montgomery | AL | 36130-0152 |
| McDaniel | Dustin | Arkansas Attorney General Office | 323 Center Street, Suite 200 | | Little Rock | AR | 72201-2610 |
| Horne | Tom | Office of the Arizona Attorney General | 1275 W. Washington Street | | Phoenix | AZ | 85007 |
| | CAFA Coordinator | Office of the Attorney General | Consumer Law Section | 455 Golden Gate Ave., Suite 11000 | San Francisco | CA | 94102 |
| Suthers | John | Office of the Colorado Attorney General | Ralph L. Carr Colorado Judicial Center | 1300 Broadway, 10th Floor | Denver | CO | 80203 |
| Jepsen | George | State of Connecticut Attorney General's Office | 55 Elm Street | | Hartford | CT | 6106 |
| Nathan | Irvin | District of Columbia Attorney General | 441 4th Street, NW, Suite 1100S | | Washington | DC | 20001 |
| Holder, Jr. | Eric H. | Attorney General of the United States | United States Department of Justice | 950 Pennsylvania Avenue, NW | Washington | DC | 20530-0001 |
| Biden III | Joseph R. | Delaware Attorney General | Carvel State Office Building | 820 N. French Street | Wilmington | DE | 19801 |
| Bondi | Pam | Office of the Florida Attorney General | The Capitol, PL-01 | | Tallahassee | FL | 32399-1050 |
| Olens | Sam | Office of the Georgia Attorney General | 40 Capitol Square, SW | | Atlanta | GA | 30334-1300 |
| Louie | David | Office of the Hawaii Attorney General | 425 Queen Street | | Honolulu | HI | 96813 |
| Miller | Tom | Iowa Attorney General | Hoover State Office Building | 1305 E. Walnut Street | Des Moines | IA | 50319 |
| Wasden | Lawrence | State of Idaho Attorney General's Office | Statehouse | 700 W Jefferson St | Boise | ID | 83720-0010 |
| Madigan | Lisa | Illinois Attorney General | James R. Thompson Center | 100 W. Randolph Street | Chicago | IL | 60601 |
| Zoeller | Greg | Indiana Governmental Center South | 302 West Washington Street, 5th Floor | | Indianapolis | IN | 46204 |
| Schmidt | Derek | Kansas Attorney General | 120 S.W. 10th Ave., 2nd Floor | | Topeka | KS | 66612-1597 |
| Conway | Jack | Office of the Kentucky Attorney General | 700 Capitol Ave | | Frankfort | KY | 40601 |
| Caldwell | James D. | Office of the Louisiana Attorney General | P.O. Box 94095 | | Baton Rouge | LA | 70804-4095 |
| Coakley | Martha | Office of the Attorney General of Massachusetts | 1 Ashburton Place | | Boston | MA | 02108-1518 |
| Gansler | Douglas F. | Office of the Maryland Attorney General | 200 St. Paul Place | | Baltimore | MD | 21202-2202 |
| Mills | Janet | Office of the Maine Attorney General | State House Station 6 | | Augusta | ME | 04333 |
| Schuette | Bill | Office of the Michigan Attorney General | P.O. Box 30212 | 525 W. Ottawa Street | Lansing | MI | 48909-0212 |
| Lori Swanson | Attorney General | Attention: CAFA Coordinator | 1400 Bremer Tower | 445 Minnesota Street | St. Paul | MN | 55101-2131 |
| Koster | Chris | Missouri Attorney General's Office | Supreme Court Building | 207 W. High Street | Jefferson City | MO | 65101 |
| Hood | Jim | Mississippi Attorney General's Office | Department of Justice | P.O. Box 220 | Jackson | MS | 39205 |
| Fox | Tim | Office of the Montana Attorney General | Justice Bldg. | 215 N. Sanders Street | Helena | MT | 59620-1401 |
| Cooper | Roy | Office of the North Carolina Attorney General | Department of Justice | P.O. Box 629 | Raleigh | NC | 27602-0629 |
| Stenehjem | Wayne | North Dakota Office of the Attorney General | State Capitol | 600 E. Boulevard Avenue | Bismarck | ND | 58505-0040 |
| Bruning | Jon | Office of the Nebraska Attorney General | State Capitol | P.O. Box 98920 | Lincoln | NE | 68509-8920 |
| Delaney | Michael | New Hampshire Attorney General | State House Annex | 33 Capitol Street | Concord | NH | 03301-6397 |
| Chiesa | Jeffrey S. | Office of the New Jersey Attorney General | Richard J. Hughes Justice Complex | 25 Market Street., P.O. Box 080 | Trenton | NJ | 08625 |
| King | Gary | Office of the New Mexico Attorney General | P.O. Drawer 1508 | | Santa Fe | NM | 87504-1508 |
| Masto | Catherine Cortez | Nevada Attorney General | Old Supreme Ct. Bldg. | 100 North Carson Street | Carson City | NV | 89701 |
| Schneiderman | Eric | Office of the New York Attorney General | The Capitol, 2nd Floor | | Albany | NY | 12224 |
| DeWine | Mike | Ohio Attorney General | State Office Tower | 30 E. Broad Street | Columbus | OH | 43266-0410 |
| Pruitt | Scott | Oklahoma Office of the Attorney General | 313 NE 21st Street | | Oklahoma City | OK | 73105 |
| Rosenblum | Ellen F. | Office of the Oregon Attorney General | Justice Building | 1162 Court Street, NE | Salem | OR | 97301 |
| Kane | Kathleen | Pennsylvania Office of the Attorney General | 1600 Strawberry Square | | Harrisburg | PA | 17120 |
| Kilmartin | Peter | Rhode Island Office of the Attorney General | 150 South Main Street | | Providence | RI | 02903 |
| Wilson | Alan | South Carolina Attorney General | Rembert C. Dennis Office Bldg. | P.O. Box 11549 | Columbia | SC | 29211-1549 |
| Jackley | Marty J. | South Dakota Office of the Attorney General | 1302 East Highway 14, Suite 1 | | Pierre | SD | 57501-8501 |
| Cooper, Jr. | Robert E. | Tennessee Attorney General and Reporter | 425 5th Avenue North | | Nashville | TN | 37243 |
| Abbott | Greg | Attorney General of Texas | Capitol Station | P.O. Box 12548 | Austin | TX | 78711-2548 |
| Swallow | John | Utah Office of the Attorney General | State Capitol, Room 236 | 305 N State St | Salt Lake City | UT | 84114-0810 |
| Cuccinelli | Ken | Office of the Virginia Attorney General | 900 East Main Street | | Richmond | VA | 23219 |
| Sorrell | William H. | Office of the Attorney General of Vermont | 109 State Street | | Montpelier | VT | 05609-1001 |
| Ferguson | Bob | Washington State Office of the Attorney General | 1125 Washington St SE | P.O. Box 40100 | Olympia | WA | 98504-0100 |
| Van Hollen | J.B. | Office of the Wisconsin Attorney General | Dept of Justice, State Capitol, RM 114 | East P.O. Box 7857 | Madison | WI | 53707-7857 |
| Morrisey | Patrick | West Virginia Attorney General | State Capitol | 1900 Kanawha Blvd E | Charleston | WV | 25305 |
| Phillips | Gregory | Office of the Wyoming Attorney General | State Capitol Bldg. | 200 W 24th St | Cheyenne | WY | 82002 |
| Lutu | Afoa Leiulmoega | American Samoa Attorney General | Exec. Ofc. Bldg, Utulei | Territory of American Samoa | Pago Pago | AS | 96799 |
| Rapadas | Leonardo M | Attorney General of Guam | ITC Bldg., Suite 706 | 590 S. Marine Corps Drive | Tamuning | Guam | 96913 |
| San Nicolas | Joey Patrick | Northern Mariana Islands Attorney General | Administration Building | PO Box 10007 | Saipan | MP | 96950-8907 |
| Miranda-Rodriguez | Cesar R. | Puerto Rico Attorney General | P.O. Box 902192 | San Juan | San Juan | PR | 00902-0192 |
| Frazer | Vincent | Department of Justice | Virgin Islands Attorney General | 34-38 Kronprindsens Gade, GERS Bldg, 2nd Floor | St. Thomas | VI | 00802 |
| O'Neill Kay | Justin | Drinker Biddle & Reath LLP | 191 N. Wacker Dr., Ste 3700 | | Chicago | IL | 60606-1698 |
| Andreozzi | Brad | Drinker Biddle & Reath LLP | 191 N. Wacker Dr., Ste 3700 | | Chicago | IL | 60606-1698 |

# Exhibit C

Claim Number: <mark>«ClaimID»</mark>

## NOTICE OF CLASS ACTION SETTLEMENT

*Kolinek v. Walgreen Co.*, Case No. 13-cv-04806

# IF YOU RECEIVED A PRERECORDED CALL FROM WALGREENS ON YOUR CELL PHONE REMINDING YOU TO REFILL YOUR PRESCRIPTION, A CLASS ACTION SETTLEMENT MAY AFFECT YOUR RIGHTS.

*For complete information, visit www.PrescriptionCallSettlement.com or call 1-877-392-3209.*

*A Federal Court authorized this notice. You are not being sued. This is not a solicitation from a lawyer.*

A settlement has been reached in a class action lawsuit against **Walgreen Co.** ("Walgreens"). The lawsuit alleges that Walgreens made prerecorded calls to the cellular telephones of certain pharmacy customers to remind them when their prescriptions were due for refill ("Prerecorded Prescription Calls"). The suit alleges that Walgreens made these calls without customer consent. Walgreens denies any wrongdoing and maintains that Prerecorded Prescription Calls are medical alerts that its customers want and are made with their consent. The settlement does not establish who is correct, but rather is a compromise to end the lawsuit. The lawsuit is called *Kolinek v. Walgreen Co.*, Case No. 13-cv-04806, and is in the U.S. District Court for the Northern District of Illinois.

- **Why am I Being Contacted?** Our records show you may be a "Settlement Class Member." Settlement Class Members are all individuals in the United States who received Prerecorded Prescription Calls from Walgreens on their cellular phones. You may be entitled to payment under the Settlement if you affirm that you did not consent to receive the Prerecorded Prescription Calls, but in that case you will not be eligible to receive these reminder calls on your cell phone in the future unless you provide consent for future calls (which you may do on the Claim Form).

- **What Can I Get Out of the Settlement?** If you're eligible and the Court approves the Settlement, you could receive a cash payment. Settlement Class Members will receive equal shares of an $11 million Settlement Fund that Walgreens has agreed to create, after the payment of expenses and fees. If the individual payments per Settlement Class Member would be less than $15, you will have a second chance to exclude yourself from the Settlement or Walgreens may pay you the difference up to $15. The Settlement Administrator will post additional information about the payment amount on www.PrescriptionCallSettlement.com if necessary.

- **How Do I Get My Payment?** Just complete and verify the short and simple Claim Form available at www.PrescriptionCallSettlement.com. You can also call 1-877-392-3209 to request a paper copy of the Claim Form. *All Claim Forms must be postmarked or submitted on the settlement website by July 22, 2015.*

- **What are My Options?** You can do nothing, submit a Claim Form, comment on or object to any of the Settlement terms, or exclude yourself from the Settlement. If you do nothing or submit a Claim Form, you won't be able to sue Walgreens in a future lawsuit about the claims addressed in the Settlement. If you exclude yourself, you won't get a payment but you'll keep your right to sue Walgreens on the issues the settlement concerns. You must contact the Settlement Administrator by mail to exclude yourself. You can also object to the settlement if you disagree with any of its terms. *All Requests for Exclusion and Objections must be received by July 17, 2015.*

- **Do I Have a Lawyer?** Yes. The Court has appointed lawyers from the law firm Edelson PC as "Class Counsel." They represent you and other Settlement Class Members. The lawyers will request to be paid from the Settlement Fund. You can hire your own lawyer, but you'll need to pay your own legal fees. The Court has also chosen Robert Kolinek—a Class Member like you—to represent the Class.

- **When Will the Court Approve the Settlement?** The Court will hold a final fairness hearing on August 5, 2015 at 9:30 a.m. at the Everett McKinley Dirksen United States Courthouse, 219 S. Dearborn St., Chicago, IL 60604, Courtroom 2103. The Court will hear objections, determine if the Settlement is fair, and consider Class Counsel's request for fees and expenses (of up to 35% of the Settlement Fund) and an incentive award to the Class Representative. Class Counsel's request for fees and expenses will be posted on the website no later than July 3, 2015.

***Visit www.PrescriptionCallSettlement.com for complete information.***

# Exhibit D

L<small>EGAL</small> N<small>OTICE</small>

*Kolinek v. Walgreen Co.*, Case No. 13-cv-04806

**If you received a prerecorded call from Walgreens on your cell phone reminding you to refill your prescription, a class action settlement may affect your rights.**

A Federal Court authorized this notice.

You are <u>not</u> being sued.

This is <u>not</u> a solicitation from a lawyer.

*See reverse for details.*

***For complete information, visit www.PrescriptionCallSettlement.com or call 1-877-392-3209.***

## WTT

*Kolinek v. Walgreen Co.*
**Settlement Administrator**
P.O. Box 43358
Providence, RI 02940-3358

| First-Class |
| Mail |
| US Postage |
| Paid |
| Permit # |

«Barcode»
Postal Service: Please do not mark barcode

Claim #: WTT -«ClaimID»  «MailRec»

«First1» «Last1»
«CO»
«Addr1» «Addr2»
«City», «ST»  «Zip»
«Country»

---

*Kolinek v. Walgreen Co.*, No. 13-cv-04806
**C<small>LAIM</small> F<small>ORM</small>**
*Instructions.* Fill out each section of this form and sign where indicated.

First Name: _____   Last Name: _____

Street Address: _____

City: _____   State: _____   ZIP Code: ____ ____ ____ ____ ____

Cellular Telephone Number at which you received Prerecorded Prescription Call(s): (____ ____ ____) ____ ____ ____ - ____ ____ ____ ____

**Class Member Affirmation**: By submitting this Claim Form and checking the box below, I declare that I am a member of the Settlement Class and that the following statement is true (box must be checked to receive payment):

☐ I received one or more prerecorded telephone calls from Walgreens at the cellular telephone number written above reminding me that my prescription was due for refill ("Prerecorded Prescription Calls") and I did not consent to receive these calls. *I recognize by affirming here that such calls were made without my consent, that I will be removed from the list of persons eligible to receive Prerecorded Prescription Calls from Walgreens and that I will not receive such calls in the future unless I separately provide my consent, which I may (but need not) do below.*

I state under penalty of perjury under the laws of the State in which this Affirmation is executed and the United States of America that the information provided above is true and correct.

Signature: _____   Date: _____ - _____ - _____
(MM-DD-YY)

Printed Name: _____

         *               *               *

**Voluntary Request to Receive Future Prerecorded Prescription Calls**:

☐ I now wish to receive Prerecorded Prescription Calls from Walgreens, and I consent to receive such calls. *I understand that providing this consent is not required for me to submit a claim in the settlement, nor is it required for me to purchase any goods or services from Walgreens.*

**Questions, visit www.PrescriptionCallSettlement.com or call 1-877-392-3209**

«ClaimID»  WTTCRD1

A settlement has been reached in a class action lawsuit against **Walgreen Co.** ("Walgreens"). The lawsuit alleges that Walgreens made prerecorded calls to the cellular telephones of certain pharmacy customers to remind them when their prescriptions were due for refill ("Prerecorded Prescription Calls"), without their consent. Walgreens denies any wrongdoing and maintains that Prerecorded Prescription Calls are medical alerts that its customers want and are made with their consent. The settlement does not establish who is correct, but rather is a compromise to end the lawsuit. The lawsuit is called *Kolinek v. Walgreen Co.*, Case No. 13-cv-04806, and is in the U.S. District Court for the Northern District of Illinois.

**Why am I being contacted?** Our records show you may be a "Settlement Class Member." Settlement Class Members are all individuals in the United States who received Prerecorded Prescription Calls from Walgreens called on their cellular phones. You may be entitled to payment under the settlement if you affirm that you did not consent to receive the Prerecorded Prescription Calls, but in that case you will not be eligible to receive these reminder calls on your cell phone in the future unless you provide consent for future calls (which you may do on the Claim Form).

**What can I get out of the settlement?** If you're eligible and the Court approves the settlement, you could receive a cash payment. Settlement Class Members will receive equal shares of an $11 million Settlement Fund that Walgreens has agreed to create, after the payment of expenses and fees. If the individual payments would be less than $15, you will have a second chance to exclude yourself from the settlement or Walgreens may pay you the difference up to $15.

**How do I get my payment?** Just complete and verify the short and simple Claim Form attached to this postcard. You can also get a paper copy of the Claim Form by calling 1-877-392-3209, or by visiting the website www.PrescriptionCallSettlement.com. You also have the option of filing a claim online. All Claim Forms must be postmarked or submitted on the settlement website by July 22, 2015.

**What are my options?** You can do nothing, submit a Claim Form, comment on or object to any of the settlement terms, or exclude yourself from the settlement. If you do nothing or submit a Claim Form, you won't be able to sue Walgreens in a future lawsuit about the claims addressed in the settlement. If you exclude yourself, you won't get a payment but you'll keep your right to sue Walgreens on the issues the settlement concerns. You must contact the Settlement Administrator by mail to exclude yourself. You can also object to the settlement if you disagree with any of its terms. *All Requests for Exclusion and Objections must be received by July 17, 2015.*

**Do I have a lawyer?** Yes. The Court has appointed lawyers from the law firm Edelson PC as "Class Counsel." They represent you and other Settlement Class Members. The lawyers will request to be paid from the Settlement Fund. You can hire your own lawyer, but you'll need to pay your own legal fees. The Court has also chosen Robert Kolinek—a Class Member like you—to represent the Class.

**When will the Court approve the settlement?** The Court will hold a final fairness hearing on August 5, 2015 at 9:30 a.m. at the Everett McKinley Dirksen United States Courthouse, 219 S. Dearborn St., Chicago, IL 60604, Courtroom 2103. The Court will hear objections, determine if the settlement is fair, and consider Class Counsel's request for fees and expenses (of up to 35% of the Settlement Fund) and an incentive award. These requests will be posted on the settlement website.

***Visit www.PrescriptionCallSettlement.com for complete information.***

WTT



NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES

## BUSINESS REPLY MAIL
FIRST–CLASS MAIL     PERMIT NO. 1810     PROVIDENCE, RI

POSTAGE WILL BE PAID BY ADDRESSEE

KOLINEK V. WALGREENS CO. SETTLEMENT ADMINISTRATOR
PO BOX 43358
PROVIDENCE RI 02940-9558



# Exhibit E

| Control No. | Last1 | First1 |
|---|---|---|
| 100022221401 | ACACIO | GERALD |
| 9000013601 | ADAMS | JOSEPH |
| 100131482701 | ALFALLAJ | MAHAMMED |
| 100207344001 | AMARO-DOUGLASS | NADIA |
| 100271536401 | ANINYEI | ISIOMA |
| 100279949601 | ANTOSH | JOHN |
| 100295288901 | ARBOGAST | KURTS |
| 100530860201 | BARNEY | NANCY |
| 100570547901 | BASS | SHEKENA |
| 100698431801 | BENSON | MINDY |
| 100713611001 | BERGSTROM | ARTHUR |
| 100731263001 | BERRY | PAT |
| 100784875201 | BISINAIS | TERESA |
| 100786143501 | BISWAS | SUDESHNA |
| 100811122701 | BLAKNEY | JAMES |
| 100839941001 | BLYTHE | DEBRA |
| 100926116301 | BOWDRY | BOOKER |
| 100984937901 | BRANSON | DEIDRA |
| 101025714301 | BRIGHT | SALLIE |
| 101047786201 | BROICH | WILLIAM |
| 101047770001 | BROICH | CONNIE |
| 101129182001 | BRUGIONI | KATHRYN |
| 101159461801 | BUCKLEY | JOHN |
| 101178652701 | BUNCH | AMY |
| 101202418601 | BURKETT | VANESSA |
| 101213940301 | BURNS | GLORIA |
| 101215495601 | BURNS | LOUIE |
| 101233827601 | BUSH | JACLYN |
| 101553798101 | CHARLES | ILTANA |
| 101722964501 | COLBY | JODI |
| 101734690401 | COLEMAN | JESSICA |
| 101756731201 | COLLINS | REBECCA |
| 101804652901 | CONWAY | MADA |
| 101842577001 | CORDAY | CHARLOTTE |
| 101905092901 | COX | JOHN |
| 101933015001 | CRAWLEY | JUSTIN |
| 101940050101 | CRESPO VARGAS | LUZ |
| 102058980201 | DANIEL | LISA |
| 102058646701 | DANIEL | JOYCE |
| 102180129001 | DEEP | LISA |
| 102261499001 | DEVAULT | CHERI |
| 102324387401 | DIPAOLO-RARICK | DOMENIC |
| 102338408101 | DJOMBY | YOLANDE |
| 102395165001 | DOUGLAS | HOLLY |
| 102444767601 | DUFOUR | WILLIAM |
| 102523210601 | ECKMAN | LISA |

| Control No. | Last1 | First1 |
|---|---|---|
| 102569831601 | ELKINS | ROBERT |
| 102614720601 | ENRIQUEZ | TOMMIE |
| 102799771501 | FIGUEROA CALDERON | SHAY VONNE |
| 103198852401 | GEORGE | RAYMOND |
| 103230661001 | GIELCHINSKY | DEVON |
| 103473337601 | GREENE | HARRIETT |
| 103496584001 | GRIFFIN | BETTY |
| 103533439601 | GRUNDON | LISA |
| 103701912601 | HANSEN | RENAE |
| 103799276801 | HARY | GREGORY |
| 103904787501 | HENDRIX | WILHELMINA |
| 103945210001 | HERNANDEZ | ISELA |
| 103996355701 | HIBBERT | BARBARA |
| 104079689001 | HOFF | MARIE |
| 104249775801 | HUNEIDI | MAHA |
| 104254787601 | HUNT | LESTER |
| 104288874501 | HYDER | REBECCA |
| 104355049901 | JACKSON | KATHLEENE |
| 104434401501 | JENKINS | MAE |
| 104450144901 | JESSEE | BRET |
| 104551351501 | JOHNSTON | THOMAS |
| 104601471401 | JONES | SHELBY |
| 104565582501 | JONES | COLLETTE |
| 104571077001 | JONES | ELDON |
| 104620409701 | JORGENSEN | MARCELLA |
| 104670828401 | KANZLER | JAY |
| 104772001101 | KEYES | TERRY |
| 104817035301 | KING | LINDSAY |
| 104957894001 | KRZYWICKA | KINGA |
| 104966350001 | KUJATH | KIM |
| 104971965401 | KUNST | TYLER |
| 105000018201 | LAFITTE | VICTORIA |
| 105148719401 | LEE | JAMES |
| 105162466201 | LEELAKRISHNAN | VIJAI |
| 105167304701 | LEGG | CHRISTOPHER |
| 105226920001 | LEWIS | JONI |
| 105316465501 | LOGAN | ESTELLE |
| 105440603701 | LUNDELL | TORBORG |
| 105468167201 | MAASS | KATHLEEN |
| 105544728301 | MALONE VAUGHN | REV L MARIE |
| 105673845501 | MARTINEZ | JULIO |
| 105663037701 | MARTINEZ | DIGNA |
| 105724815601 | MATHEW | JOHN |
| 105766541901 | MAYNARD | LINDA |
| 105824676701 | MCCOY | MELISSA |
| 600020855001 | MCGILL | RUFUS |

| Control No. | Last1 | First1 |
|---|---|---|
| 105970154301 | MEGGETT | KAREN |
| 105975801101 | MEISS | MAY |
| 106070610701 | MIJARES | JOSE |
| 106222874901 | MONTGOMERY | JOYCE |
| 106363024501 | MOYER | THELMA |
| 9000011001 | NAVARRO | MARIA |
| 9000014901 | NORDSTOG | NONA |
| 106701033401 | OLLIVIER | STEPHANIE |
| 106703176101 | OLSEN | CARMEN |
| 106770287701 | O'SHEA | PAMELA |
| 106792339701 | OWEN | DONNA |
| 107160990701 | PITTS | JAMES |
| 107206518101 | POPE JR | CURTIS |
| 107258376701 | PRESS | CLASSIE |
| 107292762201 | PRUITT | CHRISTINA |
| 107296061801 | PRYOR | MARIE |
| 107359170001 | RAHIMI | DIANA |
| 107359203001 | RAHIMI | QAIS |
| 107423347001 | RARICK | WILLIAM |
| 107484344101 | REGALADO | ELUTERIO |
| 107567492001 | RICHARDS | JENNIFER |
| 107599775601 | RIGGINS | JEWEL |
| 107608047201 | RILEY | WILLIAM |
| 107888725501 | ROY | DEBRA |
| 107897972001 | RUBIO | JOANNA |
| 107904244001 | RUDOLPH | LYNN |
| 107946184001 | RUTZ | CHAD |
| 108097420001 | SATHYANARAYANAN | MYURANI |
| 9000001701 | ACACIO | GERALD |
| 108263780201 | ADAMS | JOSEPH |
| 108320423001 | ALFALLAJ | MAHAMMED |
| 108320821001 | AMARO-DOUGLASS | NADIA |
| 108342440001 | ANINYEI | ISIOMA |
| 108342542201 | ANTOSH | JOHN |
| 108420669801 | SIMON | MEGAN |
| 108425126501 | SIMPSON | BARBARA |
| 108476616301 | SLISH | MEGAN |
| 108483837601 | SMALL JR | JOHN |
| 108505830201 | SMITH | CLINTON |
| 108603827901 | SOLER | FREDERICK |
| 108718075401 | STARKE | KAHLEDRA |
| 9000005801 | STARNER | LYNN |
| 108895905701 | SVORONOS | BETTY |
| 109288759001 | TURPEL | MARGUERITE |
| 109380758701 | VANN | STEPHEN |
| 109426526601 | VEGA | RAFAEL |

| Control No. | Last1 | First1 |
|---|---|---|
| 109447162501 | VENTERS | PEGGY |
| 109543828801 | WAKEFIELD | DAVID |
| 109544229501 | WAKEFIELD | SUZANNE |
| 109647747901 | WATKINS | CHRISTOPHER |
| 109662880001 | WATTERS | SUZANNE |
| 109708817701 | WEISS | TED |
| 109708081801 | WEISS | KATHY |
| 109713007001 | WELCH | LINDA |
| 109934555601 | WILSON | BRUCE |
| 109965849001 | WINDHAM | BETTY |
| 110019247601 | WOOD | MARY |
| 110088810501 | YAKUBCHAK | NICHOLAS |
| 110192270801 | ZINGALE | FRANK |

# Exhibit 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

|  |  |
|---|---|
| ROBERT KOLINEK, individually and on behalf of all others similarly situated,<br><br>　　　　　*Plaintiff*,<br><br>　　　　　　　*v.*<br><br>WALGREEN CO., an Illinois corporation,<br><br>　　　　　*Defendant*. | Case. No. 13-cv-04806<br><br>Hon. Matthew F. Kennelly |

## CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement ("Agreement" or "Settlement Agreement") is entered into by and among Plaintiff Robert Kolinek ("Kolinek" or "Plaintiff"), the Settlement Class (as defined herein), and Defendant Walgreen Co. ("Walgreens" or "Defendant") (together, the "Parties"). This Settlement Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined below), upon and subject to the terms and conditions of this Settlement Agreement, and subject to the final approval of the Court.

## RECITALS

A.　　On July 3, 2013, Plaintiff Kolinek filed a putative class action in the United States District Court for the Northern District of Illinois, captioned *Kolinek v. Walgreen Co.*, Case No. 1:13-cv-04806 (the "Action"). Plaintiff's complaint alleged a single claim—that Walgreens violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii), when it placed allegedly unsolicited prerecorded prescription refill reminder calls to consumers' cellular telephones. (Dkt. 1.)

B.　　On August 30, 2013, Walgreens moved to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Walgreens did not violate the TCPA

because: (1) Plaintiff had consented to being called on his cellular telephone by voluntarily providing his telephone number to Walgreens when refilling a prescription previously, and (2) the calls fell within the TCPA's "emergency purpose" exemption, 47 U.S.C. § 227(b)(1)(A), as communications concerning health or safety, as the calls are only made to active pharmacy patients with a current prescription at Walgreens for a maintenance medication that is due under the prescribing physician's orders to be refilled. (*See* Dkt. 20 at 6–15.)

  C.  After full briefing on the motion to dismiss (*see* Dkts. 20, 26, 30), Walgreens submitted a notice of supplemental authority (Dkt. 34), calling the Court's attention to a Federal Communications Commission ("FCC") amicus brief in another matter and an order dismissing a TCPA claim in another matter, both of which had been filed subsequent to Defendant's reply.

  D.  On February 10, 2014, the Court granted Walgreens' motion and dismissed Plaintiff's complaint, finding that by providing his telephone number to Walgreens, he had, in fact, provided consent to receive Walgreens' telephone calls on his cellular telephone. (Dkt. 38.)

  E.  On March 10, 2014, Plaintiff moved the Court to reconsider its Order granting Walgreens' motion to dismiss, arguing that the provision of a telephone number at a particular time, for a particular purpose, does not constitute prior express consent to receive calls at any other time, for any other purpose. (Dkt. 40 at 3–7.) Even if it could, Plaintiff argued, his complaint did not, on its face, contain all of the facts necessary to establish the prior express consent defense as Walgreens had raised it. (*Id.* at 7–9.) Walgreens opposed Plaintiff's motion to reconsider. (Dkt. 44.)

  F.  On July 7, 2014, the Court granted Plaintiff's motion to reconsider, vacating its prior order on Defendant's motion to dismiss, and ruling that the consent defense raised issues of fact and could not be resolved based on the pleadings. (Dkt. 51.) Oral argument on Defendant's

"emergency purpose exception" motion to dismiss was then set for July 22, 2014. (*Id.* at 9.)

G.    On August 11, 2014, the Court denied the remainder of Defendant's motion to dismiss, holding that the allegations in the Complaint did not say enough about the nature and content of the calls to make it appropriate to dismiss the case on the pleadings based on the emergency purpose defense. (Dkt. 66 at 2.) On August 25, 2014, Walgreens answered the complaint and raised twenty-two affirmative defenses. (Dkt. 68.)

H.    After the Court's ruling, the Parties began to informally exchange information related to Walgreens' prerecorded prescription call program—such as when the program was initiated, how Walgreens collected and stored telephone numbers, how many calls Walgreens placed, and how many individuals received them. In addition, the Parties exchanged information regarding Plaintiff Kolinek's provision of his cellular telephone number and other issues related to any alleged "consent."

I.    While informal discovery was underway, the Parties began to discuss the possibility of settlement. The Parties participated in numerous teleconferences, in which they discussed both the substantive issues of the case as well as their perspectives on a potential resolution of the claims at issue.

J.    On October 15, 2014, the Parties participated in a formal mediation session with the Honorable Wayne R. Andersen (Ret.) of JAMS Chicago. With Judge Andersen's guidance, the Parties engaged in numerous rounds of arm's-length negotiations throughout the course of the day. With Judge Andersen's assistance, by the end of the mediation session the Parties had agreed to some, but not all, of the material terms of an agreement in principle to resolve the Action on a classwide basis. The day closed with Plaintiff's making a proposed settlement offer, which Defendant countered one week later. Finally, on October 24, 2014, the Parties finalized

the material terms of the class relief.

K.     As a material term of their agreement in principle to settle the Action, the Parties agreed to engage in further formal discovery to confirm the fairness, adequacy and reasonableness of the proposed settlement. Accordingly, on December 2, 2014, Plaintiff served written interrogatories and document requests regarding, *inter alia*, Walgreens' practices and procedures for obtaining telephone numbers from consumers and consent to call them, how those numbers are stored, how many numbers have been called, and a host of other information relevant to the claims and defenses in and ultimate settlement of the Action. In addition, the Parties scheduled a Rule 30(b)(6) deposition of Walgreens regarding these same topics.

L.     On January 16, 2015, Plaintiff took the deposition of Chris Helzerman, Walgreens' Director of Outbound Programs, Customer Care Operations, whom Walgreens had designated as its Rule 30(b)(6) designee for the specified topics.

M.     Plaintiff Kolinek believes that the alleged violations of the TCPA asserted in the Action have merit, and that he would have ultimately succeeded in obtaining adversarial certification of the proposed Settlement Class under Federal Rule of Civil Procedure 23, and in prevailing on the merits at summary judgment or at trial. Nonetheless, Plaintiff and Class Counsel recognize that Walgreens has raised factual and legal defenses in the Action that present a risk that Plaintiff may not prevail and/or that a class might not be certified for trial. Plaintiff and Class Counsel also have taken into account the uncertain outcome and risks of any litigation, especially in complex actions, as well as the difficulty and delay inherent in such litigation. Therefore, Plaintiff believes that it is desirable that the Released Claims be fully and finally compromised, settled, and resolved with prejudice, and barred pursuant to the terms and conditions set forth in this Agreement.

N.      Based on their comprehensive examination and evaluation of the law and facts relating to the matters at issue in the Action, Class Counsel have concluded that the terms and conditions of this Agreement are fair, reasonable, and adequate to resolve the alleged claims of the Settlement Class, and that it is in the best interests of the Settlement Class members to settle the claims raised in the Action pursuant to the terms and conditions set forth in this Agreement.

O.      At all times, Walgreens has denied, and continues to deny, any wrongdoing whatsoever.  Specifically, Walgreens has denied that the calls at issue—which Walgreens views as important healthcare notifications to remind patients on maintenance medications to follow their treatment plans, and which it contends are made with the consent of patients and to promote their health and well-being—violate the TCPA or any other statute or law. In addition, Walgreens maintains that it has meritorious defenses to class certification and to the claim alleged in the Action and is prepared to vigorously defend this suit. Nevertheless, taking into account the uncertainty and risks inherent in any litigation, Walgreens has concluded that further defense of the Action would be protracted, burdensome, and expensive, and that it is desirable and beneficial to fully and finally settle and terminate the Action in the manner and upon the terms and conditions set forth in this Agreement.

P.      The Parties agree that all Persons shall have an individual right to exclude themselves from the Settlement Class, such that participation in the Monetary and Prospective Relief provided by this Agreement (as defined below) shall be voluntary.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiff Kolinek, the Settlement Class, and Defendant Walgreens, by and through their respective counsel, that, subject to final approval of the Court after a hearing or hearings as provided for in this Settlement Agreement, and in consideration of the benefits flowing to the

Parties from the Settlement Agreement set forth herein, the Action and the Released Claims shall be fully and finally compromised, settled, and released, and the Action shall be dismissed with prejudice, upon and subject to the terms and conditions set forth in this Agreement.

## AGREEMENT

**1.      DEFINITIONS.**

As used in this Settlement Agreement, the following terms have the meanings specified below:

1.1.     **"Action"** means the case captioned *Kolinek v. Walgreen Co.*, Case No. 1:13-cv-04806, pending in the United States District Court for the Northern District of Illinois.

1.2.     **"Approved Claim"** means a Claim Form submitted by a Settlement Class Member that is (a) submitted timely and in accordance with the directions on the Claim Form and the provisions of the Settlement Agreement, (b) fully and truthfully completed and executed, with all of the information requested in the Claim Form, and (c) signed by the Settlement Class Member, physically or electronically, affirming that the Settlement Class Member received the Prerecorded Prescription Calls on his or her cell phone without his or her prior express consent.

1.3.     **"Claim Form"** means the document substantially in the form attached hereto as Exhibit A, as approved by the Court. The Claim Form, to be completed by Settlement Class Members who wish to file a Claim for a payment pursuant to this Agreement, shall be available in paper and electronic format. The Claim Form will require each Settlement Class Member to include the Settlement Class Member's (1) name, (2) current address, (3) cellular telephone number that received the Prerecorded Prescription Calls, and (4) affirmation that the Settlement Class Member received such Prerecorded Prescription Call(s) without his or her prior express consent.

6

1.4.    **"Claims Deadline"** means the date by which all Claim Forms must be postmarked or submitted on the settlement website established pursuant to Paragraph 4.2(d) to be considered timely and shall be set as a date no later than fourteen (14) days before the Final Approval Hearing. The Claims Deadline shall be clearly set forth in the Preliminary Approval Order and in the Final Judgment as well as in the Notice and the Claim Form.

1.5.    **"Class Counsel"** means Jay Edelson, Rafey S. Balabanian, Ryan D. Andrews, and Benjamin H. Richman of Edelson PC.

1.6.    **"Class Representative"** means the named Plaintiff in this Action, Robert Kolinek.

1.7.    **"Court"** means the United States District Court for the Northern District of Illinois, the Honorable Matthew F. Kennelly presiding, or any judge who shall succeed him as judge in this Action.

1.8.    **"Defendant"** means Walgreen Co., an Illinois corporation.

1.9.    **"Defendant's Counsel"** means Bradley J. Andreozzi and Justin O. Kay of Drinker Biddle & Reath LLP.

1.10.    **"Effective Date"** means the first business day after which all of the events and conditions specified in Paragraph 9.1 have been met and have occurred.

1.11.    **"Escrow Account"** means a separate interest-bearing escrow account to be established by the Settlement Administrator, from which all payments out of the Settlement Fund, including for Approved Claims made by Settlement Class Members, Settlement Administration Expenses, any incentive award to the Class Representative, and any Fee Award to Class Counsel, will be made. The Escrow Account shall be established under terms acceptable to Plaintiff and Defendant at a depository institution insured by the Federal Deposit Insurance

Corporation and that has total assets of at least five hundred million dollars ($500,000,000) and a short-term deposit rating of at least P-1 (Moody's) or A-1 (Standard & Poor's). The money in the Escrow Account shall be invested in the following types of accounts and/or instruments and no other: (i) demand deposit accounts and/or (ii) time deposit accounts and certificates of deposit, in either case with maturities of forty-five (45) days or less. The costs of establishing the Escrow Account shall be deducted from the Settlement Fund. Any interest earned on the Escrow Account shall be considered part of the Settlement Fund.

1.12. **"Fee Award"** means the amount of attorneys' fees and reimbursement of costs and expenses awarded by the Court to Class Counsel from the Settlement Fund.

1.13. **"Final"** means one business day following the latest of the following events: (i) the date upon which the time expires for filing or noticing any appeal of the Court's Final Judgment approving this Settlement Agreement; (ii) if there is an appeal or appeals, other than an appeal or appeals solely with respect to the Fee Award and/or incentive award, the date of completion, in a manner that finally affirms and leaves in place the Final Judgment without any material modification, of all proceedings arising out of the appeal or appeals (including, but not limited to, the expiration of all deadlines for motions for reconsideration or petitions for review and/or *certiorari*, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand); or (iii) the date of final dismissal of any appeal or the final dismissal of any proceeding on *certiorari*.

1.14. **"Final Approval Hearing"** means the hearing before the Court where the Parties will request the Final Judgment to be entered by the Court approving the Settlement Agreement, and the Court will determine the Fee Award and the incentive award to the Class Representative.

1.15. **"Final Judgment"** means the Final Judgment and order(s) to be entered by the

Court approving the Settlement Agreement and determining the Fee Award and the incentive award to the Class Representative.

1.16. **"Notice"** means the notice of this proposed Class Action Settlement Agreement and Final Approval Hearing, which is to be sent to the Settlement Class substantially in the manner set forth in this Agreement, fulfills the requirements of Due Process and Federal Rule of Civil Procedure 23, and is substantially in the form of Exhibits B, C, and D attached hereto.

1.17. **"Notice Date**" means the date by which notice is complete, which shall be a date no later than sixty (60) days after entry of Preliminary Approval.

1.18. **"Objection/Exclusion Deadline"** means the date by which a written objection to this Settlement Agreement or a request for exclusion submitted by a Person within the Settlement Class must be postmarked and/or filed with the Court, which shall be designated as a date no later than forty-five (45) days after the Notice Date, or such other date as ordered by the Court.

1.19. **"Parties"** means Plaintiff Robert Kolinek and the Settlement Class, on the one hand, and Defendant Walgreen Co., on the other.

1.20. **"Person"** shall mean, without limitation, any individual and their spouses, heirs, predecessors, successors, representatives, and assigns.

1.21. **"Plaintiffs"** means Robert Kolinek and the Settlement Class Members, for purposes of this settlement only.

1.22. **"Preliminary Approval"** means the order preliminarily approving the Settlement Agreement, certifying the Settlement Class for settlement purposes, and approving the form of the Notice.

1.23. **"Preliminary Approval Order"** means the proposed order preliminarily approving the Agreement and directing Notice to the Settlement Class, to be submitted to the

Court in conjunction with Plaintiff's motion for preliminary approval of the Agreement.

1.24. **"Prerecorded Prescription Calls"** means any prerecorded voice prescription refill reminder call to a cellular telephone placed by Walgreens and/or any third parties acting on its behalf.

1.25. **"Released Claims"** means any and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, contracts or agreements, extracontractual claims, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and/or obligations (including "Unknown Claims" as defined below), whether in law or in equity, accrued or unaccrued, direct, individual or representative, of every nature and description whatsoever, whether based on the TCPA or other federal, state, local, statutory or common law or any other law, rule or regulation, including the law of any jurisdiction outside the United States, against the Released Parties, or any of them, arising out of the facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act regarding the alleged making of Prerecorded Prescription Calls including all claims that were brought or could have been brought in the Action relating to such calls, belonging to any and all Releasing Parties.

1.26. **"Released Parties"** means Defendant Walgreen Co, as well as any and all of its respective present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parent companies, subsidiaries, agents, associates, affiliates, divisions, holding companies, employers, employees, consultants, independent contractors, insurers, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, investment bankers, underwriters, shareholders, lenders, auditors, investment

10

advisors, legal representatives, successors in interest, companies, firms, trusts, and corporations.

1.27. **"Releasing Parties"** means Plaintiffs and their respective present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parents, subsidiaries, associates, affiliates, employers, employees, agents, consultants, independent contractors, insurers, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, investment bankers, underwriters, lenders, and any other representatives of any of these Persons and entities.

1.28. **"Settlement Administration Expenses"** means the expenses reasonably incurred by or on behalf of the Settlement Administrator in administering the Settlement, including expenses relating to identifying the members of the Settlement Class, providing Notice, processing Claim Forms, and mailing checks for Approved Claims, as well as any expenses reasonably incurred in the sending of notice to the relevant governmental agencies pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"), with all such expenses to be paid from the Settlement Fund.

1.29. **"Settlement Administrator"** means Kurtzman Carson Consultants d/b/a KCC, selected by the Parties and approved by the Court, that shall provide Notice to the Settlement Class, and process and pay Approved Claims submitted by Settlement Class Members as set forth in this Agreement.

1.30. **"Settlement Class"** means all individuals in the United States to whom Walgreens placed a Prerecorded Prescription Call to their cellular telephone.

1.31. **"Settlement Class Member"** means a Person who falls within the definition of the Settlement Class as set forth above and who has not submitted a valid request for exclusion.

1.32. **"Settlement Fund"** means the non-reversionary cash fund that shall be

established by Defendant in the total amount of eleven million dollars ($11,000,000.00) to be deposited into the Escrow Account, plus all interest earned thereon. From the Settlement Fund, the Settlement Administrator shall pay all Approved Claims made by Settlement Class Members, Settlement Administration Expenses, any incentive award to the Class Representative, and any Fee Award to Class Counsel. The Settlement Fund shall be kept in the Escrow Account with permissions granted to the Settlement Administrator to access said funds until such time as the above-listed payments are made. The Settlement Fund includes all interest that shall accrue on the sums deposited in the Escrow Account. The Settlement Administrator shall be responsible for all tax filings with respect to any earnings on the Settlement Fund and the payment of all taxes that may be due on such earnings. The Settlement Fund represents the total extent of Defendant's monetary obligations under this Agreement. In no event shall Defendant's total monetary obligation with respect to this Agreement exceed or be less than eleven million dollars ($11,000,000.00) plus the interest earned on such sum.

1.33. **"Unknown Claims"** means claims that could have been raised in the Action and that any or all of the Releasing Parties do not know or suspect to exist, which, if known by him or her, might affect his or her agreement to release the Released Parties or the Released Claims or might affect his or her decision to agree, object or not to object to the Settlement. Upon the Effective Date, the Releasing Parties shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of § 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Upon the Effective Date, the Releasing Parties also shall be deemed to have, and shall have,

waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to § 1542 of the California Civil Code. The Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention to finally and forever settle and release the Released Claims, notwithstanding any Unknown Claims they may have, as that term is defined in this Paragraph.

**2.    SETTLEMENT RELIEF.**

2.1.    **Payments to Settlement Class Members.**

(a)    Defendant shall establish the Settlement Fund within twenty-eight (28) days after Preliminary Approval.

(b)    Settlement Class Members shall have until the Claims Deadline to submit Claim Forms. Each Settlement Class Member who submits an Approved Claim shall be entitled to a payment of a *pro rata* share of the amount remaining in the Settlement Fund after payment of all Settlement Administration Expenses, any incentive award to the Class Representative, and any Fee Award to Class Counsel. The payment for each Approved Claim will be increased or decreased depending on the total number of Approved Claims.

(c)    Within ninety (90) days after the Effective Date, or such other date as the Court may set, the Settlement Administrator shall pay from the Settlement Fund all Approved Claims by check and send said checks via first-class U.S. mail to the Settlement Class Members who submitted all such Approved Claims.

(d)    All cash payments issued to Settlement Class Members via check will

13

state on the face of the check that the check will expire and become null and void unless cashed within ninety (90) days after the date of issuance.

(e)     Any un-cashed checks issued to Settlement Class Members in accordance with this Agreement, as well as any unclaimed funds remaining in the Settlement Fund after payment of all Approved Claims, all Settlement Administration Expenses, the Fee Award to Class Counsel, and the incentive award to the Class Representative shall be distributed to Settlement Class Members with Approved Claims if practicable, or in a manner as otherwise directed by the Court upon application made by Class Counsel.

(f)     If, after determining the total number of Approved Claims submitted, the amounts paid to each Settlement Class Member who submitted an Approved Claim would be less than fifteen dollars ($15), each claiming Settlement Class Member will have a second opportunity to exclude himself or herself from the Settlement (the "downstream opt-out"), provided that he or she exercises such option within forty-five (45) days after the Settlement Administrator has posted notice of the amount of the payment per Approved Claim on the settlement website. In such instance, Walgreens may choose in its discretion to pay such Settlement Class Members who have submitted Approved Claims the difference between the amount they received under the Settlement and fifteen dollars ($15), thereby mooting the downstream opt-out.

2.2.    **Prospective Relief:** Notwithstanding its position that by voluntarily providing their telephone numbers to Walgreens, the members of the Settlement Class have already consented to receive Prerecorded Prescription Calls, Walgreens agrees to implement the following procedures to ensure and/or confirm that Persons in the Settlement Class, and its other customers, have provided prior express consent to receive Prerecorded Prescription Calls to cell

14

phones:

   (a)    Pursuant to this Agreement, Walgreens has or shall utilize expert analysis and independent, third-party data to identify customer telephone numbers that have received Prerecorded Prescription Calls during the class period as assigned to wireless or landline telephone service.

   (b)    Walgreens shall implement procedures to engage its customers to confirm the accuracy of their communications preferences on file, including their consent to receive automated calls on the telephone numbers included in their customer/patient profiles.  Such confirmation procedures may include a combination of engaging customers on Walgreens.com, prompts when customers call and interact with Walgreens' automated voice systems, interactions at point of sale and other means of interacting with customers.

   (c)    Walgreens shall additionally provide or continue to provide to customers the option to elect to receive, and unsubscribe from, Prerecorded Prescription Calls through channels such as Walgreens.com and Walgreens' telephonic customer service systems and by contacting Walgreens by other available means such as, for example, calling a store or visiting a retail location in person.

   (d)    These policies shall be implemented no later than one (1) year after the Effective Date (except as otherwise permitted by the Court upon application of Walgreens for an extension to implement the prospective relief contemplated herein) and remain in effect until further order of the Court or until there are changes in the law related to the above practices that occur after the Effective Date. In the event of any such changes in the law, Defendant shall adjust its policies and procedures to remain in

compliance with such laws then in effect.

**3.    RELEASE**

3.1     The obligations incurred pursuant to this Settlement Agreement shall be a full and final disposition of the Action and any and all Released Claims, as against all Released Parties.

3.2     Upon the Effective Date, the Releasing Parties, and each of them, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished and discharged all Released Claims against each and every one of the Released Parties.

**4.    NOTICE TO THE CLASS.**

4.1.     Upon entry of the Preliminary Approval Order, the Settlement Administrator shall cause the Notice describing the Final Approval Hearing, the terms of the compromise embodied in this Settlement Agreement, and the Claim Form to be disseminated to the Settlement Class as provided herein. Such notice shall comport with due process and Rule 23, the costs of which shall be Settlement Administration Expenses.

4.2.     The Notice shall include:

(a)     *Class List*.  To the extent Defendant has not done so already, upon execution of this Settlement Agreement, Defendant shall provide to the Settlement Administrator the list of all telephone numbers that have received Prerecorded Prescription Calls in order to allow the Settlement Administrator to determine which of those numbers (which were not previously identified to Walgreens as assigned to cellular service) are in fact cell phone numbers.  The Settlement Administrator shall use this information in consultation with Walgreens to prepare a list of the members of the Settlement Class (the "Class List").

(b)     *Direct Email Notice.*  No later than sixty (60) days after the entry of Preliminary Approval, the Settlement Administrator shall send Notice via email substantially in the form attached as Exhibit B, along with an electronic link to the Claim Form, to all Settlement Class Members for whom a valid email address is obtainable with reasonable effort from the Walgreens customer records. If no valid email address exists or is obtainable with reasonable effort for a person in the Settlement Class, or in the event that the transmission of any email notice results in a "bounce-back," the Settlement Administrator shall send Notice via First Class U.S. Mail through a postcard notice and accompanying Claim Form with return postage pre-paid in the form attached as Exhibit C, to each physical address reasonably obtainable from the Walgreens customer records.

(c)     *Direct Mail Notice.*  No later than sixty (60) days after the entry of Preliminary Approval, the Settlement Administrator shall send Notice and accompanying Claim Form (with return postage pre-paid via postcard), substantially in the form attached as Exhibit C, via First Class Mail through a postcard to the last known physical address of those Settlement Class Members for whom Walgreens does not have a valid email address.

(d)     *Internet Notice.*  Within forty-five (45) days after the entry of Preliminary Approval, the Settlement Administrator will develop, host, administer and maintain a dedicated settlement website located at URL www.prescriptioncallsettlement.com, which shall include the ability to electronically file Claim Forms online. The Notice on the settlement website shall be substantially in the form of Exhibit D attached hereto.

(e)     *CAFA Notice.*  Pursuant to 28 U.S.C. § 1715, not later than ten (10) days after the Agreement is filed with the Court, Defendant shall cause to be served upon the

Attorneys General of each U.S. State in which Settlement Class Members reside, the
Attorney General of the United States, and other required government officials, notice of
the proposed settlement as required by law.

4.3.     The Notice shall advise the Settlement Class of their rights under the Settlement,
including the right to be excluded from, comment upon, and/or object to the Settlement
Agreement or its terms. The Notice shall specify that any objection to this Settlement
Agreement, and any papers submitted in support of said objection, shall be received by the Court
at the Final Approval Hearing, only if the Person making an objection shall, on or before the
Objection/Exclusion Deadline approved by the Court and specified in the Notice, file notice of
his or her intention to do so and at the same time (a) file copies of such papers he or she proposes
to submit at the Final Approval Hearing with the Clerk of the Court, (b) file copies of such
papers through the Court's CM/ECF system if the objection is from a Settlement Class Member
represented by counsel, and (c) send copies of such papers via mail, hand, or overnight delivery
service to both Class Counsel and Defendant's Counsel.

4.4.     Any member of the Settlement Class who intends to object to this Settlement
Agreement must include his or her name and address, include all arguments, citations, and
evidence supporting the objection (including copies of any documents relied on), state that he or
she is a Settlement Class Member, provide the cellular phone number on which he or she
allegedly received a Prerecorded Prescription Call, and provide a statement whether the objector
intends to appear at the Final Approval Hearing, with or without counsel, accompanied by the
signature of the objecting Settlement Class Member.  Any Settlement Class Member who fails to
timely file a written objection with the Court and notice of his or her intent to appear at the Final
Approval Hearing in accordance with the terms of this Paragraph and as detailed in the Notice,

18

and at the same time provide copies to designated counsel for the Parties, shall not be permitted to object to this Settlement Agreement at the Final Approval Hearing, and shall be foreclosed from seeking any review of this Settlement Agreement by appeal or other means and shall be deemed to have waived his or her objections and be forever barred from making any such objections in the Action or any other action or proceeding.

4.5.     A member of the Settlement Class may request to be excluded from the Settlement Class by sending a written request for exclusion to the Settlement Administrator postmarked on or before the Objection/Exclusion deadline, which must be personally signed by the Settlement Class Member seeking to be excluded from the Settlement Class, and include his or her name and address, the cellular telephone number on which he or she allegedly received a Prerecorded Prescription Call, the caption for the Action (i.e., *Kolinek v. Walgreen Co.*, No. 13-cv-04806 (N.D. Ill.)), and a statement that he or she wishes to be excluded from the Settlement Class. A request to be excluded that does not include all of the foregoing information, that is sent to an address other than that designated in the Notice, or that is not postmarked within the time specified, shall be invalid, and the Persons serving such a request shall be deemed to remain members of the Settlement Class and shall be bound as Settlement Class Members by this Settlement Agreement, if approved. Any member of the Settlement Class who elects to be excluded shall not: (1) be bound by any orders or the Final Judgment; (2) be entitled to relief under this Settlement Agreement; (3) gain any rights by virtue of this Settlement Agreement; nor (4) be entitled to object to any aspect of this Settlement Agreement. "Mass" or "class" requests for exclusion shall not be allowed.

**5.     SETTLEMENT ADMINISTRATION.**

5.1.     The Settlement Administrator shall, under the supervision of the Court, administer

19

the relief provided by this Settlement Agreement by processing Claim Forms in a rational, responsive, cost effective and timely manner. The Settlement Administrator shall maintain reasonably detailed records of its activities under this Settlement Agreement. The Settlement Administrator shall maintain all such records as are required by applicable law in accordance with its normal business practices and such records will be made available to Class Counsel and Defendant's Counsel upon request. The Settlement Administrator shall also provide reports and other information to the Court as the Court may require. The Settlement Administrator shall provide Class Counsel and Defendant's Counsel with information concerning Notice, administration and implementation of the Settlement Agreement. Should the Court request, the Parties, in conjunction with the Settlement Administrator, shall submit a timely report to the Court summarizing the work performed by the Settlement Administrator, including a report of all amounts paid to Settlement Class Members on account of Approved Claims. Without limiting the foregoing, the Settlement Administrator shall:

      (a)     Forward to Defendant's Counsel, with copies to Class Counsel, all documents and other materials received in connection with the administration of the Settlement Agreement within thirty (30) days after the date on which all Claim Forms have been finally approved or disallowed per the terms of the Settlement Agreement;

      (b)     Receive exclusion forms and other requests from the Settlement Class and promptly provide a copy of such requests to Class Counsel and Defendant's Counsel upon receipt ("the Opt-Out List"). If the Settlement Administrator receives any exclusion forms or other requests from the Settlement Class after the Objection/Exclusion Deadline, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and Defendant's Counsel;

20

(c)     Provide weekly reports to Class Counsel and Defendant's Counsel, including without limitation, reports regarding the number of Claim Forms received, the current number of Approved Claims, the estimated payment per Settlement Class Member with an Approved Claim, and the number of opt-outs and objections received; and

(d)     Make available for inspection by Class Counsel or Defendant's Counsel the Claim Forms, any documentation submitted in support thereof, and any correspondence received by the Settlement Administrator at any time upon reasonable notice.

5.2.     The Settlement Administrator shall employ reasonable procedures to screen claims for abuse or fraud, including without limitation, by cross-referencing the information provided on the Claim Form against the Class List. The Settlement Administrator shall reject a Claim Form, or any part of a claim for a payment reflected therein, where there is evidence of abuse or fraud. The Settlement Administrator shall also reject a Claim Form that does not contain all requested information necessary to screen the claim for fraud or abuse, after giving the claimant a reasonable opportunity of no greater than twenty-one (21) days to provide any requested missing information.

5.3.     Both Defendant's Counsel and Class Counsel shall have the right to challenge the acceptance or rejection of a Claim Form submitted by Settlement Class Members. The Settlement Administrator shall follow any agreed-to decisions of Defendant's Counsel and Class Counsel. To the extent Defendant's Counsel and Class Counsel are not able to agree on the disposition of a challenge, the Honorable Wayne R. Andersen (ret.), or if Judge Andersen is unavailable, a mutually agreed-upon neutral from JAMS, shall timely decide such challenge.

5.4.     In the exercise of their duties outlined in this Agreement, both the Settlement Administrator and Judge Andersen shall have the right to reasonably request additional information from the Parties or any Settlement Class Member.

5.5.     The Final Approval Hearing shall be set for a date no less than ninety (90) days after the Notice described in Paragraph 4.2(e) is disseminated.

5.6.     The Settlement Administrator and Class Counsel shall keep the Class List and all personal information obtained therefrom, including the identity, telephone numbers, email addresses, and U.S. mailing addresses of the Settlement Class strictly confidential in accordance with applicable law and confidentiality agreements that they shall execute or have already executed.  The Parties agree that the Class List may not be used for any purpose other than effectuating the terms of this Agreement or the duties or obligations arising hereunder.  The Class List and other information provided to the Settlement Administrator and Class Counsel shall not include medical or health information, such as the prescriptions filled, for any member of the Settlement Class.

## 6.     TERMINATION OF SETTLEMENT.

6.1.     **Termination By Any Party.**  Subject to Paragraph 9 below, the Class Representative, on behalf of the Settlement Class, or Defendant, shall have the right to terminate this Settlement Agreement by providing written notice of the election to do so to all other Parties hereto within ten (10) days of any of the following events: (i) the Court's refusal to grant Preliminary Approval of this Agreement in any material respect; (ii) the Court's refusal to grant final approval of this Agreement in any material respect; (iii) the Court's refusal to enter the Final Judgment in this Action in any material respect; (iv) the date upon which the Final Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme

Court; or (v) the date upon which an Alternative Judgment, as defined in Paragraph 9.1(d) of this Agreement, is modified or reversed in any material respect by the Court of Appeals or the Supreme Court.

6.2. **Termination at the Discretion of Walgreens.** Walgreens shall have the right, at its sole discretion, to terminate this Settlement Agreement by providing written notice of its election to do so to all other Parties hereto within ten (10) days after the final Opt-Out List has been served on the Parties by the Settlement Administrator if the number of requests for exclusion received from Settlement Class Members exceeds five thousand (5,000). In the event that Walgreens exercises such a right, Class Counsel shall have fourteen (14) days thereafter, or such longer period as agreed to by the Parties, to address the concerns of the Persons who have elected to be excluded from the Settlement. If through such efforts the total number on the Opt-Out List subsequently becomes and remains fewer than five thousand (5,000), Walgreens shall withdraw its election to terminate the Settlement Agreement. In no event, however, shall Walgreens have any further obligation under this Settlement Agreement to any Person who has elected to be excluded from the settlement unless he or she withdraws his or her request for exclusion.

## 7. PRELIMINARY APPROVAL ORDER AND FINAL APPROVAL ORDER.

7.1. Promptly after the execution of this Settlement Agreement, Class Counsel shall submit this Agreement together with its Exhibits to the Court and shall move the Court for entry of an Order of Preliminary Approval of the settlement set forth in this Agreement, which shall include, among other provisions, a request that the Court:

      (a)    appoint Plaintiff Robert Kolinek as representative of the Settlement Class;

      (b)    appoint Class Counsel to represent the Settlement Class;

(c)     certify the Settlement Class under Fed. R. Civ. P. 23 for settlement purposes only and without prejudice to Defendant's right to contest class certification if this Agreement is not approved;

(d)     preliminarily approve this Agreement for purposes of disseminating notice to the Settlement Class;

(e)     approve the form and contents of the Settlement Class Notice and Claim Form for dissemination to the Settlement Class, as well as the method of its dissemination to members of the Settlement Class;

(f)     schedule a Final Approval Hearing to review comments and/or objections regarding this Agreement, to consider its fairness, reasonableness and adequacy, and the application for an award of attorneys' fees and reimbursement of expenses and to consider whether the Court shall issue a Judgment approving this Agreement, granting Class Counsel's application for the Fee Award and an incentive award to the Class Representative, and dismissing the Action with prejudice.

7.2.    After Notice to the Settlement Class is given, Class Counsel shall move the Court for entry of a Final Judgment, which shall include, among other provisions, a request that the Court:

(a)     find that it has personal jurisdiction over all Settlement Class Members and subject matter jurisdiction to approve this Settlement Agreement, including all attached Exhibits;

(b)     approve the Settlement Agreement and the proposed settlement as fair, reasonable and adequate as to, and in the best interests of, the Settlement Class Members; direct the Parties and their counsel to implement and consummate the Settlement

24

Agreement according to its terms and conditions; and declare the Settlement Agreement to be binding on, and have *res judicata* and preclusive effect in, all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiff and all other Settlement Class Members and Releasing Parties;

(c)      find that the Notice implemented pursuant to the Settlement Agreement (1) constitutes the best practicable notice under the circumstances, (2) constitutes notice that is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action and their rights to object to or exclude themselves from this Settlement Agreement and to appear at the Final Approval Hearing, (3) is reasonable and constitutes due, adequate and sufficient notice to all persons entitled to receive notice, and (4) meets all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution and the rules of the Court;

(d)      find that the Class Representative and Class Counsel adequately represented the Settlement Class for purposes of entering into and implementing the Agreement;

(e)      dismiss the Action on the merits and with prejudice, without fees or costs to any party except as provided in this Settlement Agreement;

(f)      incorporate the Release set forth above, make the Release effective as of the date of the Final Judgment, and forever discharge the Released Parties as set forth herein;

(g)      permanently bar and enjoin all Settlement Class Members who have not been properly excluded from the Settlement Class from filing, commencing, prosecuting,

intervening in, or participating (as class members or otherwise) in, any lawsuit or other action in any jurisdiction based on the Released Claims;

(h)     authorize the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications and expansions of the Settlement Agreement and its implementing documents (including all Exhibits to this Agreement) that (1) shall be consistent in all material respects with the Final Judgment, and (2) do not limit the rights of Settlement Class Members;

(i)     without affecting the finality of the Final Judgment for purposes of appeal, retain jurisdiction as to all matters relating to administration, consummation, enforcement and interpretation of the Settlement Agreement and the Final Judgment, and for any other necessary purpose; and

(j)     incorporate any other provisions, consistent with the material terms of this Agreement, as the Court deems necessary and just.

## 8.     CLASS COUNSEL'S ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND INCENTIVE AWARD.

8.1.     Class Counsel will apply to the Court for an award of reasonable attorneys' fees and unreimbursed expenses incurred in the Action as the Fee Award. The amount of the Fee Award shall be determined by the Court based on petition from Class Counsel. Class Counsel has agreed, with no consideration from Defendant, to limit their request to thirty-five percent (35%) of the Settlement Fund. Payment of the Fee Award shall be made from the Settlement Fund and should the Court award less than the amount sought by Class Counsel, the difference in the amount sought and the amount ultimately awarded pursuant to this Paragraph shall remain in the Settlement Fund to be distributed to Settlement Class Members with Approved Claims.

8.2.    Class Counsel shall be paid the Fee Award, in an amount determined by the Court, from the Settlement Fund within seven (7) days after the Effective Date.  Payment of the Fee Award shall be made via wire transfer to an account designated by Class Counsel after providing necessary information for electronic transfer.

8.3.    In addition to any payment to which he may be entitled under this Agreement on account of an Approved Claim, and in recognition of the time and effort he expended on behalf of the Settlement Class, subject to the Court's approval, the Class Representative shall be paid from the Settlement Fund an incentive award in the total amount of five thousand dollars ($5,000). Should the Court award less than this amount, the difference in the amount sought and the amount ultimately awarded pursuant to this Paragraph shall remain in the Settlement Fund to be distributed to Settlement Class Members with Approved Claims.

8.4.    The Class Representative shall be paid the incentive award, as determined by the Court, from the Settlement Fund within seven (7) days after the Effective Date.  Payment of the incentive award to the Class Representative shall be made via check to the Class Representative, such check to be sent care of Class Counsel.

## 9.    CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION.

9.1.    The Effective Date of this Settlement Agreement shall not occur unless and until each and every one of the following events occurs, and shall be the date upon which the last (in time) of the following events occurs:

(a)    This Agreement has been signed by the Parties, Class Counsel and Defendant's Counsel;

(b)    The Court has entered an order granting Preliminary Approval of the Agreement;

27

(c)     The Court has entered an order finally approving the Settlement

Agreement, following notice to the Settlement Class and a Final Approval Hearing, as

provided in the Federal Rules of Civil Procedure, and has entered the Final Judgment, or

a judgment substantially consistent with this Agreement; and

(d)     The Final Judgment has become Final, as defined above, or, in the event

that the Court enters an order and final judgment in a form other than that provided above

("Alternative Judgment") to which the Parties have consented, that Alternative Judgment

has become Final.

9.2.    If some or all of the conditions specified in Paragraph 9.1 are not met, or in the

event that this Settlement Agreement is not approved by the Court, or the settlement set forth in

this Agreement is terminated or fails to become effective in accordance with its terms, then this

Settlement Agreement shall be canceled and terminated subject to Paragraph 9.3, unless Class

Counsel and Defendant's Counsel mutually agree in writing to proceed with this Agreement. If

any Party is in material breach of the terms hereof, any other Party, provided that it is in

substantial compliance with the terms of this Agreement, may terminate this Agreement on

notice to all other Parties. Notwithstanding anything herein, the Parties agree that the Court's

decision as to the amount of the Fee Award to Class Counsel set forth above or the incentive

award to the Class Representative, regardless of the amounts awarded, shall not prevent the

Agreement from becoming effective, nor shall it be grounds for termination of the Agreement.

9.3.    If this Agreement is terminated or fails to become effective for the reasons set

forth in Paragraphs 6.1, 6.2, 9.1, or 9.2 above, the Parties shall be restored to their respective

positions in the Action as of the date of the signing of this Agreement. In such event, any Final

Judgment or other order entered by the Court in accordance with the terms of this Agreement

28

shall be treated as vacated, *nunc pro tunc*, and the Parties shall be returned to the *status quo ante* with respect to the Action as if this Agreement had never been entered into and, pursuant to Paragraph 10.4 below, this Agreement shall not be used for any purpose whatsoever against any of the Parties.

## 10. MISCELLANEOUS PROVISIONS.

10.1    The Parties: (1) acknowledge that it is their intent to consummate this Settlement Agreement; and (2) agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement and to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this Agreement. Class Counsel and Defendant's Counsel agree to cooperate with one another in seeking entry of an order granting Preliminary Approval of this Agreement and the Final Judgment, and promptly to agree upon and execute all such other documentation as may be reasonably required to obtain final approval of the Agreement.

10.2    The Parties intend this Settlement Agreement to be a final and complete resolution of all disputes between them with respect to the Released Claims by Plaintiff and the Settlement Class, and each or any of them, on the one hand, against the Released Parties, and each or any of the Released Parties, on the other hand. Accordingly, the Parties agree not to assert in any forum that the Action was brought by Plaintiff or defended by Defendant, or each or any of them, in bad faith or without a reasonable basis.

10.3    The Parties have relied upon the advice and representation of counsel, selected by them, concerning the claims hereby released. The Parties have read and understand fully this Agreement and have been fully advised as to the legal effect hereof by counsel of their own selection and intend to be legally bound by the same.

29

10.4     Whether the Effective Date occurs or this Settlement Agreement is terminated, neither this Agreement nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the settlement:

(a)     is, may be deemed, or shall be used, offered or received against the Released Parties, or each or any of them as an admission, concession or evidence of, the validity of any Released Claims, the truth of any fact alleged by Plaintiff, the deficiency of any defense that has been or could have been asserted in the Action, the violation of any law or statute, the reasonableness of the settlement amount or the Fee Award, or of any alleged wrongdoing, liability, negligence, or fault of the Released Parties, or any of them;

(b)     is, may be deemed, or shall be used, offered or received against Defendant as, an admission, concession or evidence of any fault, misrepresentation or omission with respect to any statement or written document approved or made by the Released Parties, or any of them;

(c)     is, may be deemed, or shall be used, offered or received against Plaintiff or the Settlement Class, or each or any of them as an admission, concession or evidence of, the infirmity or strength of any claims asserted in the Action, the truth or falsity of any fact alleged by Defendant, or the availability or lack of availability of meritorious defenses to the claims raised in the Action;

(d)     is, may be deemed, or shall be used, offered or received against the Released Parties, or each or any of them as an admission or concession with respect to any liability, negligence, fault or wrongdoing as against any Released Parties, in any civil, criminal or administrative proceeding in any court, administrative agency or other

30

tribunal. However, the settlement, this Agreement, and any acts performed and/or documents executed in furtherance of or pursuant to this Agreement and/or settlement may be used in any proceedings as may be necessary to effectuate the provisions of this Agreement. Moreover, if this Settlement Agreement is approved by the Court, any party or any of the Released Parties may file this Settlement Agreement and/or the Final Judgment in any action that may be brought against such party or Parties in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion, or similar defense or counterclaim;

(e)    is, may be deemed, or shall be construed against Plaintiff and the Settlement Class, or each or any of them, or against the Released Parties, or each or any of them, as an admission or concession that the consideration to be given hereunder represents an amount equal to, less than or greater than that amount that could have or would have been recovered after trial; and

(f)    is, may be deemed, or shall be construed as or received in evidence as an admission or concession against Plaintiff and the Settlement Class, or each and any of them, or against the Released Parties, or each or any of them, that any of Plaintiff's claims are with or without merit or that damages recoverable in the Action would have exceeded or would have been less than any particular amount.

10.5    The headings used herein are used for the purpose of convenience only and are not meant to have legal effect.

10.6    The waiver by one Party of any breach of this Agreement by any other Party shall not be deemed as a waiver of any other prior or subsequent breaches of this Agreement.

10.7    All of the Exhibits to this Settlement Agreement are material and integral parts hereof and are fully incorporated herein by reference.

10.8    This Agreement and its Exhibits set forth the entire agreement and understanding of the Parties with respect to the matters set forth herein, and supersede all prior negotiations, agreements, arrangements and undertakings with respect to the matters set forth herein. No representations, warranties or inducements have been made to any party concerning this Settlement Agreement or its Exhibits other than the representations, warranties and covenants contained and memorialized in such documents. This Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

10.9    Except as otherwise provided herein, each Party shall bear its own attorneys' fees and costs incurred in any way related to the Action.

10.10   Plaintiff represents and warrants that he has not assigned any claim or right or interest relating to any of the Released Claims against the Released Parties to any other Person or party and that he is fully entitled to release the same.

10.11   Each counsel or other Person executing this Settlement Agreement, any of its Exhibits, or any related settlement documents on behalf of any party hereto, hereby warrants and represents that such Person has the full authority to do so and has the authority to take appropriate action required or permitted to be taken pursuant to the Agreement to effectuate its terms.

10.12   This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Signature by digital, facsimile, or in PDF format will constitute sufficient execution of this Agreement. A

32

complete set of original executed counterparts shall be filed with the Court if the Court so requests.

10.13   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Agreement.

10.14   This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of Illinois without reference to the conflicts of laws provisions thereof.

10.15   This Settlement Agreement is deemed to have been prepared by counsel for all Parties, as a result of arm's-length negotiations among the Parties. Whereas all Parties have contributed substantially and materially to the preparation of this Agreement, it shall not be construed more strictly against one party than another.

10.16   Where this Settlement Agreement requires notice to the Parties, such notice shall be sent to the undersigned counsel:

| If to Plaintiff's Counsel: | If to Defendant's Counsel: |
| --- | --- |
| Rafey S. Balabanian | Bradley J. Andreozzi |
| Benjamin H. Richman | Justin O. Kay |
| Edelson PC | Drinker Biddle & Reath LLP |
| 350 North LaSalle Street, Suite 1300 | 191 North Wacker Drive, Suite 3700 |
| Chicago, Illinois 60654 | Chicago, Illinois 60654 |

[SIGNATURES APPEAR ON FOLLOWING PAGE.]

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed, by their duly authorized attorneys.

Dated: 3/26/15

**ROBERT KOLINEK**, individually and on behalf of the Settlement Class,

By: _____

**EDELSON PC**
Attorneys for Plaintiff Robert Kolinek

Dated: _____

By: _____
      Rafey S. Balabanian, Esq.

Dated: _____

**WALGREEN CO.**

By: _____

Its: _____

**DRINKER BIDDLE & REATH LLP**
Attorneys for Defendant Walgreen Co.

Dated: _____

By: _____
      Bradley J. Andreozzi, Esq.

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed, by their duly authorized attorneys.

**ROBERT KOLINEK**, individually and on behalf of the Settlement Class,

Dated: _____            By: _____

**EDELSON PC**
Attorneys for Plaintiff Robert Kolinek

Dated: _3/26/15_            By: _____
                                        Rafey S. Balabanian, Esq.

Dated: _____            **WALGREEN CO.**

By: _____

Its: _____

**DRINKER BIDDLE & REATH LLP**
Attorneys for Defendant Walgreen Co.

Dated: _____            By: _____
                                        Bradley J. Andreozzi, Esq.

34

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed, by their duly authorized attorneys.

**ROBERT KOLINEK**, individually and on behalf of the Settlement Class,

Dated: _____

By: _____

**EDELSON PC**
Attorneys for Plaintiff Robert Kolinek

Dated: _____

By: _____
           Rafey S. Balabanian, Esq.

Dated: *March 26, 2015*

**WALGREEN CO.**

By: _____

Its: _____

**DRINKER BIDDLE & REATH LLP**
Attorneys for Defendant Walgreen Co.

Dated: _____

By: _____
           Bradley J. Andreozzi, Esq.

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed, by their duly authorized attorneys.

**ROBERT KOLINEK**, individually and on behalf of the Settlement Class,

Dated: _____         By: _____

**EDELSON PC**
Attorneys for Plaintiff Robert Kolinek

Dated: _____         By: _____
                                     Rafey S. Balabanian, Esq.

Dated: _____         **WALGREEN CO.**

By: _____

Its: _____

**DRINKER BIDDLE & REATH LLP**
Attorneys for Defendant Walgreen Co.

Dated: March 26, 2015         By: _____
                                     Bradley J. Andreozzi, Esq.

34

# **Exhibit A**

*Kolinek v. Walgreen, Co.*, No. 13-cv-4806

## CLAIM FORM

***Instructions.*** *Fill out each section of this form and sign where indicated.*

| First Name | Last Name |
|---|---|
| | |

| Street Address |
|---|
| |

| City | State | ZIP Code |
|---|---|---|
| | | |

| Cellular Telephone Number at which you received Prerecorded Prescription Call(s) |
|---|
| |

**Class Member Affirmation**: By submitting this Claim Form and checking the box below, I declare that I am a member of the Settlement Class and that the following statement is true (box must be checked to receive payment):

☐      I received one or more prerecorded telephone calls from Walgreens at the cellular telephone number written above reminding me that my prescription was due for refill ("Prerecorded Prescription Calls") and I did not consent to receive these calls. *I recognize by affirming here that such calls were made without my consent, that I will be removed from the list of persons eligible to receive* Prerecorded Prescription Calls *from Walgreens and will not receive such calls in the future unless I separately provide my consent, which I may (but need not) do below.*

I state under penalty of perjury under the laws of the State in which this Affirmation is executed and the United States of America that the information provided above is true and correct.

Signature: _____     Date: _____ - _____ - _____
                                                                        (MM-DD-YY)
Printed Name: _____

                    *                         *                         *

**Voluntary Request to Receive Future Prerecorded Prescription Calls**:
☐      I now wish to receive Prerecorded Prescription Calls from Walgreens, and I consent to receive such calls. *I understand that providing this consent is not required for me to submit a claim in the settlement, nor is it required for me to purchase any goods or services from Walgreens.*

# Exhibit B

**NOTICE OF CLASS ACTION SETTLEMENT**

*Kolinek v. Walgreen, Co.*, Case No. 13-cv-4806

**IF YOU RECEIVED A PRERECORDED CALL FROM WALGREENS ON YOUR CELL PHONE
REMINDING YOU TO REFILL YOUR PRESCRIPTION,
A CLASS ACTION SETTLEMENT MAY AFFECT YOUR RIGHTS.**

*For complete information, visit www.prescriptioncallsettlement.com or call [toll-free number].*

*A Federal Court authorized this notice. You are not being sued. This is not a solicitation from a lawyer.*

A settlement has been reached in a class action lawsuit against **Walgreen Co.** ("Walgreens"). The lawsuit alleges that Walgreens made prerecorded calls to the cellular telephones of certain pharmacy customers to remind them when their prescriptions were due for refill ("Prerecorded Prescription Calls"). The suit alleges that Walgreens made these calls without customer consent. Walgreens denies any wrongdoing and maintains that Prerecorded Prescription Calls are medical alerts that its customers want, and are made with their consent. The settlement does not establish who is correct, but rather is a compromise to end the lawsuit. The lawsuit is called *Kolinek v. Walgreen Co.*, Case No. 13-cv-04806, and is in the U.S. District Court for the Northern District of Illinois.

- **Why am I Being Contacted?** Our records show you may be a "Settlement Class Member." Settlement Class Members are all individuals in the United States who received Prerecorded Prescription Calls from Walgreens on their cellular phones. You may be entitled to payment under the Settlement if you affirm that you did not consent to receive the Prerecorded Prescription Calls, but in that case you will not be eligible to receive these reminder calls on your cell phone in the future unless you provide consent for future calls (which you may do on the Claim Form).

- **What Can I Get Out of the Settlement?** If you're eligible and the Court approves the Settlement, you could receive a cash payment. Settlement Class Members will receive equal shares of an $11 million Settlement Fund that Walgreens has agreed to create, after the payment of expenses and fees. If the individual payments per Settlement Class Member would be less than $15, you will have a second chance to exclude yourself from the Settlement or Walgreens may pay you the difference up to $15. The Settlement Administrator will post additional information about the payment amount on www.prescriptioncallsettlement.com if necessary.

- **How Do I Get My Payment?** Just complete and verify the short and simple Claim Form available at www.prescriptioncallsettlement.com. You can also call [toll-free number] to request a paper copy of the Claim Form. *All Claim Forms must be received by [claims deadline].*

- **What are My Options?** You can do nothing, submit a Claim Form, comment on or object to any of the Settlement terms, or exclude yourself from the Settlement. If you do nothing or submit a Claim Form, you won't be able to sue Walgreens in a future lawsuit about the claims addressed in the Settlement. If you exclude yourself, you won't get a payment but you'll keep your right to sue Walgreens on the issues the settlement concerns. You must contact the settlement administrator by mail to exclude yourself. You can also object to the settlement if you disagree with any of its terms. *All Requests for Exclusion and Objections must be received by [exclusion/objection deadline].*

- **Do I Have a Lawyer?** Yes. The Court has appointed lawyers from the law firm Edelson PC as "Class Counsel." They represent you and other Settlement Class Members. The lawyers will request to be paid from the Settlement Fund. You can hire your own lawyer, but you'll need to pay your own legal fees. The Court has also chosen Robert Kolinek—a Class Member like you—to represent the Class.

- **When Will the Court Approve the Settlement?** The Court will hold a final approval hearing on [date] at [time] at the Everett McKinley Dirksen United States Courthouse, 219 S. Dearborn St., Chicago, IL 60604, Courtroom 2103. The Court will hear objections, determine if the Settlement is fair, and consider Class Counsel's request for fees and expenses (up to 35% of the Settlement Fund) and an incentive award to the class representative. These requests will be posted on the settlement website on [date].

*Visit www.prescriptioncallsettlement.com for complete information.*

# Exhibit C

[4.25 x 6 postcard notice –]

LEGAL NOTICE

*Kolinek v. Walgreen, Co.*, Case No. 13-cv-4806

## If you received a prerecorded call from Walgreens on your cell phone reminding you to refill your prescription, a class action settlement may affect your rights.

A Federal Court authorized this notice.
You are <u>not</u> being sued.
This is <u>not</u> a solicitation from a lawyer.

*See reverse for details.*
*For complete information, visit*
*www.prescriptioncallsettlement.com*
*or call [toll-free number].*

---

Walgreens Prescription Call
Set lement
[admin address]

First-Class
Mail
US Postage
Paid
Permit #___

<<BARCODE>>
Postal Service: Please do not mark barcode.

<<FIRST>><<LAST>>
<<CO>>
<<ADDR1>><<ADDR2>>
<<CITY>><<ST>><<ZIP>>
<<COUNTRY>>

---

A settlement has been reached in a class action lawsuit against *Walgreen Co.* ("Walgreens"). The lawsuit alleges that Walgreens made prerecorded calls to the cellular telephones of certain pharmacy customers to remind them when their prescriptions were due for refill ("Prerecorded Prescription Calls"), without their consent. Walgreens denies any wrongdoing and maintains that Prerecorded Prescription Calls are medical alerts that its customers want, and are made with their consent. The settlement does not establish who is correct, but rather is a compromise to end the lawsuit. The lawsuit is called *Kolinek v. Walgreen Co.*, Case No. 13-cv-04806, and is in the U.S. District Court for the Northern District of Illinois.

**Why am I being contacted?** Our records show you may be a "Settlement Class Member." Settlement Class Members are all individuals in the United States who received Prerecorded Prescription Calls from Walgreens called on their cellular phones. You may be entitled to payment under the settlement if you affirm that you did not consent to receive the Prerecorded Prescription Calls, but in that case you will not be eligible to receive these reminder calls on your cell phone in the future unless you provide consent for future calls (which you may do on the Claim Form).

**What can I get out of the settlement?** If you're eligible and the Court approves the settlement, you could receive a cash payment. Settlement Class Members will receive equal shares of an $11 million Settlement Fund that Walgreens has agreed to create, after the payment of expenses and fees. If the individual payments would be less than $15, you will have a second chance to exclude yourself from the settlement or Walgreens may pay you the difference up to $15.

**How do I get my payment?** Just complete and verify a short and simple Claim Form available at www.prescriptioncallsettlement.com. You can also call [toll-free number] for a paper copy of the Claim Form. *All Claim Forms must be received by [claims deadline].*

**What are my options?** You can do nothing, submit a Claim Form, comment on or object to any of the settlement terms, or exclude yourself from the settlement. If you do nothing or submit a Claim Form, you won't be able to sue Walgreens in a future lawsuit about the claims addressed in the settlement. If you exclude yourself, you won't get a payment but you'll keep your right to sue Walgreens on the issues the settlement concerns. You must contact the settlement administrator by mail to exclude yourself. You can also object to the settlement if you disagree with any of its terms. *All Requests for Exclusion and Objections must be received by [exclusion/objection deadline].*

**Do I have a lawyer?** Yes. The Court has appointed lawyers from the law firm Edelson PC as "Class Counsel." They represent you and other Settlement Class Members. The lawyers will request to be paid from the Settlement Fund. You can hire your own lawyer, but you'll need to pay your own legal fees. The Court has also chosen Robert Kolinek—a Class Member like you—to represent the Class.

**When will the Court approve the settlement?** The Court will hold a final approval hearing on [date] at [time] at the Everett McKinley Dirksen United States Courthouse, 219 S. Dearborn St., Chicago, IL 60604, Courtroom 2103. The Court will hear objections, determine if the settlement is fair, and consider Class Counsel's request for fees and expenses (up to 35% of the Settlement Fund) and an incentive award, which will be posted on the settlement website.

*Visit [www.prescriptioncallsettlement.com] for complete information.*

# Exhibit D

<u>UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS</u>

*Kolinek v. Walgreen, Co.*, No. 13-cv-4806

# If you received a prerecorded call from Walgreens on your cell phone reminding you to refill your prescription, a class action settlement may affect your rights.

*A Federal Court authorized this notice. You are not being sued. This is not a solicitation from a lawyer.*

- A Settlement has been reached in a class action lawsuit against Walgreen Co. ("Defendant" or "Walgreens"). The suit concerns whether Walgreens violated a federal law called the Telephone Consumer Protection Act by making prerecorded calls to the cellular telephones of certain pharmacy customers to remind them when their prescriptions at Walgreens were due for refill ("Prerecorded Prescription Calls"). Walgreens denies any wrongdoing and maintains that Prerecorded Prescription Calls are necessary medical alerts that its customers want, and are made with their consent and authorized by law. The Settlement does not establish who is correct, but rather is compromise to end the lawsuit.

- You are included in the Settlement if you received a Prerecorded Prescription Call on your cell phone from Walgreens. You may be entitled to a cash payment if you affirm that you received such call or calls without your consent, but in that case you will not be eligible to receive these reminder calls on your cell phone in the future unless you provide consent for future calls (which you may do on the Claim Form).

- Those who submit valid claims will be eligible to receive an equal, or *pro rata*, share of an $11 million settlement fund that Walgreens has agreed to establish. Each individual who submits a valid claim will receive a portion of this fund, after all notice and administration costs, the incentive award, and attorneys' fees have been paid. Walgreens has also agreed to implement procedures to verify the accuracy of customers' contact preferences on file and confirm that it has consent to call customers' cellular telephones.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM** | This is the only way to receive a payment. |
| **EXCLUDE YOURSELF** | You will receive no payment, but you will retain any rights you currently have to sue Defendant about the issues in this case. |
| **OBJECT** | Write to the Court explaining why you don't like the Settlement. |
| **ATTEND A HEARING** | Ask to speak in Court about the fairness of the Settlement. |

| **DO NOTHING** | You will receive no payment under the Settlement and give up your rights to sue the Defendant about the issues in this case |
|---|---|

These rights and options—**and the deadlines to exercise them**—are explained in this notice.

The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be provided only after any issues with the Settlement are resolved. Please be patient.

## BASIC INFORMATION

### 1. What is this notice and why should I read it?

A Court authorized this notice to let you know about a proposed Settlement with the Defendant. You have legal rights and options that you may act on before the Court decides whether to approve the proposed Settlement. You may be eligible to receive a cash payment as part of the Settlement. This notice explains the lawsuit, the Settlement, and your legal rights.

Judge Matthew F. Kennelly of the U.S. District Court for the Northern District of Illinois is overseeing this class action. The case is called *Kolinek v. Walgreen Co.*, Case No. 13-cv-04806. The person who filed the lawsuit, Robert Kolinek, is the Plaintiff. The company he sued, Walgreens, is the Defendant. You need not live in Illinois to get a payment under the Settlement.

### 2. What is a class action lawsuit?

A class action is a lawsuit in which one or more plaintiffs—in this case, Robert Kolinek—sue on behalf of a group of people who have similar claims. Together, this group is called a "Class" and consists of "Class Members." In a class action, the court resolves the issues for all class members, except those who exclude themselves from the class. After the Parties reached an agreement to settle this case, the Court granted preliminary approval of the Settlement and recognized it as a case that should be treated as a class action for settlement purposes.

## THE CLAIMS IN THE LAWSUIT AND THE SETTLEMENT

### 3. What is this lawsuit about?

The lawsuit alleges that Walgreens placed Prerecorded Prescription Calls to certain pharmacy customers' cellular telephones without their consent. The lawsuit alleges Walgreens violated a federal law called the Telephone Consumer Protection Act because consumers did not agree to receive these calls.

Walgreens denies these allegations and contends that it acted with customers' consent and that Prerecorded Prescription Calls are necessary medical alerts authorized by law. No court has decided who is right. The parties are entering into the Settlement to avoid time-consuming and expensive litigation. The Settlement is not an admission of wrongdoing by Walgreens. More information about the complaint in the lawsuit and the Defendant's answer can be found in the "Court Documents" section of the settlement website at www.prescriptioncallsettlement.com.

### 4. Why is there a Settlement?

The Court has not decided whether the Plaintiff or the Defendant should win this case. Instead, both sides agreed to a Settlement. That way, they can avoid the uncertainty and expense of ongoing

litigation, and Class Members will get compensation now rather than years later—if ever. The Class Representative and his attorneys ("Class Counsel") believe that the Settlement is in the best interests of the Class Members.

## WHO'S INCLUDED IN THE SETTLEMENT?

### 5. How do I know if I am in the Settlement Class?

The Court decided that this Settlement includes a Class of "all individuals in the United States to whom Walgreens placed a Prerecorded Prescription Call to their cellular telephone." A "Prerecorded Prescription Call" is any prescription refill reminder call that Walgreens made to a cellular telephone using a prerecorded voice.

If you meet the above definition, you are a Class Member. Most Class Members will receive a postcard summary of this notice in the mail.

### 6. What were the allegedly unconsented calls about?

The calls covered by this Settlement were prerecorded messages reminding customers when their prescriptions at a Walgreens pharmacy were due for refill.

## THE SETTLEMENT BENEFITS

### 7. What does the Settlement provide?

**Cash Payments to Class Members:** Defendant has agreed to create an $11 million Settlement Fund, from which Class Members who submit valid claims will receive cash payments. To get a payment, Class Members must submit a valid claim before the deadline of [claims deadline]. The amount Class Members will receive will depend on the total number of valid claims received. If the number of valid claims is low, then the amount of individual payments will go up. But if the number of valid claims is high, then the amount of individual payments will go down.

If the individual payments per Settlement Class Member would be less than $15, you will have a second chance to exclude yourself from the Settlement or Walgreens may pay you the difference up to $15. The Settlement Administrator will post additional information about the payment amount on this website if necessary.

All un-cashed checks issued to Class Members and any unclaimed money in the Settlement Fund will be equally redistributed to the other claiming Class Members if practical, or otherwise as directed by the Court.

**Change In Walgreens Practices:** As part of the Settlement, Walgreens has also agreed to implement procedures to ensure that customers have consented to receive Prerecorded Prescription Calls to their cell phones. Walgreens has agreed to use expert analysis and independent third-party data to identify which customer telephone numbers that have received Prerecorded Prescription Calls during the class period were assigned to cell phone rather than landline service. Walgreens has also agreed to implement procedures to engage with customers to confirm the accuracy of their communications preferences on file, including their consent to receive prerecorded calls on the telephone numbers included in their customer/patient profiles. Walgreens has also agreed to provide or continue to provide customers with the option to elect to receive, and unsubscribe from, Prerecorded Prescription Calls through various channels such as Walgreens.com, Walgreens' telephonic

customer service systems and by contacting Walgreens through other means.

## HOW TO GET BENEFITS

### 8. How do I make a claim?

If you want to get settlement benefits, you must fill out and submit a valid claim form. An online claim form is available on this website and can be filled out and submitted online. If you received a postcard in the mail about the Settlement, the postcard will tell you how to receive a claim form. You can also get a paper claim form by calling [toll-free number]. We encourage you to submit a claim online. It's faster and it's free.

The Claim Form requires you to provide the following information: (1) your name and address, (2) the cellular telephone number at which you received Prerecorded Prescription Call(s), and (3) a sworn statement that you received the call or calls without your consent. If you affirm that you received the calls without your consent, you will not be eligible to receive these reminder calls on your cell phone in the future unless you provide consent for future calls, which you can also do on the Claim Form.

### 9. When will I get my payment?

The hearing to consider the fairness of the Settlement is scheduled for [Final Approval Hearing Date]. If the Court approves the Settlement, eligible Class Members whose claims were approved by the Settlement Administrator will be sent a check. Please be patient. All checks will expire and become void 90 days after they are issued.

## THE LAWYERS REPRESENTING YOU

### 10. Do I have a lawyer in this case?

Yes, the Court has appointed lawyers Jay Edelson, Rafey S. Balabanian, Ryan D. Andrews, and Benjamin H. Richman of Edelson PC as the attorneys to represent you and other Class Members. These attorneys are called "Class Counsel." In addition, the Court appointed Plaintiff Robert Kolinek to serve as the Class Representative. He's a class member like you. Class Counsel can be reached by calling 1-866-354-3015.

### 11. Should I get my own lawyer?

You don't need to hire your own lawyer because Class Counsel is working on your behalf. But if you want your own lawyer, you will have to pay that lawyer. For example, you can ask your lawyer to appear in Court for you if you want someone other than Class Counsel to represent you.

### 12. How will the lawyers be paid?

Class Counsel will ask the Court for attorneys' fees and expenses of up to 35% of the Settlement Fund and will also request an award of $5,000 for the Class Representative. The Court will determine the proper amount of any attorneys' fees and expenses to award Class Counsel and the proper amount of any award to the Class Representative. The Court may award less than the amounts requested. Any money not awarded will stay in the Settlement Fund to pay Class Members.

## YOUR RIGHTS AND OPTIONS

**13. What happens if I do nothing at all?**

If you do nothing, you will receive no payment under the Settlement, you will be in the Class, and if the Court approves the Settlement, you will also be bound by all orders and judgments of the Court. Unless you exclude yourself, you won't be able to start a lawsuit or be part of any other lawsuit against the Defendant for the claims or legal issues being resolved by this Settlement.

**14. What happens if I ask to be excluded?**

If you exclude yourself from the Settlement, you will receive no payment under the Settlement. However, you will not be in the Class. You will keep your right to start your own lawsuit against Defendant for the same legal claims made in this lawsuit. You will not be legally bound by the Court's judgments related to the Class and the Defendant in this class action.

**15. How do I ask to be excluded?**

You can ask to be excluded from the Settlement. To do so, you must send a letter stating that you want to be excluded from the Settlement in *Kolinek v. Walgreen Co.*, Case No. 13-cv-04806. Your letter must also include your (1) name and address, (2) the cellular telephone number at which you received the Prerecorded Prescription Call(s), (3) a statement that you wish to be excluded from the Class, and (4) your signature. You must mail your exclusion request no later than **[objection / exclusion deadline]** to:

> *Kolinek v. Walgreen Co.* Settlement Administrator
> P.O. Box 0000
> City, ST 00000-0000

You can't exclude yourself on the phone or by email.

**16. If I don't exclude myself, can I sue the Defendant for the same thing later?**

No. Unless you exclude yourself, you give up any right to sue the Defendant for the claims being resolved by this Settlement.

**17. If I exclude myself, can I get anything from this Settlement?**

No. If you exclude yourself, do not submit a Claim Form to ask for a payment.

**18. How do I object to the Settlement?**

If you do not exclude yourself from the Class, you can object to the Settlement if you don't like any part of it. You can give reasons why you think the Court should deny approval by filing an objection. To object, you must file a letter or brief with the Court stating that you object to the Settlement in *Kolinek v. Walgreen Co.*, Case No. 13-cv-0480 no later than **[objection / exclusion deadline]**. Your objection should be sent to the United States District Court for the Northern District of Illinois at the following address:

> Clerk of Court
> Everett McKinley Dirksen United States Courthouse
> 219 South Dearborn Street
> Chicago, IL 60604

QUESTIONS? CALL 1-**[###-###-###]** TOLL FREE OR VISIT WWW.PRESCRIPTIONCALLSETTLEMENT.COM

If you are represented by a lawyer, the lawyer must file your objection through the Court's CM/ECF system. Include your lawyer's contact information in the objection.

The objection must be in writing and include the case name *Kolinek v. Walgreen Co.*, Case No. 13-cv-04806. Your objection must be personally signed and include the following information: (1) your name and address, (2) all arguments, citations, and evidence supporting your objection, including copies of any documents you rely on, (3) a statement that you are a Class Member, and (4) the cellular telephone number at which you received the Prerecorded Prescription Call(s). If you wish to appear and be heard at the hearing on the fairness of the Settlement, you or your attorney must say so in your written objection.

In addition to filing your objection with the Court, you must send copies of your objection and any supporting documents to both Class Counsel and the Defendant's lawyers at the addresses listed below:

| Class Counsel | Defense Counsel |
|---|---|
| Benjamin H. Richman | Bradley J. Andreozzi |
| EDELSON PC | DRINKER BIDDLE & REATH LLP |
| 350 North LaSalle Street | 191 North Wacker Drive |
| Suite 1300 | Suite 3700 |
| Chicago, IL 60654 | Chicago, IL 60606 |

Class Counsel will file with the Court and post on the settlement website its request for attorneys' fees and incentive award on [date 2 weeks before objection deadline].

### 19. What's the difference between objecting and excluding myself from the Settlement?

Objecting simply means telling the Court that you don't like something about the Settlement. You can object only if you stay in the Class. Excluding yourself from the Class is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

### 20. When and where will the Court hold a hearing on the fairness of the Settlement?

The Court will hold the final fairness hearing at [time] on [date], before the Honorable Matthew F. Kennelly at the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, IL 60604 in Courtroom 2103. The purpose of the hearing is for the Court to determine whether the Settlement is fair, reasonable, and adequate, and in the best interests of the Class. At the hearing, the Court will hear any objections and arguments concerning the fairness of the proposed Settlement, including those related to the amount requested by Class Counsel for attorneys' fees and expenses and the incentive award to the Class Representative.

**Note:** The date and time of the fairness hearing are subject to change by Court Order. Any changes will be posted at the settlement website, www.prescriptioncallsettlement.com or through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.ilnd.uscourts.gov.

**21. Do I have to come to the hearing?**

No. Class Counsel will answer any questions the Court may have. But you are welcome to come to the hearing at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as your written objection was filed or mailed on time and meets the other criteria described in the Settlement, the Court will consider it. You may also pay a lawyer to attend, but you don't have to.

**22. May I speak at the hearing?**

Yes. If you do not exclude yourself from the Settlement Class, you may ask the Court for permission to speak at the hearing concerning any part of the proposed Settlement. If you filed an objection (*see* Question 18 above) and intend to appear at the hearing, you must state your intention to do so in your objection.

## GETTING MORE INFORMATION

**23. Where can I get additional information?**

This notice summarizes the proposed Settlement. For the precise terms and conditions of the settlement, please see the Settlement Agreement available at www.prescriptioncallsettlement.com, contact Class Counsel at 1-866-354-3015, access the Court docket in this case through the Court's PACER system at https://ecf.ilnd.uscourts.gov, or visit the office of the Clerk of the Court for the United States District Court for the Northern District of Illinois, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, IL 60604 between 8:30 a.m. and 4:30 p.m., Monday through Friday, excluding Court holidays.

**PLEASE DO <u>NOT</u> CONTACT THE COURT, THE JUDGE, OR THE DEFENDANT WITH QUESTIONS ABOUT THE SETTLEMENT OR CLAIMS PROCESS.**