# EXHIBIT A

**Before the**
**Federal Communications Commission**
**Washington, DC 20554**

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| American Association of Healthcare Administrative Management Petition for Expedited Declaratory Ruling and Exemption Regarding Non-Telemarketing Healthcare Calls | ) ) ) ) | CG Docket No. _____ |
| | ) | |
| Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 | ) ) | CG Docket No. 02-278 |

## PETITION FOR EXPEDITED DECLARATORY RULING AND EXEMPTION

Mark W. Brennan
Hogan Lovells US LLP
555 Thirteenth Street, NW
Washington, DC 20004
Tel: (202) 637-6409
Fax: (202) 637-5910
mark.brennan@hoganlovells.com

*Counsel to the American Association of Healthcare Administrative Management*

October 21, 2014

## TABLE OF CONTENTS

Page

I. INTRODUCTION AND SUMMARY ................................................................... - 1 -

II. HEALTHCARE PROVIDERS NEED TO PLACE TIME-SENSITIVE CALLS ......... - 2 -

III. THE COMMISSION SHOULD CONFIRM THAT PROVIDING A TELEPHONE NUMBER TO A HEALTHCARE PROVIDER DEMONSTRATES "PRIOR EXPRESS CONSENT" FOR HEALTHCARE CALLS TO THAT NUMBER BY OR ON BEHALF OF THE HEALTHCARE PROVIDER ............................................................................................. - 4 -

    A. The Provision of a Telephone Number to the Healthcare Provider Constitutes "Prior Express Consent" for Healthcare Calls to that Number ......... - 5 -

    B. Facilitating Non-Telemarketing, Healthcare Calls to Wireless Numbers is in the Public Interest. ............................................................................ - 7 -

IV. THE COMMISSION SHOULD ALSO EXEMPT FROM THE "PRIOR EXPRESS CONSENT" REQUIREMENT HEALTHCARE CALLS THAT ARE NOT CHARGED TO THE CALLED PARTY. ........................................................ - 9 -

V. CONCLUSION ................................................................................................. - 12 -

Before the
**Federal Communications Commission**
Washington, DC 20554

| | |
|---|---|
| In the Matter of ) | |
| ) | |
| American Association of Healthcare ) | CG Docket No. _____ |
| Administrative Management Petition for ) | |
| Expedited Declaratory Ruling and Exemption ) | |
| Regarding Non-Telemarketing Healthcare Calls ) | |
| ) | |
| Rules and Regulations Implementing the ) | CG Docket No. 02-278 |
| Telephone Consumer Protection Act of 1991 ) | |

## PETITION FOR EXPEDITED DECLARATORY RULING AND EXEMPTION

### I. INTRODUCTION AND SUMMARY

The American Association of Healthcare Administrative Management ("AAHAM"), pursuant to Section 1.2 of the Federal Communications Commission's ("Commission" or "FCC") rules,[1] respectfully submits this Petition for Expedited Declaratory Ruling and Exemption ("Petition") regarding the applicability of the Telephone Consumer Protection Act ("TCPA")[2] and the FCC's TCPA rules[3] to calls placed by or on behalf of healthcare providers.[4] Specifically, AAHAM requests that the Commission confirm that the provision of a telephone number by an individual to a healthcare provider constitutes "prior express consent" for non-telemarketing, healthcare calls[5] to that telephone number by or on behalf of the healthcare

---

[1] 47 C.F.R. § 1.2.

[2] 47 U.S.C. § 227.

[3] 47 C.F.R. § 64.1200.

[4] For purposes of this Petition, "healthcare provider" includes hospitals, emergency care centers, medical physician or service offices, poison control centers, and other healthcare professionals.

[5] "Healthcare calls" for purposes of this petition are described on pages 2-3.

provider.[6] In addition, AAHAM asks the Commission to exempt from the TCPA's "prior express consent" requirement certain non-telemarketing, healthcare calls that are "not charged to the called party."

## II. HEALTHCARE PROVIDERS NEED TO PLACE TIME-SENSITIVE CALLS

AAHAM is a leading national, nonprofit organization that represents a broad-based constituency of healthcare administrative professionals. Founded in 1968 as the American Guild of Patient Account Management, AAHAM has grown into a national membership association with 31 local chapters nationwide. AAHAM serves as a resource center for its members for information, education and advocacy in the areas of reimbursement, admission and registration, data management, medical records and patient relations. AAHAM actively represents the interests of healthcare administrative management professionals through a comprehensive program of legislative and regulatory monitoring and its participation in industry groups. As such, AAHAM has been a leader in shaping the future of healthcare administrative management for nearly 50 years.

AAHAM's members and other healthcare providers (and entities acting on their behalf) may contact patients by telephone regarding matters including, but not limited to:

- Appointment and exam confirmations and reminders;
- Wellness checkups;
- Hospital pre-registration instructions;
- Pre-operative instructions;
- Lab results;
- Post-discharge follow-up intended to prevent readmission;

---

[6] For purposes of this Petition, "calls" includes both voice calls and text messages. As discussed below, AAHAM also asks the Commission to confirm that for healthcare calls subject to HIPAA protections, the provision of a telephone number to a healthcare provider establishes "prior express consent" under the TCPA for calls by or on behalf of the "covered entity" as well as its "business associates."

- 2 -

- Prescription notifications;
- Home healthcare instructions;
- Available payment options;
- Insurance coverage outreach and eligibility (*e.g.*, to notify a patient that insurance coverage or payment is available for a service that has been provided);
- Account communications and payment notifications;
- Social Security disability eligibility; and
- "Health care messages" as defined by the Health Insurance Portability and Accountability Act ("HIPAA").[7]

For purposes of this Petition, these calls are referred to collectively as "healthcare calls."

Healthcare providers place these healthcare calls (many of which are time-sensitive) to patients to support and enhance the healthcare services provided and to ensure that patients have all of the information necessary to make well-informed decisions regarding their healthcare. The calls are targeted to specific individuals (patients) for particular purposes, and there is no need or incentive for healthcare providers to contact anyone other than the patient, nor is there any benefit to doing so.

Healthcare providers also must be able to utilize advanced, efficient calling solutions and standardized calling methods to facilitate comprehensive patient care. For example, automated calling technologies can help ensure consistent, reliable, and accurate communications with patients. They also reduce the chance of human dialing errors that could interfere with the delivery of healthcare or other sensitive information. Manual dialing, on the other hand, is more time-intensive (and error-prone), and it can ultimately increase healthcare costs.

---

[7] HIPAA's privacy rule defines "health care messages" as calls regarding the "care, services, or supplies related to the health of an individual," including but not limited to: "(1) preventive, diagnostic, therapeutic, rehabilitative, maintenance, or palliative care, and counseling, service, assessment, or procedure with respect to the physical or mental condition, or functional status, of an individual or that affects the structure or function of the body; and (2) sale or dispensing of a drug, device, equipment, or other item in accordance with a prescription." *See* 45 C.F.R. § 160.103.

However, a number of healthcare providers, including some who employ AAHAM members, have been subject to class action litigation under the TCPA. The significant and growing litigation risk from such calls – and the potential for devastating TCPA class action damage awards – threatens healthcare providers that are earnestly and in good faith attempting to meet their TCPA obligations. It also has the potential, contrary to Congress's and the Commission's TCPA goals, to chill the provision of time-sensitive, non-telemarking healthcare messages.

### III. THE COMMISSION SHOULD CONFIRM THAT PROVIDING A TELEPHONE NUMBER TO A HEALTHCARE PROVIDER DEMONSTRATES "PRIOR EXPRESS CONSENT" FOR HEALTHCARE CALLS TO THAT NUMBER BY OR ON BEHALF OF THE HEALTHCARE PROVIDER.

The TCPA requires parties to obtain "prior express consent" to place non-emergency calls using automatic telephone dialing systems ("autodialers") or artificial or prerecorded voice messages to, *inter alia*, wireless telephone numbers.[8] Parties also must obtain "prior express consent" to place artificial or prerecorded voice calls and messages to residential telephone numbers, subject to certain exemptions.[9]

While neither the TCPA nor the Commission's TCPA rules expressly defines "prior express consent," both courts and the Commission itself have indicated that the provision of a telephone number within the context of a transaction constitutes "prior express consent." The Commission has also confirmed that third parties may place calls on behalf of a party that obtains "prior express consent." In addition, the Commission has affirmed that it is in the public interest to facilitate non-telemarketing healthcare calls. Therefore, AAHAM requests that the Commission confirm that providing a telephone number to a healthcare provider constitutes

---

[8] 47 U.S.C. § 227(b)(1)(A); *see also* 47 C.F.R. § 64.1200(a)(1).
[9] 47 U.S.C. § 227(b)(1)(B); *see also* 47 C.F.R. § 64.1200(a)(2).

- 4 -

"prior express consent" for healthcare calls to that number by or on behalf of the healthcare provider. Consistent with this approach, the Commission should also confirm that for healthcare calls subject to HIPAA protections, the provision of a telephone number to a healthcare provider establishes "prior express consent" under the TCPA for calls by or on behalf of the "covered entity" as well as its "business associates."

### A. The Provision of a Telephone Number to the Healthcare Provider Constitutes "Prior Express Consent" for Healthcare Calls to that Number.

Prior Commission decisions and court precedent support a declaratory ruling that the provision of a wireless telephone number to a healthcare provider constitutes "prior express consent" for non-telemarketing calls to that telephone number by or on behalf of the healthcare provider regarding the services provided to the individual by (or on behalf of) the provider.

The Commission stated in the *1992 TCPA Order* that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary."[10] The Commission also found in the *2008 ACA Declaratory Ruling* that a consumer who provides his or her wireless telephone number on a credit application, absent instructions to the contrary, has given "prior express consent" to receive autodialed or prerecorded message calls "regarding the debt" at that number, including calls from a debt collector acting on behalf of the creditor.[11] The Commission further clarified in the *2014 GroupMe Declaratory Ruling* that the *2008 ACA Declaratory Ruling*

---

[10] See *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CC Docket No. 92-90, Report and Order, 7 FCC Rcd 8752, 8769 ¶ 31 (1992) ("*1992 TCPA Order*").

[11] See *Request of ACA International for Clarification and Declaratory Ruling*, CG Docket No. 02-278, Declaratory Ruling, 23 FCC Rcd 559, 564-65 ¶¶ 9-10 (2008) ("*2008 ACA Declaratory Ruling*"); see also *Mais v. Gulf Cost Collection Bureau, Inc.*, Case No. 13-14008, at 22 (11th Cir. Sept. 29, 2014) (stating that the *2008 ACA Declaratory Ruling* "clarified the meaning of 'prior express consent' for all 'creditors and collectors when calling wireless telephone numbers to recover payments for goods and services received by consumers'").

"ma[d]e clear that consent to be called at a number in conjunction with a transaction extends to a *wide range* of calls 'regarding' that transaction, even in at least some cases where the calls were made by a third party."[12] Further clarifying who may make calls related to the services provided, in 2005 the Commission affirmed that State Farm's agents could rely on State Farm's existing business relationship with policyholders to place otherwise restricted calls to those policyholders on behalf of State Farm.[13]

Multiple courts have also held that the provision of a wireless telephone number to a healthcare provider should constitute "prior express consent" for non-telemarketing healthcare calls. For example, in *Penn v. NRA Group*, the court held that by providing his cell phone number on a hospital registration form, the plaintiff had expressly consented to being called on that number by debt collectors working on behalf of the hospital to collect on an unpaid bill arising from that registration.[14] In addition, in *Hudson v. Sharp Healthcare*, the court affirmed that the TCPA does not require calls be made for the "exact purpose for which the number was provided" but that the provision of a wireless number to a healthcare provider constitutes express consent to be called on that number for any call "bear[ing] a relation to the product or service for which the number was provided."[15] As another example, the court in *Elkins v. Medco* held that by providing her cell phone number on her employer's prescription benefit form and certifying that the number was her home and contact number, the plaintiff had given her express consent to

---

[12] *GroupMe, Inc./Skype Communications S.A.R.L. Petition for Expedited Declaratory Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, 29 FCC Rcd 3442 ¶ 11 (2014) (emphasis added) ("*2014 GroupMe Declaratory Ruling*").

[13] *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of State Farm Mutual Automobile Insurance Company for Clarification and Declaratory Ruling*, Declaratory Ruling, 20 FCC Rcd 13664 ¶ 1 (2005).

[14] *Penn v. NRA Group, LLC, et al*, No. JKB-13-0785, 2014 WL 2986787, at *4 (D. Md. July 1, 2014).

[15] *Hudson v. Sharp Healthcare*, No. 13-CV-1807-MMA, 2014 WL 2892290, at *6 (S.D. Cal. June 25, 2014) (quoting *Olney v. Job.com, Inc.*, No. 1:12-CV-01724-LJO-SKO, 2014 WL 1747674, at *7 (E.D. Cal. May 1, 2014).

be contacted by the provider of that benefit, Medco, when they discovered that she was not taking full advantage of the benefits available to her.[16]

The Eleventh Circuit also recently expressly confirmed that the FCC's *2008 ACA Declaratory Ruling* applies in the healthcare context.[17] As part of its decision, it concluded as a matter of law that the provision of the telephone number to the healthcare provider (in that case, a hospital admissions form) demonstrated "prior express consent" under the TCPA for calls by and on behalf of the healthcare provider.

AAHAM also urges the Commission to consider healthcare situations in which the patient may be incapacitated and unable to provide a telephone number directly to the healthcare provider. In these limited circumstances, such as when a third-party intermediary provides a telephone number to the healthcare provider for an incapacitated patient arriving at the emergency room, and healthcare services are provided to the patient, such provision of the patient's number should constitute "prior express consent" for healthcare calls to that number unless and until the patient requests otherwise.[18]

### B. Facilitating Non-Telemarketing, Healthcare Calls to Wireless Numbers is in the Public Interest.

Granting the Petition is also consistent with Congress's and the FCC's TCPA goals and would not permit any new telemarketing calls. Congress intended for the TCPA to "target[] calls that are the source of the tremendous amount of consumer complaints – telemarketing calls placed to the home."[19] Specifically, the TCPA restricts calls that cause an invasion of privacy,

---

[16] *Elkins v. Medco Health Solutions, Inc.*, No. 4:12 CV 2141 TIA, 2014 WL 1663406, at *7 (E.D. Mo. Apr. 25, 2014).

[17] *See Mais*, Case No. 13-14008.

[18] *See id.* (finding that Mais's wife provided consent for emergency room treatment on behalf of her ill husband).

[19] *See* 137 Cong. Rec. S9840-02 (daily ed. July 11, 1991) (statement of Sen. Hollings).

increase risks to public safety, or improperly shift marketing costs to consumers. Non-telemarketing, informational healthcare calls do not involve solicitation or advertising, do not contact random or sequential numbers, and do not endanger public safety by tying up blocks of telephone lines.

In 2012, the Commission specifically recognized the benefits of healthcare calls and the public interest in ensuring continued consumer access to healthcare-related information.[20] For example, it found that certain healthcare related-calls subject to HIPAA "do not tread heavily upon the consumer privacy interests [that the TCPA was intended to protect] because these calls are placed by the consumer's healthcare provider to the consumer and concern the consumers' health."[21] The Commission also acknowledged that "wireless services offer access to information that consumers find highly desirable."[22] It highlighted the benefits of informational calls to wireless telephone numbers and affirmed that it did not want to "impede" or "unnecessarily restrict" these "highly desirable" calls.[23] As the Commission has recognized, the number of households who rely exclusively on wireless telephones has increased significantly in the last five years, underscoring further the need to contact consumers on their wireless

---

[20] See *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 27 FCC Rcd 1830 (2012).

[21] *Id.* ¶ 63.

[22] *Id.* ¶ 29.

[23] *Id.* ¶¶ 21, 29.

telephones.[24] Recent studies have reported that approximately 40% of U.S. households are now "wireless-only."[25]

This Petition seeks only a narrow clarification of the TCPA and the FCC's TCPA rules to prevent a perpetual stream of devastating liability for non-telemarketing, healthcare calls. It does not seek to disturb the requirement for demonstrable "prior express consent" or to facilitate any telemarketing calls. Restricting healthcare calls, on the other hand, would unreasonably limit the ability of AAHAM members and other healthcare providers to deliver effective and efficient healthcare services to patients.

## IV. THE COMMISSION SHOULD ALSO EXEMPT FROM THE "PRIOR EXPRESS CONSENT" REQUIREMENT HEALTHCARE CALLS THAT ARE NOT CHARGED TO THE CALLED PARTY.

The Commission is authorized under the TCPA to exempt, from the restriction on autodialed and prerecorded calls and messages to wireless telephone numbers, such calls and messages "that are not charged to the called party, subject to such conditions as the Commission may prescribe as necessary in the interest of the privacy rights the provision is intended to protect." Non-telemarketing healthcare calls, as well as healthcare calls subject to HIPAA, are already exempt from the TCPA's restriction on prerecorded voice message calls to residential telephone numbers,[26] and AAHAM requests that the Commission continue to recognize the

---

[24] *See, e.g., Cargo Airline Association Petition for Expedited Declaratory Ruling Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Order, 29 FCC Rcd 3432 ¶ 20 (2014). ("*Cargo Airline Association Order*") (*citing the Implementation of Section 6002(b) of the Omnibus Budget Reconciliation Act of 1993 Annual Report and Analysis of Competitive Market Conditions With Respect to Mobile Wireless, Including Commercial Mobile Services*, WT Docket 11-186, 28 FCC Rcd 3700, 3725 (2013)).

[25] CTIA Annual Wireless Industry Survey, *available at* http://www.ctia.org/your-wireless-life/how-wireless-works/annual-wireless-industry-survey/; Wireless Substitution: Early Release of Estimates from the National Health Interview Survey, July – December 2013, *available at* http://www.cdc.gov/nchs/data/nhis/earlyrelease/wireless201407.pdf.

[26] *See* 47 C.F.R. § 64.1200(a)(3)(iii) (providing an exemption for calls made for a commercial purpose but that do not include or introduce an unsolicited advertisement or constitute a telephone solicitation); *see*

- 9 -

public interest in receiving such calls by providing a limited exemption from the restriction on autodialed and prerecorded voice calls and messages to wireless telephone numbers.

As discussed above, facilitating consumer access to essential healthcare information is in the public interest and consistent with the goals of the TCPA. The healthcare calls described in this Petition do not involve any telemarketing, solicitation, or advertising. Nor do they trigger the other concerns that Congress was attempting to address through the TCPA, such as dialing random or sequential numbers and endangering public safety by tying up blocks of telephone lines.[27] Instead, the healthcare calls are placed to specific patients for particular healthcare purposes.

In the *Cargo Airline Association Order*, the Commission granted the Cargo Airline Association's ("CAA") exemption request subject to certain conditions and affirmed that package delivery notifications are calls within the normal course of business that consumers would welcome and expect.[28] The healthcare calls regarding the services provided by AAHAM's members provide vital, time-sensitive information that patients not only welcome and expect but require to make informed decisions about their healthcare. Moreover, a number of studies that have shown that placing calls to wireless phones can be an effective strategy to improving consumers' health, which is especially critical in light of the significant barriers faced in the United States for the delivery of high-quality healthcare.[29] For example, calls to wireless

---

*also* 47 C.F.R. § 64.1200(a)(2) (providing an exemption for calls subject to HIPAA); 7 C.F.R. § 64.1200(f)(14)(ii) (providing an exemption for calls to persons with whom the caller has an established business relationship at the time the call is made).

[27] *See, e.g.*, S. Rep. No. 102-178, at 1-2 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1968, 1969; H.R. Rep. No. 102-317, at 10 (1991); 137 Cong. Rec 35303 (1991); 137 Cong. Rec. 30821 (1991).

[28] *2014 Cargo Airline Association Order* ¶ 19.

[29] *See, e.g.*, Comments of America's Health Insurance Plans, CG Docket No. 02-278, 4-5 (filed Mar. 10, 2014) ("AHIP Comments").

telephones can be used to improve adherence with controlling blood pressure in patients with hypertension, and for prompting women to participate in follow-up treatments after irregular pap smears.[30] In addition, healthcare providers are increasingly subject to requirements to improve healthcare outcomes and overall quality of service. Outreach to wireless telephone numbers provided by consumers is an important tool in meeting these requirements and improving the overall delivery of healthcare services while keeping healthcare costs down.[31]

Healthcare providers are capable of providing healthcare calls that are "not charged" to consumers by, among other options, using third-party solutions identified by CAA that can be deployed for subscribers of the four nationwide wireless carriers.[32] AAHAM also supports the following conditions for each free-to-end-user call or text message utilizing any exemption for healthcare calls, consistent with the conditions that the Commission adopted in the *Cargo Airline Association Order*[33]:

1. A call or text message must be sent, if at all, only to the telephone number provided for the patient;
2. Calls and text messages must identify the name of the healthcare provider and include contact information for the healthcare provider; for voice calls, these disclosures would need to be made at the beginning of the call;
3. Calls and text messages must not include any telemarketing, solicitation, or advertising content;
4. Text messages and prerecorded calls must be concise, generally one minute or less in length for voice calls and one message of 160 characters or less in length for text messages;
5. Each healthcare provider shall send or place only one call or text message per day, up to a maximum of three calls or text messages combined per week from a specific healthcare provider;

---

[30] *See id.*

[31] *See id.* at 6.

[32] *See* CAA Ex Parte Presentation, CG Docket No. 02-278, at 2 (Nov. 19, 2013).

[33] *Cargo Airline Association Order* ¶ 18.

- 11 -

- 12 -

6. Healthcare providers relying on this exemption must offer parties the ability to opt out of receiving future autodialed or prerecorded healthcare calls and text messages and must honor the opt-out requests within a reasonable time from the date such request is made, not to exceed thirty days; and

7. Each call or text message must include information on how to opt out of future autodialed or prerecorded healthcare calls; voice calls that could be answered by a live person must include an automated, interactive voice- and/or key press-activated opt-out mechanism that enables the called person to make an opt-out request prior to terminating the call; voice calls that could be answered by an answering machine or voice mail service must include a toll-free number that the consumer can call to opt out of future healthcare calls; text messages must include the ability for the recipient to opt out by replying "STOP."

## V. CONCLUSION

For the foregoing reasons, AAHAM urges the Commission to confirm that the provision of a telephone number by a patient to a healthcare provider demonstrates "prior express consent" for healthcare calls to the patient by or on behalf of the healthcare provider. In addition, the Commission should provide a limited exemption from the "prior express consent" requirement for healthcare calls and text messages that are not charged to the called party.

Respectfully submitted,

*/s/ Mark W. Brennan*

Mark W. Brennan
Hogan Lovells US LLP
555 Thirteenth Street, NW
Washington, DC 20004
Tel: (202) 637-6409
Fax: (202) 637-5910
mark.brennan@hoganlovells.com
*Counsel to the American Association of
Healthcare Administrative Management*

October 21, 2014