```
 1                IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3

 4    ROBERT KOLINEK,  et al.,          )   Docket No. 13 C 4806
                                        )
 5                       Plaintiffs,    )
                                        )
 6               vs.                    )
                                        )
 7    WALGREEN CO., an Illinois         )   Chicago, Illinois
      Corporation,                      )   August 12, 2015
 8                                      )   9:30 o'clock a.m.
                          Defendant.
 9

10              TRANSCRIPT OF PROCEEDINGS - MOTION
            BEFORE THE HONORABLE MATTHEW F. KENNELLY
11

12    APPEARANCES:

13

14    For the Plaintiffs:    EDELSON PC
                             BY:  MR. RAFEY S. BALBANIAN
15                                MR. BENJAMIN HARRIS RICHMAN
                             350 North LaSalle Street, Suite 1300
16                           Chicago, IL  60654
                             (312) 589-6370
17

18    For the Objectors:     HOWE LAW LLC
                             BY:  MR. ARTHUR J. HOWE
19                           155 North Wacker Drive, Suite 450
                             Chicago, IL  60606
20                           (312) 600-8336

21

22

23    Court Reporter:        MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
                             Official Court Reporter
24                           219 S. Dearborn Street, Suite 2102
                             Chicago, Illinois  60604
25                           (312) 435-5639
```

1  (The following proceedings were had in open court:)

2  THE CLERK:  13 C 4806, Kolinek v. Walgreen.

3  MR. BALBANIAN:  Good morning, your Honor.  Rafey

4  Balbanian and Ben Richman on behalf of the plaintiff Kolinek

5  and the settlement class.

6  MR. HOWE:  Arthur Howe on behalf of the class

7  objectors, the Cozby group.  In addition --

8  THE COURT:  You have a motion to file an appearance

9  on file somewhere in here.

10  MR. HOWE:  Yes, I do.

11  THE COURT:  That's granted.  That's document number

12  141.  It's a motion to substitute attorneys.

13  MR. HOWE:  Your Honor, if I may, Mr. McDonald, who is

14  lead counsel for the Franz objector, yesterday afternoon

15  requested that I appear on his behalf as well as local

16  counsel.  I will be filing a motion to substitute on his

17  behalf as well.

18  THE COURT:  Your oral motion to substitute on behalf

19  of whom?

20  MR. HOWE:  The Franz objector, F-r-a-n-z.

21  THE COURT:  Do you know his first name?

22  MR. HOWE:  Yes, Allen (sic) McDonald is the counsel.

23  THE COURT:  Just the name of the person.

24  MR. HOWE:  I believe it's --

25  MR. BALBANIAN:  It's Melinda, your Honor.

1    MR. HOWE:  Melinda.

2    THE COURT:  On behalf of Melinda Franz is granted.

3  You don't have to file a motion.  You'll get the order.  Just

4  file your appearance.

5    MR. HOWE:  Thank you.

6    THE COURT:  What I've got is there's two motions to

7  -- basically for protective orders or to quash or whatever

8  they're called relating to discovery, right?

9    MR. HOWE:  Yes, your Honor.

10    THE COURT:  So I guess -- you know, it doesn't happen

11  all that often, but I guess I have to say that I am a little

12  bit concerned that, you know, given the stage that the case is

13  at, that this discovery would have just gone out without

14  somebody coming in to ask first because we are talking about

15  unnamed class members here.  I understand that they have

16  stepped forward because there have been objections filed, but

17  I am not sure you did this the right way.

18    MR. BALBANIAN:  I understand.

19    THE COURT:  So what are we talking about?

20    MR. BALBANIAN:  I think that's my only weakness,

21  frankly, on this issue.  It didn't occur to me, your Honor,

22  that I'd have to seek leave of Court.  I understand the

23  Court's discussion I think with class counsel in the Southwest

24  case, but, frankly, I just didn't know the context of that.  I

25  believe in that case, they included a provision about

1  discovery in their preliminary approval order.

2      THE COURT:  Right, which ended up being a bone of

3  contention actually later on.

4      MR. BALBANIAN:  Okay.  There wasn't language in that

5  in this case intentionally or unintentionally.  As far as we

6  were concerned, discovery was open.  We had met and conferred

7  with --

8      THE COURT:  There never was a discovery cutoff date

9  because the case settled in a relatively early stage.

10     MR. BALBANIAN:  Yes, and discovery was ongoing

11  between us and Walgreens, quite frankly.  We had met and

12  conferred with Walgreens' counsel prior to issuing this

13  discovery on the objectors.  I want to be clear.  They make

14  the statement that this is, you know, a vendetta thing against

15  all objectors.  We didn't issue discovery against all the

16  objectors.  There's a number of objectors that we have

17  completely left alone of course because they have a right to

18  object.  Class members have a right to object.  That's not the

19  issue.

20     The issue is that certain objectors have a past of

21  being professional objectors and lodging frivolous objections

22  in order to extract the payout, and in just -- with respect to

23  these motions before the Court, you only have to look so far

24  as the Oldhamm and Hughes objectors, who aren't even class

25  members, and we alerted their counsel of that.  Mr. Brawn

1　(phonetic) -- excuse me, counsel is acting as local counsel

2　here today, we alerted their attorney of that, and lo and

3　behold, after a while, he withdrew the objection.  And

4　unfortunately, this is somewhat of the kind of, I don't know,

5　nastier side of class actions because I have had many cases

6　where we have sought discovery against certain professional

7　objectors and I have even had class members call me and say,

8　hey, guess what, that objection that was filed in my name, I

9　had no idea it was going to be filed.

10　　　　So this -- a couple of points I want to make about

11　kind of the timing and everything and that this was meant to

12　harass or intimidate.  I don't view the approval process as

13　something that would have been finished on the August 5th date

14　that we just had.  I was quite certain that given the

15　objections and whatnot, and even in the absence of those

16　objections, I am familiar with this Court's process, I didn't

17　think final approval is just a one-day type thing.  I am

18　building a record.

19　　　　They have made pretty clear that no matter what, it's

20　going up.  It's going up, and that's fine.  It's going to go

21　up, but I get to make a record if it goes up.  I am going to

22　move for an appeal bond.

23　　　　When it goes up, I am not -- not that I am not, but

24　they are going to make the argument that at that point, I

25　can't ask this Court for discovery because this Court has been

1    divested of jurisdiction.

2          THE COURT:  Right.

3          MR. BALBANIAN:  That actually same exact scenario

4    happened to me in the Netflix case that was pending before

5    Judge Davila.  It was a huge class too, 62 million people.  It

6    got like a hundred objections, maybe 20 professionals, the

7    case went up on appeal, but I hadn't issued discovery and I

8    had to go back to the district court and ask for it, and I was

9    given that discovery, but guess what, everybody made the

10   argument that I wasn't even allowed to go back to the district

11   court.  For not seeking leave from this Court, I understand

12   the Court's concern.

13         THE COURT:  Well, we are past that now.  Okay.  So

14   you've explained it to me.

15         I'm looking at the attachment to the Franz motion.

16   Basically, it's essentially a six-item or seven- or eight-item

17   request for documents.  It's for retainer agreements relating

18   to this case; retainer agreements that the particular objector

19   had with the same lawyers in other cases; records showing that

20   you got one of the calls that's at issue, so that would be a

21   class membership thing I'm assuming; non-privileged documents

22   that support your objection, we will come back to that;

23   non-privileged documents including correspondence between you

24   and any person other than your attorneys that relate to this

25   action; so, in other words, if they wrote to anybody else;

1   correspondence with other objectors; and then stuff that you

2   may have filed in other cases in which you acted as an

3   objector; and then correspondence you had with the lawyers

4   before the existence of an attorney-client relationship.

5           Okay.  So let me add -- Mr. Howe, let me ask you.

6   Just putting aside questions of timing, putting aside

7   questions of did they give proper notice under Rule 45,

8   because that's a curable defect, talk to me about the

9   substance of what's being asked for; and if you think that

10  it's not appropriate, tell me why.

11          MR. HOWE:  Two points, your Honor.  First, the

12  Seventh Circuit has counseled long ago in the Clark case

13  (1974) that class counsel has a, quote, severe, close quote,

14  burden if they wish to seek discovery of a class member or an

15  objector.

16          THE COURT:  Did Clark -- that's a pretty old case.

17          MR. HOWE:  Right, but --

18          THE COURT:  Did it come up in this context?

19          MR. HOWE:  Yes, it did, your Honor.

20          THE COURT:  Okay.

21          MR. HOWE:  And they need to show necessity and the

22  absence of an improper motive to seek -- to take discovery

23  with respect to class members.

24          I've looked and my co-counsel has looked through the

25  Northern District of Illinois cases.  We have not seen a

1    single case that has allowed the discovery that is being
2    sought here.
3                THE COURT:  Did you see any that disallowed it?
4                MR. HOWE:  I had seen cases from other circuits that
5    have disallowed it, and I have seen many cases --
6                THE COURT:  You are talking about Northern District.
7    I know why that is.  Nobody is going to write an opinion on
8    this.  They have too much else to do.  These things are going
9    to get ruled on orally like I am going to do today.
10               MR. HOWE:  There are some slip opinions, your Honor,
11   and if your Honor will permit me, since their motion was
12   submitted, I can cite to additional cases.
13               THE COURT:  Sure.
14               MR. HOWE:  If you wish, for the record --
15               THE COURT:  Go for it.
16               MR. HOWE:  -- I can put these in the form of a
17   letter.
18               THE COURT:  Just tell me.
19               MR. HOWE:  Daniels v. LifeLock Marketing.  The docket
20   number is 10 CV 1554 IEG.  It's Southern District of
21   California.  The date is July 29, 2010.
22               THE COURT:  Is there a West Law cite or something?
23               MR. HOWE:  I do not have that with me, your Honor.
24   The other is Van Horn v. Nationwide, docket 108 CV 605,
25   Northern District of Ohio.

1    THE COURT:  That doesn't do me any good unless you

2   are going to give me a citation of something I can go find.

3    MR. HOWE:  As soon as I am back in the office, your

4   Honor, I will kick a letter over to the Court which I will

5   file electronically and provide it to other counsel with the

6   citations, and, in fact, I can provide copies of the opinions.

7    Yes, there are -- returning to my first point, there

8   are courts that have struck down the discovery for this

9   precise reason, because the burden has not been met, and in

10   addition, at this stage of the litigation, which is no longer

11   an adversarial stage, the role --

12    THE COURT:  It's not?  You could have fooled me.

13    MR. HOWE:  Well, not with respect to the issue of the

14   approval of the settlement.  Walgreens and class counsel are

15   in agreement on this, and Walgreens has --

16    THE COURT:  Wait a second.  Why are you here?

17    MR. HOWE:  Well, I am here because the objector plays

18   a role --

19    THE COURT:  Because you're objecting.

20    MR. HOWE:  Right.  The objector now plays the role of

21   the adversary which is necessary to the Court.

22    THE COURT:  Don't tell me it's not an adversarial

23   proceeding because it is.

24    MR. HOWE:  It's no longer adversarial vis-à-vis class

25   counsel and Walgreens.

1    THE COURT:  But they are not asking for discovery

2  from Walgreens.  They are asking for discovery from the person

3  that you just said is their adversary.

4    MR. HOWE:  Your Honor, on to my second point, the

5  discovery here is simply overbroad.  It is --

6    THE COURT:  Let me go back to something you said

7  before.  Clark, the case you -- the Seventh Circuit case you

8  cited --

9    MR. HOWE:  Yes, your Honor.

10    THE COURT:  -- I asked you a question, did that come

11  up in this context, and you told me yes.  Do you want to think

12  that through again?

13    MR. HOWE:  I believe --

14    THE COURT:  When I say "this context," I mean in the

15  context of an objection to a settlement and a request for

16  discovery from the objectors.

17    MR. HOWE:  No, not with respect to objections.

18    THE COURT:  That's the context that we are dealing

19  with.  Clark, from my recollection -- and I will -- I am

20  pulling it up right now, but from my recollection, because I

21  have had to read Clark in the past, that is a case about

22  whether the defendant in the lawsuit, while it's still

23  adversarial between the class or the putative class and the

24  defendant, whether the defendant can get discovery from

25  unnamed class members.  That's something that comes up quite a

1  bit in class actions where the defendant wants to go -- for

2  example, employment cases, where the defendant wants to go

3  take the depositions of people who are part of the class but

4  not named class members.  So I am going to look at this now.

5  Do you want to revisit your answer?  You gave me an equivocal

6  answer.

7          MR. HOWE:  I will revise my answer.  I do not believe

8  Clark dealt with the precise context.

9          THE COURT:  Okay.  Is there any Seventh Circuit case

10  that talks about discovery in this context, this context being

11  objections that have been made to a settlement and one of the

12  parties that's promoting the settlement or advocating the

13  settlement asks for discovery from one of the objecting

14  parties.

15          MR. HOWE:  I am not aware of a Seventh Circuit case.

16          THE COURT:  Okay.

17          MR. HOWE:  I am aware of other authority and --

18          THE COURT:  Circuit-level authority?

19          MR. HOWE:  Yes, cited in the motion.  In addition,

20  your Honor, *Federal Class Action Manual* by Timothy Eble --

21          THE COURT:  Yes.

22          MR. HOWE:  -- states --

23          THE COURT:  I am not sure I know who that is, but

24  whatever.

25          MR. HOWE:  -- Discovery after certification of a

1    class which is directed to individual absent class members

2    should be permitted only to the extent necessary, and

3    that's --

4          THE COURT:    That's the same context.  You got to keep

5    on point here.  That is the same context as what we were just

6    talking about.  That's where the defendant can get discovery

7    from an unnamed class member in a case where a class has been

8    certified.

9          What we are talking here about is about discovery of

10   an objector to a settlement that relates to the objection.  So

11   I am now looking through your motion to find where the

12   circuit-level authority is relating to that that you just

13   referred to.  Tell me what page of your motion I should be

14   looking at.

15         MR. HOWE:    Bear with me one moment, your Honor.

16         Page 8.

17         THE COURT:    Page 8.  I must be looking at the wrong

18   motion then because the one I'm looking at doesn't have a

19   page 8.

20         MR. HOWE:    I am looking at the --

21         THE COURT:    I am looking at the Franz motion.  I

22   should be looking at the Bullard motion?

23         MR. HOWE:    I have the Cozby motion, which is

24   document --

25         THE COURT:    I've got it.  Cozby, right.  It's docket

1 | number 144.

2 |    MR. HOWE:  Right.

3 |    THE COURT:  Let me just find page 8.  Just a second.

4 |    MR. HOWE:  And that cite, as your Honor is familiar

5 | with, the Leavitt decision --

6 |    THE COURT:  That was a district court.  I know that I

7 | am not on the Court of Appeals.

8 |    MR. HOWE:  Right.

9 |    THE COURT:  So where in your motion do I find the

10 | circuit-level authority, circuit, in other words, being from a

11 | Court of Appeals, that says that this kind of discovery is not

12 | appropriate?

13 |    MR. HOWE:  Page 10, Fine Paper.

14 |    THE COURT:  Page 10.

15 |    MR. HOWE:  Third Circuit.

16 |    THE COURT:  All right.  I am going to pull that case

17 | up now, and I'll bet you the change in my pocket that it's

18 | going to say that the district judge didn't abuse his

19 | discretion, not that he had to disallow it.  751 F.3d 562 at

20 | 587.

21 |    MR. HOWE:  Your Honor, pretty much the context of

22 | what we cited in our moving paper.  The Court of Appeals

23 | affirmed the district court's, quote, Refusal to permit an

24 | already cluttered record to be further confused by an inquiry

25 | so completely collateral to the central issue of

1   reasonableness of the fees request, close quote.

2           THE COURT:  But we've got more at issue here than the

3   reasonableness of the fees.  People are objecting to the

4   settlement itself, right?

5           MR. BALBANIAN:  Yes, your Honor, just to answer the

6   question.

7           THE COURT:  I am pretty sure that's the case.

8           Hang on just a second.  Let me just find this opinion

9   here.

10          Okay.  So what the Court was dealing with there -- I

11  am going to quote you the entire paragraph.  It's basically

12  three sentences.  This is In Re Fine Paper, antitrust

13  litigation, 751 F.2d 562 at page 587 (3rd Cir. 1984).  Quote,

14  Lawrence Walner & Associates, Ltd., moved to have the Court

15  require the disclosure in camera of fees paid by the settling

16  defendants in the underlying litigation and by the corporate

17  objectors in this and other antitrust litigation.  This

18  request was made for the purpose of enlightening the Court as

19  to reasonable hours and hourly rates for comparable lawyers in

20  complex litigation.  The information sought certainly was

21  relevant and arguably even helpful, citing several cases.

22  Discovery rulings are reviewed, however, for abuse of

23  discretion.  Considering all the evidence offered on hours and

24  rates and the likelihood that such discovery would generate

25  inquiries into collateral matters such as privilege, we cannot

1  hold that the Court abused its discretion in denying the
2  motion.  Fortunately, though, I think I only have 37 cents in
3  my pocket, so I would have won that bet.

4         It doesn't strike me that it involved the same
5  issues.  And, by the way, the Court said it was relevant.
6  Basically, what the Court concluded -- what the Third Circuit
7  concluded is that the judge had plenty of information about
8  hourly rates, it didn't need any more.  I have no information
9  about the objectors, zip, none.

10        So give me some reason why you think that this is a
11 bad idea, because an appeal to the judge's discretion, which
12 is what we are talking about here, has to do with whether it
13 is a good idea and makes sense or not.  So tell me why you
14 think this doesn't make sense or is irrelevant or whatever.

15        MR. HOWE:  Two reasons.  First, generic to the class;
16 second, specific to the class members.

17        First, the system should be set up in order to
18 facilitate and encourage legitimate objections to be brought.
19 If objectors know that they are going to be subject to
20 discovery, it's going to have a deterrent effect and make it
21 less likely that objections will be brought, low chance of any
22 type of compensation, certainty of a burden.  It will inhibit
23 what you seek to encourage, which is having an objector come
24 in so that you can have legitimate objectors -- objections
25 being stated.

1          Second, your Honor, specific to the class, you know

2   everything that there is for you to know with respect which is

3   the objection that has been stated, and the identity of the

4   particular objector or the identity of their counsel, to be

5   honest, does not affect the legitimacy or the validity of any

6   objection that is to be asserted.

7          Class counsel already has filed its response to the

8   objections that have been made.  They did so without seeking

9   to get an extension in order to take the discovery.  The

10  record is already prepared.  Your Honor can rule with respect

11  to the objections, and there is no need to know whether there

12  was an objection that some lawyer filed in some other case

13  which is unrelated.

14         And I will note, your Honor, as a point of personal

15  privilege, I have heard class counsel say several times this

16  morning talking about professional objections and talking

17  about objections being frivolous, Rule 11 applies here.  If

18  they think that something is frivolous, they should be sending

19  a safe harbor letter, and we will respond accordingly.  And

20  with respect to professional objections, I have never objected

21  to a class action settlement before.

22         THE COURT:  They are not necessarily talking about

23  you.

24         MR. BALBANIAN:  I am not, your Honor.

25         MR. HOWE:  And I have worked for a long time with the

1    folks at Plews Shadley.  This is the first time with
2    Mr. McDonald, but those lawyers are very good lawyers, and to
3    denigrate them by suggesting that their work is frivolous or
4    that their work is simply a professional objector has no
5    basis.
6              THE COURT:  Let me ask a couple of questions here.
7              So did you send any discovery requests to any
8    objector who hadn't retained counsel?
9              MR. BALBANIAN:  One only, because we learned that it
10   had been ghost written by a professional objector.
11             THE COURT:  Okay.  Secondly, are you -- with the
12   deposition subpoena, are you actually looking for testimony or
13   are you just looking for records or both?
14             MR. BALBANIAN:  Both.  Can I just --
15             THE COURT:  Respond to what Mr. Howe has said.
16             MR. BALBANIAN:  A couple quick points.
17             I want to address real quick what he just finished
18   with.  I didn't serve discovery on Mr. Howe.
19             THE COURT:  You know what?  I am going to save you
20   your breath.  I do not care about, you know, whether somebody
21   thinks somebody's made unwarranted accusations or not.  I am
22   not going to decide that today.  It has no bearing on what I
23   have to decided today, none.  That may be an issue at a later
24   point in time, none.  Just respond on the merits of what he
25   said.

1          MR. BALBANIAN:  Understood.

2          THE COURT:  Basically, he says it's going to chill

3   people from filing objections.

4          MR. BALBANIAN:  Chilling effect.  He is wrong.  I can

5   point the Court to an objector who objected to my Netflix

6   settlement, and that case was a blood bath.  No offense to use

7   that terminology in court.  That case was unbelievably

8   contentious when it came to the objections, and every one of

9   those objections was eventually withdrawn because those

10  objectors had real issues in that case.  They are in this case

11  too.  There is no chilling effect on these people, no offense.

12  This is their business, and that's fine.  It is what it is.

13  But this is how we deal with each other.

14         You know, they object and they make arguments that

15  are less than I think meritorious and are contradicted by the

16  law.  They've got a past of making the exact same objections,

17  copying and pasting the exact same objections, and that

18  absolutely goes to the merit of the objection, it goes to the

19  motivations behind it, that goes to appeal issues, bond

20  issues, all of that.

21         So to the second point as far as timing, I think

22  they're just wrong.  We are allowed to build a record, and I

23  can point the Court to scores of district-level cases where

24  this type of discovery has been allowed time and again.

25         The other issue here is -- and I think it's happening

1   in this case more than I've seen in the past, but you've got a

2   ghost writing problem in this case.  That's a real issue.

3   They point to the Seventh Circuit's opinion in Pearson and

4   Redman v. RadioShack talking about the utility of objectors.

5   Judge Posner even commended an individual.  His name is Ted

6   Frank.  I think he objected to the Southwest settlement that

7   was before this court.  Mr. Frank just came out with an

8   affidavit that says that he moonlights and he writes

9   objections for some of the more notorious objectors like

10  Christopher Bandas and Darrell Palmer, who, by the way, has

11  been disbarred, and Mr. Palmer is the individual whose client

12  contacted me in the Netflix case saying I never signed up for

13  this.  That guy tells courts -- I am saying Mr. Frank -- that

14  he doesn't take any money for these types of cases, that this

15  is just done to protect class members.  But at the end of the

16  day, he came out with an affidavit in the Capital One case

17  that was in front of Judge Holderman saying, well, I actually

18  did moonlight for some of these objections.

19              THE COURT:  I am going to cut this short.

20              In terms of having served the subpoena on other

21  parties, there's actually only one other party to the case,

22  and that's Walgreens.  At what point did you serve Walgreens

23  with the subpoena?  At the same time?

24              MR. BALBANIAN:  Yes, and I conferred with them prior

25  to it.

1  THE COURT:  I don't regard the objectors as parties

2  because, quite frankly, Mr. Howe, you just argued that they

3  weren't, and so I don't think that there's any requirement

4  that you have to serve all objectors with the subpoena.  And I

5  think that if there's a violation of Rule 45 for having served

6  Walgreens simultaneously or close to simultaneously, it's

7  harmless.

8  This is the way we're going to proceed.  I'm

9  enforcing the subpoena to the extent it requests documents.  I

10 am putting a hold for the moment on the subpoena to the extent

11 it requests a deposition.  We are going to kind of see where

12 we get.  I don't think that the subpoena is overbroad with

13 perhaps one exception, which I will tell you about in one

14 second here once I pull it back up again.

15 MR. HOWE:  Your Honor, might I be heard briefly?

16 THE COURT:  I have heard you and I am ruling.  Might

17 you not interrupt me while I am ruling.

18 Going back to the state request and the subpoena, I

19 think the time frame is a little bit overbroad.  I'm only

20 going to run it back to 2010.  I don't think it's overly broad

21 if it goes back to 2010 because it's asking for objections in

22 other cases.  I think five years is enough.

23 MR. BALBANIAN:  Yes, your Honor.

24 THE COURT:  I think the requests for retainer

25 agreements are relevant, I think the requests for documents

1   that show whether the person is actually a class member is

2   relevant, and the rest of it I think directly relates to

3   matters that are potentially an issue in the case.

4          So the subpoena is enforced with the one

5   modification.  The subpoenas, rather, for documents are

6   enforced with the one modification, and so the motion to

7   quash -- and one of them is called Motion to Quash, that's

8   document 145.  The other is called Motion to Quash For a

9   Protective Order and to Stay Discovery, that's 144.  They are

10  denied in part and deferred in part.  The part that's deferred

11  is the part about live depositions.  They are to be complied

12  with by a week from today, so the compliance date is moved to

13  the 19th of August.  When am I having you coming back?

14          MR. BALBANIAN:  The 24th, your Honor.

15          THE COURT:  If you think on the 24th that there's

16  more that you need, if you really need a deposition, we will

17  talk about that then.

18          MR. BALBANIAN:  Yes, your Honor.

19          THE COURT:  Let's see.  I just want to make sure I've

20  covered what I needed to cover here.

21          I have two other unrelated items about class member

22  issues that I needed to raise with class counsel, but that's

23  all I've got on this.

24          I received yesterday afternoon -- I received

25  yesterday afternoon a claim form from somebody named

1  Geannoris, G-e-a-n-n-o-r-i-s, Green.  It's dated June 23rd.

2  And there is a note on it that says, This was filed before a

3  court date, I mailed it in June.  The problem is I didn't get

4  an envelope.  What I got was something with a little Post-it

5  note on the back which means just in my experience in court is

6  that it got sent somewhere else first and somebody has

7  forwarded it to me.  I am going to give this to you.

8          The second question is that my courtroom deputy got a

9  number of calls from a person who wants to opt out and is

10  having a hard time figuring that out.

11          MR. BALBANIAN:  We have spoken with that individual.

12  We are trying to work it out.

13          THE COURT:  What was the name of the person, Pam, the

14  last name?

15          MR. BALBANIAN:  Minks.

16          THE COURT:  Minks, that's it.

17          MR. BALBANIAN:  Yeah, we are speaking with Ms. Minks.

18          THE COURT:  Unless there is anything else that I

19  haven't ruled on, see you on the 24th.

20          MR. BALBANIAN:  Thank you, your Honor.

21          MR. HOWE:  Thank you.

22    (Which were all the proceedings had in the above-entitled

23  cause on the day and date aforesaid.)

24

25

1    I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

2

3    _____        _____
     Carolyn R. Cox                          Date
     Official Court Reporter
4    Northern District of Illinois

5    /s/Carolyn R. Cox, CSR, RPR, CRR, FCRR

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25