UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **Kolinek** | § | |
| | § | |
| vs. | § | No. 1:13-cv-04806 |
| | § | |
| | § | Honorable Matthew F. Kennelly |
| **Walgreen Co.,** | § | |

### REPLY BRIEF OF OBJECTORS GLEITH COZBY AND RENDEE BULLARD IN OPPOSITION TO THE CLASS SETTLEMENT

The Final Approval Memorandum submitted by Edelson PC ("Class Counsel") fails to address the certification issues raised by objectors Gleith Cozby and Rendee Bullard (the "Objectors").[1] Instead, Class Counsel's brief spends most of its pages defending their excessive fees, attacking the Objectors' attorneys ("Objectors' Counsel"), and questioning whether certain Objectors are Class members. These issues are designed to distract the Court from the fact that this Class is not certifiable.

The Class definition proposed by Class Counsel is overbroad and cannot be certified due to a lack of predominance. A large number of class members simply are not entitled to TCPA relief because they consented to receive prerecorded phone calls from Walgreen Co. ("Walgreen"). Further, the fees sought by Class Counsel are not justified by their work in the case and the results obtained for the Class. The Court should therefore decline final approval of the settlement. Alternatively, if the Court decides to certify the Class as proposed in the settlement, the Court should significantly reduce the attorneys' fees sought by Class Counsel based upon a lodestar award.

---

[1] Ms. Cozby and Ms. Bullard were originally joined in their objections by Christinna Oldham and Sharon Hughes. Ms. Oldham and Ms. Hughes filed a motion to withdraw their objections on July 30, 2015. (Dkt. #142.)

**I.      There is not a predominance of common issues in the Settlement Class because many of the Class members are not entitled to relief under the TCPA.**

"[A] class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant." *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009); see also *Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980) (noting that certification should be denied where the class definition is "so amorphous and diverse" that it is not "reasonably clear that the proposed class members have all suffered constitutional or statutory violation warranting some relief.")  When determining whether there is a predominance of common issues, the Court must analyze "the substantive elements of [the plaintiff's] cause of action and inquire into the proof necessary for the various elements." *Simer v. Rios*, 661 F.2d 655, 672 (7th Cir. 1981).  The elements of a TCPA claim are "(1) the defendant called a cellular telephone; (2) using an automated telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

Here, the Class definition ("all individuals in the United States to whom Walgreen placed a Prerecorded Prescription Call to their cellular telephone") is overbroad because it includes Walgreen customers who gave consent to receive automated calls.  Class Counsel's Preliminary Approval Memo demonstrates that many of the Class members who received pre-recorded calls gave their consent to receive such calls.  The overwhelming majority of Class members did not opt out of the prerecorded calls, and many of them called Walgreen to opt back *into* the program after accidentally opting out. (Preliminary Approval Memo. at p. 24-25, Dkt. #98.)  This plainly demonstrates that many of the Walgreen prerecorded calls were placed with the express consent of their customers.  Further, a number of Class members have written letters to this Court explaining that they welcomed the Walgreen calls and how, in some instances, they even

requested that Walgreen place the calls. (Dkt. #99, 100, 101, 102.) Because these individuals consented to the calls, Walgreen cannot be liable to them for TCPA violations.

Class Counsel devotes scant attention to the certification issue raised by the Objectors. (Final Approval Memo. at p. 30-31, Dkt. #137-1.) Class Counsel points to the fact that certain Class members (including, apparently, Class representative Kolinek) gave their phone numbers to Walgreen for the purpose of identity verification, but did not consent to receive prerecorded phone calls. (*Id*.) This response misses the crux of the Objectors' argument. The Objectors acknowledge that certain Class members may have given their phone number to Walgreen for verification purposes, while ultimately not consenting to receive automated phone calls. However, this does nothing to address the many (potentially millions) of other Class members who plainly *did* consent to receive the calls. These consenting individuals cannot and should not be included in the Class settlement because they have not been the victims of a TCPA violation.

Because many of the Class members welcomed the prerecorded calls and gave consent to receive them, the Class as presently defined in the Settlement Agreement lacks a predominance of common issues. The Class definition is overbroad and therefore should not be approved by the Court.

**II.     Class Counsel's Request for a 36% fee is excessive in light of the result obtained for the Class and the lack of risk involved in the representation.**

If the Court decides to certify the Class and award attorney fees, the Court should apply the lodestar method to determine Class Counsel's fee award. The lodestar approach offers advantages in that it helps avoid "over-compensation for attorneys" and provides "greater accountability" to the Class. *Harmon v. Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir. 1991). This approach is particularly useful in cases where there is a "paucity of the class recovery as compared to the requested fee award. . . ." *Americana Art China Co. v. Foxfire Printing &*

*Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014). As the Seventh Circuit has repeatedly made clear and recently reaffirmed, a district court has discretionary authority to base its attorneys' fee award on a lodestar. *Id.* at 247 (citing *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994)).

The lodestar method is appropriate here because the proposed settlement offers trivial compensation for the individual Class members. Class Counsel repeatedly states that the settlement fund will provide in excess of $30 per claim. (Atty. Fee Memo. at p. 1, Dkt. #105-1; Final Approval Memo. at p. 22, Dkt. #137-1.) However, this ultimately amounts to approximately *$0.54 per Class member*. A review of similar TCPA class actions reveals that this return per class member is *far* below the standard in TCPA class action settlements, while the per claimant return of just over $30 per claim is "on the lower end of the scale" of TCPA settlements.[2] *See e.g., Bayat v. Bank of the West*, 2015 U.S. Dist. LEXIS 50416 at *14 (N.D. Cal. April 15, 2015) (approving settlement of $2.85 per class member/$151 per claimant but noting the "whopping 99.5% discount from the theoretical verdict value were statutory damages to be awarded to the entire class . . . cannot be credibly called an 'outstanding' result"); *Rose v. Bank of Am. Corp.*, 2014 U.S. Dist. LEXIS 121641 (N.D. Cal. Aug. 29, 2014) (approving settlement and reducing award of attorneys' fees in a settlement providing for approximately $4.57 per class member/$20-40 per claimant and noting that the results achieved "are on the lower end of the scale"); *Wilkins v. HSBC Bank Nev., N.A.*, 2015 U.S. Dist. LEXIS 17120 (N.D. Ill. Feb. 27, 2015) (approving settlement of $2.95 per class member/$93.22 per claimant); *In re*

---

[2] It is worth noting that the predominance issues discussed in Section I above also have a bearing on the outcome for the Class. The Class's recovery in this case would likely be stronger if the Class definition did not include millions of people who consented to receive prerecorded calls. This is true because: (1) fewer Class members would be entitled to make a claim on the settlement fund; (2) there would be fewer class members, lowering costly notice and administration expenses; and (3) Class members with valid TCPA claims (i.e., those who *did not* consent to prerecorded calls from Walgreen) would not have their claims "watered down" by individuals without valid TCPA claims (i.e., those who *did* provide consent for such calls).

*Capital One Tel. Consumer Prot. Act Litig.*, 2015 U.S. Dist. LEXIS 17120 (N.D. Ill. Feb. 12, 2015) (settlement of $2.72 per class member/$34.60 per claimant).

Unfortunately, the lodestar provided by Class Counsel is inadequate to assess the reasonableness of a fee award. "It is of course the responsibility of counsel applying for fees to demonstrate the detail sufficient to support said application." *In re Churchfield Mgmt. & Inv. Corp.*, 98 B.R. 838, 851 (N.D. Ill. Mar. 10, 1989). Such detailed breakdowns allow the Class and the Court an opportunity to review the lodestar to check for duplicative or unnecessary work. *Rose*, 2014 U.S. Dist. LEXIS 121641 at *21-23 (reducing fees, in part, because the lodestar revealed duplicative work). Here, Class Counsel merely provided the hourly rates of various employees and the number of hours worked on the case by each employee. (Supp. Dec. of Rafey Balabanian, Dkt. 154-1 at ¶ 9.) This is insufficient detail to allow the Class or the Court to analyze the fees. The Court should direct Class Counsel to provide additional detail customarily included in fee statements including the date of the work, a description of the work performed, the identity of the timekeeper, and the fees charged for such work.

In applying the lodestar method, courts will sometimes apply a multiplier to the lodestar calculation to account for risk. *Harman*, 945 F.2d at 975 ("[T]he separation of multiplier and lodestar provides–in theory at least–a means of accounting both for the hours and rate reasonable in the type of case and for the risk an attorney assumes in undertaking a case."); *Americana Art*, 743 F.3d at 247-48 (explaining applicability of risk multiplier). Any risk multiplier in this case should be small. Class Counsel works with a high-volume class action law firm which has filed numerous class action lawsuits and negotiated multiple TCPA settlements over the past several years. This case was a fairly routine TCPA lawsuit which was settled without the need for protracted litigation. Shortly after the suit was filed, the parties began settlement negotiations.

During the roughly two years that this lawsuit was pending, discovery was virtually non-existent as Class Counsel took only one deposition of a Walgreen representative, and that was done largely to obtain details to confirm settlement terms. Class Counsel makes much ado over the fact that this case initially was dismissed based on Walgreen's consent defense, but this consent defense would not have precluded all of the claims brought by the Class members. In other words, the risk of complete non-recovery is overstated by Class Counsel. Accordingly, any risk multiplier in this case should be small.[3]

### III. Class Counsel's allegations regarding the Objectors and Objectors' Counsel are an unnecessary distraction from the substantive legal issues before the Court and are factually incorrect.

Rather than address the deficiencies with the Class definition and the fatal deficiency of predominance among the class, Class Counsel devotes significant effort to impugning the motives of the objectors and their counsel and questioning whether certain objectors are proper members of the class. (Final Approval Memo. at p. 41-55, Dkt. #137-1.) In doing so, Class Counsel attempts to distract the Court from the legitimate legal issues before it by focusing on issues that are simply not relevant and, in the process, makes several inaccurate statements about Objectors' Counsel and the Objectors.

Objectors' Counsel are in no way "professional" or "serial" objectors. Although Plews Shadley Racher & Braun ("PSRB") maintains a robust multi-service practice, the firm (and in particular, the attorneys in this case) focus predominantly on environmental law, insurance recovery, and business litigation. While Objectors' Counsel is knowledgeable and experienced

---

[3] Similarly, even if the Court chooses to award attorneys' fees using a percentage method, there is no rationale for applying the 6% "risk premium" requested by Class Counsel. (Atty. Fee Memo. at p. 14-22, Dkt. #105-1.) Like *Wilkins*, this case represents "an average TCPA class action." *Wilkins*, 2015 U.S. Dist. LEXIS 23869 at *39. Class Counsel in this case "knew or should have known that the incentives to settlement, at least for [a] large financial institution[] that made millions of phone calls in alleged violation of the TCPA, would most likely overcome any incentives to litigate." *Id.*

in class action work, the firm only sparingly becomes involved in class litigation on behalf of objectors. Objectors' Counsel is very selective in the class objections it raises and does not pursue objections without believing they have merit.

In the past five years, two class objections reflect representations undertaken by Objectors' Counsel: *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 1:05-md-1720-JG-JO ("Card Fee Litigation") and *Sullivan v. DB Investments, Inc.*, No. 01-CV-3137 (S.D.N.Y.) ("*De Beers*"). In *Card Fee Litigation*, at the request of one of the firm's longstanding clients, Super-Test Service Stations of IN, Inc., PSRB filed an objection to an antitrust settlement agreement. Hundreds of other class members filed objections in that litigation by countless lawyers and law firms across the country. PSRB did not engage in substantive litigation beyond filing the client-requested initial objection.

In *De Beers*, Objectors' Counsel raised an objection to class certification at the district court level and then appealed the issue of class certification to the Third Circuit. A unanimous three judge panel of the Third Circuit initially agreed with Objectors' Counsel's argument and remanded the case to the district court to analyze the issues of commonality and predominance. *Sullivan v. DB Invs., Inc.*, 613 F.3d 134 (3rd Cir. 2010). Following a rehearing *en banc*, a narrowly-divided Third Circuit vacated the panel's decision and found that Rule 23 certification was warranted. *Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3rd Cir. 2011). Despite this narrow loss, the high quality briefing and appellate work in *De Beers* resulted in an award and recognition of one of the Objectors' Counsel. (For ease of reference, a copy of the award-winning brief filed by Objectors' Counsel is attached hereto as **Exhibit 1**.) The solid legal work and well-reasoned objections[4] in *De Beers* demonstrates that Objectors' Counsel assert

---

[4] It is worth noting that: (a) Class Counsel has filed its own objections to a class action settlement in *In Re National Collegiate Athletic Association Student-Athlete Concussion Injury Litig.*, 1:13-cv-09116 (N.D. Ill); and (b) in

meritorious positions that are well-founded in law and in fact and underscore that Objectors' Counsel are not "serial" or "professional" objectors who assert flimsy, unsupported arguments.

Class Counsel further attempts to distract the Court by arguing that Sharon Hughes and Christinna Oldham are not proper Class members when this issue has already been raised and addressed. All four Objectors—including Ms. Oldham and Ms. Hughes—received unsolicited phone calls from Walgreen, were notified that they were members of the Class, and filled out claim forms online. During a July 20, 2015 phone call, Class Counsel stated that after reviewing their database of Walgreen customers, they believed that of the four objectors represented by Objectors Counsel, Ms. Oldham and Ms. Hughes did not appear to be members of the Class. While Ms. Oldham and Ms. Hughes believe that they were members of the Class, with Ms. Oldham now nine months pregnant and Ms. Hughes a 64-year old grandmother, they decided to withdraw their objections rather than being forced to endure protracted litigation. Their decision to withdraw was further premised on them feeling harassed by Class Counsel's service of subpoenas to appear for depositions and to respond to written discovery propounded by Class Counsel. In short, they decided that it was not worth demonstrating that they were class members and pursuing their claim over a potential $34 recovery. In turn, their withdrawal would promptly eliminate these collateral issues and allow the Court and the parties to focus on the

---

support of its objections in that case, Class Counsel cities to the dissent in *De Beers*, the very case law that Objectors' Counsel developed in its representation of an objector in *De Beers*. In other words, Class Counsel's Final Approval Memorandum attempts to denigrate the excellent work performed by Objectors' Counsel in *De Beers* while relying on that very same work in pursuing its own objections in other class actions—the hypocrisy in these inconsistent positions is both obvious and telling.

In *In re NCAA*, Class Counsel objected to class certification by arguing that the class definition was overbroad and included individuals who were not entitled to recovery (the same argument that Objectors' Counsel has asserted in this case). In support of its position, Class Counsel quoted Judge Jordan's dissent in *De Beers*: "The problem is that some class members who deserve nothing are included in the settlement and hence are diluting the recovery of those who are entitled to make claims." (Nichols' First Objections to Plaintiffs' Motion for Preliminary Approval of Class Settlement, 1:13-cv-09116, Dkt. 183 at p. 7.) For ease of reference a copy of Class Counsel's Objections are attached hereto as **Exhibit 2**. This is the exact same argument Objectors' Counsel makes here: the overbroad Class definition dilutes the settlement by including members who are entitled to no recovery.

legitimate, substantive legal issues before the Court. (Withdrawal of Objection by Sharon Hughes and Christinna Oldham, Dkt. #142.)

Class Counsel's attacks on Objectors' Counsel and their challenges to the Objectors' inclusion in the Class are not legitimate responses to the Objectors' position and legal arguments. Moreover these unnecessary collateral issues are simply irrelevant to the substantive legal questions before the Court and should be disregarded.

## CONCLUSION

Because many of the 9.2 million Class members consented to the prerecorded calls, they cannot satisfy the elements of a TPCA claim. Accordingly, the Class cannot be certified due to a lack of a predominance among the Class. Even if the Class could be certified, the attorneys' fees requested by Class Counsel are excessive. Therefore, the Court should deny approval of the Class settlement and, alternatively, if the class is certified the Court should reduce Class Counsel's award of attorneys' fees to no more than a lodestar award.

Dated this 14th day of August, 2015.

/s/Christopher J. Braun
Christopher J. Braun
IN Bar ID No. 19930-49
Justin Allen
IN Bar ID No. 31204-49
**Plews Shadley Racher & Braun LLP**
1346 N. Delaware St.
Indianapolis, IN 46202-2415
Tel: 317-637-0700
Fax: 317-631-0781
cbraun@psrb.com
jallen@psrb.com

/s/ Arthur J. Howe
**Howe Law LLC**
155 N. Wacker Dr.
Suite 450
Chicago, IL 60606-1750
Tel: (312) 600-8336
Fax: (312) 465-1395
howe@howe-llc.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing has been served via transmission of Notices of Electronic Filing generated by CM/ECF on August 14, 2015 and was filed with the Clerk of Court using CM/ECF, and that as a result a copy of this filing has been served upon every counsel of record.

/s/Christopher J. Braun
Christopher J. Braun
IN Bar ID No. 19930-49
Justin Allen
IN Bar ID No. 31204-49
**Plews Shadley Racher & Braun LLP**
1346 N. Delaware St.
Indianapolis, IN 46202-2415
Tel: 317-637-0700
Fax: 317-631-0781
cbraun@psrb.com
jallen@psrb.com