**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT KOLINEK, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 13-cv-04806 |
| WALGREEN CO., an Illinois corporation, | ) ) | Hon. Matthew F. Kennelly |
| Defendant. | ) | |

---

**RESPONSE OF MELINDA ERIN FRANZ TO PLAINTIFF'S**
**MEMORANDUM IN SUPPORT OF FINAL APPROVAL**

---

Melinda Erin Franz ("Franz"), by and through her undersigned counsel, submits her

Response to Plaintiff's Memorandum in Support Final Approval:


W. Allen McDonald, Esq.
249 N. Peters Road, Suite 101
Knoxville, TN 379234917
Tel: 865-246-0800

*Lead Counsel for Melinda Erin Franz*

# TABLE OF CONTENTS

I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

       A.     Plaintiff and Class Counsel Have Failed to Satisfy Their Burden to Show the Adequacy of the Settlement Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

       B.     Class Counsel's Fee Request Should Be Denied For Myriad Reasons. . . . . . . . . 7

       C.     Class Counsel's Assault on Lawyers Who Have Represented Objectors in the Past Is Unpersuasive. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

III.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## I.    INTRODUCTION

Facing serious questions about the dubious benefits of this proposed settlement and the excessiveness of Class Counsel's requested attorneys' fee, Plaintiff and Class Counsel resort to trivializing each and every one of the twenty (20) objections to the proposed settlement, and absurdly conclude that "the Court should have no problem granting final approval" [Doc. 137-1, Page ID #:1048] and that none of the fee-based objections "should give the Court pause in approving the Settlement." [*Id*. at Page ID #:1076]. To be certain, the proposed settlement suffers from a variety of fundamental weaknesses, not the least of which are the inadequacy of settlement relief afforded to Settlement Class members in return for releases by all nine (9) million of them and the undeniable lack of vigor in which Class Counsel litigated Plaintiff and Class members' claims before deciding to reach a settlement that not surprisingly favors Class Counsel substantially more than the Class members they represent.

Melinda Franz [Doc. 118] and twenty-two (22) other purported Class members [Doc. 137-1, Page ID#:1046] have submitted 20 separate "objections" to the proposed settlement. On July 29, 2015, Plaintiff submitted a motion for final approval of the settlement. [Doc. 135]. Plaintiff also asked the Court for leave to file a over-length brief in support of final approval of the proposed settlement [Doc. 137], tendering its 56-page brief along with the motion, including the Declaration of Jay Edelson. [Doc. 137-1].

On August 5, 2015, the Court, as scheduled, conducted a fairness hearing, in open Court. [Doc. 152]. The Court ordered Class Counsel to file an affidavit regarding their "lodestar" amount by August 7, 2015. The Court permitted anyone who had submitted an objection to respond to Plaintiff's supporting brief by August 14, 2015.

Melinda Franz timely objected to the proposed settlement's plan of allocation as inadequate, to Class Counsel's fee request of $2,824,200 (36% of the settlement fund) as exorbitant, to the other proposed "prospective" relief as illusory, and to the proposed incentive award as unearned. [Doc. 118]. Franz now respectfully responds to Plaintiff and Class Counsel's submissions in support of the proposed settlement, attorney's fees, and incentive award, focusing here on the adequacy of the relief and Class Counsel's fee request.

In their supporting brief, Plaintiff and Class Counsel mis-characterize the fundamental terms of their proposed settlement, incorrectly implying that it provides substantially more benefits to the Settlement Class than it actually does. Moreover, notwithstanding ample opportunity, Class Counsel have failed to produce any meaningful data to reasonably enable the Court, much less Settlement Class members, to quantify the potential recovery available for the Settlement Class, which, by statute, could conceivably reach $4.5 billion, without adding damages for multiple violations or statutory trebling.

Equally troubling is Class Counsel's dubious claim that they engaged in "extensive motion practice" before reaching a settlement. Of course, the docket reveals this claim to be untrue. Frankly, Class Counsel's suggestion that they vigorously litigated this case for their clients is substantially undercut by the skeleton-like complaint, the inauspicious docket activity,[1] and the poorly-developed factual record. In the end, Class Counsel's estimation of the work they performed in this case appears greatly overstated, strongly suggesting the impropriety of Class Counsel's settlement assessment, decision to settle at such an early stage, and fee request.

---

[1] More than half the docket entries in this case appear to have been entered after the parties started mediation to settle.

To be sure, this is not a case that went "south" for Class Counsel. In fact, they (eventually) defeated the only substantive motion brought by Walgreens, but then inexplicably failed to aggressively pursue party discovery or class certification *before* almost immediately beginning to discuss the prospects of a quick settlement.

Here, as in many class action settlements, the person with the most at stake financially is Class Counsel. The task of this Court – if it eventually extends its approval to this proposed settlement – is to set Class Counsel's fee at a level that will approximate what the market would set. Because of the unique circumstances presented by this atypical TCPA case, however, this task should be accomplished through use of the lodestar method, or at least through a lodestar cross-check, to insure Class Counsel is not overcompensated. And while Class Counsel suggest that the Seventh Circuit has abandoned use of the lodestar method for awarding fees, they are wrong, as it is legally correct for a district court to choose either method. Here, the lodestar method, not the percentage of fund method, is more likely to insure fair and reasonable compensation.

To justify their unusually high fee request, Class Counsel argue that the market rate is 30% in TCPA cases involving similar settlement amounts. The fundamental flaw in this analysis, however, is that it hinges on Class Counsel's likening of this case to a "typical TCPA class action," which clearly it is not. Moreover, the "market price" for attorneys' fees in a TCPA class is not 30% at all, as many courts refuse to award 30%, much less 36%, in TCPA cases. Regardless of the methodology used by the Court, however, considering the incredibly high lodestar disclosed by Class Counsel, the Court should require them to submit their full billing records, at least *in camera*, to permit the Court to determine the reasonableness of the hours listed and if any duplication in hours could have been avoided.

Significantly, it is Class Counsel's burden to establish their market rate and whether their hourly rates are reasonable. To satisfy this burden, they may not substantiate their market rates by mere submission of a "self-serving affidavit," as they have done. They must instead "present some evidence" that the requested rates were the actual market rates. Here, Class Counsel's fee request of $2,824,200.00 – 36% of the settlement fund – is simply not supported by the record, especially considering their lodestar of $842,924.50. Other than a than a self-serving declaration, Class Counsel have failed to present persuasive evidence to support their fee petition.

Remarkably, Class Counsel maintain that the alleged "risks" they encountered in filing and litigating this action entitles them to a "risk premium," warranting substantially more than the benchmark fee. Make no mistake, the percentage-of-the-fund method advocated by Class Counsel would inevitably result in their being overly-compensated. Besides, these purported "risks" are known risks, commonly associated with class litigation, should have been forecast by Class Counsel before filing suit, and in any event, are largely fictional.

Far from demonstrating the litigation was "incredibly risky," the proposed settlement appears to mimic Class Counsel's typical *modus operandi* in such cases: *cut-out, cave-in, and run-off*. For example, Edelson PC filed a 9-page complaint containing largely boilerplate jurisdictional statements, rote parroting of Rule 23 standards, recitation of elements of a TCPA claim, and a prayer for relief. Even the Court referred to the complaint as containing "relatively sparse allegations," which, incidentally, is what saved Plaintiff from dismissal. Importantly, there is no indication that Class Counsel undertook a substantial pre-filing investigation. The complaint is also devoid of any

allegations regarding the FCC Orders or the "emergency" defense to the TCPA advocated by Walgreens. In other words, contrary to their self-serving statements, it clearly appears Class Counsel took on the case assuming little or no risk of non-payment.

After beating back the motion to dismiss, however, Class Counsel realized there may be a risk of nonpayment. Rather than developing the factual record needed to flush-out the merits of the TCPA claim, Class Counsel opted flight instead of fight, and quickly settled the case to secure a large fee for themselves at no risk, bargaining themselves out of the case rather than fighting for better benefits for the Settlement Class.

What's more, Class Counsel had numerous opportunities to safeguard the interests of Class members. Squandering each of those opportunities, however, Class Counsel took every precaution to protect their own interests. For instance, they negotiated a "clear-sailing" agreement with Walgreens which produced a built-in conflict of interest. As the Seventh Circuit has made clear, the defendant won't agree to a clear-sailing clause without compensation – *namely a reduction in the part of the settlement that goes to the class members*, as that is the only reduction class counsel are likely to consider. The existence of the clause illustrates the danger of collusion between class counsel and the defendant, to the detriment of the class members. *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) *cert. denied sub nom. Nicaj v. Shoe Carnival, Inc.*, 135 S. Ct. 1429 (2015). In other words, Walgreens got something in return, and the Court should inquire about it, as the presence of the clause prompts a heightened duty by the Court to peer into the provision and scrutinize closely the relationship between attorneys' fees and settlement benefit. *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003).

Finally, Class Counsel's brief is disturbingly chock-full of vitriol against the undersigned counsel (and other objectors' lawyers), even falsely claiming another attorney authored the Franz objection. While the undersigned could address these disparaging and uncouth remarks in point-by-point fashion, with due respect, the Court should rightly focus on the merits of the objections, not personal rancor by Class Counsel. Notably, the Seventh Circuit has taken a much different view of objectors than does Edelson PC, remarking that "the judge's task is eased because he or she has the benefit of an adversary process: objectors versus settlors." *Redman v. Radioshack Corp.*, 2014 U.S. App. LEXIS 18181, at **13-14 (7th Cir. Sept. 19, 2014) (Posner, J.).

For all of this, the motion for final approval should be denied, and fees, if awarded, should be based upon the lodestar method or a blend of the lodestar and percentage-of-the-fund method.

## II.    ARGUMENT

### A.    Plaintiff and Class Counsel Have Failed to Satisfy Their Burden to Show the Adequacy of the Settlement Relief.

Class members are slated to receive $30 for valid claims. As Franz demonstrated in her objection, $20-$40 per-claimant is on the low side of compensation. *See, e.g., Grannan v. Alliant Law Grp., P.C.*, 2012 WL 216522, *7 (N.D. Cal. Jan. 24, 2012). Plaintiff and Class Counsel tout the proposed settlement as providing "a substantial recovery for the Class" and "significant monetary relief." [Doc. 137-1, Page ID #:1045]. However, they have still failed to provide any data which might enable the Court to quantify the potential recovery for the Settlement Class. It is known that there are over 9 million Settlement Class members. If each received a single call from Walgreens this would equate to a $4.5 billion value, or $13.5 billion, if the violation was willful. However, Settlement Class members actually received multiple calls, further increasing those figures.

Here, deductions for fees, expenses, notice and administrative costs, and incentive fees will result in a net settlement fund of less than 50% of the $11 million gross settlement fund.[2]

**B.    Class Counsel's Fee Request Should Be Denied For Myriad Reasons.**

*Lodestar is the better method to compensate Class Counsel.* Class Counsel seek a fee in the amount of $2,824,200.00 (representing 36% of the Settlement Fund).  This request is not supported by the record.  According to Class Counsel, eight lawyers logged just over 1,900 hours, at rates ranging between $295 to $685 per hour, with a combined lodestar of $842,924.50.  Thus, their requested fee of $2,824,200 represents a risk multiplier of 3.35.  [Doc. 154-1].

Predictably, Class Counsel insist that their fee request is consistent with the market-rate approach employed by courts in the Seventh Circuit.  [Doc. 137-1, at Page ID#: 1076].  But Class Counsel's presumption that the percentage-of-the-fund method is the Court's only avenue to compensate them is flat-out wrong, as is evident by recent Seventh Circuit precedent.

"In a common fund case the judge exercises equitable powers to compensate attorneys from the recovery won for plaintiffs." *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 973 (7th Cir. 1991). "When a fee is set by a court rather than by contract, the object is to set it at a level that will approximate what the market would set." *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) (citations omitted).  Significantly, a lodestar cross-check is also appropriate. *See Williams v. Rohm and Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011).

---

[2]Class Counsel mis-characterize the basic terms of the proposed settlement.  Specifically, they state that "in addition to" the $11 million gross settlement fund, and the so-called "prospective relief," Walgreens also "agreed to provide" the notice costs, class representative incentive awards, and attorneys' fees.  [Doc. 137-1, Page ID#: 1054].  Of course, this is not true. Under the terms of the settlement, notice costs, incentive awards, and attorneys' fees are paid out of the $11 million fund, not "in addition to" it.  *See* Class Action Settlement Agreement, Doc. 137-1, at Page ID#: 1143, at 1154.

"It is the fee applicant's burden to establish his or her market rate; if the applicant fails, the district court may make its own rate determination." *In re Southwest Airlines Voucher Litig.*, 2014 U.S. Dist. LEXIS 84072, *10 (N.D. Ill. June 20, 2014) (citing *Johnson v. GDF Inc.*, 668 F.3d 927, 933 (7th Cir. 2012)). District courts are permitted to "adjust the amount up or down to take into account various factors regarding the litigation." *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 742 (7th Cir. 2003). "A district court is certainly empowered to reduce a fee request sua sponte, and indeed it has an independent obligation to scrutinize the legitimacy of such a submission." *Jaffee v. Redmond*, 142 F.3d 409, 416 n.2 (7th Cir. 1998) (internal quotation marks omitted). In applying the lodestar method, the fee petitioner carries the burden of persuasion on whether class counsel's submitted hourly rates are reasonable. *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010)).

When attorney's fees are deducted from class damages, the district court must try to assign fees that mimic a hypothetical ex ante bargain between the class and its attorneys. *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718-19 (7th Cir. 2001). The court must base the award on relevant market rates and the ex ante risk of nonpayment. *Id*. To determine the market for attorney's fees, the court should look to "actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005).

Here, Class Counsel have not presented much evidence at all of the types endorsed by the Seventh Circuit in *Taubenfeld* (private fee contracts, class-counsel auctions, and fee awards from other cases. Rather, they have supported their fee petition only with a "self-serving affidavit." *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 556 (7th Cir. 1999).

According to Class Counsel, "the market rate in a typical TCPA class action [is] a sliding-scale fee," calculated based on a percentage of the common fund recovery achieved for the benefit of the settlement class. [Doc. 137-1, at Page ID#: 1076-78]. Class Counsel maintains that the "market rate (or sliding scale) for the award of fees in TCPA class actions, prior to accounting for the risks associated with a particular case," is 30% for the first $10 million and 25% for the next $10 million. [*Id*., at Page ID#: 1077]. Class Counsel suggest that the risk of non-payment was so great that they are entitled to a "risk premium" warranting substantially more: 36% of the gross $11 million settlement fund. [*Id*. at Page ID#: 1078].

However, this was not a typical TCPA case at all. The case was settled very early on in the proceedings, without Class Counsel having made much effort to develop the factual record. In fact, it appears that immediately after the Court granted Plaintiff's motion to reconsider, the parties began discussing settlement – *before* Plaintiff had taken a single deposition or engaged in formal discovery of any nature. [Doc. 137-1, Page ID #:1051-52].

In this case, the percentage-of-the-fund method suggested by Class Counsel will inevitably result in over-compensation, but the lodestar method will fairly compensate Class Counsel. *See Harman*, 945 F.2d at 974 (explaining that the lodestar method has an advantage over the percentage method in that it alleviates "concerns that a percentage approach resulted in over-compensation for attorneys"). Moreover, the choice of methods is discretionary. *Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. Ill. 2014) (citations omitted).

To the extent Class Counsel suggests that the Seventh Circuit has abandoned use of the lodestar method, they are wrong. After all, "it is legally correct for a district court to choose either." *Americana Art China*, 743 F.3d at 247. As the Seventh Circuit made clear last year:

In *Florin v. Nationsbank of Ga., N.A.*, we explained:

> [W]e do not believe that the lodestar approach is so flawed that it should be abandoned. Instead, we are of the opinion that both the lodestar approach and the percentage approach may be appropriate in determining attorney's fee awards, depending on the circumstances. We therefore restate the law of this circuit that in common fund cases, the decision whether to use a percentage method or a lodestar method remains in the discretion of the district court.
>
> 34 F.3d 560, 566 (7th Cir. 1994). Whatever position our sister circuits might take, *Florin* is still good law. The district court did not err, much less abuse its discretion, by choosing the lodestar method in this case.

*Americana Art China*, 743 F.3d at 247.[3]

Whatever the methodology the Court decides to use, given the incredibly high lodestar disclosed by Class Counsel [Doc. 154], the Court should request their full billing records in order to determine if the hours listed were reasonable and/or if the time summary includes duplicate and redundant work. *See Rose v. Bank of America*, No. 11-cv-02390, 2014 U.S. Dist. LEXIS 121641, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014). After all, it should be incumbent upon the Court to satisfy itself that the hours devoted to briefing, hearings, settlement negotiations, mediation, and settlement briefing are not duplicated or excessive. *Rose*, at *23.

***Class Counsel's risks were minimal***. Class Counsel refer to continued litigation as "incredibly risky." For instance, they argue that Walgreens may have successfully claimed that the calls were exempt under the TCPA's emergency purpose exception. [Doc. 137-1, Page ID #:1060].

---

[3]Moreover, there is no valid reason why the market rate must be either a lodestar or a percentage; that is, the market rate could blend both methods, *e.g.*, a 30% percentage, not to exceed a multiple of the lodestar.

But this defense should have been forecast, assessed, and countered by the allegations of the complaint. Plaintiff also maintains that to succeed, "further factual development" would be required to test Plaintiff's allegations. [Doc. 137-1, Page ID #:1062]. Of course, they would. But if Class Counsel had accurately assessed the strength of Plaintiff's case, development of a factual record should have *supported* Plaintiff's claims. Similarly, Class Counsel posit that Walgreens would have opposed class certification. Of course, it would have. But these worries should have preceded litigation, not undercut it once it began.

"The proposed Settlement," counters Class Counsel, "avoids this long and winding path," puts "an immediate end to Walgreens' alleged conduct," and places "cash in the hands of Settlement Class Members now." [Doc. 137-1, Page ID #:1062]. But Edelson PC did not assume any significant risk of nonpayment. They filed a 9 page complaint, which was largely boilerplate jurisdictional statements, rote parroting of Rule 23 standards, recitation of elements of a TCPA cause of action and prayer for relief.

Under an *ex ante* analysis, any risk premium must be based on risks known and voluntarily assume by Class Counsel when they agreed to represent the Plaintiff. *In re Synthroid Marketing Lit.*, 264 F.3d 712 (7th Cir., 2001) ("The market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case.") Importantly, there is no indication that Class Counsel undertook any substantial investigation before filing the complaint. There is no reference to a pre-suit investigation in their motion papers, nor does the complaint reveal any. So, it appears Class Counsel took the case assuming there was little or no risk of nonpayment.

After defeating the motion to dismiss, when Class Counsel realized there was a risk of nonpayment, they chose to quickly settle to secure a huge fee absent risk instead of performing the factual investigation which the Court indicated was needed to flush out the merits of the claims. The lodestar amount is incredible. It is impossible to imagine how Class Counsel could spend that much time on this case. Even Edelson PC's co-counsel – who has never filed anything – claims over 200 hours. To put the lodestar into its proper context, the purported 1917 hours represents a lawyer working exclusively on this case for an entire year: 40 hours per week for 52 weeks per year, less 2 weeks' vacation and 12 holidays equals 1904 hours in a year.

***Class Counsel's opinion of the proposed settlement is undermined by the collusive ingredients of the proposed settlement.*** Class Counsel's own opinion of the proposed settlement counsel is severely undercut by the collusive elements of the proposed settlement, as discussed herein. In addition, the Edelson law firm has repeatedly proposed class action settlements only to have district judges reject them at the preliminary approval stage. For example, in *Boyd v. Avanquest North America Inc.*, No. 12-cv-04391, 2015 U.S. Dist. LEXIS 93458, *10-11, 17 (N.D. Ca. July 17, 2015), the court rejected the proposed settlement because Edelson PC had negotiated for worthless prospective relief (vouchers) and an overly-broad release of "all unknown claims." Similarly, in *Standiford* v. *Palm, Inc.*, No.: 09-CV-05719, 2011 U.S. Dist. LEXIS 54782 (N.D. Ca. May 20, 2011), the district court flatly rejected a settlement proposed by Jay Edelson's firm because it was overly-broad and 99.5% of the settlement class would have released "all known and unknown" claims "for essentially no relief."

***The Clear-sailing agreement prompts heightened scrutiny of the requested fee.*** Class Counsel had a clear-sailing agreement with Walgreen's, *i.e.*, "Walgreens has agreed, subject to Court

-12-

approval, to pay Class Counsel reasonable attorneys' fees and to reimburse expenses in this Action."

[Doc. 137-1, Page ID #:1054]. In other words, Walgreen's has agreed not to oppose Class Counsel's

fee request. A recent opinion by the Seventh Circuit sheds light on Class Counsel's actions. In

*Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) *cert. denied sub nom. Nicaj v. Shoe*

*Carnival, Inc.*, 135 S. Ct. 1429 (2015), Judge Posner described the problem:

> Another questionable feature of the settlement is the inclusion of a
> "clear-sailing clause"—a clause in which the defendant agrees not to
> contest class counsel's request for attorneys' fees. Because it's in the
> defendant's interest to contest that request in order to reduce the
> overall cost of the settlement, the defendant won't agree to a
> clear-sailing clause without compensation – *namely a reduction in the*
> *part of the settlement that goes to the class members*, as that is the
> only reduction class counsel are likely to consider. The existence of
> such clauses thus illustrates the danger of collusion in class actions
> between class counsel and the defendant, to the detriment of the class
> members.

*Id.* (emphasis added). After all, "[i]t is unlikely that a defendant will gratuitously accede to the

plaintiffs' request for a 'clear sailing' clause without obtaining something in return. That something

will normally be at the expense of the plaintiff class." *Malchman v. Davis*, 761 F.2d 893, 908 (2d

Cir. 1985) (Newman, J., concurring). Therefore, the Court has a heightened duty to peer into the

provision and scrutinize closely the relationship between attorneys' fees and settlement benefit, being

careful to avoid awarding "unreasonably high" fees simply because they are uncontested. *Staton v.*

*Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003).

**C. Class Counsel's Assault on Lawyers Who Have Represented Objectors in the past Is Unpersuasive.**

The Court should not be misled or distracted by personal attacks on the undersigned counsel

(or other objectors' counsel for that matter). Respectfully, the Court is well able to cull-out

objections that have no merit or value to its consideration of the proposed settlement. Thus, the Court should focus on the substance of the objections, not personal attacks on counsel. While the undersigned could spend pages and time explaining the circumstances of every previous objection in which he has represented class members, he will not waste the Court's valuable time.

Notably,

> there is a recognition that objectors make the system work better overall, and perhaps even make it more difficult for class counsel to overreach in a way that harms defendants. Judges are more cognizant of their responsibilities under Rule 23(e), and they increasingly realize that counsel for objectors can help them carry out their responsibilities.[4]

Class Counsel ridiculously imputes some sort of impure or improper motive to counsel's representation. They even go so far as to charge that the Franz objection was "ghost written"[5] by another lawyer, a patently untrue allegation.[6] The allegations are well off-the-mark, and demonstrate a fundamental misconception of the role played by objecting class members in the settlement process.[7] Well-respected jurists[8] take a decidedly different view, acknowledging the importance of

---

[4]Morrison, Alan B., *Improving the Class Action Settlement Process: Little Things Mean a Lot*, 79 Geo. Wash. L. Rev. 428 (Feb. 2011).

[5]Notably, all of the cases cited by Class Counsel about "ghost-writing" concerns situations where attorneys have written briefs for *pro se* litigants. To be sure, there is no such allegation here, nor could there be.

[6]*See* McDonald Declaration, Exhibit 1. To add to their fictional account of McDonald's depiction as a "serial objector," Class Counsel, without any reasonable justification, attempts to ratchet-up McDonald's involvement as an objector's counsel by unduly associating him with another lawyer with whom he has occasionally worked as co-counsel for plaintiffs in class actions and other matters.

[7]Class Counsel's account of the undersigned's involvement as an objector's counsel in class action settlements falls well short of the truth. For example, they falsely state that the undersigned objected on behalf of one of Michael Franz's relatives in *Bacon v. Subway*

objecting class members in the final approval determination. Indeed, three of the leading class action cases of the last two decades – *Amchem, Ortiz,* and *Devlin*[9] – resulted when objectors litigated successfully all the way to the Supreme Court.

In the final analysis, it does not matter whether an objector is a prolific or first-time objector. What matters is the substance of the objection.[10]

## III.    CONCLUSION

In view of the foregoing, the motion for final approval of the proposed settlement should be denied, as should Class Counsel's fee request. If the Court grants final approval, Class Counsel's fee should set by lodestar only, or on a combination of lodestar method and percentage-of-the-fund method.[11]

---

*Sandwiches & Salads LLC*, No. 14-cv-00192 (E.D. Tenn. May 13, 2014). In fact, the firm represented the plaintiffs in that matter.

[8]*E.g.*, *Redman v. Radioshack Corp.*, 2014 U.S. App. LEXIS 18181, at **13-14 (7th Cir. Sept. 19, 2014) (Posner, J.) ("When there are objecting class members, the judge's task is eased because he or she has the benefit of an adversary process: objectors versus settlors (that is, versus class counsel and the defendant.")

[9]*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997), *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 841-845 (1999), and *Devlin v. Scardelletti*, 536 U.S. 1 (2002).

[10]Plaintiff also charges that the undersigned "improperly filed" the Franz objection in excess of Local Rule 7.1's 15-page limit. However, the Court-approved notice contained no such limitation or requirement, and thus, the rule did not apply.

[11]Plaintiff criticizes the undersigned's withdrawal of his client's statement adopting other objections, attaching yet another sinister motive to that act. However, the statement was a place-holder adoption only. After counsel reviewed the other objections, he concluded that adoption of other objections was unnecessary.

Respectfully submitted, this 14th day of August, 2015.

/s/ W. Allen McDonald
W. Allen McDonald, Esq.
249 N Peters Road
Suite 101
Knoxville, TN 379234917
Tel: 865 246 0800

*Counsel for Melinda Erin Franz*

**CERTIFICATE OF SERVICE**

I do hereby certify that on August 14, 2015, a copy of the foregoing was submitted electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's electronic filing system.  All other parties will be served by regular U.S. Mail.

Benjamin H. Richman
EDELSON PC
350 North LaSalle Street
Suite 1300
Chicago, IL 60654

Bradley J. Andreozzi
DRINKER BIDDLE & REATH LLP
191 North Wacker Drive
Suite 3700
Chicago, IL 60606

Christopher J. Braun
Justin A. Allen
PLEWS SHADLEY RACHER & BRAUN LLP
1346 N. Delaware St.
Indianapolis, IN 46202-2415
cbraun@psrb.com
jallen@psrb.com

Pamela Sweeney
2590 Richardson Street
Madison Wisconsin 53711

Paige Nash
4134Hawthorne Ave.
Dallas, Texas 75219-2231

Jonathan E. Fortman
250 St. Catherine Street
Florissant, MO 63031
jef@fortmanlaw.com

Steve A. Miller PC
1625 Larimer Street, No. 2905
Denver, CO 80202
sampc01@gmail.com

John C. Kress
THE KRESS LAW FIRM LLC
4247 S. Grand Blvd.
St. Louis, MO 63111
jckress@thekresslawfirm.com

Lyndy Streight
2770 NW 19th St.
Oklahoma City, Oklahoma 73107

Gary W. Sibley
2711 No. Haskell, Suite 550
Dallas, TX 75204
g@juris.cc

Michael Beskine
141 NE 3rd Ave. # 8002
Eighth Floor
Miami, FL 33132

John Dipuccio
3133 Troy Ave
Cincinnati, OH 45213- I319

Jimmy Fuzzell
2338 E. Glenwood Ave.
Knoxville, TN 37917

Rita Hartsell
673 South Oak Ridge Road
Oakboro, NC 28129

This 14th day of August, 2015.


/s/ W. Allen McDonald
W. Allen McDonald