**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ROBERT KOLINEK, individually and on behalf of all others similarly situated, | Case. No. 13-cv-04806 |
| *Plaintiff,* | Hon. Matthew F. Kennelly |
| *v.* | |
| WALGREEN CO., an Illinois corporation, | |
| *Defendant.* | |

**PLAINTIFF'S MOTION FOR LEAVE TO TAKE LIMITED DEPOSITIONS**
**OF OBJECTORS GLEITH COZBY, RENDEE BULLARD**
**MELINDA FRANZ, PAIGE NASH AND LYNDY STREIGHT**

Per the Court's Order on September 25th, Plaintiff Robert Kolinek hereby respectfully requests leave to take limited depositions of objectors Gleith Cozby, Rendee Bullard, Melinda Franz, Paige Nash and Lyndy Streight (collectively, "Objectors"). The need for the depositions is simple: Objectors' written discovery responses and document production are less than a model of clarity. Objectors have each produced only a handful of documents (and in one case, nothing at all) in response to the subpoena requests sustained by the Court, many of which are incomplete on their face or raise other serious questions about Objectors' and their counsel's motivations here. For example and as explained further below, the retainer agreements between objectors Cozby and Bullard and their counsel at Plews Shadley were drafted and signed only after they were ordered to be produced and weeks after the objections were filed—thus raising questions like: Why was there such a lengthy delay in preparing and signing the agreements? And, what (if any) arrangement existed between objectors and their counsel prior to the retention agreements?

The productions made by Objectors' counsel only add to the "opacity" (as the Court put it). (*See* Aug. 24, 2015 Hearing Transcript at 18:20–19:5, true and accurate excerpts of which are attached as Exhibit 2.) Most notably, Objectors' counsel have produced "privilege logs" that—setting aside various facial deficiencies—confirm two important facts:

1. First, communication between the Objectors and their counsel has been limited to say the least. There are just eight entries across each of the logs—for all Objectors and the more than half-dozen law firms representing them—that identify communications with the individual Objectors themselves. This suggests that the law firms representing the Objectors are acting unilaterally for the most part, which feeds into the story that the Objectors aren't that interested in the issues and are simply being used.

2. Second, Objectors' counsel have identified other lawyers and law firms that are supposedly representing the Objectors in this case. That's despite none of those other lawyers appearing in the case and the fact that certain Objectors' counsel have previously denied the other attorneys' involvement or that they stood to recover anything from the case as a result.

With respect to the former, the obvious issues include, *inter alia*, (i) the reasons for the near complete lack of communication between the lawyers and their clients, and (ii) what (if any) involvement the individual Objectors have had in this case, both prior to and since the filing of their objections. As to the latter, whether other attorneys are actually involved in the case, why they have deliberately not appeared or otherwise denied their involvement, what their motivations are, and what they hope to gain as a result of their participation are all questions that speak to the propriety of the objections themselves and thus, should be answered.

At this point, Class Counsel have met and conferred with Objectors' attorneys and none appear willing to provide any additional clarity or documentation on these issues. Given that and the Court's instructions to complete the outstanding discovery quickly and efficiently, Plaintiff now believes that the most appropriate way forward is to take limited depositions—no longer than three hours each—of Objectors Cozby, Bullard, Franz, Nash and Streight. In that way, the

Parties and the Court will be able to get finality on these issues without the need for further, drawn out meet and confers and written discovery that would otherwise delay these proceedings.

For these reasons and as explained further below, Plaintiff Kolinek respectfully requests that the Court grant him leave to take limited depositions—again, no longer than three hours each—of Objectors Cozby, Bullard, Franz, Nash and Streight.

## I.     Relevant Factual and Procedural Background.

On July 26, 2015, Plaintiff issued subpoenas *duces tecum* and for testimony to those individuals and their counsel who both (i) raised objections to the proposed Settlement of this matter, and (ii) either have histories of raising similar (often baseless) objections to other class action settlements or are represented by serial objector counsel who do. (*See* dkts. 144, 145, 156.) Among the objectors to whom subpoenas were issued are Cozby and Bullard (represented by counsel from Plews Shadley Racher & Braun ("Plews Shadley") and Cozby's employer and former co-objector Dennis Gibson ("Gibson")), Franz (represented by serial-objector W. Allen McDonald ("McDonald"), and apparently, serial-objector Christopher T. Cain ("Cain")), Nash (represented by serial-objector Thomas Cox ("Cox")) and Streight (represented by attorney Brent Vullings ("Vullings")).

On July 31, 2015, Cozby and Franz filed their respective motions to quash the subpoenas in this Court, (dkts. 144, 145), and Nash filed a motion to quash in the United States District Court for the Northern District of Texas. *See In re: Kolinek v. Walgreen Co.*, No. 3:15-mc-00085, Dkt. 1 (N.D. Tex. July 31, 2015). On August 12, 2015, the Court denied the Cozby and Franz motions to quash, in part, ordering those Objectors to produce certain of the documents requested, but deferring the depositions pending service of the Objectors' written responses and document productions. (*See* dkt. 156; Aug. 12, 2015 Hearing Transcript at 20:8-12; 21:10-11,

true and accurate excerpts of which are attached as Exhibit 3.) Relevant here, the Court specifically noted that the more "opaque" the responses and document production appeared to be, the more likely depositions would ultimately be ordered to proceed. (Aug. 24, 2015 Hearing Transcript at 18:24–19:2) ("I will say…that the more opaque things are after the document request, the more likely it is that somebody is going to have to come and talk about something, i.e., have a deposition taken.")

To date, the written responses and document production served by Cozby, Franz, Nash and Streight have been "opaque" to say the least. While Plaintiff requested (and the Court ordered) the production of documents supporting Objectors' class membership, retainer agreements for *all* actions in which they have objected, communications with other individuals (including objectors), all documents they have *ever filed* as objectors to a proposed settlement, and all documents that relate to any communications between themselves and their attorneys prior to the attorney-client relationship, they have only provided a handful of limited (and in many instances, incomplete) documents.[1] Each of their productions is taken in turn below.

## II. Cozby's and Bullard's Deficient (and Non-Existent) Document Production Necessitates Their Depositions.

First, Objector Cozby has produced the following documents:

- A retainer agreement with the Plews Shadley firm that, notably, was signed *the day* the documents were produced (and dated just *the day before*);

- Her objections in the *In re Southwest Airlines Voucher Litig.* and *Suarez v. Anheuser-Busch Companies, LLC* matters;

- Three emails with her sister and co-objector, Rendee Bullard;

- Two orders from the Second Circuit Court of Appeals in *Crema, et al. v. Am. Med. Ass'n, et al.*;

---

[1] For her part and as explained below, Objector Bullard has evaded service of the subpoena to her, and her counsel has refused to accept service.

- A certificate of service in the *The Am Med. Ass'n., et al. v. United Healthcare Corp., et al.* action (including only four of the eight pages identified on the docket entry produced); and

- A declaration filed by Cozby related to a requested appeal bond in the *The Am. Med. Ass'n* matter.

(*See* August 19, 2015 Letter from Justin A. Allen producing documents (the "Allen Letter"), attached as Exhibit 4.) This production is troubling and necessitates Cozby's deposition for a number of reasons.

First, despite filing her objection on July 20, 2015 (dkt. 126), the production shows that Cozby did not enter into a written retention agreement with her attorneys until August 19, 2015—only *after* she was ordered to produce one. (Exhibit 2, at 38-40.) Cozby's counsel attempted to explain away the delay in execution as just the "customary" practice of drafting agreements as "the representation takes shape." (*See* Sept. 28, 2015 Letter from Christopher Braun at 3, attached as Exhibit 5; *see also* Sept. 15, 2015 Letter from Benjamin H. Richman, attached as Exhibit 6.) Setting aside whether such a custom even exists, it still raises several important questions about (i) the scope of Cozby's relationship with her attorneys, (ii) what representations Cozby's attorneys made to her (if any) regarding her representation, (iii) whether Cozby sought Plews Shadley's services or whether they solicited her to act as an objector, and (iv) who else (if anyone) assisted in representing Cozby prior to her entering into the written agreement with Plews Shadley.

Likewise, Cozby has not produced any agreements with attorneys outside of the Plews Shadley firm related to this matter—in particular, agreements with any referring attorneys— despite the fact that the privilege log and documents produced identify attorney Dennis Gibson as both a referring attorney and co-counsel in this case. (*See* Plews Shadley Resp. at 10, 12-14,

16, attached as Exhibit 7.) And while Cozby's counsel has expressly represented that neither "Mr. Gibson or his firm…is entitled to receive any portion of the attorney's fees (or other recovery on Ms. Cozby's behalf) in this case[,]" (Exhibit 5, at 4), that appears not to be true. Indeed, in an email produced by Plews Shadley, Cozby's lead attorney confirms exactly the opposite:

> [T]his will confirm that we will proceed with retaining you as our local/co-counsel on a contingency fee basis, with you receiving 25% of the recovery. ***PSRB and our co-counsel, Dennis Gibson, will split the remainder equally at 37.5% each***.

(*See* Exhibit 7, at 16 (emphasis added).)

The relationship and communications with Gibson are also notable given that he is Cozby's current employer and has previously acted as her co-objector in at least one other matter, which happened to be before this Court. *See, e.g., In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, at *2 (N.D. Ill. Aug. 26, 2013) (noting that "Dennis Gibson and Gleith Cozby" filed an objection "jointly"); *see also* Gleith Cozby, LinkedIn, https://www.linkedin.com/pub/gleith-cozby/2a/b83/802 https://www.linkedin.com/pub/gleith-cozby/2a/b83/802 (last visited Sept. 22, 2015); Why Bridgemark Should Be Your Strategic Partner for NonSubscription: Bridgemark Arbitration and Nonsubscriber Consultants, LLC, http://bridgemarkns.com/ (last visited Sept. 22, 2015).[2]

Ultimately, Plaintiff, the Settlement Class and the Court are entitled to much more than that and therefore, Cozby's deposition should now proceed. *See, e.g., In re Netflix Privacy Litig.*,

---

[2]     The only other documents produced appear to be random filings in courts throughout the country that do not provide context for the scope of Cozby's involvement in those matters, or even the full documents filed. For example, while some filings related to the *The Am. Med Ass'n, et al.* class action settlement and appeal have been produced, Kolinek did not receive Cozby's objection itself. That, of course, is troubling because, among other things, it shows that she (or her attorneys) provided only a limited portion of the documents requested and ordered to be produced, and confirms that Cozby's concerns with the settlement were ultimately resolved in some form but that any documents memorializing that resolution have been withheld.

No. 11-cv-379, 2013 WL 6173772, at *5 (N.D. Cal. Nov. 25, 2013) (allowing discovery "bearing on the Objectors' standing, financial relationships with their counsel, and motivations for appeal"); *Yarrington v. Solvay Pharmaceuticals, Inc.*, 697 F. Supp. 2d 1057, 1063 n.1 (D. Minn. 2010) (noting serial objector's failure to disclose relationships to clients).

The same is true with respect to Cozby's co-objector (and sister), Rendee Bullard, who has refused to produce anything whatsoever. Though several attempts have been made, Bullard has successfully evaded service of the subpoena and her counsel have refused—without explanation—to accept it on her behalf.[3] However, rather than commit additional time and expense to attempting to serve Bullard and further delaying these proceedings, Plaintiff believes the more efficient route is simply to take limited testimony from her as well.

### III. Franz's Deficient Document Production Necessitates Her Deposition.

Objector Franz's document production fairs no better—she has produced a mere four documents:

- A retainer agreement with her attorneys at Lacy Price;

- Her claim form receipt in this matter;

- The postcard notice she received in the mail regarding the Settlement; and

---

[3]     Class Counsel originally received electronic confirmation from their process server that the subpoena to Ms. Bullard had been served on August 7, 2015. (*See* Declaration of Benjamin H. Richman ¶ 3, attached as Exhibit 1.) They therefore communicated the same to Bullard's counsel and demanded her response. (*See* Exhibit 4, at 3.) Following additional meet and confers with Bullard's local counsel, Class Counsel learned that the original e-mail confirmation of service was made in error—they have been unable to serve Bullard. (Richman Decl. ¶ 4.) Accordingly, Class Counsel requested—again through Bullard's local counsel—that Bullard accept service. (*Id.* ¶ 5.) Although local counsel was originally open to the idea, Bullard's lead counsel at PSRB later responded that neither they nor their local would accept service and went on to accuse Class Counsel of intentionally making false representations regarding service on Bullard and otherwise acting "reprehensibl[y] and sanctionabl[y]." (Exhibit 5, at 2.) Despite PSRB's colorful letter, Class Counsel didn't misrepresent anything. The process server made a mistake, and as soon as Class Counsel became aware of it, they notified Bullard's counsel that service had not been effectuated.

- An account statement showing her cellular phone number registered to a Sprint account in her name.

(*See* Franz Resp., attached as Exhibit 8.)

Though the documents establish that she received notice and filed a claim, they raise several other concerns. For instance, while Franz produced her retention agreement with her attorneys at the Lacy Price firm,[4] she has failed to produce any agreements with any other attorneys. In particular, her counsel's privilege log identifies Christopher T. Cain—an attorney and noted serial objector (*see* dkt. 137-1 at 50 – 52)—as having participated in each purportedly privileged communication between July 15, 2015 (prior to the date Franz filed her objection) and the present. (*See* Lacy Price Resp. at 6, attached as Exhibit 10.) That revelation is especially troubling in light of the fact that Franz's lead counsel at Lacy Price has repeatedly denied Mr. Cain's involvement in response to several requests for clarification in that regard. (*See, e.g.,* Sept. 15, 2015 E-mail from Rafey S. Balabanian, attached as Exhibit 11.)[5] Ultimately, whether Cain is an attorney on the case or not, Plaintiff is entitled to understand his role in the objection, his motivations here, and what (if anything) he stands to gain as a result of that involvement.

In addition, Franz has failed to provide any information regarding her own potential pecuniary gain as a result of her counsel's recovery of attorneys' fees in this case. That is, Franz is married to Michael R. Franz, who is also an attorney at the Lacy Price firm. (*See* Sept. 11, 2015 Letter from W. Allen McDonald at 2, attached as Exhibit 12; *see also* Sept. 8, 2015 Letter

---

[4]    Franz's lead counsel also produced an email that contains a one-line agreement engaging local counsel in the case. (*See* Aug. 11, 2015 E-mail from W. Allen McDonald, attached as Exhibit 9.)

[5]    Franz obviously cannot have it both ways. Either (i) Cain has acted as an attorney in this matter (contrary to her counsel's previous representations), or (ii) he is not an attorney on the case, which would negate any claim of privilege and render improper any withholding of responsive documents on the basis of the claimed privilege.

from Benjamin H. Richman at 2-3, attached as Exhibit 13.) Thus, to the extent that relationship

(or any agreement) entitles him to receive any portion of an attorneys' fee award to the firm or

other recovery for Objector Franz in this matter, Plaintiff is entitled to understand that and the

extent to which Ms. Franz will share in it.[6] *In re Netflix Privacy Litig.*, No. 11-cv-379, 2013 WL

6173772, at *5 (allowing discovery "bearing on the Objectors' standing, financial relationships

with their counsel, and motivations for appeal"); *Yarrington*, 697 F. Supp. 2d at 1063 n.1

(noting serial objector's failure to disclose relationships to clients).

Finally, Lacy Price's privilege log itself does not identify a single communication

between Franz and her counsel whatsoever. (*See* Exhibit 10, at 6.) That too raises several

questions about the scope of Franz's relationship with her counsel, the extent to which she was

aware of the objections being made on her behalf and any subsequent filings, and the motivations

behind the filing of her objection in the first instance. Again, the Parties, the Class and the Court

are entitled to understand those issues. (*See* Aug. 12, 2015 Hearing Transcript at 20:24-25.) At

this point, however, rather than unnecessarily delay these proceedings with further meet and

confers, Plaintiff believes the most appropriate way forward is to take a limited deposition.

## IV.   Nash's Deficient Document Production Necessitates Her Deposition.

Similarly, Objector Nash has produced only a random assortment of filings she and her

counsel have made in other matters.[7] Beyond that, she responds by simply claiming that she "has

---

[6]      Ms. Franz's counsel has previously represented only that there is no "partnership" agreement that would entitle Mr. Franz to any compensation or other benefit as a result of his wife acting as an objector in one of the firm's cases. (*See* Exhibit 12, at 2.) That of course begs the question of whether an understanding between Mr. Franz and his law firm exists in some other form.

[7]      Although Nash did produce some documents related to objections that she has filed in other cases, even a cursory Internet search makes clear that she did not produce all of them— including several in which she was represented by the same counsel as in this case. *See, e.g., In re Apple iPhone Prod. Liab. Litig.*, No. 1-md-02188 (N.D. Cal.) (represented by Cox); *Lee v.*

no documents responsive to" each and every other request. Thus, she has not produced any retention agreement with her attorney, any document supporting the substance of her objection, nor any communications with anyone about the objection. (*See* Nash Resp., attached as Exhibit 14.) Moreover and like his counterparts here, Nash's attorney produced a "privilege log" that failed to identify a single communication with Nash either prior to or throughout the prosecution of her objection. (*See* Cox Resp. at 7-8, attached as Exhibit 15.)[8] To say such a production is opaque would be an understatement.

In other words, Nash and her counsel have provided absolutely no information to establish that (i) Nash knew the objection was being filed at all, (ii) was involved in any way with its prosecution, (iii) is aware of the substantive bases of her objection, (iv) has agreed to any sort of fee or prosecution arrangement with her attorney, nor (v) what benefit (if any) she expects as a result of bringing her objection. All of that information, of course, is relevant to the instant proceedings, was already ordered by the Court to be produced, and seriously calls into question the motivations behind Ms. Nash's and her counsel's pursuit of her objections here. *See, e.g., In re Netflix Privacy Litig.*, 2013 WL 6173772, at *5; *Yarrington*, 697 F. Supp. 2d at 1063 n.1; (*see also* Aug. 12, 2015 Hearing Transcript, at 20:24–21:13.)

Accordingly and for the same reasons discussed with respect to the other Objectors above, Plaintiff respectfully requests leave to take a limited deposition of Ms. Nash as well.

---

*Enterprise Leas. Company-West*, No. 10-cv-00326 (D. Nev.) (represented by Cox); *In re AT&T Sales Tax Litig.*, No. 10-cv-02278 (N.D. Ill.) (represented by objector Gary Sibley to this action); (*see also* dkt. 137-1 at 43 – 46). Thus, it is clear her production is deficient on that front alone.

[8] In addition to the documents included in Exhibit 15, Cox also produced the July 10, 2015 Federal Communications Commission Declaratory Ruling and Order. Because the order is 138 pages and for the sake of efficiency, Plaintiff has not attached it here.

## V.     Objector Streight's Failure to Meaningfully Engage in the Discovery Process Necessitates her Deposition.

Finally, despite being properly served with the same subpoena as her co-Objectors and her counsel communicating (albeit sporadically) with Class Counsel about it (*see* E-mail Exchange Between Jay Edelson and Brent Vullings, attached as Exhibit 16; *see also* E-mail Exchange Between Benjamin H. Richman and Brent Vullings, attached as Exhibit 17), Objector Streight has failed to respond in any meaningful way. Indeed, after numerous attempts to meet and confer with Streight's counsel, he finally produced only Ms. Streight's personal prescription records, which aside from containing incredibly sensitive personal information about her,[9] speak nothing to any of the issues in this case. In particular, the records do not address the fact that Ms. Streight is not actually a Class Member (*see* dkt. 137-1 at 47 – 49), that she originally filed her objection *pro se* despite the fact that she was admittedly represented by counsel (*id.*), nor her failure to provide any other response to the subpoena whatsoever.

Given Streight's complete lack of responsiveness and again, for the sake of completing the outstanding discovery in a reasonably efficient manner, Plaintiff respectfully requests leave to take a limited deposition of Ms. Streight as well.

## VI.     Conclusion.

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order (i) granting him leave to depose Objectors Gleith Cozby, Rendee Bullard, Melinda Franz, Paige Nash and Lyndy Streight related to their objections in this matter, and (ii) awarding such other and further relief as the Court deems reasonable and just.

---

[9]     Given the sensitive nature of the records and their lack of relevance here, Plaintiff does not attach them to the instant motion.

Respectfully submitted,

**ROBERT KOLINEK**, individually and on behalf
of the Settlement Class,

Dated: October 2, 2015    By: /s/ Benjamin H. Richman
         One of Plaintiff's Attorneys

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Ryan D. Andrews
randrews@edelson.com
Benjamin H. Richman
brichman@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

## CERTIFICATE OF SERVICE

I, Benjamin H. Richman, an attorney, hereby certify that on October 2, 2015, I served the above and foregoing ***Plaintiff's Motion for Leave to Take Limited Depositions of Objectors Gleith Cozby, Rendee Bullard, Melinda Franz, Paige Nash and Lyndy Streight***, by causing a true and accurate copy of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this the 2nd day of October 2015.

/s/ Benjamin H. Richman