**Edelson PC**

350 North LaSalle Street, Suite 1300, Chicago, Illinois 60654
t 312.589.6370 f 312.589.6378

www.edelson.com


September 15, 2015

<u>**VIA ELECTRONIC MAIL**</u>

Christopher Braun
cbraun@psrb.com
Justin A. Allen
jallen@psrb.com
Plews Shadley Racher & Braun
1346 North Delaware Street
Indianapolis, Indiana 46202

Arthur J. Howe
howe@howe-llc.com
Howe Law LLC
155 North Wacker Drive, Suite 450
Chicago, Illinois 60606

   <u>Re: *Kolinek v. Walgreen Co.*, No. 13-cv-4806 (N.D. Ill.)</u>

Dear Counsel:

  We write to address several outstanding discovery issues as they relate to your firm and your clients. As an initial matter, we've reviewed the motion for leave to serve a subpoena on our firm that you filed last night. (Dkt. 181.) Setting aside its procedural deficiencies, it's obvious for a number of reasons that the motion is just an attempt to retaliate for our pursuit of discovery from you and your clients.

  For one, the motion is incredibly untimely. If you truly believed any of the requested information was necessary to your evaluation of the settlement or our request for attorneys' fees (as you represent in the motion), we would have expected you to seek it at the time you filed your objections (or really, before you raised them) and certainly before briefing was completed. Under the circumstances, the idea that the information is "necessary" to your evaluation just can't be true.[1]

  The requests aren't well founded from a substantive perspective either. As to your first request, we quoted and discussed the substance of the retention agreement with Kolinek in his

---

[1]  Similarly, despite Art raising the issue of discovery from our firm following the hearing on August 12th, you delayed more than a month (and, again, until after briefing was completed) to raise the issue.

final approval papers. (*See* dkt. 105-1 at 15; *id.* at 33 ¶ 26.) To the extent you need additional information in that regard, it's unclear why that would be and your motion offers no explanation. As to the second, the Court already denied Objector Franz's request for the production of our detailed time records (and even records broken down by the categories of the work performed). (*See* dkts. 152, 154.) Had anyone at the Plews Shadley firm appeared at the hearing, perhaps you would have known that. And with respect to the third request, it's not clear why you believe we've acted as objectors' counsel previously or even if we had, what the relevance of that would be here. That said, we assume you're referring again to the NCAA concussion litigation, but you clearly misunderstand our role in and the procedural posture of that matter.

For all of these reasons, we'd ask that the motion be withdrawn no later than Thursday, September 17th. If you are unwilling to do so, we plan to file a response with the Court. In the meantime, we're happy to meet and confer with you regarding the information requested. Per Art's e-mail earlier, we suggest speaking tomorrow at 1:00 p.m. CT.

Separately, we want to address the several deficiencies in your clients' and your firm's responses and document production,[2] including that:

- Ms. Bullard has entirely failed to respond to the subpoena served upon her;

- The handful of documents produced on behalf of Ms. Cozby are clearly non-exhaustive of the responsive information in her possession, custody or control;

- The specific and general objections you raise are (in large part) improper and must be deemed waived;

- Many of the specific objections asserted by your firm have already been overruled by the Court; and

- Several of your firm's written responses and the related documents produced are deficient and non-exhaustive as well.

Each of these issues is laid out in further detail below. If after you've had a chance to review the below you'd like to speak further, we are happy to do that as well. Please just let us know a couple of times that work for you to speak.

---

[2] In light of the withdrawal of their objections, we no longer intend to pursue responses to the subpoenas served on Ms. Hughes and Ms. Oldham. However, as detailed in Section III below, we do intend to pursue responses to the subpoena served on your firm as they relate to Ms. Hughes and Ms. Oldham.

**Edelson PC**  *Kolinek v. Walgreen Co.*
September 15, 2015
Page 3 of 11

I.  **Ms. Bullard Failed to Respond to the Subpoena that was Properly Served Upon Her and has Otherwise Acted Improperly.**

As an initial matter and despite your representations to the Court, Ms. Bullard was, in fact, properly served with the subpoena issued to her. Specifically, the subpoena was delivered to her personally (and she confirmed receipt by signature) on August 7, 2015, at 9:45 a.m. Given that, in the event Ms. Bullard does not respond to the subpoena (including by producing all relevant discoverable documents and information in her possession, custody or control) by the close of business on Friday, September 18th, we intend to seek an order holding her in contempt and awarding all other available relief, including the fees and costs incurred in seeking such an order. *See* Fed. R. Civ. P. 37(b)(2); *see Langley v. Union Elec. Co.*, 107 F.3d 510, 514 (7th Cir. 1997) (quoting *Philips Medical Systems Int'l, B.V. v. Bruetman*, 982 F.2d 211, 214 (7th Cir. 1992)) ("Rule 37 sanctions may . . . be imposed where a party displays 'wilfulness, bad faith, or fault.'").[3]

Separately, Ms Cozby's limited document production (discussed further below) seemingly confirms that Ms. Bullard improperly filed a Claim Form on behalf of her mother—former Objector Sharon Hughes. (*See* July 2, 2015 E-mail from Rendee Bullard to Gleith Cozby.) Indeed, to properly complete the Claim Form, Ms. Hughes (or in this case her daughter, Ms. Bullard) was required to affirm *under penalty of perjury* that she received one or more prerecorded telephone calls from Walgreens. Because Ms. Hughes is not a class member and did not receive the calls at issue that affirmation was clearly inaccurate. To the extent Ms. Hughes provided Ms. Bullard consent to sign the Claim Form on her behalf and did so in writing, we'd ask that any documents confirming as much be produced immediately, but in any event no later than the close of business on September 18th.

II.  **Ms. Cozby's Document Production is Deficient.**

A.  The Documents Produced by Ms. Cozby are Non-Exhaustive.

Next, although Ms. Cozby produced some documents in response to the subpoena, her production falls short of compliance as well. First, while Kolinek requested (and the Court ordered) the production of documents supporting Ms. Cozby's class membership, retainer agreements for *all* actions in which she has objected, communications with other individuals (including objectors), all documents she has *ever filed* as an objector to a proposed settlement, and all documents that relate to any communications between herself and her attorneys at your firm prior to the attorney-client relationship, she has only provided a handful of limited (and in some instances, incomplete) documents, including:

- A retainer agreement with your firm that, notably, was signed the day the documents were produced (and dated just the day before);

---

[3]  We also ask that you correct your inaccurate statements in the record regarding service of the subpoena on Ms. Bullard. (*See* dkt. 144 at 2 n.2); *see also* ABA Model Rule 3.3(a) ("A lawyer shall not knowingly … make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer.").

- Her objections in the *In re Southwest Airlines Voucher Litig.* and *Suarez et al, v. Anheuser-Busch Companies, LLC* matters;

- Three emails with her sister—Ms. Bullard (who as described above, has failed to comply with the subpoena served upon her)—regarding the action;

- Two orders from the Second Circuit Court of Appeals in *Crema, et al. v. Am. Med. Ass'n, et al.*;

- A certificate of service in the *The Am. Med. Ass'n, et al v. United Healthcare Corp., et al.* action (including only 4 of the 8 pages identified on the docket entry); and

- A declaration filed by Ms. Cozby related to a requested appeal bond in the *The Am. Med. Ass'n* matter.

This production is troubling for a number of reasons.

First, though you have clearly represented Ms. Cozby since the filing of her objection on July 16, 2015 (and, we assume, before then as well), you apparently did not enter into a written retention agreement with her until after being ordered by the Court to produce one. That timing is curious to say the least and raises several important questions—e.g., what the scope of your relationship with Ms. Cozby was prior to entering into the written agreement; what representations were made to Ms. Cozby regarding your representation prior to entering into the written agreement; whether Ms Cozby sought your services or you solicited her to act as an objector; and who else (if anyone) assisted in your representation of Ms. Cozby prior to entering into the written agreement. *See In re Netflix Privacy Litig.*, No. 11-cv-379, 2013 WL 6173772, at *5 (N.D. Cal. Nov. 25, 2013) ("Plaintiffs may seek information from objectors to obtain relevant, needed, and reasonably narrowly tailored information regarding each objector's standing as a settlement class member to assert objections, the underlying basis for his objections, and his relationship with counsel that may be pertinent to informing the court about the nature and merits of the appeal.") (citing *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 532–33 (N.D. Cal. 2012)). Without that information it is impossible to understand the relationship Cozby has with your firm, her knowledge (or lack thereof) of the proceedings on her behalf, or her motivations (and yours) in bringing the objection, which are all topics that the Court specifically found to be relevant and discoverable here. *See id.* (*See also* Aug. 12, 2015 Hearing Transcript at 20:24–21:3 (noting that documents sought "directly relate[] to matters that are potentially at issue in the case.").)

Second, Ms. Cozby has not produced any documents showing that she subscribed to the telephone number called by Walgreens, that she used the phone number during the relevant period of time, or that *she* otherwise received the calls at issue, despite the fact that Judge Kennelly found that such information "directly relates to matters that are potentially at issue in the case." (Aug. 12, 2015 Hearing Transcript at 20:25–21:3.) For example, Ms. Cozby could

have produced account statements from her wireless carrier identifying the subscriber to the relevant account or her wireless bills from the relevant period. (The various wireless carriers have policies and procedures in place to obtain such information.) At the very least, Ms. Cozby was required (but failed) to explain what efforts she made to obtain such records and why those efforts have been unsuccessful thus far. (*See* Subpoena Rider to Gleith Cozby at 2; *see also* Dkt. 156.)[4]

Third, Ms. Cozby has not produced any agreements with attorneys outside of your firm related to this matter—e.g., her local counsel and any referring attorneys. The Illinois, Indiana, and ABA Model Rules of Professional Conduct all require her to have agreed, in writing, to the fee sharing agreement between your firm and any other attorneys working on the matter. *See* ABA Model R.P.C. 1.5(e) ("A division of a fee between lawyers who are not in the same firm may be made only if . . . the client agrees to the arrangement, including the share each lawyer shall receive, and the agreement is confirmed in writing."); *see also* Ill. R.P.C. 1.5(e); Ind. R.P.C. 1.5(e). To date, we have not received a copy of any such "agreement[s] . . . confirmed in writing," as to the relationship between your firm and any other attorneys working on the matter. Similarly, your privilege log identifies communications between your office and several other attorneys, including attorneys Dennis Gibson (Ms. Cozby's employer and co-objector in at least one other case), Allen McDonald, Jonathan Fortman, Steve Miller, and John Kress, but we've received nothing with respect to your (or her) arrangements (if any) with any of those individuals. To the extent any of those attorneys stand to gain anything as a result of a recovery by Ms. Cozby (or Ms. Bullard), any agreements (written or otherwise) to that effect must be produced as well.

Mr. Gibson's involvement, in particular, bears special attention. Mr. Braun previously represented to us that each of the objections filed by your firm—including Ms. Hughes's and Ms. Oldham's—had been "referred" to him by a "friend in Texas." Based on our own investigation, we now believe that "friend" was Mr. Gibson. Particularly notable, Mr. Gibson is Ms. Cozby's current employer and has acted as her co-objector in at least one other matter before Judge Kennelly. *See, e.g., In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, at *2 (N.D. Ill. Aug. 26, 2013) (noting that "Dennis Gibson and Gleith Cozby" filed objection "jointly"). Setting aside the fact that no referral agreement with Mr. Gibson has been produced, Ms. Cozby has also failed to provide any information regarding her own potential pecuniary gain as a result of Mr. Gibson's firm recovering attorneys' fees in this case. In other words, if any agreement entitles Mr. Gibson to receive any portion of an attorneys' fee award (or other recovery on Ms. Cozby's behalf) in this case, Plaintiff is entitled to understand that and the extent to which Ms. Cozby will share in it—e.g., by way of her own employment agreement with Mr. Gibson, a year-end bonus, preferential treatment at work, or the like. *See, e.g., In re Netflix Privacy Litig.*, 2013 WL 6173772, at *5 (allowing discovery "bearing on the Objectors' standing, financial relationships with their counsel, and motivations for appeal");

---

[4] Obviously, Ms. Bullard's apparent filing of a false Claim Form on her mother's behalf (discussed above) raises serious questions about each of your client's credibility and further calls into question their status as Class Members. Thus, the requested information regarding the phone calls Ms. Cozby (and Ms. Bullard) purport to have received is particularly relevant.

*Yarrington v. Solvay Pharmaceuticals, Inc.*, 697 F. Supp. 2d 1057 (D. Minn. 2010) (noting serial objector's failure to disclose relationships to clients).

The remainder of Ms. Cozby's production appears to be nothing but random filings in courts throughout the country that do not provide any context for the scope of Ms. Cozby's involvement in those matters, or even the full documents filed. (*See* Aug. 12, 2015 Hearing Transcript at 20:24–21:3 (finding requested documents "directly relate[] to matters that are potentially an issue in the case.").) For example, while some filings related to the *The Am. Med. Ass'n, et al.* class action settlement and appeal have been produced, we did not receive Ms. Cozby's objection itself. That is troubling for a few reasons—namely, (i) it shows that Ms. Cozby (or her attorneys) provided only a portion of the documents requested and ordered to be produced, and more importantly, (ii) it confirms that Ms. Cozby's concerns with the settlement were ultimately resolved in some form, but that any documents, communications or other memorialization of that resolution have been withheld. We ask that Ms. Cozby produce any and all such documents in her possession, custody or control no later than close of business on September 18th.

B. <u>Ms. Cozby's Objections are Deficient</u>.

Next, many of Ms. Cozby's written objections are improper as well. Thus, if she has withheld any otherwise relevant and responsive documents based upon those objections, they must be produced immediately (and again, no later than close of business on September 18th).

i. *Ms. Cozby's Relevance Objections Have Already Been Overruled.*

As an initial matter, Ms Cozby's relevance objections have already been overruled by the Court. (*See* Objections to Request Numbers 1, 2, 5, 7, 8.) In particular, the Court held that "the requests for retainer agreements are relevant . . . the requests for documents that show whether the person is actually a class member [are] relevant, and the rest of it . . . directly relates to matters that are potentially at issue in the case." (Aug. 12, 2015 Hearing Transcript at 20:24–21:3.) Accordingly, to the extent Ms. Cozby has withheld any documents based upon those objections, they must be produced immediately.[5]

ii. *Ms. Cozby Failed to Properly Assert Her Privilege Objections.*

Next, Ms. Cozby's privilege/confidentiality objections (in response to Document Requests 1, 2, 5, 6, 7, and 8) are similarly insufficient and are not a proper basis for withholding responsive

---

[5] Even if the Court had not specifically found the requested documents to be relevant, your objections would still fail. *See Fudali v. Napolitano*, 283 F.R.D. 400, 403 (N.D. Ill. 2012) (finding boilerplate objections of the type used here an "insufficient basis to refuse to comply with discovery"). Courts frequently view these sorts of boilerplate objections as "tantamount to not making any objection at all." *Id.* And given that Ms. Cozby voluntarily inserted herself into the litigation by objecting, information related to her class membership, the "merits and motivations behind" her objections, and her relationship with her counsel is especially relevant. *In re Netflix Privacy Litig.*, 2013 WL 6173772, at *2, 5.

documents. To properly assert an objection based on privilege or confidentiality, an individual must "describe the nature of the documents [or] communications . . . not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5); *see Ritacca v. Abbott Labs.*, 203 F.R.D. 332, 335 (N.D. Ill. 2001). "The mere naked claim of privilege…does not justify a refusal to identify or produce the information and documents requested." *In re Aircrash Disaster Near Roselawn, Ind. Oct. 31, 1994*, 172 F.R.D. 295, 307 (N.D. Ill. 1997). Instead, the individual must produce a detailed privilege log, *see* Fed. R. Civ. P. 26(b)(5), that "identif[ies] 'for each separate document the following information: the date, the author and all recipients, along with their capacities, the subject matter of the document, the purpose for its production and a specific explanation of why the document is privileged.'" *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 218 (N.D. Ill. June 4, 2013); Fed. R. Civ. P. 26(b)(5)(A).

Here, rather than provide the detailed privilege log required—let alone any privilege log—Ms. Cozby merely makes the bare assertion that Document Requests 1, 2, 5, 6, 7, and 8 seek information that is "confidential or protected by attorney-client privilege." Without more, those objections "fail to meet [Ms. Cozby's] burden of establish[ing] the applicability of the privilege," and she is required to produce all information responsive to Kolinek's requests. *Allendale Mut. Ins. Co. v. Bull data Sys., Inc.*, 145 F.R.D. 84, 88 (N.D. Ill. 1992) ("Any failure to comply with [privilege log requirements] will result in a finding that the . . . discovery opponents have failed to meet their burden of establish[ing] the applicability of the privilege."); *see Brogren v. Pohland*, No. 94-cv-6301, 1994 WL 654917 at *1 (N.D. Ill. Nov. 14, 1994) (collecting cases on the waiver of objections not properly made within the alotted time period). We ask that she does so no later than close of business on September 18th.

   *iii.*  ***Ms. Cozby's Availability Objections Lack Merit.***

Ms. Cozby also objects on the basis that the documents sought "are part of the public record or are readily available to Class Counsel," (*see* Responses to Document Requests 3, 4, 7), but fails to explain how they are "readily available" or where Class Counsel can find them. That assertion is inaccurate anyway. For instance, there is no way for Class Counsel to guarantee that they will find every objection that Ms. Cozby and Ms. Bullard have ever filed in state court actions, derivate actions, private attorney general actions, or arbitration proceedings. Additionally, to Class Counsel's knowledge, Ms. Cozby's phone records are not publically available (let alone equally available to them), nor are the documents that support her objection—as Class Counsel has no way of knowing exactly what she relied on in determining to file and proceed with her objection.

To the extent these objections are meant to describe the requests as overly burdensome (it is not clear), "the mere fact that [Ms. Cozby may] be required to expend a considerable amount of time, effort, or expense in answering the [subpoenas] is not a sufficient reason to preclude discovery." *Schaap v. Executive Indus., Inc.*, 130 F.R.D. 384, 387 (N.D. Ill. 1990). Accordingly, Ms. Cozby must supplement her responses and production in this regard as well.

> iv.  *Ms. Cozby's General Objections Likewise Fail.*

Finally, it is well settled that the sorts of "general objections" asserted by your client that are "made without elaboration…are not 'objections' at all-and will not be considered." *Novelty, Inc. v. Mountain View Mktg., Inc.*, 265 F.R.D. 370, 375 (S.D. Ind. 2009). For that reason, and because such general objections lack the sufficiency required by the Federal Rules of Civil Procedure, they are in essence without legal meaning and may be treated as if they have been waived. *See, e.g.*, *In re Folding Carton Antitrust Litig.*, 83 F.R.D. 260, 264 (N.D. Ill. 1979) ("General objections may result in waiver of objections."); *see also Burkybile v. Mitsubishi Motors Corp.*, No. 04-cv-4932, 2006 WL 2325506, at *6 (N.D. Ill. Aug. 2, 2006) (collecting cases rejecting "reflexive invocation[s] of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.") (internal quotations and citation omitted). Here, Ms. Cozby has provided no basis for her general objections (i.e., objecting that unnamed requests are "compound" and "duplicative," that they request information that is "at least equally available to Kolinek," and that they seek irrelevant and privileged information) without explaining to which requests the objections are referring, let alone providing any detail beyond their boilerplate nature. Accordingly, these objections are all improper and to the extent any documents have been withheld on those bases, they must be produced immediately.

**III. Your Firm's Document Production is Deficient.**

Turning next to your firm's written responses and document production, they similarly fall short of compliance as well.

> A.  <u>Your Firm's General Objections Fail</u>.

First and as discussed above, general objections of the sort lodged by your firm are not only insufficient to justify withholding responsive documents, they are plainly improper. Even if such rote recitations were appropriate, they are particularly off base here given the Court's August 12th and 24th Orders. Specifically, your firm's relevance objection (General Objection No. 5), has already been overruled by the Court—Judge Kennelly specifically found that the requests to which you were ordered to respond sought relevant information. (Dkt. 171.) The same goes for your boilerplate overbreadth, burden, vagueness, and ambiguity objections, which were likewise overruled by the Court. (*Id.*)

To the extent any otherwise relevant and responsive information has been withheld on the basis of the general objections, we ask that it be produced no later than the close of business on September 18th.

> B.  <u>Your Firm's Privilege Log Lacks the Requisite Specificity</u>.

Next, your firm's privilege log fails to provide sufficient information to allow Plaintiff to adequately assess the claims of privilege. *See Petrovic v. City of Chicago*, No. 06-cv-6111, 2007 WL 2410336, at *1 (N.D. Ill. Aug. 21, 2007) ("Any privilege log must be detailed enough

to enable the other parties to assess the applicability of the privilege asserted . . . ."). For instance, while the log purports to list each attorney privy to the supposedly privileged communications, it does not identify other parties to those communications, or at least confirm that no other individuals were involved. *See Muro v. Target Corp.*, No. 04-cv-6267, 2006 WL 3422181, at *3 (Nov. 28, 2006) ("To that end, the asserting party must produce a privilege log that identifies for *each* separate document the following information: the date, the author and *all* recipients, along with their capacities, the subject matter of the document, the purpose for its production, and a specific explanation of why the document is privileged.") (second emphasis added).

Likewise, while the log makes several assertions that communications relate to the supposed "common interest" of several objectors, it fails to provide sufficient detail to determine the applicability of the common interest exception,[6] including, *inter alia*, by identifying (a) what the common interests actually are, (b) whether the communications were made in a confidential manner, and (c) whether any party to the communications has otherwise waived the privilege for the disclosed information. *See id.*; *see also Blair v. Professional Transp., Inc.*, No. 14-cv-18, 2015 WL 1013566, at *3 (S.D. Ind. Mar. 9, 2015). Based on the information available, it appears that the documents are not in fact privileged, as the common interest exception is "secured only if *the parties'* collective communications are afforded the same protection as their communications with their individual attorneys." *Blair*, 2015 WL 1013566, at *3. Here, none of the communications are between the objectors themselves, but rather, are among their counsel. Moreover, they even include attorneys who are not representing *any* party to this action.

Accordingly, you must supplement your privilege log, and we request that you do so no later than the close of business on September 18th. Failing to do so may result in waiver of the asserted privileges (to the extent they are valid objections to begin with) and require the production of any documents or information identified in the deficient log. *See Allendale*, 145 F.R.D. at 88.

    C.    <u>The Substance of Your Firm's Responses and Document Production is Also Deficient</u>.

In addition to its improper objections, the substance of several of your firm's responses and its document production are deficient. Each are taken in turn below.

First, your response to Document Request 1 is deficient in that your firm, like Ms. Cozby, has failed to produce any phone records, billing statements, or other document demonstrating that Ms. Cozby and Ms. Bullard (and not some other individuals) used the

---

[6] While your firm's privilege log makes reference to the "common interest privilege," "it bears emphasizing that the common interest doctrine 'is not an independent source of confidentiality,'" but rather "an exception to the general principle that disclosure of confidential, privileged information to third parties waives any applicable privilege." *Reginald Martin Agency, Inc. v. Conseco Med. Ins. Co.*, 460 F. Supp. 2d 915, 917–18 (S.D. Ind. 2006) (quoting *BASF Aktiengesellschaft v. Reilly Indus., Inc.*, 224 F.R.D. 438, 440 (S.D. Ind. 2004)).

telephone numbers called and received the calls at issue. (*See* Aug. 12, 2015 Hearing Transcript at 20:25–21:3.) Again, to the extent that you do not intend to produce them, you must explain what efforts (if any) have been made to obtain the records (e.g., from the relevant wireless carrier) and why those efforts have been unsuccessful thus far. (*See* Subpoena Rider to the Custodian of Records for Plews Shadley Racher & Braun LLP at 3; *see also* dkt. 171.)

Likewise, your firm has failed to produce any documents supporting the objections originally filed by Objectors Hughes and Oldham. Those documents are relevant inasmuch as they bear on serious Rule 11 concerns raised by your firm's filing of the objections in the first instance—e.g., the investigation (or lack thereof) into Ms. Hughes's and Ms. Oldham's class membership, your representation of those individuals, and your (and their) motivations for bringing the objections (despite the lack of class membership). (*See* Aug. 12, 2015 Hearing Transcript at 20:24–21:3 (noting that requests "directly relate[] to matters that are potentially at issue in the case.")); *see also In re Netflix Privacy Litig.*, 2013 WL 6173772, at *5 (allowing discovery from objectors where requests "seek[] information regarding the merits and motivations behind the Objectors' appeals as well as their relationships with Counsel.").

Next, your responses to Document Requests 9 through 16 are deficient on their face for three reasons. First, the privilege objection is off-base, as documents relating to retention and fee arrangements are not privileged. *See Epstein v. Am. Reserve Corp.*, No. 79-cv-4767, 1985 WL 2598, at *3 (N.D. Ill. Sept. 18, 1985) ("[F]ee arrangements are not ordinarily subject to the attorney-client privilege."); (*see also* Aug. 12, 2015 Hearing Transcript at 20:24-25 (finding that the "requests for retainer agreements are relevant.").) Indeed, setting aside the concerns we have with them, you've produced agreements with two of the four objectors. Second, your firm's relevance objection is misplaced, given the Court's holding that the requests "directly relate[] to matters that are potentially at issue in the case." (Aug. 12, 2015 Hearing Transcript at 20:25–21:3.) And third (as noted above), these requests are particularly important as they bear on Ms. Hughes and Ms. Oldham given the questions that surround your firm's investigation into and motivations for bringing those objections. *See In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 124, 131 (S.D.N.Y. 1999) ("Moreover, where, as here, an objector to a class action settlement pursues an unmeritorious appeal in order to pursue a 'strategy of tactical disruption and delay,' he 'should be aware of Rule 11.'") (quoting *In re Ivan F. Boesky Sec. Litig.*, 948 F.2d 1358, 1368 (2d Cir. 1991)). Thus, to the extent that your firm has withheld documents pursuant to those objections, it must produce any such documents promptly.

Additionally, your firm's responses to Document Requests 20 and 21 are deficient and require supplementation. Specifically, while your firm objects that these requests are no longer relevant given that Hughes and Oldham have withdrawn their objections, it ignores the fact that documents responsive to these requests would bear on other issues relative to your firm, specifically—again, your investigation into Ms. Hughes's and Ms. Oldham's purported class membership and reasons for pursuing the objections. Moreover, given that Ms. Cozby and Ms. Bullard did not execute their retainer agreements with your firm until *after* they were served with Plaintiff's subpoenas, whether Ms. Hughes and Ms. Oldham did the same (or ever executed such agreements at all) would reveal evidence of the scope of their involvement (if any) in their own objections and again, your motivations (and theirs) for agreeing to pursue the objections in the first instance.

**Edelson PC**  *Kolinek v. Walgreen Co.*
September 15, 2015
Page 11 of 11

                \*                \*                \*

We look forward to hearing from you.

                                                Sincerely,

                                                EDELSON PC

                                                Benjamin H. Richman

CC VIA ELECTRONIC MAIL:    Jay Edelson (jedelson@edelson.com)
                                        Rafey S. Balabanian (rbalabanian@edelson.com)