**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT KOLINEK, et al.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 13 C 4806** |
| | ) | |
| **WALGREEN CO.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

In July 2013, Robert Kolinek filed suit against Walgreen Co. (Walgreens) on behalf of a class of similarly situated Walgreens customers. Kolinek alleged that Walgreens had made unsolicited calls to him and other current and former customers on their cellular telephones in violation of the Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S.C. § 227(b)(1)(A)(iii). After a period of contested litigation, the parties engaged in mediation, conducted by the Honorable Wayne R. Andersen, a highly respected retired judge of this court. The parties agreed to a class-wide settlement of Kolinek's claims that would provide both injunctive and monetary relief to members of Kolinek's putative class. The Court preliminarily approved the settlement in April 2015 and also approved a program of individual notice to potential class members, combined with publication notice.

Kolinek has moved for final approval of the proposed class settlement. Kolinek has also requested an incentive award, and his counsel have petitioned for an award of

attorney's fees and costs. A number of class members have submitted objections challenging the settlement, the proposed fee award, and the incentive award. One of those objectors, Todd Spann, has also moved for attorney's fees for his counsel. For the reasons stated below, the Court grants final approval of the settlement agreement and grants Kolinek's petition for fees, costs, and an incentive award. The Court also denies objector Spann's motion for attorney's fees.

**Background**

**A.     History of the litigation**

As indicated above, Kolinek filed this suit in July 2013. According to his complaint, Kolinek first filled a prescription at a Walgreens store sometime between early 2002 and 2012. At the time, the Walgreens pharmacist told Kolinek that his phone number "was needed for verification purposes (*i.e.*, if another customer named Robert Kolinek attempted to fill a prescription at the same Walgreens, the pharmacist would be able to confirm the correct person using the phone number on record)." Compl. ¶ 18. In early 2012, Kolinek began receiving prerecorded calls from Walgreens on his cellular telephone reminding him to fill his prescriptions at a Walgreens pharmacy. Kolinek alleged that Walgreens made these "refill reminder" calls as a means to increase its share of the pharmacy market, contacting millions of customers who had previously filled prescriptions at Walgreens stores to encourage them to do so again in the future. Kolinek claimed that Walgreens had not obtained those customers' prior express consent to make those calls. Accordingly, Kolinek alleged that Walgreens had violated the TCPA, which provides:

> It shall be unlawful for any person within the United States . . . to make
> any call (other than a call made for emergency purposes or made with the

2

> prior express consent of the called party) using . . . an artificial or
> prerecorded voice . . . to any telephone number assigned to . . . a cellular
> telephone service . . . .

47 U.S.C. § 227(b)(1)(A)(iii). Each violation of the TCPA carries with it $500 in statutory

damages, and willful violations carry $1500 in statutory damages.

Walgreens moved to dismiss Kolinek's complaint for failure to state a claim. In its

motion, Walgreens argued that Kolinek and his putative class of similarly situated

individuals consented to receive prescription reminder calls by providing their cellular

telephone numbers to Walgreens. Alternatively, Walgreens argued that even without

prior express consent, the calls were "made for emergency purposes," 47 U.S.C.

§ 227(b)(1)(A), and therefore did not violate the TCPA. Following full briefing of these

issues, the Court granted Walgreens's motion to dismiss. The Court observed that the

TCPA does not define "prior express consent" but that pursuant to the Administrative

Orders Review Act (more commonly known as the Hobbs Act), the Federal

Communications Commission's (FCC) interpretation of the prior express consent

defense is binding on federal district courts. Citing the FCC's statement that "persons

who knowingly release their phone numbers have in effect given their invitation or

permission to be called at the number which they have given, absent instructions to the

contrary," *In re Rules & Regs. Implementing Tel. Consumer Prot. Act of 1991*, 7 FCC

Rcd. 8752, 8769 ¶ 31 (Oct. 16, 1992) ("1992 Order"), the Court held that Kolinek had

given Walgreens "prior express consent" and his claim was therefore barred. The Court

dismissed Kolinek's complaint with prejudice. *See Kolinek v. Walgreen Co.*, No. 13 C

4806, 2014 WL 518174 (N.D. Ill. Feb. 10, 2014) (*Kolinek 1*).

Kolinek then filed a motion to reconsider, which Walgreens opposed. Kolinek

3

argued that the Court had misunderstood the FCC's 1992 Order and its other orders interpreting the prior express consent defense. In particular, Kolinek directed the Court's attention to FCC orders issued in 2008, 2012, and 2014, the last one issue shortly after the Court dismissed the case. Those orders together indicated to the Court "that the FCC considers the scope of a consumer's consent to receive calls to be dependent on the context in which it is given—contrary to what the Court had seen in the 1992 Order as a general rule that consent for one purpose means consent for all purposes." *Kolinek v. Walgreen Co.*, No. 13 C 4806, 2014 WL 3056813, at *3 (N.D. Ill. July 7, 2014) (*Kolinek 2*). The Court held that if discovery proved true Kolinek's allegation that he gave his number only when asked to provide it for verification purposes (an allegation that the Court at that juncture was required to take as true, see *Rooni v. Biser*, 742 F.3d 737, 738 (7th Cir. 2014)), Walgreens would be unable to prevail on a prior express consent defense. *Kolinek 2*, 2014 WL 3056813, at *4. The Court also noted that further factual development might reveal that Kolinek and other members of the putative class gave their cell phone numbers to Walgreens in a manner that would constitute prior express consent, but that this could not be demonstrated before undertaking discovery. *Id.*

Due to the time that had passed since the initial briefing on Walgreens's motion to dismiss, the Court asked the parties to present their arguments on Walgreens's alternative basis for dismissal—that the prescription reminder calls fell under the TCPA's emergency purposes exception—via oral argument. Both parties participated in oral argument before the Court in July 2014. In August 2014, the Court issued a written order rejecting Walgreens's emergency purposes argument, explaining:

4

> If the agency charged with interpreting the TCPA—namely, the Federal
> Communications Commission—had read the exception as covering any
> call to a customer about prescriptions, prescription refills, or anything of
> the sort, that interpretation would not only bind the Court but would also
> dictate the conclusion in this case.  *See CE Design, Ltd. v. Prism Bus.*
> *Media, Inc.*, 606 F.3d 443, 449–50 (7th Cir. 2010).  But in fact there is no
> such interpretation of the TCPA by the FCC.  The allegations in the
> complaint do not say enough about the nature or contents of the call
> to make it appropriate to dismiss the complaint at this stage of the case
> based on this particular affirmative defense.  As with the express consent
> defense, further factual development is necessary.

*Kolinek v. Walgreen Co.*, No. 13 C 4806, dkt. no. 66, at 2 (N.D. Ill. Aug. 11, 2014)

(*Kolinek 3*).  The Court therefore denied Walgreens's motion to dismiss, whereupon

Walgreens answered Kolinek's complaint, denying any and all liability and asserting

numerous affirmative defenses.  *See* Def.'s Answer, dkt. no. 68.

After Walgreens answered the complaint, the parties began to discuss the

possibility of settlement.  Informal discovery transpired, and the parties had

teleconferences throughout August and September 2014, when they agreed to

participate in private mediation.  They engaged in a day-long mediation session with

retired Judge Wayne Andersen on October 15, 2014, at the close of which Kolinek

made a settlement proposal.  Walgreens counteroffered a week later, and on October

24, 2014, the parties came to an agreement in principle to resolve the case and avoid

protracted litigation, subject to additional confirmatory discovery.

Prior to mediation, the parties informally exchanged information regarding the

prescription refill reminder program, including the ways in which Walgreens obtained

telephone numbers, how it obtained consent, how the calls were made, and how

Walgreens kept its records.  Kolinek also served formal written discovery requests, and

his counsel took the deposition of Walgreens's Rule 30(b)(6) witness, Christopher

Helzerman, in January 2015. Kolinek learned through discovery that Walgreens typically collected customers' phone numbers when they provided personal information in the course of filling or refilling prescriptions. Walgreens would ask customers to identify whether the phone numbers provided were cell phones or landlines. Although Walgreens allegedly determined that it would make prescription refill reminder calls only to landlines, numerous customers ultimately received calls on their cellular phones. Kolinek also learned that Walgreens provided call recipients an easy way to opt out of receiving future calls (by simply pressing "8" on their dial pads), but over the life of the program only 1.5% of all recipients opted out. Meanwhile, many customers appreciated the calls, and customers often used the system to refill their prescriptions at Walgreens.

On March 26, 2015, Kolinek moved for preliminary approval of a class-wide settlement. The Court instructed class counsel to make certain changes to the proposed claim form. Once the claim form was revised to comply with the Court's instructions, the Court granted preliminary approval of the settlement on April 3, 2015.

**B. The settlement agreement and proposed fee awards**

Walgreens provided Kolinek and Kurtzman Carson Consultants (KCC), a third party administrator, with records that identified the phone numbers to which it had placed prescription refill reminder calls. KCC analyzed the data and determined that roughly 9.2 million of the numbers dialed were cell phones. The proposed settlement defines the settlement class as including all individuals in the United States to whom Walgreens placed a prerecorded prescription refill reminder call to their cellular phone. These individuals, if they did not opt out of the settlement, would agree to release any and all claims against Walgreens based on its making of prerecorded prescription refill

6

reminder calls in exchange for both prospective and retrospective relief from Walgreens.

Prospectively, the settlement requires Walgreens to implement new safeguards to ensure that it knows whether the phone numbers in its database belong to cellular telephones, including expert analysis, third-party data, and improved customer confirmation practices. Walgreens also agrees to provide customers with the option to elect to receive or stop receiving prescription reminder calls. Walgreens has promised to implement this prospective relief within a year of the effective date of the settlement.

Retrospectively, the settlement requires Walgreens to establish a settlement fund of $11 million, from which will be drawn all claim awards, administrative costs, and any incentive and attorney's fee awards. Each class member who submitted a valid claim no later than fourteen days before the Court's final approval hearing will be entitled to a *pro rata* share of the money remaining in the settlement fund after those settlement administration expenses, incentive awards, and attorney's fee awards have been deducted. The settlement also provides that uncashed checks issued to claiming class members and other unclaimed money remaining in the settlement fund after payment of all approved claims, expenses, and awards will be distributed to settlement class members with approved claims unless doing so is impracticable, in which case the Court will direct the parties as to what to do with the funds. If so many settlement class members submit approved claims that the *pro rata* share of the fund available to each claimant will be less than fifteen dollars,

> each claiming Settlement Class Member will have a second opportunity to exclude himself or herself from the Settlement (the "downstream opt-out"), provided that he or she exercises such option within forty-five (45) days after the Settlement Administrator has posted notice of the amount of the payment per Approved Claim on the settlement website. In such instance, Walgreens may choose in its discretion to pay such Settlement Class

Members who have submitted Approved Claims the difference between
the amount they received under the Settlement and fifteen dollars ($15),
thereby mooting the downstream opt-out.

Class Action Settlement Agreement, dkt. no. 98-1 ¶ 2.1(f).

As indicated above, the settlement agreement contemplates that the settlement
fund will provide reimbursement of expenses, an attorney's fee award for Kolinek's
counsel, and an incentive award for Kolinek. In his motion for approval of attorney's
fees, expenses, and incentive award, Kolinek seeks roughly $3.15 million to cover the
costs of notice and settlement administration; $2,824,200 in attorney's fees
(representing 36% of the settlement fund after deducting from the total amount the costs
of notice and administration pursuant to *Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th
Cir. 2014), and *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014), and
the value of an incentive award for Kolinek); and a $5,000 incentive award for Kolinek.

## Discussion

**A.      The objections**

The notice sent to the class set a deadline for submission of objections. Timely
objections were submitted jointly by Gleith Cozby, Sharon Hughes, Christinna Oldham,
and Rendee Bullard, and individually by Melinda Franz, Phyllis Mehl, Betty Morgan,
William Mann, Robert Habermann, Rebecca Thomas, Pamela Sweeney, Paige Nash,
Lyndy Streight, Gary Sibley, Todd Spann, and Michael Beskine. Hughes, Oldham, and
Spann ultimately withdrew their objections to the proposed settlement.

Several other apparent objections were sent to one or more of the attorneys,
including those submitted by Isela Gonzales, Lisa Ray, Ashley McClure, and Dr.
Kenneth M. Hoffman, but these did not meet the preliminary approval order's

requirements for objections. Neither did objections filed by Jimmy Fuzzell and Rita Hartsell, whose objections were received after the deadline for submitting objections, and those filed by Mehl, Habermann, and Thomas, all of whom failed to provide their telephone numbers as required by the preliminary approval order. The Court has nonetheless considered the points made by all who submitted objections.

**B.    Certification of the proposed settlement class**

The proposed settlement class is defined as "all individuals in the United States to whom Walgreens placed a Prerecorded Prescription Call to their cellular telephone," The term Prerecorded Prescription Calls is defined as "any prerecorded voice prescription refill reminder call to a cellular telephone placed by Walgreens and/or any third parties acting on its behalf." Settlement Agreement, dkt. no. 137-1, at 121–22.

The first question the Court must address is whether the class meets the requirements for class certification set forth in Federal Rule of Civil Procedure 23. A court may certify a class if the party seeking certification meets all the requirements of Rule 23(a) and the requirements of Rule 23(b)(1), (2), or (3). *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006).

**1.    Rule 23(a) requirements**

Rule 23(a) requires the party seeking certification to demonstrate that the members of the class are so numerous that joinder is impracticable (numerosity); there are questions of law or fact common to the proposed class (commonality); the class representative's claims are typical of the claims of the class (typicality); and the representative will fairly and adequately represent the interests of the class (adequacy of representation). Fed. R. Civ. P. 23(a)(1)–(4). Numerosity is typically satisfied where

there are at least forty members of a putative class. *See, e.g.*, *Pruitt v. City of Chicago*, 472 F.3d 925, 926–27 (7th Cir. 2006). Commonality "requires the plaintiff to demonstrate that the class members 'have suffered the same injury' . . . ." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). "Their claims must depend on a common contention" that "must be of such a nature that it is capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551. Typicality is satisfied when a plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Lastly, the adequacy of representation requirement involves two inquiries: whether the plaintiff's attorney is qualified, experienced, and capable of conducting this type of litigation, and whether the named plaintiff's interests are not antagonistic to those of the class. *See, e.g.*, *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

It is undisputed that the proposed class meets the numerosity requirement. Over nine million individuals allegedly received prerecorded prescription refill reminder calls from Walgreens on their cellular telephones.

A small handful of objectors claim that the settlement class should not be certified because commonality is lacking, Kolinek is not an adequate representative of the class, or his claims are not typical of the class. Citing the Supreme Court's recent grant of certiorari in *Spokeo v. Robins*, 135 S. Ct. 1892 (2015), objector Streight

10

contends that Kolinek is an inadequate representative because he has not sustained an injury-in-fact and thus cannot demonstrate standing to sue in federal court. Objector Sibley argues that Kolinek is an inadequate class representative and his claims are atypical because some class members received numerous prescription refill reminder calls from Walgreens, and those class members' potential damages for Walgreens's violations of the TCPA are therefore much higher than those available to a class representative alleging only one or a few TCPA violations. Objector Nash makes a general claim (without explaining her rationale) that the class lacks commonality and that Kolinek's claim is not typical of the claims of the class, and objector Beskine alleges that Kolinek's counsel is inadequate to represent the interests of the class because class counsel was not sufficiently diligent.

The Court disagrees with all of these contentions and finds that the claims of the proposed class satisfy Rule 23(a)'s commonality, typicality, and adequacy of representation requirements. First, Kolinek's proposed settlement class satisfies commonality. Each class member suffered the same alleged injury, namely, receipt of at least one prerecorded prescription refill reminder call to the class member's cellular telephone without the recipient's prior express consent. The claims of all class members depend on the resolution of a key common question: whether prescription refill reminder calls violate the TCPA when they are prerecorded and recipients receive them before ever affirmatively consenting to them.

Second, Kolinek's claims are typical of even the claims of class members who received multiple prescription refill reminder calls to their cellular phones. Typicality is satisfied when the named plaintiff's claim and those of the class members have a

11

common legal theory, even if there are some factual variations. *Oshana*, 472 F.3d at 514. Kolinek's claim that Walgreens violated the TCPA when it placed a prerecorded prescription reminder call to his cellular phone satisfies Rule 23(a)'s typicality requirement because the class consists of all persons who received such calls. The number of times other class members received prescription reminder calls is immaterial to the question whether those claims arise from the same course of conduct and share a common legal theory.

Finally, Kolinek and his counsel are adequate representatives of the class. As a preliminary matter, the Supreme Court's grant of certiorari in *Spokeo* has no bearing on this case. Kolinek's adequacy as a representative of this class is unaffected by the Supreme Court's decision to address whether an individual who has not alleged any physical or economic harm has standing to sue for statutory damages under the Fair Credit Reporting Act. *See Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014). For one thing, the Supreme Court has not issued a decision regarding whether a party seeking purely statutory damages has standing to sue. More important, however, is the fact that Kolinek's complaint does allege actual economic harm: Kolinek claims that Walgreens made calls to his cellular telephone number and that as a result he incurred charges from his cellular phone service provider. Kolinek has standing to sue under Supreme Court precedent, and *Spokeo* is inapposite.

The adequacy of representation requirement is intended to "uncover conflicts of interest between the named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). No objectors have argued, and there is no evidence on the record to suggest, that Kolinek's interests are adverse to those of

12

the settlement class. Furthermore, and as the Court will explain in greater detail below, class counsel have performed satisfactorily on behalf of the class and have demonstrated their competence in representing the class's interests. For these and the reasons stated above, the Court overrules the objectors' arguments and finds that Kolinek has satisfied all of the requirements of Rule 23(a).

**2.    Rule 23(b) requirements**

Rule 23(b) sets forth circumstances under which a class action may be maintained. In this case, Kolinek relies on Rule 23(b)(3), which permits class certification if "questions of law or fact common to class members predominate over any questions affecting only individual members" and class resolution is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry "trains on the legal or factual questions that qualify each class member's case as a genuine controversy," with the purpose being to determine whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623.

Several objectors contend that the settlement class does not meet the predominance requirement because numerous individuals who qualify as members of the settlement class were happy to receive the calls. Importantly, these objectors do not suggest that they or some percentage of the class provided prior express consent to receive prescription reminder calls in any other way than by providing their cellular telephone number in the same or similar way Kolinek did. Rather, they argue that because these individuals wanted to receive prescription refill reminder calls at the time they provided Walgreens their phone numbers, they effectively consented to be called

13

and should not be included in the settlement class.  These objectors claim that as a result, the settlement class is overly broad, which dilutes the class and decreases the value of the individual recovery that claiming class members with valid claims will enjoy.

The problem with these objections is that they incorrectly equate appreciating Walgreens's prescription refill reminder calls or declining to opt out of receiving them with the issue of legal significance, namely, whether recipients provided prior express consent to receive prerecorded phone calls.  Irrespective of the class members' pleasure or displeasure with receiving prescription refill reminder calls, common questions at the heart of this class's suit against Walgreens include whether, as a matter of law, providing a cellular telephone number for verification purposes constitutes prior express consent to receive prescription refill reminder calls; whether, as a matter of law, prescription reminder calls fall under the TCPA's emergency purpose exception; and if not, whether, as a matter of fact, Walgreens placed prerecorded or automated prescription refill reminder calls to those cellular phones.  These common questions are the main questions in this case, and they predominate over individual issues that might also exist.

For these reasons, the Court overrules the objectors' arguments and concludes that the proposed class meets the requirements for certification under Rule 23(b)(3).

## C.    Approval of proposed settlement

A court may approve a class action settlement only upon a finding that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  This requires consideration of a number of factors, including:  (1) the strength of the plaintiff's case compared to the defendant's settlement offer; (2) the complexity, length, and expense of

continued litigation; (3) the amount of opposition to the settlement; (4) the opinion of experienced counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). The "most important factor" is the first one—the relative "strength of plaintiffs' case on the merits balanced against the amount offered in the settlement." *Id.* (internal citation and quotation marks omitted). A court must also ensure that a proposed settlement is not the product of collusion. *See Eubank v. Pella*, 753 F.3d 718, 721 (7th Cir. 2014).

### 1.    Strength of plaintiffs' case as compared to settlement offer

To determine the strength of a settling class action plaintiff's case, a court must determine the "net expected value of continued litigation to the class." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002). Upon determining the net expected value of litigation, the court must "estimate the range of possible outcomes and ascribe a probability to each point on the range." *Synfuel Techs.*, 463 F.3d at 653. The Seventh Circuit has recognized that valuing hypothetical continued litigation is necessarily speculative and therefore an inexact science. A court is expected only to estimate and come to a "ballpark valuation." *Reynolds*, 288 F.3d at 285; *see also Eubank*, 753 F.3d at 727 (noting that a district judge must "estimate the likely outcome of a trial" in order to measure the adequacy of a proposed settlement).

The proposed settlement requires Walgreens to pay $11 million into a settlement fund out of which all fees and awards will be paid, the remainder of which eligible class members who made a timely claim will receive a *pro rata* share (and possibly more, if other claimants do not deposit their checks). As objectors Cozby, Bullard, and Franz

point out, this settlement results in miniscule compensation if considered on a per-class-member basis and pales in comparison to the potential recovery plaintiffs could earn if they prevailed at trial.  As noted above, the TCPA provides for $500 per violation and $1500 per willful violation.  If all 9.2 million class members proved they each suffered at least one TCPA violation, they would stand to recover at least $500 each and $4.6 billion total; by contrast, if all class members submitted valid claims under this $11 million settlement, each member would recover a paltry $1.20.

This argument is not well founded under Seventh Circuit law, for two reasons. First, the recovery for plaintiffs is comparable to the recovery plaintiffs have collected in similar TCPA cases.  These objectors are right that this $11 million settlement equates to roughly $1.20 per class member, but that number is misleading because it is premised on the assumption that every class member will submit a valid claim.  The reality is that in a class action settlement like this one, there is never a one-hundred percent claim rate or anything close to it.  Here, roughly 230,000 class members have submitted valid claim forms, which means the settlement will result in recovery of approximately thirty dollars per claimant.  Although thirty dollars per claimant "falls on the lower end of the scale," it is nonetheless "within the range of recoveries" in TCPA class actions.  *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015); *Rose v. Bank of Am. Corp.*, Nos. 11 C 2390 & 12 C 4009, 2014 WL 4273358, at *10–11 (N.D. Cal. Aug. 29, 2014).

Second, the Court's duty is not simply to measure the settlement value against the possible value of a plaintiff's total victory following trial.  It is true that thirty dollars per claimant is substantially less than the $500 statutory recovery available for each

unlawful phone call Walgreens allegedly made. But Kolinek winning at trial and securing complete recovery for all nine million class members is but one potentiality, and it is a dubious one at that. The "range of possible outcomes" that the Seventh Circuit directs courts to consider, *Synfuel Techs.*, 463 F.3d at 653, also includes total non-recovery, and in light of the facts of this case, the probability of that possible outcome is significant.

For one thing, if Kolinek were to take this case to trial, he would be faced with rebutting Walgreens's defenses that he and his fellow class members provided prior express consent to receive prescription refill reminder calls and that these calls were made for an emergency purpose and are therefore not unlawful. Although Kolinek withstood Walgreens's motion to dismiss on both grounds, the Court observed in its written orders as to both issues that further factual development might prove that plaintiffs did indeed consent or that the calls were made for emergency purposes. *See Kolinek 2*, 2014 WL 3056813, at *4; *Kolinek 3*, No. 13 C 4806, dkt. no. 66, at 2.

In addition, manageability concerns would arise if this case went to trial, which might seriously imperil Kolinek's bid for class certification and ultimately deprive Kolinek of the benefits of the class action device. Pursuant to Rule 23(b)(3)'s predominance requirement, courts must consider class members' interest in prosecuting separate actions; the extent and nature of any other litigation over the controversy; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and any likely difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3)(A)–(D). The last of these factors—manageability—diminishes in importance when the request, as in this case, is for settlement-only class certification. *Amchem Prods.*, 521 U.S. at

620.  Matters would be different were the case to proceed to trial.  Identifying

consenting class members and determining the timing and nature of such consent

would require significant discovery and might require individual determinations, which

might undermine manageability enough to destroy predominance.  *See, e.g.*,

*Balschmiter v. TD Auto Finance LLC*, 303 F.R.D. 508, 527–29 (E.D. Wis. 2014);

*Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (denying certification

of class in TCPA litigation where the "parties would need to scour [the defendant's]

records" in order to determine consent).  Considering how Walgreens vigorously

litigated its defenses in briefing the motion to dismiss and motion to reconsider, it is

highly likely that, absent settlement, Walgreens would have equally vigorously opposed

class certification, and it might have prevailed.

Finally, without prompt and final resolution through settlement, Kolinek and the

plaintiff class would face the realistic probability that the FCC might reinterpret the

TCPA in such a way as to extinguish Kolinek's claims and render any recovery

impossible.  As now-retired Judge James Holderman observed, the FCC frequently

issues orders interpreting or reinterpreting the TCPA.  *See In re Capital One*, 80 F.

Supp. 3d at 791.  And as this Court expressed in its earlier orders regarding

Walgreens's motion to dismiss, the FCC's interpretations are binding on the Court.

*Kolinek 2*, 2014 WL 3056813, at *4; *Kolinek 3*, No. 13 C 4806, dkt. no. 66, at 2.  If, for

example, the FCC were to issue an order in which it determined that prior express

consent exists when a consumer, when filling a prescription, volunteers her cellular

telephone number for verification purposes, then Kolinek's claim—and the claims of the

other nine million people in the settlement class—would likely vanish.  This could

18

happen at any time, and prosecuting this litigation through discovery and a trial would only allow a greater opportunity for the FCC to issue such an interpretation.

As other judges in this district have recognized, "a settlement is a compromise, and courts need not—and indeed should not—'reject a settlement solely because it does not provide a complete victory to plaintiffs.'" *In re Capital One*, 80 F. Supp. 3d at 790 (quoting *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (*AT&T Mobility 1*)); *see American Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, Nos. 07 C 2898 & 07 C 2026, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012). Were Kolinek were to proceed to trial, he would have a tough row to hoe in order to overcome Walgreens's two potentially meritorious defenses and an even tougher one to secure victory. In light of the significant possibility that Kolinek would recover nothing for the class if he proceeded with litigation and the fact that the per-claimant recovery under this settlement is comparable to the per-claimant recoveries in other TCPA cases, the Court finds that this factor weighs in favor of approval.

### 2. Complexity, length, and expense of future litigation

In *Synfuel Technologies*, the Seventh Circuit instructed courts to consider the likely complexity, length, and expense of continued litigation when determining whether a class action settlement satisfies Rule 23(e)(2). *Synfuel Techs.*, 463 F.3d at 653. These factors weigh heavily in favor of approval of settlement in this case. If the Court approves the proposed settlement agreement, this case will end, and class members will be entitled to the retrospective and prospective relief Walgreens has promised. If, on the other hand, the Court were to deny approval, protracted litigation would ensue. The parties have engaged in limited informal and formal discovery for the purpose of

evaluating settlement, but continued litigation likely would necessitate significant additional discovery.  It is also likely that further motion practice would ensue, and the benefits inuring to the class would be delayed or denied.  The Court finds that the stage of proceedings supports approval of the proposed settlement.

### 3.    Amount of opposition

Significant opposition to a proposed settlement by interested parties should signal to a court that the settlement should not be approved.  *Synfuel Techs.*, 463 F.3d at 653.  The settlement administrator in this case sent individual notices to 10,207,583 class members.  9,053,718 of whose notices were not returned as undeliverable.  Of the 9,053,718 class members whom plaintiff believes its notice plan effectively reached, only twenty individuals[1] (0.0002209%) have objected to the settlement, and only 151 (0.001668%) have opted out.  Such a low level of opposition supports the reasonableness of the settlement.  *See, e.g.*, *In re Capital One*, 80 F. Supp. 3d at 792 (finding opt-out and objection rate of 0.0032% low enough to support settlement); *In re Sw. Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) (finding an opt-out and objection rate of less than 0.01% supportive of the reasonableness of settlement); *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 965 (N.D. Ill. 2011) (*AT&T Mobility 2*) (same).

---

[1] The Court has not included in this number the three objectors who withdrew their objections (Franz, Hughes, and Oldham).  Additionally, although class counsel spent significant ink on arguments that numerous objectors either did not demonstrate their membership in the class, filed an inadequate objection, or objected improperly by enlisting the services of professional objectors to "ghostwrite" their objections, the Court has included all objections that were not withdrawn—procedurally proper and not—in this number, because untimely or procedurally defective opt-outs and objections still signal disapproval of the settlement.

### 4. Opinion of competent counsel

The Seventh Circuit has held that the opinion of competent counsel is relevant to determining the fairness, reasonableness, and adequacy of a class action settlement. *Synfuel Techs.*, 463 F.3d at 653. Class counsel in this case are highly experienced class action litigators who strongly support the proposed settlement. This factor weighs in favor of approval.

### 5. Stage of proceedings and amount of discovery completed

The final *Synfuel Technologies* factor is the stage of proceedings and the amount of discovery completed. *Id.* Courts are to consider this factor in order to determine "how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 325 (7th Cir. 1980). Two objectors, Streight and Beskine, argue that the limited discovery the parties completed was insufficient to place the Court and counsel in a position to evaluate the strength of the settlement agreement.

Kolinek filed this case in July 2014. After filing, the parties litigated Walgreens's motion to dismiss at three different junctures (initial briefing on both prior express consent and emergency purposes, briefing on reconsideration of the Court's prior express consent holding, and oral argument on the emergency purposes exception). After Walgreens provided its answer and affirmative defenses, the parties engaged in informal discussions and served and responded to written discovery requests. The plaintiffs also took the deposition of Walgreens's Rule 30(b)(6) witness, and they engaged in mediation that included the exchange of multiple settlement proposals. The parties and the Court are therefore well positioned to assess the strength of this case

21

and the merits of Kolinek's claims, and this factor therefore weighs in favor of approval.

### 6.    Absence of collusion

In three recent decisions, the Seventh Circuit has trained its eye on collusion in class action settlements.  *See Pearson*, 772 F.3d at 778; *Eubank*, 753 F.3d at 721; *Redman*, 768 F.3d at 622.  In class action suits, named plaintiffs typically exercise little control over class counsel, and the class has little or no ability to hold accountable either the named plaintiffs or class counsel.  This can lead them to agree to a settlement that lets the defendant off the hook, rewards class counsel and the named plaintiff with large awards, and leaves the class in the lurch.  Courts are thus expected to scrutinize proposed class settlement agreements for signs that the named plaintiff or class counsel settled on a final award that more adequately serves the interests of the defendant, the named plaintiff, or class counsel than it does the interests of absent class members.

Nothing on the record before the Court suggests that this proposed settlement has been tainted by collusion.  Before entering into settlement discussions, the parties vigorously litigated this case.  When Walgreens moved to dismiss Kolinek's case, the parties fully briefed the issues of prior express consent and the emergency purposes exception to TCPA liability.  After the Court initially granted Walgreens's motion, Kolinek moved for reconsideration and submitted a detailed memorandum and supplemental authority.  Walgreens filed briefs and offered supplemental authority in opposition to Kolinek's motion.  Both parties continued to zealously litigate this case after the Court granted Kolinek's motion for reconsideration, presenting oral arguments concerning the emergency purposes exception.  When Walgreens answered the complaint, it denied all

liability and advanced numerous affirmative defenses. The parties were only able to come to an agreement on settlement after engaging in formal mediation with an independent mediator, Judge Andersen. There is no evidence to suggest that the settlement involves any sort of collusion or sells the class short. This factor weighs in favor of approving the settlement.

### 7. Objections to the settlement

Twenty individuals have submitted objections arguing that the Court should not approve the proposed settlement. The Court has addressed some of the objectors' arguments in discussing the factors outlined by the Seventh Circuit for approval of a proposed class settlement. The Court addresses here the remaining salient points made by the objectors, except those concerning the awards requested for class counsel's attorney's fees and as an incentive for Kolinek, which the Court will discuss in Parts D and E of this decision.

### a. General objections to class actions

A majority of the objections submitted to the Court and class counsel express general disapproval of the case and of class action lawsuits in general. As it did in *In re Southwest Airlines*, the Court will borrow the comments of its colleague Judge Amy St. Eve:

> [T]he law recognizes class actions as a legitimate part of the U .S. litigation system. The Supreme Court has made this clear on several occasions. *See, e.g.*, *Gen. Tel. Co. v. Falcon*, 457 U .S. 147, 155 (1982) (explaining that, in appropriate cases, "the class action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23"); *Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any

effective redress unless they may employ the class-action device."). In addition, Federal Rule of Civil Procedure 23 provides for the use of such a procedure.

*AT&T Mobility 2*, 789 F. Supp. 2d at 982.

The Court respects the opinions of objecting class members who do not think this lawsuit should have been filed, are opposed to class actions generally, or take a dim view of lawyers who file class action suits like this one. But the Court respectfully disagrees with those objectors to the extent that they argue that this suit and other suits like it degrade our legal system and serve no purpose but to fill the coffers of class action lawyers. The TCPA is designed to protect the privacy of American consumers and prevent them from incurring charges for automated telephone calls they receive without first giving consent. When a caller violates the TCPA, the consumer who receives the unlawful call endures some amount of economic harm in the cost of the call and also is subjected to annoyance and the intrusion on privacy that results from an unwanted nuisance call. But even if the cost of such a violation is the $500 provided under the statute, the reality is that recovering so small a bounty is unlikely to incentivize many individual plaintiffs to hold defendants accountable for their violations of federal law. With the class action device, the TCPA's purpose can be realized. As the Seventh Circuit has explained,

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997). The Court respectfully suggests that Rule 23 exists precisely as a means to support suits like this one, a

24

lawsuit designed to hold a party accountable for numerous small violations of federal law.

### b.    Objections to the agreed-upon prospective relief

Several objectors protest that the settlement agreement's prospective relief is inadequate and should prevent the Court from approving the settlement.  Some express disapproval of the agreement's prospective relief because they appreciate receiving prescription refill reminder phone calls and are concerned that Walgreens will cease making these calls if the Court approves the settlement.  Others are dissatisfied with the settlement's proposed prospective relief because they contend that Walgreens has merely bound itself to comply with the law in the future.

These objections are not well founded.  First, the settlement agreement does more than simply obligate Walgreens to comply with the law.  As explained above, the settlement will require Walgreens to implement new safeguards to ensure that when it makes prerecorded prescription refill reminder phone calls, it calls only cellular phone numbers belonging to users who have given prior express consent (or landline phone numbers).  These safeguards include the use of expert analysis, third-party data, and improved customer confirmation practices.  Walgreens is also promising to ensure that customers will continue to be able to easily and expeditiously opt out of receiving prescription refill reminder calls.

Second, objections based on a desire to continue receiving Walgreens's calls arise out of a misunderstanding of the proposed prospective relief.  Walgreens intends to continue calling to remind customers to refill their prescriptions; it is promising only to be more careful and to utilize better safeguards to avoid making those calls to cell

phone numbers belonging to consumers who have not provided express consent. The claim form provided to class members makes this clear by giving them the option to submit a claim on the settlement and, at the same time, to continue receiving prescription refill reminder calls. At the bottom of each claim form is a checkbox accompanying the following consent:

> **Voluntary Request to Receive Future Prerecorded Prescription Calls:**
> I now wish to receive Prerecorded Prescription Calls from Walgreens, and I consent to receive such calls. *I understand that providing this consent is not required for me to submit a claim in the settlement, nor is it required for me to purchase any goods or services from Walgreens.*

Dkt. no. 137-1, at 104. Class members who make no claim and thus do not inform Walgreens that they have not given prior express consent will continue to receive prescription refill reminder calls, as will claiming class members who check this box. The Court overrules the objections to the settlement's proposed prospective relief.

### c. Purported cy pres provision

The contention by objectors Streight and Spann (who has withdrawn his objection) that the settlement must be rejected because it includes an impermissible "cy pres" provision is similarly predicated on a misunderstanding of the proposed settlement agreement. The portion of the settlement agreement that these objectors view as an impermissibly vague or "hidden" cy pres provision is section 2.1(e), which provides:

> Any un-cashed checks issued to Settlement Class Members in accordance with this Agreement, as well as any unclaimed funds remaining in the Settlement Fund after payment of all Approved Claims, all Settlement Administration Expenses, the Fee Award to Class Counsel, and the incentive award to the Class Representative shall be distributed to Settlement Class Members with Approved Claims if practicable, or in a manner as otherwise directed by the Court upon application made by Class Counsel.

Settlement Agreement, dkt. no. 137-1, at 125. Objector Streight claims that the

settlement "contemplates a cy pres beneficiary and distribution, but cy pres in [sic] not mentioned in the Class Notice and a beneficiary was not named, which is unfair to the Class." Streight Obj., dkt. no. 119, at 4. Streight claims that a cy pres recipient should have been named in the agreement and notice and that "the parties should have outlined how the cy pres recipient will utilize any remaining funds to benefit absent Class Members." *Id.*

The Seventh Circuit limits the ways in which cy pres provisions may be utilized in class action settlements. *See Mirafasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 784 (7th Cir. 2004); *Mace*, 109 F.3d at 345. Cy pres recovery "is a procedural device that distributes money damages either through a market system (e.g., by reducing charges that were previously excessive), or through project funding (the project being designed to benefit the members of the class)." *Mace*, 109 F.3d at 345. The idea of cy pres in the class action context is that if the administrability of a settlement is unreasonably cumbersome and distributing settlement funds becomes infeasible, it may be appropriate to distribute the funds (or the funds remaining after class members' claims are paid) to an alternative beneficiary to ensure that the defendant does not "walk[] away from the litigation scot-free because of the infeasibility of distributing the proceeds of the settlement . . . ." *Mirafasihi*, 356 F.3d at 784.

Section 2.1(e) of the settlement agreement does not contemplate a cy pres award. Rather, it binds the parties to distribute unclaimed money to class members who do cash their checks unless doing so is not feasible, in which case the parties will look to the Court to instruct them regarding the best course of action. This approach abides by the Seventh Circuit's instruction that "[m]oney not claimed by class members

27

should be used for the class's benefit to the extent that is feasible." *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 689 (7th Cir. 2013). It also permits the parties, should they determine that disbursing leftover funds is not feasible, to use any unclaimed money for a purpose that benefits the class in some way. *See SEC v. Custable*, 796 F.3d 653, 656 (7th Cir. 2015); *Hughes v. Kore of Indiana Enters., Inc.*, 731 F.3d 672, 675–76 (7th Cir. 2013). The Court therefore overrules this objection to the settlement.

### d. Adequacy of notice plan and claims process

Finally, objectors Ray, Mehl, and Streight urge the Court to reject the settlement because the notice plan was inadequate, and Streight further contends that the claims process is "burdensome, unreasonable and unfair." Streight Obj., dkt. no. 119, at 4. For classes certified under Rule 23(b)(3), Rule 23 requires the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). When members of the class can be identified through reasonable effort, they are entitled to individual notice. *Hughes*, 731 F.3d at 676. Courts also commonly evaluate claims processes to ensure they are fair and reasonable and that they are not so burdensome as to discourage class members from submitting claims. *See, e.g.*, *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 590–91 (N.D. Ill. 2011); *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, No. 4:03–MD–015, 2004 WL 3671053, at *14 (W.D. Mo. Apr. 20, 2004). A cumbersome claims process is particularly suspect in the case of a reversionary settlement, that is, a settlement under which the defendant recaptures unclaimed funds. *See Schulte v. Fifth Third Bank*, No. 09 C 6655, 2010 WL 8816289, at *5 (N.D. Ill. Sep. 10, 2010); *see also Pearson*, 772 F.3d at 783 (observing that the

imposition of an unduly burdensome claims process typically stands to benefit defendants who can recover leftover funds).

Objector Ray charges that the notice and claim form she received contained personal information that was visible to anyone who happened to come into contact with her mail, and she asserts that the settlement should be rejected due to this invasion of her privacy and the parties' disregard for the risk that she might become a victim of identity theft. Objector Mehl similarly urges the Court to reject the settlement because she was displeased to be contacted via e-mail without giving consent. The concerns these objectors have expressed are not illusory, but they do not provide grounds for the Court to reject the settlement. As for Streight's objection that e-mail notice does not satisfy Rule 23(c)(2)(B), the Court disagrees, as have other courts in this district. *See AT&T Mobility 1*, 270 F.R.D. at 351.

The Court also disagrees with Streight's contention that the claims process is too burdensome to permit approval of the settlement. First, because the parties seek approval of a nonreversionary settlement fund—Walgreens's total payment to the settlement fund will be $11 million regardless of the number of claims filed—the contention the parties designed the claims process to discourage class members from making claims is a hard one to sell. Second, the claim form used in this case is short and direct. Postage is prepaid on a form that asks each claimant to provide his or her first and last name, street address (including city, state, and ZIP code), and signature (along with printed name and date of signature). Beyond that, claimants are presented with two checkboxes, one they can check to affirm that they wish to make a claim because they received prerecorded prescription refill reminder calls without their prior

express consent, and another they can check if they would like to give Walgreens consent to call them in the future. It is neither unfair nor unreasonable to ask claimants to submit these claim forms in order to recover under the settlement. The Court overrules these objections.

### 8.     Conclusion

After considering all relevant factors, the Court finds that the proposed settlement is fair, reasonable, and adequate. The Court therefore grants the parties' joint motion for final approval of the settlement.

## D.     Attorney's fees and costs

Rule 23 provides that "[i]n a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). This is a "common fund" case, meaning that because the defendant is paying a specific sum in exchange for release of liability to all plaintiffs, equitable principles permit the Court to "determine[] the amount of attorney's fees that plaintiffs' counsel may recover" from the fund "based on the notion that not one plaintiff, but all those who have benefitted from litigation should share its costs." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 563 (7th Cir. 1994) (internal citation and quotation marks omitted). When determining whether a requested fee award is reasonable, a court "must balance the competing goals of fairly compensating attorneys for their services rendered on behalf of the class and of protecting the interests of the class members in the fund." *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988). In common fund cases, courts determine reasonableness by "award[ing] counsel the market price for legal services, in light of the risk of nonpayment and the

normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (*Synthroid 1*).

Kolinek's counsel request a fee award of $2,824,200.00, or 25.675% of the $11 million settlement fund.  More importantly for the Court's purposes, the requested award is 36% of the net settlement fund after subtracting administrative costs and a $5,000 incentive award for Kolinek as named plaintiff.  *See Redman*, 768 F.3d at 630 (The "ratio that is relevant to assessing the reasonableness of the attorneys' fee" in a coupon settlement "is the ratio of (1) the fee to (2) the fee plus what the class members received."); *Pearson*, 772 F.3d at 781 (extending this holding to non-coupon settlements).  Class counsel contend that the market rate for the service they have provided is a thirty percent base contingency fee plus a six percent upward adjustment based on the heightened risk of nonrecovery associated with this litigation.

Numerous objectors contend that the proposed attorney's fee award is excessive and propose alternative methods of valuation.  Some agree that the Court should apply the percentage-of-the-fund method Kolinek's counsel have proposed but contend that thirty percent is too high a base rate and six percent is too high a risk adjustment.  Others argue that the Court should utilize the lodestar approach to determining the appropriate attorney's fee award or that the Court should deem reasonable the percentage requested only if it makes sense in light of a lodestar cross-check.

### 1.    Market rate for legal services

The Seventh Circuit has explained that the "market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in

part on the stakes of the case." *Synthroid 1*, 264 F.3d at 721. "The object in awarding a reasonable attorney's fee . . . is to give the lawyer what he would have gotten in the way of a fee in arm's length negotiation, had one been feasible." *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992). Like estimating the potential outcomes in a hypothetical class action suit litigated through trial, this process is "inherently conjectural." *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 744 (7th Cir. 2011).

In the Seventh Circuit, district courts may exercise discretion in choosing either the lodestar or percentage-of-the-fund approach to calculating attorney's fees in common-fund cases. *See Florin*, 34 F.3d at 566. The Seventh Circuit is agnostic regarding which approach district courts should choose, and no Seventh Circuit case law suggests that a percentage-of-the-fund approach will yield a reasonable result only where it satisfies a lodestar cross-check.

The Court agrees with Kolinek's counsel that the fee award in this case should be calculated based on a percentage-of-the-fund method. Determining the market rate involves securing for the attorney what he would otherwise have bargained for in an arm's length negotiation at the outset of the litigation. *See Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 957 (7th Cir. 2013). Accordingly, one common method of choosing between the percentage and lodestar approaches is to look to the calculation method most commonly used in the marketplace at the time such a negotiation would have occurred. *See Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998). As other courts have observed, the normal practice in consumer class actions is to negotiate a fee arrangement based on a percentage of the plaintiffs' ultimate recovery. *See, e.g., In re Capital One*, 80 F. Supp. 3d at 795. This is so because fee arrangements based on the

32

lodestar method require plaintiffs to monitor counsel and ensure that counsel are working efficiently on an hourly basis, something a class of nine million lightly-injured plaintiffs likely would not be interested in doing.

The Court also agrees with Kolinek's counsel that thirty percent is a reasonable base rate. The Seventh Circuit has elucidated "benchmarks" that can assist courts in estimating the market rate, including the fee contract between the plaintiff and counsel, data from similar cases, and information from class-counsel auctions. *Synthroid 1*, 264 F.3d at 719. As Judge Holderman observed in *In re Capital One*, these are not reliable benchmarks in TCPA class actions like this one. For one thing, the only fee agreement available is the retainer agreement between Kolinek and his attorneys, which is "of little value to determining the market rate because named plaintiffs are less often sophisticated buyers of legal services and more often 'the cat's paws of the class lawyers.'" *In re Capital One*, 80 F. Supp. 3d at 796 (quoting *In re Trans Union Corp. Privacy Litig.*, No. 00 C 4729, 2009 WL 4799954, at *10–13 (N.D. Ill. Dec. 9, 2009)). Additionally, data from pre-suit negotiations and class-counsel auctions in TCPA class actions are basically non-existent. *Id.*; *Wilkins v. HSBC Bank Nev., N.A.*, No. 14 C 190, 2015 WL 890566, at *10 (N.D. Ill. Feb. 27, 2015).

*In re Capital One* and *Wilkins*, the two cases upon which Kolinek's counsel most heavily rely, dealt with proposed settlements featuring common funds much larger than the one Walgreens will establish in this case. Based on empirical studies and his analysis of other common fund cases not brought under the TCPA, Judge Holderman determined that in both cases "an *ex ante* negotiation between class counsel and prospective TCPA class members would [have] yield[ed] a downward scaling fee

33

arrangement." *Wilkins*, 2015 WL 890566, at *10; *In re Capital One*, 80 F. Supp. 3d at 803–04. The hypothetical downward scaling fee agreement at which Judge Holderman arrived was based on the fee schedule estimated by the Seventh Circuit in *In re Synthroid Marketing Litigation*, 325 F.3d 974 (7th Cir. 2003) (*Synthroid 2*), which held that a district court was within its discretion when it awarded class counsel 30% of the first $10 million recovered and a lesser percentage of each additional $10 million recovered. Kolinek suggests that this is evidence that the standard market rate for legal services in TCPA class actions resulting in a sub-$10 million recovery for plaintiffs is thirty percent.

Relying heavily on a handful of California district court cases, objectors Franz, Cozby, and Bullard argue that courts simply do not grant requests for thirty-percent market rate awards. As the Seventh Circuit has held, attorney's fee awards in analogous class action settlements shed light on the market rate for legal services in similar cases. *Taubenfeld v. Aon Corp.*, 415 F.3d 597, 600 (7th Cir. 2005). But as Kolinek rightly points out, the decisions upon which these objectors rely are not analogous to this one because unlike the Seventh Circuit, the Ninth Circuit instructs district courts to calculate 25% of the common fund as the "benchmark" for a reasonable fee award and then provide an explanation of any "special circumstances" that might justify a departure from that benchmark. *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). By contrast, a thirty percent fee award is not unusual in the Seventh Circuit in common fund cases in which recovery is less than $10 million. *See, e.g.*, *Taubenfeld*, 415 F.3d at 598–600 (holding that district court was

34

within its discretion in awarding lead counsel 30% of a $7.25 million settlement fund); *In re Cont'l Ill. Sec. Litig.*, 962 F.2d at 572 (explaining that in class actions, "the usual range for contingent fees is between 33 and 50 percent"); *Bridgeview Health Care Ctr., Ltd. v. Jerryclark*, No. 09 C 5601, 2015 WL 4498741, at *2 (N.D. Ill. July 23, 2015) (awarding one-third of common fund in TCPA class action); *Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.*, No. 09 C 0776 (N.D. Ill. Jan. 14, 2011) (awarding one-third of common fund in multimillion dollar TCPA class action). And even though common fund cases in which plaintiffs recover more than $10 million are not perfectly analogous, the fact that courts in this circuit regularly allow attorneys to recoup one-third of the first $10 million of the class action settlement fund is, at the very least, instructive. *See, e.g.*, *Synthroid 2*, 325 F.3d 980 ("We . . . give consumer class counsel 30% of the first $10 million . . . ."); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11 C 4462, 2015 WL 1399367, at *4 (Mar. 23, 2015) (awarding plaintiffs' counsel a sliding scale contingency fee including thirty percent of the first ten million dollars of the settlement); *In re Capital One*, 80 F. Supp. 3d at 804–05 (finding that before considering possible risk adjustments, 30% is the reasonable base market rate for the first $10 million of recovery); *Wilkins*, 2015 WL 890566, at *10 (same).

Objectors Franz, Cozby, and Bullard argue that a thirty percent base rate is too high because class counsel did not have to do much work to secure a victory for the plaintiffs. The Court disagrees. The mere fact that this case settled before the parties engaged in full-scale formal discovery and summary judgment motion practice does not detract from class counsel's significant participation in this litigation and the effort they put in to secure a victory for the class. Class counsel did not join this case at the

eleventh hour; rather, they saw this case through from start (the filing of the suit) to finish (negotiating a valuable settlement), and they did so with the care and skill commensurate with their significant experience as lead counsel in other major class action litigations. Counsel vigorously litigated to withstand Walgreens's motion to dismiss on two separate grounds and to convince the Court to reverse its premature dismissal of the case, and they conducted informal and some formal discovery, analyzing written materials Walgreens provided and taking the deposition of Walgreens's 30(b)(6) witness. More importantly, all of this work would have been foreseeable at the time class counsel participated in arm's length negotiation of their fee.

### 2. Risk adjustment

The final factor courts must consider when determining the market rate upon which to base a fee award is the risk that class counsel assumed by undertaking class representation. Risk is necessarily a factor in determining the price class counsel would have charged in arm's length *ex ante* negotiations. *Synthroid 1*, 264 F.3d at 721. As the Seventh Circuit has explained, "if the market-determined fee for a sure winner were $1 million the market-determined fee for handling a similar suit with only a 50 percent chance of a favorable outcome should be $2 million." *Trans Union*, 629 F.3d at 746.

In *In re Capital One*, the court found that class counsel in a TCPA class action suit faced significant risk where it was "quite possible that the discovery may have revealed that many class members acquiesced to receiving calls on their cell phones"; "at the outset of the litigation there was a serious question whether the Plaintiffs' claims could meet Rule 23's manageability requirement"; and the FCC was poised to

36

potentially revise its interpretation of the TCPA in such a way as to vanquish plaintiffs' claims. *In re Capital One*, 80 F. Supp. 3d at 805. The court accordingly applied a six-percent risk premium to the thirty-percent fee award tied to the first $10 million of the settlement fund. *Id.* at 807.

Because the risk factor is intended to help courts estimate the results of a hypothetical *ex ante* negotiation, the fact that this Court dismissed Kolinek's suit with prejudice before reversing course on his motion to reconsider does not increase or decrease the degree of risk counsel faced. It does, however, demonstrate that the risks imagined by the court in *In re Capital One* were real and significant in the present case. The Court therefore finds that the market rate for legal services in this TCPA consumer class action, based on the degree of effort the attorneys would need to put in, the likelihood of success, and the risks associated with undertaking class representation, was 36 percent. The Court grants Kolinek's motion for attorney's fees in the amount of $2,824,200, or 36% of the settlement fund less administrative costs and the incentive award for Kolinek, which is discussed below.

**E.    Proposed incentive award**

Plaintiffs have also asked the Court to approve an incentive award of $5,000 to reward Kolinek for his participation as named plaintiff in this suit. Incentive awards "are justified when necessary to induce individuals to become named representatives." *Synthroid 1*, 264 F.3d at 722. If those individuals "would have stepped forward without the lure of an 'incentive award,' there is no need for such additional compensation." *Id.* at 723. When determining whether and how much to award as an incentive for a named plaintiff, courts are instructed to consider "actions the plaintiff has taken to

protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook*, 142 F.3d at 1016.

This case did not proceed past the earliest phases of formal discovery before it was settled. Still, Kolinek attached his name to this litigation and participated in pre-filing investigation and informal and formal discovery. Although some objectors urge the Court to reject the proposed incentive award because it is dramatically more than the amount claiming class members will recover, a $5,000 reward is justified based on Kolinek's role working with class counsel, approving the settlement agreement and fee application, and volunteering to play an active role if the parties continued litigating through trial. It is also worth noting that courts regularly approve $5,000 incentive awards in common fund cases like this one. *See, e.g.*, *In re Capital One*, 80 F. Supp. 3d at 809; *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1041 (N.D. Ill. 2011) ("*AT&T Mobility 3*") (collecting cases). Because $5,000 is adequate and comparable to the incentive awards often given in similar cases, the Court overrules Michael Beskine's objection that the incentive award should be higher than the one Kolinek seeks, as well as the objections of Streight and Franz that the award is too high.

The Court therefore grants class counsel's motion seeking a $5,000 incentive award for named plaintiff Robert Kolinek.

## F.    Spann's petition for attorney's fees

Finally, objector Todd Spann has petitioned the Court for an award of $100,000 in attorney's fees. Spann filed an objection on July 17, 2015, the deadline for class

members to opt out or object to the settlement.  In his objection, Spann argued that the settlement should not be approved because Walgreens's allegedly unlawful prescription refill reminder calls benefitted their recipients more than a settlement would.  He was especially worried that this litigation and the proposed settlement would do a disservice to people who appreciated receiving the prescription refill reminder calls or had voiced concerns that the calls would not continue.  He also challenged Kolinek's adequacy as class representative and the "hidden" cy pres provision in the settlement agreement, as discussed above.

Later, in a series of emails and telephone conversations with class counsel, Spann's attorney expressed concern that the settlement agreement required class members to opt in to receiving prescription refill reminder calls in the future.  Class counsel wrote a letter to Spann's attorney explaining that the settlement agreement did no such thing.  Content in this knowledge, Spann withdrew his objection to the settlement.  He then petitioned the Court for attorney's fees, claiming that the service that he performed for the class—namely, getting class counsel to clarify in writing that the settlement agreement does not require individuals to opt in if they would like to continue receiving calls—justified the award of attorney's fees in the amount of $100,000.

When an objector recovers attorney's fees, the fee award is drawn from the settlement fund, and the total award to the class is diminished.  Thus for an objector to a class action settlement to recover fees, he must show that his objection has secured a benefit for the class that outweighs the fees he is seeking.  *Mirafasihi v. Fleet Mortg. Corp.*, 551 F.3d 682, 687–88 (7th Cir. 2008); *see also Reynolds*, 288 F.3d at 288 ("The

principles of restitution that authorize [fee awards to objectors] require . . . that the objectors produce an improvement in the settlement worth more than the fee they are seeking; otherwise they have rendered no benefit to the class.").

Kolinek cites a decision by the Tenth Circuit and one by a judge of the Eastern District of Wisconsin for the proposition that when objectors secure only modest clarification of or minor procedural changes to a settlement agreement, courts typically refuse to reward them with fee awards. It is worth noting that in both of these cases, the courts denied objectors' fee petitions in part because those objectors were proceeding *pro se*, so granting them incentive awards would "undermine the policy of encouraging the retention of counsel in all cases." *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 818 (E.D. Wis. 2009); *see also UFCW Local 88-Retail Food Employers Joint Pension Fund v. Newmont Min. Corp.*, 352 F. App'x 232, 236 (10th Cir. 2009).

The Court agrees, however, that whatever conceivable benefit Spann might have secured for the class is marginal at best and that its value is nowhere near the $100,000 in attorney's fees he now seeks. Spann's objection did not result in any change to the settlement amount or the procedures by which it will be administered. He claims that the dramatic benefit he secured for the class is the letter he received from class counsel clarifying the settlement's terms, but Kolinek rightly points out that this benefit is overstated in light of Spann's decision to seek clarification at the last possible minute and then withdraw his objection upon simply receiving a letter on the eve of the fairness hearing. More importantly, Spann's objection seems to have arisen not from the settlement agreement's lack of clarity but rather from his or his counsel's misunderstanding of the settlement agreement's clear terms. Rather than creating (or

40

even hinting at) any kind of "opt-in" apparatus, the settlement agreement provides that prerecorded prescription refill reminder calls will cease for those class members who submit valid claim forms attesting that they did not provide prior express consent to receive them *and* do not check the box requesting to continue receiving calls.  As the settlement agreement makes abundantly clear, class members who do not affirmatively state that they have not given consent (by submitting a valid claim) will continue to receive calls in the future.

Because Spann's objection resulted in no real benefit for the plaintiff class, the Court denies his petition for attorney's fees.

## Conclusion

For the foregoing reasons, the Court grants final approval of the settlement [dkt. no. 135] and plaintiff's motion for attorney's fees, expenses, and incentive award for the named plaintiff [dkt. no. 103].  The Court denies objector Todd Spann's motion for attorney's fees [dkt. no. 169].  By the close of business tomorrow, counsel for the plaintiff class and for Walgreens are to jointly submit a draft judgment order embodying the Court's rulings.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  November 23, 2015

41